**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN O'BRIEN, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>PARETEUM CORPORATION, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>                              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kevin O'Brien ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Pareteum Corporation ("Pareteum" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Pareteum; and (c) review of other publicly available information concerning Pareteum.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Pareteum securities between March 12, 2019 and October 21, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Pareteum is a cloud communication company. Its platforms connect mobile networks using multiple communications channels including mobile telephony, data, SMS, VOIP, and OTT services.

3.      On June 7, 2019, Marcus Aurelius Value published a report questioning the Company's accounting regarding backlog, backlog conversion rates, and receivables.

4.      On this news, the Company's stock price fell $0.83, or over 24%, to close at $2.58 per share on June 7, 2019, on unusually heavy trading volume.

5.      On June 25, 2019, Viceroy Research Group published a report that alleged further accounting discrepancies related to several sources of "uncollectable" revenue, concluding that "total revenue is overstated by 42%."

6.      On this news, the Company's stock price fell $0.51, or over 20%, to close at $2.00 per share on June 26, 2019, on unusually heavy trading volume.

7.      On October 15, 2019, the Company announced that Chief Operating Officer

Denis McCarthy was leaving the Company. McCarthy had maintained the Company's 36-month contractual revenue backlog spreadsheets and analysis that were scrutinized by the Aurelius Value and Viceroy reports.

8.      On this news, the Company's stock price fell $0.36, over three consecutive trading sessions to close at $0.83 per share on October 17, 2019, on unusually heavy trading volume.

9.      On October 21, 2019, after the market closed, the Company disclosed that certain revenues recognized during 2018 and 2019 should not have been recorded during that period and that, as a result, the Company would restate their previously issued consolidated financial statements as of and for the full year ended December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019.

10.      On this news, the Company's stock price fell $0.4401, or nearly 60%, to close at $0.2992 on October 22, 2019, on unusually heavy trading volume.

11.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's backlog had been artificially inflated; (2) that the Company was not likely to collect from several of its key customers; (3) that, as a result, the Company's accounts receivable was overstated; (4) that the Company improperly recognized revenue from certain customer transactions; (5) that there was a material weakness in Pareteum's internal control over financial reporting related to the Company's backlog; (6) that, as a result of the foregoing, the Company was reasonably likely to restate financial statements for several periods; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

12.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company has offices in this District.

16.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

17.     Plaintiff Kevin O'Brien, as set forth in the accompanying certification, incorporated by reference herein, purchased Pareteum securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant Pareteum is incorporated under the laws of Delaware with its principal executive offices located in New York, NY. Pareteum's common stock trades on the NASDAQ exchange under the symbol "TEUM."

19.     Defendant Victor Bozzo ("Bozzo") was, at all relevant times, the Chief Executive Officer ("CEO") of the Company.

20.     Defendant Edward O'Donnell ("O'Donnell") was, at all relevant times, the Chief

Financial Officer ("CFO") of the Company.

21.     Defendant Denis McCarthy ("McCarthy") was the Chief Operating Officer of the Company until October 9, 2019.

22.     Defendants Bozzo, O'Donnell, and McCarthy (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Pareteum is a cloud communication company. Its platforms connect mobile networks using multiple communications channels including mobile telephony, data, SMS, VOIP, and OTT services.

### Materially False and Misleading
### Statements Issued During the Class Period

24.     The Class Period begins on March 12, 2019. On that day, the Company announced its fourth quarter and full year 2018 financial results, reporting revenue of $14.3 million and stated that backlog had ***quadrupled*** to $615 million compared to the prior year. The press release stated, in relevant part:

**FULL YEAR 2018 FINANCIAL RESULTS:**

**(Unless otherwise noted, all comparisons are made to full year of 2017)**

- Revenues increased 139% to $32.4 million

- Adjusted EBITDA improved 199% year-over-year to $6.4 million

- Non-GAAP EPS of $0.09 cents compared to $0.05 cents for year ending 2017

- We ended the year with a $6.1 million cash balance and no secured debt

**KEY 2018 OPERATIONAL METRICS:**

- 36-month Contractual Revenue Backlog quadrupled to $615 million for the full year 2018, up from $147 million in 2017 with a conversion rate to revenue of 100%

- Connections increased 252% to 4,609,000 for the full year 2018, and grew 59% sequentially in the fourth quarter of 2018

- Fourth quarter average annualized revenue per employee of $415,000, an improvement of 78% year-over-year

**RECENT BUSINESS HIGHLIGHTS:**

- The Company completed the acquisition of Artilium in late September bringing several strategic advantages including an increased product offering; larger addressable market in Europe; expanded our executive, operational and sales talent; and enhanced our cloud platform with key operating support systems (OSS) and the internet of things (IoT) capabilities.

