**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN O'BRIEN, Individually and On Behalf of all Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>PARETEUM CORPORATION, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>     Defendants. | CASE NO. 1:19-cv-09767-AKH-GWG |
| AJAY SINGH, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>PARETEUM CORPORATION, ROBERT TURNER, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>     Defendants. | CASE NO. 1:19-cv-09795-AKH-GWG |
| LAILA MANSUR, Individually and on Behalf of all Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>PARETEUM CORPORATION, ROBERT H. TURNER, DENIS MCCARTHY VICTOR BOZZO and EDWARD O'DONNELL<br><br>     Defendants | CASE NO. 1:19-cv-09849-AKH-GWG |

|  |  |
|---|---|
| JOHN VARGO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PARETEUM CORPORATION, ROBERT H. TURNER, and EDWARD O'DONNELL,<br><br>Defendants. | CASE NO. 1:19-cv-09936-AKH-GWG |

## MEMORANDUM IN SUPPORT OF THE PARETEUM SHAREHOLDER INVESTOR GROUP'S MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT THE PARETEUM SHAREHOLDER INVESTOR GROUP AS LEAD PLAINTIFF, AND APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF <u>COUNSEL</u>

**TABLE OF CONTENTS**

**Page:**

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

ARGUMENT ................................................................................................... 5

I.    THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS ............................................. 5

II.   THE PSIG IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" AND
      THE COURT SHOULD APPOINT IT LEAD PLAINTIFF ................................................. 6

      A.    The PSIG Filed a Timely and Procedurally Complete
            Motion for Lead Plaintiff ................................................................ 11

      B.    The PSIG Has the Largest Known Financial Interest
            in the Relief Sought ...................................................................... 12

      C.    The PSIG "Otherwise Satisfies" the *Prima Facie*
            Requirements of Rule 23 .................................................................. 12

            1.    The PSIG's Claims Are Typical of the Claims of
                  All the Class Members ................................................................ 12

            2.    The PSIG Will Adequately Represent the Class ......................................... 13

III.  THE COURT SHOULD APPROVE THE PSIG'S CHOICE OF LEAD COUNSEL ........................... 14

CONCLUSION .............................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Daniels v. City of N.Y.*,
198 F.R.D. 409 (S.D.N.Y. 2001) ...................................................................................... 13

*Ferrari v. Impath*,
No. 03-5667, 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) ....................................... 13

*Herrgott v. U. S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*,
306 F.3d 726 (9th Cir. 2002)............................................................................................... *passim*

*Hom v. Vale, S.A.*,
No. 15-9539, 2016 U.S. Dist. LEXIS 28863 (S.D.N.Y. Mar. 7, 2016) ......................................... 2

*In re Aol Time Warner Sec. & "erisa" Litig.*,
MDL No. 1500, 2003 U.S. Dist. LEXIS 145 (S.D.N.Y. Jan. 8, 2003) ......................................... 8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................................... *passim*

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012)............................................................................................... 11

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) .............................................................................................. 2

*In re Heritage Bond Litig.*,
MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386 (C.D. Cal. July 12, 2004) ............................. 13

*In re Lucent Techs. Sec. Litig.*,
194 F.R.D. 137 (D.N.J. 2000) ................................................................................................ 14

*In re Nortel Networks Corp.*,
No. 01-1855, 2002 U.S. Dist. LEXIS 1633 (S.D.N.Y. Feb. 4, 2002).......................................... 14

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998)............................................................................................ 6

*In re Oxford Health Plans, Inc., Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998)................................................................................................. 8

*In re Star Gas Sec. Litig.*,
No. 04-1766, 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) ........................................... 8

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................... 8, 10

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
    No. 11-0917, 2011 U.S. Dist. LEXIS 54939 (S.D.N.Y. May 19, 2011)....................................... 11

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
    No. 08-7281, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ....................................... 8

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) .................................................................................. 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................. 8, 10

*Primavera Familienstiftung v. Askin*,
    173 F.R.D. 115 (S.D.N.Y. 1997). ................................................................................................ 6

