UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN O'BRIEN, Individually and On Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>PARETEUM CORPORATION, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>                        Defendants. | Case No: 1:19-cv-09767-AKH<br><br><u>CLASS ACTION</u> |
| AJAY SINGH, Individually and On Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>        v.<br><br>PARETEUM CORPORATION, ROBERT TURNER, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>                        Defendants. | Case No: 1:19-cv-09795-AKH<br><br><u>CLASS ACTION</u> |

[Caption continues on following page]

| | |
|---|---|
| LAILA MANSUR, Individually and On Behalf of All Others Similarly Situated, | Case No: 1:19-cv-09849-AKH |
| Plaintiff, | CLASS ACTION |
| v. | |
| PARETEUM CORPORATION, ROBERT H. TURNER, DENIS MCCARTHY, VICTOR BOZZO, and EDWARD O'DONNELL, | |
| Defendants. | |
| JOHN VARGO, Individually and On Behalf of All Others Similarly Situated, | Case No: 1:19-cv-09936-AKH |
| Plaintiff, | CLASS ACTION |
| v. | |
| PARETEUM CORPORATION, ROBERT H. TURNER, and EDWARD O'DONNELL, | |
| Defendants. | |

**MEMORANDUM OF LAW
IN SUPPORT OF NIKO HOLDING & INVESTMENT LIMITED'S
MOTION FOR CONSOLIDATION OF ACTIONS, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

ARGUMENT .............................................................................................................................. 5

I.   CONSOLIDATION OF THE ACTIONS IS APPROPRIATE ............................................... 5

II.  THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ............................. 6

    A.  The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff ...................... 6

    B.  Movant Satisfies the Lead Plaintiff Provisions of the PSLRA ........................................ 7

        1.    Movant Filed a Timely Motion .................................................................................. 8

        2.    Movant Has the Largest Financial Interest in the Relief Sought ............................ 8

        3.    Movant Meets Rule 23's Typicality and Adequacy Requirements ........................ 9

III. MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED .................................. 13

CONCLUSION ........................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
  No. 08 MDL 1963 (RWS), 2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008)........... 10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................... 10

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)............................................................................................. 10

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005)........................................................................................ 2, 9

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ..................................................................................... 6, 8

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009).................. 12

*Gen. Tel. Co. of the SW v. Falcon*,
  457 U.S. 147 (1982) ....................................................................................................... 11

*Hom v. Vale, S.A.*,
  No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863 (S.D.N.Y. Mar. 7, 2016) ................... 1

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990).......................................................................................... 5, 6

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007)......................................................................................... 8

*In re Milestone Sci. Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998) ......................................................................................... 12

*In re Orion Secs. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008).................... 11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998)......................................................................................... 10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) ...................................................................................... 12

ii

*Primavera Familienstifung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ................................................................................ 6

*Reimer v. Ambac Fin. Grp., Inc.*,
   No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ................... 11

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................ 11

*Strougo v. Brantley Capital Corp.*,
   243 F.R.D. 100 (S.D.N.Y. 2007) ................................................................................ 10

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
   No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006)........................ 8

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ....................................................................... 5, 6, 8

**Statutes**

Private Securities Litigation Reform Act,
   15 U.S.C. § 78u-4................................................................................................ passim

**Rules**

Fed. R. Civ. P. 42(a) ............................................................................................ 5, 6

Fed. R. Civ. P. 23................................................................................................ passim

Movant NIKO Holding & Investment Limited ("NIKO Holding" or "Movant"), on behalf of itself and all other similarly situated persons and entities, hereby respectfully submits this Memorandum of Law in Support of Movant's Motion for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

Presently pending before the Court are four securities class action lawsuits (the "Actions")[1] brought on behalf of a class consisting of all persons and entities, other than defendants, who purchased or otherwise acquired Pareteum Corporation ("Pareteum" or the "Company") securities between December 14, 2017 and October 21, 2019, inclusive (the "Class").[2]  The Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Pareteum and certain of its senior officers (the "Defendants").

