UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN O'BRIEN, Individually and On Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PARETEUM CORPORATION, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>Defendants. | CASE NO. 1:19-cv-09767-AKH-GWG |
| AJAY SINGH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PARETEUM CORPORATION, ROBERT TURNER, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY,<br><br>Defendants. | CASE NO. 1:19-cv-09795-AKH-GWG |
| LAILA MANSUR, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PARETEUM CORPORATION, ROBERT H. TURNER, DENIS MCCARTHY VICTOR BOZZO and EDWARD O'DONNELL,<br><br>Defendants. | CASE NO. 1:19-cv-09849-AKH-GWG |

**THE PARETEUM SHAREHOLDER INVESTOR GROUP'S
OMNIBUS MEMORANDUM IN OPPOSITION TO
<u>ALL OTHER MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.    ARGUMENT............................................................................................... 3

      A.    APPLICABLE LEGAL STANDARDS.......................................................... 3

      B.    NIKO HOLDING SHOULD NOT BE APPOINTED LEAD PLAINTIFF BECAUSE IT FAILS TO SATISFY THE REQUIREMENTS OF RULE 23 ....................................................... 4

           1.    ISSUES WITH NIKO HOLDING'S TRADING DATA RENDER IT ATYPICAL AND INADEQUATE ............................................................... 4

           2.    NIKO HOLDING SUFFERS FROM OTHER UNIQUE DEFENSES/CLAIMS THAT RENDER IT ATYPICAL AND INADEQUATE................................................... 8

      C.    IN THE ALTERNATIVE, THE COURT SHOULD ALLOW DISCOVERY INTO THE ISSUES PLAGUING NIKO HOLDING'S MOTION ................................................................... 13

      D.    THE PSIG SHOULD BE APPOINTED LEAD PLAINTIFF .......................................... 14

      E.    CHANG LEE AND CYNTHIA SOTO SHOULD ALSO NOT BE APPOINTED LEAD PLAINTIFF ......................................................... 19

III.   CONCLUSION........................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Andrade v. Am. Apparel, Inc.*,
No. 10-6352, 2011 U.S. Dist. LEXIS 79795 (C.D. Cal. Mar. 15, 2011) .............................. 14

*Applestein v. Medivation, Inc.*,
No. 10-00998, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 20, 2010) ..................... 6-7, 10

*Bang v. Acura Pharms., Inc.*,
No. 10-5757, 2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011) ................................... 6-7

*Baydale v. Am. Express Co.*,
No. 09-3016, 2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. Aug. 14, 2009) .............................. 12

*Beck v. Status Game Corp.*,
No. 89-2923, 1995 U.S. Dist. LEXIS 9978 (S.D.N.Y. July 14, 1995) ............................ 3, 5-6

*Broadfoot v. Barrick Gold Corp.*,
No. 17-3507, 2017 U.S. Dist. LEXIS 142872 (S.D.N.Y. Aug. 9, 2017) .............................. 14

*Brown v. Biogen IDEC, Inc.*,
No. 05-10400, 2005 U.S. Dist. LEXIS 19350 (D. Mass. July 26, 2005) .............................. 14

*Camp v. Qualcomm Inc.*,
No. 18-1208, 2019 U.S. Dist. LEXIS 10269 (S.D. Cal. Jan. 22, 2019) ............................... 7-8

*Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Oh. 2005) ........................................................................................ 6

*Corwin v. Seizinger*,
No. 07-6728, 2008 U.S. Dist. LEXIS 3045 (S.D.N.Y. Jan. 8, 2008) ..................................... 2

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ......................................................................................................... 7

*Freudenberg v. E*Trade Fin. Corp.*,
No. 07-8538, 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 16, 2008) ............................... 18

*Gross v. AT&T Inc.*,
No. 19-2892, 2019 U.S. Dist. LEXIS 128615 (S.D.N.Y. July 31, 2019) ............................. 12

*Hansen v. Ferrellgas Partners, L.P.*,
No. 06-7840, 2017 U.S. Dist. LEXIS 8145 (S.D.N.Y. Jan. 19, 2017) ........................... 10, 15

*In re Bard Assocs., Inc.*,
No. 09-6243, 2009 U.S. App. LEXIS 26289 (10th Cir. Dec. 2, 2009) ................................. 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2011) ............................................................................................. 15

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) .................................... 7

*In re Firstplus Fin. Group, Inc. Sec. Litig.*,
No. 98-2551, 2002 U.S. Dist. LEXIS 20446 (N.D. Tex. Oct. 23, 2002) ................................. 6

*In re IMAX Sec. Litig.*,
No. 06-6128, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. 2009) ....................................... 12, 13

*In re Marsh & McLennan Cos.*,
MDL No. 1744, 2008 U.S. Dist. LEXIS 57542 (S.D.N.Y. July 30, 2008) ............................ 11

*In re Neopharm, Inc. Sec. Litig.*,
No. 02-2976, 2004 U.S. Dist. LEXIS 5814 (N.D. Ill. Apr. 8, 2004) ...................................... 17

*In re NYSE Specialists Sec. Litig.*,
240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................................................ 13

*In re Sequans Commc'ns. S.A. Sec. Litig.*,
289 F. Supp. 3d 416 (E.D.N.Y. 2018) ............................................................................ 16, 18

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ........................................................................................ 13

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ........................................................................................ 4, 15

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ........................................................................................ 18

*Landry v. Price Waterhouse Chartered Accountants*,
123 F.R.D. 474 (S.D.N.Y. 1989) ....................................................................................... 3-4

*Micholle v. Ophthotech Corp.*,
No. 17-210, 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ............................... 7-8

*Mustafin v. Greensky, Inc.*,
No. 18-11071, 2019 U.S. Dist. LEXIS 55296 (S.D.N.Y. Mar. 29, 2019) ....................... 15, 17

