UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN O'BRIEN, Individually and On Behalf of All Others Similarly Situated, | No. 1:19-cv-09767-AKH |
| Plaintiff, | CLASS ACTION |
| v. | |
| PARETEUM CORPORATION, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY, | |
| Defendants. | |
| AJAY SINGH, Individually and On Behalf of All Others Similarly Situated, | No. 1:19-cv-09795-AKH |
| Plaintiff, | CLASS ACTION |
| v. | |
| PARETEUM CORPORATION, ROBERT TURNER, VICTOR BOZZO, EDWARD O'DONNELL, and DENIS MCCARTHY, | |
| Defendants. | |
| LAILA MANSUR, Individually and On Behalf of All Others Similarly Situated, | No. 1:19-cv-09849-AKH |
| Plaintiff, | CLASS ACTION |
| v. | |
| PARETEUM CORPORATION, ROBERT H. TURNER, DENIS MCCARTHY, VICTOR BOZZO and EDWARD O'DONNELL, | |
| Defendants. | |

[Caption continued on the next page.]

010855-11/1222776 V1

| JOHN VARGO, Individually and On Behalf of All Others Similarly Situated, | No. 1:19-cv-09936-AKH |
|---|---|
| Plaintiff, | CLASS ACTION |
| v. | |
| PARETEUM CORPORATION, ROBERT H. TURNER, and EDWARD O'DONNELL, | |
| Defendants. | |

**LEAD PLAINTIFF MOVANTS CHANG LEE, M.D.'S AND CYNTHIA SOTO, M.D.'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION OF RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................3

    A.   Dr. Lee And Dr. Soto Are The Movants Most Capable Of
        Adequately Representing The Interests Of Class Members ...................................3

    B.   Dr. Lee And Dr. Soto Have Demonstrated They Are Both Typical
        and Adequate Under Fed. R. Civ. P. 23 ...............................................................4

    C.   NIKO Should Not Be Appointed Lead Plaintiff ...................................................5

        1.   NIKO Has Failed To Make A *Prima Facie* Showing Of Its
            Typicality Or Adequacy...............................................................................5

        2.   The Limited Information Known About NIKO And Its
            Owners Proves NIKO Is Atypical And Inadequate .....................................7

        3.   Alternatively, Movants Should Be Entitled To Discovery
            Into NIKO And Its Stakeholders..................................................................9

    D.   The Pareteum Shareholder Investor Group's Motion Should Be
        Denied ...................................................................................................................10

III. CONCLUSION....................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Buettgen v. Harless*,
    263 F.R.D. 378 (N.D.Tex.2009) ...............................................................................................9

*Camp v. Qualcomm Inc.*,
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019)..........................................................................1, 5

*Carvelli v. Ocwen Fin. Corp.*,
    2017 WL 11068524 (S.D. Fla. July 14, 2017) .........................................................................3

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)......................................................................................................4

*In Re Donnkenny Inc. Sec. Litig.*,
    171 F.R.D. 156 (S.D.N.Y. 1997) ...........................................................................................12

*Elstein v. Net1 UEPS Technologies, Inc.*,
    2014 WL 3687277 (S.D.N.Y. July 23, 2014) ...................................................................12, 14

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
    288 F.R.D. 26 (S.D.N.Y. 2012) ...............................................................................................4

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................9

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*,
    2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)..................................................................10, 13

*Jakobsen v. Aphria, Inc.*,
    2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) .........................................................................3

*Karp v. Diebold Nixdorf, Inc.*,
    2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ..........................................................................2

*Kniffin v. Micron Tech., Inc.*,
    379 F. Supp. 3d 259 (S.D.N.Y. 2019).....................................................................................13

*Marcus v. J.C. Penney Co.*,
    2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) .......................................................................9

*Micholle v. Ophthotech Corp.*,
    2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) .......................................................................13

*Nakamura v. BRF S.A.*,
    2018 WL 3217412 (S.D.N.Y. July 2, 2018) ..............................................................10, 11, 13

*In re Opnext, Inc. Sec. Litig.*,
    2008 WL 11383411 (D.N.J. June 30, 2008) ........................................................................11

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015)...................................................................................8

*Piven v. Sykes Enters., Inc.*,
    137 F. Supp. 2d 1295 (M.D. Fla. 2000) ...............................................................................1

