**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

IN RE PARETEUM SECURITIES LITIGATION                    1:19-cv-09767-AKH-GWG

_____


**MEMORANDUM OF LAW**
**BY DEFENDANT SQUAR MILNER LLP**
**IN SUPPORT OF MOTION TO DISMISS**


WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendant Squar Milner LLP
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ..................................................................................1

ARGUMENT ..........................................................................................................6

    I.     Plaintiffs have not adequately alleged the elements of a Section 11 claim ............6

    II.    Plaintiffs have not alleged facts demonstrating that it is plausible that they can trace any purchase to the Secondary Offering...................................................8

    III.   Plaintiffs have not alleged facts sufficient to make Squar Milner's statements of opinion actionable under Section 11................................................12

    IV.   Plaintiffs' alleged loss is not causally connected to the misrepresentation alleged against Squar Milner ...............................................................................14

CONCLUSION.......................................................................................................16

8240360v.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ................................................................................................ 6

*Barnes v. Osofsky,*
373 F.2d 269 (2d Cir. 1967) ....................................................................................... 7, 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 554 (2007) .................................................................................................... 6

*DeMaria v. Andersen,*
318 F.3d 170 (2d Cir. 2003) ....................................................................................... 8

*In re ARIAD Pharms Sec. Litig.*
842 F.3d 744 (1st Cir. 2019) ...................................................................................... 9

*In re Broderbund/Learning Co. Sec. Litig.,*
294 F.3d 1201 (9th Cir. 2002) .................................................................................... 11

*In re Century Aluminum Co. Sec. Litig.,*
719 F.3d 1104 (9th Cir. 2013) .................................................................................... 9

*In re Global Crossing, Ltd. Sec. Litig.,*
313 F. Supp. 2d 189 (S.D.N.Y. 2003) ....................................................................... 8

*In re Initial Pub. Offering Sec. Litig.,*
241 F. Supp. 2d 281 (S.D.N.Y. 2003) ....................................................................... 11

*In re Initial Public Offering Sec. Litig.,*
227 F.R.D. 65 (S.D.N.Y. 2004) ................................................................................. 9

*In re Morgan Stanley Info. Fund Sec. Litig.,*
592 F.3d 347 (2d Cir. 2010) ....................................................................................... 6, 8

*In re Puda Coal Sec. Inc. Litig.,*
2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) .............................................................. 7, 9

*Klein v. Computer Devices, Inc.,*
591 F. Supp. 270 (S.D.N.Y. 1984),
*on reargument*, 602 F. Supp. 837 (S.D.N.Y. 1985) .................................................. 9

*Lorber v. Beebe,*
407 F. Supp. 279 (S.D.N.Y. 1975) ............................................................................ 9

ii

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Fund,*
    575 U.S. 175 (2015)............................................................................ 1, 7, 12, 13, 14

*Pani v. Empire Blue Cross Blue Shield,*
    152 F.3d 67 (2d Cir.1998) ...................................................................................... 8

*Querub v. Moore Stephens Hong Kong,*
    649 F. App'x 55 (2d Cir. 2016) ........................................................................ 7, 12

*Special Situations Fund QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,*
    645 Fed. Appx. 72 (2d Cir. 2016)........................................................................ 12

*Tongue v. Sanofi,*
    816 F.3d 199 (2d Cir. 2016) ............................................................................ 7, 12

**Statutes**

15 U.S.C. § 77k...................................................................... 1, 6, 7, 8, 9, 11, 14

15 U.S.C. § 77k(a)(4).................................................................................... 7

15 U.S.C. § 77k(e) ........................................................................................ 8

**Rules**

Federal Rules of Civil Procedure 12(b)(6)......................................................... 1, 6, 8

8240360v.2

Defendant Squar Milner LLP respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Sixth Claim in Plaintiffs' Consolidated Complaint (the "Complaint") to the extent alleged against Squar Milner.

## PRELIMINARY STATEMENT

Plaintiffs assert a single claim against Squar Milner alleging violation of Section 11 of the Securities Act based on the opinions in the audit report the firm issued with respect to Pareteum's financial statements for the years ended December 31, 2018 and 2017. Despite its length, the Complaint does not plausibly allege that Plaintiffs have standing under Section 11 or that the statements of opinion by Squar Milner are actionable when measured against the standard set forth for Section 11 opinions in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Fund*, 575 U.S. 175 (2015). Furthermore, the very face of the Complaint sets forth the plausible foundation of a negative causation defense warranting dismissal in its own right. As set forth below, the Complaint must be dismissed as against Squar Milner.

