**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE PARETEUM SECURITIES LITIGATION

Case No.: 19-CV-09767 (AKH) (GWG)

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**
**THE FIRST AMENDED CONSOLIDATED COMPLAINT**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for the Individual*
*Defendants*

**TABLE OF CONTENTS**

I.      Introduction..............................................................................................................1

II.     None of the Challenged Statements Were False or Misleading .........................................2

        A.      Reported Revenue and Realized Revenue Growth...................................................3

        B.      Statements Regarding the Backlog, Its Conversion Rate, and Future Growth........5

        C.      Statements Regarding Internal Controls and GAAP Compliance ...........................7

III.    Plaintiffs Cannot Plead a Strong Inference of Scienter for Any Individual Defendant.......7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
No. 17-cv-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) .............................4, 5, 7

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2d Cir. 2011)...................................................................................................4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)..........................................................................................................3, 5, 6

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010)...................................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................................7

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)...................................................................................................3

**Other Authorities**

Charles F. Walker, Colin D. Forbes, *SEC Enforcement Actions and Issuer
Litigation in the Context of a "Short Attack,"* 68 Bus. Law. 687 (2013)................................8

Defendants Victor Bozzo, Denis McCarthy, Edward O'Donnell, and Robert H. Turner (the "Individual Defendants")[1] hereby join Pareteum Corporation's (the "Company") Memorandum of Law in support of its Motion to Dismiss the First Amended Consolidated Complaint ("Pareteum Mem.") filed contemporaneously herewith. The Individual Defendants respectfully submit this short, separate brief in order to emphasize certain arguments from their particular perspectives.[2]

## I.    Introduction

Pareteum is a rapidly growing technology company that experienced tremendous, sustained growth under the Individual Defendants' leadership. The story here is not uncommon: these genuinely enthusiastic and optimistic executives informed the market in real-time of many, exciting corporate developments, both to comply with Pareteum's reporting requirements and because it provided valuable free publicity. Subsequently they discovered, in the course of their business, certain internal controls and, later, accounting issues, and decided the Company should take a closer look. With the benefit of hindsight and fresh eyes, different accounting judgments were made—here, concerning revenue recognition—leading to an announcement that the Company expects to restate certain financial metrics when its investigation is complete.

That investigation is ongoing, and the anticipated restatement has not yet been issued. Nonetheless, based on nothing more than self-serving short-seller allegations, innuendo, and the announcement that Pareteum expects to restate certain revenue numbers, Plaintiffs now allege a sweeping securities fraud, arguing that the Individual Defendants *must have known* that the Company's revenue recognition and related accounting treatments violated Generally Accepted

---

[1] Luis Jimenez-Tuñon, Robert Lippert, Yves Van Sante, and Laura Thomas were named as defendants in previous complaints in this action but are not named in the First Amended Consolidated Complaint filed July 17, 2020 (Dkt. 168) (the "FACC"). Accordingly, this action should be dismissed as against these individual defendants.
[2] In addition to failing to plead securities claims, the FACC contains many inaccuracies, and the Individual Defendants of course reserve their right to address them if the Court should deny their motion to dismiss.

Accounting Principles ("GAAP"), and that they intentionally used inflated revenue metrics to pump up the Company's stock price in a sinister "pump and dump" scheme. Nothing in the FACC supports this assertion, and it could not be further from the truth.

*First, none of the challenged statements were materially false or misleading*. Nearly all of the challenged statements were statements of opinion, and Plaintiffs cannot clear the high hurdle the Supreme Court has set for demonstrating that an opinion was false or misleading when it was expressed. Many also were forward-looking statements protected by the Reform Act's safe harbor.

*Second, Plaintiffs cannot plead the requisite strong inference of scienter.* Supreme Court precedent requires courts to weigh the competing inferences to be drawn from factual allegations in their full context. Here, the posited "pump and dump" fraud makes no sense in context. Not one of the Defendants is alleged to have sold *any* stock during the class period—which of course means that they retained their holdings, setting themselves up, on Plaintiffs' theory, to be victims of the fraud they allegedly perpetrated. Such weak, illogical scienter allegations are insufficient as a matter of law, especially when weighed against strong competing inferences of good faith conduct.

Accordingly, the FACC should be dismissed in its entirety, with prejudice.

