**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE PARETEUM SECURITIES LITIGATION | Case No.: 19-CV-09767 (AKH) (GWG) |

**REPLY IN FURTHER SUPPORT OF THE INDIVIDUAL DEFENDANTS'**
**<u>MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT</u>**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Individual Defendants*

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II. PLAINTIFFS CANNOT ALLEGE A MATERIALLY FALSE OR MISLEADING
    STATEMENT OR OMISSION.........................................................................................2

    A.  Category 1: Reported Revenue and Realized Revenue Growth .............................3

    B.  Category 2: Statements Regarding GAAP Compliance and Internal Controls .......7

    C.  Category 3: Statements Regarding Backlog Value and Its Conversion Rate ..........8

    D.  Categories 4 & 5: Statements Regarding the Credit Facility and Pareteum's
        Future Growth...................................................................................................9

III. PLAINTIFFS CANNOT PLEAD A STRONG INFERENCE OF SCIENTER FOR
     ANY INDIVIDUAL DEFENDANT ...............................................................................10

IV. PLAINTIFFS CANNOT PLEAD CONTROL PERSON LIABILIY AGAINST THE
    INDIVIDUAL DEFENDANTS.......................................................................................14

V.  CONCLUSION...........................................................................................................144

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ......................................................................................................11

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
   No. 17-cv-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) .......................... *passim*

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   129 F. Supp. 3d 48 (S.D.N.Y. 2015)........................................................................................5

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018)....................................................................................13

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)........................................................................................11, 12, 14

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011).....................................................................................................5

*Fecht v. N. Telecom Ltd. (In re N. Telecom Secs. Litig.)*,
   116 F. Supp. 2d 446 (S.D.N.Y. 2000).....................................................................................12

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016).......................................................................................................3

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015).......................................................................................................4, 5, 7, 9

*In re Seadrill Ltd. Sec. Litig.*,
   No. 14-cv-9642 (LGS), 2016 WL 3461311 (S.D.N.Y. June 20, 2016)....................................9

*Tamar v. Mind C.T.I., Ltd.*,
   723 F. Supp. 2d 546 (S.D.N.Y. 2010).....................................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................................10

*Turner v. MagicJack VocalTec, Ltd.*,
   No. 13-cv-0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) .................................................12

**Other Authorities**

17 C.F.R. § 229.303 ......................................................................................................................3

The Individual Defendants[1] hereby join Pareteum's Reply Memorandum of Law in further support of its Motion to Dismiss the FACC, filed contemporaneously herewith, and respectfully submit this Reply brief in further support of the Individual Defendant's Motion to Dismiss.

## I.    INTRODUCTION

In a continued effort to obfuscate the true hollowness of their allegations, Plaintiffs' nearly-100-page First Amended Consolidated Complaint—like the several iterations before it—barrages the Court with hundreds of innocuous statements made in press releases, public filings, and earnings calls, asserting that all of these statements were part of a vast "pump and dump" scheme by Defendants to artificially inflate Pareteum's stock price for their personal benefit. This specious narrative finds no support whatsoever in the factual allegations, which actually suggest good faith conduct.

Pared of Plaintiffs' hyperbole, the core of this case is clear. The Individual Defendants led Pareteum through a period of rapid growth during which they enthusiastically informed the market in real-time of corporate developments through press releases that complied with Pareteum's SEC reporting requirements. They also utilized and publicized certain non-GAAP metrics—commonly used in the software-as-a-service industry—that they genuinely believed better reflected the Company's growth potential at this early stage in its trajectory. When internal controls and accounting issues later surfaced, the Company appropriately took a closer look and concluded, with the benefit of hindsight and outside expert assistance, that certain financial metrics likely should be restated, at which point it responsibly disclosed that expectation to the market in a timely

---

[1] Unless otherwise indicated, all defined terms herein have the same meaning as in the Individual Defendants' initial Memorandum of Law in Support of their Motion to Dismiss the FACC (the "Individual Defendants' Mem.") (Dkt. # 176).

fashion. All of this would seem to suggest transparency and good faith on the part of corporate leaders who genuinely believed in and wanted what was best for the Company.

