**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                             :

IN RE PARETEUM SECURITIES
LITIGATION                          :        Case No. 1:19-cv-09767-AKH-GWG

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                             X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PARETEUM CORPORATION'S MOTION TO DISMISS
THE FIRST AMENDED CONSOLIDATED COMPLAINT**

**MCGUIREWOODS LLP**

1251 Avenue of the Americas
20th Floor
New York, NY 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

*Counsel for Defendant Pareteum Corporation*

1

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.    PSIG'S OPPOSITION DOES NOT ADDRESS THE DEFICIENCIES IN THE
      SECTION 10(B) CLAIMS ASSERTED IN THE FAC ..................................................2

      A.    PSIG Has Not Shown That A Strong Inference Of Scienter Can Be Drawn
            From The Allegations Of The FAC. ..................................................................3

            1.    The Opposition Relies On Generic Motive Arguments Repeatedly
                  Rejected By Courts In This Circuit. .........................................................3

                  a.    The authorities cited by PSIG do not support its growth-by-
                        acquisition argument. .................................................................4

                  b.    The single case cited by PSIG to support its claim that
                        equity-linked incentive awards prove scienter is not
                        persuasive. ..................................................................................5

                  c.    The Opposition adds nothing to the FAC's insufficient
                        motive allegations for PSIG's "fund corporate operations"
                        theory. ........................................................................................7

                  d.    PSIG's cobbled-together motive accusations do not add up
                        to scienter. .................................................................................8

            2.    PSIG's generic circumstantial scienter allegations also fail......................9

                  a.    PSIG's authorities do not support its foundational argument
                        that restatements and GAAP violations show scienter. .................9

                  b.    PSIG offers no authority to support its position that the
                        Exchange Act Defendants' alleged concealment of past
                        relationships shows a strong inference of scienter. ....................12

                  c.    The backlog is not circumstantial evidence of scienter. ..............14

                  d.    The cases cited by PSIG involving a company's denial of
                        news reports do not support a finding of scienter here. ...............14

                  e.    None of the cases cited by PSIG support a finding that
                        retiring the backlog evidences scienter. ....................................16

                  f.    The Opposition's one sentence on executive terminations is
                        not persuasive. ..........................................................................17

                  g.    PSIG does not point to any facts in the FAC that refute the
                        more plausible inferences identified by Pareteum. .....................18

                  h.    The individual scienter allegations cannot be added
                        together to create a strong inference of scienter..........................20

i

3.     The Court Should Reject The Miscellaneous Scienter Arguments Included In The Opposition. ......................................................20

4.     PSIG Fails To Allege Corporate Scienter. ............................................23

B.     PSIG's Opposition Fails To Show That The FAC Contains Adequate Allegations Of False And Misleading Statements. ..............................................24

1.     PSIG's Allegations Regarding Revenue, GAAP Compliance, Internal Controls, and Financial Reporting Fail To Demonstrate that Pareteum Made Materially False and Misleading Statements. .........24

2.     PSIG's Opposition Reveals That There Are No Backlog-Related Misstatements Before September 17, 2018............................................26

3.     The Opposition Is Unconvincing With Respect To The Credit Facility Statements. .......................................................................28

4.     PSIG Has No Relevant Rejoinder To Pareteum's Argument That It Did, In Fact, Experience Significant Growth During The Class Period. .........................................................................................28

C.     The Opposition Does Not Rebut Pareteum's Argument That Alleged "Misstatements" Cited In The FAC Are Non-Actionable Opinions, Puffery And/Or Forward-Looking Statements. ..................................................29

D.     Even if PSIG's Section 10(b) Claims Survive, PSIG Has Not Alleged Any Misstatements Before May 7, 2018. ..................................................32

II.     THE OPPOSITION FAILS TO ADDRESS THE DEFICIENCIES IN THE SECURITIES ACT CLAIMS ASSERTED IN THE FAC............................................33

CONCLUSION...................................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir.1995) ........................................................................................5

*In re Adient plc Sec. Litig.*,
No. 18-cv-9116, 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ...............................29

*In re Am. Realty Capital Properties, Inc. Litig.*,
No. 15 MC 40 AKH, 2015 WL 6869337 (S.D.N.Y. Nov. 6, 2015).......................34

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010)...................................................................34

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)................34

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018)...................................................................30

*In re ArthroCare Corp. Securities Litigation*,
726 F. Supp. 2d 696 (W.D. Tex. 2010)..................................................................14

*In re AudioEye, Inc. Sec. Litig.*,
No. 4:15-cv-00163 (D. Ariz. May 8, 2017)...........................................................12

*In re Avon Sec. Litig.*,
No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ............30

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018)...................................................................20

*In re Bear Stearns. Cos., Inc. Sec. Derivative & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)....................................................................11

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)................................................................................31

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005)....................................................................22

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ............15

*City of Warren Police & Fire Retirement System*,
No. 20-CV-2031 (JSR), 2020 WL 4547217 (S.D.N.Y. Aug. 6, 2020) ..................................9

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
No. 16-CV-7014 (VSB), 2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018)............................31

*Coronel v. Quanta Capital Holdings Ltd.*,
No. 07 Civ. 1405(RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)...................................8

*Cortina v. Anafex Life Scis. Corp.*,
2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016).....................................................................16

*Crowell v. Ionics, Inc.*,
343 F. Supp. 2d 1 (D. Mass. 2004)......................................................................................21

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018).................................................................................17

*In re DDAVP Direct Purchaser Antitrust Litig.*,
585 F.3d 677 (2d Cir. 2009)................................................................................................22

*DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*,
413 F. Supp. 3d 187 (S.D.N.Y. 2019).................................................................................25

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).........................................................................................*passim*

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008)...................................................................................8

*In re Eletrobas Sec. Litig.*,
245 F. Supp. 450 (S.D.N.Y. 2017) .....................................................................................17

*In re Emex Corp. Sec. Litig.*,
No 01 Civ. 4886(SWK), 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002) ............................8

*Feasby v. Industri–Matematik Int'l*,
Corp., No. 99 Civ 8761(HB), 2000 WL 977673 (S.D.N.Y. July 17, 2000) ...........................8

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335, 350 (E.D. Pa. 2014) ............................................................................8

*Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017)................................................................................26

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010).................................................................................23

*In re Gentiva Sec. Litig.*,
   932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...............................................................25

*Guadagni v. New York City Transit Auth.*,
   387 F. App'x 124 (2d Cir. 2010) ......................................................................25

*In re Health Mgmt., Inc. Sec. Litig.*,
   970 F. Supp. 192 (E.D.N.Y. 1997)....................................................................19

*In re Henry Schein, Inc. Sec. Litig.*,
   No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019)...........13

*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007)............................................................................13

*Hou Liu v. Intercept Pharm., Inc.*,
   2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020).....................................................22

*In re Interpool, Inc. Sec. Litig.*,
   No. 04-321 (SRC), 2005 U.S. Dist. LEXIS 18112 (D.N.J. Aug. 16, 2005) ..........26

*Ironworkers Local 580–Joint Funds v. Linn Energy, LLC*,
   29 F. Supp. 3d 400 (S.D.N.Y. 2014) ....................................................... 15, 16, 29

*Johnson v. Sequans Communications S.A.*,
   No. 11 Civ. 6341 (PAC), 2013 WL 214297 (S.D.N.Y. 2013)...............................7

*Koplyay v. Cirrus Logic, Inc.*,
   No. 13 CIV. 790 CM, 2013 WL 6233908 (S.D.N.Y. Dec. 2, 2013).......................7

*In re Magnum Hunter Resources*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014) .................................................................11

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
   876 F.3d 541 (4th Cir. 2017)............................................................................13

*Manavazian v. Atec Grp., Inc.*,
   160 F. Supp. 2d 468 (E.D.N.Y. 2001) ...............................................................31

*In re Manulife Fin. Cop. Sec. Litig.*,
   276 F.R.D. 87 (S.D.N.Y. 2011)........................................................................16

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   886 F. Supp. 2d 340 (S.D.N.Y. 2012), *aff'd sub nom. Cellular S. Inc. v.
   Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 516 F. App'x 30 (2d Cir. 2013) ...................13

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp.*,
   720 F. Supp. 2d 254 (S.D.N.Y. 2010)...............................................................34

v

*New Orleans Emples. Ret Sys. v. Celestica, Inc.*,
   455 Fed. App'x 10 (2d Cir. 2011) ..................................................................................17

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)................................................................................ 5, 20, 25

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   367 F. Supp. 3d 16 (S.D.N.Y. 2019) .............................................................................9, 27

*Patel v. L-3 Communs. Holdings, Inc.*,
   No. 14-CV-6038 (VEC), 2016 WL 1629325 (S.D.N.Y. 2016)...........................................23

*In re Platinum-Beechwood Litig.*,
   427 F. Supp. 3d 395 (S.D.N.Y. 2019)................................................................... 12, 22

*Plumbers & Pipefitters Local Union No. 719 Pension Tr. Fund v. Conseco Inc.*,
   No. 09 CIV. 6966 JGK, 2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011)................................11

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
   No. 1:16-cv-3591-GHW, 2020 U.S. Dist. LEXIS 66016 (S.D.N.Y. Apr. 14,
   2020) ..............................................................................................................25, 28

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Intern. N.V.*,
   89 F. Supp. 3d 602 (S.D.N.Y. 2015) ....................................................... 10, 17, 21

