LA6HParC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:                                    19 Civ. 9767 (AKH)

PARETEUM SECURITIES LITIGATION            Conference

------------------------------x

                                          New York, N.Y.
                                          October 6, 2021
                                          11:00 a.m.

Before:

                HON. ALVIN K. HELLERSTEIN

                                     District Judge

                       APPEARANCES

KAHN SWICK & FOTI, LLC
     Attorneys for Lead Plaintiff the
     Pareteum Shareholder Investor Group
BY:  J. RYAN LOPATKA

LAX NEVILLE
     Attorneys for Plaintiff Sabby Volatility Master Fund
BY:  ROBERT R. MILLER
     KOUROSH SHAFFY

McGUIREWOODS LLP
     Attorneys for Defendant Pareteum Corporation
BY:  STEPHEN G. FORESTA
     JEFFREY J. CHAPMAN

BAKER & HOSTETLER LLP
     Attorneys for the Individual Defendants
BY:  DOUGLAS W. GREENE
     JONATHAN FORMAN

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
     Attorneys for Defendant Squar Milner LLP
BY:  PETER J. LARKIN

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

LA6HParC

APPEARANCES (Cont'd)

SCHIFF HARDIN LLP
     Attorneys for Defendant Dawson James Securities, Inc.
BY:  KAYVAN B. SADEGHI

LA6HParC

(Case called)

THE COURT:  Be seated, everyone.  Just give me a minute.

This is our first meeting in court.  We've had court meetings before.  We've had before.  It's a pleasure to see you.

OK.  On behalf of the plaintiffs, J. Ryan Lopatka?

MR. LOPATKA:  Correct, sir.

THE COURT:  Good morning.

MR. LOPATKA:  Good morning.

THE COURT:  Stephen G. Foresta and Jeffrey J. Chapman, on behalf of Pareteum?

MR. FORESTA:  Good morning, your Honor.

THE COURT:  Good morning.

Douglas Greene and Jonathan Forman on behalf of the individual defendants?

MR. GREENE:  Good morning, your Honor.

THE COURT:  Good morning. Kayvan Sadeghi on behalf of Dawson James?

MR. SADEGHI:  Good morning.

THE COURT:  Peter J. Larkin on behalf of Squar Milner.

MR. LARKIN:  Good morning, your Honor.

THE COURT:  That takes care of everyone.

So I have the proposed case management plan.  Do you want to tell me anything before I get into that, Mr. Lopatka?

LA6HParC

MR. LOPATKA:  One issue that I would like to raise, just to make sure the Court is aware of it, is that plaintiffs and defendants Squar Milner have made considerable progress towards a resolution between the two parties.  Nothing's been papered yesterday, but the primary terms of the agreement are -- there's a meeting of minds as to those terms.  There are a couple of ancillary terms that still need to be worked out.

THE COURT:  So that's -- we can all sit.  I think we can be heard better.

MR. LOPATKA:  OK.

THE COURT:  It's hard enough with the masks.

Who are going to be the parties to this disposition if it works out?

MR. LOPATKA:  This would be lead plaintiffs and Squar Milner.

THE COURT:  That would leave the other defendants still around?

MR. LOPATKA:  Correct, your Honor.

THE COURT:  Are there cross-claims in this case?

MR. LOPATKA:  There are, your Honor, but the cross-claims do not involve -- I do not believe involve Squar Milner.

THE COURT:  OK.

MR. LOPATKA:  If I'm mistaken, I'm sure that somebody can correct me on that.

THE COURT:  I'm sure that Squar Milner will be the object of a great deal of discovery.  Have you made your initial discovery, Mr. Larkin?

MR. LARKIN:  We have made initial disclosures.  We've made our initial disclosures only at this point.

THE COURT:  You understand that you will still be involved in discovery here?

MR. LARKIN:  I understand that it's not quite that quick an exit as just to settle the case.

THE COURT:  Yes.  OK.

Anything else I need to know before we plunge into the case management plan?

MR. LOPATKA:  No, your Honor.

MR. MILLER:  Your Honor, I'm Robert Miller.  I represent Sabby Volatility Warrant Master Fund in the direct action.  We were added to the list yesterday because we had not about been included in the 26(f) discussions in this case, but as you know, your Honor --

THE COURT:  Why is that?  Why were you not included?

MR. MILLER:  We are in a separate action.

THE COURT:  I know.

MR. MILLER:  But as you know, your Honor has been trying to run these in parallel.  So we would like to be included.  Since the mediation, we have not been able to get any real communication from the parties to the class action.

LA6HParC

But as you know, Sabby has a $16 million strict liability claim.

THE COURT:  I want to raise that right now.

Mr. Lopatka -- are you on this appearance list?

