M616PARC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:                                    19 CV 9767(AKH)

                                          Conference
PARETEUM SECURITIES LITIGATION,


------------------------------x
                                          New York, N.Y.
                                          June 1, 2022
                                          1:30 p.m.

Before:

                HON. ALVIN K. HELLERSTEIN,

                                          District Judge

                      APPEARANCES

KAHN SWICK & FOTI LLC
     Attorneys for Plaintiffs
BY:  KIM E. MILLER
     J. RYAN LOPATKA

LAX & NEVILLE, LLP
     Attorney for Plaintiff Sabby Volatility Warrant Master
     Fund Ltd.
BY:  BARRY RICHARD LAX

GIANCY PRONGAY & MURRAY LLP
     Attorneys for Derivative Plaintiffs
BY:  BENJAMIN I. SACHS-MICHAELS
     MATTHEW M. HOUSTON

MCQUIRE WOODS LLP
     Attorneys for Defendant Pareteum Corporation
BY:  STEVEN FORESTA
     JEFFREY J. CHAPMAN

BAKER & HOSTETLER LLP
     Attorneys for Defendants Turner, O'Donnell, McCarthy,
     Bozzo, Mumby, Lippert, and Van Sante
BY:  ERICA BARROW
     DOUGLAS GREENE

M616PARC

APPEARANCES (Continued)


MCGONIGLE
     Attorneys for Defendants Thomas, Lippert, and
     Jimenez-Tunon
BY:  JAMES K. GOLDFARB
     MICHAEL V. RELLA

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
     Attorney for Defendant Squar Milner
BY:  PETER J. LARKIN

TOGUT SEGAL & SEGAL LLP
     Attorney for Defendant Pareteum Corporation (Chapter 11)
BY:  FRANK A. OSWALD

LOWENSTEIN SANDLER LLP
     Attorney for Plaintiffs (Bankruptcy)
BY:  MICHAEL ETKIN

ARENT FOX LLP
     Attorney for Defendant Dawson James Securities, Inc.
BY:  BRITTANY SOKOLOFF

M616PARC

(Case called)

THE COURT:  For the plaintiff, Kim Miller, Kahn, Swick & Foti.

MS. MILLER:  Good afternoon, your Honor.

THE COURT:  And who are your colleagues?

MS. MILLER:  So it's just me.  I'm the lead counsel for lead plaintiffs in the class action.  We've got some other plaintiffs in other cases here.

THE COURT:  Okay.  And --

MS. MILLER:  So I was just going to say I would let them introduce themselves since they're not in my case.

THE COURT:  Yes.  But I'm looking at my sheet.

MS. MILLER:  I have my partner.  My colleague is back here, J. Ryan Lopatka.  He might be on your sheet.  Mr. Lax is here for the Sabby case.

THE COURT:  Why didn't you just submit the names of the other plaintiffs?

MS. MILLER:  Why not just submit the names for what?

THE COURT:  Why did you not?

MS. MILLER:  Submit the names for the other plaintiffs?

THE COURT:  Yes.  You were supposed to give me an appearance sheet of everyone that is here.

MS. MILLER:  I apologize, your Honor.  If it doesn't cover everyone in all the cases, so --

THE COURT:  Never mind.

MR. SACHS-MICHAELS:  Good afternoon, your Honor.  I'm Ben Sachs-Michaels from Giancy Prongay & Murray.

THE COURT:  Ben Sachs?

MR. SACHS-MICHAELS:  Michaels from Giancy Prongay & Murray on behalf of the derivative plaintiffs.  And I apologize, we were not aware we had to submit an appearance sheet.

MR. LAX:  Good afternoon.  Barry Lax from Lax Neville. I represent Sabby Volatility Warrant Master Fund.

THE COURT:  You're an individual plaintiff?

MR. LAX:  Individual plaintiff, yes, your Honor.

THE COURT:  And defense Pareteum is represented by Mr. Steven Foresta of McGuire Woods.  Good afternoon.

MR. FORESTA:  Good afternoon, your Honor.

THE COURT:  And defendants Turner, O'Donnell, McCarthy, and Bozzo are represented by Douglas Greene and Erica Barrow of Baker & Hostetler.

MS. BARROW:  Good afternoon, your Honor.

