**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE PARETEUM SECURITIES LITIGATION | Case No. 1:19-cv-09767-AKH-GWG |
|---|---|

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**<u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

**TABLE OF CONTENTS**

**Page:**

I.   PRELIMINARY STATEMENT .......................................................................................... 2

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT............................................... 3

    A.  Nature of the Case.................................................................................................... 3

    B.  Procedural History ................................................................................................... 3

        1.  The Complaint and Denial of Defendants' Motion to Dismiss ................................... 3

        2.  Pertinent Post-FAC Developments ......................................................................... 4

        3.  First Attempt at Mediation...................................................................................... 4

        4.  Discovery ................................................................................................................ 5

        5.  Class Certification................................................................................................... 5

        6.  Pareteum's Bankruptcy and the Stay of this Action ................................................ 6

        7.  Successful Mediation .............................................................................................. 6

        8.  The Settlement ........................................................................................................ 7

III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ................... 8

    A.  The Settlement Satisfies the Factors for Final Approval ...................................... 8

        1.  Lead Plaintiff and Lead Counsel Have Zealously Represented the Class .................... 9

        2.  The Settlement Is the Result of Good Faith, Arm's Length Negotiations.................. 10

        3.  The Relief Provided to the Class Is Adequate ........................................................ 10

            a.  The Complexity, Expense, and Likely Duration of the Litigation ...................... 11

            b.  Risks of Establishing Liability and Damages ......................................................... 12

            c.  The Risks of Maintaining the Class Through the Trial.......................................... 14

        4.  The Proposed Method for Distributing Relief is Effective ....................................... 14

            a.  Attorneys' Fees ...................................................................................................... 15

            b.  23(e)(3) Agreements ............................................................................................... 15

        5.  The Settlement Treats All Class Members Equitably ............................................... 16

    B.  The Remaining *Grinnell* Factors Support Approval........................................... 16

        1.  The Stage of the Proceedings and the Amount of Discovery Completed................... 16

        2.  The Ability of Defendants to Withstand a Greater Judgment................................... 17

IV.  THE COURT SHOULD PRELIMINARILY CERTIFY A SETTLEMENT CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS MEMBERS........................ 18

    A.  The Numerosity Requirement is Satisfied ........................................................... 18

    B.  Questions of Law or Fact Are Common to the Settlement Class ................................. 19

C.  Plaintiffs' Claims Are Typical of the Settlement Class ...................................................... 20

D.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class ........ 22

E.  The Proposed Settlement Class Is Ascertainable ............................................................... 22

F.  The Proposed Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3) ................................... 23

    1.  Common Questions of Law and Fact Predominate ...................................................... 23

    2.  A Class Action Is a Superior Method for Adjudicating the Controversy ................... 24

V.  THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY
APPROVED ............................................................................................................................ 25

VI. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ........................................... 25

VII.PROPOSED SCHEDULE OF SETTLEMENT EVENTS .................................................... 26

VIII. CONCLUSION .................................................................................................................... 28

**TABLE OF AUTHORITIES**

**Page(s):**

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)......................................................................................... 22, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)............................................................................................... 23

*Athale v. Sinotech Energy Ltd.*,
    No. 11-cv-5831, 2013 U.S. Dist. LEXIS 199696 (S.D.N.Y. Sep. 4, 2013).......................... 16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52, 59 (2d Cir. 2000)................................................................................ 21

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010).............................. 14

*Belton v. GE Capital Consumer Lending*,
    No. 21-cv-9492, 2022 U.S. Dist. LEXIS 24423 (S.D.N.Y. Feb. 10, 2022).......................... 10

*Christine Asia Co. v. Ma*,
    No. 15-md-2631, 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ............ 13, 15, 24

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................................ 9, 11

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................................... 10

*Desrocher v. Covisint Corp.*,
    No. 14-cv-3878, 2016 U.S. Dist. LEXIS 25139 (S.D.N.Y. Feb. 22, 2016)........................... 20

*Guevoura Fund Ltd. v. Sillerman*,
    No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ................... 11, 15

*Haw. Structural Ironworkers Pension Trust Fund, Inc. v. AMC Entm't Holdings, Inc.*,
    338 F.R.D. 205 (S.D.N.Y. 2021) ................................................................. 19, 21, 22

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)............................................................................................... 23

*In re Advanced Battery Techs. Sec. Litig.*,
    298 F.R.D. 171 S.D.N.Y. 2014)................................................................................ 14

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................................... 11

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).......................................................................... 16

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................................... 16

iii

*In re Deutsche Telekom AG Sec. Litig.*,
  229 F.Supp. 2d 277 (S.D.N.Y. 2002) ................................................................... 24

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ................... passim

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 12

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................. 10

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ........................ 17

*In re JPMorgan Chase & Co. Secs. Litig.*,
  No. 12-cv-03852, 2015 U.S. Dist. LEXIS 132181 (S.D.N.Y. Sept. 29, 2015) ...................... 19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ........................ 10

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................... 9

*In re MF Global Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ........................................................................ 24

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................... 8

*In re PaineWebber Pshps. Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................ 9, 12

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) ............................................................................. 22

*In re Platinum & Palladium Commodities Litig.*,
  No. 10-cv-3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) .......................... 8

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................... 9

*In re PPDAI Grp. Sec. Litig.*,
  No. 18-cv-6716, 2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022) ......................... 15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ......................................................................... 18

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020) ................... passim

*In re Smart Techs., Inc.*,
  295 F.R.D. 50 (S.D.N.Y. 2013) .......................................................................... 24

*In re Veeco Instruments Sec. Litig.*,
   No. 05-md-1695, 2007 U.S. Dist. LEXIS 85629  (S.D.N.Y. Nov. 7, 2007) .................... 15, 18

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)................................................................................... 22

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................ 18

*In re WorldCom*, *Inc. Sec Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................ 21, 23

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) .............................. 13

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................... 11, 14, 16, 17

*Melito v. Experian Mktg. Sols., Inc.*,
   923 F.3d 85 (2d Cir. 2019)..................................................................................... 25

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
   No. 08-cv-5310, 2016 U.S. Dist. LEXIS 153804 (S.D.N.Y. Nov. 4, 2016)...................... 20, 24

*Pearlstein v. Blackberry Ltd.*,
   No. 13-cv-7060, 2021 U.S. Dist. LEXIS 14888 (S.D.N.Y. Jan. 26, 2021) ........................... 22

*Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
   280 F.R.D. 130 (S.D.N.Y. 2012) ............................................................................. 23

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)................................................................................... 20

*Seijas v. Republic of Arg.*,
   606 F.3d 53, 58 (2d Cir. 2010).............................................................................. 21

*Setzer v. Omega Healthcare Inv'rs, Inc.*,
   968 F.3d 204 (2d Cir. 2020)................................................................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................. 9, 18