- In February 2019, Pareteum completed the acquisition of iPass, delivering key strategic benefits including an intelligent Wi-Fi connectivity platform; deep relationships with marquis enterprise customers; strong process, procedures and systems; and strong talent particularly on the technology development side.

- The Company closed a $50M credit facility with Post Road Group in February 2019. An initial draw of $25M will be used to repay the debt and transaction costs associated with the iPass transaction and to facilitate accelerated organic growth and potential M&A transactions.

**2019 FULL YEAR GUIDANCE:**

We expect revenue to be between $105 million and $115 million for the full year of 2019. Adjusted EBITDA and Cash Flow, net of restructuring and acquisition costs will be positive for the year. We are expecting 2019 revenue growth in the

range of 225% to 260% year-over-year, outpacing the market growth rate fivefold to be updated quarterly.

25.     On March 18, 2019, the Company filed its annual report for the period ended December 31, 2018 (the "2018 10-K") with the SEC, affirming the previously reported financial results. Under Controls and Procedures, the 2018 10-K identified certain material weaknesses over the Company's internal controls over financial reporting, stating:

> Based on the foregoing evaluation, our management has identified the following deficiencies that constitute material weaknesses in the Company's internal controls over financial reporting:
>
> Inadequate and ineffective management assessment of internal control over financial reporting, including insufficient experienced resources to complete the documentation of internal control assessment.
>
> Ineffective design, implementation and monitoring of information technology general controls pertaining to the Company's change management process.
>
> The material weakness did not result in any identified misstatements to the financial statements, and there were no changes to previously released financial results. Based on these material weaknesses, the Company's management concluded that at December 31, 2018, the Company's internal control over financial reporting was not effective.
>
> Squar Milner LLP, the Company's independent registered public accounting firm, expressed an unqualified opinion for the audit of our consolidated financial statements as of and for the year ended December 31, 2018 and has issued an adverse audit report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2018, which appears below.

26.     On May 7, 2019, the Company announced its first quarter 2019 financial results, reporting revenue of $23 million and backlog of $938 million, including the results from recent acquisitions.

27.     On May 10, 2019, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2019, affirming the previously reported financial results. Moreover, the report stated that the Company had remediated the previously identified material weakness, stating in relevant part:

> To address ineffective design, implementation and monitoring of information technology general controls pertaining to the Company's change management

process, the Company has (i) removed all live access to all developers, internal and external, from being able to make coding changes directly in our reporting system; (ii) has continued to monitor and document all changes made in our reporting system and add additional layers of documented review of these changes; (iii) instituted sample testing of changes made in our reporting system to ensure the documented policies are being followed and report the results of these tests to senior management in regular appropriate intervals; and (iv) enhanced our quarterly reporting on the remediation measures to the Audit Committee of the Board of Directors. Management believes this material weakness has been remediated, as of March 31, 2019, pending further testing. . . .

. . . However, the identified material weakness in internal control over financial reporting will not be considered remediated until controls have been designed and/or controls are in operation for a sufficient period of time for our management to conclude that the material weaknesses have been remediated. Additional remediation measures may be required, which may require additional implementation time.

28.     The above statements identified in ¶¶ 24-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's backlog had been artificially inflated; (2) that the Company was not likely to collect from several of its key customers; (3) that, as a result, the Company's accounts receivable was overstated; (4) that the Company improperly recognized revenue from certain customer transactions; (5) that there was a material weakness in Pareteum's internal control over financial reporting related to the Company's backlog; (6) that, as a result of the foregoing, the Company was reasonably likely to restate financial statements for several periods; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

29.     Analysts began to present certain accounting irregularities in the Company's financial reporting. On June 7, 2019 when Marcus Aurelius Value published a report questioning the Company's accounting regarding backlog, backlog conversion rates, and receivables. The report stated, in relevant part:

<u>TEUM's Purported $900 Million Backlog Appears Significantly Exaggerated or
Fictitious.</u>

The foundation of the Pareteum growth story is built on the company's
supposedly large and fast-growing 36-month backlog, which management now
says exceeds $900 million. But our investigation identified a variety of
purportedly valuable customers that appear wholly incapable of paying TEUM
anywhere near the large contractual values that TEUM has touted. Examples
include:

- A nearly-worthless penny-stock managed by a former AudioEye executive named
  alongside TEUM's CFO in the fraud suit.