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)....................................................................................................... 13

*Sofran v. Labranche & Co.*,
    220 F.R.D. 398 (S.D.N.Y. 2004) ............................................................................................... 7,8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ................................................................................................. 9

**Statutes**

    15 U.S.C. § 78................................................................................................................... *passim*

**Rules**

    Fed. R. Civ. P. 6 .............................................................................................................................9

    Fed. R. Civ. P. 23 .....................................................................................................................8-11

    Fed. R. Civ. P. 42(a)......................................................................................................................6

**Other**

    Wright & Miller, *Consolidation—Discretion of Court*,
    9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.) .......................................................................... 5-6

**PRELIMINARY STATEMENT**

The Pareteum Shareholder Investor Group ("PSIG" or "Movant") respectfully submits this Memorandum of Law in support of its motion to: (i) consolidate the related securities class actions filed against Pareteum Corporation ("Pareteum" or the "Company") and certain related Defendants (defined below);[1] (ii) appoint it Lead Plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (iii) approve its selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class; and (iv) grant such other and further relief as the Court may deem just and proper.

As outlined in greater depth in the Joint Declaration submitted herewith, the PSIG is comprised of five investors who, as active investors in Pareteum, have known one another prior to the commencement of this litigation and have collectively decided to pursue appointment as Lead Plaintiff herein. *See* Declaration of Melinda A. Nicholson in Support of the Pareteum Shareholder Investor Group's Motion to Consolidate Related Actions, Appoint the Pareteum Shareholder Investor Group as Lead Plaintiff, and Approve Proposed Lead Plaintiff's Choice of Counsel ("Nicholson Decl."), Ex. 1 (PSIG Joint Declaration). As further outlined therein, the PSIG has suffered substantial losses in connection with its acquisitions of Pareteum securities from December 14, 2017 and October 21, 2019, inclusive (the "Class Period"). *Id.*; *see also id.,*

---

[1]    The related securities class actions are *O'Brien v. Pareteum Corporation, et al.*, No. 1:19-cv-09767-AKH (S.D.N.Y.), filed on October 22, 2019 ("*O'Brien* Action"); *Singh v. Pareteum Corporation, et al.*, No. 1:19-cv-09795-AKH (S.D.N.Y.), filed on October 23, 2019 ("*Singh* Action"); *Mansur v. Pareteum Corporation, et al.*, No. 1:19-cv-09849-AKH (S.D.N.Y.), filed by KSF on October 24, 2019 ("*Mansur* Action"); and *Vargo v. Pareteum Corporation, et al.*, No. 1:19-cv-09936-AKH (S.D.N.Y.), filed on October 27, 2019. On the same day that the *O'Brien* Action was filed, another action was filed in the United States District Court for the Eastern District of New York, *DeMarco v. Pareteum Corporation, et al.*, No. 1:19-cv-05949-MKB (E.D.N.Y.), (the "*DeMarco* Action"). PSIG is moving for lead plaintiff in the *DeMarco* Action simultaneously herewith and, should it prevail, intends to seek to transfer and consolidate the *DeMarco* Action with this action. 28 U.S.C. § 1404(a); FED. RULE CIV. P. 42

1

Exs. 2-11 (PSIG Certifications and Loss Charts).[2] **Specifically, the PSIG has suffered approximately $1,486,339.11 in losses as a result of its transactions in Pareteum stock during the Class Period.** To the best of its knowledge, the PSIG has sustained the largest loss of any movant seeking to be appointed Lead Plaintiff.