The PSLRA, as amended, 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant who has the largest financial interest in the litigation and has made a

---

[1]  The Actions pending in this Court include:  *O'Brien v. Pareteum Corporation, et al.*, Case No. 1:19-cv-09767, filed on October 22, 2019 (the "*O'Brien* Action"); *Singh v. Pareteum Corporation, et al.*, Case No. 1:19-cv-09795, filed on October 23, 2019 (the "*Singh* Action"); *Mansur v. Pareteum Corporation, et al.*, filed on October 24, 2019 (the "*Mansur* Action"); and, *Vargo v. Pareteum Corporation, et al.*, filed on October 27, 2019 (the "*Vargo* Action").  In addition to these Actions, a substantially similar action was filed in the United States District Court for the Eastern District of New York on October 22, 2019, captioned *DeMarco v. Pareteum Corporation, et al.*, Case No. 1:19-cv-05949 (the "*DeMarco* Action").

[2]  Plaintiff in the *O'Brien* Action proposes a class period of March 12, 2019 to October 21, 2019, plaintiff in the *Singh* Action proposes a class period of December 26, 2017 to October 21, 2019, plaintiff in the *Vargo* Action proposes a class period of May 7, 2018 to October 21, 2019, and plaintiff in the *Mansur* Action proposes a longer, more expansive class period of December 14, 2017 to October 21, 2019, inclusive (the "Class Period").  Plaintiff in the *DeMarco* Action proposes the same class period as the *O'Brien* Action.  Movant adopts the longer Class Period, December 14, 2017 through October 21, 2019, inclusive, because it is the "larger, most inclusive class period." *Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863, at *12-13 (S.D.N.Y. Mar. 7, 2016) (collecting cases).

*prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted).  Movant has lost $1,769,099.58 as a result of the alleged fraud during the Class Period.[3]  Movant believes that it has the largest financial interest in the outcome of the Actions.  Moreover, Movant satisfies the requirements of Rule 23 in that its claims are typical of the claims of the Class, and in that it will fairly and adequately represent the interests of the Class.

Accordingly, the Court should grant Movant's Motion in its entirety.

## FACTUAL BACKGROUND

Pareteum touts itself as a Global Cloud Communication's Platform company primarily targeting mobile service and telecommunications providers, mainly Mobile Virtual Network Operators ("MVNO").  ¶ 22.[4]  MVNOs provide wireless communications to customers; MVNOs do not own any network infrastructure and instead rent bandwidth from large carriers like AT&T. *Id*.  Similarly, rather than develop its own software for operations and business support systems, MVNOs purchase those products from companies like Pareteum.  *Id*.

The Company was formerly known as Elephant Talk Communications, Corporation, a declining international telecommunications software and services provider.  ¶ 21.  Beginning in

---

[3] Movant's PSLRA certification identifying its transactions in Pareteum, and a chart identifying its losses, are attached to the Declaration of W. Scott Holleman, dated December 23, 2019 ("Holleman Decl."), as Exhibits 1 and 2, respectively.

[4] Citations to "¶ __" are to paragraphs in the Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") filed in the *Mansur* Action, ECF No. 1.  Unless otherwise defined, capitalized terms shall have the same meaning as set forth in the Complaint.  The facts set forth in the Complaint are incorporated herein by reference.

November 2015, the Company underwent significant restructuring efforts introducing a new management regime and rebranding as "Pareteum." *Id.*

The Company was able to drastically increase its market capitalization between 2016 and 2019, while its stock soared amidst a stream of over 200 press releases issued since the beginning of 2017 touting the Company's purported capabilities and growth. ¶ 24. During the Class Period, the Company's reported revenue grew rapidly, and in May 2019 the Company announced that its Backlog was approaching $1 billion. ¶¶ 23, 25.

At no time during the Class Period did Pareteum disclose the complete backgrounds of certain officers, directors, managers, and significant investors of the Company, nor did Pareteum reveal allegations of fraud and stock manipulation by senior executives of the Company, including defendants Robert H. Turner and Edward O'Donnell, and the connections of Pareteum and its senior managers and large investors with a notorious stock fraud pump-and-dump stock manipulator named Barry Honig, who has been a target of multiple actions and/or investigations by the SEC and the Department of Justice. ¶ 26.[5]

Throughout the Class Period, Defendants issued statements that were materially false and/or misleading because they misrepresented and failed to disclose adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. ¶¶ 34-131. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that, among other things: (i) Pareteum's success was not the result of hyper-demand for the Company's unique products or exceptional service, or the Company's competent management; Defendants had propped up the Company's results by manipulating Pareteum's accounting for revenues, income, and the important Backlog metric; (ii)

---

[5] Facts regarding the undisclosed biographies of certain officers, directors, managers, and significant investors of the Company are included in the *Mansur* Action Complaint only.