*Nakamura v. BRF S.A.*,
No. 18-2213, 2018 U.S. Dist. LEXIS 110187 ................................................................... 9-10

*Newby v. Enron Corp. (In re Enron Corp. Sec. Litig.)*,
206 F.R.D. 427 (S.D. Tex. 2002) ......................................................................................... 6

*Reimer v. Ambac. Fin. Group, Inc.*,
No. 08-411, 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) .................................. 18

*Ruland v. InfoSonics*,
No. 06-1231, 2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) .............................. 7

*Sczesny Tr. v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. Sept. 21, 2004) ............................................................. 16

*Shi v. SINA Corp.*,
    No. 05-2154, 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) .................................. 11

*Smajlaj v. Brocade Commc'ns Sys.*,
    No. 05-02042, 2006 U.S. Dist. LEXIS 97618 (N.D. Cal. Jan. 12, 2006) .......................... 9-12

*Tomaszewski v. Trevena*,
    383 F. Supp. 3d 409 (E.D. Pa. May 29, 2019) .................................................... 8, 14

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................. 17

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................ 12

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

iv

The Pareteum Shareholder Investor Group ("PSIG" or "Movant")[1] respectfully submits this omnibus memorandum of law in opposition to all other motions and in further support of its motion for appointment as lead plaintiff.[2]

## I.  INTRODUCTION

Multiple cases, all of which assert securities fraud claims against Pareteum Corporation ("Pareteum" or the "Company"), have been filed in this Court by diverse plaintiffs.[3] On December 23, 2019, eleven movants and/or groups of movants petitioned this Court to be appointed Lead Plaintiff, and for the consolidation of these actions.[4] Since then, eight movants and/or groups have withdrawn their motions.[5] In order of claimed losses, the remaining movants rank as follows: (1) NIKO Holding & Investment Ltd. ("NIKO Holding") (Dkt. No. 40), (2) the PSIG (Dkt. No. 21), and (3) Chang Lee and Cynthia Soto (Dkt. No. 28).

The PSLRA requires that the Court appoint a "lead plaintiff" in private securities class actions. 15 U.S.C. § 78u-4(a)(3)(B)(i). The Lead Plaintiff is "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing

---

[1]      Dkt. references herein refer to filings in *O'Brien v. Pareteum Corp., et al.*, No. 19-9767; capitalized terms not defined herein have the same meaning as in Movant's opening brief. Dkt. No. 22. Unless noted, all emphasis herein is added and all internal quotation marks and citations are omitted.

[2]      As explained in Movant's opening papers, the PSIG is comprised of five investors who, as active investors in Pareteum, have long-standing associations, have known one another prior to the commencement of this litigation, and have collectively decided to pursue appointment as Lead Plaintiff herein.  Dkt. No. 22 at 1; Dkt. No. 23, Ex. 1.

[3]      In addition to the actions captioned above, the fourth related action filed in this District, *Vargo v. Pareteum Corp., et al.*, No. 19-09936, was voluntarily dismissed on January 3, 2020. *Vargo* Dkt. No. 16. Additionally, one action asserting similar allegations has also been filed in the Eastern District of New York, *DeMarco v. Pareteum Corp., et al.*, No. 19-05949. Notably, that action was filed by the same counsel (The Rosen Law Firm, P.A.) that represents movant Tri Doan in this action, whose Lead Plaintiff motion has since been withdrawn. Dkt. No. 55. To the extent the *DeMarco* Action is not voluntarily dismissed prior to then, the PSIG intends to move to transfer that action at the earliest appropriate time following its appointment as Lead Plaintiff herein.

[4]      All eleven movants support consolidation.

[5]      The withdrawn motions are from: (1) John Vargo, Thinh Van Tran, Paul Berger, and John Murphy, (2) Marco Scaccia, (3) Richard Radford, Brian Bock, and Jacob Friedman, (4) Tri Doan, (5) Philip Cacioppo and Reed Darly, (6) Frederick Ruehr, (7) Gateway Securities LLC, and (8) Clarence Bassarath and James Lisi. Dkt. Nos. 52-59. Thus, there are now three remaining movants for Lead Plaintiff.

the interests of class members." *Id.* The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person, or group of persons, that: a) moved for appointment as Lead Plaintiff; b) has the largest financial interest in the relief sought by the class; ***and c) otherwise satisfies the requirements of Rule 23***. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Corwin v. Seizinger*, No. 07-6728, 2008 U.S. Dist. LEXIS 3045, at *2-3 (S.D.N.Y. Jan. 8, 2008).

Here, the PSIG is the most adequate plaintiff because it has the largest financial interest in the relief sought by the Class *that also satisfies the requirements of Rule 23*. The movant claiming the largest financial interest in this litigation—NIKO Holding—simply cannot serve as Lead Plaintiff. As demonstrated below, while NIKO Holding claims a loss of $1,769,099.58, its status as the presumptive Lead Plaintiff is rebutted because, for the litany of reasons discussed herein, NIKO Holding does not satisfy the typicality and adequacy requirements of Rule 23 and is further subject to unique defenses.[6] 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). By way of example only, NIKO Holding appears to have engaged in insider trading of Pareteum stock, has a questionable, criminal past, and may even lack standing to prosecute the very claims at issue in this litigation. These issues render NIKO Holding ineligible for appointment as Lead Plaintiff, and there is simply no justification for appointing a representative, like NIKO Holding, whose leadership will doom this litigation from the outset—especially when an eligible, qualified Lead Plaintiff like the PSIG exists.