*In re Ply Gem Holdings Inc., Sec. Litig.*,
    2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014) ...................................................................12

*In re Safeguard Scis.*,
    216 F.R.D. 577 (E.D. Pa. 2003)............................................................................................8

*Schaffer v. Horizon Pharma Plc*,
    2016 WL 3566238 (S.D.N.Y. June 27, 2016) .......................................................................2

*Springer v. Code Rebel Corp.*,
    2017 WL 838197 (S.D.N.Y. Mar. 2, 2017) ..........................................................................5

*In re Surebeam Corp. Sec. Litig.*,
    2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)...........................................................................8

*Takata v. Riot Blockchain, Inc.*,
    2018 WL 5801379 (D.N.J Nov. 6, 2018) ..............................................................................5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008).....................................................................10, 11, 12

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    2007 WL 2683636 (D.N.J. Sept. 7, 2007) .............................................................................1

## FEDERAL STATUTES

15 U.S.C. § 77z-1(a)(3)(B)(iv) ..................................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)...............................................................................................3

PSLRA ................................................................................................................. *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ........................................................................................................ 1, 3, 4

Fed. R. Civ. P. 23(a) ............................................................................................................ 3

Russell J. Weintraub, *How Substantial is Our Need for a Judgments-Recognition Convention and What Should We Bargain Away to Get It,* 24 BROOK. J. INT'L L. 167 (1998) ................................................................................... 8

## I.      INTRODUCTION

The Court should appoint married medical doctor couple, Dr. Lee and Dr. Soto, lead plaintiff, as they are the movants with the largest financial interest, who also satisfy the requirements of Rule 23.  Movants have suffered over $1.2 million in losses, and therefore have a substantial financial interest in this litigation.[1]  Moreover, Movants are both respected medical doctors, experienced investors, fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this action.[2]

By contrast, there are serious disqualifying issues with the two movants who claim to have suffered a larger loss than Dr. Lee and Dr. Soto, either individually or through aggregation: "NIKO Holding & Investment Limited" and the "Pareteum Shareholder Investor Group."

*First*, NIKO, a purported Cypriot shell company for several unknown Ukrainian entities (ECF 45-1 at ¶ 1), is clearly inadequate.  NIKO has failed to provide basic information about itself and its owners,[3] let alone demonstrate that it has the experience or sophistication to lead this action.[4]

---

[1] *See* ECF Nos. 30-1, 30-2.

[2] *See* ECF No. 29 at 2, 10; *see also* ECF 30-1.

[3] *See Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (finding corporate entity movant inadequate because "there was a dearth of information regarding Westwind in the record."); *see also Camp v. Qualcomm Inc*., No. 3:18-cv-01208-AJB-AHG, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (finding movant did not make *prima facie* typicality and adequacy showing because he "failed to include any basic details about himself, including where he lives or who he is specifically in his motion").

[4] *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig*., No. 3:07-cv-00177-FLW-LHG, 2007 WL 2683636, at *6 (D.N.J. Sept. 7, 2007) ("If the movant with the largest financial losses lacks legal experience or sophistication, or selects lead counsel plainly incapable of undertaking the representation . . ., courts might conclude that the movant had failed to surmount the threshold adequacy inquiry.").

NIKO's reluctance to provide information about itself and its stakeholders is perhaps for good reason. The limited information publicly known about NIKO and its backers cast serious doubts about its legitimacy. NIKO, under its apparent former name, Vreston Limited,[5] has been identified by the Organized Crime and Corruption Reporting Project (OCCRP) and numerous Eastern European publications to be a conduit for a money laundering scheme orchestrated by Russian government officials.[6] Given the mysterious nature and potential criminal ties between NIKO and its stakeholders, there is certainly "a non-speculative risk that NIKO will not be an adequate lead plaintiff."[7] Accordingly, NIKO's motion should be denied, or at a minimum, Movants should be entitled to additional discovery concerning NIKO and its stakeholders, so that the Court can assess its standing, typicality and adequacy to represent the Class.

*Second*, the Pareteum Shareholder Investor Group fares no better. The group members have failed to meet their burden of showing that aggregating them as lead plaintiffs is

---

[5] Declaration of Lucas E. Gilmore In Further Support of Dr. Lee and Dr. Soto's Motion For Appointment As Lead Plaintiff, Ex. 1, filed concurrently herewith ("Gilmore Response Decl.")