## FACTUAL BACKGROUND

Pareteum is a telecommunications software and services company, focused on providing software and other support to Mobile Virtual Network Operators (Complaint at ¶ 1, Larkin Declaration Exhibit A; D.E. 98).

Squar Milner is a public accounting firm (Complaint at ¶ 35). Squar Milner audited Pareteum's internal controls and its consolidated financial statements for the years ended December 31, 2018 and 2017 (Complaint at ¶ 35). In connection with the audit of Pareteum's internal controls, Squar Milner issued the following report:

### Report of Independent Registered Public Accounting Firm

To the Shareholders and the Board of Directors of Pareteum Corporation

### Opinion on the Internal Control Over Financial Reporting

1

We have audited Pareteum Corporation's and its subsidiaries (the Company) internal control over financial reporting as of December 31, 2018, based on criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013. *In our opinion, because of the effect of the material weaknesses described below on the achievement of the objectives of the control criteria, the Company has not maintained effective internal control over financial reporting as of December 31, 2018*, based on criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013 ("COSO").

\* \* \*

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis. The following deficiencies in internal control have been identified as material weaknesses over the Company's control environment and monitoring pursuant to the COSO framework:

Inadequate and ineffective management assessment of internal control over financial reporting, including insufficient experienced resources to complete the documentation of internal control assessment and ineffective design, implementation and monitoring of information technology general controls pertaining to the Company's change management process.

*These material weaknesses were considered in determining the nature, timing and extent of audit tests applied in our audit of the 2018 financial statements, and **this report does not affect our report dated March 18, 2019**.*[1]

**Basis for Opinion**

\* \* \*

We conducted our audit in accordance with the standards of the PCAOB...We believe that our audit provides a reasonable basis for our opinion.

\* \* \*

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

\s\ Squar Milner LLP
Los Angeles, California
March 18, 2019

---

[1]  The Complaint indicates that this bolding is in the original. It is not. In the 2018 Form 10-K this paragraph is neither in italics nor in bold. *See* https://www.sec.gov/Archives/edgar/data/1084384/000114420419014694/tv515953_10k.htm at 71.

2

(Complaint at ¶ 362; Pareteum 2018 Form 10-K at 71-2, Larkin Declaration Exhibit B[2]). Thus, Squar Milner's opinion on Pareteum's internal controls was that because of material weakness in the company's internal controls there was a reasonable possibility that a material misstatement of the company's annual or interim financial statements will occur and not be detected on a timely basis.

In connection with the audit of Pareteum's consolidated financial statements for the years ended December 31, 2018 and 2017, Squar Milner issued the following report:

### Report of Independent Registered Public Accounting Firm

To the Stockholders and the Board of Directors of Pareteum Corporation

**Opinion on the Financial Statements**

We have audited the accompanying consolidated balance sheets of Pareteum Corporation and its subsidiaries (the Company) as of December 31, 2018 and 2017, the related consolidated statements of comprehensive loss, changes in stockholders' equity (deficit) and cash flows for the years then ended, and the related notes to the consolidated financial statements (collectively, the financial statements). In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2018 and 2017, and the results of its operations and its cash flows for the years then ended, in conformity with accounting principles generally accepted in the United States of America.

We have also audited, in accordance with the standards of the Public Company Accounting Oversight Board (Untied States) (PCAOB), the Company's internal control over financial reporting as of December 31, 2018, based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013. Our report dated March 18, 2019 expressed an opinion that the Company had not maintained effective internal control over financial reporting as of December 31, 2018 based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission in 2013.

**Basis for Opinion**

These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on the Company's

---

[2]   The 2018 Form 10-K can be found at https://www.sec.gov/Archives/edgar/data/1084384/000114420419014694/tv515953_10k.htm.

consolidated financial statements based on our audits. We are a public accounting firm registered with the Public Company Accounting Oversight Board (United States) (PCAOB) and are required to be independent with respect to the Company in accordance with U.S. federal securities laws and the applicable rules and regulations of the Securities and Exchange Commission and the PCAOB.