## II.    None of the Challenged Statements Were False or Misleading

All of Plaintiffs' claims—under both the Securities Act of 1933 and the Exchange Act of 1934—fail because none of the four types of challenged statements were false or misleading:

1. Statements regarding reported revenue and realized revenue growth;
2. Statements regarding the value of Pareteum's 36-month contractual revenue backlog ("Backlog"), the Backlog conversion rate, and Pareteum's projected growth;
3. Statements regarding Pareteum's internal controls and GAAP compliance; and
4. Statements regarding the Credit Facility from Post Road Group.

The statements in the fourth category simply were not materially false or misleading in context, as explained in Section I.A.3 of Pareteum's Mem. The statements in the first three categories,

however, all are statements of *opinion* that the Individual Defendants genuinely believed to be true at the time, and which Plaintiffs have not adequately alleged were misleading.

### A.     Reported Revenue and Realized Revenue Growth

Contrary to Plaintiffs' assertions, the mere fact that a company restates—or expects to restate—certain of its financials does not mean that those financials were materially false or misleading when made *for purposes of the federal securities laws*. Courts have consistently recognized that GAAP tolerates a range of reasonable treatments, requiring management and auditors to exercise significant discretion in choosing between alternatives. Thus, two reasonable accountants applying the same principles to the same financial data can easily come to different conclusions, particularly when one does so years later with the benefit of hindsight. This does not mean that the first accounting treatment was incorrect; it just reflects the fundamentally subjective nature of many accounting metrics. In short, many accounting metrics—even some important ones commonly viewed as presenting hard "facts"—are better understood as statements of opinions.

This is important because statements of fact and statements of opinion are analyzed differently under the securities laws. For a statement of *opinion* to be "false," a plaintiff must do more than allege that it turned out to be incorrect: she must plead (1) facts sufficient to show that the speaker did not actually hold the stated belief at the time the statement was made; or (2) "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188-89, 194 (2015).[3] This is "no small task for an investor." *Id.* at 194.

Where reported financial metrics—e.g., recognized revenue—are based on significant,

---

[3] *Omnicare* arose in the context of a Securities Act claim, but the Second Circuit has applied it to Section 10(b) claims as well. *See Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).

subjective estimates and judgment calls, courts have found them to constitute statements of opinion for purposes of the securities laws. *See, e.g.*, *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-13 (2d Cir. 2011) (finding statements regarding adequacy of loan loss reserves and value of goodwill to be opinions and affirming dismissal because they "reflect management's opinion or judgment about what, if any, portion of amounts due on the loans ultimately might not be collectible. . . . Such a determination is inherently subjective, and . . . estimates will vary . . . .").

The recent, thorough decision in *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-cv-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019), is instructive on this point. Plaintiffs there brought suit after the defendant restated a number of its prior year financial statements based on several "errors" it identified and disclosed concerning warranty contract revenue recognition and how and when certain bonuses were expensed. *Id.* at *6. Plaintiffs argued that the restatement established that the financial statements were materially false and misleading when made, and sought recovery on that basis under Sections 11 and 12(a) of the Securities Act and Section 10(b) of the Exchange Act. *Id.* at *10. The court rejected this simplistic assertion, instead conducting a careful analysis as to whether each of the restated financial metrics was properly understood as a statement of fact or statement of opinion. *Id.* at *13-15 ("When the 'errors' resulted from 'management's interpretation of accounting guidance' . . . they are errors of opinion, not of fact."). Ultimately the court determined that all seven accounting treatments challenged by plaintiffs— including recognition of warranty contract revenue—resulted in financial metrics that constituted statements of opinion rather than fact. *Id.* at *15-22. And because plaintiffs failed to plead facts sufficient to indicate that defendants either (1) knew at the time that these accounting treatments were wrong, or (2) failed to conduct a meaningful inquiry into the proper way to handle the particular accounting treatment (thus rendering the opinion misleading by omission), they failed

to plead a false or misleading opinion statement under *Omnicare*, and the court dismissed the claims. *Id.* at \*15-30, 35.

Here, as in *AmTrust*, reported revenue (and revenue growth, derived therefrom) involves a host of estimates and judgment calls that render the resulting metric an opinion under the securities laws. "Revenue Recognition" is the very first of the "Critical Accounting Policies and Estimates" identified in Pareteum's 2018 Form 10-K, and that section explains in detail how recognition of each of several different revenue streams—monthly service revenues, installation and software development revenues, bundled services, etc.—requires significant, subjective judgment calls both as to when revenue may be recognized and how it will be recorded in the company's books. *See* Foresta Decl. in Support of Pareteum Mem., Ex. A (2018 Form 10-K), at 27-28, 30, 40-43. None of this is cut and dry; all of it involves judgment calls that render reported revenue a statement of opinion rather than fact. And Plaintiffs have not pleaded any *facts*, as opposed to conclusory assertions, suggesting that any of the Individual Defendants did not honestly believe the Company's revenue recognition approach to be GAAP compliant and the resulting figures truthful when they were reported, or that the omission of any particular fact rendered these opinion statements misleading.