Nevertheless, Plaintiffs claim—seemingly based entirely on two self-serving, inherently unreliable short-seller reports, and the fact that Pareteum expects to restate certain revenue-related financial metrics in the future—that the Defendants intentionally made false and misleading statements regarding Pareteum's revenue, Backlog, internal controls, and growth. The well-pled facts do not support this baseless assertion. No confidential witnesses have come forth to attest to the alleged fraud; no internal documents appear to substantiate it; and Plaintiffs cannot allege a plausible motive, since none of the Individual Defendants sold any stock at all during the period. In the end, Plaintiffs' allegations rest primarily on a single false presumption: that Pareteum's anticipated restatement of certain revenue metrics necessarily establishes that those metrics were materially false or misleading at the time they were made. This is not the law, and Plaintiffs' false presumption cannot carry their claims.

For the reasons articulated below, in the Individual Defendants' opening brief, and in Pareteum's related memoranda of law, Plaintiffs cannot allege either (1) an actionable false or misleading statement, or (2) the requisite strong inference of scienter.[2] Because Plaintiffs fail to allege these necessary elements, Plaintiffs' claims should be dismissed with prejudice.

## II.    PLAINTIFFS CANNOT ALLEGE A MATERIALLY FALSE OR MISLEADING STATEMENT OR OMISSION

Both Section 10(b) of the Exchange Act and Sections 11 and 12(a)(2) of the Securities Act require Plaintiffs to plead a materially false or misleading statement or, in a registration statement or prospectus for a Securities Act claim, an actionable omission. Because this falsity requirement

---

[2] The Individual Defendants have also joined and adopted Pareteum's additional arguments regarding Plaintiffs' lack of standing to assert claims under the Securities Act.

and analysis is the same under both statutes, and because the challenged statements relied upon in Plaintiffs' Securities Act claim—those found in Pareteum's FY2018 Form 10-K—all are also relied upon in the Exchange Act claims, Plaintiffs' failure to plead *any* actionable false or misleading statement or omission fully disposes of its Section 10(b), 11 and 12(a)(2) claims, as well as all control person claims derived therefrom.[3]

Plaintiffs' Opposition identifies five categories of statements alleged to be materially false and misleading: (1) statements regarding reported revenue and realized revenue growth rates; (2) statements regarding the Company's revenue recognition, GAAP Compliance, and internal controls; (3) statements regarding the Company's 36-month contractual revenue Backlog and the Backlog conversion rate; (4) statements regarding the Credit Facility; and (5) statements about the Company's anticipated growth. *See* Lead Pl.'s Omnibus Opp. To Defs.' Mot. to Dismiss First Amended Consolidated Compl. (Dkt. #185) ("Opp. Br."), at 19. As previously discussed, nearly all of these challenged statements were truthful statements of opinion, and whether statements of opinion or fact, none are actionable.

**A.      Category 1: Reported Revenue and Realized Revenue Growth**

In an effort to rebut the dispositive fact that nearly all of the challenged statements were truthful statements of opinion that were not false or misleading when made, Plaintiffs—like the plaintiffs in *AmTrust*—argue that Pareteum's (anticipated) restatement of certain financial metrics in its consolidated financial statements for 2018 and a portion of 2019 establishes, *per se*, the

---

[3] To the limited extent the FACC suggests that Item 303(a)(2)(ii) to Regulation S-K (17 C.F.R. § 229.303) ("Item 303") provides a separate basis for Section 10(b) liability with respect to reported revenue and Backlog figures, this finds no support in the factual allegations. There can be no violation of Item 303 without scienter; indeed, the Second Circuit has specifically held that Item 303 "requires the registrant's actual knowledge of the relevant trend or uncertainty." *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016). Here, no factual allegations suggest that any Defendant actually knew or believed the reported revenue and Backlog numbers to be false when made. *See infra* and Section III of the Individual Defendants' Mem. Accordingly, there is nothing to suggest that Defendants knowingly omitted any "trend or uncertainty" related to these metrics in violation of Item 303. In any case, Plaintiffs' Opposition does not even reference Item 303, much less argue it as a separate basis for liability.