*Pollio v. MF Glob., Ltd.*,
   608 F. Supp. 2d 564 (S.D.N.Y. 2009)......................................................................24, 27

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017)......................................................................................30

*Reilly v. U.S. Physical Therapy, Inc.*,
   No. 17 CIV. 2347 (NRB), 2018 WL 3559089 (S.D.N.Y. July 23, 2018) ..............................2

*Rodriguez v. Gigamon Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) ..........................................................................30

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)........................................................................................24

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)..........................................................................................11

*S.E.C. v. Espuelas*,
   908 F. Supp. 2d 402 (S.D.N.Y. 2012)............................................................................26

*S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharmaceuticals, Inc.*,
   296 F.R.D. 241 (S.D.N.Y. 2013).....................................................................................14

*In re Salomon Analyst Winstar Litig.*,
No. 02–CV–6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006)................................................4

*Schiro v. Cemex, S.A.B. de C.V.*,
396 F. Supp. 3d 283 (S.D.N.Y. 2019)....................................................................................23

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)....................................................................................................21

*Schottenfeld Qualified Associates, L.P. v. Workstream, Inc.*,
No. 05 CV 7092 (CLB), 2006 WL 4472318 (S.D.N.Y. May 4, 2006) ..................................4

*In re Seadrill Limited Securities Litigation*
No. 14 CIV. 9642 (LGS), 2016 WL 3461311 (S.D.N.Y. June 20, 2016) ............................31

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
348 F. Supp. 3d 313 (S.D.N.Y. 2018).................................................................................6, 8

*Shemian v. Research In Motion Ltd.*,
No. 11 CIV. 4068 RJS, 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013), *aff'd,*
570 F. App'x 32 (2d Cir. 2014) .............................................................................................29

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010)..................................................................................................22

*In re Spear & Jackson Sec. Litig.*,
399 F. Supp. 2d 1350 (S.D. Fla. 2005) .................................................................................15

*Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*,
412 F. Supp. 3d 353 (S.D.N.Y. 2019)...................................................................................30

*Stevelman v. Alias Research Inc.*,
174 F.3d 79 (2d Cir. 1999).....................................................................................................15

*In re Sturm, Ruger & Co. Sec. Litig.*,
3:09-cv-1293, 2011 U.S. Dist. LEXIS 11341 (D. Conn. Feb. 4, 2011) ...............................32

*In re Supreme Indus., Inc. Sec. Litig.*,
No. 3:17CV143PPS-MGG, 2018 WL 2364931 (N.D. Ind. May 23, 2018) .........................14

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008).....................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...................................................................................................8, 12, 18

*Union Cent. Life Ins. Co. v. Ally Fin., Inc.*,
No. 11 CIV. 2890 GBD, 2013 WL 2154220 (S.D.N.Y. Mar. 29, 2013)..........................4, 12

*Varghese v. China Shenghuo Pharm. Holdings*,
     672 F. Supp. 2d 596 (S.D.N.Y. 2009)........................................................................ 11, 26

*In re Veeco Instruments, Inc. Sec. Litig.*
     235 F.R.D 220 (S.D.N.Y. 2006)......................................................................7, 10, 11, 25

*Zirkin v. Quanta Capital Holdings Ltd.*,
     No. 07 Civ. 851(RPP), 2009 WL 185940 (S.D.N.Y. Jan. 23, 2009)......................................8

**Statutes**

15 U.S.C. § 78U-4(b)(2).....................................................................................................14

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................33,34
Fed. R. Civ. P. 12(f) .........................................................................................................34

### INTRODUCTION[1]

Pareteum Corporation and Lead Plaintiff Pareteum Shareholder Investor Group ("PSIG") agree that the First Amended Consolidated Complaint ("FAC") rests on two cornerstones.  The first is PSIG's insistence that there *must* have been false and misleading statements because Pareteum subsequently announced that it will restate earnings (the "Restatement Announcement"). (*See* Omnibus Opposition to Defendants' Motions to Dismiss First Amended Consolidated Complaint 1-3, 19-23 (Doc. 185) ("Opposition").)  The second is PSIG's assertion that there *must* have been scienter because of the existence of a number of garden-variety bases for finding motive and circumstantial evidence of the same.  (*Id.* at 1-3, 8, 14.)  But those cornerstones of the FAC crumble under inspection.  The naked fact of an announcement that a company will be restating its financial disclosures does not show that the company's disclosures were knowingly false when made.  And it is no secret in this Circuit that a half-dozen plus legally insufficient grounds for scienter do not add up to the required strong inference; in other words, "zero plus zero equals zero."  Furthermore, adding that the alleged misstatements arose from a "pump and dump" scheme does not save the FAC, since it is undisputed that the Exchange Act Defendants *did not sell or "dump"* their stock.

Nothing else in the FAC satisfies PSIG's burden of pleading the requirements of the asserted Exchange and Securities Acts claims.

As to the Section 10(b) claims, PSIG does not point to any well-pled allegations that Pareteum made material misrepresentations or omissions or acted with scienter.  The Opposition's

---

[1] Capitalized terms not defined here have the same meaning as in the First Amended Consolidated Complaint and in the Memorandum of Law In Support of Pareteum Corporation's Motion To Dismiss The First Amended Consolidated Complaint (Doc. No. 181.)

boiler-plate motivational and circumstantial allegations of intent to defraud do not rescue the FAC from its pleading deficiencies, including that (1) the motive allegations are generic and do not add up to scienter, (2) the circumstantial scienter allegations are not viable, and (3) PSIG failed to allege corporate scienter. (*See* Section I.A). The Opposition similarly fails explain how most of the statements that make out its claim are false or misleading in the first place. (*See* Section I.B). And it further fails to rebut Pareteum's arguments that many of those statements are inactionable opinions, puffery, and/or forward-looking. (*See* Section I.C).

As to the Securities Act claims, the Opposition identifies no allegations in the FAC that meet the heightened pleading standard required when Section 11 and Section 12 claims, like PSIG's, are based on the same conduct used to plead fraud claims. (*See* Section II). For the reasons set forth below and in its opening brief, Pareteum's motion should be granted and the FAC dismissed with prejudice.

## ARGUMENT

### I.   PSIG'S OPPOSITION DOES NOT ADDRESS THE DEFICIENCIES IN THE SECTION 10(B) CLAIMS ASSERTED IN THE FAC

The Opposition makes clear that PSIG is relying on run-of-the-mill motivations and circumstances to show an intent to defraud, and then contends that these oft-rejected and weightless allegations add up to show a strong inference of scienter. That is not enough to meet PSIG's burden to adequately plead a claim under Section 10(b) of the Exchange Act.[2] *Reilly v. U.S. Physical Therapy, Inc.*, No. 17 CIV. 2347 (NRB), 2018 WL 3559089, at *19 (S.D.N.Y. July 23, 2018) ("[I]nadequate allegations of motive and inadequate allegations of recklessness cannot

---

[2] PSIG does not dispute that, as noted in Pareteum's opening brief, if PSIG's Section 10(b) claim falls short, so too does its Section 20(a) claim. (*See* Doc. 181 at 45.)

be combined to demonstrate scienter—zero plus zero cannot equal one."). Moreover, as detailed below, the judicial authority cited by PSIG in support of its case involves specific, granular allegations revealing a defendant's knowledge of the falsity of his or her statements when made. Stripping away generic allegations in the FAC, PSIG rests its scienter cases on two short seller reports published long after the allegedly false statements. But this is fraud by hindsight, and further grounds to dismiss the FAC's Section 10(b) claims.

PSIG has also failed to show the falsity of statements relating to the backlog, growth, and other identified areas. The Opposition does not explain why statements relating to the backlog were false, and ignores PSIG's own allegations that Pareteum grew at a strong clip, even accounting for the anticipated restatement. Finally, the statements are protected under the PSLRA's safe harbor and are inactionable on that basis. This Court should dismiss PSIG's Section 10(b) claim, and with it, PSIG's Section 20(a) claim.

### A. PSIG Has Not Shown That A Strong Inference Of Scienter Can Be Drawn From The Allegations Of The FAC.

#### 1. The Opposition Relies On Generic Motive Arguments Repeatedly Rejected By Courts In This Circuit.

The Opposition confirms that PSIG is attempting to show a strong inference of scienter by relying on formulaic recitals of fraudulent intent regularly rejected by the Second Circuit: acquiring other entities, awarding equity awards, and selling stock to fund operations and pay salaries are the very "[m]otives that are common to most corporate officers" that "do not constitute 'motive' for purposes of this inquiry." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

### a.   The authorities cited by PSIG do not support its growth-by-acquisition argument.

The Opposition first claims that Pareteum and the Exchange Act Defendants intended to defraud investors in order to acquire other entities. (Doc. 185 at 18.) But PSIG cannot rely on Pareteum's desire to expand its business and earn revenue to establish a strong inference of scienter. As this Court has explained, a bare "allegation that [a company] had a motive to grow its profits, is . . . totally insufficient to demonstrate scienter." *Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, No. 11 CIV. 2890 GBD, 2013 WL 2154381, at *1 (S.D.N.Y. Mar. 29, 2013); *see also In re Salomon Analyst Winstar Litig.*, No. 02–CV–6171, 2006 WL 510526, at *10 (S.D.N.Y. Feb. 28, 2006) (because "all firms in the securities industry want to increase profits and all individuals are assumed to desire to increase their compensation," allegations of motive to increase revenues and worth are too generalized to allege scienter).