MR. MILLER:  We were added yesterday.  So you may not have it on the list in front of you.  We found out --

THE COURT:  What's your name?

MR. MILLER:  Robert Miller.  And this is my colleague Kourosh Shaffy, S-h-a-f-f-y.

THE COURT:  It's my rule that you and Sabby have to cooperate.

MR. MILLER:  We have no --

THE COURT:  He's entitled to his case.  You're entitled to your case.  Your cases will overlap substantially, so you must cooperate.  This does not mean that there will be repetitive depositions either.

MR. LOPATKA:  Understood.

THE COURT:  One person has to do the main deposition, and he can be supported by the other, but there will not be another full-fledged deposition.  Understand?

MR. LOPATKA:  Understood.

THE COURT:  Why wasn't Mr. Miller involved in the drafting of the case management plan?

MR. LOPATKA:  Your Honor, there was no -- never any intention to freeze out the Sabby plaintiffs.

LA6HParC

THE COURT:  I withdraw the question.  From now on you know the rule.

MR. LOPATKA:  Correct.

THE COURT:  OK.  Can you sign on to this case management plan?

MR. MILLER:  We have no objection to it.  We do need to get initial discovery done on our side.  Our case has been -- as you know, it's been frozen.

THE COURT:  Have you received initial discovery?

MR. MILLER:  We have not received initial discovery.

THE COURT:  So Mr. Lopatka is going to turn over to you everything he has been given, properly labeled, this week.

MR. MILLER:  Thank you, your Honor.

THE COURT:  Who wants to speak with me?

MR. SADEGHI:  Good morning, your Honor.  Kayvan Sadeghi.

THE COURT:  Do you have a microphone?

MR. SADEGHI:  Good morning, your Honor.  Kayvan Sadeghi on behalf of Dawson James.

Just one point of clarification that we did submit a cross-claim against Squar Milner, and I believe they answered earlier this week.

THE COURT:  Is that going to be affected by the disposition?

MR. SADEGHI:  This is the first I've heard of the

LA6HParC

disposition, so I believe not, your Honor.

THE COURT:  And Dawson is an individual defendant?

MR. SADEGHI:  It is the placement agent for the offering referred to as the secondary offering in the complaint, the 2019 offering.  So there's one cause of action against us under Section 11.

THE COURT:  You'll be participating with the other defendants?

MR. SADEGHI:  Yes, your Honor.

THE COURT:  So what I said with the two plaintiffs goes also with all the defendants.  You're not going to be stepping on each other's toes.  You're not going to be repeating what another defendant has been doing.  There's to be cooperation in this case, because if there's not, I'll hear about it, and I'll get into it.

OK.  I've gone over the case management plan, and are there any other parties that are not included in paragraph No. 1, Mr. Lopatka?

MR. LOPATKA:  No, your Honor.

THE COURT:  All plaintiffs and all defendants, you'll need to amend this, because Sabby's not in here.

MR. LOPATKA:  Correct.  I'll make a clarification that there is other satellite litigation in this case.  There are --

THE COURT:  Yes, I want to know about them.  There was a case in Delaware that's come to me, right?

LA6HParC

MR. LOPATKA:  Correct.

THE COURT:  There was a case in California.  Has that also come to me?

MR. LOPATKA:  I do not believe the California case has come to you, your Honor.

THE COURT:  Is there a disposition or desire that it does come to me?

MR. FORESTA:  Your Honor, this is Stephen Foresta on behalf of Pareteum Corporation, the defendant.

We would ask that there be coordination between what transpires in this court and what happens in the California state court case.  Plaintiff's counsel in that action to date has --

THE COURT:  Oh, it's in the state court?

MR. FORESTA:  It's in California state court, that's correct.

THE COURT:  Well, most of us are here, so I think we need to take the lead.  You need to make whatever presentations you need to make with the California judge so that the discovery here will pertain to the discovery there and then enter a stipulation into both courts.

MR. FORESTA:  Understood, your Honor.

THE COURT:  There's two cases in the New York Supreme Court as well, is there not?

MR. FORESTA:  There are shareholder derivative cases

LA6HParC

in New York state court.

THE COURT:  We have one, too, don't we?

MR. FORESTA:  Yes, your Honor.

THE COURT:  So the same thing ought to go.  I think I've said this before, but I'll repeat myself again.  With the derivative actions, they have a very strong tendency when settling to take consideration away from the real plaintiffs, who are the stockholders in the class and who are suing individually.  An overall settlement cannot be made unless the derivative settlement is included, but including the settlement often takes away money from where it should rightfully go.

The only damages that are applicable, as far as I can see, to a derivative action are those extra amounts of money that the clients have had to pay or the companies have had to pay because of the class action, because of the frauds underlying the class action.  So there has to be some rational relationship between the settlement and that or I will not approve it.