MR. GREENE:  Good afternoon, your Honor.

THE COURT:  And defendant Squar Milner by Peter Larkin, Wilson Elser.

MR. LARKIN:  Good afternoon, your Honor.

THE COURT:  And on behalf of defendant Dawson James Securities, Brittany Sokoloff.

MS. SOKOLOFF:  Good afternoon.

THE COURT:  Did I miss anybody?  Sit down and use the mic.

MR. GOLDFARB:  Should I --

THE COURT:  The nonspeakers give up the mics.

MR. GOLDFARB:  James Goldfarb.

THE COURT:  You'll all address me by sitting so you can speak into the mics.

MR. GOLDFARB:  I'm James Goldfarb with McGonigle.  I represent individual defendants Laura Thomas, Robert Lippert, and Jimenez-Tunon.

THE COURT:  I didn't get your name.

MR. GOLDFARB:  James Goldfarb.

THE COURT:  And you're for?

MR. GOLDFARB:  For individual defendants, Laura Thomas, Robert Lippert, and Luis Jimenez-Tunon, who are individual defendants in the Sabby case and/or the derivative case, none of whom are defendants in the securities class action.

THE COURT:  Thank you, all.

Now, I have received notice of the automatic bankruptcy stay covering the company, Pareteum Securities.  The automatic stay does not cover the individuals.  So we have to plan a continuation of the lawsuit against the individuals.

On that, Ms. Miller and the individual defendants whom

M616PARC

her clients are suing have told me we should go ahead here. Mr. Goldfarb's clients, who are involved in a continuing management of the bankruptcy of the bankrupt company, asked me for a stay. And the derivative plaintiff represented by Mr. Michaels also asked me to maintain the stay, right?

MR. SACHS-MICHAELS: Yes, your Honor. We think we don't really have a choice. We think it's an automatic stay that applies to our clients.

THE COURT: All right, sir. So let me hear Mr. Goldfarb. Why should I exempt you?

MR. GOLDFARB: Thank you, your Honor.

My client, Laura Thomas, is the CFO of the debtor. And she's intimately and actively involved in the management of the debtor through a 40-or-so-day bankruptcy sale process, which the bankruptcy court just approved the bid procedures yesterday. Better than I to speak to that perhaps is Mr. Oswald who represents the other debtors.

My other two clients are independent directors. They're defendants in both Sabby and the derivative case. They also are involved in the management of the debtor through the bankruptcy process. It's the debtor's view --

THE COURT: What's their role?

MR. GOLDFARB: As the independent directors?

THE COURT: Yes.

MR. GOLDFARB: They have a fairly active role because

M616PARC

they are intimately knowledgeable about the operations of the company.  Mr. Jimenez-Tunon, for example, is, in part, responsible for the company's operations and business development.

THE COURT:  What's his active role now?

MR. GOLDFARB:  His active role is just to -- the board is managing the company through -- it's a debtor in possession situation, so he's helping manage the company through the bankruptcy process.

THE COURT:  He's not managing, he's advising.  He's advising, right?

MR. GOLDFARB:  Well, as the director, yes, he would be responsible for the overall operation of the company.  But, correct, he's not --

THE COURT:  What's the basis of saying he should not be like any other individual defendant?

MR. GOLDFARB:  The bankruptcy process here is somewhat unique.  It's just a 40-day process with the idea that by early July, a sale will be affected.  So since the parties have had a stay for effectively a year now, the idea would be to continue the stay for that little portion of time more.  It's not going to prejudice the prosecution of the actions.

THE COURT:  If I remember, all of you asked me to stay while you were conducting settlement negotiations.

MR. GOLDFARB:  That's -- sorry.

THE COURT:  And those settlement were aborted by the recent filing of bankruptcy?

MR. GOLDFARB:  I'm a little out of my depth, your Honor, because we were just brought in for our clients only a few months ago, but I believe the mediation had been stayed earlier than that.  Having nothing no to do with the bankruptcy filing --

THE COURT:  Ms. Miller, why don't you bring me up to date?

MR. GOLDFARB:  Thank you, your Honor.