*Wilson v. LSB Indus.*,
   No. 15-cv-7614, 2018 U.S. Dist. LEXIS 138832 (S.D.N.Y. Aug. 13, 2018).................... 22, 24

**Statutes**
15 U.S.C. §77k............................................................................................................ 19
15 U.S.C. §77l............................................................................................................. 19

**Rules**
Fed. R. Civ. P. 23 .............................................................................................. *passim*

**Other Authorities**
2018 Advisory Comm. Notes to Fed. R. Civ. P. 23 ................................................... 9

Lead Plaintiff, the Pareteum Shareholder Investor Group ("PSIG"), comprised of Kevin Ivkovich, Stephen Jones, Keith Moore, Nicholas Steffey, and Robert E. Whitley, Jr., together with Plaintiff Douglas Loskot (collectively, "Plaintiffs"), respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed settlement (the "Settlement") set forth in the (a) Stipulation and Agreement of Settlement between Plaintiffs and Defendants Victor Bozzo ("Bozzo"), Denis McCarthy ("McCarthy"), Edward O'Donnell ("O'Donnell"), and Robert H. Turner ("Turner") (collectively, "Individual Defendants"), effective September 7, 2022 (the "Individual Defs.' Stipulation," filed herewith)[1] and (b) Stipulation and Agreement of Settlement between Lead Plaintiff and Defendant Squar Milner LLP ("Squar Milner" and, together with the Individual Defendants, the "Settling Defendants"), effective July 14, 2022 (the "Squar Milner Stipulation," filed herewith);[2] (ii) preliminary certification of the proposed class (the "Settlement Class")[3] in order to provide notice to Class Members; (iii) approval of the form and manner of giving notice to Settlement Class Members of the proposed Settlement; and (iii) the setting of a fairness hearing (the "Settlement Hearing") and deadlines for

---

[1] Plaintiff Douglas Loskot ("Plaintiff Loskot") asserts, on behalf of a putative class, Securities Act claims arising out of the iPass Acquisition. *Loskot v. Pareteum Corp.*, 20-cv-2279 (Cal. Super. Ct., San Mateo Cty.) (the "Loskot Action"). For the purposes of the Settlement, "Individual Defendants" includes Robert Lippert and Luis Jimenez-Tuñon, who are defendants in the Loskot Action and previously were defendants in this Action. Upon final approval of the Settlement, Loskot will dismiss the Loskot Action. The members of the putative class in the Loskot Action are members of the Settlement Class in this Action (excluding opt outs).

[2] Defendant Pareteum Corporation ("Pareteum" or the "Company") is not a party to the Settlement because the Action is stayed with respect to it due to the pending bankruptcy proceeding, and the Settlement does not implicate claims against Pareteum which have been timely asserted in the bankruptcy proceeding. *See In re Pareteum Corp.*, 22-10615 (Bankr. S.D.N.Y.) (the "Bankruptcy Proceeding").

[3] The Settlement Class is defined as: all persons and entities that purchased or otherwise acquired Pareteum securities between December 14, 2017 and October 21, 2019, inclusive, including in connection with Pareteum's tender offer exchange for iPass, Inc. common stock on or about February 12, 2019, or Pareteum's Secondary Offering on or about September 20, 2019, in the United States or on a United States-based stock exchange and who were damaged thereby, excluding all non-Settling and Settling Defendants, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which the non-Settling Defendants or Settling Defendants has or had a controlling interest, and Sabby Volatility Warrant Master Fund, Ltd.

dissemination of notice, for Settlement Class Member objections and exclusions, for the filing of

Plaintiffs' Motion for Final Approval of the Settlement, and for the filing of Plaintiffs' Counsel's

application for an award of attorneys' fees and reimbursement of expenses.

## I.    PRELIMINARY STATEMENT

Plaintiffs are well-situated to evaluate the risks and benefits of settlement after extensively

investigating Plaintiffs' claims, researching and drafting two amended complaints, briefing and

presenting oral argument in opposition to Defendants' motions to dismiss, filing a motion for class

certification (which motion included the submission of an expert report on market efficiency and

damages), reviewing nearly half a million pages of documents produced by Defendants, preparing

for five depositions, consulting with an expert on potential damages, and engaging in multiple

mediation sessions and settlement discussions over the course of more than a year that included

Pareteum's Bankruptcy Proceeding (which is ongoing).

Plaintiffs and Plaintiffs' Counsel believe that the Settlement – which will resolve all claims

against the Settling Defendants in exchange for $5,225,000 from the Individual Defendants and an

additional $400,000 from Defendant Squar Milner, for a combined total of $5,650,000 (the

"Settlement Amount") for the benefit of the Settlement Class – is fair, reasonable, adequate, and

in the best interest of Settlement Class Members, as it provides a substantial, immediate, and

guaranteed recovery for Settlement Class Members who face the likelihood of never recovering

anything at all, in light of Pareteum's bankruptcy, ongoing government investigations against some

or all of the Individual Defendants, and rapidly-depleting insurance resources to cover Plaintiffs'

claims. Moreover, the proposed notice satisfies Rule 23 of the Federal Rules of Civil Procedure,

the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these

reasons, the Court should preliminarily approve the Settlement.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Nature of the Case

Lead Plaintiff alleges that Pareteum and certain Settling Defendants made materially false and misleading statements and omissions regarding Pareteum's reported revenues, realized revenue growth rates, and contractual revenue backlog, in violation of Sections 10(b) and 20 of the Securities Exchange Act of 1934 ("Exchange Act"). First Consolidated Amended Complaint (ECF No 168; "FAC") at ¶¶ 45, 49, 53, 69-87. Lead Plaintiff alleges that the inflated revenues were incorporated by reference into registration statements filed in connection with Pareteum's November 12, 2018 acquisition of iPass, Inc. (the "iPass Acquisition") and in connection with Pareteum's September 20, 2019 secondary offering of stocks and warrants (the "Secondary Offering"), which was underwritten by former defendant Dawson James Securities Inc. ("DJSI"),[4] in violation of Sections 11, 12, and 15 of the Securities Act of 1933 ("Securities Act"). *Id.* at ¶¶ 179-81, 191, 210). Also incorporated into the Secondary Offering filings was Defendant Squar Milner's March 18, 2019, audit report certifying that Pareteum's FY18 financial statements fairly presented its financial position and were prepared in accordance with GAAP. *Id.* at ¶¶ 147, 192-93. As a result of these statements and omissions, Lead Plaintiff alleges that the price of Pareteum's stock was artificially inflated and Plaintiffs and Class Members were damaged when the truth was revealed and the stock crashed. *Id.* at ¶¶ 146-50.[5]

### B.    Procedural History

#### 1.    The Complaint and Denial of Defendants' Motion to Dismiss

The initial complaint was filed on October 22, 2019 (ECF No. 1), followed by two related

---

[4] DJSI was voluntarily dismissed without prejudice on July 21, 2022. ECF No. 257. On September 7, 2022, Lead Plaintiff and DJSI filed a Stipulation and [Proposed] Order Dismissing DJSI with prejudice. ECF No. 264.