- African entities that show no signs of meaningful business activity.

- Contracts with crypto-companies including one that recently settled with the SEC
  and "agreed to return funds to harmed investors".

- Closed or dissolved businesses.

- Websites that are inactive or offer limited contact information.

- Businesses that don't answer the phones or report having minimal employees.

- European entities with tiny amounts of capital or revenue.

- Featured customers located in apartment buildings.

- Millions in loans to an entity bleeding cash.

- A purported $50 million contract with an entity in Thailand that reports having
  zero 2018 revenue, years of losses, and involvement with a crypto-coin that has
  lost 97% of its peak value.

We also found irregularities and embellishments involving a significant portion of
the "notable partners and customers" that TEUM highlighted in a graphic at its
recent analyst day, suggesting TEUM struggles to find enough legitimate new
customers to even fill a simple slide.

<u>TEUM's Backlog Conversion and Receivables Signal Serious Potential
Accounting Problems</u>

The accounting fraud that TEUM's CFO allegedly perpetrated at AudioEye
involved the booking of phantom revenues to artificially inflate the stock price.
Bulls have taken comfort in management's assurances that TEUM's backlog has
converted to revenue at over 100% of contractual rates thus far. But we find
TEUM's backlog conversion rate highly problematic considering that our
research has flagged so many small or defunct customers. If exaggerated

contractual values are now being recognized as revenue, then we believe TEUM will face serious accounting problems. TEUM's receivables have already begun to balloon after growing at sequential rates far faster than revenues in each of the last four quarters. TEUM's small California auditor, which was specifically cited by the PCAOB for audit deficiencies related to revenue, gives us no comfort.

30.    On this news, the Company's stock price fell $0.83, or over 24%, to close at $2.58 per share on June 7, 2019, on unusually heavy trading volume.

31.    The truth partially emerged again on June 25, 2019 when Viceroy Research Group published a report that alleged further accounting discrepancies related to several sources of "uncollectable" revenue, concluding that "total revenue is overstated by 42%." The report stated, in relevant part:

Pareteum has 4 months accounts receivable sitting on its balance sheet. When combined with the drastic increase in receivable days since the end of 2017, it appears that Pareteum's new customers are not paying their bills. Despite this Pareteum's management continues to recognize this apparent uncollectable revenue from customers.

- Pareteum's acquired businesses iPass and Artilium are getting paid on "typical" billing terms of 30 days, per management assertion. It is noteworthy that this is not strictly true:

    o Artilium's last publicly available financials show 77.473 receivable days and claim that the average credit period on sales to be 87 days as of June 30, 2018.

    o iPass's Q3 2018 10-Q revenue and receivables figures show 78.155 receivable days with standard credit terms of 30 days.

- iPass' purchase price accounting allocated US$4.344m in accounts receivable to Pareteum's balance sheet.

- Artilium's purchase price accounting allocated a negligible amount of accounts receivable to Pareteum's balance sheet: it appears Pareteum wrote a significant balance off. We have not accounted for this negligible balance.

According to our model Pareteum has collected only 4% of the revenue recognized from these customers in the 12 months trailing Q1 2019. While this figure is probably lower than Pretium's actual collections, it creates a Catch-22 situation where receivables from Artilium and iPass are also growing exponentially.

32.     On this news, the Company's stock price fell $0.51, or over 20%, to close at $2.00 per share on June 26, 2019, on unusually heavy trading volume.