What is more, as further outlined in the PSIG's Certifications and Joint Declaration, its members fully understand their duties and responsibilities to the Class and are willing and able to oversee the vigorous prosecution of this action. *See* Nicholson Decl., Exs. 1 at ¶¶5-10 and 2, 4, 6, 8, 10. Finally, the PSIG satisfies the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and is therefore presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Accordingly, PSIG respectfully requests that the Court (1) consolidate all related actions; (2) appoint PSIG as Lead Plaintiff; and (3) approve PSIG's choice of KSF as Lead Counsel for the Class.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant Pareteum is a communications cloud services platform that connects mobile networks using multiple communications channels. Pareteum is a Delaware corporation with its principal executive offices located in New York, New York. During the Class Period, Defendant

---

[2]    The *O'Brien* Action alleges a Class Period between March 12, 2019 and October 21, 2019 on behalf of purchasers of Pareteum securities. The *Mansur* Action alleges a Class Period between December 14, 2017 and October 21, 2019 on behalf of purchasers of Pareteum common stock, all dates inclusive. For the purpose of this Motion, Movant adopts the most expansive Class Period – *i.e.*, the beginning of the Class Period set forth in the *Mansur* Action and the more inclusive class on behalf of purchasers of Pareteum securities as set forth in the *O'Brien* Action. *See, e.g., Hom v. Vale, S.A.*, No. 15-9539, 2016 U.S. Dist. LEXIS 28863, at *12-13 (S.D.N.Y. Mar. 7, 2016) ("[T]he Court finds that the use of the longer, more inclusive class period is proper for purposes of the present [lead plaintiff] motion[s] because the longer class period encompasses more potential class members and damages."); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-114 (E.D.N.Y. 2012) (favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

[3]    These facts were derived from the complaints filed in the *O'Brien* and *Mansur* Actions.

Victor Bozzo ("Bozzo") served as the Company's Chief Executive Officer ("CEO") and, effective May 24, 2019, resigned his position as CEO and was appointed Chief Commercial Officer. Defendant Robert H. Turner ("Turner") is, and during the Class Period was, Principal Executive Officer and/or CEO, effective May 24, 2019, and Executive Chairman of the Board of Directors of the Company. Defendant Edward O'Donnell ("O'Donnell") is, and during the Class Period was, Chief Financial Officer of the Company.  During the Class Period, Defendant Denis McCarthy ("McCarthy") served as President of the Company and, effective May 24, 2019, was appointed Chief Operating Officer of the Company and resigned as President.[4]

Throughout the Class Period, the Company consistently highlighted its financial results, stability, and strong future outlook – based largely on ever-growing increases in its 36-Month Contractual Revenue Backlog ("Backlog") and the conversion of that Backlog into recurring customer revenue. In June of 2019, however, two very critical independent research reports were published that (1) alleged that the Company had materially misrepresented its financial and operational condition through a fraudulent scheme to inflate revenues by grossly overstating or even fabricating expected client revenues and the Company's Backlog and (2) highlighted previously-undisclosed connections between the Company's management and executive teams and past alleged frauds and failed stock promotions. These revelations caused a dramatic decline in the price of Pareteum shares.

Then, on October 21, 2019, after the market closed, the Company disclosed that it would restate its previously issued financial statements for the full year ended December 31, 2018 and the interim periods ended March 31, 2019 and June 30, 2019 and stated that investors should no

---

[4]     The *O'Brien* Action named only Bozzo, O'Donnell, and McCarthy as Individual Defendants. The *Singh* and *Mansur* Actions added Turner as an Individual Defendant. Defendants Bozzo, Turner, O'Donnell, and McCarthy are collectively referred to herein as the "Individual Defendants." Defendant Pareteum and the Individual Defendants are sometimes referred to herein collectively as "Defendants."

longer rely upon the Company's previously released financial statements for those time periods because "certain revenues recognized during 2018 and 2019 should not have been recorded during that period … [and f]or certain customer transactions, the Company may have prematurely or inaccurately recognized revenue." "Revenue, Cost of Service, Operating Income, Net Loss, Accounts Receivable and other Balance Sheet line items" were expected to be impacted by the restatements. The Company estimated that revenue would be reduced by approximately $9 million for the full year 2018 and by approximately $24 million for the first half of 2019. On this news, shares of Pareteum fell $0.4401 per share or over 59% to close at $0.2992 per share on October 22, 2019.