3

the Company's profitability was materially overstated as a result of Defendants' failure to properly account for the Company's results of operations and artificial inflation of the Company's financial results; (iii) Pareteum lacked adequate systems of internal operational or financial controls; (iv) as a result of the foregoing, the Company's financial statements and reports were not prepared in accordance Generally Accepted Accounting Principles ("GAAP") and SEC rules; and (v) as a result, Defendants lacked any reasonable basis to claim that Pareteum was operating according to plan, or that Pareteum could achieve the guidance sponsored and/or endorsed by Defendants. ¶¶ 55-56, 132-60.

On June 7, 2019, Marcus Aurelius published a report describing the Company's "massive downside potential" and "exaggerated or fictitious" Backlog, as well as Pareteum's management and executive teams' ties to previously alleged frauds and failures (the "Aurelius Report"). ¶¶ 132-38. That day, Company shares collapsed almost 45%, from a close of about $3.50 per share on June 6, 2019, to an intra-day low of just over $2.00 per share – on very high single-day trading volume of over 26 million shares traded. ¶ 139.

Then, on June 26, 2019, shares of Pareteum declined another 19% after publication of the Viceroy Research report ("Viceroy Report"), "The Wild West of Telecoms." ¶ 140. The Viceroy Report agreed with the findings of the Aurelius Report and further revealed that "Pareteum's 36-month contractual backlog measurement is not an accurate predictor of future profits," among other negative findings regarding the Company's business, operations, and prospects. ¶¶ 140-44.

On August 23, 2019, Pareteum filed with the SEC a waiver and first amendment to credit agreement related to its Post Road Group Credit Facility in order to obtain a waiver of default and additional cash. ¶ 150. Annex A to the waiver contained a list of at least 11 breaches and conditions the Company appeared to fail to satisfy. ¶ 151. To obtain the additional cash of $2.5

4

million, Pareteum was forced to issue 750,000 additional shares of common stock to Post Road Group, diluting existing shareholders. ¶ 152. On this news, the Company's stock fell from just under $3.00 per share on August 23, 2019, to just above $2.00 per share on August 26, 2019. *Id.*

On September 20, 2019, Pareteum published a press release announcing a dilutive $40 million offering of common stock and warrants that immediately drove the price of the Company's stock to just above $1.50 per share, after closing at $1.84 per share on the prior trading day. ¶ 157.

The truth was fully revealed on October 21, 2019, when Pareteum published a press release disclosing "that the Company will restate its previously issued consolidated financial statements as of and for the full year ended December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019[,]" and advising that investors should no longer rely upon the Company's previously released financial statements. ¶ 159. The price of Pareteum shares plummeted on this announcement in after-market trading, closing at $0.73/share on October 21, 2019, and opening at $0.37/share on October 22, 2019. ¶ 161.

## ARGUMENT

### I.    CONSOLIDATION OF THE ACTIONS IS APPROPRIATE

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)).

Consolidation is particularly appropriate in securities class action litigation. *Weltz*, 199 F.R.D. at 131 ("In securities actions where the complaints are based on the same public statements and reports consolidation is appropriate if there are common questions of law and fact . . . .") (citation and quotations omitted); *Primavera Familienstifung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions here present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *Celotex*, 899 F.2d at 1285.

## II.    THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.    The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "as soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a) and (a)(3)(B).

First, the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall publish, in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).

6

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by any purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable of adequately representing the interests of class members." *Id.*   The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The presumption may be rebutted only upon proof by another class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and has, what is to the best of its knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff.   Movant is also unaware of any unique defenses against it that Defendants could raise.   Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in this Action.

**B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA**

As described in further detail below, Movant should be appointed lead plaintiff because it satisfies all of the requirements of the PSLRA.   Movant filed a timely motion to be appointed lead

7

plaintiff, holds the largest financial interest in the relief sought by the Class, and satisfies the typicality and adequacy requirements of Rule 23.