By contrast, the PSIG, with almost $1.5 million in losses as a result of its transactions in Pareteum stock during the Class Period, has suffered by far the greatest loss of any ***eligible*** movant. What is more, the PSIG's claims are identical, non-competing, and non-conflicting with the claims of the other Class members, it has no conflicts with the other Class members, and it

---

[6]     As discussed *infra*, movants Chang Lee and Cynthia Soto should also not be appointed Lead Plaintiff.

has retained competent and experienced counsel. *See* Dkt. No. 22 at 12-16. Accordingly, because the PSIG has the largest financial interest in the relief sought by the class and satisfies both the typicality and adequacy requirements of Rule 23, it should be appointed Lead Plaintiff and the remaining movants' motions should be denied.

## II. ARGUMENT

### A. APPLICABLE LEGAL STANDARDS

As outlined in considerable depth in the PSIG's opening brief, to identify the "most adequate plaintiff," the PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title [15 U.S.C. §§78a, *et seq*.] is the person or group of persons that … in the determination of the court, has the largest financial interest in the relief sought by the class; ***and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure***." 15 U.S.C. §78u- 4(a)(3)(B)(iii)(I); *see also* Dkt. No. 22 at 6-14 (outlining legal standards in depth). The PSLRA's rebuttable presumption may be rebutted upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Notably, "it does not matter whether a unique defense ultimately will prove meritorious"; it is enough for disqualification that a proposed Lead Plaintiff "will be required to devote considerable time to rebut the unique defense." *Beck v. Status Game Corp.*, No. 89-2923, 1995 U.S. Dist. LEXIS 9978, at *11(S.D.N.Y. July 14, 1995); *see also Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("[W]hether these defenses [that plaintiffs seeking class certification accessed inside information] will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members."). "If the presumptive lead plaintiff is disqualified on these grounds, the candidate's position is forfeited and the court returns to the

3

first phase to determine a new presumptive lead plaintiff. The process repeats itself until a candidate succeeds in both the first and second phases of inquiry." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005).

Here, although NIKO Holding claims to be the presumptive Lead Plaintiff based on its financial loss (which, as noted below, is itself in question), NIKO Holding does not satisfy Rule 23 because it is atypical and inadequate. Accordingly, as the movant with the next largest financial loss that does satisfy Rule 23, the Court should appoint the PSIG as Lead Plaintiff and approve its selection of counsel.

**B.      NIKO HOLDING SHOULD NOT BE APPOINTED LEAD PLAINTIFF BECAUSE IT FAILS TO SATISFY THE REQUIREMENTS OF RULE 23**

**1.      ISSUES WITH NIKO HOLDING'S TRADING DATA RENDER IT ATYPICAL AND INADEQUATE**

While NIKO Holding touts the "large financial loss it has incurred as a result of the wrongful conduct alleged therein" (Dkt. No. 41 at 12), it ignores entirely the large financial loss it *avoided* through its apparent insider trading. The Class Period in this action ends on Monday, October 21, 2019, when, "*after the market closed*, the Company disclosed that it would restate its previously issued financial statements for the full year ended December 31, 2018 and the interim periods ended March 31, 2019 and June 30, 2019." Dkt. 22 at 3. Yet, beginning on Friday, October 18, 2019 and continuing through Monday, October 21, 2019, mere hours *before* the Company's *after-market* corrective disclosure that resulted in a more than 59% drop in stock price (*id.* at 4), NIKO Holding began dumping its Pareteum stock at a staggering rate. In total, NIKO Holding sold 147,500 Pareteum shares on October 18, 2019 and 370,00 Pareteum shares on October 21, 2019—*68.8% of its then-current holdings*. Dkt. 45.1 at 3-4. Not only do these trades contrast sharply with NIKO Holding's prior sales during the Class Period, which were virtually non-

4

existent,[7] but they are also atypical relative to Pareteum's total trade volume on those days. Indeed, NIKO Holding's sales represent a whopping 4.65% and 8.24% of all sales of Pareteum stock on October 18 and 21, 2019, respectively. *See* Supplemental Declaration of Melinda A. Nicholson in Support of the Pareteum Shareholder Investor Group's Omnibus Memorandum in Opposition to All Other Motions for Appointment as Lead Plaintiff ("Nicholson Supp. Decl."), Ex. 14.[8] Even more unusual is the fact that NIKO Holding claims in its Certification to have sold 300,000 of its Pareteum shares on October 21, 2019—purportedly at once and at the single price of $0.75 per share; yet, Pareteum's sales data from that day do not show near that amount of shares sold at $0.75 per share, suggesting that NIKO Holding's Certification is either incorrect and misleading or that the transaction occurred in a private, off-market setting. *Compare* Dkt. 45-2 at 3, *with* Nicholson Supp. Decl., Ex. 15 (list of all Pareteum sales occurring at $0.75 per share on October 21, 2019, showing only 95,409 total shares sold at that price, let alone a sale of 300,000 shares in a single transaction).

The suspicious timing and unusual volume of NIKO Holding's sales raise a strong inference that it traded on the basis of inside information, rendering it instantly atypical and inadequate.[9] *See, e.g.*, *Beck*, 1995 U.S. Dist. LEXIS 9978, at *9-12 (denying motion for class

---

[7]      NIKO Holding's purchase of 100,000 shares of Pareteum stock followed by a sale of 100,000 shares of Pareteum stock from "Account 1" on August 5, 2019 appears to be a one-off day-trade of the stock, rather than an investment decision to liquidate. Dkt. No. 45-1 at 3.

[8]      Yahoo Finance lists Pareteum's total trading volume on October 18, 2019 and October 21, 2019 as 6,343,300 and 8,978,700 shares, respectively. Because total trading volume is comprised of 50% sales and 50% purchases, halving those numbers results in total *sales* on those dates of 3,171,650 and 4,489,350, respectively. NIKO Holding's sales thus represented 4.65% (147,500/3,171,650) and 8.24% (370,000/4,489350) of total sales on those dates, respectively.