[6] *See* Gilmore Response Decl., Ex. 3 ("Both men took money from accounts of a Cypriot company called Vreston Limited."); Ex. 4, 4a. (According to journalists, two Kyivans, Igor Lyubun and Pavel Gritsyna, in 2008 withdrew funds from the accounts of the Cypriot company Vreston Limited in the bank "'ARMA'"); Ex. 5, 5a. ("Both Gritsin and Lubun withdrew money from the account of the Cypriot company Vreston Limited."); Ex. 6, 6a. ("Both men withdrew money from the accounts of Cypriot firm Vreston Limited, registered with Cypriots Ioannis Ilia and Katya Petri."); Ex. 7, 7a. ("The money was withdrawn from the accounts of Cypriot firm Vreston Limited.").

[7] *See Karp v. Diebold Nixdorf, Inc*., No. 1:19-v-06180-LAP, 2019 WL 5587148, at *5 (S.D.N.Y. Oct. 30, 2019), adhered to on reconsideration, 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (denying movant's lead plaintiff motion given "the realistic possibility that ongoing political and financial turmoil surrounding [movant's stakeholder] will practically impede [movant's] ability to manage this litigation."); *see also Schaffer v. Horizon Pharma Plc*, No. 1:16-cv-01763-JMF, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (citing cases where courts have rejected lead plaintiffs based on non-speculative potential risks.).

appropriate.[8]  Instead, the Joint Declaration proves it is "a group of investors who [is] simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'"[9]  As such the Pareteum Shareholder Investor Group's motion should be denied.

Accordingly, the Court should deny the competing motions, and grant Dr. Lee's and Dr. Soto's motion in its entirety.

## II.    ARGUMENT

### A.    Dr. Lee And Dr. Soto Are The Movants Most Capable Of Adequately Representing The Interests Of Class Members

In a PSLRA class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."[10]  Courts are to "adopt a presumption" that the most adequate plaintiff is the plaintiff who: (1) has either filed a complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23.[11]  Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class."[12]

---

[8] *See Jakobsen v. Aphria, Inc.*, No. 1:18-cv-11376-GBD, 2019 WL 1522598, at *4 (S.D.N.Y. Mar. 27, 2019) (rejecting group's attempt to aggregate losses).

[9] *Carvelli v. Ocwen Fin. Corp.*, No. 9:17-cv-80500-RLR, 2017 WL 11068524, at *6 (S.D. Fla. July 14, 2017) (rejecting group of individual investors' motions for lead plaintiff appointment).

[10] 15 U.S.C. § 78u-4(a)(3)(B)(i).

[11] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

[12] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As explained below, of all the remaining movants, Dr. Lee and Dr. Soto claim to have the "largest financial interest" of demonstrably adequate movants to represent Pareteum investors.

| Movant(s) | Losses |
|---|---|
| Niko Holding & Investment | $1,769,099.58 (LIFO) |
| Dr. Lee & Dr. Soto | $1,244,516.00 |
| Pareteum Shareholder Investor Group | |
| Kevin Ivkovich | $61,388.58 (LIFO) |
| Stephen Jones | $27,585.04 (LIFO) |
| Keith Moore | $600,444.21 (LIFO) |
| Nicholas Steffey | $202,702.92 (LIFO) |
| Robert E. Whitley | $354,440.35 |

**B.      Dr. Lee And Dr. Soto Have Demonstrated They Are Both Typical and Adequate Under Fed. R. Civ. P. 23**

A "'movant's financial interest is just a beginning point.'"[13]  "To qualify as the presumptive lead plaintiff, in addition to possessing a significant financial interest, a lead plaintiff must also 'satisf[y] the requirements of Rule 23.'"[14]

Importantly, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements."[15]  Rather, movants are required to affirmatively make "a sufficient preliminary showing that they can satisfy the relevant requirements of Federal Rule of Civil

---

[13] *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012). [citation omitted].

[14] *Id.*

[15] *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).