We conducted our audits in accordance with the standards of the PCAOB. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement, whether due to error or fraud. Our audits included performing procedures to assess the risks of material misstatement of the consolidated financial statements, whether due to error or fraud, and performing procedures that respond to those risks. Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements. Our audits also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. We believe that our audits provide a reasonable basis for our opinion.

/s/ Squar Milner, LLP

We have served as the Company's auditor since 2014.

Los Angeles, California
March 18, 2019

(Pareteum 2018 Form 10-K at 33, Larkin Declaration Exhibit B[3]).

On March 18, 2019, Pareteum filed its Form 10-K Annual Report for the year ended December 31, 2018 (the "2018 Form 10-K") with the Securities and Exchange Commission (the "SEC")(Complaint at ¶ 88). Squar Milner's reports on its audit of Pareteum's internal controls and its audit of the consolidated financial statements for the years ended December 31, 2018 and 2017 were both included in the 2018 Form 10-K. The revenue reported for the year ended December 31, 2018 was approximately $32.4 million (Complaint at ¶ 13).

According to Plaintiffs, Pareteum's management focused analysts and investors on fabricated, non-GAAP metrics called "Backlog" and "connections" to advance a story of a

---

[3]  https://www.sec.gov/Archives/edgar/data/1084384/000114420419014694/tv515953_10k.htm

company experiencing hyper-growth so they could promote the company in this fashion through a barrage of press releases (Complaint at ¶ 6-7, *passim*). The GAAP-based revenue reported by Pareteum's management for the first quarter of 2019 was approximately $23 million, and the GAAP-based revenue reported by management for the second quarter of 2019 was approximately $34.1 million (Complaint at ¶ 13).

On June 7, 2019, a report authored by Marcus Aurelius Value was released, which Plaintiffs refer to as the Aurelius Report (Complaint at ¶ 17). On June 25, 2019, a report authored by Viceroy Research Group was released, which Plaintiffs refer to as the Viceroy Report (Complaint at ¶ 17). Both reports were highly critical of Pareteum (Complaint at ¶ 142-8, 151-5). Plaintiffs allege that there was a dramatic decline in the price of Pareteum shares following the publication of the Aurelius and Viceroy reports (Complaint at ¶ 156).

On September 20, 2019, Pareteum published a press release announcing a $40 million direct offering of common stock and warrants (Complaint at ¶ 169), which Plaintiffs refer to as the "Secondary Offering" (Complaint at ¶ 169). Pareteum filed a Prospectus Supplement with the SEC on September 20, 2018, which disclosed that Pareteum was offering 18,852,273 shares of common stock, warrants to purchase 34,090,910 of its common stock, and pre-funded warrants to purchase 3,875,000 share of common stock (Complaint at ¶ 169, 394; Prospectus Supplement at 1, Larkin Declaration Exhibit C[4]). The shares of common stock and accompanying purchase warrants were sold together at a combined public offering price of $1.76 per unit, and the pre-funded warrants and accompanying purchase warrants were sold together at a public offering price of $1.75 per unit with an exercise price of $0.01 per unit (Complaint at ¶ 169, n.28). The Supplemental Prospectus indicates 114,099,771 shares of common stock were outstanding as of September 19,

---

[4]   The Prospectus Supplement can be found at https://www.sec.gov/Archives/edgar/data/1084384/000114420419045340/tv529822_424b5.htm.

2019 (Prospectus Supplement at S-7).

Plaintiffs allege that, in response to the Secondary Offering, Pareteum's share price fell from $1.84 per share at September 19th's close to just $1.50 (Complaint at ¶ 169).

Subsequently, on October 21, 2019–just 31 days after the Secondary Offering–Pareteum issued a release (the "Corrective Announcement") announcing that it would restate its previously issued consolidated financial statements as of and for the full year ended December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019 (Complaint at ¶¶ 12, 172).

## ARGUMENT

### I.     Plaintiffs have not adequately alleged the elements of a Section 11 claim

A complaint must plead sufficient factual allegations "to state a claim to relief that is plausible on its face…" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly,* 550 U.S. at 570.

To establish a *prima facie* case under Section 11, Plaintiffs must allege that: (1) they purchased a registered security traceable to the registration statement at issue; (2) Squar Milner participated in the offering in a manner sufficient to give rise to liability under Section 11; and (3) Squar Milner's audit opinion contained an untrue statement of material fact or omitted to state a material fact necessary to make the statements not misleading. *In re Morgan Stanley Info. Fund*

*Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (stating elements of Section 11 claim); 15 U.S.C. § 77k(a)(4)(limiting scope of accountant liability under Section 11 to statements in portions of registration statement the accountant prepared or certified).