**B.      Statements Regarding the Backlog, Its Conversion Rate, and Future Growth**

The same is true regarding the challenged, positive statements about Pareteum's Backlog, its Backlog conversion rate, and its future prospects. Like recognized revenue, the Backlog metric was a statement of opinion expressing the result of a series of judgment calls and estimates as to how much revenue the Company could expect to realize over the next three years in light of its current contractual rights and obligations. This overall estimate was constantly changing, based on numerous subjective judgments as to what each of the Company's hundreds of contracts would

likely produce in revenue over several years.[4] The Backlog conversion rate, in turn, was calculated using these Backlog and reported revenue inputs—that is to say, it too was built on subjective judgments and estimates that rendered it an opinion. And of course the challenged optimistic statements projecting further rapid growth and predicting a bright future for the Company were classic statements of opinion that the Individual Defendants genuinely believed at the time. Because Plaintiffs fail to plead any facts suggesting that the Individual Defendants did not believe these statements of opinion, or that they omitted any particular information that rendered them misleading, the challenged statements were not false or misleading under *Omnicare*.

Moreover, many of these genuine, optimistic opinions also were non-actionable puffery and forward-looking statements protected under the Reform Act's safe harbor. *See* Pareteum Mem., Section I.B.5 & 6 (discussing puffery and safe harbor standard); *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010) (Reform Act protects forward-looking statements that are either (a) identified as such and accompanied by  meaningful cautionary language; or (b) immaterial, or (c) not made with actual knowledge of falsity). The challenged statements regarding Pareteum's projected future growth and financial performance were identified as forward-looking and accompanied by appropriate cautionary language. *See* Pareteum Mem., Section I.B.6 (identifying cautionary language). And as discussed above, Plaintiffs have not sufficiently alleged that any of the challenged statements were made with actual knowledge of its falsity. As a result, these opinion statements also are protected by the Reform Act's safe harbor.

---

[4] For the same reasons, the challenged statements regarding particular "Backlog additions" (*see* FACC ¶¶ 72-85)—the estimated future values of specific new contracts—also were genuinely held statements of opinion. Plaintiffs rely on innuendo and conclusory assertions from two self-serving short-seller reports to argue that specific contract values were inflated, but nothing in those reports actually contradicts the challenged statements or suggests that the estimated contract values were not reported in good faith. Many of Pareteum's customers are startups in developing countries, and the fact that a customer under contract does not yet have a physical place of business or website is neither unusual nor does it suggest that it will not be a profitable contract in the future or that the Defendants did not actually believe the reported estimate of its anticipated value at the time.

C.  **Statements Regarding Internal Controls and GAAP Compliance**

Finally, the challenged certifications and statements in Pareteum's financial reports attesting to the adequacy of its internal controls and its compliance with GAAP also were true and not misleading opinions. Each of these statements in context clearly represented the subjective judgments and opinions of the Individual Defendants who made them. *See, e.g.*, FACC ¶ 56 ("Based on the evaluation, the Company's Principal Executive Officer and Principal Accounting Officer have concluded . . . ."). Courts have consistently held that certifications and statements of compliance such as these are statements of opinion for purposes of the securities laws. *See, e.g.*, *In re AmTrust*, 2019 WL 4257110, at *23-24 (finding both statements of GAAP compliance and signed SOX certifications to be opinions). Because Plaintiffs have not pleaded any facts suggesting either that the Individual Defendants did not actually believe these opinion statements, or that they were misleading in context, these cannot form the basis for their claims.