falsity of Pareteum's previously reported revenue (and realized revenue growth, which is based on reported revenue). *See In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-cv-1545 (LAK), 2019 WL 4257110, at *14 (S.D.N.Y. Sept. 9, 2019). But the mere fact that an issuer restates (or *anticipates* restating) certain financials is not itself sufficient to establish that the original financials were "false" for purposes of the securities laws. Under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), "the Court's first task with respect to each alleged untrue or misleading statement is to determine whether it is one of fact or opinion. Based on that determination, the Court proceeds to its second task: determining whether plaintiffs plead adequately the falsity of the challenged statements under the appropriate standard concerning either statements of fact or opinion." *AmTrust*, 2019 WL 4257110, at *13. In order for a statement of *opinion* to be false, Plaintiffs must plead (1) facts sufficient to show that the speaker did not actually hold the stated belief at the time the statement was made; or (2) "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 188-89, 194.

Under this framework, the mere issuance of a restatement does not establish the falsity of the original financials; rather, the Court must examine the accounting treatment underlying the challenged financial metric to determine whether it properly constitutes a statement of fact or opinion and apply the appropriate falsity standard. Where the numbers underlying the financial statements in question "consist only of figures that were then presently known, fixed, or definite – e.g., the price of widgets and number of widgets sold in a previous month – then any resulting data would be a statement of fact." *AmTrust*, 2019 WL 4257110, at *14. "If, however, the relevant accounting guidance called for the exercise of judgment, then the resulting data would be a

4

statement of opinion." *Id.*; *see also Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (holding estimates of goodwill under GAAP to be opinion statements because such estimates "depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact")[4]; *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 68-72 (S.D.N.Y. 2015) (similar).

Here, statements regarding Pareteum's recorded revenue and realized revenue growth required the exercise of significant, subjective judgment, rendering them opinions. Plaintiffs argue that these statements are "objectively verifiable" and must be statements of fact because they "were based on historical GAAP metrics plainly defined and universally understood by investors." (Opp. Br. at 30). But, as the defendants in *AmTrust* successfully argued, Plaintiffs' "focus on the historical nature of income metrics is misplaced. There is no bright-line rule distinguishing historical income metrics from estimates of future performance." *AmTrust*, 2019 WL 4257110, at *15. Opinion versus fact instead turns on a careful analysis of the specific accounting treatment at issue, and even a cursory review of the GAAP provisions governing revenue recognition dispels the notion that they are objective or straightforward. Accounting Standards Codification ("ASC") Topic 606 explicitly requires a series of judgments, particularly for a technology company like Pareteum which has multiple non-traditional revenue streams and mixed, multi-year contracts, the value of which are subject to changing circumstances, micro- and macro-economic trends, and other developments over time. *See* ASC Topic 606, "Revenue from Contracts with Customers" (requiring companies to, among other things, identify each performance obligation in each

---

[4] Plaintiffs' bald assertion that *Fait* was "overruled" by *Omnicare* is incorrect. *Omnicare* clarified the high bar for establishing that a statement of opinion is false or misleading, and recognized that an honestly held opinion may nonetheless be misleading if the speaker omits information the omission of which makes the opinion misleading in context. But *Omnicare* did *not* overrule or undermine *Fait*'s analytical approach to distinguishing between fact and opinion statements, or *Fait*'s conclusion that financial metrics based on substantial, subjective judgment calls properly constitute statements of opinion.

5

contract; determine the contract's overall transaction price; allocate transaction price to each specific performance obligation; and recognize revenue when/as each performance obligation is satisfied). Indeed, Pareteum explicitly noted the complexity and subjective nature of these underlying judgments in its FY2018 Form 10-K:

> The preparation of the accompanying consolidated financial statements conforms with accounting principles generally accepted in the U.S. and requires management to make certain *estimates and assumptions that affect . . . the reported amounts of revenues* and expenses during the reporting period. The Company bases its estimates on historical experience *and on various other assumptions that are believed to be reasonable under the circumstances,* the results of which form the basis for making judgments about the carrying values of assets and liabilities and intangible assets acquired in our acquisition of Artilium. Significant estimates include the bad debt allowance, *revenue recognition*, impairment of long-lived assets, valuation of financial instruments, useful lives of long-lived assets and share-based compensation. *Actual results may differ from these estimates under different assumptions or conditions*.