The Opposition does not explain why this longstanding principle should not apply here. Even PSIG's central authority, *Schottenfeld Qualified Associates, L.P. v. Workstream, Inc.*, No. 05 CV 7092 (CLB), 2006 WL 4472318, at *4 (S.D.N.Y. May 4, 2006), supports Pareteum and the Exchange Act Defendants. *Schottenfeld* concerned allegations that a corporate executive—who received a cash bonus based on gross revenue growth—had incentive to acquire other companies using corporate stock, regardless of the cost. The defendant executive acquired seven companies *in one year*, in fact, using the company's stock as consideration. *Id.* This had the direct effect of increasing the executive's own personal cash compensation. *Id.*

There are no allegations that Pareteum went on anything close to the "buying binge" alleged in *Schottenfeld*, or that its executives earned direct cash bonuses from any acquisitions. (FAC ¶ 22 (Artilium acquired in October 2018 and iPass acquired in November 2018); ¶ 27

4

(Devicescape transaction in May 2019).)  The Opposition, just like the FAC, recites in conclusory fashion that Pareteum acquired companies "to buoy their false metrics with real revenue and prop up their ongoing scheme."  (Doc. 185 at 18-19.)  But PSIG directs the Court to no specific allegations showing Pareteum lacked "real revenue" or that there was any scheme.  Indeed, Pareteum did enjoy strong revenue growth during this time, and not just because it acquired other companies, as PSIG admits in the FAC.  (FAC ¶ 45 (highlighting fact that Pareteum achieved a 139% increase in revenues to $32.4 million in FY18, which is $23.4 million after accounting for the anticipated restatement—a 73.3% increase from FY2017 revenues of $13.5 million); ¶ 95 ("the Company's alleged revenues increased 287% from FY18 to 1H19 (based on the Restatement Release corrections)").)  So there is no strong inference that Pareteum "needed to fundraise to survive." (Doc. 185 at 19 (citing *Skiadas v. Acer Therapeutics Inc.*, 1:19-cv-6137, 2020 U.S. Dist. LEXIS 105814, at *34-35 (S.D.N.Y. June 16, 2020)).)

In essence, PSIG's motive allegation here is that Pareteum had an intent to defraud because it wanted to show revenue growth.  But that desire is insufficient to plead motive to commit securities fraud.  *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (citing *Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)); *see ECA*, 553 F.3d at 200 ("[E]arning profits for the shareholders is the essence of the duty of loyalty, and therefore it would be an unusual case where accomplishment of this objective constitutes the requisite motive to defraud the shareholders.").

> **b.      The single case cited by PSIG to support its claim that equity-linked incentive awards prove scienter is not persuasive.**

As a matter of law, a "desire to increase . . . incentive compensation by maximizing [a company's] earnings may not…form the basis for Lead Plaintiffs' scienter allegations." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 273 (S.D.N.Y. 2008); *see also Acito v.*

*IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (holding that motive cannot be predicated upon allegations that defendants inflated company's share price to augment their compensation; "[V]irtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.  Incentive compensation can hardly be the basis on which an allegation of fraud is predicated.").

The only case cited by PSIG in support of its argument is *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 326 (S.D.N.Y. 2018).  (Doc. 185 at 20.)  That case dedicated all of one clause of analysis to two individual defendants' incentive packages.  *Shawanaz*, 348 F. Supp. 3d at 326 ("[The complaint] describes Defendants Odidi and Della Penna's incentive packages, which were tied to IPCI's stock price.").  By this point in this Court's opinion, however, its conclusion was clear: the plaintiffs there included "statements from anonymous former . . . employees describing in detail the personal involvement of [the individual defendants] in the development of the [New Drug Application about which misstatements were made]." *Id.*  The *Shanawaz* plaintiffs also alleged that the individual defendants had specific knowledge about formulation of the drug itself.  *Id.*  The Court pointed out that such allegations could support scienter in other misrepresentation cases involving the FDA.  *Id.*

This Court should decline the Opposition's invitation to turn a small part of the *Shanawaz* ruling into the foundation on which PSIG would have its incentive-related scienter arguments prevail.  Here, most of the Exchange Act Defendants received typical equity-based compensation incentives in the form of stock options, many of which were not even exercisable during the class period (Bozzo, O'Donnell, McCarthy).  (*See* FAC ¶ 119.)  Plus, the Exchange Act Defendants received no immediate or concrete benefit from the Artilium, iPass, and Devicescape transactions.  Both the case law and alleged facts here show that this allegation is entitled to no weight.  *ECA*,

6

553 F.3d at 201 (highlighting absence of allegations showing a "direct link between the compensation package and the fraudulent statements because of the magnitude of the compensation and the defendants' motive to sweep problems under the rug given one defendant's expiring contract" and rejecting plaintiffs' motive arguments); *Koplyay v. Cirrus Logic, Inc.*, No. 13 CIV. 790 CM, 2013 WL 6233908, at *6 (S.D.N.Y. Dec. 2, 2013) ("Every executive of every public corporation has [the incentive to increase their compensation], and motives generally possessed by most corporate directors and officers do not suffice to show scienter.") (quotation and citation omitted).

       **c.**       **The Opposition adds nothing to the FAC's insufficient motive allegations for PSIG's "fund corporate operations" theory.**

PSIG's third boilerplate theory of motive scienter is that Pareteum and the Exchange Act Defendants intended to defraud shareholders to fund corporate operations and cover operating losses. (Doc. 185 at 20.) As a general matter, efforts to bolster a corporation's stock price and fund corporate operations do not give rise to an inference of scienter. *See, e.g.*, *Johnson v. Sequans Communications S.A.*, No. 11 Civ. 6341 (PAC), 2013 WL 214297, at *18 (S.D.N.Y. Jan. 17, 2013) (citing *In re PXRE Grp, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 531 (S.D.N.Y. 2009)) ("[T]he alleged motivation of a corporation to raise money to prevent the negative ramifications of a drop in stock price—even if such a drop would allegedly threaten the 'survival' of a company—is far too generalized (and generalizable) to allege the proper 'concrete and personal' benefit required by the Second Circuit."); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 230 (S.D.N.Y. 2006) ("The motive to maintain the appearance of corporate profitability . . . will naturally involve benefit

7

to a corporation, but does not 'entail concrete benefits.'").  Courts in the Second Circuit have regularly rejected this argument.[3]

To address this flaw, PSIG cites *Shanawaz* and cases from other districts that plead motive scienter because a corporation relied on stock sales to cover cash shortfalls or steep operational losses.  *See, e.g.*, *Shanawaz*, 348 F. Supp. 3d at 326 ("The Amended Complaint paints a sufficiently plausible picture of each Defendant's motives to publicly misrepresent [the prospect of FDA approval] as well: It describes [defendant corporation's] dependence on sales of its stock to cover its operating losses."); *see also Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 350 (E.D. Pa. 2014).  But PSIG has not alleged that Pareteum had operating losses for any particular period.  Quite the opposite: as noted above, PSIG pled that Pareteum revenues increased 287% from FY18 to 1H19 even after anticipated restatement corrections, and experienced a similarly sizeable increase from FY17 to FY18 as well.  (FAC ¶¶ 45, 95.)  PSIG has no rejoinder here.

### d.  PSIG's cobbled-together motive accusations do not add up to scienter.

Combining generalized allegations does not create a strong inference of scienter.  *ECA,* for example, held that a desire to maximize revenue, acquire other companies or support corporate operations, and increase compensation and bonuses were, "even taking the allegations as a whole, as *Tellabs* requires," inadequate to "create a strong inference of scienter based on motive and

---

[3] *See, e.g.*, *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405(RPP), 2009 WL 174656, at *16, 26 n.14 (S.D.N.Y. Jan. 26, 2009); *Zirkin v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 851(RPP), 2009 WL 185940, at *12 (S.D.N.Y. Jan. 23, 2009); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y. 2008); *In re Emex Corp. Sec. Litig.*, No 01 Civ. 4886(SWK), 2002 WL 31093612, at *6 (S.D.N.Y. Sept. 18, 2002) ("[A] 'desire to raise much needed capital' is an insufficient generalized motive to support an inference of scienter.") (citation omitted); *Feasby v. Industri–Matematik Int'l Corp.*, No. 99 Civ. 8761(HB), 2000 WL 977673, at *4 n.5 (S.D.N.Y. July 17, 2000) ("[A]llegations that defendants were 'motivated by' a desire to raise capital or 'benefitted' by raising capital are insufficient.").

8

opportunity." 553 F.3d at 200-01.[4]  PSIG just repeats this oft-rejected pleading style in the FAC. This Court should adopt *ECA*'s reasoning.

### 2.     PSIG's generic circumstantial scienter allegations also fail.

As with motive and opportunity scienter, PSIG follows the standard securities plaintiff playbook, offering generalized circumstantial scienter theories that wilt when the facts alleged are put to the test of well-established pleading requirements in the Second Circuit.  (Doc. 185 at 21-25.)

Without viable motive allegations, "the strength of [PSIG's] circumstantial allegations must be correspondingly greater." *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 36 (S.D.N.Y. 2019) (quoting *ECA*, 553 F.3d at 198-99).  Recklessness is defined as "at the least, . . . an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA*, 553 F.3d at 198.  PSIG has not shown strong circumstantial evidence of conscious misbehavior or recklessness.  So PSIG's circumstantial allegations cannot support a 10(b) claim.