Next thing I want to do is go down to III-D.  I think it would be desirable, after you finish written discovery, to have a status conference that would be -- have a purpose of regulating depositions and setting a plan forward.  I think waiting until you finish all discovery is too long a time not to see each other.  So I suggest -- what was the date I suggested, Andrew?

LA6HParC

THE LAW CLERK:  May 6.

THE COURT:  May 6 at 2:30 as the time for the second status conference.  Your case management plan identifies a date two weeks before that, approximately, for the completion of written discovery.  Its purpose is to follow on quite quickly and organize ourselves for the deposition.  That would replace D, III-D, in this case management plan.

Does that make sense to you, Mr. Lopatka?

MR. LOPATKA:  Yes, your Honor.

THE COURT:  Defendants?

MR. GREENE:  Go ahead.

MR. FORESTA:  No concerns on behalf of Pareteum, your Honor.

THE COURT:  All right.  You think it's a good idea?

MR. FORESTA:  Yes, sir.

THE COURT:  All right.  So that's what we'll do.  D will be crossed out, and second status conference will be added for the purpose of planning discovery -- planning depositions and regulating further proceedings.

Those are the only comments I have on here.  Anybody else want to make any comments.

Yes, sir.  State your name again, please.

MR. SADEGHI:  Thank you, your Honor.  Kayvan Sadeghi, on behalf of Dawson James.

The only other issue we wanted to raise is the issue

LA6HParC

of plaintiffs' burden to establish the shares are traceable to the offering for purposes of their Section 11 claim against Dawson James.  As you may recall, we discussed that issue on the motion to dismiss where it was a core issue at that time. We appreciated your Honor's assurance at that time that, while it wouldn't be the basis of dismissal, it would be addressed at a very early stage of discovery so that we would be dragged through the burden of the discovery process if the shares were not, in fact, traceable.  I think we can deal with that within this schedule, but we would appreciate --

THE COURT:  Have the initial disclosures by the plaintiff touched upon that?

MR. SADEGHI:  I don't believe they touch on that in a meaningful way, your Honor.  I think the issues that your Honor raised in the hearing on the motion to dismiss are to identify all the shares purchased, the time purchased, and from whom they were purchased.  I think that information's at least a starting point.

THE COURT:  Mr. Lopatka, can you give that information pretty quickly?

MR. LOPATKA:  Plaintiffs have already started gathering all of the documents that would be relevant to this consideration, and we should be able to produce them very promptly, within a couple of weeks.

THE COURT:  Don't wait for the questions.  You know

LA6HParC

what the issues are.  You're, in effect, proving causation.

MR. LOPATKA:  Correct, your Honor.  We're proving traceability.

THE COURT:  Right.

MR. LOPATKA:  And one other thing that I would say is that --

THE COURT:  Traceability, not causation.

MR. LOPATKA:  Correct.

We will seek a little bit of discovery from the broker to facilitate our ability to trace back -- essentially, trace chain of title.  We don't expect that to take very long at all, but, yeah, within --

THE COURT:  So the broker has bought in street name?

MR. LOPATKA:  Correct.

THE COURT:  How does the broker contribute knowledge as to the source of his purchases?  Presumably, he's purchasing on the open market.

MR. LOPATKA:  Correct, your Honor.  Some brokers have more information than others, and that's essentially why we need discovery from the broker.

THE COURT:  Why don't you build into the case management plan that proceeding.  Do it early and completely so if you don't have it, you can withdraw or a motion can be made to dismiss.

MR. LOPATKA:  Fair enough, your Honor.

LA6HParC

THE COURT:  So build that into the plan.

Anything else?

MR. SADEGHI:  Thank you, your Honor.

THE COURT:  OK.  So I will see you May 6.  If you need me before that, you know how to get me.  If you have a discovery dispute, the easiest and most efficient way is to use my individual Rule 2(e) which requires a joint letter describing the dispute and the adverse positions with regard to the dispute.  I do not take *ex parte* letters even though they may be noticed to the other side.  If you want to write to me, you need a joint letter, with the exception of adjournments, but you have to -- the person seeking the adjournment has to discuss it with the other parties and note their consents or oppositions.

OK.  See you May 6.

Before you go, how should I handle the discussions between Squar Milner and the plaintiffs?

MR. LOPATKA:  Plaintiffs were thinking that once everything is finalized, we would send a letter to your Honor.

THE COURT:  In other words, we don't have to -- I don't have to do anything?

MR. LOPATKA:  Correct, your Honor.

THE COURT:  We don't have to make a provision for it. You just see if you can succeed.

OK.  Thank you, all.  Goodbye.  (Adjourned)