MS. MILLER:  Your Honor, the parties agreed defendants reached out to me regarding a stay in February before I knew that bankruptcy could be in the offing.  But it was months before the suggestion of bankruptcy was filed, and the reasons that the defendants wanted to stay the case at that time were dwindling resources and also issues with the individual defendants being investigated by the government.

THE COURT:  They wasted time.

MS. MILLER:  Well, we were hoping that we could --

THE COURT:  You made a bad call --

MS. MILLER:  Well --

THE COURT:  -- position to settle.  All right.  Never mind about that.  I'm brought up to date.

I see absolutely no reason that Lippert and Jimenez should have any special treatment, whatever.  So then the

motion for a stay for those two individuals is denied.

Now, tell me why Thomas should be any more exempted from the normal discovery process of a litigation than the president of the United States?

MR. GOLDFARB:  Well, probably more so because the process -- I apologize.

THE COURT:  I've heard zealous litigators, but...

MR. GOLDFARB:  I understand the president has things on his mind, your Honor.  But, anyway, Frank Oswald, I think, would be in a better position to explain the importance of my client to the debtor than I would.

THE COURT:  I would assume he's vitally important.  So a deposition -- first of all, we're not ready for depositions. I don't think so.  We're in the discovery phase with documents.

MR. LAX:  That's correct.

THE COURT:  Who said that.  Is that Sabby's lawyer?

MR. LAX:  That's correct, your Honor.  Barry Lax.

THE COURT:  There should be a rule you put your name on your mask along with a sunny face.

MR. GOLDFARB:  Your Honor, my reading of the letter submitted by counsel for the plaintiffs was simply asking for court-appointed mediation, not discovery.

THE COURT:  I'm not asking -- I'm not a mediator. You're not in a mediating posture at this point in time.  We don't know anything about the individual defendants.  And they

have potential -- they have exposure in your case and to the class.

And where are you now?  Are you in discovery?

MS. MILLER:  Your Honor, we need to put a schedule back in place.  The next deadline would be the deposition of our market efficiency expert, and we'll just need to put the schedule back in place to go forward with discovery.

THE COURT:  What do you think is going to happen? Speaking out of turn, not to be binding, but just to give me a feeling of what's up.

MS. MILLER:  What do I think is going to happen with respect to the discovery or --

THE COURT:  What do you want to do?  What do you want to do?  You're the plaintiff.  What do you want to do?

MS. MILLER:  I would like to resolve --

THE COURT:  How do you get your money in this case?

MS. MILLER:  Well, my hope was when I made the call back in February that I would avoid having wasted all of the insurance coverage before trying to get something done here that hasn't happened thus far, so we need to move forward aggressively with discovery so that --

THE COURT:  It that a nice way of saying you haven't done anything in the case?

MS. MILLER:  We have not not done anything.  We put in our class report with our expert on market efficiency.  And we

M616PARC

have issued subpoenas, and we have gotten a production of documents from the company that was previously produced to the SEC.  We've analyzed those documents, and we are prepared to go forward with more discovery.  We were hoping to get a resolution of the case before doing that because it's very expensive.

THE COURT:  You need more discovery?

MS. MILLER:  Yes.

THE COURT:  You're telling me that's the next stage of the case?

MS. MILLER:  Yes.

THE COURT:  Is to ask for more discovery?

MS. MILLER:  Yes.

THE COURT:  Mr. Lax, what's your next --

MR. LAX:  That's where we are too, your Honor.  If you remember --

THE COURT:  Same case.

MR. LAX:  Yes.

THE COURT:  What's the position of the individual defendants in the class action, Mr. Greene?

MS. BARROW:  Your Honor, Erica Barrow speaking.

THE COURT:  Ms. Barrow.

MS. BARROW:  In terms of the plaintiff seeking to move the case forward, there have been some settlement discussions, and we are optimistic that we can speak directly or have a

mediation.

THE COURT:  I am not staying.

MS. BARROW:  Well, we would be amenable to a stay.

THE COURT:  I'm not staying.

MS. BARROW:  Right.  I understand.  But during whatever the new case schedule would be, we would still want to engage in settlement discussions.  And in furtherance of that, we plan on filing a motion for a comfort order in order to lift the automatic stay in the bankruptcy court as it applies to the D&O policies so that we can pay for legal fees and potentially get that money available for a settlement.