[5] The Exchange Act claims against Pareteum and certain Individual Defendants are referred to herein as the "Exchange Act Claims"; the Securities Act claims against Pareteum, certain Individual Defendants, including Turner, O'Donnell, and Bozzo, and Squar Milner, are referred to herein as the "Securities Act Claims."

complaints. On January 10, 2020, the Court consolidated the three cases, appointed PSIG as Lead Plaintiff and appointed Kahn Swick & Foti, LLC ("KSF") as Lead Counsel. ECF No. 79. On February 26, 2020, after an extensive investigation, which involved a review of various SEC filings, analyst reports and other publicly available documents, as well as the retention of an independent investigator, Lead Plaintiff filed an amended complaint. ECF No. 98; the "AC." On April 24, 2020, Squar Milner, Pareteum, and the Individual Defendants (joined by DJSI) separately moved to dismiss the AC. ECF Nos. 143, 144, 152. By order dated June 23, 2020, the Court dismissed the AC without prejudice and instructed Plaintiffs to file an amended complaint. ECF No. 162. Lead Plaintiff filed the FAC on July 20, 2020. ECF No. 168. Defendants again moved to dismiss. ECF Nos. 175, 177, 180, 183. The Court held oral argument on October 29, 2020 and on August 11, 2021, issued an Opinion and Order denying Defendants' motions to dismiss in their entirety. Defendants separately answered the FAC on September 10, 2021. ECF Nos. 202-205.

### 2.    Pertinent Post-FAC Developments

On November 12, 2020, Pareteum was de-listed by the NASDAQ for failing to file certain delinquent 10-Qs and 10-Ks in the wake of the Restatement Release.[6] The Company issued restated financials for FY18 on December 14, 2020, with a 37% reduction of revenues (9% higher than anticipated), and issued restated financials for 1H19 on March 12, 2021, with a 47% reduction in revenues (5% higher than anticipated). On September 2, 2021, Pareteum consented to an SEC order finding that it had materially overstated revenues and requiring it to pay a $500,000 civil penalty.

### 3.    First Attempt at Mediation

On February 25, 2021, while the motions to dismiss were pending, Plaintiffs, Pareteum,

---

[6] On October 21, 2019, Pareteum announced that it would have to restate its financial reports for FY18 and 1H19 because it had "prematurely or inaccurately recognized revenue," and it anticipated at least a 28% reduction in reported revenues for FY18 and a 42% reduction in reported revenues for 1H19 (the "Restatement Release"). FAC ¶ 40.

the Settling Defendants, and DJSI took part in a full-day, virtual mediation with David Murphy of Phillips ADR, a preeminent alternative dispute resolution firm. In connection therewith, they submitted detailed mediation statements. Although these settlement discussions were unsuccessful, all Parties continued thereafter to work toward a resolution. In connection with the mediation, Pareteum informed Plaintiffs it had insurance available to cover Plaintiffs' claims, a material portion of which had already been depleted.

### 4.    Discovery

Following the denial of the motions to dismiss the FAC, the Parties began to conduct extensive discovery, exchanging initial disclosures and propounding and responding to multiple sets of requests for production, interrogatories, and requests for admission. Lead Plaintiff also issued several third-party subpoenas. Lead Plaintiff reviewed nearly half a million pages of documents (approximately 90,000 documents) produced by Pareteum, certain Individual Defendants and Squar Milner. Lead Plaintiff also received from, and produced to, DJSI (who is not a party to the Settlement), documents on the issue of "tracing" relating to Lead Plaintiff's claims under the Securities Act. At the time Plaintiffs and the Individual Defendants executed their Memorandum of Understanding ("MOU") on August 15, 2022, Lead Plaintiff had noticed the depositions of Defendants McCarthy and Bozzo, were in active discussions with defense counsel about scheduling the depositions of Defendants O'Donnell and Turner, had served a former Pareteum employee with a deposition subpoena, and were preparing for these five depositions, which were scheduled to take place between August 16 and August 30, 2022.[7]

### 5.    Class Certification

Lead Plaintiff filed a motion for class certification on December 1, 2021, supported by an

---

[7] Plaintiffs made extensive efforts to serve Rob Mumby, Pareteum's former Chief Revenue Officer (and a named defendant in the AC), with a deposition subpoena but were unsuccessful. Plaintiffs also attempted to serve Stanley Stefanski, Pareteum's former Controller, with a deposition subpoena, but were again unsuccessful.

expert report from Chad Coffman, CFA, on market efficiency and damages methodology. ECF No. 227. The Court granted the motion on January 21, 2022 (ECF No. 234), but vacated its order on January 26, 2022, after Defendants requested an opportunity to respond. ECF No. 236.

### 6.    Pareteum's Bankruptcy and the Stay of this Action

On February 4, 2022, Pareteum filed an unopposed motion to stay further proceedings for 90 days (excluding settlement-related motion practice as to Squar Milner) to preserve its limited financial resources and the remaining directors' and officers' liability insurance available to the Individual Defendants, because of ongoing governmental investigations related to the subject of this litigation, as well as "the precarious financial status of Pareteum, which has been exploring a range of strategic alternatives to address ongoing liquidity constraints." ECF No. 238. The Court granted the stay on February 4, 2022. Thereafter, Plaintiffs, the Settling Defendants, and Pareteum continued to discuss settlement. On May 11, 2022, Pareteum made an unopposed request for an additional 90-day stay and on May 18, 2022, Pareteum filed a Suggestion of Bankruptcy and Notice of Operation of Automatic Stay. ECF Nos. 242, 244. The Court held a status conference on June 1, 2022 and thereafter issued an Order setting forth certain discovery deadlines with respect to the parties other than Pareteum and requiring Lead Plaintiff to take at least five fact depositions by September 5, 2022. ECF No. 249.

### 7.    Successful Mediation

Following the first mediation in February 2021, Lead Plaintiff and Squar Milner worked continuously toward a resolution. At a case management conference on October 6, 2021, Lead Plaintiff and Squar Milner informed the Court of their efforts and expectation that they had reached an agreement in principle, which they finally reached on June 23, 2022. On July 19, 2022, Plaintiffs, the Individual Defendants, and plaintiffs in another related, individual action pending before this Court, *Sabby Volatility Warrant Master Fund, Ltd. v. Pareteum Corp.*, No. 1:19-cv-

10460 (S.D.N.Y.), participated in another full-day virtual mediation session overseen by Mr. Murphy, which ended without any agreement being reached. Following the unsuccessful mediation, the Parties continued their discussions with Mr. Murphy, culminating in Mr. Murphy making a mediator's recommendation, which both sides accepted. Plaintiffs and the Individual Defendants then memorialized the settlement in the MOU.