33.     On August 6, 2019, the Company announced its second quarter 2019 financial results, reporting revenue of $34.1 million. Notably, the Company did not report Pareteum's backlog. The press release stated, in relevant part:

**SECOND-QUARTER 2019 FINANCIAL RESULTS YEAR-OVER-YEAR:**

- Total revenue increased 469% to $34.1 million

- Income from Operations totaled $159,000

- EBITDA increased 466% to $3.4 million

- Adjusted EBITDA increased 369% to $6.1 million

- Non-GAAP EPS of $0.03 (Non-GAAP EPS of $0.05 for the 6 months ending June 30, 2019)

- Net Dollar-based expansion rate represented 151% growth

- Increase in total assets from $33.1 million at June 30, 2018 to $246.9 million at June 30, 2019

**KEY SECOND-QUARTER OPERATIONAL METRICS:**

- Connections increased 380% to 13,030,000 for the second quarter of 2019, and grew 108.5% sequentially for the first half of 2019

- Second-quarter average annualized revenue per employee of $583,000, an increase of 55% year-over-year

34.     On August 9, 2019, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2019, affirming the previously reported financial results. Regarding internal control over financial reporting, the report was substantially similar to the quarterly report for the previous reporting period.

35.     The above statements identified in ¶¶ 33-34 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the

Company's backlog had been artificially inflated; (2) that the Company was not likely to collect from several of its key customers; (3) that, as a result, the Company's accounts receivable was overstated; (4) that the Company improperly recognized revenue from certain customer transactions; (5) that there was a material weakness in Pareteum's internal control over financial reporting related to the Company's backlog; (6) that, as a result of the foregoing, the Company was reasonably likely to restate financial statements for several periods; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

36.     On October 15, 2019, the Company announced that Chief Operating Officer Denis McCarthy was leaving the Company. McCarthy had maintained the Company's 36-month contractual revenue backlog spreadsheets and analysis that were scrutinized by the Aurelius Value and Viceroy reports.  In a Form 8-K filed with the SEC, the Company stated, in relevant part:

> On October 9, 2019, Denis McCarthy and Pareteum Corporation (the "Company") entered into a settlement agreement and release (the "Separation Agreement") pursuant to which Mr. McCarthy's at-will employment agreement with the Company was terminated and Mr. McCarthy ceased all positions with the Company and its subsidiaries, including as the Company's Chief Operating Officer. Pursuant to the Separation Agreement, Mr. McCarthy will receive a severance payment of $225,000 to be paid in equal monthly installments according to the Company's payroll practices over a period of 12 months from the date of the Separation Agreement and agreed not to trade in the Company's securities through October 1, 2021. Mr. McCarthy will also forego earned and unearned bonuses and vested and unvested stock options will lapse.

37.     On this news, the Company's stock price fell $0.36, over three consecutive trading sessions to close at $0.83 per share on October 17, 2019, on unusually heavy trading volume.

38.     The above statements identified in ¶ 36 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company's backlog had been artificially inflated; (2) that the Company was not likely to collect from several

of its key customers; (3) that, as a result, the Company's accounts receivable was overstated; (4) that the Company improperly recognized revenue from certain customer transactions; (5) that there was a material weakness in Pareteum's internal control over financial reporting related to the Company's backlog; (6) that, as a result of the foregoing, the Company was reasonably likely to restate financial statements for several periods; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

39.     On October 21, 2019, after the market closed, the Company disclosed that certain revenues recognized during 2018 and 2019 should not have been recorded during that period and that, as a result, the Company would restate their previously issued consolidated financial statements as of and for the full year ended December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019. In a press release, the Company stated, in relevant part:

> The decision to restate these financial statements is based on the Company's conclusion that certain revenues recognized during 2018 and 2019 should not have been recorded during that period. For certain customer transactions, the Company may have prematurely or inaccurately recognized revenue. These restatements should not impact historical cash or cash equivalents based upon the current review. At the present time, the restatements are expected to impact Revenue, Cost of Service, Operating Income, Net Loss, Accounts Receivable and other Balance Sheet line items. *__While the Company's analysis is still underway, the Company currently estimates the revenue impact for the full year 2018 to be a reduction of approximately $9 million. For the first half of 2019, the Company currently estimates the revenue impact to be a reduction of approximately $24 million.__*

> At this time, the Company has not fully completed its review and the expected financial impact of the restatement described above is preliminary and subject to change. The Company cannot predict the aggregate amount of revenue that will ultimately be restated, whether additional periods beyond those referenced above will be affected, and the final outcome or timing of the Company's filing of restated financial statements for the affected annual and quarterly periods. Until the full magnitude of these transactions is analyzed and understood, the Company cannot provide forward guidance, and expects financial results for the second half and full year 2019 will be materially below current analysts' estimates.