Accordingly, throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material adverse facts regarding the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) the Company's Backlog had been artificially inflated; (ii) the Company was not likely to collect from several of its key customers; (iii) as a result, the Company's accounts receivable was overstated; (iv) the Company improperly recognized revenue from certain customer transactions; (v) there was a material weakness in Pareteum's internal control over financial reporting related to the Company's Backlog; (vi) as a result of the foregoing, the Company was reasonably likely to restate financial statements for several periods; and (vii) as a result of the foregoing, Defendants' positive statements about Pareteum's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times, artificially inflating the price of Pareteum's securities during the Class Period.

The first lawsuit filed in this District raising these allegations was filed on October 22, 2019, on behalf of purchasers of Pareteum's publicly traded securities between March 12, 2019

4

and October 21, 2019. *O'Brien v. Pareteum Corporation, et al.*, No. 1:19-cv-09767-AKH (S.D.N.Y.). A substantially similar lawsuit, on behalf of purchasers of Pareteum securities between December 26, 2017 and October 21, 2019, was filed on October 23, 2019. *Singh v. Pareteum Corporation, et al.*, No. 1:19-cv-09795-AKH (S.D.N.Y.). On October 23, 2019, the undersigned counsel filed suit raising similar allegations, but extending the Class Period to between December 14, 2017 and October 21, 2019. *Mansur v. Pareteum Corporation, et al.*, No. 1:19-cv-09849-AKH (S.D.N.Y.). A fourth lawsuit was filed on October 27, 2019 on behalf of purchasers of Pareteum common stock between May 7, 2018 and October 21, 2019. *Vargo v. Pareteum Corporation, et al.*, No. 1:19-cv-09936-AKH (S.D.N.Y.).[5]

On October 22, 2019, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), notices announcing the filing of both the *O'Brien* and *DeMarco* Actions were published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from that day, or December 23, 2019. *See* Nicholson Decl., Ex. 12. The PSIG is a Class Member who has timely filed this motion within the 60-day period following publication of the October 22, 2019 notice. *See id.*

## ARGUMENT[6]

### I.    THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15

---

[5]    These cases have subsequently been deemed as related by the Court. As previously noted, on the same day that the *O'Brien* Action was filed, the *DeMarco* Action was filed in the United States District Court for the Eastern District of New York.

[6]    Unless otherwise noted, all emphasis is added and all citations are omitted.

U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a), "[t]he Court enjoys 'broad discretion to determine whether consolidation is appropriate.'" *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); Wright & Miller, *Consolidation—Discretion of Court*, 9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ("[D]istrict court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual.").

Courts have recognized that securities class actions are ideally suited for consolidation pursuant to Fed. R. Civ. P. 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Id.*; *see also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998) (same).

The four pending actions here make virtually identical allegations on behalf of a similar class of shareholders against virtually the same Defendants. In light of these legal principles and the numerous commonalities shared by the actions, consolidation is appropriate under Rule 42(a).

## II.   THE PSIG IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" AND THE COURT SHOULD APPOINT IT LEAD PLAINTIFF

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules

of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B). It provides that, within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i); s*ee generally Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. *See generally Sofran*, 220 F.R.D. at 401. Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

(aa)   has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Two leading Circuit Courts have directly addressed the procedural standards applicable to the PSLRA lead plaintiff process – the Ninth Circuit, in *Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729-31 (9th Cir. 2002), and the Third Circuit, in

*In re Cendant Corp. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001). District courts in this Circuit routinely rely on both of these cases for guidance.[7] After extensive analyses, both courts concluded that this statutory framework sets out a mandatory, strict, and sequential three-step process:

First, the Court must confirm that proper notice has been disseminated pursuant to the PSLRA. *Cavanaugh*, 306 F.3d 726, 729-31; *accord* 15 U.S.C. §§ 78u-4(a)(3)(A)(i); *Sofran,* 220 F.R.D. at 401.