### 1.   Movant Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the *O'Brien* Action published notice of the action on October 22, 2019, within 20 days of the filing of the first-filed complaint, through *Business Wire*, a widely circulated national business-oriented wire service. *See* Holleman Decl., Ex. 3. Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §§ 78u-4(a)(3)(A) and (B) expires on December 23, 2019. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2.   Movant Has the Largest Financial Interest in the Relief Sought

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial interest in the relief sought by an action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Holleman Decl., Ex. 2. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz*, 199 F.R.D. at 132; *Foley*, 272 F.R.D. at 128 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, [the Second Circuit], as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."). *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028, at

*13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period.  15 U.S.C. § 78u-4(e).

Within the Class Period, Movant purchased Pareteum securities in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. Movant has suffered substantial losses of $1,769,099.58 under a last-in-first-out ("LIFO") analysis as a result of Defendants' alleged fraudulent statements.  *See eSpeed*, 232 F.R.D. at 101 (noting that courts prefer losses to be calculated under LIFO); *see also* Holleman Decl., Ex. 2 (Loss Chart).[6]  Movant, thus, has a significant financial interest in the outcome of this case.  To the best of Movant's knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.      Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied:   (1) the class is so numerous that joinder of all members is

---

[6]  Movant purchased a total of 907,615 shares, expended net funds of $2,762,564.67 on its securities during the Class Period, retained 0 shares through the close of the Class Period, and suffered $1,769,099.58 in losses.

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). *See also Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### a.     Movant's Claims Are Typical of the Claims of the Class

Under Rule 23 (a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "However, the claims of the class representative need not be identical to those of all members of the class." *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, No. 08 MDL 1963 (RWS), 2008 U.S. Dist. LEXIS 106327, at *29 (S.D.N.Y. Dec. 29, 2008); *see also In re*

*Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at \*12 (S.D.N.Y. July 7, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (quotations omitted).  A finding of commonality frequently supports a finding of typicality.  *See Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with, the claims of the other Class members.  *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.").  Movant, like the other members of the Class, acquired Pareteum securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby.  Thus, Movant's claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses were a result of Defendants' common course of wrongful conduct.  Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3).  *See Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729, at \*12 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

Movant therefore satisfies the required *prima facie* showing of the typicality requirements of Rule 23 for purposes of this Motion.

### b.    Movant Is an Adequate Representative

Movant is also an adequate representative for the Class.    Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class."   Adequate representation will be found if the representative has:  (a) retained able and experienced counsel and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider:  (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because his interests are aligned with those of the putative class, and he has retained competent and experienced counsel.").  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class.  15 U.S.C. § 78u-4(a)(3)(B).

Movant meets the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative Class.  Not only is there no evidence of conflict between the interests of Movant and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial loss it has incurred as a result of the wrongful conduct alleged therein.  *See In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (plaintiff's "financial stake in the litigation provides an adequate incentive for [plaintiff] to vigorously prosecute the action").  Indeed, Movant has already taken steps which demonstrate that it both recognizes and will protect the interests of the Class, including:

12

(1) executing a certification detailing its Class Period transactions and expressing its willingness to serve as Class representative; (2) moving this Court to be appointed lead plaintiff; and (3) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud.  Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and therefore satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In addition, because Movant sustained the largest amount of losses from Defendants' alleged wrongdoing, Movant is the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this Action.

## III.   MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Movant has selected and retained BES as the proposed Lead Counsel for the Class.

As set forth in its accompanying firm résumé (Holleman Decl., Ex. 4), BES is highly accomplished in, and is currently acting as lead counsel in, a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors.  The members of the firm have extensive experience in successfully prosecuting complex securities class actions such as this and are well-qualified to represent the Class.  Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

13

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the above-captioned actions; (2) appoint Movant as Lead Plaintiff on behalf the Class; (3) approve Movant's selection of BES as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: December 23, 2019         Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

By: */s/ W. Scott Holleman*
W. Scott Holleman
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone: (646) 860-9449
Facsimile: (212) 214-0506
Email: holleman@bespc.com

*Counsel for Movant and Proposed*
*Lead Counsel for the Class*

14

## <u>CERTIFICATE OF SERVICE</u>

I, W. Scott Holleman, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 23rd day of December, 2019.

*/s/ W. Scott Holleman*
W. Scott Holleman