[9]      Notably, it is not unlikely that NIKO Holding had a relationship with Pareteum such that it would be privy to Pareteum's confidential information. Indeed, NIKO Holding purports to be a "holding company for several Ukrainian entities." Dkt. No. 45.1 ¶1. A website that appears to be for NIKO Holding also indicates that the Company is "a leading operator in Ukraine's automotive distribution and retail sectors and operates via its subsidiaries in the areas of logistics, financial and IT services." *See* https://niko-holding.com (last visited January 6, 2020). Pareteum, for its part, recently entered the Ukraine market in earnest, announcing in a press release on November 1, 2018 that it

certification by lead plaintiff who traded on the basis of inside information because he was atypical of the class, and noting that "***it does not matter whether a unique defense ultimately will prove meritorious because the fact remains that [the lead plaintiff] will be required to devote considerable time to rebut the unique defense***"); *Newby v. Enron Corp. (In re Enron Corp. Sec. Litig.)*, 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) (denying motion for lead plaintiff by entity that may have *purchased* its shares on the basis of inside information because it was atypical of the class and had antagonistic interests from it); *In re Firstplus Fin. Group, Inc. Sec. Litig.*, No. 98-2551, 2002 U.S. Dist. LEXIS 20446, at \*15 (N.D. Tex. Oct. 23, 2002) (finding that movant with insider knowledge "faces unique defenses that render him atypical of other class members" and denying his motion); *Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 310 (S.D. Oh. 2005) (denying motion for appointment as lead plaintiff where questionable trading practices of proposed lead plaintiff may subject it to unique defenses rendering it atypical and inadequate).

At the very least, NIKO Holding engaged in trading whereby it ***avoided a $230,335.99 loss***, thereby rendering it an atypical plaintiff that is subject to unique defenses. Nicholson Supp. Decl., Ex. 16. Courts have previously found that such suspicious trading patterns and volume rendered a lead plaintiff applicant atypical and thus not appropriate for appointment. *See Applestein v. Medivation, Inc.*, No. 10-00998, 2010 U.S. Dist. LEXIS 98255, at \*10 (N.D. Cal. Sept. 20, 2010) (presumptive lead plaintiff's record of high-frequency and large trades raised serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions of the defendant); *Bang v. Acura Pharms., Inc.*, No. 10-5757, 2011 U.S. Dist. LEXIS 2550, at \*16 (N.D. Ill. Jan. 11,

---

was "partnering with the City of Kyiv, Ukraine, to bring Kyiv's Smart City Accelerator to Silicon Valley, in cooperation with Pareteum strategic partner iPass." Nicholson Supp. Decl., Ex. 17. Pareteum—and its now-acquired subsidiary iPass—provide cloud and WiFi services internationally (*see* Dkt. No. 1 at 4-5), and thus very well may have intersected with NIKO Holding's IT and/or other services.

2011) ("[U]nusually high-volume and high frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions.").

Furthermore, while NIKO Holding claims the largest financial loss in this litigation, it nonetheless erred in calculating those losses, further suggesting that NIKO Holding is inadequate. Indeed, NIKO Holding's loss chart (Dkt. No. 45-2) includes numerous losses that are not recoverable under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the controlling precedent. In *Dura*, the Supreme Court reasoned that if a "purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342; *see also In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2007 U.S. Dist. LEXIS 14878, at *16-20 (E.D.N.Y. Mar. 2, 2007) (observing that "the court would be abdicating its responsibility under the PSLRA if it were to ignore … [loss causation] at this [lead plaintiff] stage," and that "[t]he exclusion of in-and-out shares follows directly from the underlying holding in *Dura*"). And, "[a]lthough a precise determination of damages is not possible at this stage of the litigation, courts typically equate 'largest financial interest' with the amount of potential recovery." *Ruland v. InfoSonics*, No. 06-1231, 2006 U.S. Dist. LEXIS 79144, at *13-16 (S.D. Cal. Oct. 23, 2006). Here, by including losses that are not recoverable under *Dura* and its progeny, NIKO Holding has inflated its losses by $69,581.31. *See* Nicholson Supp. Decl., Ex. 18. Such errors in calculating losses have themselves warranted a finding that a proposed lead plaintiff is inadequate, as it suggests a lack of attention to detail that is incompatible with the high standards expected of a fiduciary. *See Micholle v. Ophthotech Corp.*, No. 17-210, 2018 U.S. Dist. LEXIS 41120, at *24 (S.D.N.Y. Mar. 13, 2018) (errors in submissions "militate against appointment" as lead plaintiff and render movant inadequate under Rule 23's adequacy requirement); *Camp v. Qualcomm Inc.*, No. 18-1208, 2019 U.S. Dist. LEXIS 10269, at *9 (S.D. Cal. Jan. 22, 2019) (lead plaintiff movant

7

did not satisfy the adequacy requirement of Rule 23 "because of significant errors in the transaction records and loss calculations accompanying" his motion); *Tomaszewski v. Trevena*, 383 F. Supp. 3d 409, 414 (E.D. Pa. May 29, 2019) (noting that "errors in [] sworn statements amount to a substantial degree of carelessness and raise doubt as to whether [a lead plaintiff] will fairly and adequately represent the best interests of the class").

In sum, NIKO Holding's own trading data provides the requisite proof that it would be an atypical and inadequate plaintiff to lead this litigation, and its motion should be denied.

### 2.     NIKO HOLDING SUFFERS FROM OTHER UNIQUE DEFENSES/CLAIMS THAT RENDER IT ATYPICAL AND INADEQUATE

In addition to the primary issue with NIKO Holding's trade data, NIKO Holding is subject to other unique defenses and/or claims, any one of which render it atypical and inadequate.