Procedure 23."[16]  A movant's failure to include facts *in their moving papers* detailing their adequacy "could, by itself, be a basis for denying lead plaintiff status."[17]

In this case, Movants' opening brief set forth basic facts about themselves relevant to this litigation.  *See* ECF No. 29 at 2, 10.  In particular, Movants have told the Court that Dr. Lee is an obstetrician-gynecologist who practices in San Bernardino, California.  *Id*. at 10.  Dr. Lee currently practices at Chang Lee MD Inc. and is affiliated with Community Hospital of San Bernardino.  *Id*.  Similarly, Dr. Soto is a Board Certified neurologist who practices in San Bernardino, California and is affiliated with multiple hospitals in that area, including Riverside University Health System-Medical Center and St. Bernardine Medical Center.  *Id*. Both Movants received their medical degrees from Boston University School of Medicine, and are experienced individual investors.  *Id*.  Moreover, Movants have submitted a signed Certification declaring their commitment to protecting the interests of the Class, and the significant losses they have incurred, which demonstrates that they have a sufficient interest in the outcome of this litigation to ensure vigorous prosecution of the litigation.  *See* ECF Nos. 30-1, 30-2.  Moreover, as they live in the United States, they are easily available for discovery, attending depositions and trial.

**C.    NIKO Should Not Be Appointed Lead Plaintiff**

**1.    NIKO Has Failed To Make A *Prima Facie* Showing Of Its Typicality Or Adequacy**

In contrast to Dr. Lee and Dr. Soto, NIKO has neglected to provide any information about its true nature or background.  Indeed, the only thing that NIKO discloses about itself is

---

[16] *Springer v. Code Rebel Corp*., No. 1:16-cv-3492, 2017 WL 838197, at *2 (S.D.N.Y. Mar. 2, 2017).

[17] *Takata v. Riot Blockchain, Inc*., No. 3:18-cv-02293, 2018 WL 5801379, at *5 (D.N.J Nov. 6, 2018); *Camp v. Qualcomm Inc*., No. 1:18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) ("Singh failed to include any basic details about himself, including where he lives or who he is specifically in his motion.").

that it is a Cypriot shell company for several other unidentified Ukrainian entities: "NIKO Holding is a company duly registered and existing under the laws of Cyprus. NIKO Holding is a holding company for several Ukrainian entities whose main lines of business include: (i) vehicle import, distribution, and retail sales and services; (ii) leasing; (iii) investment and asset management; (iv) transportation; and (v) insurance." ECF No. 45-1 at ¶ 1. Significantly, NIKO refuses to explain the purpose of this investment vehicle; identify its registered business address or place of operations; identify how many shell companies stand behind NIKO; name its purported Ukrainian parent entities and their respective principals; or state what human being(s) suffered the claimed losses.

NIKO's PSLRA certification only raises additional questions about its fitness to serve as lead plaintiff. NIKO's certification is signed by a purported Managing Director of NIKO, Ivan Nikolaychuk. ECF No. 45-1. However, there is no indication that Mr. Nikolaychuk is authorized to sign on NIKO's behalf, let alone bind NIKO in securities litigation. Likewise, the Certification fails to indicate that Mr. Nikolaychuk has personal knowledge regarding: (i) NIKO and its operations; (ii) its transactions in Pareteum securities during the Class Period; or (iii) its investment decisions or management. Likewise, NIKO has provided no information about what Mr. Nikolaychuk, where he is located, or what role he will play in the litigation. Indeed, it is presently unknown who could possibly testify on NIKO's behalf for its Class Period investments, which human being from NIKO will carry out the lead plaintiff's monitoring and prosecution duties, or information about these individuals' backgrounds and experiences demonstrating their capability to manage this complex securities action on behalf of a class.

Finally, NIKO's "Schedule A," purportedly reflecting transactions in Pareteum securities during the Class Period, presents yet more questions regarding NIKO, including its individual

standing to prosecute these claims. *See* ECF No. 45-1 at Schedule A. Without explanation, the

Class Period transactions are broken up by "Account 1" and "Account 2," but there is no

indication that NIKO is the holder of either account, as opposed to one of its parent or related

entities, or suggestion that NIKO otherwise owns the claims arising from these transactions. *Id.*

In sum, by refusing to provide these critical details, there is no way for the Court to

determine NIKO's typicality or adequacy, much less determine that NIKO has the experience in

managing, or capacity to manage, this action in the Class's best interests.