The standard for satisfying the first element–standing–is a rigorous one, particularly following a secondary offering.  Because Section 11 claims do not require Plaintiffs to demonstrate scienter, courts strictly enforce the tracing requirement to appropriately limit claimants to those within the narrow class intended by the statute. *Barnes v. Osofsky*, 373 F.2d 269, 272 (2d Cir. 1967).  As a result, Plaintiffs can only maintain their Section 11 claim against Squar Milner if the Complaint affirmatively alleges sufficient facts to establish that Plaintiffs' purchases are "traceable" to the Secondary Offering at issue.  Yet, here, the Complaint offers nothing but general assertions that Plaintiffs' purchases are traceable to that offering.  The Section 11 claim against Squar Milner must be dismissed for failing to meet this rigorous requirement. *See In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013)("The case law is uninterrupted and has long been clear: traceability is strictly construed for a Section 11 claim.").

The analytical framework on a motion to dismiss for the latter two elements referenced above was set forth by the Supreme Court in *Omnicare*.  Plaintiffs must satisfy the requirements specifically laid out in *Omnicare* to avoid dismissal for failing to state the substantive elements of a Section 11 claim.  The Supreme Court itself emphasized that meeting the specific requirements of *Omnicare* "is no small task for an investor." *See Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016); *Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016) (to establish Section 11 liability against an auditor, plaintiff must show the auditor's opinion was false under the framework set forth in *Omnicare*).  Because Plaintiffs do not address, much less satisfy, the specific test of *Omnicare*, the Section 11 claim as to Squar Milner must be dismissed.

8240360v.2

Plaintiffs bringing claims under Section 11 are not required to allege loss causation. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 359. Section 11(e), however, makes the absence of loss causation an affirmative defense. A complaint, therefore, may be dismissed if a defendant can prove that it is apparent on the face of the pleading that the alleged loss is not causally connected to the misrepresentations at issue. *See Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."). Here, it is clear from the lengthy series of events alleged on the face of the Complaint that the opinions in Squar Milner's audit report concerning Pareteum's 2018 financial statements had no causal connection to the Plaintiffs' alleged losses, and thus dismissal is appropriate for this additional reason.

As set forth in further detail below, the Complaint must be dismissed as alleged against Squar Milner because it fails to allege the requirement necessary to satisfy each of these three separate standards.

## II.     Plaintiffs have not alleged facts demonstrating that it is plausible that they can trace any purchase to the Secondary Offering

Statutory standing for Section 11 claims is limited strictly to those who have purchased securities that are the direct subject of a specified prospectus or registration statement. *Barnes v. Osofsky*, 373 F.2d 269, 272 (2d Cir. 1967). To establish standing, the plaintiffs must be able to "trace their shares to an allegedly misleading registration statement." *DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003). Where there has been only a single offering, tracing may be obvious, but tracing must be affirmatively pleaded by the plaintiffs where there are secondary offerings of fungible securities. *See In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 206-08 (S.D.N.Y. 2003). Traceability is a demanding requirement that courts enforce strictly, and

plaintiffs cannot satisfy it simply by showing that their securities "might" be traceable to the relevant offering. *See In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013)("The case law is uninterrupted and has long been clear: traceability is strictly construed for a Section 11 claim."); *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 117 (S.D.N.Y. 2004)(explaining that it is "insufficient that [the] stock 'might' have been issued pursuant to a defective [registration] statement," and noting that the requirement has been "strictly applied"), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006). If a plaintiff fails to carry this burden, the "section 11 claim must be dismissed." *Lorber v. Beebe*, 407 F. Supp. 279, 286 (S.D.N.Y. 1975); *see also Klein v. Computer Devices, Inc.*, 591 F. Supp. 270, 273 (S.D.N.Y. 1984), *on reargument*, 602 F. Supp. 837 (S.D.N.Y. 1985). While the level of pleading necessary to satisfy this element will vary depending on the context, where shares have been issued in multiple offerings, a greater level of factual specificity will be needed before a court can reasonably infer that shares are traceable to a particular offering. *In re Century Aluminum Co. Sec. Litig.*, 719 F.3d 1104, 1107-09 (9th Cir. 2013); *see also In re ARIAD Pharms Sec. Litig.* 842 F.3d 744, 755-56 (1st Cir. 2019). Plaintiffs must allege facts, not formulaic conclusions, giving rise to a plausible inference that the plaintiffs' shares were issued as part of the subject offering, and overcoming the obvious alternative explanation that plaintiffs purchased from the pool of previously issued shares. *Id.* at 1108.