III.  **Plaintiffs Cannot Plead a Strong Inference of Scienter for Any Individual Defendant**

Plaintiffs' Exchange Act claims fail for yet another, independent reason: lack of scienter. Under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), a plaintiff must state with particularity facts giving rise to a "strong inference" that *each* individual defendant acted with fraudulent intent. This strong inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. And this "inherently comparative" inquiry—unlike the usual motion to dismiss analysis—requires courts to consider and weigh "plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323-24.[5]

---

[5] In the Second Circuit, scienter can be established by alleging facts showing either motive and opportunity or strong circumstantial evidence of conscious misbehavior or recklessness. *See* Pareteum Mem., Section I.B.1. The Individual Defendants' discussion of scienter is framed within the *Tellabs* analysis but addresses both prongs of the Second Circuit's test.

Here, non-fraudulent inferences abound, and Plaintiffs offer no cogent reason why any of the Individual Defendants, much less all of them, would have committed the alleged fraud. Mr. Bozzo, Mr. O'Donnell, Mr. Turner, and Mr. McCarthy[6] are seasoned executives. Pareteum experienced tremendous growth under their leadership, and they had every reason to be genuinely enthusiastic about the Company's opportunities, prospects, and future and to share that enthusiasm with the market. Indeed, the fact that a material weakness in internal controls was discovered, announced, and addressed on their watch actually suggests good faith and demonstrates their intention to be transparent with the market and to continue to improve and scale-up Pareteum's processes and oversight as the Company continued on its rapid growth trajectory. Likewise, their emphatic denials in the wake of two pernicious short-seller reports reflect a good faith effort to act quickly and forcefully to prevent significant harm to the Company and its shareholders.[7]

Against these facts suggesting good faith, Plaintiffs fail to plead any particularized support for their conclusory assertion of fraudulent intent. The alleged "pump and dump" scheme truly does not make sense: *none* of the Individual Defendants are alleged to have sold—or "dumped"— *any* stock during the putative class period. They are alleged to have *received* stock, pursuant to Pareteum's established incentive compensation plan (FACC ¶¶ 119-20), but without a corresponding sale these acquisitions merely positioned the Individual Defendants to be even bigger victims of their own alleged fraud, since they lost even more in stock value when the market dropped. Why pump up the stock price only to hold their stock and not sell? Plaintiffs do not say, and the far more reasonable inference is that they did not; they were dedicated professionals doing

---

[6] Mr. McCarthy is named as a defendant only in Plaintiffs' Section 10(b) claim. As President and later COO he was not a control person, and he did not sign the offering documents at issue in the Securities Act claims.

[7] In recent years, numerous short sellers have disseminated misleading and inflammatory information about a healthy company to drive down its stock price for their own financial benefit. *See, e.g.*, Charles F. Walker, Colin D. Forbes, *SEC Enforcement Actions and Issuer Litigation in the Context of a "Short Attack*," 68 Bus. Law. 687, 687-88 (2013) (discussing "short attacks"). These attacks are understandably frustrating and alarming for companies, which typically must mount a swift and strong defense to prevent further damage.

everything they could to help Pareteum succeed for the benefit of the Company and its shareholders, both by securing what they hoped and expected would be valuable customer contracts and by making sure the market knew about them. Nor do any of Plaintiffs' other allegations suggest scienter: the mere fact of an individual's high-level position or access to information does not indicate knowledge or intent; high-level departures are not unusual and do not themselves suggest scienter; and Plaintiffs' attempt to show guilt-by-association with certain non-parties is both legally impermissible and insufficient to meet the demanding scienter requirements. *See* Pareteum Mem., Section I.B.2.

In short, the most plausible inference to be drawn here is that the Individual Defendants were running (and publicizing, whenever possible) a rapidly growing company that they truly believed in, but that they were learning and improving as they went, including with respect to internal controls and the complex accounting treatments that their innovative business model required. This is zealous corporate leadership, not fraud. Because the pleadings and facts before the Court more strongly suggest good faith than fraudulent intent, Plaintiffs' fraud claims fail.

*    *    *

For the reasons identified herein, and in Pareteum's Mem., Plaintiffs fail to state any claim upon which relief may be granted. Moreover, repleading would be futile: Plaintiffs have had ample opportunity to try to plead their claims and have failed to do so, due to the fundamental flaws discussed above. Accordingly, the Court should dismiss the FACC in its entirety with prejudice.

Dated: August 3, 2020

Respectfully submitted,

BAKER & HOSTETLER LLP

By:    *s/ Genevieve York-Erwin*

9

Douglas W. Greene (*pro hac vice* pending)
dgreene@bakerlaw.com
Genevieve York-Erwin
gyorkerwin@gmail.com
Chardaie Charlemagne
ccharlemagne@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200

*Attorneys for the Individual Defendants*