Foresta Decl., Ex. A at 40 (emphasis added). In short, Pareteum's reported revenue and revenue growth involved a variety of estimates and assumptions based on what management subjectively believed to be reasonable under the circumstances. Because these financial metrics "involve inputs that reflect 'subjective judgments,' rather than those that are 'objectively determinable,'" the statements regarding recorded revenue and realized revenue growth are statements of opinion. *AmTrust*, 2019 WL 4257110, at *15.

Plaintiffs' attempts to distinguish *AmTrust* as inapposite are without merit. Plaintiffs argue that: (1) the specific accounting issues that the *AmTrust* court held to be opinions are not at issue here, and (2) the *AmTrust* plaintiffs alleged that the defendant's reported income was false because of the accounting treatment applied to certain underlying metrics, while the Plaintiffs here allege that the "underlying data itself was false." (Opp. Br. at 32-33). Neither argument is well taken. First, *AmTrust* establishes a framework for determining whether *any* accounting issue is a statement of opinion or fact. It is not limited to the specific accounting treatments and metrics

6

addressed in that opinion. Second, even if *AmTrust* was limited only to the specific accounting issues analyzed in that opinion, the revenue metric at issue here closely mirrors the warranty contract revenue metric found in *AmTrust* to be a statement of opinion. *See AmTrust*, 2019 WL 4257110, at *15-18. Outside of their conclusory assertion that the two accounting treatments are completely different, Plaintiffs cannot meaningfully distinguish the two, and *AmTrust*'s thoughtful and detailed approach to very similar claims provides a persuasive roadmap for disposition of the issues in this action.

Here, as in *AmTrust*, reported revenue and revenue growth required a series of significant estimates and judgment calls that rendered the resulting financial metrics opinions under the securities laws. And, as in *AmTrust*, Plaintiffs here fail to plead any facts suggesting either that the Defendants did not genuinely believe these statements of opinion at the time, or that they omitted particular information that rendered the opinions misleading in context, as required under *Omnicare*. Accordingly, these challenged statements cannot ground any of Plaintiffs' claims.

**B.      Category 2: Statements Regarding GAAP Compliance and Internal Controls**

For similar reasons, the challenged statements regarding Pareteum's compliance with GAAP (including GAAP's revenue recognition provisions), the adequacy of Pareteum's internal controls, and the reliability of its financial reporting also were truthful and not misleading statements of opinion. As with the first category, Plaintiffs' argument here rests solely on the assertion that the Restatement Release and anticipated restatement "confirmed" these statements to be materially false. (Opp. Br. at 19-20). But these challenged statements are unquestionably statements of *opinion*, both on their face and in context, and the mere fact of a later, potential restatement does not establish either that the Defendants did not believe the statements to be true at the time, or that they omitted particular information that rendered the opinions materially

misleading. Because Plaintiffs' allegations with respect to this category of statements are insufficient as a matter of law to establish falsity, they cannot provide a basis for any of Plaintiffs' claims.

### C.        Category 3: Statements Regarding Backlog Value and Its Conversion Rate

For essentially the same reasons, the third category of statements, concerning the value of Pareteum's 36-month contractual revenue Backlog metric and Backlog conversion rate, were truthful and not misleading statements of opinion.