### a.     PSIG's authorities do not support its foundational argument that restatements and GAAP violations show scienter.

Underpinning PSIG's cited authorities in the section of the Opposition dealing with restatements and GAAP violations were factual allegations by the plaintiffs showing the

---

[4] Plaintiff's reliance on *City of Warren Police & Fire Retirement System* is similarly misplaced, because the alternative theory that allegedly "merely raises a factual dispute" there concerns allegations that the defendant sold an unusually high amount of stock. No. 20-CV-2031 (JSR), 2020 WL 4547217, at *9 (S.D.N.Y. Aug. 6, 2020).  The Opposition, contrastingly, presents only allegations that the Exchange Act Defendants were caught before they could carry out an imaginary, incomplete scheme to sell stock. (Doc. 185 at 27.)

defendants were aware of accounting errors but made contrary statements anyway. (Doc. 185 at 21-22.) That is not the case here. For instance, in *In re Veeco*, this Court detailed statements of a confidential witness who specifically detailed that two defendants knew the financial statements they prepared were not accurate, despite stating otherwise to the public. 235 F.R.D. at 231. This included instructions to the confidential witness to reverse accruals, discussions at meetings about stockpiles of nonsaleable inventory, and documentation of payments to employees in China to obtain fictitious customer sign-offs. *Id.* This Court thus described subsequent financial statements as containing accounting "manipulations," because defendants prematurely recorded revenue knowing that the recognition was improper. *Id.* at 231-32.

The Opposition does not highlight any allegations in the FAC of specific contemporaneous knowledge by any of the Exchange Act Defendants that revenue was overstated at any point, because there are none. As Pareteum showed in its opening brief, the allegations in the FAC about the falsity of certain statements hinge almost entirely on events in June 2019 and later. (Doc. 181 at 38-39.)

Similarly, a restatement alone does not suffice to evidence scienter. (*See* Doc. 185 at 21-22.) To this end, the FAC lacks the sort of comprehensive allegations of knowing falsity that was present in the authorities cited by PSIG. *See, e.g.*, *Plumbers & Pipefitters National Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 616 (S.D.N.Y. 2015) (departing from rule that restatement itself does not support a strong inference of scienter because complaint alleged detailed, specific facts from confidential witnesses that two defendants knew specifically that company was improperly recognizing revenue when publicly the defendants stated otherwise); *In re Veeco*, 235 F.R.D. at 232 (concluding that a restatement supported an inference of scienter where defendants falsely attributed need for a restatement to the actions of a single employee

10

despite knowing, according to allegations based on confidential witnesses, that this was not true). The mere fact of a restatement does not carry PSIG's burden on scienter. *See Plumbers & Pipefitters Local Union No. 719 Pension Tr. Fund v. Conseco Inc.*, No. 09 CIV. 6966 JGK, 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) ("[T]he fact that the company was required, in 2008, to restate several prior periods' financial results does not indicate that the defendants had previously made false statements with scienter.").

Instead, PSIG's authorities illustrate "the types of egregious circumstances and particularized allegations" that have been sufficient to raise a strong inference of scienter, but are not present here. *In re Magnum Hunter Resources Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 299 (S.D.N.Y. 2014) (citing *In re Veeco*, 235 F.R.D. at 231); *see also In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 517 (S.D.N.Y. 2011) (finding an inference of scienter where defendant auditor failed to heed "red flags" and direct warnings from the SEC, leading to the collapse of an investment firm); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (concluding that defendants knew about the need for an 84% write-off of royalty advancements, through quarterly reviews of outstanding royalty payments and ongoing lawsuits seeking to recoup payment, long before the royalties were properly expensed).

PSIG's authorities affirmatively point out that where plaintiffs successfully highlight GAAP violations or a restatement to show scienter, those events are secondary to specific allegations that defendants possessed knowledge of the falsity of their statements when made, often sourced through internal or public documents, confidential witnesses, or both. *See Varghese v. China Shenghuo Pharm. Holdings*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) ("Plaintiffs do not allege that CSP's significant GAAP violations, which necessitated a financial restatement, are by definition evidence of scienter."). The FAC and Opposition, however, rest on the summary

11

assertion that these events are themselves evidence of scienter.  (*See* FAC ¶ 117 ("The pending Restatement, the significant GAAP violations, and Pareteum and the Exchange Act Defendants' admitted failure to maintain sufficient internal controls to avoid fraud each lead, *independently*, to a reasonable inference[5] of scienter") (emphasis added); Doc. 185 at 21 ("The pending Restatement of financials that Pareteum and Exchange Act Defendants certified as correct just one month earlier is strong circumstantial evidence of scienter.").)  Those assertions are entitled to no weight.

> **b.** **PSIG offers no authority to support its position that the Exchange Act Defendants' alleged concealment of past relationships shows a strong inference of scienter.**

Beyond this fatal defect, PSIG oversteps in claiming in the Opposition that "Pareteum and the other Exchange Act Defendants conducted the same kind of scheme at Pareteum as they did in previous ventures."  (Doc. 185 at 22.)  First, Pareteum did not conduct any scheme, let alone one under another name.  Second, there is no well-pled allegation that "the other Exchange Act Defendants conducted" a scheme elsewhere.  (*Id.*)[6]

Even so, this Court has stated that "[p]laintiffs' citation to a number of lawsuits and government investigations involving the [defendants] . . . provides no evidence of scienter."  *See Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, No. 11 CIV. 2890 GBD, 2013 WL 2154381, at *2

---

[5] Of course, even a reasonable inference of scienter is not enough to overcome a motion to dismiss Section 10(b) claims. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) ("Yet the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations.").

[6] Only Defendant O'Donnell is alleged to have even been accused of fraud (*see* FAC ¶¶ 124-133), and those accusations were settled before they could be adjudicated on the merits. *See* Order and Final Judgment, *In re AudioEye, Inc. Sec. Litig.*, No. 4:15-cv-00163 (D. Ariz. May 8, 2017). Untested, self-serving allegations from a different lawsuit are entitled to no weight in this action. This is also a good example of PSIG's reliance on "group pleading" scienter, which is impermissible. *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019) ("Group pleading allows plaintiffs only to connect defendants to statements—it does not also transitively convey scienter") (citation omitted).

12

(S.D.N.Y. Mar. 29, 2013). Lawsuits, investigations, and other allegations of purportedly suspect conduct "cannot create [an inference of scienter] where none exists." *In re Henry Schein, Inc. Sec. Litig.*, No. 18-CV-01428 (MKB), 2019 WL 8638851, at *22 (E.D.N.Y. Sept. 27, 2019) (citing multiple cases). Nor is there any obligation to disclose information already in the public domain. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) ("The securities laws do not require firms to 'disclose' information that is already in the public domain.").

What PSIG asks this Court to do here and elsewhere is stack inference upon inference to conclude that they have sufficiently pled scienter. For the Exchange Act Defendants' past relationships, the Court would have to infer that the Exchange Act Defendants concealed these relationships, and then *infer from that inference* that they intended to defraud investors. (FAC ¶ 133; Doc. 185 at 22-23.) But a plaintiff cannot rely on "pil[ing] inference upon inference" to meet the pleading standard for federal securities lawsuits. *In re Merrill Lynch Auction Rate Sec. Litig.*, 886 F. Supp. 2d 340, 344 (S.D.N.Y. 2012), *aff'd sub nom. Cellular S. Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 516 F. App'x 30 (2d Cir. 2013); *see also Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) ("A plaintiff may not stack inference upon inference to satisfy the PSLRA's pleading standard.").

Finally, the fact that purported Honig-related entities invested in Pareteum and later sold is not evidence that the Exchange Act Defendants had any intent to mislead investors. The Opposition here relies on entirely speculative claims. PSIG makes no allegation of a connection— let alone a nefarious plan made by—the Exchange Act Defendants and these entities, which themselves have only "undisclosed . . . ties" (FAC ¶ 130) to Honig, the apparent villain in PSIG's fable. (Doc. 185 at 22-23.) The value of this scienter allegation is zero.

### c.    The backlog is not circumstantial evidence of scienter.

PSIG offers no authority to support its claim in the Opposition that the backlog is itself evidence of scienter.  (Doc. 185 at 23 (asserting scienter exists because "Turner changed the way Pareteum reported its revenue by fabricating the 'Backlog' metric").)  This allegation essentially asks the Court to suppose—without factual support—that the backlog was "fabricated" and then to draw a further inference that the Exchange Act Defendants and Pareteum acted with scienter. Once again, though, "[p]iling inference upon inference in this way does not provide the requisite strong support for the inference that the Defendants acted with scienter."  *S.E.C. v. One or More Unknown Traders in Sec. of Onyx Pharmaceuticals, Inc.*, 296 F.R.D. 241, 253 (S.D.N.Y. 2013).

The fact that Pareteum employed the backlog metric, and even that it was important to the business, is not enough to show scienter.  *In re Supreme Indus., Inc. Sec. Litig.*, No. 3:17 CV 143PPS-MGG, 2018 WL 2364931, at *7 (N.D. Ind. May 23, 2018) (concluding no scienter existed where defendants employed a forward-looking backlog metric that was allegedly critical to defendant's business).  The Opposition rests on a three-figure percentage increase in revenues and backlog value to support scienter (Doc. 185 at 23), but this has nothing to do with the Pareteum Defendants' intent, and thus cannot support this element of PSIG's claim.  15 U.S.C. § 78u-4(b)(2).