THE COURT:  That's your business, not mine and not the plaintiffs'.

There will be no excuses for moving ahead in this litigation.  The case was filed in 2019.  It's three years old. We're not going to wait.

So what do we need now, a schedule for vigorous completion?

MS. MILLER:  Yes, your Honor.

THE COURT:  Do I have to certify a class?

MS. MILLER:  Yes.  So if you like, we could, by the end of the day today, submit a proposed schedule that is pretty much along the timeframes of before, but starting, perhaps, with the expert's deposition by 30 days from now and all the other dates to follow.

THE COURT:  So the first thing you want to do is get out a request for more discovery, right?

MS. MILLER:  Yes.

THE COURT:  And then before you do the expert, you don't want the response to discovery?

MS. MILLER:  Yes.

THE COURT:  I have a volunteer.

MS. SOKOLOFF:  Sorry, your Honor.  If I may, Brittany Sokoloff for Dawson James.

Oral argument on the motions to dismiss and the October status conference, your Honor ordered that discovery be expedited on the issue of tracing because that is the sole issue concerning our client.  That has yet to transpire.  So if I --

THE COURT:  -- did both at the same time?

MS. SOKOLOFF:  Yes.  But it was supposed to be one of the issues that were expedited before everything else.  I ask that be considered as well.

THE COURT:  Yes.

MS. MILLER:  Your Honor, we issued a subpoena to Morgan Stanley and to UBS, and we will be issuing a subpoena to NASDAQ to follow up on that.  We provided documents to Dawson James.  They didn't provide any to us on this issue.

THE COURT:  Why is this taking so long?  What stopped you from doing this earlier?

M616PARC

MS. MILLER:  Your Honor, we had started by issuing a subpoena to UBS.  They pointed us to Morgan Stanley.  And we were meeting and conferring with Morgan Stanley on the issue when we agreed to put a pin in things and stay the case in the hope that we could resolve it through a settlement before the policies were wasted.

THE COURT:  How do you know which plaintiff would be entitled to recover if you didn't have a tracing?

MS. MILLER:  I'm sorry.  Could you say that again?

THE COURT:  How do you know which claimant would and which would not be entitled to recover until you do a tracing?

MS. MILLER:  Yes.  We need to do the tracing, your Honor, to answer your question.

THE COURT:  Why have you been so lax about this?

MS. MILLER:  I apologize, your Honor.  I'll do it right away.

THE COURT:  I'm sure there will be lots of attorneys who would love to take your position.  You have a class responsibility.

MS. MILLER:  Yes, your Honor.

THE COURT:  Mr. Lax, do you also have a tracing issue?

MR. LAX:  I don't have a tracing issue.  We bought in the offering.

THE COURT:  I want action on subpoenas or they'll be forfeited.

M616PARC

MS. MILLER:  Yes, your Honor.

THE COURT:  I want them in two weeks.

MS. MILLER:  Yes.

THE COURT:  And how long will it take you to make that a request for production?

MS. MILLER:  We can make a request for production -- well, we can follow up on our request to the individual defendants for production, certainly, in the next 14 days. There's one pending.  We haven't gotten any documents from them yet.

THE COURT:  So why do you need anything more if you have one pending?  When were you going to respond to the pending documents, Ms. Barrow?

MS. BARROW:  Your Honor, our hands are a little tied here just because of the bankruptcy.

THE COURT:  They're not tied.  They never were tied. The only person who is tying them is you.

MS. BARROW:  We would ask for at least 45 days.

THE COURT:  How long have you had this?

MS. BARROW:  How long have we had the case?

THE COURT:  No, the document request.

MS. BARROW:  I believe the plaintiff served document requests on us -- we responded and objected, and we produced some documents, but we do have additional documents that we can produce.

M616PARC

THE COURT:  How long have you had the document request?

MS. BARROW:  I'm not sure of the exact time, your Honor.  But this case was stayed for a year.

THE COURT:  Can you educate us when you served the document request?

MS. MILLER:  We propounded document requests in April, I believe.

MS. BARROW:  And the case was stayed, I believe, in December.

MS. MILLER:  I'm sorry, your Honor.  Initial disclosures were exchanged in September of 2021.  And the goal of the parties in the joint case management report was to complete production -- substantially achieve completed production by April 15.  And that was put off when we agreed to the stay in February.