### 8.      The Settlement

On August 17, 2022, Lead Counsel informed the Court of the Settlement. ECF No. 258. Under the terms of the Settlement, the Settling Defendants will pay $5.65 million ($5.25 million from the Individual Defendants and $400,000 from Squar Milner)[8] into an interest-bearing escrow account, following preliminary approval of the Settlement. *See* Individual Defs.' Stip. at ¶¶ 1(ww), 9; Squar Milner Stip. at ¶¶ 1.39, 2.2, 2.3. Upon final approval, the Net Settlement Fund (*i.e.*, the Settlement Amount, plus interest, minus fees, costs, and expenses approved by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court (discussed below in Section V).

As a result of the investigation, briefing, and discovery conducted to date, including responding to multiple motions to dismiss, reviewing and analyzing over half a million pages of documents, preparing for the depositions of certain Individual Defendants, consulting with a damages expert, preparing and filing a motion for class certification, and participating in multiple mediation sessions, Plaintiffs and Plaintiffs' Counsel are well-positioned to evaluate the Settlement. Based on this evaluation, Plaintiffs and Plaintiffs' Counsel agree that the Settlement

---

[8] In addition to the Settlement Amount of $5,250,000, the Individual Defendants will also pay or cause to be paid $100,000 toward the cost of class notice. *See* Individual Defs.' Stip. at ¶ 15. The Individual Defendants' contribution to the Settlement will be paid by their insurer, subject to entry of a comfort order (the "Comfort Order") in the Bankruptcy Proceeding confirming the rights of the Individual Defendants to access this insurance to fund the Settlement. *See id.* at ¶¶ 16, 29, 52.

represents a fair, adequate, and reasonable result for the Settlement Class, in light of the Company's financial position and bankruptcy, the Individual Defendants' inability to contribute meaningfully to the Settlement, and the dwindling insurance coverage. Further, while Plaintiffs believe the merits of their case are strong, the Settling Defendants contend they did not violate the U.S. securities laws and that any violation did not cause damages to the Settlement Class. Plaintiffs also expect the Settling Defendants would vigorously contest class certification. The risks of prosecuting this litigation through class certification, summary judgment, and trial would delay for years any recovery and, in fact, raise the substantial likelihood of no recovery at all. Given these and other significant risks detailed below, Plaintiffs and Plaintiffs' Counsel believe that the guaranteed, prompt recovery provided by the Settlement is in the best interest of the Settlement Class.

### III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). It is "at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 U.S. Dist. LEXIS 96457, at *36 (S.D.N.Y. July 15, 2014). Thus, where, as here, a proposed settlement "appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval,'" it should be approved. *Id.*

#### A.    <u>The Settlement Satisfies the Factors for Final Approval</u>

Amended Rule 23(e)(1) provides that preliminary approval of settlement should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule

8

23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1). Under Rule 23(e)(2), courts assessing approval are to consider whether:

> (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorneys' fees, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Before the 2018 amendments to Rule 23, courts in the Second Circuit considered whether a settlement was fair, reasonable, and adequate under the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[9] The new Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also* 2018 Advisory Comm. Notes to FED. R. CIV. P.23, subdiv. (e)(2). All these factors weigh in favor of approval.

### 1.   Lead Plaintiff and Lead Counsel Have Zealously Represented the Class

The "adequate representation" requirement focuses mainly on the "alignment of interests between class members." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir. 2005). Here, Plaintiffs' interests were, at all times, aligned with absent Settlement Class Members' interests: they all bring the same claims asserting the same legal theories over the same Class Period. Because they all "share the common goal of maximizing recovery, there is no conflict of interest[.]" *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006). Further, Plaintiffs and

---

[9] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the defendants' ability to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998, at *5 (S.D.N.Y. July 21, 2020) (citing *Grinnell*, 495 F.2d at 463). "[A] court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008) (citation omitted).

Lead Counsel have zealously represented the Class throughout this litigation (*see supra* § II(B)) and, therefore, have put themselves and the Class in the best "position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed Settlement." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953, at *20 (S.D.N.Y. Dec. 23, 2009). Armed with their knowledge of the strengths and weaknesses of this case, they were able to negotiate a favorable settlement that provides a significant recovery to Class Members.

### 2.     The Settlement Is the Result of Good Faith, Arm's Length Negotiations

Courts apply a "presumption of fairness" where a "settlement is reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Belton v. GE Capital Consumer Lending*, No. 21-cv-9492, 2022 U.S. Dist. LEXIS 24423, at *8 (S.D.N.Y. Feb. 10, 2022) (citation omitted); *see also* FED. R. CIV. P. 23(e)(2)(B). In such circumstances, "[t]he judgment of Lead Counsel…is entitled to 'great weight.'" *Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998 at *10 (citation omitted). Additionally, a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Here, the Parties agreed to settle only after having conducted significant discovery and numerous arm's length settlement discussions over the course of more than a year with a highly regarded and experienced mediator. Therefore, a presumption of fairness applies to the Settlement.

### 3.     The Relief Provided to the Class Is Adequate

"This inquiry overlaps significantly with a number of *Grinnell* factors," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019), including (i) the complexity, expense, and likely duration of the litigation, (ii) the risks of establishing liability and damages, and (iii) the risks of maintaining the class through trial. In evaluating these factors, it is important to remember

10

the Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116, at \*28 (S.D.N.Y. Dec. 18, 2019) (citation omitted). Courts agree that determination of a "reasonable" settlement "is not susceptible to a single mathematical equation yielding a particularized sum." *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997). Indeed, "that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

### a.    The Complexity, Expense, and Likely Duration of the Litigation

"Courts recognize that securities class actions are generally complex and expensive to prosecute." *Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at \*11 (citation omitted); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("[M]ost securities fraud cases, are complex and challenging as regards both liability and damage."). This case is no different. Plaintiffs carried a heavy burden to convince a jury that Defendants made material misrepresentations and omissions, that Defendants acted with scienter (for the Exchange Act Claims), and that there was artificial inflation of Pareteum securities and declines in the prices of Pareteum securities attributable to disclosures of information revealing the fraud. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) (discussing "factual and legal hurdles" in establishing securities fraud case).

In the absence of settlement, the continued litigation of this Action "likely would have wasted the limited available insurance." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at \*29 (S.D.N.Y. July 27, 2007). Completion of discovery would be lengthy, contentious, and expensive, as it would involve continuing the review

11

of thousands of documents, taking numerous depositions (some of which would need to take place abroad), and resolving disputes about certain Individual Defendants' anticipated assertion of Fifth Amendment privilege at their depositions. Class certification would have been vigorously disputed, and a grant (or denial) of certification would likely have resulted in the filing of a Rule 23(f) petition. In addition, all Parties would have relied on multiple experts to produce reports and testify on complex issues, including loss causation and damages. The Parties would have then briefed the Settling Defendants' expected motion(s) for summary judgment, engaged in pre-trial motion practice, tried this Action, which would have involved substantial fact and expert testimony, submitted post-trial motions, and, whatever the outcome at trial, litigated an appeal. By contrast, the Settlement provides an immediate recovery of $5.65 million for the Class.