Pareteum has achieved a significant business transformation over the last few years, including the completion and integration of two large acquisitions, Artilium and iPass. The Company recently discovered internal control issues related to the accuracy and timing of the recognition of revenue. The Company is undertaking a financial review and is taking proactive steps to improve the oversight and controls associated with customer transactions.

(Emphasis added.)

40.     On this news, the Company's stock price fell $0.4401, or nearly 60%, to close at $0.2992 on October 22, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Pareteum securities between March 12, 2019 and October 21, 2019, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Pareteum's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Pareteum common stock were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Pareteum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Pareteum; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

47.     The market for Pareteum's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Pareteum's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Pareteum's securities relying upon the integrity of the market price of the Company's securities and market information relating to Pareteum, and have been damaged thereby.

48.     During the Class Period, Defendants materially misled the investing public,

thereby inflating the price of Pareteum's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Pareteum's business, operations, and prospects as alleged herein.

49.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pareteum's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

50.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

51.     During the Class Period, Plaintiff and the Class purchased Pareteum's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

52.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Pareteum, their control over, and/or receipt and/or modification of Pareteum's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pareteum, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

53.     The market for Pareteum's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Pareteum's securities traded at artificially inflated prices during the Class Period.  On March 18, 2019, the Company's share price closed at a Class Period high of $5.70 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Pareteum's securities and market information relating to Pareteum, and have been damaged thereby.

54.     During the Class Period, the artificial inflation of Pareteum's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pareteum's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Pareteum and

its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

55.    At all relevant times, the market for Pareteum's securities was an efficient market for the following reasons, among others:

(a)    Pareteum shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Pareteum filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Pareteum regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Pareteum was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

56.    As a result of the foregoing, the market for Pareteum's securities promptly digested current information regarding Pareteum from all publicly available sources and reflected such information in Pareteum's share price. Under these circumstances, all purchasers of Pareteum's securities during the Class Period suffered similar injury through their purchase of Pareteum's securities at artificially inflated prices and a presumption of reliance applies.

57.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material

misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

58.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Pareteum who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

59.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.     During the Class Period, Defendants carried out a plan, scheme and course of

conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Pareteum's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

61.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pareteum's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

62.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Pareteum's financial well-being and prospects, as specified herein.

63.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pareteum's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Pareteum and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

64.     Each of the Individual Defendants' primary liability and controlling person

liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

65.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pareteum's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

66.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Pareteum's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of

the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Pareteum's securities during the Class Period at artificially high prices and were damaged thereby.

67.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Pareteum was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pareteum securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

68.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

70.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

71.     Individual Defendants acted as controlling persons of Pareteum within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-

making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73.     As set forth above, Pareteum and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: October 22, 2019                    **GLANCY PRONGAY & MURRAY LLP**

                                           By: _s/ Gregory B. Linkh_
                                           Gregory B. Linkh (GL-0477)
                                           Lesley F. Portnoy (LP-1941)
                                           230 Park Ave., Suite 530
                                           New York, New York 10169
                                           Telephone: (212) 682-5340
                                           Facsimile: (212) 884-0988
                                           Email: glinkh@glancylaw.com
                                                   lportnoy@glancylaw.com

                                                   -and-

                                           **GLANCY PRONGAY & MURRAY LLP**
                                           Lionel Z. Glancy
                                           Robert V. Prongay
                                           Charles H. Linehan
                                           Pavithra Rajesh
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           Telephone: (310) 201-9150
                                           Facsimile: (310) 201-9160
                                           Email: info@glancylaw.com

                                           *Attorneys for Plaintiff Kevin O'Brien*

## SWORN CERTIFICATION OF PLAINTIFF

## PARETEUM CORPORATION SECURITIES LITIGATION

I, Kevin O'Brien , certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I did not purchase the Pareteum Corporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.      My transactions in  Pareteum Corporation securities during the Class Period set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years.

6.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.


10/22/2019

_____                          _____

Date                                                          Kevin O'Brien

**Kevin O'Brien's Transactions in Pareteum Corporation (TEUM)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 6/19/2019 | Bought | 2,000 | $2.8199 |