Second, to identify the "most adequate plaintiff," the PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class … and otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u- 4(a)(3)(B)(iii)(I). During this step, the Court must "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30. The Court "must then focus its attention on *that* plaintiff and determine, *based on the information he has provided in his pleadings and declarations*, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730.[8]

Third, the Court may then "give other plaintiffs an opportunity to rebut the presumptive

---

[7]     *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (citing *Cavanaugh* and *Cendant*); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-cv-7281, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) (citing *Cavanaugh* and *Cendant*); *In re Star Gas Sec. Litig.*, No. 3:04cv1766, 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) (citing *Cavanaugh* and Cendant); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004) (citing *Cendant*); *Sofran*, 220 F.R.D. at 402 (citing *Cavanaugh*); *In re Aol Time Warner Sec. & "erisa" Litig.*, MDL No. 1500, 2003 U.S. Dist. LEXIS 145 (S.D.N.Y. Jan. 8, 2003) (citing *Cavanaugh*).

[8]     In connection with lead plaintiff appointments, courts have consistently held that the Rule 23 considerations are limited to an evaluation of typicality and adequacy. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (typicality and adequacy are the only relevant prerequisites to lead plaintiff selection); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same).

lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730; *accord Cendant*, 264 F.3d at 262 ("[T]he court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption."). Importantly, though, the PSLRA's presumption may be rebutted "only upon *proof*" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Only if, as a result of this three-step process, the presumptive lead plaintiff does not meet the typicality or adequacy requirement, can the Court then proceed to analyze the plaintiff with the next lower stake. *Cavanaugh*, 306 F.3d at 729-730. Importantly, though, in coming to this conclusion, the *Cavanaugh* and *Cendant* courts outlined three critical guidelines:

First, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate – a lower showing than the *proof* required of competing movants in the adversarial step three. *Cendant*, 264 F.3d at 264 ("[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements *need not be extensive*." Rather, "the court's initial inquiry should be confined to determining whether such movants have stated a *prima facie case* of typicality and adequacy.").[9]

Second, the Court's *prima facie* determinations of typicality and adequacy must be "based on the information [the movant] has provided *in his pleadings and declarations*," and rebuttal evidence introduced by competing movants should specifically not be considered during

---

[9]     *Accord Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)).

this second step presumption analysis. *Cavanaugh*, 306 F.3d at 730.[10] "At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's *complaint and sworn certification; there is no adversary process to test the substance of those claims.*" *Id.* Rather, it is "[a]t the third stage [that] the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id.*[11]

Finally, the lead plaintiff determination does not depend on the Court's judgment of which party will be the best lead plaintiff for the Class, but rather which movant fulfills the statutory requirements. "[T]he statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case …. That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence …. [H]e is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.[12]

Applying these governing standards, PSIG is the presumptive "most adequate plaintiff" – and thus its motion should be granted and all other competing motions denied – because it: (A)

---

[10]    *Accord Cendant,* 264 F.3d at 264 ("In conducting the initial [presumption] inquiry … the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted.").

[11]    *Accord Cendant,* 264 F.3d at 263-64 (The "threshold determination" of typicality and adequacy "should be a product of the court's independent judgment, and [] arguments by members of the purported plaintiff class as to why it does not should be considered only in the context of assessing whether the presumption has been rebutted."); *Pirelli*, 229 F.R.D. at 414-15 (finding no "support [for] the notion that courts have required movants 'to provide adequate information about themselves' in addition to and apart from the PSLRA's own requirements ….").

[12]    *Accord Cendant*, 264 F.3d at 268 ("[T]he question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff …. [T]he inquiry is not a relative one."); *Khunt*, 102 F.Supp. 3d at 535-36 ("[A] district court's belief that 'another plaintiff may be more typical or more adequate is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.'") (citing *Cavanaugh*, 306 F.3d at 732).

filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the PSLRA's statutory requirements; (B) has the largest known financial interest in the relief sought; and (C) "otherwise satisfies" the minimal, *prima facie* requirements of Rule 23.