First, the Certification submitted by NIKO Holding states simply that NIKO Holding is a Cypriot holding company for several unidentified Ukrainian entities in various lines of business, and is signed by a Managing Director, Ivan Nikolaychuk. Dkt. No. 45-1. No further information whatsoever is provided about NIKO Holding, such as information regarding its management, structure, sophistication, financial expertise, experience with securities litigation or any other information that would enable to Court to evaluate NIKO Holding's typicality and adequacy to determine whether NIKO Holding is subject to any unique defenses. *Id.* These deficiencies are fatal, and require that its motion for Lead Plaintiff be denied.

This Court recently addressed a similar situation in *Gross v. AT&T, Inc.*, No. 19-02892 (S.D.N.Y.), where proposed lead plaintiff Pro-Alpha Investments Limited ("Pro-Alpha") submitted a deficient PSLRA certification in which it "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation." *See* Nicholson Supp. Decl., Ex. 19 at 3 (June 24, 2019 Order); *see also* Nicholson Supp.

8

Decl., Ex. 20 (Pro-Alpha certification). The court denied Pro-Alpha's motion for lead plaintiff, "declin[ing] to appoint as lead plaintiff an entity that lacks basic transparency even at this juncture." Nicholson Supp. Decl., Ex. 19 at 3-4. Importantly, the certification submitted by Pro-Alpha in that case is nearly identical to the one submitted by NIKO Holding here. *Compare* Nicholson Supp. Decl., Ex. 20, *with* Dkt. No. 45-1.

Similarly, in *Smajlaj v. Brocade Communications System*s, No. 05-02042, 2006 U.S. Dist. LEXIS 97618, at *10-12 (N.D. Cal. Jan. 12, 2006), the court declined to appoint Intrepid Capital Management ("Intrepid") as lead plaintiff because there was a dearth of information about its "precise corporate structure … which of its hedge funds actually held stock in corporate defendant, who manages which hedge funds, and who, if anyone, has authority and permission from limited partners to proceed with this litigation." The court also was concerned about which entity actually held the stock at issue and whether Intrepid had authority to act on behalf of that entity. *Id.* Ultimately, the court concluded that there were simply "too many questions surrounding Intrepid's standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole … [which] lead the Court to conclude that Intrepid will not adequately represent the interests of the plaintiff class." *Id.* at *12.

So too, here, NIKO Holding's opaque corporate structure and bare-bones Certification are insufficient to allow the court to conclude that NIKO Holding is a typical and adequate lead plaintiff and/or whether it is subject to any unique defenses and, therefore, its motion for lead plaintiff must be denied. *See Nakamura v. BRF S.A.*, No. 18-2213, 2018 U.S. Dist. LEXIS 110187, at *9-10 (S.D.N.Y. July 2, 2018) (finding that declaration of proposed lead plaintiff "has not made a satisfactory showing as to the sophistication of the group's proposed members [because] [i]t does not explain the declarants' business expertise, educational background, management experience

or history of monitoring or participating in litigation"); *Hansen v. Ferrellgas Partners, L.P.*, No. 06-7840, 2017 U.S. Dist. LEXIS 8145, at \*17 (S.D.N.Y. Jan. 19, 2017) (finding that declarations' lack of detail regarding the [proposed lead plaintiffs'] backgrounds or management or financial expertise did not weigh in favor of a finding of adequacy); *Applestein*, 2010 U.S. Dist. LEXIS 98255, at \*14-15 (expressing "concerns about [plaintiff's] transparency" and noting that "the lack of transparency and public[ly] available information about [plaintiff] makes it impossible for the parties or the court to determine whether or not [plaintiff] is a typical investor").

This is all the more true in light of NIKO Holding's questionable background and skeletal corporate structure. Indeed, and second, NIKO Holding has good reason not to provide any information about itself to the Court. According to its filings with the Cypriot government, NIKO Holding is merely the new name of a company called Vreston Limited—an entity with a sordid and allegedly criminal past that featured prominently in the infamous "Magnitsky case." Nicholson Supp. Decl., Ex. 21. The Magnitsky case refers to the allegations by Russian whistleblower Sergei Magnitsky, who exposed the 2007 theft of $230 million from the Russian state, sanctioned and carried out by Russian officials.[10] *See* https://en.wikipedia.org/wiki/Sergei_Magnitsky (last visited January 6, 2020). A July 30, 2018 article by investigative reporter Elena Loginova (titled "Money from 'Magnitsky Case' Passed Through Ukraine") detailed that $97 million from the theft passed through Ukrainian banks ARMA and Legbank. Nicholson Supp. Decl., Ex. 22. Notably, the article reports that, between February and March of 2008, two men withdrew approximately $57 million in cash from those banks through "accounts of a Cypriot company called Vreston Limited." *Id.* NIKO Holding's involvement in such far-reaching criminal conduct renders it atypical and

---

[10]     Magnitsky died under mysterious circumstances in a Russian prison in 2009 while being held without trial. *See* https://en.wikipedia.org/wiki/Sergei_Magnitsky (last visited January 3, 2020). In 2012, the United States Congress and President Barack Obama enacted the Magnitsky Act, barring those Russian officials believed to be involved in Magnitsky's death from entering the United States or using its banking system. *Id.*

inadequate to serve as Lead Plaintiff here. *In re Marsh & McLennan Cos.*, MDL No. 1744, 2008 U.S. Dist. LEXIS 57542, at *20-21 (S.D.N.Y. July 30, 2008) (stating that many courts "review information regarding investigations, charges, and determinations of wrongdoing in deciding whether a proposed class representative will adequately represent a putative class"); *Shi v. SINA Corp.*, No. 05-2154, 2005 U.S. Dist. LEXIS 13176, at *14-15 (S.D.N.Y. July 1, 2005) (finding felon convicted of providing false information to a financial institution would not "fairly and adequately protect the interests of the proposed class").