### 2. The Limited Information Known About NIKO And Its Owners Proves NIKO Is Atypical And Inadequate

The limited information Movants' counsel was able to uncover concerning NIKO and its

stakeholders raises serious concerns about the typicality and adequacy of NIKO. In investigating

NIKO, Movants' counsel uncovered a 2013 presentation regarding the NIKO Group of

Companies, which counsel understands to be affiliated with movant NIKO Holding &

Investment Limited. Gilmore Response Decl., Ex. 2. One slide in the presentation identifies

Vreston Limited, a company based in Cyprus, as the ultimate holder of the NIKO Group. *Id.* at

p. 9. Indeed, another source indicates that Vreston Limited is NIKO's former name. Gilmore

Response Decl., Ex. 1.

Significantly, news reports from the OCCRP and various Eastern European media outlets

have identified Vreston Limited as a conduit for an international money laundering scheme

occurring in 2008 referred to as the "Magnitsky Case." Gilmore Response Decl., Exs. 3-7a. As

reported by the OCCP and Ukraine's Slidstvo Info, the Magnitsky Case concerned a tax fraud

scheme in which Russian government officials defrauded Russian taxpayers of $230 million, by

laundering state proceeds through various banks and shell companies. *Id.* These same outlets

have reported that a large portion of these proceeds ($57 million) was laundered through and withdrawn from accounts of a Cypriot company named Vreston Limited.  *Id*.[18]

The mere possibility of one of NIKO's stakeholders being involved in an international money laundering scheme completely undermines any notion that NIKO is the most adequate plaintiff.[19]  Setting aside the validity of the allegations, NIKO will face wide-ranging discovery into its owners which will provide fodder for defendants to argue that it is subject to unique defenses and is inadequate in representing the class.[20]

If that were not enough, NIKO's Cyprus citizenship may render any judgment in this action not binding on NIKO, thereby obviating the entire purpose of a class action.  Foreign nations do not always recognize the finality of a class action judgment in the United States.[21]

---

[18] For the Court's convenience, Movants have provided a translation of the articles through Google Translator.  *Id*. at Exs. 4a, 5a, 6a, 7a.  Movants are willing to arrange for the articles to be translated by an official translator at the Court's request.

[19] *In re Surebeam Corp. Sec. Litig*., No. 3:03-cv-01721-JM-POR, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("Without comment or consideration of Mr. Brown's guilt or innocence as to the underlying charges, this court finds that there is at least a potential that Jamerica will be subject to unique defenses and will not fairly and adequately protect the interests of the class. Therefore, the court finds that Jamerica is incapable of serving as lead plaintiff.").

[20] *See, e.g., In re Petrobras Sec. Litig*., 104 F. Supp. 3d 618, 623-24 & n.4 (S.D.N.Y. 2015) (rejecting movant with largest individual financial interest where movant's prior "statements would provide fodder" for class certification challenge); *In re Safeguard Scis*., 216 F.R.D. 577, 582 & n.4 (E.D. Pa. 2003) (finding presumption rebutted where "the issue of credibility," while not resolved by the Court, had "potential and likely adverse effect on the putative class' interests" and left the movant "vulnerable to further attacks that would impose an unnecessary disadvantage on the class").

[21] *See* Russell J. Weintraub, *How Substantial is Our Need for a Judgments-Recognition Convention and What Should We Bargain Away to Get It*?, 24 BROOK. J. INT'L L. 167, 167-68 (1998) ("most foreign courts are skeptical of U.S. judgments, reviewing them carefully and frequently denying enforcement of these judgments on public policy grounds and while a class judgment may preclude absent class members from suing again in another U.S. court, the same judgment likely would not preclude absent foreign class members from suing again in the courts of their home countries").

The potential that such issues could arise have led courts to refuse to appoint foreign lead plaintiffs.[22]  It is unclear whether the appropriate authorities in Cyprus would recognize any judgment in this litigation.  Since NIKO might be able to litigate this action, lose and challenge the judgment in a Cypriot court or other forum available in Cyprus, it subjects NIKO to the argument from Defendants at the class certification stage that NIKO is atypical and not an appropriate class representative.  This argument, if successful, could prevent a class from being certified with NIKO as the proposed representative, a circumstance which would seriously jeopardize the interests of all members of the putative class here.[23]  Although some courts in this District have rejected such challenges at the lead plaintiff stage,[24] Defendants' ability to use the risk of there being no *res judicata* effect of any judgment to combat NIKO's appointment as a class representative at the class certification stage of this litigation subjects NIKO to yet another unique defense that makes NIKO incapable of adequately representing the class and, thus, an inappropriate entity to be appointed as a lead plaintiff.