Plaintiffs' only claim against Squar Milner—the Sixth Claim—alleges a Section 11 claim based on allegedly untrue statements associated with the Secondary Offering on September 20, 2019. The only allegations addressing Plaintiffs' standing to assert these claims are formulaic, conclusory statements sprinkled across the Complaint to the effect that:

"Lead Plaintiff purchased Pareteum shares pursuant or otherwise traceable to the

> Secondary Offering Registration Statement and has sustained damages as the value of Pareteum securities has declined substantially due to the Defendants' conduct and/or violations of the securities laws as alleged herein."
>
> * * *
>
> "Lead Plaintiff purchased or otherwise acquired Pareteum stock in the Secondary Offering pursuant to or traceable to the Secondary Offering Registration Statement."

(*See, e.g.* Complaint at ¶¶ 393, 489, Exhibit A). There are no factual allegations in the Complaint alleging how Plaintiffs' purchases are traceable to the Secondary Offering. Since these are formulaic, conclusory allegations, they hardly are sufficient to establish that Plaintiffs' standing is plausible. Moreover, these allegations do not overcome the obvious alternative explanation that Plaintiffs' shares came from the pool of previously issued shares. According to the Pareteum Prospectus Supplement filed with the SEC on September 20, 2019, there were 114,099,771 shares of Pareteum common stock outstanding as of September 19, 2019—the day before the Secondary Offering (Prospectus Supplement at S-7, Larkin Declaration Exhibit C), so it actually was more likely that someone purchasing Pareteum shares in the market after the Secondary Offering would purchase from the pool of already outstanding shares than from the shares offered on September 20, 2019. Accordingly, Plaintiffs have not alleged facts plausibly establishing their standing.

If we expand our view beyond the allegations in the Complaint to the Plaintiffs' individual Certifications Pursuant to the Securities Laws filed with their pleading (D.E. 98-3), Plaintiffs still have not presented sufficient facts to establish that it is plausible Plaintiffs have standing. The five individuals defined as "Lead Plaintiff" in the Complaint are Kevin Ivkovich, Stephen Jones, Keith Moore, Nicholas Steffey, and Robert E. Whitley, Jr. (Complaint at ¶ 23). According to their

Certifications, none of these Plaintiffs purchased shares on or after September 20, 2019, for the Secondary Offering price (D.E. 98-3). Mr. Steffey did not purchase any shares at all on or after September 20, 2019—his last purchase was September 13, 2019 (D.E. 98-3 at 11). Mr. Moore purchased shares on September 20, 2019, but not for the $1.75 Secondary Offering price, but instead for $1.67, so he would have to allege facts tracing his purchase to the offering to overcome the obvious equally plausible explanation that his shares came from the existing pool of shares in the market. Similarly, Mr. Ivkovich purchased shares on September 24, but he also did not purchase them for the Secondary Offering price. Moreover, both Mr. Moore and Mr. Ivkovich quickly sold these shares for a gain. *See, e.g., In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203 (9th Cir. 2002)(affirming dismissal of Securities Act claims by investor who had gains because he "could not show damages . . . and, therefore, could not spell out a claim"); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 351 (S.D.N.Y. 2003)("[B]ased on the plain language of Section 11 and its legislative history, a plaintiff who sells a security above its offering price has no cognizable damages under Section 11 of the Securities Act, notwithstanding the fact that such plaintiff may have actually suffered a loss."). Other than Mr. Moore's September 20 purchases, and Mr. Ivkovich's September 24 purchases, all of the other Plaintiffs' purchase are many days to weeks after the Secondary Offering, many occurring on the October 21, 2019 Corrective Disclosure date (D.E. 98-3). Since the Certifications establish that none of the Plaintiffs purchased any shares on or after September 20 for the Secondary Offering price, the Certifications cannot nudge Plaintiffs' claims across the line to plausible.

Based on the foregoing, it is respectfully submitted that Plaintiffs' Sixth Claim against Squar Milner must be dismissed because Plaintiffs have not adequately alleged that they have standing.