Plaintiffs argue that these statements were false because "most of the new customers and contracts identified in [press releases announcing millions of dollars in new contracts] were incapable of generating the millions in revenues claimed" and the Company was not actually "converting Backlog to revenue at or above 100% and Backlog conversion was thus not a 'key performance indicator.'" (Opp. Br. at 23, 25). But these assertions appear to be based almost entirely on the self-serving accusations made in two short-seller reports, and Plaintiffs' unsupported assumptions about how certain of the Company's publicly reported metrics should match up with one another. *See* Opp. Br., at 25-26 (theorizing that if the Backlog conversion rate had been at or above 100% then reported revenue and accounts receivable would have looked different); Pareteum Mem., at 20-21 (explaining how Plaintiffs' theory of Backlog conversion falsity is founded on inaccurate and illogical assumptions). Like recognized revenue and revenue growth, the statements of Backlog value properly constituted opinions: they represented the Company's best estimate or projection, at a particular moment in time, of the *future* aggregate value of its contracts over the next three years, based primarily on the subjective judgments of each contracted customer as to the likely trajectory of its business growth and needs under the

8

contract over that period (and thus the revenue it would likely generate for Pareteum).[5] Likewise, the Backlog conversion rate—calculated based on an estimate of the value of Backlog—also was premised on significant estimates and judgment calls that rendered it an opinion.

Plaintiffs fail to allege any *factual* allegations, as opposed to conclusory assertions and unsupported theories, suggesting that the Defendants did not actually believe the Backlog values and conversion rates to be truthful when reported, or that they omitted particular facts that made the opinions misleading. Accordingly, these challenged statements were not false or misleading under *Omnicare* and cannot form the basis for Plaintiffs' claims.

### D.    Categories 4 & 5: Statements Regarding the Credit Facility and Pareteum's Future Growth

Finally, Plaintiffs challenge certain additional statements regarding Pareteum's rights under the Credit Facility and the Company's prospects for future growth and performance. None of these statements were materially false or misleading.

Plaintiffs argue that statements regarding the $50 million Credit Facility entered into by Pareteum were materially false and misleading because the Company could not access any additional funds due to its default on the loan. (Opp. Br. at 28-29). But as explained at greater length in Pareteum's Memorandum of Law and Reply (which the Individual Defendants adopt and join), these statements were truthful and not materially misleading in context. Even assuming the Company was in default at the time of the statements, omission of that fact did not render the statements materially misleading, since—as evidenced by subsequent events—the alleged defaults did not in fact serve as a barrier to accessing credit. *See* Pareteum Mem., at 22. Plaintiffs' factual

---

[5] For essentially the same reasons, these statements also are forward-looking statements protected by the Reform Act's safe harbor. *See* Individual Defendants' Mem., Section II.B; Pareteum Mem., Section I.B.6; *see also In re Seadrill Ltd. Sec. Litig.*, No. 14-cv-9642 (LGS), 2016 WL 3461311, at *9 (S.D.N.Y. June 20, 2016) (holding that statements about projected revenues from newly signed contracts as well as backlog statements were forward-looking statements that fall within the Reform Act's safe harbor).

pleadings are simply insufficient to demonstrate the falsity of any of these statements.

The challenged statements in Plaintiffs' final category—general expressions of optimism about Pareteum's "rapid," "continued," "solid," and "accelerated" growth and its future performance prospects—are largely duplicative of allegedly false statements in other categories related to growth and performance, and they fail for the same reasons. To the extent these growth-related statements represent anything new, however, they are not actionable for several independent reasons. First, these are classic statements of opinion and Plaintiffs have not sufficiently alleged either that the Defendants did not actually believe them to be true or that omission of particular factual information rendered them misleading when made. Second, most of these statements are inactionable puffery and/or forward-looking statements protected by the Reform Act's safe harbor. *See* Individual Defendants' Mem., Section II.B; Pareteum Mem., Section I.B.5 & 6. For the many reasons discussed below and in the Defendants' other briefing, Plaintiffs simply cannot plead any facts suggesting that the Defendants did not honestly believe these optimistic opinions about Pareteum's future growth and performance. Accordingly, these statements cannot ground Plaintiffs' claims.

*     *     *

Because Plaintiffs fail sufficiently to allege any materially false or misleading statement under the securities laws, all of Plaintiffs' Exchange Act and Securities Act claims must be dismissed.