### d.    The cases cited by PSIG involving a company's denial of news reports do not support a finding of scienter here.

First, *In re ArthroCare Corp. Securities Litigation*, 726 F. Supp. 2d 696, 717 (W.D. Tex. 2010) reveals the limitations of PSIG's "report denial" argument for scienter purposes.  That case held that the defendant's repeated denials between December 2007 to February 2008 of over a half-dozen news articles, highlighting potentially fraudulent practices, supported a compelling inference of scienter from the time the denials began—December 2007.  *Id.* at 712-13, 717.

14

Defendants here did not recurrently deny a litany of critical reports over six months or make other alleged misstatements about backlog (the subject of the Reports). Rather, over four months, Defendants issued two prompt denials in response to short seller reports, retracted and modified an earlier issued presentation slide containing customers alleged to be fictitious,[7] ceased issuing press releases highlighting the backlog metric and then retired the metric altogether, and then issued a restatement announcement. (FAC ¶¶ 28-34.) This post-hoc revisionary conduct is not an admission of falsity and does not support an inference of scienter. *See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (rejecting argument that accounting policy change and retroactive announcement of lowered earnings was probative of conscious misbehavior or recklessness); *Ironworkers Local 580–Joint Funds v. Linn Energy, LLC*, 29 F. Supp. 3d 400, 426 (S.D.N.Y. 2014) (finding defendants' decision to change a non-GAAP metric in response to criticism in the financial press did not amount to an admission that statements made in prior reporting periods were false or misleading).

Pareteum and the Exchange Act Defendants' response to the Reports is more like the defendant's initial denial in *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1355 (S.D. Fla. 2005). But there, the court made a finding of scienter based in part on defendant's decision to secretly sell his stocks after strenuously denying improper accounting allegations. Indeed, the Court made clear that the defendant's "inaction in the face of such suspicious accounting problems alone [did] not rise to 'severe' recklessness," yet "[defendant's] clear motive and opportunity to

---

[7] PSIG argues, without reference to any authority, that the Exchange Act Defendants must have known about an Investor Presentation Day slide's falsity because of their status as "high-level corporate insiders." (Doc. 185 at 25.) But "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *City of Brockton Ret. Sys. v. Avon Prod., Inc.,* No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014).

15

mislead investors creat[ed] sufficient severity." *Id*. at 1359. Here, as discussed below, the Exchange Act Defendants did take action and did not sell any stock or receive any other concrete or personal benefits in connection with the alleged accounting improprieties that would support a motive. Thus, Defendant's close-in-time denials alone do not support an inference of scienter, and PSIG's failure to point to any other denials that followed further weakens this argument.

       e.       **None of the cases cited by PSIG support a finding that retiring the backlog evidences scienter.**

The Opposition asserts that retiring the backlog raises a strong inference of scienter. (Doc. 185 at 24.) PSIG is incorrect for two reasons. First, this Court has held that ceasing to use a financial metric is not even evidence of earlier false statements, let alone scienter. *See Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162, 2016 WL 7480415, at *8 (S.D.N.Y. Dec. 29, 2016) (holding that the fact that "Anavex changed the way it reported its investor relations expenses and then stopped reporting them altogether" does not amount to an "accounting irregularit[y]"); *Ironworkers Local 580–Joint Funds*, 29 F. Supp. 3d at 426 ("Plaintiffs' effort to transform that business decision [to change the way it calculated certain metrics] into some sort of admission that statements made in prior reporting periods were false and materially misleading is entirely misguided.").

Second, PSIG impermissibly relies on fraud by hindsight in arguing that an event in August 2019 (FAC ¶ 36) showed an intent to mislead in late 2017, all of 2018, and the first half of 2019. *See In re Manulife Fin. Cop. Sec. Litig.*, 276 F.R.D. 87, 99 (S.D.N.Y. 2011) (dismissing Section 10(b) claim over certain statements because plaintiff "fail[ed] to include any explanation about why the[] statements were misleading when made"). This allegation is entitled to no weight.

**f.      The Opposition's one sentence on executive terminations is not persuasive.**

PSIG claims that the termination or replacement of McCarthy, O'Donnell, and Turner evinces scienter. (Doc. 185 at 25.) Standing alone, Pareteum's replacement of some executives in the fall of 2019 "do[es] not give rise to a cogent inference of scienter" as to the Exchange Act Defendants because it says "nothing of [an individual defendant's] state of mind." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018). So this allegation is irrelevant to the Exchange Act Defendants. And as to Pareteum, termination of an individual undermines any allegation of scienter. *Id.*

None of PSIG's cited authorities help, because those cases offered independent plausible grounds to conclude defendants had an intent to defraud when the alleged misstatements were made. *See New Orleans Employees Ret Sys. v. Celestica, Inc.*, 455 Fed. App'x 10, 14 n.3 (2d Cir. 2011) (noting in dicta that the Court need not address plaintiffs' scienter allegations on executive removals since plaintiffs have adequately pleaded scienter through confidential witness statements); *In re Eletrobas Sec. Litig.*, 245 F. Supp. 3d 450, 469 (S.D.N.Y. 2017) ("There [was] a strong inference that [the terminated executive] knew facts or had access to information suggesting that [the company's] public statements were not accurate or failed to check information they had a duty to monitor."); *Plumbers & Pipefitters Nat. Pension Fund*, 89 F. Supp. 3d at 619 (finding that the scale of the fraud "render[ed] less credible the defendants' arguments that they had no notice of . . . accounting improprieties."). As detailed above, those corresponding facts do not exist here. That certain Pareteum executives left the company cannot carry the weight required to show strong circumstantial evidence of scienter.

### g. PSIG does not point to any facts in the FAC that refute the more plausible inferences identified by Pareteum.

PSIG argues that any competing inferences advanced by Pareteum are "wholly speculative." (Doc. 185 at 25-26.) But the burden falls on PSIG to plead facts giving rise to a strong inference that defendants acted with the requisite scienter. *Tellabs*, 551 U.S. at 309. The Court "must consider" Pareteum's competing explanations when evaluating whether PSIG has met its burden. *Id.* at 314. Those descriptions need not be sufficient in themselves to justify denial, but instead illuminate the strength of a plaintiff's allegations. *Id.* The Opposition does little to undermine the explanations offered in the Pareteum Defendants' brief.

For instance, PSIG contends that the magnitude of the anticipated restatement marginalizes Pareteum and the Exchange Act Defendants' assertion that they were attempting to publicize exciting corporate developments and promote the interests of a fast growing company. (Doc. 185 at 25.) But—and this is a frequent blind spot for PSIG that it has no response to—the FAC affirmatively alleges that even with the anticipated restatement, Pareteum's revenues increased 287% from FY18 to 1H19 and 73.3% from FY17 to FY18. (FAC ¶ 95.) PSIG does not dispute this growth happened, and there is nothing speculative about it. Highlighting this fact, rather than using it to engage in securities fraud, is the more likely motivation behind Pareteum and the Exchange Act Defendants' conduct.

And PSIG is flat wrong when it claims "this sort of wrongdoing just seems to keep happening to" Pareteum and the Exchange Act Defendants. (Doc. 185 at 25.) Only Defendant O'Donnell is alleged to have been involved in litigation previously (FAC ¶ 127), and even then, the accusations against him were settled before they could be adjudicated on the merits. (*See infra,* fn.5.) PSIG notes that other companies associated with the Exchange Act Defendants were

18

liquidated or became penny stocks (*id.* ¶¶ 124-25), but does not allege that Pareteum suffered the same fate—nor could they.  In this respect, PSIG just paints with too broad a brush.

PSIG claims in the Opposition that the Restatement Announcement contradicts Pareteum's theory that "2018 accounts receivable could rise (owing to a customer not paying on a contract that was signed before 2018) while Backlog conversion for the same year could be 100%." (Doc. 185 at 26.)  But the Restatement Announcement did not attribute the misstated revenue to an overstated backlog conversion rate, so PSIG's argument is specious in this respect.

PSIG also claims the "Day Sales Outstanding" figure refutes Pareteum's theory that accounts receivable could rise while the backlog converted to revenue at 100%. (*Id.*)  However, PSIG pleads no facts, nor offers any explanation in its Opposition, undercutting the all too familiar reality for companies that not every customer pays its bills within the Days Sales Outstanding period, which measures the *average* time until receivables are collected.  *See In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 196 (E.D.N.Y. 1997) ("[D]ays sales outstanding" is "the average number of days that a receivable remains outstanding prior to collection.").  So accounts receivable could absolutely rise while the backlog converted at 100%, and PSIG has offered no good reason why this is not true.

Likewise, PSIG claims that Pareteum and the Exchange Act Defendants had knowledge that customers were fictitious or embellished because O'Donnell and a "Pareteum consultant" held tenuous connections with the officers of those entities.  (Doc. 185 at 26.)  It is entirely plausible that the officers of Parallax Science—which PSIG admits at least existed—misrepresented their capacity to meet the terms of any Software-as-a-Service Agreements.  (*See* FAC ¶¶ 79, 138.)  At best, PSIG has shown that O'Donnell and an unspecified non-party consultant may have been better positioned to inquire into the financial health of these entities.  This does not establish access

19

to contrary facts, let alone actual knowledge. *See Novak*, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements [that] contain[ed] this information.").