THE COURT:  By June 17, you will complete your tracing.

MS. MILLER:  Yes, your Honor.

THE COURT:  And anyone not identified will be dismissed.  By July 1, the document requests will be produced. Anything that's held back is held back because of a privilege, and the privilege must be described in a privileged law, also to be produced the same date  of July 1.

And whose deposition comes after that?

MS. MILLER:  Our expert, your Honor, on market efficiency.

THE COURT:  When is that going to be done?

MS. MILLER:  We can do that in July or August.

THE COURT:  Well, you want to have the documents, don't you?

MS. MILLER:  Yes, we do.

THE COURT:  So the expert will be deposed on July 13 or another mutually convenient date pending Ms. Miller's office.

What's after that?

MS. MILLER:  Fact witness depositions need to be completed.  We need to set them.  Plaintiffs need to schedule them, of the fact witnesses of defendants and their employees.

THE COURT:  Relevant to certification?

MS. MILLER:  That's not necessary for class certification, no.

THE COURT:  Well, shouldn't I do the class certification after the expert?

MS. MILLER:  Yes.

THE COURT:  Everybody agree?

MS. BARROW:  Yes, your Honor.

MR. LAX:  Your Honor --

THE COURT:  You don't have a problem Mr. Lax, but you don't want to wait all this time.  Let me schedule the time

M616PARC

first and then I'll hear you.

MR. LAX:  Thank you very much, your Honor.

THE COURT:  I'm trying to compress the schedule.

MR. LAX:  I understand.

THE COURT:  Do you have the same discovery interests?

MR. LAX:  We do have the same discovery interests.

THE COURT:  So you're not wasting time.

MR. LAX:  I'm not wasting time, but if --

THE COURT:  You have the same discovery desires also.

MR. LAX:  I'd obviously also like to depose the individual defendants.

THE COURT:  Yes, I understand.  So far, we're not wasting time.

MR. LAX:  No, you're not wasting my time.  You never waste my time.

MR. GOLDFARB:  Your Honor, James Goldfarb for some of the individual defendants in the Sabby matter.

Just a point of order, your Honor, issue has not been joined in that case.  There has not been an answer and there's been no discovery exchange.

MR. LAX:  There has been an answer.  An answer was filed back in 2020.

MR. GOLDFARB:  No document requests have been filed.

THE COURT:  Why do you tell me an untruth?

MR. GOLDFARB:  I'm sorry?

THE COURT:  Why do you tell me an untruth?

MR. GOLDFARB:  I didn't know it was an untruth when I stated it, your Honor.

THE COURT:  That's something posited which is untrue.

MR. GOLDFARB:  Your Honor, I apologize.  I had not realized an answer had been put in.  It was put in well before we were retained in the case.  It is my bad.

MR. LAX:  Your Honor, I believe at the time we were doing discovery, we obviously had to wait on the decision on the motion to dismiss, and the time we were doing discovery -- the time we were doing discovery, I think everything was stayed.  So we would like to be able to serve additional discovery requests.  I don't really know, at this point, your Honor -- where we are in that process, but I know everything stopped.

THE COURT:  Is there any reason why you can't adopt Ms. Miller's discovery requests?  I don't want duplication.

MR. LAX:  There won't be duplication.  I will try to adopt it.  There might be some individual issues, maybe.  But I will try to adopt it.

THE COURT:  It's hard to believe that discovery requests can't embrace everybody.  If you have anything to add, add them within three days.

MR. LAX:  Okay, your Honor.

THE COURT:  All right.  And the production will be all

M616PARC

the documents requested, unless there are specific good reasons not to, and they have to be expressed.  There will be no blanket objections.

MS. BARROW:  Your Honor, we have served document requests on the Sabby plaintiffs, and I don't believe they have responded.  We've also served interrogatories.

THE COURT:  That's what I am talking about.  They have to be responded to both by July 13.  And if there are any additional requests by Mr. Lax, they are to be propounded.

MR. GOLDFARB:  Your Honor, July 13 or July 1?  July 1 is the deadline.

THE COURT:  Remind me when it goes to tracing.

MS. BARROW:  You said June 17 for the tracing.