### b. Risks of Establishing Liability and Damages

To assess these factors, a court "should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *Payment Card*, 330 F.R.D. at 37. These factors do "not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). "Courts approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Id.* "When the benefits of the guaranteed recoveries from Defendants are weighed against the risks of continued litigation, approval of the Settlement is warranted." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *29.

There were substantial risks to Plaintiffs of establishing liability and damages. While Lead Plaintiff was successful at the motion to dismiss stage and believes the merits of Plaintiffs' case are strong, there are no guarantees as to continued success. Although the Settling Defendants have stipulated to the certification of the Class for purposes of the Settlement, there would have been

no such stipulation had Plaintiffs prosecuted the Action to trial. The Settling Defendants would have vigorously challenged Lead Plaintiff's motion for class certification. Any reduction in the size of the Settlement Class would have affected the claims and damages at issue in the Action. Further, Defendants contend that they did not violate the federal securities laws, did not make any false or misleading statement, did not act with scienter, and did not cause damages to the Settlement Class. Although Plaintiffs believe they have strong responses, any of these arguments could be persuasive on summary judgment. Moreover, even if Plaintiffs survived summary judgment, there is no assurance a jury would find that Defendants made misrepresentations, that those misrepresentations were the cause of investor losses, or that Defendants acted with scienter – an especially difficult element to prove. *See Christine Asia Co. v. Ma*, No. 15-md-2631, 2019 U.S. Dist. LEXIS 179836, at *46 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard to do….") (citing *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim.")). Even a verdict for Plaintiffs would not necessarily result in a larger recovery; a "battle of the experts" may convince a jury that factors other than alleged fraud caused the stock price decline, and thus, the actual damages awarded could be significantly lower than Plaintiffs' estimate. *See Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *33 (approving settlement where "[t]here is no way to predict with any certainty which expert's opinions the jury would have accepted" regarded disputed issue of damages). Even if maximum damages were awarded, the verdict could be appealed and possibly overturned. Post-trial proceedings could take years, further delaying compensation to Settlement Class Members. Finally, any verdict for Plaintiffs would be "pyrrhic" as there is virtually no chance Plaintiffs could collect more than a small fraction of it. *See EVCI*, 2007 U.S. Dist. LEXIS 57918, at *29.

13

Considering Pareteum's bankruptcy, the ongoing governmental investigations, and the rapidly diminishing insurance proceeds available to the Individual Defendants, the Settlement provides a substantial and immediate recovery for the Settlement Class and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. FED. R. CIV. P. 23(e)(2); *see Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *35 (approving settlement with "serious risk that the Company would be unable to fund the judgment and, perhaps, be forced into bankruptcy"); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *3 (settlement "ensures recovery for the class that might otherwise not be possible, given EVCI's precarious financial condition: there was significant risk that, even if [plaintiffs] succeeded at trial, the resulting damage award could be wiped out by a bankruptcy filing"); *Maley*, 186 F. Supp. 2d at 363-64 ("[G]iven that the Company was and remains in difficult financial straits . . . the relatively quick settlement provides a certain benefit to the Class and a benefit to the Company and its current shareholders.").

### c.    The Risks of Maintaining the Class Through the Trial

If this matter does not settle, Plaintiffs expect that the Settling Defendants will vigorously oppose class certification. Further, even if a class is certified, "[FRCP] 23(c) authorizes a court to decertify a class at any time." *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 178 S.D.N.Y. 2014). Thus, the risks and uncertainties of maintaining class status support approval of the Settlement. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679, at *12 (S.D.N.Y. Aug. 6, 2010) ("Because there is a real risk that class certification … if granted, it may later be rejected on appeal or decertified, the Court concludes that this factor also weighs in favor of approving the proposed settlement.").

### 4.    The Proposed Method for Distributing Relief is Effective

The Settlement calls for an experienced Claims Administrator, Strategic Claims Services

("SCS"), to process claims and distribute the Net Settlement Fund *pro rata* to the Settlement Class Members according to the Plan of Allocation, using well-established procedures that have been proven effective in other securities fraud litigations. SCS, who was selected by Lead Counsel after a competitive bidding process (subject to Court approval), will process claims under the guidance of Lead Counsel and provide the Settlement Class Members with a reasonable opportunity to cure deficiencies in their claims. SCS will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation. Lead Counsel will then move for an order of distribution permitting checks to be mailed to Authorized Claimants. This factor favors approval.

### a.    Attorneys' Fees

As disclosed in the Notice, Plaintiffs' Counsel, who have not yet been paid, will apply for a fee award not to exceed 30% of the Settlement Amount. Given the attendant risks of the litigation, this would be consistent with awards in similar complex class action cases. *See, e.g.*, *Guevoura Fund*, 2019 U.S. Dist. LEXIS 218116 at *64 ("33 1/3% fee . . . is consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries").

### b.    23(e)(3) Agreements

The Individual Defendants' Stipulation identifies the Supplemental Agreement, which allows the Settling Defendants to terminate the Settlement if Settlement Class Members possessing a certain aggregate number of securities who meet certain criteria exclude themselves from the Class. *See* Individual Defs.' Stip. at ¶ 33. To protect the Settlement Class, the specific terms of the Supplemental Agreement are confidential "to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement." *In re PPDAI Grp. Sec. Litig.*, No. 18-cv-6716, 2022 U.S. Dist. LEXIS 11427, at *34-35 (E.D.N.Y. Jan. 21, 2022). This is standard practice in securities class action settlements. *See Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *54.

**5.**    **The Settlement Treats All Class Members Equitably**

"[A]n allocation formula need only have a reasonable and rational basis, particularly if recommended by experienced and competent class counsel." *In re Veeco Instruments Sec. Litig.*, 05-mdl-1695, 2007 U.S. Dist. LEXIS 85629, at *39 (S.D.N.Y. Nov. 7, 2007). Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, which shall be determined by the formula of their Recognized Loss divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See, e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013).

**B.**    **The Remaining *Grinnell* Factors Support Approval**[10]

**1.**    **The Stage of the Proceedings and the Amount of Discovery Completed**

"To approve a settlement…the Court need not find that the parties have engaged in extensive discovery." *Maley*, 186 F. Supp. 2d at 363-64 (internal quotations removed) . Rather, the question is whether they have "engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the Settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citation omitted). Here, Plaintiffs thoroughly investigated Plaintiffs' claims, researched and drafted two amended complaints, briefed and presented oral argument in opposition to Defendants' motions to dismiss, consulted with an expert on market efficiency and damages, filed a motion for class certification, reviewed nearly half a million pages of documents produced by Defendants, prepared for five depositions, and engaged in multiple mediation sessions and settlement discussions. *See also supra* § II(B). Therefore, they were well-positioned to "evaluat[e] [ ] the merits of Plaintiffs' claims, the strengths

---

[10] One factor, "the reaction of the Class," cannot meaningfully be assessed until Notice is disseminated.