### A. The PSIG Filed a Timely and Procedurally Complete Motion for Lead Plaintiff

Under the PSLRA, the first plaintiff to file an action must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service and members of the putative class have sixty days from the date of publication to move the court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A-B). Here, notice was published on *Business Wire* on October 22, 2019, and specified that applications for appointment as Lead Plaintiff were to be made no later than 60 days from that day, or December 23, 2019. *See* Nicholson Decl., Ex. 12.[13] Thus, the notice satisfied the PSLRA's requirements. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

In light of the fact that the original notice was published on October 22, 2019, the deadline for application to be lead plaintiff is December 23, 2019. *See* Nicholson Decl., Ex. 12; FED. R. CIV. P. 6. The PSIG has therefore timely filed its motion. Moreover, with that motion, its members have signed and submitted the required Certifications, in which they certified their trading history during the relevant period and confirmed their willingness and ability to serve as Lead Plaintiff, thereby satisfying the certification requirement set forth in 15 U.S.C. §§ 78u-

---

[13]    Publication by a national press release firm like *Business Wire* is an adequate means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (characterizing Business Wire as "a widely-circulated, national, business-orientated news reporting wire service" and accepting publication therein for purposes of satisfying the PSLRA's notice requirement); *Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11-0917, 2011 U.S. Dist. LEXIS 54939, at *2 (S.D.N.Y. May 19, 2011) (noting that "[i]n this case, adequate notice was published … in Business Wire, a national wire service").

4(a)(2)(A). Nicholson Decl., Exs. 2-11. Accordingly, PSIG has filed a timely and procedurally complete motion for lead plaintiff in response to a notice that satisfies the statutory requirements.

## B.      The PSIG Has the Largest Known Financial Interest in the Relief Sought

During the Class Period, as evidenced by the Certifications of its members and accompanying Loss Charts, PSIG acquired Pareteum securities and incurred substantial losses on its transactions as a result of the materially false and misleading statements and/or omissions issued by the Defendants. *See* Nicholson Decl., Exs. 2-11. *Specifically, PSIG has suffered approximately $1,486,339.11 in losses as a result of its transactions in Pareteum securities during the Class Period.* To the best of its knowledge, the PSIG thus has the largest financial interest in the relief sought.

## C.      The PSIG "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As outlined above, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate, that *prima facie* determination should be based on the information the movant has provided in its pleadings and declarations only, and rebuttal evidence introduced by competing movants should specifically not be considered during this second step analysis. *Supra* §II. Here, the PSIG easily satisfies these minimal, *prima facie* requirements.

### 1.      The PSIG's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims … of the representative parties" are "typical of the claims … of the class." The typicality requirement is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to

claims of other class members, and when the claims are based on the same legal theory. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004) (same); *In re Heritage Bond Litig.*, MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386, at *25 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

In this case, the typicality requirement is easily met because the PSIG's claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. Like all the other Class Members, the PSIG (1) acquired Pareteum securities during the Class Period; (2) acquired Pareteum securities in reliance upon the allegedly materially false and misleading statements and/or omissions issued by Defendants; and (3) suffered damages by acquiring Pareteum securities at artificially inflated prices and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Accordingly, because its claims and the claims of other Class Members resulted from the same illegal practices, the PSIG's claims are typical of those of other Class Members.

### 2. The PSIG Will Adequately Represent the Class

Under Rule 23(a)(4), a representative party must also "fairly and adequately protect the interests of the class." Under the PSLRA, the Court's adequacy inquiry is limited to the existence of any conflicts between the interests of the movant, on the one hand, and the members of the class, on the other, and adequacy is satisfied (1) by the absence of potential conflicts between the

13

named plaintiff and the other class members and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, the PSIG is a *prima facie* adequate representative. As evidenced by the injuries suffered by the PSIG, who acquired Pareteum securities at prices that were artificially inflated by Defendants' materially false and misleading statements and/or omissions, the interests of the PSIG are clearly aligned with the members of the Class, and there is no evidence of any antagonism between its interests and those of the other members of the Class. Furthermore, the PSIG has retained competent, experienced, and highly qualified counsel who are able to conduct this complex litigation in a professional manner. *Infra* §III. Thus, the PSIG satisfies the minimal, *prima facie* typicality and adequacy requirements of Rule 23, is thus the presumptive "most adequate plaintiff," and should therefore be appointed lead plaintiff.