Moreover, it would strain credulity to believe that the withdrawal of $57 million from NIKO Holding's accounts escaped the notice of its Managing Director, Ivan Nikolaychuk, who signed its Certification here. Dtk. No. 45-1. Not only is *Niko*laychuk the apparent namesake of NIKO Holding, but he is also the company's sole director in any true sense of the word. While two other persons, Giannakis Biolaris and Katia Apostoloy, purport to serve as directors of NIKO Holding (Nicholson Supp. Decl., Ex. 21), further investigation reveals they are directors in name only. Indeed, Biolaris appears to have served as a director or officer for *246* different Cypriot limited liability companies (123 of which are still active), and Apostoloy appears to have served a director or officer for *58* different Cypriot limited liability companies (52 of which are still active). Nicholson Supp. Decl., Exs. 23-24. Even more alarming, all of those companies appear to be located at the same address as NIKO Holding—Kennedy, 89, Floor 2, Flat 201, Cyprus. *Id.* At best, it seems that Biolaris and Apostoloy act as a sort of "mail drop" for foreigners looking to set up Cypriot companies and are not acting fiduciaries in any real sense. *See also* Nicholson Supp. Decl., Ex. 25. At worst, in light of NIKO Holding's involvement in the Magnitsky case, it is far more sinister.

Finally, NIKO Holding is atypical and inadequate because it may not even have standing

11

to pursue the Class' claims. Article III of the Constitution "require[s] that plaintiffs establish their 'standing' as 'the proper part[es] to bring' suit. *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008). "[T]he minimum requirement for an injury-in-fact [for purposes of Article III standing] is that the plaintiff have legal title to, or a property interest in, the claim" being asserted. *Id.* at 108; *Smajlaj*, 2006 U.S. Dist. LEXIS 97618, at *10-12 (N.D. Cal. Jan. 12, 2006) (declining to appoint lead plaintiff where questions remained as to "which of its hedge funds actually held stock in corporate defendant" and "who, if anyone, has authority and permission from the limited partners to proceed with this litigation"). The court in *W.R. Huff* found that the plaintiff did not meet Article III's injury-in-fact requirement where the plaintiff investment advisor had authority to make investment decisions and litigate on its investor clients' behalf but never obtained assignments from his clients transferring ownership of the shares. 549 F.3d at 106-111. While *W.R. Huff* was not a class action, courts in this District have repeatedly applied its reasoning to securities class action lead plaintiff proceedings similar to this case. *See, e.g.*, *Gross v. AT&T Inc.*, No. 19-2892, 2019 U.S. Dist. LEXIS 128615, at *8-10 (S.D.N.Y. July 31, 2019) (finding fund management company subject to potential risk that it lacked property interest in the asserted claims, which was sufficient to rebut fund management company's presumptive lead-plaintiff status); *Baydale v. Am. Express Co.*, No. 09-3016, 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. 2009) (declining to appoint an investment adviser as lead plaintiff because its claim of third-party standing would render it atypical); *In re IMAX Sec. Litig.*, No. 06-6128, 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. 2009) (replacing an investment adviser as lead plaintiff in the wake of *W.R. Huff*).

Here, although NIKO Holding's Certification is vague, it suggests that NIKO Holding may have been acting in an investment advisor capacity with respect to its investment in Pareteum.

12

First, the company's full name is NIKO Holding **& Investment** Limited. Dkt. No. 45-1. The Certification further describes NIKO Holding's business as including "**investment and asset management**." *Id.* Yet nothing in NIKO Holding's moving papers indicates whether it owned its Pareteum shares in its own name or whether it invested on behalf of its investment advisor clients; and, if the latter, whether NIKO Holding obtained assignments for all of the shares it includes in its loss calculation. *Compare* Dkt. No. 45-1, *with* Dkt. No. 13-2 (movant Gateway's Declaration of Assignment).[11]

In short, a questionable mail-drop entity with criminal ties that may not even have standing to pursue the Class' claims and who may therefore doom this litigation from the start simply cannot be appointed Lead Plaintiff in this matter—especially not when the PSIG, with just slightly smaller losses, suffers from no such infirmities. For all of the above reasons, the PSIG again has shown the requisite proof that NIKO Holding is atypical and inadequate and that its motion should be denied.

## C.    IN THE ALTERNATIVE, THE COURT SHOULD ALLOW DISCOVERY INTO THE ISSUES PLAGUING NIKO HOLDING'S MOTION

Purely in the alternative, to the extent the Court finds such showing herein concerning NIKO Holding's atypicality and inadequacy falls short of the "proof" required to rebut the Lead Plaintiff presumption, the PSIG respectfully submits that it has demonstrated a "reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class" and that the Court should therefore permit discovery into these matters before ruling on

---

[11]    Notably, any attempt to put forth such information now would be untimely. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 139 (S.D.N.Y. 2007) (co-lead plaintiff who had not been legally assigned rights was removed "based on the infirmity in Empire NJ's original motion for appointment as lead plaintiff"); *In re Bard Assocs., Inc.*, No. 09-6243, 2009 U.S. App. LEXIS 26289, at *3 (10th Cir. Dec. 2, 2009) ("[T]he PSLRA's strict time limits preclude[s] [the court] from considering assignments made after the filing of [movant's] lead plaintiff motion."); *see also In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009) ("[A]n assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing must exist from the commencement of litigation."); *In re IMAX*, 2009 U.S. Dist. LEXIS 58219, at *5-9 (same).