**3.      Alternatively, Movants Should Be Entitled To Discovery Into NIKO And Its Stakeholders**

Finally, should the Court find the foregoing points regarding NIKO's atypicality and inadequacy to be debatable, Dr. Lee and Dr. Soto respectfully request that they be allowed limited discovery from NIKO on the topics of NIKO's standing, organization and operations, identity of its owners and their principals, and involvement with Vreston and the alleged

---

[22] *Marcus v. J.C. Penney Co.*, No. 6:13-cv-00736-RWS-KNM, 2014 WL 11394911, at *5 (E.D. Tex. Feb. 28, 2014) ("While there is no authority on whether Italy would or would not honor a judgment from the United States, there is a "risk that foreign courts would not give the Court's judgment res judicata effect.").

[23] *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D.Tex.2009) (holding Swiss entity was inadequate to be lead plaintiff because of *res judicata* concerns).

[24] *See, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011).

international money laundering matter identified above. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iv) (permitting "discovery relating to whether a member . . . of the purported plaintiff class is the most adequate plaintiff" if there is a "reasonable basis" to find that the plaintiff is incapable of adequately representing the class).

**D.     The Pareteum Shareholder Investor Group's Motion Should Be Denied**

The Pareteum Shareholder Investor Group is comprised of five separate individuals, each residing in different locations across the country, with different occupations and investment experience, and significant variances in individual investment losses. Nevertheless, the group moves to be appointed jointly as lead plaintiffs and submits that the Court should aggregate their losses for purposes of determining their financial interest. ECF No. 22.

A group of investors is permitted to serve jointly as lead plaintiffs in a securities class action under very limited circumstances, and only "if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). To determine if a proposed plaintiff group is appropriate as lead plaintiffs, courts consider "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id*.

The proposed plaintiff group has the burden of showing that aggregation is appropriate pursuant to the *Varghese* factors. *See Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*, No. 1:15-cv-03599-KMW, 2015 WL 7018024, at \*3 (S.D.N.Y. Nov. 12, 2015); *accord Varghese*, 589 F. Supp. 2d at 392. "The overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers." *Nakamura v. BRF S.A.*, No. 1:18-cv-02213-PKC, 2018 WL 3217412, at \*3

(S.D.N.Y. July 2, 2018) (citing *Int'l Union of Operating Engineers*, 2015 WL 7018024, at *2).

A proposed plaintiff group cannot be appointed lead plaintiff if it was "assembled as makeshift

by attorneys" to claim the greatest financial interest in the litigation. *Varghese*, 589 F. Supp. 2d

at 392–93.

Here, the Pareteum Shareholder Investor Group fails to meet its burden of showing that

aggregation is appropriate. As a preliminary matter, its members offer no evidence that they all

have a "meaningful" pre-litigation relationship. *In re Opnext, Inc. Sec. Litig*., No. 3:08-cv-

00920-JAP-LHG, 2008 WL 11383411, at *2 (D.N.J. June 30, 2008) (rejecting lead plaintiff

movant group that failed to establish "a meaningful relationship preceding the litigation that is

capable of fairly and adequately representing the purported class's interests"). The Pareteum

Shareholder Investor Group instead offers a vague and ambiguous statement of their purported

pre-litigation relationship filled with grammatical conjunctions: "As TEUM investors, the

undersigned met through common investing websites, and as part of our respective investments

in TEUM, we have regularly conversed with one another via various investing websites,

telephonically, electronically, and/or in person at TEUM investor meeting(s) and/or privately."

ECF No. 23-1 at ¶ 2.

This statement "offer[s] no specifics as to their history of business collaboration and how

it positions them to advance the interests of the class." *Nakamura*, 2018 WL 3217412, at *3. It

is entirely unclear whether these unidentified meetings involved the entirety of the group

"and/or" if they occurred at all. Similarly, it is unclear whether the alleged electronic

communications involved solely the group, or the world in general. The Pareteum Shareholder

Investor Group members' failure to provide enough evidence of a pre-litigation relationship thus

strongly suggests that their lawyers arranged the group. In this district, "[a]llowing lawyers to

- 11 -

combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation." *In re Ply Gem Holdings Inc., Sec. Litig.*, No. 1:14-cv-03577-JPO, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014); *see also In Re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("Congress hoped that the lead plaintiff would seek the lawyers, rather than the lawyer seek the lead plaintiff."). Accordingly, because the Pareteum Shareholder Investor Group's members are unrelated investors without a pre-litigation relationship, they may not be jointly appointed as lead plaintiffs.