### III.     Plaintiffs have not alleged facts sufficient to make Squar Milner's statements of opinion actionable under Section 11

"Audit reports, labeled 'opinions' and involving considerable subjective judgement, are statements of opinion subject to the *Omnicare* standard for Section 11 claims. *Querub v. Moore Stephens Hong Kong*, 649 Fed. Appx. 55, 58 (2d Cir. 2016)(citing *Special Situations Fund QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 645 Fed. Appx. 72, 75-6 (2d Cir. 2016)). The Supreme Court held in *Omnicare* that an auditor can be held liable for its audit opinion in only three circumstances: (1) if the auditor does not actually hold the stated opinion, (2) if the opinion contains an embedded statement of fact that is misleading, or (3) if the opinion omits a fact that makes the opinion misleading to an ordinary investor. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Fund,* 575 U.S. 175 (2015). The Supreme Court emphasized that meeting the standard under *Omnicare* "is no small task for an investor". *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).

The only statement identified by Plaintiffs as allegedly actionable against Squar Milner under Section 11 is the audit opinion issued by the firm in connection with its audit of Pareteum's December 31, 2018 and 2017 financial statements. That audit opinion was included in Pareteum's FY2018 Form 10-K, and the FY2018 Form 10-K, in turn, was referenced in the Prospectus Supplement for the Secondary Offering. Plaintiffs claim that the audit opinion is false because it opines that (a) the financial statements are fairly presented, (b) the financial statements are presented in accordance with GAAP, and (c) the audit was performed in accordance with PCAOB standards. (Complaint at ¶ 494).

No facts have been alleged that plausibly would support the conclusion that Squar Milner did not actually hold the opinions set forth in its audit report. At the time the audit report was issued in March 2019—six months before the Secondary Offering—neither of the analyst reports

12

relied upon heavily by Plaintiffs in the Consolidated Complaint had been issued and none of the so-called "red flags" had occurred. Similarly, the questionably probative allegation that Squar Milner audited another company in which Barry Honig invested does not establish or even support the notion that Squar Milner knew its audit opinion was false (Complaint at 71). In the same vein, the allegation that the PCAOB had public comments in 2017 about its inspection of Squar Milner does not impact one way or another whether Squar Milner actually held the opinions in its audit report (Complaint at 72). In fact, that inspection quite obviously was completed before Squar Milner even started the Pareteum audit. There simply are no allegations that provide a plausible basis to conclude that Squar Milner did not actually hold the opinions in its audit report.

Moreover, Plaintiffs own pleading forecloses the notion that Plaintiffs are asserting that Squar Milner did not actually hold the opinions expressed in its audit report. Plaintiffs affirmatively allege that their Section 11 claim against Sqaur Milner is based on negligence and does not sound in fraud (Complaint at ¶ 486). Accordingly, Plaintiffs have affirmatively pleaded that they believe Squar Milner opinions in the audit report were honestly held. *Omnicare*, 575 U.S. at 186 ("And the Funds do not contest that Omnicare's opinion was honestly held. Recall that their complaint explicitly 'exclude[s] and disclaim[s]' any allegation sounding in fraud or deception.").

Similarly, Plaintiffs have not alleged any facts plausibly demonstrating that the audit report contained any embedded factual statements that were misleading. All three items identified as misstatements—that (a) the financial statements are fairly presented, (b) the financial statements are presented in accordance with GAAP, and (c) the audit was performed in accordance with PCAOB standards—are purely statements of Squar Milner's opinion and do not contain any factual statements. Accordingly, the second prong of *Omnicare* is not applicable. *Omnicare*, 575 U.S. at 186.

13

Finally, there are no factual allegations that Squar Milner's audit report omitted facts that rendered the audit report misleading. *Omnicare* indicates that an "investor must identify particular (and material) facts going to the basis of the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly in context." 575 at 194. Since Plaintiffs affirmatively have stated that the Section 11 claim is not based on fraud (Complaint at ¶ 486), they cannot be alleging that Squar Milner offered the opinions in their audit report without actually conducting an audit. Similarly, Plaintiffs do not allege any facts known to Squar Milner that would have fatally undermined the firm's opinions. There are no factual allegations that Squar Milner knew anything that would have revealed or even suggested an overstatement of revenue in the Pareteum financial statements. At most, Plaintiffs point to public information, available to the public, which raised questions about the company, but nothing that raised questions about the financial information reported in the December 31, 2018 consolidated financial statements.