## III.    PLAINTIFFS CANNOT PLEAD A STRONG INFERENCE OF SCIENTER FOR ANY INDIVIDUAL DEFENDANT

Plaintiffs' Exchange Act claims also fail for the separate reason that they cannot allege the requisite "strong inference" of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

10

319-20 (2007); *see also ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).[6]

Here, Plaintiffs' posited "pump and dump" scheme makes no sense in context, and the far more plausible inference is that the Defendants were acting in good faith. The Individual Defendants led Pareteum through a period of significant, sustained growth and had every reason to be genuinely excited and optimistic about the Company's prospects and to want to publicize their successes to investors. Plaintiffs repeatedly assert—with no factual support—that the Defendants were "pumping up" Pareteum's stock price through positive press releases as part of a "classic pump-and-dump" scheme. Yet the Individual Defendants are not alleged to have sold (dumped) stock during the putative class period, or otherwise received any concrete benefit from the allegedly artificially inflated stock price. Plaintiffs claim that the Individual Defendants received stock pursuant to Pareteum's Long-Term Incentive Compensation Plan (FACC at ¶¶ 119-20; Opp. Br, at 6), but without a corresponding class-period sale, this merely set the Defendants up to suffer greater losses when the stock price later declined. Indeed, the fact that the Individual Defendants held the additional stock they received as compensation during the period strongly suggests that they genuinely believed in the Company and what they were telling the market—that Pareteum was growing rapidly and its future was bright. For precisely this reason, numerous courts have held that the absence of stock sales by individual defendants in securities class actions strongly cuts against any inference of scienter. *See, e.g.*, *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("The fact that the other defendants did not sell their shares during the relevant class period undermines plaintiffs' claim that defendants delayed notifying the public so

---

[6] As in the Individual Defendants' initial brief, this scienter discussion is framed within *Tellabs*' holistic analysis but addresses both prongs of the Second Circuit's test: "motive and opportunity" and "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198.

that they could sell their stock at a huge profit." (internal quotation marks omitted)); *Turner v. MagicJack VocalTec, Ltd.*, No. 13-cv-0448, 2014 WL 406917, at *11 (S.D.N.Y. Feb. 3, 2014) (lack of suspicious stock sales "rebuts an inference of scienter"); *Fecht v. N. Telecom Ltd. (In re N. Telecom Secs. Litig.)*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) ("The absence of stock sales by insiders . . . is inconsistent with an intent to defraud shareholders.").

Plaintiffs offer no answer to this compelling narrative of good faith, and no explanation as to why the Individual Defendants would have intentionally inflated the stock price only to hold onto their stock, especially after the short-seller attacks that Plaintiffs claim "partially revealed" the allegedly hidden truth.[7] Instead, Plaintiffs fall back on garden-variety incentives—characterized as "motives"—that are common to all corporate defendants and are insufficient as a matter of law to establish scienter. As the Second Circuit has explained: "[i]f scienter could be pleaded solely on the basis that defendants were motivated because an inflated stock price or improved corporate performance would increase their compensation, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions. [I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated." *ECA*, 553 F.3d at 201 (internal quotation marks omitted). Allegations that defendants sought to artificially inflate stock price to fund corporate operations or pay salaries are likewise insufficient to suggest scienter. *See, e.g.*, *Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 555 (S.D.N.Y. 2010) ("The motives ascribed by Plaintiff to Defendants to 'attract customers, finance current operations, and [to] pursue strategic acquisitions,' have been routinely rejected by courts

---

[7] Plaintiffs' baseless suggestion that "they got caught before they could dump their stock" (Opp. Br., at 14) is utterly implausible and contradicted by the pleaded facts. While one could conceive of cases in which the pleaded facts might suggest that defendants were surprised by the revelation that ended the class period and "got caught" before they could sell, that is not the case here. The FACC specifically alleges that the supposedly hidden "truth" about the Defendants' allegedly fraudulent scheme began leaking out months before the end of the class period, giving Defendants plenty of time to have "dumped" some of their stock if that had truly been their intent. FACC ¶¶ 147-49.

within the Second Circuit as insufficient to establish scienter." (internal quotation omitted) (alteration in original)).