> **h.** **The individual scienter allegations cannot be added together to create a strong inference of scienter.**

PSIG urges the Court to consider all of its allegations "holistically." (Doc. 185 at 25.) This invitation would be appropriate had PSIG pled any individually meritorious scienter allegation. But none of PSIG's allegations create *any* meaningful inference of scienter. "[I]ndividually insufficient allegations do not combine to create an inference of scienter sufficient to satisfy the PSLRA." *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018). In other words, "'[z]ero plus zero is zero.'" *Id.*

> **3.** **The Court Should Reject The Miscellaneous Scienter Arguments Included In The Opposition.**

Separate and apart from the motive or circumstantial evidence-based theories of scienter, the Opposition contains a section of argument detailing "remaining scienter arguments" attributed to Pareteum and the Exchange Act Defendants. (Doc. 185 at 27.) Setting aside that the Pareteum and the Exchange Act Defendants do not bear the burden of refuting scienter, PSIG cannot prevail on these points, whether they are part of its motive, circumstantial, or some other unrecognized grounds for scienter. In fact, several of these are regurgitations of earlier arguments.

- Pareteum addressed PSIG's meritless executive background/past wrongdoing allegations here and in its opening brief. PSIG repeats on page 27 of its Opposition what it argued on page 22. Instead of doing the same, Pareteum will stand on the arguments above and in its Opening Brief. (*See infra* § B; *see also* Doc. 181 at 30-31.)

20

- <u>An absence of stock trading for profit refutes allegations of a "pump and dump" scheme.</u> PSIG insists it can plead a "pump and dump" scheme without alleging that defendants sold any stock.[8] (Doc. 185 at 27.)  PSIG's explanation for this absence—unsupported by any factual assertion—that the Exchange Act Defendants "got caught before they could dump their stock," (*id.*), reveals the inflammatory and wholly speculative manner in which they describe the bulk of the alleged misstatements.  While the failure to allege facts supportive of a successful scheme does not preclude the existence of a failed scheme, it also does not support the existence of one or any scienter inference that could be derived from it.  *See Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 15 (D. Mass. 2004) (acknowledging that a failed insider trading scheme may still have existed, but holding that "[t]he absence of insider trading does weaken a case for scienter.").

- <u>PSIG's "magnitude of the restatement" cases support Pareteum.</u>  PSIG's authorities on this point do not support their argument that the magnitude of the anticipated restatement shows scienter.  (Doc. 185 at 28-29.)  The Second Circuit in *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001) held that a 105.88% increase in special charges in a single quarter supported an inference of scienter, revealing the relative size of the restatement at issue, far more than the percentage here.  Similarly, in *Plumbers & Pipefitters Nat. Pension Fund*, 89 F. Supp. 3d at 619, this Court highlighted accompanying factual allegations and the fact that a third restatement revised "the fiscal year [net income in] 2011 from $1.1

---

[8] In the case of the Honig-related entities, PSIG has failed to allege that the initial investment coincided with the advent of the "pump" component of the alleged scheme.  (*See infra* § I.A.)

million loss to an $18.1 million loss," which was "a roughly 1600% decrease," as combining to support scienter.  Not so here.[9]

- The core operations doctrine adds nothing to PSIG's deficient scienter allegations.  PSIG offers nothing new here (Doc. 185 at 29) that Pareteum and the Exchange Act Defendants did not already address in their opening brief.  (Doc. 181 at 35.)  Pareteum stands on its earlier argument.

- The Second Circuit does not permit group scienter pleading.  PSIG boldly states that it is entitled to rely on group pleading for scienter.  (Doc. 185 at 30.)  It is wrong.  *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) ("[I]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for *each* defendant.") (emphasis added); *Hou Liu v. Intercept Pharm., Inc.*, No. 17-cv-7371, 2020 WL 1489831, at *15 (S.D.N.Y. Mar. 26, 2020) ("[P]laintiffs must, but do not, 'plead circumstances providing a factual basis for scienter for each defendant.'") (citation omitted); *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d at 438 ("Group pleading allows plaintiffs only to connect defendants to statements—it does not also transitively convey scienter.") (citation omitted); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005) (explaining that group pleading "has no effect on the

---

[9] PSIG asserts that it is "odd" that Pareteum and the Exchange Act Defendants rely on an affirmative disclosure of internal control weaknesses in March 2019 to show a lack of scienter and claims that a "failure to maintain sufficient internal controls [can be] indicative of scienter" in this Circuit.  (Doc. 185 at 29 n.9 (citation omitted).)  First, the March 2019 internal control weakness concerned "ineffective design, implementation and monitoring of information technology general controls pertaining to the Company's change management process," not a weakness concerning premature recognition of revenue.  (Doc. 182-1 at 82.)  Second, PSIG ignores Second Circuit authority that, in disclosing this weakness, Pareteum "was [not] trying to hide anything from its investors."  *Slayton v. Am. Express Co.,* 604 F.3d 758, 777 (2d Cir. 2010).  This weighs against finding scienter.

PSLRA's *scienter* requirement.") (emphasis in original).  So those allegations supported by group scienter must fail.

- PSIG's reliance on fraud by hindsight is similarly unpersuasive.  PSIG argues that it is not relying on fraud by hindsight because the FAC alleges that Defendants should have known their statements were false when made.  (Doc. 185 at 30-31.)  PSIG fails to point out where it makes these allegations in the FAC.  At its core, PSIG's non-generic knowledge of falsity allegations boil down to the short seller reports prepared in mid-2019—well after the allegedly false statements.  The cases cited by PSIG in response show that it needs significantly more detailed allegations to meet the threshold.  *See, e.g., Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 192 (S.D.N.Y. 2010) (detailing allegations at beginning and middle of class period related to knowledge where sixteen confidential witnesses helped establish direct knowledge).  In short, PSIG's reliance on fraud by hindsight is fatal to its 10(b) claim.  (Doc. 181 at 38-39.)

### 4.  PSIG Fails To Allege Corporate Scienter.

To support a strong inference of corporate scienter, PSIG must show that an individual defendant or management-level employee acted with the requisite scienter and that this intent is attributable to the corporation.  *Patel v. L-3 Commc'ns Holdings, Inc.*, No. 14-CV-6038 (VEC), 2016 WL 1629325, at \*12 (S.D.N.Y. 2016); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 300-01 (S.D.N.Y. 2019) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008) ("In order to allege that a corporation acted with scienter, a plaintiff must plead with particularity facts giving rise to a strong inference that 'someone whose intent could be imputed to the corporation acted with the requisite scienter.'").  But PSIG failed to plead any viable scienter allegations as to the Exchange Act Defendants.  (*See infra* Section I.A.1-

23

3.) And PSIG does not even argue that it has pled scienter through any other employee. (Doc. 185 at 31 ("Plaintiff alleges ample facts to support a strong inference of Pareteum's corporate scienter through the conduct of the Exchange Act Defendants.").) Thus, PSIG has not adequately pled corporate scienter.

> **B.     PSIG's Opposition Fails To Show That The FAC Contains Adequate Allegations Of False And Misleading Statements.**

The law in this Circuit is clear: A securities fraud complaint based on misstatements or material omissions must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). PSIG's failure to adequately plead false and misleading statements is fatal to its 10(b) claim. (*See* Doc. 181 at 17-23.)

> **1.     PSIG's Allegations Regarding Revenue, GAAP Compliance, Internal Controls, and Financial Reporting Fail To Demonstrate that Pareteum Made Materially False and Misleading Statements.**

PSIG argues that the anticipated restatement proves that statements made as early as 1Q18 regarding revenue and the preparation and reliability of the Company's financial statements were false when made. (Doc. 185 at 32-36.) Instead of presenting evidence that Pareteum's revenue related statements were false, PSIG merely lists the reported revenue. (Doc. 185 at 32.) PSIG then simply asserts that the Restatement Announcement proves the statements were false. (Doc. 185 at 33, 36.) This does not satisfy the requirements for pleading a 10(b) claim. *See Pollio v. MF Glob., Ltd.*, 608 F. Supp. 2d 564, 569-70 (S.D.N.Y. 2009) (holding that a lengthy description of press releases followed by a brief statement that Plaintiff knew, but failed to disclose, that the

24

business was weaker than represented was not enough to demonstrate that the statements in the press releases were false and misleading).

The FAC follows a similar pattern when it alleges that statements regarding visibility into revenue recognition and regarding internal controls and GAAP compliance make out the basis of their 10(b) claims, because the Restatement Announcement admitted that Pareteum prematurely recognized revenue.  (FAC ¶¶ 52-68.)[10]  These statements similarly do not support a Section 10(b) claim.  *See Novak*, 216 F.3d at 309 (citations omitted) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.").  Predictably, none of the cases cited by PSIG hold that the mere fact that a restatement is issued is enough to make out an Exchange Act claim regarding GAAP compliance, internal controls, or financial reporting.[11]

Further, as Pareteum's opening brief makes clear, the Restatement Announcement merely reflects Pareteum's belief that certain revenue metrics in past financial statements should be updated, and not that Pareteum knew their reported revenue was false.  (Doc. 181 at 19-20.)  PSIG's reliance on *In re Veeco* thus misses the mark, because the plaintiff in that case explained that the statements were false because they alleged that the acquisition would increase profitability when the defendants knew no synergies were possible *when the statements were made.  See* 235

---

[10] *Guadagni v. New York City Transit Auth.*, 387 F. App'x 124, 125-26 (2d Cir. 2010) (reply papers may properly address any material raised in opposition papers).