THE COURT:  Give me the dates I said.

MS. BARROW:  June 17 for the tracing, July 1 for the document request, including privileged log.

THE COURT:  That was before I knew that I had propounded these requests.  There's no need for a July 1 date.

MS. BARROW:  Well, we have, your Honor.  I don't think our codefendants have.

THE COURT:  Mr. Lax has until June 8, June 8 to add any requests.

MR. LAX:  Thank you, your Honor.

THE COURT:  And make sure they don't duplicate.

MR. LAX:  Yes, your Honor.

THE COURT:  So the three dates, then, Mr. Lax; the possibly desired supplement, the interrogatories, and the Rule 34 requests; June 17 for plaintiffs to file their tracing information; and July 13 for defendants to produce documents.

I'm mistaken.  I'm sorry for the confusion.

DEPUTY CLERK:  Judge, use the microphone.

THE COURT:  I said I'm sorry.  I didn't want to be heard.  I'm sorry for the confusion.

MR. GOLDFARB:  Your Honor, sorry to prolong this. There's an interesting dynamic here, as I assume will happen or has already happened.  Mr. Lax's clients are going to serve a document request on my two clients, who are defendants in this case, the independent directors.  But those are effectively -- unless he's going to ask if they have any documents in their personal capacity, those are effectively documents of the company, which is in bankruptcy.  I'm not quite sure it's consistent with the automatic stay for my clients to turn to the company and say here's the request, can you please produce the documents.  That's a real circumvention of the automatic stay.

THE COURT:  Mr. Lax.

MR. LAX:  Well, I mean, your Honor, the only documents I'd be requesting --

THE COURT:  Move your mic.  Move your mic rather than your body.  That's more comfortable.

MR. LAX:  The only individual documents I imagine requesting for them is anything regarding any money they made by the sales of the stock.

THE COURT:  So that doesn't mean the company?

MR. LAX:  I believe.  I believe, just thinking off the top of my head right now.

THE COURT:  It implicates your request, though, Ms. Miller.

MS. MILLER:  Regarding my request for the individual defendant's documents, your Honor, is that what you're asking?

THE COURT:  Yes.  They can produce what they have.

MS. MILLER:  Yes.

THE COURT:  But how do they produce what the company has?

MS. MILLER:  Well, if it's in their possession, custody, or control, they should produce it, and if it's not, not.  So I don't anticipate --

THE COURT:  It implicates its request.

MS. MILLER:  One of the things I mentioned in my letter is that we anticipate dismissing the debtor from this action, and we are hoping to coordinate with them as a nonparty to see if we can get any additional documentation.  But perhaps we will be only getting what we've gotten so far, which is the SEC production.

MR. LAX:  Your Honor, if I may if it implicates the

M616PARC

trustee.

THE COURT:  Who's speaking?  Oh, Mr. Lax.

MR. LAX:  If it implicates the trustee, then the trustee will make some application, I imagine.  So we can probably deal with that once it happens.

THE COURT:  It's going to be Mr. Goldfarb's obligation to raise the issue.

MR. LAX:  Exactly, your Honor.

THE COURT:  To resolve the issue to the trustee.

There are thorough discovery obligations in the bankruptcy proceedings, so I assume it will not be a very difficult thing to allocate a number of those documents to this case.  Okay.

Who on July 13 will be examined, Ms. Miller?

MS. MILLER:  Dr. Chad Coffman, our economist, your Honor.

THE COURT:  Chad, C-H-A-D.

MS. MILLER:  Yes.

THE COURT:  K-A-U-F-F-M-A-N?

MS. MILLER:  C-O-F-F-M-A0N.

THE COURT:  Okay.  Is he here?

MS. MILLER:  Is he here today?  No.

THE COURT:  All right.  And what should happen after that?

MS. MILLER:  So we also have to resolve the class

M616PARC

motion.

THE COURT:  The fact witnesses.

MS. MILLER:  So the fact witness depositions need to be taken and completed, including the individual defendants.

THE COURT:  Perhaps we should put off the motion to certify the class, which might serve your interests.

MS. MILLER:  Yes, your Honor.

THE COURT:  And everybody else's interests.

MR. LAX:  Yes, your Honor.

THE COURT:  Anyone object to that?