16

of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *Maley*, 186 F. Supp. 2d at 364; *see also Athale v. Sinotech Energy Ltd.*, No. 11-cv-5831, 2013 U.S. Dist. LEXIS 199696, at *14-15 (S.D.N.Y. Sep. 4, 2013) (settlement approved without "significant discovery" because investigation during two years of litigation was "sufficient to permit realistic appraisal of the reasonableness of the settlement"); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *18-20 (settlement approved "when formal discovery had just commenced," but counsel had…reviewed and analyzed Defendants' public statements and SEC filings, interviewed numerous fact witnesses, reviewed thousands of pages of documents obtained [ ] through FOIL requests, and…consulted with a damages expert).[11]

### 2. The Ability of Defendants to Withstand a Greater Judgment

The Individual Defendants could not have withstood a greater judgment, as Pareteum could not indemnify them by virtue of the Bankruptcy Proceeding, multiple governmental investigations are underway, and there are very limited remaining insurance proceeds to cover Plaintiffs' claims, which are just one of multiple lawsuits and investigations drawing on the same policies. *See Maley*, 186 F. Supp. 2d at 365 (in view of defendant's "dire financial condition" and wasting of insurance, "obtaining a greater recovery than provided by the Settlement would have been difficult"). Further, it is Plaintiffs' understanding that the Individual Defendants could not contribute meaningfully to any judgment. Finally, even if Squar Milner could withstand a greater judgment, "this would not be an impediment to settlement when [as here] the other factors favor the settlement." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175, at *24 (S.D.N.Y. Dec. 19, 2014) (citation omitted).

---

[11] *Cf. Maley*, 186 F. Supp. 2d at 363-64 (despite the fact that no discovery had taken place, "Plaintiffs' Counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement") (citations omitted).

**IV.    THE COURT SHOULD PRELIMINARILY CERTIFY A SETTLEMENT CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS MEMBERS**

A court may certify a class for settlement purposes where it meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b). *GSE*, 414 F.Supp. 3d at 699-700 (citations omitted). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In addition, a class action may be maintained if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). All these requirements are met here.

**A.    The Numerosity Requirement is Satisfied**

"'Generally, courts will find a class sufficiently numerous when it comprises 40 or more members.'" *Veeco*, 235 F.R.D. at 237 (citation omitted). "Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity." *Id.* In securities actions involving nationally listed public companies, numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007). Here, there is no doubt that the Settlement Class far exceeds forty members. Throughout the Settlement Class Period, Pareteum common stock was listed on the NYSE American (until October 22, 2018) and then the NASDAQ (from October 23, 2018). ¶¶ 6, 172. Pareteum reported to the SEC that it had, on average, a minimum of 42.92 million shares outstanding during the Class Period, and Pareteum traded, on average, 16.69 million shares weekly. *See* Expert Report of Chad

18

Coffman (ECF No. 227-1), at ¶¶ 30, 71.

B.       **Questions of Law or Fact Are Common to the Settlement Class**

The commonality requirement is a "low hurdle" that is "easily surmounted." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995). Indeed, "[e]ven a single common question will do." *Wal-Mart*, 564 U.S. at 359.

The dispute in this Action focused on common issues including misrepresentations and omissions in Pareteum's SEC filings and press releases concerning Pareteum's revenues, growth, and backlog. Each Settlement Class Member was injured as a result of these common misrepresentations and omissions and suffered loss when the truth was partially revealed, the Company's stock price dropped as a result of each partial disclosure, and each Settlement Class Member suffered damages. To establish liability for the Securities Act Claims, the Settlement Class Members must prove that the filings for the Secondary Offering and/or iPass Acquisition contained false statements or omissions of material fact, that they purchased a registered security traceable to the registration statements at issue, and that Defendants participated in the offerings in a manner sufficient to give rise to liability. 15 U.S.C. §§77k, 77l(a)(2). The Exchange Act claims depend on proof of the same falsity and materiality as the Securities Act claims, as well as reliance, scienter, and transaction and loss causation. *See Setzer v. Omega Healthcare Inv'rs, Inc.*, 968 F.3d 204, 212 (2d Cir. 2020). Absent Settlement, Class Members would have to prove identical facts and address identical legal issues if they pursued their claims individually. Under similar circumstances, courts have found Rule 23(a)(2)'s commonality requirement satisfied. *See, e.g.*, *Haw. Structural Ironworkers Pension Trust Fund, Inc. v. AMC Entm't Holdings, Inc.*, 338 F.R.D. 205, 212 (S.D.N.Y. 2021) ("Here, nearly all questions of law and fact are common to all Plaintiffs and class members claims, including whether Defendants made materially false and misleading statements or omissions in their Registration Statement or other statements made during the Class

19

Period."); *In re JPMorgan Chase & Co. Secs. Litig.*, No. 12-cv-3852, 2015 U.S. Dist. LEXIS 132181, at *10 (S.D.N.Y. Sept. 29, 2015) (commonality met where "all members of the Proposed Class were injured by the same misstatements").

### C.    Plaintiffs' Claims Are Typical of the Settlement Class

In securities cases, satisfying typicality is "not demanding." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08-cv-5310, 2016 U.S. Dist. LEXIS 153804, at *13 (S.D.N.Y. Nov. 4, 2016). "Rule 23(a)(3) is satisfied by a showing that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (citation omitted). "[T]he typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Desrocher v. Covisint Corp.*, No. 14-cv-3878, 2016 U.S. Dist. LEXIS 25139, at *4 (S.D.N.Y. Feb. 22, 2016) (Hellerstein, J.) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)).