### III.   THE COURT SHOULD APPROVE THE PSIG'S CHOICE OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 155 (D.N.J. 2000) (citing Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N. 679, 685); *see also In re Nortel Networks Corp.*, No. 01-1855, 2002 U.S. Dist. LEXIS 1633, at *2 (S.D.N.Y. Feb. 4, 2002) (same).

Here, the PSIG has selected KSF to be Lead Counsel for the Class. As reflected in its firm resume, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class. With lawyers in Louisiana, New York, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as

14

lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *See* Nicholson Decl., Ex. 13 (KSF Firm Resume).

Notably, KSF has achieved numerous litigation successes serving as lead, co-lead, or executive committee counsel in other securities class actions, including in this District. *See Id.* (citing *In Re Health Ins. Innovations*, No. 8:17-cv-2186 (M.D. Fla.) (denying in part defendants' motion to dismiss securities class action on June 28, 2019); *Shanawaz v. Intellipharmaceutics Int'l Inc., et al.*, No. 1:17-cv-5761 (S.D.N.Y.) (denying in part defendants' motion to dismiss securities class action on December 17, 2018); *Dougherty v. Esperion Therapeutics, Inc., et al.*, No. 17-1701 (6th Cir.) (reversing and remanding lower court's dismissal of securities class action on September 27, 2018)). Most recently in the Southern District of New York, on June 22, 2018, KSF was found to have "made a substantial contribution to the class" in obtaining a **$3 billion settlement** from Brazil's state-controlled petrochemical company in connection with the largest corruption scandal in the history of Latin America, arising from defendants' alleged deliberate overpayments on various construction contracts in return for kickbacks. *See id.* (citing *In re Petrobras Sec. Litig.*, No. 1:14-cv-9662 (S.D.N.Y.)).

KSF also served as special counsel and court-appointed Co-Counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 3:02-cv-1152-M (N.D. Tex.), which settled for $100 million. KSF's co-counsel in that case was David Boies of Boies Schiller Flexner LLP, a nationally-renowned litigation and appellate law firm that litigated the *Bush v. Gore* matter before the United States Supreme Court, among others. Prior to settlement, the *Halliburton* case itself had twice been to the Unites States Supreme Court. In the first instance, plaintiffs won 9-0. In the second instance, the Halliburton defendants challenged the

15

"fraud on the market theory," the fundamental theory on which all class action securities litigation rests. Despite the Halliburton defendants' protestations, the Supreme Court sided with the plaintiffs and upheld that theory. As the aforementioned cases demonstrate, KSF has the requisite experience and knowledge in litigating complex shareholder cases.

Thus, the Court may be assured that, in granting this motion, the Class will continue to receive legal representation of the highest caliber.

## CONCLUSION

For these reasons, the PSIG respectfully requests that this Court: (1) consolidate the related actions; (2) appoint it as Lead Plaintiff in this consolidated action; (3) approve its selection of KSF as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: December 23, 2019                    Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ Melinda A. Nicholson*
Lewis S. Kahn
Melinda A. Nicholson (MN-6251)
Michael J. Palestina
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: Melinda.Nicholson@ksfcounsel.com
Email: Lewis.Kahn@ksfcounsel.com
Email: Michael.Palestina@ksfcounsel.com

-and-

J. Ryan Lopatka
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: J.Lopatka@ksfcounsel.com

16

*Counsel for Movant Pareteum*
*Shareholder Investor Group and*
*Proposed Lead Counsel for the Class*

17

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 23, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

/s/ Melinda A. Nicholson
Melinda A. Nicholson