13

the pending motions.[12] 15 U.S.C. §78u-4(a)(3)(B)(iv); *see also Broadfoot v. Barrick Gold Corp.*, No. 17-3507, 2017 U.S. Dist. LEXIS 142872, at \*4 (S.D.N.Y. Aug. 9, 2017) (granting discovery into the presumptive lead plaintiff's activities as a short seller and day trader); *Tomaszewski*, 383 F. Supp. at 413 (ordering lead plaintiff movant with contested financial loss calculation to produce trade confirmations); *Andrade v. Am. Apparel, Inc.*, No. 10-6352, 2011 U.S. Dist. LEXIS 79795, at \*27 (C.D. Cal. Mar. 15, 2011) (granting a request for limited discovery, including deposition, regarding whether proposed lead plaintiff would fairly and adequately represent the class); *Brown v. Biogen IDEC, Inc.*, No. 05-10400, 2005 U.S. Dist. LEXIS 19350, at \*7 (D. Mass. July 26, 2005) (finding "reasonable basis" standard satisfied and allowing "a limited period [for competing lead plaintiff movant] to conduct discovery into the issue of adequacy").

### D.   THE PSIG SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA instructs courts to appoint as lead plaintiff the "person or group of persons" with the "largest financial interest" in the relief sought by the class, that "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). This Court has laid out the process as follows:

> The PSLRA requires that the most adequate plaintiff be determined by a two-step competitive process. The first step establishes [a] presumptive lead plaintiff ….
>
> In order to rebut the designation, class members must prove either that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. ***If the presumptive lead plaintiff is disqualified on these grounds, the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff. The process repeats itself until a candidate succeeds in both the first and second phases of inquiry***.

---

[12]   Discovery would be warranted concerning the following non-exclusive topics: (1) whether NIKO Holding traded on the basis of inside information, including information regarding its relationship to Pareteum and/or iPass; (2) NIKO Holding's involvement in the Magnitsky case; (3) NIKO Holding's corporate structure and the identities of its directors and officers; and (4) NIKO Holding's standing to assert the claims herein.

*In re eSpeed*, 232 F.R.D. at 97-98; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2011) ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should … disqualify that movant from serving as lead plaintiff. The court should then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified.").

As shown above, NIKO Holding's status as the presumptive Lead Plaintiff has been rebutted, and it should therefore be disqualified. *Supra* §II.B.. Therefore, the process above must be utilized to find a new presumptive Lead Plaintiff. As the movant group with the next largest loss, that presumptive Lead Plaintiff is the PSIG.

First, the court must consider the losses allegedly suffered by the remaining movants and identify as the "most adequate plaintiff" the "person or group of persons" that, among other things, "has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u 4(a)(3)(B)(iii)(I). The statutory language explicitly provides that a "member or members" of the class or the "person or group of persons" may combine to constitute "the largest financial interest" and thereby jointly serve as the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(i)-(iii); *see also Mustafin v. Greensky, Inc.*, No. 18-11071, 2019 U.S. Dist. LEXIS 55296, at *15 (S.D.N.Y. Mar. 29, 2019) ("[T]he PLSRA … expressly permits 'a group of persons' to be appointed lead plaintiff."); *Hansen*, 2017 U.S. Dist. LEXIS 8145, at *12-13 ("[A]s the statute makes clear, groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff."). As shown in the chart below, the remaining movant with the largest losses, and therefore the presumptive Lead Plaintiff, is the PSIG:

15

| Movant(s): | Claimed Losses: |
|---|---|
| ~~NIKO Holding & Investment Limited~~ | ~~$1,769,099.58~~ |
| Pareteum Shareholder Investor Group | $1,486,339.11 |
| Chang Lee & Cynthia Soto | $1,244,516.00 |

And, as outlined in the PSIG's opening brief and the Joint Declaration and Certifications attached thereto, the PSIG also meets the *prima facie* requirements of Rule 23 because its members' interests are not antagonistic to those of the class, they are effectively working together, and each member alleges significant harm from defendants' alleged misconduct. Dkt. Nos. 21-23; *see In re Sequans Commc'ns. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 423 (E.D.N.Y. 2018) ("The adequacy requirement is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy."). Accordingly, the PSIG is entitled to the statutory Lead Plaintiff presumption.

With that presumption triggered, "another movant must adduce proof that [the PSIG] would not be able to fairly or adequately protect the interests of the class or to adequately represent the class due to [its] being subject to unique defenses." *Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. Sept. 21, 2004). That burden cannot be met here.

And, while other movants will no doubt attack the PSIG as a group, that argument is meritless. The PSLRA specifically contemplates the appointment of a "group of persons" as Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Factors that courts have considered when evaluating whether a group's members will function cohesively include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa. *Varghese v. China Shenghuo Pharm.*

16

*Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). "In short, the proposed group must "evince[] an ability (and a desire) to work collectively to manage the litigation." *Id.* As illustrated by the PSIG's Joint Declaration (Dkt. No. 23.1), it is an ideal group because:

- it is a small, cohesive group of five like-minded investors who suffered substantial losses arising from defendants' misconduct, *see id.* ¶¶2, 3, 5;[13]

- its members had a ***pre-existing relationship***, having met through common investing websites and having regularly conversed with one another regarding their respective investments in Pareteum, *see id.* ¶2;

- its members affirmatively decided to seek joint lead plaintiff appointment to ensure that the class is sufficiently protected and because their investment experience and diversity will benefit the class, *see id.* ¶¶3, 4;[14]

- its members frequently confer among themselves and with counsel regarding the status of the case and litigation strategy, and will continue to do so as often as necessary to ensure the vigorous and efficient prosecution of this case, *see id.* ¶¶6-7;

- it has collectively designated Nicholas Steffey to act as the executive decision maker in connection with this litigation, *see id.* ¶8,

- it is committed to working together to oversee the prosecution of this litigation, while vigorously representing the interests of all class members, *see id.* ¶¶7, 9;

- it understands the obligations of a lead plaintiff group under the PSLRA, as well as the

---

[13] *See Mustafin*, 2019 U.S. Dist. LEXIS 55296, at *15 (stating that a "relatively small" group is "presumptively cohesive").