In the absence of a meaningful pre-litigation relationship, courts require that a group present "a more compelling showing as to their fitness for the position" to abate any "concern that [the] group has simply been 'cobbled together' for the purpose of achieving the lead plaintiff designation." *Elstein v. Net1 UEPS Technologies, Inc.,* No. 1:14-cv-09100-PGG, 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014). The Pareteum Shareholder Investor Group fails to make such a showing under the remaining *Varghese* factors.

*First*, the Pareteum Shareholder Investor Group members barely allege any involvement in the litigation thus far. Their joint declaration simply says that "we evaluated numerous law firms and individually conducted due diligence on these law firms; ultimately, each of us has collectively communicated and decided to retain the law firm of Kahn Swick & Foti, LLC to represent our interests in this litigation." ECF No. 23-1 at ¶ 3. Notably, the group fails to articulate the purported due diligence it exercised. Accordingly, the Pareteum Shareholder Investor Group's involvement in the litigation thus far appears to be minimal. *Varghese*, 589 F. Supp. 2d at 392.

*Second*, the plans for cooperation described in the Pareteum Shareholder Investor Group joint declaration are vague and conclusory. For example, the members state that they "will

continue to communicate regularly with our counsel and with each other as often as necessary to discuss the progress of the litigation and our counsel's recommended litigation strategies and ensure the vigorous and efficient prosecution of this case." ECF No. 23-1 at ¶ 7.  The group members also commit to "work together to provide fair and adequate representation and obtain the largest recovery for the class, consistent with meritorious advocacy and sound judgment." *Id.*  But these boilerplate assurances are "insufficient proof that a group of unrelated investors will be able to effectively manage the litigation." *Int'l Union of Operating Engineers*, 2015 WL 7018024, at *4; *see also Nakamura*, 2018 WL 3217412, at *3 ("joint conference calls" and alleged "established procedures for overseeing the progress of the litigation and communicating regularly between [a group of unrelated investors] and [their] counsel" is insufficient evidence of planned cooperation); *Micholle v. Ophthotech Corp*., No. 1:17-cv-00210-VSB, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) ("conclusory assurances" are insufficient to show that an unrelated group of investors can manage the litigation effectively).

*Third*, there is nothing compelling or unique about the movants' educational background or work experience from other individual movants.  For example, the group notes no prior history of monitoring or participating in securities litigation.  Moreover, the individual member's "investing experience and sophistication merit little weight if the groups nevertheless appear to be 'lawyer-created . . . in the hope of thereby becoming the biggest loser.'" *Kniffin v. Micron Tech., Inc*., 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (quoting *Khunt v. Alibaba Grp. Holding Ltd*., 102 F.Supp.3d 523, 532 (S.D.N.Y. 2015)).

*Fourth*, the group is vague and ambiguous on whether they chose counsel with the intention of moving as a group or *vice versa*.  Taking these factors together, there is "nothing to

- 13 -

indicate that the overall quality of the action will be improved by [these groupings]," *Elstein*, 2014 WL 3687277, at *5.

*Finally*, the group, in delegating "Nicholas Steffey to act as the executive decision maker in connection with this litigation" has ceded power to an investor whose $202,702.92 claimed loss pales in comparison to the $1,244,516.00 loss of Dr. Lee and Dr. Soto.

Accordingly, the Pareteum Shareholder Investor Group members fail to meet their burden of showing that aggregating them as lead plaintiffs is appropriate, and therefore their motion for appointment as lead plaintiffs should be denied.

### III.   CONCLUSION

For the foregoing reasons, Movants respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Movants as Lead Plaintiff pursuant to the PSLRA; (3) approve Movants' selection of Hagens Berman to serve as Lead Counsel for the putative Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: January 6, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Jason A. Zweig*
    JASON A. ZWEIG, JZ-8107

555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

Reed R. Kathrein
Lucas E. Gilmore
Danielle Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com

- 14 -

lucasg@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff Chang Lee,
M.D. and Cynthia Soto, M.D.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Jason A. Zweig*
JASON A. ZWEIG