Although Plaintiffs have assembled a very lengthy Complaint that contains many allegations, there are none that come close to satisfying the requirements under *Omnicare* to make the opinions in Squar Milner's audit report actionable under Section 11.

### IV.    Plaintiffs' alleged loss is not causally connected to the misrepresentation alleged against Squar Milner

Plaintiffs allege that Pareteum's management pumped up the value of the company's stock through a barrage of allegedly false statements about the company's "Backlog" and "connections," which Plaintiffs describe as non-GAAP metrics used throughout the Class Period to promote the company (Complaint at ¶ 6-7, *passim*). These metrics allegedly were used as a predictor for future revenue. The GAAP revenue reported for the year ended December 31, 2018, was approximately

14

$32.4 million (Complaint at ¶ 13, *passim*).   However, the GAAP revenue reported for the first quarter of 2019 was $23 million and GAAP revenue for the second quarter of 2019 was $34.1 million, for total revenues for the first half of 2019 of approximately $57.1 million (Complaint at ¶ 13, *passim*).

Plaintiffs make much of two reports issued concerning Pareteum (the Aerelius and the Viceroy Reports) that were published in June 2019 (D.E. 98-1 and 98-2). Plaintiffs seemingly allege that the analysis and statements in the two reports were accurate.

Based on the foregoing factual predicate, it is clear from the face of the Complaint that the opinions in Squar Milner's audit report concerning Pareteum's 2018 financial statements had no causal connection to the Plaintiffs' alleged losses. First, it is Plaintiffs' theory that management pumped up Pareteum's stock price based on non-GAAP metrics that had nothing to do with the financial statements audited by Squar Milner. To the extent pumping up the Pareteum's stock was the predicate foundation for getting the public to purchase more shares in the Secondary Offering, it has nothing to do with Squar Milner.

More importantly, by the time the Secondary Offering occurred in September 2019, the historical information in the 2018 financial statements was old and cold. The Secondary Offering occurred over 9 months later. In the interim, the reported GAAP revenues of the company, which were not audited by Squar Milner, appeared to accelerate substantially. The revenues in the first and second quarters of 2019 were both comparable to the revenues for the entire year in 2018. The reported revenues for 2018 were $32.4 million, while the reported revenues for the first 6 months of 2019 were $57.1 million. Pareteum's reported performance for the first two quarters of 2019 were not reasonably comparable to the company's performance in 2018, so, on its face, it's not

plausible that reasonable investors relied on the 2018 financial statements to make their investing decisions in September 2019.

Furthermore, between the issuance and filing of the 2018 financial statements audited by Squar Milner and the Secondary Offering, the Aurelius and Viceroy reports highlighted by Plaintiffs were published. As set forth in the Complaint, both reports resulted in a large volume of trading activity and downward stock-price corrections (Complaint at 156).

Thus, between the balance sheet date for the 2018 financial statements audited by Pareteum and the Secondary Offering, investors following Pareteum had seen tremendous revenue growth reported that was not comparable to 2018, management had enthusiastically reported significant increases in non-GAAP metrics not associated with Squar Milner, and there had been two significant stock-price corrections based on the Aurelius and Viceroy reports. These events taken together make it implausible that investors purchased Pareteum stock in the Secondary Offering based on the December 31, 2018 and 2017 financial statements audited by Squar Milner. Further, the Secondary Offering itself caused Pareteum's stock price to do down 18% from $1.83 per share to $1.50 per share. Accordingly, the Complaint must be dismissed against Squar Milner because negative causation is established by the allegations set forth on the face of the Complaint.

## CONCLUSION

For all of the foregoing reasons, Defendant Squar Milner respectfully submits that the Sixth Claim in the Complaint must be dismissed as alleged against Squar Milner.

Dated: April 24, 2020

Respectfully submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

By: *Peter J. Larkin*

16

8240360v.2

Peter J. Larkin
Thomas R. Manisero
Rebecca R. Gelozin
*Attorneys for Squar Milner LLP*
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

Madison S. Spach, Jr.
Spach Capaldi & Waggaman LLP
*Attorneys for Squar Milner LLP*
4676 MacArthur Court
Suite 550
Newport Beach, California 92660
(949) 852-0710

8240360v.2