The FACC also fails to plead any circumstantial evidence that might support a strong inference of scienter. The mere termination of certain high-level employees cannot meet this high bar. *See Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018) ("Even if the terminations could give rise to an inference of scienter, the Court is reminded that terminations alone are insufficient to satisfy this element."). Nor do Plaintiffs' irrelevant, inaccurate, and unsupported allegations of past relationships with allegedly unsavory non-parties contribute to any inference of scienter with respect to the claims and conduct at issue in this action.

Moreover, several of the facts Plaintiffs invoke as "circumstantial evidence" actually cut against scienter. As previously discussed, the Defendants' swift and emphatic denials in response to the inflammatory accusations made in two short-seller attacks more strongly suggest a good faith effort to protect the Company and its shareholders from self-serving short sellers than a sinister cover up. *See* Individual Defendants' Mem., at 8 & n.7. Likewise, the decision in August 2019 to retire the Backlog metric more plausibly suggests thoughtful attention to the Company's life-stage and finances than fraudulent intent. It makes perfect sense that Pareteum—like other rapidly growing software-as-a-service companies for whom traditional GAAP metrics failed to sufficiently reflect their growth potential—would use and publicize the non-GAAP revenue Backlog metric to better communicate that potential to the market. It also makes perfect sense that Pareteum would choose to retire that metric at the point where the Company had grown so much that the revenue Backlog no longer provided as meaningful a measure of the Company's performance and expected growth as its GAAP-based quarterly results and guidance. Finally, the Company's subsequent announcement that it expects to restate certain financial metrics is similarly

13

more indicative of care and good faith than fraudulent intent: the Defendants' willingness to improve the Company's accounting treatments and update previous financials where appropriate, and to do so transparently, informing the market in a timely fashion suggests good corporate stewardship and cuts against scienter.

*Tellabs*' required holistic analysis thus shows good faith, not fraud: the Individual Defendants were running a rapidly growing company that they truly believed in, and truthfully publicized their achievements for the good of the Company's shareholders. They were learning and improving as they went, including with respect to internal controls and the complex accounting treatments that their innovative business model required. Plaintiffs' proffered inference of fraud fails to overcome this predominant inference of good faith. Plaintiffs' 10(b) claim thus fails for lack of scienter.

## IV.    PLAINTIFFS CANNOT PLEAD CONTROL PERSON LIABILIY AGAINST THE INDIVIDUAL DEFENDANTS

For the reasons detailed above, Plaintiffs fail to allege a primary violation under either the Securities Act or the Exchange Act. Accordingly, Plaintiffs' control person claims against the Individual Defendants under Section 20(a) of the Exchange Act and Section 15 of the Securities Act also necessarily fail. *See, e.g.*, *ECA*, 553 F.3d at 206-07 (dismissing § 20(a) and § 15 control person claims because plaintiffs failed to allege a primary violation).[8]

## V.    CONCLUSION

For the reasons identified herein, and in the Individual Defendants' and Pareteum's other briefing in support of their Motions to Dismiss, Plaintiffs fail to state any claim upon which relief

---

[8] Should the Court deny the Individual Defendants' Motion to Dismiss, in whole or part, they request that they be allowed to promptly clarify their employment dates with evidence they cannot now submit, and, if applicable, demonstrate that they cannot be responsible for the challenged conduct.

14

may be granted. Moreover, repleading would be futile: Plaintiffs have had ample opportunity to try to plead their claims and have failed to do so, due to the fundamental flaws discussed above. Accordingly, the Court should dismiss the FACC in its entirety with prejudice.

Dated:  September 3, 2020                    Respectfully submitted,

                                            BAKER & HOSTETLER LLP


                                            By:   *s/ Douglas W. Greene*
                                                  Douglas W. Greene (*pro hac vice*)
                                                  dgreene@bakerlaw.com
                                                  Genevieve York-Erwin
                                                  gyorkerwin@gmail.com
                                                  Chardaie Charlemagne
                                                  ccharlemagne@bakerlaw.com
                                                  45 Rockefeller Plaza
                                                  New York, NY 10111
                                                  Telephone: 212.589.4200

                                            *Attorneys for the Individual Defendants*