[11] *See DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 207 n.1 (S.D.N.Y. 2019) (allegations of GAAP violations or accounting irregularities only state a securities fraud claim where they are coupled with corresponding fraudulent intent); *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 397 (E.D.N.Y. 2013) (granting the motion to dismiss in its entirety); *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-cv-3591-GHW, 2020 U.S. Dist. LEXIS 66016, at *36-37 (S.D.N.Y. Apr. 14, 2020) (noting that statements regarding internal controls were false and misleading, because defendants had actual knowledge that their statements regarding inventory were false, but their controls did not require them to disclose this information).

F.R.D. at 228-29.  Similarly, PSIG's reliance on *In re Interpool, Inc. Sec. Litig.* is misguided because there apparently was no dispute in that case that the statements at issue were false, unlike here.  *See* No. 04-321 (SRC), 2005 U.S. Dist. LEXIS 18112, at *14-15 (D.N.J. Aug. 16, 2005) ("Plaintiffs contend that the fact that all of the statements detailed in the Complaint were untrue is not in dispute").  In fact, none of the cases cited by PSIG hold that the mere fact that a restatement is issued is enough to make out a Section 10(b) claim regarding revenue.[12]

### 2.   PSIG's Opposition Reveals That There Are No Backlog-Related Misstatements Before September 17, 2018.

At best, PSIG has identified five press releases in September and October 2018 that it contends were false.  (Doc. 185 at 36, 37 ("It is those representative statements that are at issue.").)  So, for the backlog, this Court need only focus on these five press releases.  (*Id.*)  PSIG asserts that the Restatement Announcement explains why these press releases were false (*id.* at 38), but its argument in this respect is toothless.  PSIG cites an isolated quote in the FAC that backlog concerns "revenue under contract" to purportedly connect the Restatement Announcement and backlog.  First, that backlog is "revenue under contract" does not mean it represents earned revenue.  "Revenue under contract" is instead  entirely consistent with the description in Pareteum press releases that "[c]ontractual Revenue Backlog . . . is measured on a forward looking 36 month snapshot view monthly" and includes "service establishment and implementation fees, guaranteed minimum monthly recurring fees, as well as contractually scheduled subscribers, in some cases

---

[12] *See Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 545-46, 545 n.4 (S.D.N.Y. 2017) (emphasizing that the restatement's disclosure of misconduct lead to adjustments for nonmonetary statements and noting that plaintiffs did not rely on disclosures of monetary adjustments to support their claims); *S.E.C. v. Espuelas*, 908 F. Supp. 2d 402, 410 (S.D.N.Y. 2012) (noting that a restatement is not an admission of wrongdoing); *Varghese*, 672 F. Supp. 2d at 606. (explaining that plaintiffs alleged that statements were fraudulent because defendants knew they were not prepared in accordance with GAAP *or their own accounting policies*).

including subscriber usage, during the term of the agreement, and, their resulting monthly recurring revenue." (Doc. 182-3 at 3.) Simply put, "revenue under contract" means expected future revenue, not revenue that has already been paid, as PSIG claims.

Second, and more importantly, the Opposition still does not bridge the gap in the FAC between past recorded revenue—which the Restatement Announcement revealed was at issue— and future expected revenue, the values of which PSIG questions. So the corrective event does not explain why the five backlog-related statements were false, meaning these statements cannot survive dismissal. *Pollio,* 608 F. Supp. 2d at 570 (dismissing complaint for failure to state with particularity "in what respects the statements at issue were false"). PSIG's failure to cite any law to the contrary in this section is telling. (*See* Doc. 185 at 38.)

PSIG's allegations that the statements about backlog conversion rates were materially false when made are equally misguided. (Doc. 185 at 38-41.) PSIG spends much of the Opposition recounting the allegations in the FAC, but again fails to explain how the statements about backlog conversion were false and misleading—instead seeking to create a question of fact where none exists. (*See* Doc. 185 at 40-41 (erroneously relying on *Oklahoma Firefighters Pension & Ret. Sys.*, 367 F. Supp. 3d at 38 (striking down defendant's arguments, because they required extensive reliance on exhibits).)

When it finally addresses Pareteum's arguments on the merits, PSIG fails to appreciate that statements made about 1Q19 results spring from contracts signed in 2018, as it states elsewhere when it notes that Pareteum's "Days Sales Outstanding" average 110 days (more or less one fiscal quarter). (Doc. 185 at 41 ("unpaid bills all accrued in the preceding 4 months").) So the 100% backlog conversion statements did, indeed, concern 2018 contracts, and not nearly the entire Class Period—as PSIG claimed in the FAC. (FAC ¶ 12.)

27

### 3.    The Opposition Is Unconvincing With Respect To The Credit Facility Statements.

PSIG argues that statements about the credit facility were false and misleading because Pareteum's default restricted access to some of the facilities' funds. (Doc. 185 at 41-42.) These statements cannot make out a Section 10(b) claim because, as conceded in the FAC, Pareteum disclosed that it needed to obtain consents to obtain credit and because the purported defaults did not ultimately serve as a barrier to credit. (Doc. 181 at 23.) Accordingly, it is no surprise that PSIG cites no law to support its position that these statements were false and misleading. (*See* Doc. 185 at 41-42.)

### 4.    PSIG Has No Relevant Rejoinder To Pareteum's Argument That It Did, In Fact, Experience Significant Growth During The Class Period.

PSIG quotes an April 2018 Chairman Update letter (the "Update Letter") to support the proposition that growth statements were materially misleading because they were predicated "upon metrics they knew at the time were overstated or inflated." (Doc. 185 at 42.) But PSIG never cites any facts showing that the Exchange Act Defendants knew backlog was inflated in April 2018, making their complaint different from the one in *Davis* case, which PSIG cites in support. *See* 2020 U.S. Dist. LEXIS 66016, at *26-27 (holding that statements on growth were actionable where plaintiffs alleged that defendants had specific access to financial statements when the statements were made that proved the statements were false). This specific statement is no basis for a securities fraud claim.

The Update Letter also concerns growth of the backlog. But the FAC is clear that growth statements are not limited to just those where "backlog" is mentioned. (FAC ¶ 49 (asserting that statements regarding growth were false because the Restatement later revealed revenues were 28%

28

less in FY18 and 42% less in Q12019).)  PSIG does not address why other growth statements were allegedly false.

That is for good reason.  As PSIG admits, Pareteum *did experience* significant growth during the Class Period, even after debiting revenues identified in the Restatement Announcement. (*Id.* ¶¶ 45, 95 ("revenues increased 287% from FY18 to 1H19 (based on the Restatement Release corrections)").)  In other words, statements related to Pareteum's growth are true.  *Ironworkers Local 580--Joint Funds*, 29 F. Supp. 3d at 426 ("[T]ruth is an absolute defense to any action under the securities laws.").

> **C.**    **The Opposition Does Not Rebut Pareteum's Argument That Alleged "Misstatements" Cited In The FAC Are Non-Actionable Opinions, Puffery And/Or Forward-Looking Statements.**

PSIG argues without citation that even statements that include linguistic cues like "we expect" and "we believe" are statements of fact rather than opinion.  (Doc. 185 at 43-48.)  Black letter law is to the contrary.  *See In re Adient plc Sec. Litig.*, No. 18-cv-9116, 2020 WL 1644018, at *17 (S.D.N.Y. Apr. 2, 2020) ("Defendants' statements about what they 'think,' 'believe,' and 'expect' to occur in the future are inactionable statements of opinion or belief").

PSIG also argues that statements about revenue growth are actionable facts rather than opinion.  (Doc. 185 at 42-43.)  PSIG makes this argument by cherry-picking which growth statements to highlight and conveniently ignoring those growth statements that encapsulate Pareteum's hope about its future.  (*Compare* FAC ¶¶ 42-47 *to* ¶¶ 108, 109, 115.)  Similarly, PSIG's allegations on optimistic statements about Pareteum's growth fail, because PSIG did not allege facts to support a finding that Pareteum did not believe them when they were made as necessary to move the statements from the realm of opinion to that of fact.  *See Shemian v. Research In Motion Ltd.*, No. 11 CIV. 4068 RJS, 2013 WL 1285779, at *23 (S.D.N.Y. Mar. 29,

2013), *aff'd,* 570 F. App'x 32 (2d Cir. 2014) (puffery is not actionable under securities law because companies are permitted to operate with an optimistic outlook); *Steamfitters Local 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 365-66 (S.D.N.Y. 2019) (holding inactionable statements about "our confidence in our business model worldwide"); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757-58 (S.D.N.Y. 2018) (finding that statements that the company was "confident about and prepared for what lays ahead," and was "confident in these products and our overall commercialization strategy," were inactionable puffery because "[s]uch statements do no more than place a 'positive spin on [certain] developments'").