MS. BARROW:  Yes, your Honor, we object.  It would be our preference if we could prioritize after the other issues that you've discussed the class certification deadlines.

THE COURT:  Well, you're going to have the issue of tracing known by that time.

MS. BARROW:  That's not -- in terms of the class certification issues, so deposing plaintiff's expert, opposing them, deposing our expert, briefing the class certification issues, all those deadlines are in Box 7.  If we could meet and confer and propose deadlines for that, I'd appreciate that.

THE COURT:  I think they can be deferred until after the fact witnesses.

MR. LAX:  Your Honor, because the fact witnesses have to be deposed in my case, and class certifications are relevant for me.

M616PARC

THE COURT:  I know that.

MR. LAX:  Thank you, your Honor.

THE COURT:  That's why I'm having this conference.

MS. BARROW:  Your Honor, it's our position this could help narrow the issues and won't have implications for the factual depositions --

THE COURT:  I should say some of the individual defendants can be dismissed, and other things go on, and we won't prejudice anyone by deferring the class certifications. So we will defer the class certifications, and in following the expert deposition of Mr. Coffman, which I think also could be deferred.

MS. MILLER:  Yes, your Honor.

THE COURT:  So following the July 1 document production, we are ready for the fact witnesses?

MS. MILLER:  Yes, your Honor.

THE COURT:  Now, how long would you take to get a list of what you need?

MS. MILLER:  To get a list of who we'd like to depose?

THE COURT:  Yes.  Who would be the most important defendant you want to depose first?

MS. MILLER:  Turner.  Not sure -- we would certainly not want to depose him first.

THE COURT:  Who would you want first?

MS. MILLER:  We would probably want to do all of the

M616PARC

individual defendants towards the end of the fact discovery and have lower-level witnesses first.  I think we can do this with no more than 12 or 14 depositions, fact witness depositions, your Honor, and I could propose --

THE COURT:  Laura Thomas was the CFO, right?

MS. MILLER:  Laura Thomas?

MR. LAX:  O'Donnell was the CFO at that time.

THE COURT:  O'Donnell.  What's his first name?

MR. LAX:  Edward O'Donnell.

THE COURT:  He's a defendant?

MS. MILLER:  Yes.  He's a defendant in the class action.  He was the CFO.

THE COURT:  Why not take him first?

MS. MILLER:  I could take him first.  That would be no problem.  I would prefer not to, but if you want me to, I'll do it.

THE COURT:  I think you should do it because he will have total knowledge.

And who was his chief deputy?

MS. MILLER:  I don't know that, your Honor.

THE COURT:  Ms. Barrow, who is chief deputy of Mr. Edward O'Donnell?

MS. BARROW:  Your Honor, it changed over time.  I don't have that information before me.  But your Honor, the initial case management schedule had allowed for class

M616PARC

certification issues to be briefed first, and we do believe that it would narrow the scope of the factual discovery and streamline the process, especially as we're also dealing with the bankruptcy issues.

THE COURT:  I'm aware of that.  And what was my ruling?

MS. BARROW:  It seems like you want to prioritize factual issues.

THE COURT:  Right.  Okay.  I think O'Donnell would be quick because you really want to get identification, all kinds of documents.  You can tell Ms. Barrow what you're looking for initially.  She may informally give you the answers, and that will help you streamline your depositions.

I'd like you to take five depositions.

MS. MILLER:  Five fact depositions?

THE COURT:  Five fact depositions without prejudice to getting more.

MS. MILLER:  Yes, your Honor.

THE COURT:  But with the intention of trying to get as many issues in the case resolved from your perspective.

MS. MILLER:  Understood.

THE COURT:  And you should do this within the space of about six weeks.  Is that reasonable?

MS. MILLER:  It's doable.  I'll do it.

THE COURT:  Does anybody have vacation plans?

M616PARC

MS. MILLER:  I do have a vacation planned, but this will happen.

MS. BARROW:  Your Honor, right --

THE COURT:  Are your family members going to be okay with that?

MS. MILLER:  What was that?

THE COURT:  Will your family members be okay with that?  I will honor requests.

MS. MILLER:  Your Honor, I have a very short vacation with my daughter in the south of France, and it won't -- I have a great team, and they will have no problem getting this done on your schedule.