Lead Plaintiff alleges that Pareteum and certain Settling Defendants made material misrepresentations and omitted material facts necessary to make the statements made therein not false or misleading regarding Pareteum's revenues, backlog, and growth prospects, in Pareteum's financial disclosures and public statements beginning on December 14, 2017 and continuing through October 21, 2019 (when they issued the Restatement Release), in violation of the Exchange Act. FAC ¶¶ 13-116. Lead Plaintiff alleges that these were incorporated by reference into registration statements for the iPass Acquisition and the Secondary Offering, in violation of the Securities Act. *Id.* at ¶¶ 178-95. Lead Plaintiff further alleges that Settlement Class Members purchased Pareteum securities at artificially inflated prices and that when Defendants' misconduct was finally and completely revealed on October 21, 2019, the prices of Pareteum's securities plummeted. *Id.* at ¶¶ 40, 149, 196. For each set of claims, Plaintiffs propose a Class Representative who purchased or acquired securities in the relevant transaction: (i) for the Exchange Act Claims,

20

Plaintiffs propose Lead Plaintiff PSIG, comprised of five experienced business professionals with substantial investing experience, who purchased or acquired Pareteum securities at artificially inflated prices during the Class Period (*id.* at ¶¶ 5, 171); (i) for the Securities Act Claims arising out of the Secondary Offering, Plaintiffs propose Lead Plaintiff member Keith Moore, who purchased or acquired Pareteum stock pursuant to or traceable to the Secondary Offering Filings (*id.* at ¶¶ 186, 212, 215); and (iii) for the Securities Act Claims arising out of the iPass Acquisition, Plaintiffs propose Lead Plaintiff member Nicholas Steffey, who purchased or acquired Pareteum stock in the iPass Acquisition. *Id.* at ¶¶ 183, 200, 203, 206. These proposed Class Representatives and all Settlement Class Members have been injured by the same alleged course of conduct. In fact, the proposed Class Representatives' claims are not merely similar to those of the other Settlement Class Members, they are virtually identical and would be proven by common evidence. Thus, Rule 23(a)(3)'s typicality requirement is satisfied. *See In re WorldCom, Inc. Sec Litig.,* 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (certifying class where common course of conduct included "pervasive accounting fraud and the correspondingly pervasive failure of those charged with monitoring and evaluating WorldCom to review diligently the company's financial records and representations, and of those who spoke of WorldCom's financial condition to do so honestly and accurately"); *AMC Entm't*, 338 F.R.D. at 212 ("[T]he claims of the representatives and the class members arise from the same alleged misrepresentations and omissions within the Class Period and thus the representatives are typical of the class.").[12]

---

[12] That Settlement Class Members' individual circumstances might differ based on, *e.g.*, the amount of their individual damages, does not affect the typicality of Plaintiffs' claims. *See, e.g.*, *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010) ("[T]hat damages may have to be ascertained on an individual basis is not sufficient to defeat class certification."). Nor are Plaintiffs subject to a "unique defense" that "threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).

**D.**     **Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class**

The adequacy requirement asks "whether: 1) plaintiff's interests are antagonistic to other class members; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa*, 222 F.3d at 60 (citation omitted). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 (1997) (citation omitted). Both elements are easily satisfied here.

First, Plaintiffs "possess the same interest and suffer[ed] the same injury as the class members." *Id.* at 625-26. As demonstrated above, the typicality of the proposed Class Representatives' claims and the common questions of law and fact ensure the proposed Class Representatives' adequate representation of the proposed Settlement Class. *See supra* §§ IV(B), (C). Defendants' identical, wrongful conduct has injured Plaintiffs, and it is in the proposed Class Representatives' interest to vigorously prosecute this action on behalf of themselves and the Class. *See Signet Jewelers*, 2019 U.S. Dist. LEXIS 114695, at *25 (no conflict of interest where "Lead Plaintiff's legal theories, if vindicated, would vindicate the interests of the Class").[13] Second, proposed Class Counsel KSF is highly qualified, having routinely served as lead counsel in securities class actions in federal courts across the country and having won substantial recoveries for classes represented by the firm in securities class actions and other complex litigation.

**E.**     **The Proposed Settlement Class Is Ascertainable**

The Second Circuit also recognizes an implied requirement that the class be "ascertainable." *See*, *e.g.*, *Pearlstein v. Blackberry Ltd.*, No. 13-cv-7060, 2021 U.S. Dist. LEXIS 14888, at *15-16 (S.D.N.Y. Jan. 26, 2021) (citing *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir.

---

[13] "[D]enial of class certification on the grounds of inadequacy should only occur in the most extreme instances." *AMC Entm't*, 338 F.R.D. at 212. "[M]inor or speculative conflicts should be disregarded at the class certification stage"; only a "fundamental" conflict will affect adequacy. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citations omitted).

2017)). Because the members of the proposed Settlement Class "can be identified from the books and records maintained by [Pareteum] and [its] agents," it satisfies this requirement. *Wilson v. LSB Indus.*, No. 15-cv-7614, 2018 U.S. Dist. LEXIS 138832, at *23 (S.D.N.Y. Aug. 13, 2018).

### F.       The Proposed Settlement Class Satisfies Fed. R. Civ. P. 23(b)(3)

#### 1.       Common Questions of Law and Fact Predominate

"Predominance is a test readily met in certain cases alleging…securities fraud…." *Amchem*, 521 U.S. at 592. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010).

Here, all of Plaintiffs' claims "are based on the same common nucleus of facts": Defendants' alleged materially false and misleading statements and omissions in Pareteum's financials and public filings, including with respect to the iPass Acquisition and the Secondary Offering. FAC ¶¶ 13-116, 178-95. The facts and circumstances that underpin each of the false statements alleged, as well as the legal issues, are common to each of the Settlement Class Members' claims. *Id.*; *see also supra* § IV(B). Because the Securities Act Claims do not require a showing of reliance, knowledge or causation, they are particularly well-suited for class treatment. *See Pub. Emps. Ret. Sys. v. Goldman Sachs Grp.*, 280 F.R.D. 130, 136 (S.D.N.Y. 2012) (noting limited showing needed to establish a prima facie case under §11) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)). Likewise, the Supreme Court has held that the scienter, falsity, materiality, and loss causation elements of a §10(b) claim are each common questions of law and fact that predominate over individualized ones. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 467-70 (2013). With respect to reliance, the predominance requirement

is easily met because Plaintiffs are entitled to rely on the fraud on the market presumption.[14]

Therefore, because common questions of law and fact predominate, the proposed class should be

certified. *See WorldCom,* 219 F.R.D. at 293 (certifying class asserting Exchange Act and Securities

Act claims where "common questions for trial include whether WorldCom's statements and public

filings…contained material, untrue statements and omissions"); *In re Deutsche Telekom AG Sec.

Litig.*, 229 F.Supp. 2d 277, 282 (S.D.N.Y. 2002) (certifying class asserting §§ 10(b) and 11 claims

where common questions included "whether the allegedly fraudulent statements and

omissions…violated the securities laws").[15]

### 2.    A Class Action Is a Superior Method for Adjudicating the Controversy

Securities fraud actions "easily satisfy the superiority requirement of Rule 23." *N.J.

Carpenters*, 2016 U.S. Dist. LEXIS 153804, at *34-35. Here, class certification will promote

judicial efficiency by permitting common claims and issues to be resolved once with a binding

effect on all parties. By contrast, if forced to bring separate individual actions, Plaintiffs and each

Settlement Class Member would have to prove the same wrongdoing by Defendants to establish

liability, resulting in judicial inefficiencies and potentially inconsistent judgments. More

importantly, class certification is the only way to afford relief to those whose claims are too small

to justify individual lawsuits. *See Wilson*, 2018 U.S. Dist. LEXIS 138832, at *50-51. Finally, based

on the litigation to date, Lead Plaintiff does not foresee any management difficulties in proceeding

as a class action. *See In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y.