[14] Indeed, there are advantages to appointing a small, cohesive group such as the PSIG as lead plaintiff. Were a lead plaintiff to later withdraw, or should defendants later successfully challenge a member of the group at class certification or beyond, groups provide safety in numbers. *See In re Neopharm, Inc. Sec. Litig.*, No. 02-2976, 2004 U.S. Dist. LEXIS 5814, at *7 n.1, *10 (N.D. Ill. Apr. 8, 2004) (reopening lead plaintiff process years after court appointed lead plaintiff withdrew, noting that "this is not a situation where more than one lead plaintiff was appointed and the withdrawal of one lead plaintiff means that others still exist").

17

obligations entailed in seeking the maximum possible recovery on behalf of the class, *see id.* ¶¶5, 9; and

- after evaluating and conducting due diligence on numerous law firms, it has retained and is represented by qualified and experienced counsel, Kahn Swick & Foti, LLC, *id.* ¶¶3, 10.

*See In re Sequans*, 289 F. Supp. 3d at 424 (granting lead plaintiff status to small group of like-minded investors who had participated in joint conference calls to discuss litigation strategy and "demonstrated an understanding of the need for cooperation on an ongoing basis"); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 119-20 (S.D.N.Y. 2010) ("The members of the CSIQ Investor Group were introduced during a conference call prior to seeking appointment as lead plaintiff. They are sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives. They have indicated that they have a detailed decision-making structure in place, with established methods for communication amongst themselves and with counsel. Accordingly, the CSIQ Investor Group satisfies the requirements of the PSLRA."); *Freudenberg v. E*Trade Fin. Corp.*, No. 07-8538, 2008 U.S. Dist. LEXIS 62767, at *12 (S.D.N.Y. July 16, 2008) (permitting proposed group whose members "submit that they have a longstanding pre-litigation relationship and a clear understanding as to consultation, information sharing, and management of the litigation"); *Reimer v. Ambac. Fin. Group, Inc.*, No. 08-411, 2008 U.S. Dist. LEXIS 38729, at *9-10 (S.D.N.Y. May 9, 2008) (group approved as lead plaintiff held joint conference calls to formulate strategy and represented they would "pursue the maximum recovery on behalf of all class members").

In sum, because NIKO Holding is disqualified for the reasons set forth above, the PSIG, as the movant with the second largest losses who otherwise satisfies Rule 23's typicality and adequacy requirements, should be appointed Lead Plaintiff.

18

E.    **CHANG LEE AND CYNTHIA SOTO SHOULD ALSO NOT BE APPOINTED LEAD PLAINTIFF**

The remaining movant group, Chang Lee and Cynthia Soto, claim $1,244,516.00 in losses. Dkt. No. 30-2. Because they have smaller losses than the PSIG and cannot rebut the presumption that the PSIG would be a typical and adequate representative, their motion should be rejected. Moreover, $741,775.55 of their losses are attributed to an account (*id.* at 2, "Acct x1680") in the name of "Anne Shin." Dkt. No. 30-1 at 3. Nothing in Lee and Soto's moving papers indicates that they have authority over the shares in the "Anne Shin" account, for which they claim almost $750,000 in losses. *Id.* Indeed, nothing they have provided even evidences that Lee or Soto have a relationship with Anne Shin, and counsel's independent investigation has found none. Accordingly, Lee and Soto's claimed losses should be reduced to $502,740.50—far below the nearly $1.5 million loss suffered by the PSIG.  Their motion should be denied.

## III.  CONCLUSION

When the issues of typicality and adequacy are considered, any presumption that may have existed in NIKO Holding's favor is effectively rebutted. NIKO Holding appears to have engaged in insider trading in Pareteum securities, has an allegedly criminal past related to an international fraud scheme, erred in calculating its losses submitted to the Court, and has questionable standing to bring the claims asserted herein. NIKO Holding is neither typical of the members of the Class nor adequate to represent them, and for those reasons cannot serve as Lead Plaintiff. Conversely, the PSIG, whose members had a pre-existing relationship, suffered losses of almost $1.5 million (which is the largest financial interest in the relief sought by the Class) and can and has otherwise satisfied the adequacy and typicality requirements of the PSLRA. Accordingly, the PSIG should be appointed Lead Plaintiff in this action, and its selection of Lead Counsel should be approved.

DATED: January 6, 2020                    Respectfully submitted,

                                         **KAHN SWICK & FOTI, LLC**

                                         */s/ Melinda A. Nicholson*
                                         Lewis S. Kahn
                                         Melinda A. Nicholson (MN-6251)
                                         Michael J. Palestina (*pro hac vice* pending)
                                         1100 Poydras Street, Suite 3200
                                         New Orleans, LA 70163
                                         Telephone: (504) 455-1400
                                         Facsimile: (504) 455-1498
                                         Email: Melinda.Nicholson@ksfcounsel.com
                                         Email: Lewis.Kahn@ksfcounsel.com
                                         Email: Michael.Palestina@ksfcounsel.com

                                         -and-

                                         J. Ryan Lopatka
                                         250 Park Avenue, Suite 2040
                                         New York, NY 10177
                                         Telephone: (212) 696-3730
                                         Facsimile: (504) 455-1498
                                         Email: J.Lopatka@ksfcounsel.com

                                         *Counsel for Movant Pareteum Shareholder*
                                         *Investor Group and Proposed Lead Counsel*
                                         *for the Class*

20

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

/s/ Melinda A. Nicholson
Melinda A. Nicholson