Finally, PSIG's argument that statements about backlog were not opinion because of the Aurelius and Viceroy Reports and the denial of those reports' accuracy fails, because PSIG has not pled any facts with particularity showing the backlog was retired because of the allegations in the Viceroy Report and, even if it had, its application would be limited to misstatements alleged after the June 10, 2019 denial of the Aurelius article. (*See* Doc. 185 at 44; Doc. 181 at 29-30.)[13]

PSIG also argues that statements referenced in the FAC on backlog are not puffery, because they were correlated to the value of sales orders under contract. (*See* Doc. 185 at 48-49.) But the statements cited in the Opposition are not those that Pareteum argues are puffery. (*Compare* Doc. 185 at 48-49 (citing FAC ¶¶ 69, 154) *to* Doc. 181 at 39-41 (citing FAC ¶¶ 66, 192, 108, 109, and

---

[13] The cases PSIG relies on do not hold otherwise. *See e.g. In re Avon Sec. Litig.*, No. 19 CIV. 01420 (CM), 2019 WL 6115349, at *17-18 (S.D.N.Y. Nov. 18, 2019) (holding that statements about revenue recognition were actionable where defendant recognized loans made to customers of questionable creditworthiness); *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1055 (N.D. Cal. 2018) (granting defendants motion to dismiss where plaintiff failed to plead facts to show defendants' statements about revenue estimates were false or misleading when made or to support a strong inference of scienter); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) (holding that optimistic statements are not protective when the speaker knows the company is performing badly).

115 as examples of puffery).)  PSIG has thus conceded the statements in the FAC at paragraphs 66, 192, 108, 109, and 115 are puffery.  *See Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-CV-7014 (VSB), 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (holding that silence in an opposition brief is a concession).  And the cases cited to bolster the argument that the statements about future growth are not puffery are distinguishable.  *Compare, e.g., Manavazian v. Atec Grp., Inc.*, 160 F. Supp. 2d 468, 480-81 (E.D.N.Y. 2001) (explaining that allegations on statements detailing revenue growth were not puffery because they were coupled with allegations that defendants were aware of adverse business trends that made those statements misleading when made) *to* (FAC ¶¶ 69, 154 (explaining that the backlog metric was tied to financial results, but not alleging that Pareteum was aware of trends that would make those statement misleading).)

Finally, PSIG argues that the backlog statements fall outside the safe harbor, because the backlog metric was allegedly not entirely forward-looking.  (*See* Doc. 185 at 49-52.)  To make this claim, PSIG again ignores the very first sentence in Pareteum's own definition of backlog: "Contractual revenue backlog is measured on a forward looking 36 month snapshot view monthly, and, is generated by each of the Company's Managed Services, Global Mobility Cloud, and Application Exchange & Developer's Platform customers."  (Doc. 182-3 at 3.)

Not only does Pareteum define the backlog as "forward looking," but it has also made clear it collects revenue in the future at different rates, depending on (among other things) subscriber usage—something that cannot be a present fact until the subscriber actually uses Pareteum's services in the future.  (*Id*.)  Accordingly, *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 990 (9th Cir. 2008) is distinguishable by its own terms: the backlog there described "how much work the company has under contract right now."  This Court's authority is the better guide.  *See In re Seadrill Limited Securities Litigation* No. 14 CIV. 9642 (LGS), 2016 WL 3461311, at *1

31

(S.D.N.Y. June 20, 2016) (emphasis added) (alleged misrepresentations about a backlog represented "*[f]uture expected* revenues based on signed contracts"); (*compare* Doc. 143-4 at 3 ("Contractual revenue backlog is measured on a *forward looking* 36 month snapshot view").)[14]

Contrary to PSIG's argument, the statements contained meaningful cautionary language. (*See* Doc. 185 at 51-52.)  PSIG's central complaint about backlog is that Pareteum did not see revenues equal to the backlog value.  Setting aside the typical tiered payment structure and 36-month window for payments (meaning contracts forming the basis for alleged misstatements about backlog in 2018 have not even concluded yet), Pareteum explicitly informed investors that revenue recognition may vary from actual results.  (*See* Doc. 182-3, September 17, 2018 press release, containing the following language:  "*[t]here can be no assurances that we reach the total revenue contract revenue backlog . . . .   Timing of revenue recognition . . . may vary from actual results*." (emphasis added).)  That language is meaningfully cautionary and warns the public about one of the pillars of PSIG's FAC.  Thus, PSIG's argument that the cautionary language will not protect Pareteum's statements fails.

**D.     Even if PSIG's Section 10(b) Claims Survive, PSIG Has Not Alleged Any Misstatements Before May 7, 2018.**

If the Court rejects PSIG's assertion that Pareteum made misstatements related to its growth, but permits the other categories of alleged misstatements to avoid outright dismissal of the FAC, it should still make clear that misstatements began no earlier than May 7, 2018.  The following chart shows the date the remaining statements began:

---

[14] The cases cited to demonstrate the backlog is not forward-looking are inapposite.  *See e.g. In re Sturm, Ruger & Co. Sec. Litig.*, 3:09-cv-1293, 2011 U.S. Dist. LEXIS 11341, at *4-5, 20 (D. Conn. Feb. 4, 2011) (analyzing statements other than those regarding backlog for safe harbor protection).

| Misrepresentation alleged | Date of first statement | FAC Paragraph |
|---|---|---|
| Revenue earned in 2018 and 1H 2019 | May 7, 2018 | 42 |
| Financial controls and GAAP | May 7, 2018 | 52 |
| Backlog | May 7, 2018 (conversion of) September 17, 2018 (customers) | 89 72 |
| Financial reporting | March 18, 2019 | 61 |
| Credit facility | February 26, 2019 | 98 |

## II.   THE OPPOSITION FAILS TO ADDRESS THE DEFICIENCIES IN THE SECURITIES ACT CLAIMS ASSERTED IN THE FAC

The Opposition argues that pleading its Securities Act claims relating to the iPass Acquisition and Secondary Offering separate from its Exchange Act claims should excuse it from Rule 9(b)'s heightened requirements.  (*See* Doc. 185 at 53-54, 55-56.)  But all the alleged violations are based on the same conduct.  (*Compare, e.g,* FAC ¶¶ 42-51 (alleging the statements about reported revenue for 1Q18, 2Q18, and 3Q18, among others, were materially false and misleading in connection with PSIG's Section 10(b) claim) *to* FAC ¶¶ 180-81 (alleging statements about reported revenue for 1Q18, 2Q18, and 3Q18 were false in connection with the Section 11 and 12 Claims); *see also* Doc. 185 at 58 ("…for the same reasons outlined in the preceding section, Plaintiff adequately pleads Section 11 and 12 claims again Pareteum . . . for the false and misleading statements and omissions in the Secondary Offering Filings").)

That flaw is fatal.  Merely separating the Securities Act claims from the Exchange Act claims does not exempt the Securities Act violations from Rule 9(b)'s heightened requirements where the underlying conduct on which both claims are based is the same.  *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, —F. Supp. 3d—, 2020 WL 1529371, at *11 (segregating Exchange Act Claims from Securities Act claims is not enough).  The cases that

33

PSIG relies on do not hold otherwise. *See In re Am. Realty Capital Properties, Inc. Litig.*, No. 15 MC 40 AKH, 2015 WL 6869337, at \*1 (S.D.N.Y. Nov. 6, 2015) (instructing plaintiffs to delineate the separate claims, but also noting the Rule 9 applies to the entire amended complaint); *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 263, 281 (S.D.N.Y. 2010) (citing *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007)) (holding that plaintiff must plead *alternative theories* of fraud and negligence to avoid heightened pleading standards for their Securities Act claims and dismissing those statements in the registration statement that were protected by the bespeaks caution doctrine).

As discussed in Section I, Plaintiff has failed to make out the heightened pleadings standard under Section 10(b) of the Exchange Act. Because PSIG relies on the same conduct to make out both claims, its failure to meet the heightened pleading standard is fatal to its claims under Sections 11 and 12 of the Securities Act.[15] *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at \*27-36 (S.D.N.Y. Sept. 9, 2019) (dismissing the entire complaint where the Securities Act claims mirrored the Exchange Act claims).

PSIG also fails to allege that PSIG suffered any injury from the Secondary Offering. (*See* Doc. 181 at 50-51.) PSIG counters by arguing that it alleged facts showing that Lead Plaintiff Moore purchased Pareteum stock below the Secondary Offering price. (*See* Doc. 185 at 63.) PSIG's certificates, however, do not show any purchase of Pareteum shares under the Secondary Offering at the alleged offering price. Without any injury from this sale, PSIG lacks standing to pursue these claims. *See N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp.*, 720 F.

---

[15] As is the case with the Section 10(b) and Section 20 claims under the Exchange Act, PSIG does not dispute that if PSIG's Section 11 and Section 12 claims fail, so too does its claim under Section 15 of the Securities Act.

Supp. 2d 254, 265-66 (S.D.N.Y. 2010), *on reconsideration sub nom. N.J. Carpenters Health Fund*

*v. Residential Capital, LLC*, No. 08-cv-8781, 2013 WL 1809767 (S.D.N.Y. Apr. 30, 2013).

## CONCLUSION

For these reasons, the Court should grant Pareteum's motion to dismiss the FAC.

Dated: New York, New York
        September 3, 2020

                                            **MCGUIREWOODS LLP**

                                            */s/ Stephen G. Foresta*
                                            Stephen G. Foresta
                                            Jeffrey J. Chapman

                                            McGuireWoods LLP
                                            1251 Avenue of the Americas
                                            20th Floor
                                            New York, NY 10020
                                            Telephone: (212) 548-7060
                                            Facsimile: (212) 715-6277
                                            Email: sforesta@mcguirewoods.com
                                                jchapman@mcguirewoods.com
                                            *Counsel for Defendant Pareteum*
                                            *Corporation*

To: All counsel of record (Via ECF)

35