THE COURT:  Can I come along?  No.  Okay.

Six weeks, that will be July 1.

MS. BARROW:  Your Honor, right now you have the deadline for documents to be produced as July 13th, so I would assume --

THE COURT:  I have July 1 --

MS. BARROW:  -- to propound them.

THE COURT:  -- and then the expert deposition will be July 13, but we're removing that deposition.  Is July 1 not a doable date?  I don't want any request for adjournments.

MS. BARROW:  Your Honor.

THE COURT:  Because you've been sitting on this a long time.

M616PARC

MS. BARROW:  Yes, your Honor.  My understanding was that any additional document requests would be propounded by July 1.  And we'd substantially complete document production --

THE COURT:  No, no, no, no.

MS. BARROW:  -- by July 13.

THE COURT:  No.  By June 17 we're having tracing.  What was the date I gave you to do supplemental?

MR. LAX:  I have till June 8, your Honor.

THE COURT:  Production on everything will be due July 1.  Now, is that impossible, Ms. Barrow?

MS. BARROW:  Your Honor, we'd ask for two additional weeks.  I don't have a calendar in front of me.

THE COURT:  You want two weeks more?

MS. BARROW:  Yes, your Honor.

THE COURT:  We'll give it to you.

MR. LAX:  That's for all parties, your Honor?  That's fine for with us.

THE COURT:  July 13, then, all parties, will be for the production.  Then we do the fact witnesses and --

MS. BARROW:  Your Honor, if the documents are being produced on all parties by mid-July, we'd ask for 60 days to complete -- to start those depositions.

THE COURT:  I'm going to give you till the week of September 5 to finish.  That's Labor Day week.  And then we'll look to have another status conference.

M616PARC

2:30 on September 12, Bridget.

DEPUTY CLERK:  That's a Monday.

THE COURT:  Yes.  And I will want a letter, Ms. Miller, from you covering everybody.

DEPUTY CLERK:  We're picking a jury that day.

THE COURT:  On September 12?

DEPUTY CLERK:  Yes.  The 13th, your Honor.  You can do the 13th at 2:30.

THE COURT:  Okay.  The 13th at 2:30.  All right.  I want by September 9 from Ms. Miller a letter covering everybody's issues.  Each party can contribute to that.  That will be in the form of a single letter.  So schedule it up before that.  And I want everybody's input.  And then we'll fix an agenda on September 13th.

MR. GOLDFARB:  Your Honor, I'm more than happy to cooperate with Ms. Miller, but my clients aren't a defendant in her case.  To avoid the confusion, I'm raising this just so we can avoid the confusion at least I had last week.  Are you asking for the plaintiffs' counsel in the securities litigation suit to put in an update in advance of the status conference covering both that action and the individual securities action, Mr. Lax's clients' action?

THE COURT:  I just finished saying Ms. Miller will give me a letter.  File a letter on --

MS. MILLER:  September 9, your Honor.

THE COURT:  -- September 9 taking into consideration and putting down everybody's input so that we can establish an agenda of the status conference when we meet.

MR. GOLDFARB:  Understood.

THE COURT:  What's unclear?

MR. GOLDFARB:  It's crystal clear now.  Thank you, your Honor.

THE COURT:  Anybody else have anything else to tell me?  Okay.  We're going to move ahead on this case, as you can see, and the biggest burden of moving ahead is on you, Ms. Miller.

MS. MILLER:  Thank you, your Honor.  Understood.

THE COURT:  And if you meet up with opposition, don't get dragged into endless meet and confers.  Put the issue to me.

MS. MILLER:  Absolutely, your Honor.

THE COURT:  You can do it into a 2E letter.  2E is in my individual rules of procedure.  The protagonist of an issue writes a letter stating the position of the party.  The respondents will then put down their position after meeting and conferring, and I'll get a joint letter from both of you, and I'll resolve the issue hopefully within 24~hours.

This procedure is intended to cut down the letter writing, which was to my dismay as a lawyer, and it also gives me the motivation to decide this very quickly so there are

M616PARC

established rules, and pretrial proceedings will not be excuses for endlessly delaying the case.

Okay.  I think we're finished.

Thank you, all.

(Adjourned)