2015) (superiority requirement met where "no difficulties [had] aris[en] from the management of

---

[14] *See* Lead Plaintiffs' Memorandum of Law in Support of Motion to Certify Class (ECF No. 228), at 16-25.

[15] To the extent there may be individualized traceability inquiries with respect to Plaintiffs' claims arising out of the Secondary Offering, "the potential for such inquiries alone does not defeat predominance." *In re Smart Techs., Inc.*, 295 F.R.D. 50, 61 (S.D.N.Y. 2013) (citation omitted).

the Proposed Class" while it "engaged in significant discovery and resolved a motion to dismiss").

## V.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia*, 2019 U.S. Dist. LEXIS 179836 at \*15. The proposed Plan of Allocation was prepared by Lead Counsel after consulting with an expert economist and rationally reflects the claims asserted in this case, as well as the Court's rulings. It will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid claims and there is no special treatment or preference for Plaintiffs. Each will receive no more or less than his or her *pro rata* share of the Net Settlement Fund based on Recognized Losses assessed by the formula described in the Notice. The Notice provides for a slight increase for Section 11 claims, as those claims are somewhat easier to prove and have no scienter component.

## VI.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

Notice must be provided "in a reasonable manner" and be "the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(e)(1)(B), (c)(2)(B). The notice must "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019). To satisfy Rule 23 and the PSLRA, the notice must also include:

> (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the Parties are proposing the Settlement; (vi) a statement indicating the attorneys' fees and costs that will be sought; (vii) a description of Class Members' right to opt-out of the Class or to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class Members.

*Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at \*43. Plaintiffs' proposed Notice satisfies these standards. *See* Individual Defs.' Stip. at Ex. A-1. The Notice also describes the process for seeking

25

exclusion from the Settlement Class or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id.* Along with the Notice, Plaintiffs propose a Summary Notice (the "Summary Notice") and a Postcard Notice (the "Postcard Notice") which provide key information and direct Settlement Class Members to a website where they can find the full Notice and all Settlement documents. *See id.* at Exs. A-3, A-4. Plaintiffs describe their proposed plan for distributing the Notice in the Proposed Order Preliminarily Approving Settlement and Providing for Notice of Pendency (the "Proposed Order"). *Id.* at Ex. A. Within 14 days after entry of the Preliminary Approval Order, SCS shall cause the Postcard Notice to be mailed or emailed to all shareholders of record, or, for shares held in street name, to their broker nominees. *Id.* at ¶ 7(a). The Summary Notice will also be published twice on a national business newswire within 21 calendar days after distribution of the Postcard Notice begins. *Id.* at ¶ 7(b). Settlement documents will also be made available by email. *Id.* at ¶ 7(a). Thus, the proposed Notice meets the requirements of due process, the PSLRA, and Rule 23.

## VII.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the following schedule for Settlement-related events. *See also* Proposed Order (*id.* at Ex. A). The specific timing of events is determined by when the Settlement Hearing is scheduled. To allow sufficient time for the Notice to be disseminated to potential Settlement Class Members, Plaintiffs respectfully request the Court schedule the Settlement Hearing at the Court's convenience no earlier than 124 calendar days after entry of the Preliminary Approval Order and entry by the Bankruptcy Court of a Comfort Order.

| EVENT: | PROPOSED DEADLINE: |
|---|---|
| Deadline for Lead Counsel to provide notice to Settlement Class Members by either: (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses; or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Lead Counsel, through the Claims Administrator | Not later than **28 days** after the later of entry of Preliminary Approval Order and entry by the Bankruptcy Court of a Comfort Order |
| Deadline for Lead Counsel to cause the Summary Notice to be published twice in nationally distributed, business-focused newswires | Not later than **35 days** after the later of entry of Preliminary Approval Order and entry by the Bankruptcy Court of a Comfort Order |
| Deadline for Lead Counsel to file affidavit of notice of emailing, mailing, and publication | Not later than **44 days** after the later of entry of Preliminary Approval Order and entry by the Bankruptcy Court of a Comfort Order |
| Deadline for filing of papers in support of (i) the Settlement, (ii) the Plan of Allocation, (iii) the application by Lead Counsel for attorneys' fees and/or reimbursement of expenses (collectively, the "Applications") | Not later than **30 days** before the Settlement Hearing and after entry by the Bankruptcy Court of a Comfort Order |
| Deadline for Settlement Class Members to submit/file:<br>• Proof of Claim and Release Forms<br>• Requests to be excluded from the Settlement Class<br>• Objections to the Settlement or the Applications | Not later than **21 days** before the Settlement Hearing and after entry by the Bankruptcy Court of a Comfort Order |
| Deadline for filing reply to any opposition to the Applications or any response to any objection(s) filed | Not later than 7 days before the Settlement Hearing and after entry by the Bankruptcy Court of a Comfort Order |
| Deadline for Claims Administrator to submit report outlining implementation of notice and claims administration | Not later than **7 days** before the Settlement Hearing and after entry by the Bankruptcy Court of a Comfort Order |
| Date of Settlement Hearing | At least **124 days** after entry of Preliminary Approval Order and after entry by the Bankruptcy Court of a Comfort Order |

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement; (2) certify the Settlement Class; (3) approve the Plan of Allocation; (4) approve the proposed form and manner of notice; and (5) schedule a Settlement Hearing.

DATED:  September 7, 2022                          Respectfully submitted,

                                                  **KAHN SWICK & FOTI, LLC**

                                                  */s/ Kim E. Miller*
                                                  Kim E. Miller (KM-6996)
                                                  J. Ryan Lopatka (admitted *pro hac vice*)
                                                  250 Park Ave., 7th Floor
                                                  New York, NY 10177
                                                  Telephone: (212) 696-3730
                                                  Facsimile: (504) 455-1498
                                                  Kim.Miller@ksfcounsel.com
                                                  J.Lopatka@ksfcounsel.com

                                                  -and-

                                                  Melissa H. Harris (MH-3553)
                                                  1100 Poydras Street, Suite 3200
                                                  New Orleans, LA 70163
                                                  Phone: (504) 455-1400
                                                  Facsimile: (504) 455-1498
                                                  melissa.harris@ksfcounsel.com

                                                  *Lead Counsel for Lead Plaintiff Pareteum*
                                                  *Shareholder Investor Group*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2022, I filed the foregoing upon all counsel of record by using the CM/ECF system. The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF).

                                                  */s/ Kim E. Miller*
                                                  Kim E. Miller

28