# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PARETEUM SECURITIES LITIGATION | Case No. 1:19-cv-09767-AKH-GWG |
| | **AMENDED STIPULATION OF SETTLEMENT** |

This Amended Stipulation of Settlement ("Stipulation") is entered into this 25th day of October, 2022 by Lead Plaintiff the Pareteum Shareholder Investor Group, comprised of Kevin Ivkovich, Stephen Jones, Keith Moore, Nicholas Steffey, and Robert E. Whitley, Jr. ("Lead Plaintiff" or "PSIG"), on behalf of itself and each of the putative members of the Settlement Class, and defendant Squar Milner, LLP ("Squar Milner"). This Stipulation is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below) upon and subject to the terms and conditions herein.

## I.    DEFINITIONS

As used in the Stipulation, the following terms have the meanings specified below:

### *The Parties*

1.1    "Defendants" means Pareteum Corporation, Robert H. "Hal" Turner, Edward "Ted" O'Donnell, Victor Bozzo, Denis McCarthy, Dawson James Securities, Inc., and Squar Milner, LLP;

1.2    "KSF" means Kahn Swick & Foti, LLC and its predecessors and successors;

1.3    "Lead Counsel" means KSF;

1.4    "Lead Plaintiff" means the Pareteum Shareholder Investor Group, or "PSIG," comprised of Kevin Ivkovich, Stephen Jones, Keith Moore, Nicholas Steffey, and Robert E. Whitley, Jr., which was appointed as Lead Plaintiff by order of the Court dated January 10, 2020;

1.5    "Pareteum" means Pareteum Corporation and its predecessors and successors;

1.6    "Parties" means Lead Plaintiff (on behalf of itself and the Settlement Class Members, as defined below) and Squar Milner;

1.7    "Plaintiffs" means Lead Plaintiff and the Settlement Class Members, as defined below;

1.8    "Plaintiff Sabby" means Sabby Volatility Warrant Master Fund, Ltd., the plaintiff

1

in *Sabby Volatility Warrant Master Fund, Ltd. v. Pareteum Corp.*, No. 1:19-cv-10460-AKH (S.D.N.Y.). For the avoidance of doubt, Plaintiff Sabby is not a Settlement Class Member as set forth at ¶ 1.41 of this Stipulation.

1.9    "Squar Milner" means Squar Milner LLP.

<em>Additional Defined Terms</em>

1.10    "Action" means the above-captioned case;

1.11    "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation;

1.12    "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe;

1.13    "Claim Form" shall have the meaning set forth in ¶ 5.5 of this Stipulation;

1.14    "Claims Administrator" means the independent claims administrator selected by Lead Counsel and approved by the Court;

1.15    "Claims Administration Costs" means costs and expenses reasonably and actually incurred by the Claims Administrator in connection with locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any;

1.16    "Contribution Claims" means all statutory or common law claims, rights, demands, suits, matters, issues, or causes of action by any Person against Squar Milner, or by Squar Milner against any Person other than any Person whose liability will be extinguished by this Settlement, arising under federal, state, local, foreign, or any other law, rule, or regulation, however styled, whether for indemnification, contribution, claims over, or otherwise, that are based upon, arise

2

out of, or are related to Released Claims;

1.17    "Court" means the Hon. Alvin K. Hellerstein, United States District Court Judge for the Southern District of New York;

1.18    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 7.1 of the Stipulation have occurred;

1.19    "Escrow Account" means an interest-bearing account maintained by the Escrow Agent;

1.20    "Escrow Agent" means J.P. Morgan Chase & Co.;

1.21    "Exhibits" means all of the exhibits to this Stipulation, including Exhibit A, Exhibit B, and Exhibit C;

1.22    "Fee and Expense Application" shall have the meaning set forth in ¶ 6.1 of this Stipulation;

1.23    "Fee and Expense Award" shall have the meaning set forth in ¶ 5.2 of this Stipulation;

1.24    "Final" means when the last of the following with respect to the Judgment shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed (including to the extent that the time to appeal has been extended in a manner provided for in the Federal Rules of Civil Procedure) without any appeal having been taken, unless the date to take such an appeal shall have been extended by Court order; (iii) if a motion to alter or amend the Judgment is timely filed, the motion is denied; and (iv) if an appeal is taken, either (a) the appeal has been dismissed and the time, if any, for commencing any further appeal has expired, or (b) the Judgment has been affirmed in its

entirety and the time, if any, for commencing any further appeal has expired. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement but shall not include any appeal that concerns only the issue of attorneys' fees and reimbursement of costs or payments to Lead Plaintiff or the Plan of Allocation;

1.25    "Final Approval Hearing" shall have the meaning set forth in ¶ 3.2 of this Stipulation;

1.26    "Judgment" means the final order and judgment approving the Settlement and dismissing the Action with prejudice as to Squar Milner, to be entered by the Court substantially in the form attached hereto as Exhibit B;

1.27    "Net Settlement Fund" means the balance of the Settlement Fund after payment of items (a) through (d) of ¶ 5.2 of this Stipulation;

1.28    "Notice" shall have the meaning set forth in ¶ 3.2 of this Stipulation;

1.29    "Person" means an individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof, and any entity, including any business or legal entity, and, as to each of the foregoing, their spouses, heirs, predecessors, successors, representatives, or assignees;

1.30    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund, to be proposed by Lead Counsel and approved by the Court, whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of the items set forth in ¶ 5.2(a)-(d) herein;

1.31    "Preliminary Approval Order" means the preliminary order issued by the Court for mailing and publication as defined in ¶ 3.1 herein and substantially in the form of Exhibit A

hereto;

1.32   "Released Claims" means all claims (including but not limited to Unknown Claims), demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, by Plaintiffs, any Settlement Class Members, or their successors, assigns, executors, administrators, representatives, attorneys and agents, whether brought directly, indirectly, or derivatively against any of the Released Defendant's Parties, which arise out of, are based on, or relate in any way to, directly or indirectly, any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in the First Amended Consolidated Complaint (the "FAC") filed in the Action on July 17, 2020, or which could have been asserted in any other forum that arise out of or are based upon the allegations, transactions, facts, matters, representations, or omissions, involved, set forth, or referred to in the FAC. For the avoidance of doubt, "Released Claims" does not include claims to enforce the Settlement.

1.33   "Released Defendant's Claims" means all claims (including but not limited to Unknown Claims), demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, by the Released Defendant's Parties or any of them against any of the Released Plaintiffs' Parties, including the provisions of California Civil Code § 1542, whether arising under federal, state, common or foreign law, that arise out of, in connection with, or relate to the institution, prosecution, or settlement of the claims against Squar Milner, except for claims relating to the enforcement of the settlement.

1.34   "Released Defendant's Parties" means each and all of Squar Milner and past,

present and future direct and indirect parent entities, subsidiaries, related entities and affiliates, and, as applicable, their respective past and present general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers (specifically including, but not limited to Navigators Specialty Insurance Company and The Hartford), reinsurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof.

1.35    "Released Plaintiffs' Parties" means each and all of the Plaintiffs, consisting of Lead Plaintiff and the Settlement Class Members, and, as applicable, their respective family members, and their respective past, present and future general partners, limited partners, principals, shareholders, investors (however denominated), joint ventures, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, professionals, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof.

1.36    "Secondary Offering" means the direct public offering of Pareteum common stocks and warrants that closed on September 20, 2019.

1.37    "Secondary Offering Filings" means the November 30, 2018 Form S-3 Amended Registration Statement, December 18, 2018 Prospectus, and September 20, 2019 Supplemental Prospectus, pursuant to which the Secondary Offering was registered for sale.

1.38    "Settlement" means the settlement embodied in this Stipulation;

1.39    "Settlement Amount" means the sum of Four Hundred Thousand Dollars

($400,000.00) in cash;

1.40    "Settlement Class" means all persons and entities that purchased or otherwise acquired shares of Pareteum common stock in the Secondary Offering on or about September 20, 2019, as well as those persons and entities that purchased or otherwise acquired shares of Pareteum common stock on December 14, 2017 through October 21, 2019, inclusive, in the United States or on a United States-based stock exchange and who were damaged thereby. Excluded from the Settlement Class are all non-Settling Defendants and Squar Milner, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Squar Milner has or had a controlling interest, and Plaintiff Sabby.

1.41    "Settlement Class Member" means a Person who falls within the definition of the Settlement Class;

1.42    "Settlement Fund" means the Settlement Amount, deposited, or to be deposited into the Escrow Account, pursuant to ¶ 2.2 of this Stipulation, plus all interest earned thereon pursuant to ¶¶ 2.2, 2.3, and 2.6 of this Stipulation;

1.43    "Stipulation" shall have the meaning set forth in the introductory paragraph of this document;

1.44    "Unknown Claims" means any and all claims, demands, rights, liabilities, and causes of action of every nature and description which Plaintiffs, Settlement Class Members, or any Defendant does not know or suspect to exist in his, her or its favor at the time of their release of the Released Claims or the Released Defendant's Claims, and including, without limitation, those which, if known by him, her or it, might have affected his, her or its decision(s) with respect to the settlement or the releases.

272842216v.1

## II.     LITIGATION

### *Lead Plaintiff's Allegations.*

Lead Plaintiff in this Action asserts claims on behalf of a putative Class against Defendants on behalf of purchasers and/or acquirers of Pareteum securities for violations of Sections 10(b) and 20(a) the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) and/or violations of Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act"). Only a Section 11 claim is asserted against Squar Milner. Specifically, Lead Plaintiff alleges that Defendants made materially false and misleading statements and omissions between December 14, 2017 and October 21, 2019 (the "Class Period") with respect to Pareteum's revenues, growth, and backlog. Lead Plaintiff alleges these false and misleading statements and omissions caused the price of Pareteum's common stock price to rise from $0.72 per share on December 14, 2017 -- the start of the Class Period -- to as much as $5.93 per share on March 18, 2019, and that a series of disclosures removed the artificial inflation from Pareteum's stock price caused by the alleged misrepresentations and omissions resulting in harm to Lead Plaintiff and the putative Class. Shortly after the final corrective disclosure announcing that Pareteum would be restating its financial statements for FY18 and 1H19, which Lead Plaintiff alleges revealed the full truth underlying the alleged misrepresentations, Pareteum shares fell to just $0.37 per share.

With respect to Squar Milner, Lead Plaintiff asserts claims under Section 11 of the Securities Act only. Lead Plaintiff alleges Squar Milner issued an audit report (the "Audit Report") of Pareteum's consolidated financial statements as of and for the year ended December 31, 2018, which was included in Pareteum's FY18 10-K and incorporated by reference into the Secondary Offering Filings. Lead Plaintiff alleges this Audit Report falsely certified that Pareteum's financial statements fairly presented the Company's financial position as of December

31, 2018 and December 31, 2017, were prepared in accordance with GAAP, and falsely represented that it conducted its audits or reviews in accordance with Public Company Accounting Oversight Board standards.

Squar Milner denies that it has committed or intended to commit any wrongdoing or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Action and maintains that its conduct was at all times proper and in compliance with applicable provisions of law.

### *Procedural History.*

This putative securities class action was filed on October 22, 2019 in the Southern District of New York and assigned to the Honorable Alvin K. Hellerstein. *See* Dkt. No. 1. Competing lead plaintiff motions were filed on December 23, 2019, and on January 10, 2020, the Court appointed PSIG Lead Plaintiff, and approved its selection of KSF as Lead Counsel. *See* Dkt. No. 79.

On January 13, 2020, the Court signed and entered a stipulation and scheduling order setting forth a briefing schedule for amending the complaint. *See* Dkt. No. 81. Lead Plaintiff filed the Consolidated Complaint ("Complaint") on February 26, 2020. *See* Dkt. No. 98. On June 23, 2020, the Court entered an Order dismissing the Complaint without prejudice. *See* Dkt. No. 162. Lead Plaintiff filed the operative First Amended Consolidated Class Action Complaint ("FAC") on July 20, 2020. *See* Dkt. No. 168. Defendants filed motions to dismiss the FAC on August 4, 2020 (Dkt. Nos. 175-183), and the matter was heard before the Court on October 29, 2020. *See* Dkt. No. 199. At the conclusion of oral argument, the Court held that Lead Plaintiff had adequately pled falsity with respect to its Exchange Act and Securities Act claims and took the remainder of the issues under advisement. On August 11, 2021, the Court issued an Opinion and Order denying Defendants' motions to dismiss in their entirety. *See* Dkt. No. 201. With respect to Squar Milner, the Court found that Lead Plaintiff adequately pled that Squar Milner's Audit Report was not

272842216v.1

protected opinion because there were sufficient allegations that "misleading information was embedded and further information was necessary to make these figures not misleading." Dkt. No. 201 at 38.

On February 25, 2021, Defendants took part in a full-day mediation with David Murphy of Phillips ADR. Thereafter, the Parties worked continuously towards a resolution of the Action. At a case management conference on October 6, 2021, the Parties informed the Court of their efforts and expectation that they had reached an agreement in principle. The Parties finally reached an agreement in principle to settle the action on June 23, 2022.

Commencing July 13, 2022 and concluding as quickly thereafter as possible, Squar Milner will produce non-privileged or otherwise unprotected documents responsive to Lead Plaintiff's First Set of Requests for Production (the "RFPs"), and Lead Counsel will immediately commence review and analysis of these materials. Lead Counsel will review these documents to confirm the fairness, reasonableness, and adequacy of the settlement.

## III.    SQUAR MILNER'S DENIALS OF WRONGDOING AND LIABILITY

Squar Milner has denied and continue to deny all claims and contentions alleged by Lead Plaintiff in the Action and maintains that it has meritorious defenses. Squar Milner has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Squar Milner also has denied and continues to deny, *inter alia*, that it engaged in any conduct that was subject to or violated the federal securities laws, that Lead Plaintiff or Settlement Class Members have suffered damages, that the price of Pareteum common stock or any other Pareteum securities were artificially inflated by reason of alleged misrepresentations, non-disclosures, or otherwise, or that Lead Plaintiff or Settlement Class Members were harmed by the conduct alleged in the FAC.

272842216v.1

Nonetheless, Squar Milner has concluded that further litigation of the Action would be protracted and expensive and has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Action. Based on these considerations, Squar Milner determined that it is desirable and beneficial to settle the Action in the manner and upon the terms and conditions set forth in this Stipulation. As set forth below in ¶ 9.3 of this Stipulation, neither this Stipulation nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement shall constitute an admission or finding of wrongful conduct, acts, or omissions.

## IV.    CLAIMS OF PLAINTIFFS AND BENEFITS OF SETTLEMENT

Lead Plaintiff believes the claims asserted against Squar Milner in this Action have merit. Lead Plaintiff recognizes and acknowledges, however, the expense and length of continued proceedings necessary to prosecute the Action against Squar Milner through trial and possible appeals. Lead Plaintiff has also taken into account the uncertain outcome and the risk of any litigation, especially complex litigation such as this Action.

Further, Lead Plaintiff has considered the Action's inherent difficulties and potential delays. Lead Plaintiff is also mindful of the amount of available insurance coverage and the problems of proof and the possible defenses to the securities law violations asserted in the Action. Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon and is in the best interests of the Settlement Class.

## V.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### 1.    The Agreement

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Parties, that, subject to Court approval, the Action and the Released Claims shall be finally and

fully compromised, settled, and released, and the Action shall be dismissed with prejudice as to Squar Milner, upon and subject to the terms and conditions of the Stipulation, as follows.

### 2.     The Settlement

#### a.     The Settlement Class

2.1     The Parties stipulate, for purposes of this Stipulation and the Settlement only, to the certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. If for any reason (including the exercise of a right to terminate under the Stipulation) Final Approval of the Settlement is not granted, then the certification of the Settlement Class shall become null and void without further order of the Court or any other court.

#### b.     The Settlement Fund

2.2     Squar Milner, through its insurer(s), shall cause to be paid the Settlement Amount within the time set forth in ¶ 2.3 of this Stipulation, below, into the Escrow Account in settlement of the Action and the Released Claims which, with any accrued interest, shall constitute the Settlement Fund.

2.3     Subject to the terms of this Stipulation, Squar Milner, through its insurer(s), shall cause to be paid the Settlement Amount into the Escrow Account within thirty (30) days following the occurrence of all the following: (i) entry of the Preliminary Approval Order by the Court; and (ii) the provision by Lead Counsel of all required funding information, including without limitation, wire instructions, verbal confirmation of such instructions, and a Form W-9 with a tax identification number.

2.4     This is not a claims-made settlement. Squar Milner will have no ability to recapture any of the Settlement Amount unless the Settlement is terminated or does not become effective as set forth in Section 7 of this Stipulation.

2.5     The Released Defendant's Parties shall have no responsibility for or incur any liability with respect to the management, investment, or distribution of the Settlement Fund or Net Settlement Fund or for any losses suffered by, or fluctuations in the value of, the Settlement Fund or Net Settlement Fund.

### c.     The Escrow Agent

2.6     The Escrow Agent shall invest the Settlement Fund, or any portion thereof, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or its agencies and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.

2.7     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation or by Court order. Upon Final Approval of the Settlement and completion of the claims processing, the Escrow Agent shall distribute the Net Settlement Fund (as defined below) in accordance with the Court-approved Plan of Allocation without further order of the Court.

2.8     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute transactions on behalf of the Settlement Class Members that are consistent with the terms of the Stipulation.

2.9     All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

2.10    After payment of the Settlement Fund to the Escrow Agent, Lead Counsel may seek the Court's approval to pay Claims Administration Costs incurred in connection with the administration of the Settlement Fund.

2.11    The Released Defendant's Parties shall not have any responsibility for or incur any liability with respect to: any act, omission, or determination of or by the Escrow Agent, or any

272842216v.1

designees or agents thereof; Claims Administration Costs; the Settlement Fund; the administration of, distribution of, or disbursement from the Settlement Fund; the Net Settlement Fund; or the administration of, distribution of, or disbursement from the Net Settlement Fund.

### d.  Taxes

2.12     The Parties and the Escrow Agent agree to treat the Settlement Fund at all times as a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.13     For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Claims Administrator. The Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.14 of this Stipulation.

2.14     All federal and state income taxes ("Taxes") (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including: (i) any Taxes or tax detriments that may be imposed upon the Released Defendant's Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes;

272842216v.1

and (ii) expenses and costs incurred (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns) ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall the Released Defendant's Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)). The Parties hereto agree to cooperate with the Claims Administrator, the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of ¶¶ 2.12 to 2.14 of this Stipulation.

2.15    For the purpose of ¶¶ 2.12 to 2.14 of this Stipulation, references to the Settlement Fund shall include the Settlement Fund and the Net Settlement Fund and shall also include any earnings on each of the foregoing.

### e.    Effect of Termination or Lack of Effectiveness of Settlement

2.16    In the event that the Effective Date does not occur or the Settlement is terminated or does not become effective for any reason, including, without limitation, in the event that the Settlement is not approved by the Court or the Judgment is reversed or vacated following appeal, the Settlement Fund and the Net Settlement Fund (in each case, including accrued interest), less certain expenses actually incurred and properly due and owing in connection with the Settlement provided for herein (including Claims Administration Costs actually incurred), shall be refunded

to Squar Milner as provided in ¶ 7.3 of this Stipulation, below, within ten (10) business days of termination of the Settlement.

### 3.    Preliminary Approval Order and Final Approval Hearing

3.1    Promptly after execution of the Stipulation, and no later than July 15, 2022, Lead Plaintiff shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A hereto, requesting, *inter alia*, preliminary approval of the Settlement set forth in the Stipulation. Lead Plaintiff shall consult in good faith with Squar Milner as to the language of the motion and related pleadings seeking such Preliminary Approval Order.

3.2    To maximize efficiency and avoid unnecessary costs, Notice of Pendency and Proposed Settlement of Class Action ("Notice") to the Class will not be issued until one of the following occurs: (1) a proposed settlement with the other Defendants in the Action is preliminarily approved by the Court; (2) the Action is otherwise resolved as to all remaining Defendants; or (3) June 1, 2023. Lead Counsel shall request the Court to schedule a hearing after Notice is given (the "Final Approval Hearing") during which hearing Lead Plaintiff will seek final Court approval of the Settlement and entry of the Judgment. At the Final Approval Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application, as provided for in ¶¶ 6.1 to 6.4.

3.3    The form of Preliminary Approval Order submitted to the Court shall specifically include provisions that, among other things, will:

(a)    Preliminarily approve this Stipulation and the Settlement as fair, just, reasonable and adequate;

(b)    Preliminarily certify the Settlement Class, solely for purposes of the Settlement, and preliminarily find, solely for purposes of the Settlement, that each element for

16

certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure is met;

(c)     Provide that pending final determination of whether the Settlement should be approved, neither Lead Plaintiff nor any Settlement Class Member, whether directly, representatively, or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting any of the Released Claims against any of the Released Defendant's Parties; and

(d)     Notice to the Class will not be issued until a proposed settlement with Defendant Pareteum and/or the other Defendants in the Action is preliminarily approved by the Court, the case is otherwise resolved as to all remaining Defendants in the Action, or by June 1, 2023.

**4.     Releases**

4.1     Upon the Effective Date, as defined in ¶ 7.1 of this Stipulation, Lead Plaintiff and each of the Settlement Class Members, on behalf of themselves, their respective present and former parent entities, subsidiaries, divisions, and affiliates, the present and former employees, officers, directors, advisors, partners, and agents of each of them, and the predecessors, heirs, executors, administrators, trusts, family members, successors and assigns of each of them, and anyone claiming through or on behalf of any of them, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims as against the Released Defendant's Parties, or any of them, whether or not such Settlement Class Member executes and delivers a Claim Form or participates in the Settlement Fund.

4.2     Upon the Effective Date, all Settlement Class Members and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing,

instituting, intervening in or participating in, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind or character (whether brought directly, in a representative capacity, derivatively, or in any other capacity), asserting any of the Released Claims against any of the Released Defendant's Parties.

4.3     Upon the Effective Date, with respect to any and all Released Claims, Lead Plaintiff shall expressly waive, and each Settlement Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights and benefits conferred by California Civil Code § 1542 (to the extent it applies) or any other law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Lead Plaintiff, for itself and on behalf of all Settlement Class Members, expressly acknowledges that it may hereafter discover facts in addition to or different from those that it or its counsel now knows or believes to be true with respect to the subject matter of the Released Claims or otherwise, but upon the Effective Date, Lead Plaintiff expressly shall have, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or

without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and the Settlement Class Members shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

4.4     Upon the Effective Date, each of the Released Defendant's Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Plaintiffs' Parties from the Released Defendant's Claims, except for those claims brought to enforce the Settlement.

4.5     Upon the Effective Date, the terms of 15 U.S.C. § 78u-4(f)(7) shall apply to this Settlement, including that the Judgment shall provide that Contribution Claims shall be barred. The Judgment shall further provide specifically that it shall not bar any Contribution Claim by Squar Milner against any Parties whose liability for the Released Claims has been extinguished by the Settlement.

## 5.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Settlement Fund

5.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under the supervision of Lead Counsel and pursuant to the Preliminary Approval Order entered by the Court.

5.2     Subject to the terms of this Stipulation and any orders of the Court, the Settlement Fund shall be applied as follows:

    (a)     to pay Claims Administration Costs;

    (b)     to pay Taxes and Tax Expenses;

(c)     after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation (including ¶¶ 5.3-5.7 below) and the Plan of Allocation and any other applicable order of the Court; and

(d)     after an initial distribution is made from the Settlement Fund to Authorized Claimants, to pay Lead Counsel's attorneys' fees and expenses, and to pay Lead Plaintiff for its time and expenses, if and to the extent allowed by the Court (the "Fee and Expense Award").

5.3     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation and the Plan of Allocation, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with ¶¶ 5.4 through 5.7 below.

5.4     Any Person falling within the definition of the Settlement Class may be excluded from the Settlement Class by submitting to the Claims Administrator a request for exclusion which complies with the requirements set forth in the Notice and is postmarked no later than fourteen (14) days prior to the date of the final settlement hearing. Any Person who submits a valid and timely request for exclusion (and does not subsequently revoke this request for exclusion) shall have no rights under the Stipulation, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Stipulation (including the releases herein) or the Judgment. However, a Settlement Class Member may submit a written revocation of a request for exclusion within ninety (90) days after the mailing of the Notice, or such other period as may be ordered by the Court, and may receive payments pursuant to this Stipulation and Settlement provided the Settlement Class Member also submits a valid Claim Form, as set forth in ¶ 5.6 below, within ninety (90) days after the mailing of the Notice, or such other period as may be ordered by the Court.

5.5     Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Claim Form, signed under penalty of perjury and supported by such documents as are specified in the Claim Form and as are reasonably available to the Authorized Claimant.

5.6     All Settlement Class Members who fail to timely submit a Claim Form within ninety (90) days after the mailing of the Notice, or such other period as may be ordered by the Court, shall be forever barred from receiving any payments pursuant to the Stipulation, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.

5.7     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of such Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), such balance shall be reallocated among and distributed to Authorized Claimants in an equitable and economic fashion. Thereafter, any remaining balance should be donated to an appropriate 501(c)(3) non-profit organization(s) to be selected by Lead Plaintiff and approved by the Court.

5.8     No Person shall have any claim against Lead Counsel, the Claims Administrator, or other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.9     It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect or delay the finality of the Judgment or Settlement of the Action (including the releases contained in the Stipulation), or any other orders entered pursuant to the Stipulation.

5.10    Squar Milner will take no position with respect to the Plan of Allocation. The Plan of Allocation is a matter separate and apart from the Settlement and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the Settlement.

5.11    The Released Defendant's Parties shall not have any responsibility for or incur any liability with respect to: any act, omission, or determination of or by the Claims Administrator, or any designees or agents thereof; any act, omission, or determination of or by any other entity designated by Lead Counsel as referenced in ¶ 5.8 of this Stipulation; the Plan of Allocation; or the administration of the Plan of Allocation.

**6.     Lead Counsel's Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Expenses**

6.1     Lead Counsel may submit an application or applications for distributions to it from the Settlement Fund for: (a) an award of attorneys' fees; and (b) reimbursement of actual expenses, including the fees of any experts, consultants, and investigators incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees and expenses accrued at the same rate and for the same periods as earned by the Settlement Fund (until paid), as may be awarded by the Court (the "Fee and Expense Application"). Such Fee and Expense Application shall seek

an award of attorneys' fees in an amount not greater than thirty-three and one-third percent (33 1/3%) of the Settlement Fund and reimbursement of expenses incurred in connection with the prosecution of this Action as determined reasonable by the Court. Such Fee and Expense Application is subject to the approval of the Court. Squar Milner will not take any position on any Fee and Expense Application that Lead Counsel may file.

6.2     The attorneys' fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, after an initial distribution is made from the Settlement Fund to Authorized Claimants, subject to the joint and several obligation of Lead Counsel to make appropriate refunds or repayments to the Settlement Fund plus interest (accrued as from the date the funds of the Settlement Fund are deposited with the Escrow Agent until the date the appropriate refunds or repayments are made), if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or expense award is reduced or reversed.

6.3     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses (including the fees of experts and consultants) to be paid out of the Settlement Fund are not part of the Settlement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. The Fee and Expense Award and Lead Counsel's Fee and Expense Application are not settlement terms and will not be grounds for terminating the Settlement or proposed Settlement. Any order or proceedings relating to the Fee and Expense Application, or Lead Plaintiff's expenses application, or any appeal from any order relating to either of the foregoing or reversal or modification of either of the foregoing, shall not operate to

terminate or cancel the Stipulation, or affect or delay the finality of the Judgment or the Settlement (including the releases contained therein).

6.4    The Released Defendant's Parties shall have no responsibility for, and no liability whatsoever with respect to: any Fee and Expense Application that Lead Counsel may file; any payments to Lead Counsel pursuant to ¶¶ 6.1 and 6.2, above; or any Fee and Expense Award that the Court may make in the Action. The Released Defendant's Parties also shall have no responsibility for, and no liability whatsoever with respect to any other Person who may seek fees and expenses in connection with prosecuting or helping to prosecute this Action against Squar Milner or to any other Person who may assert some claim to: any payments to Lead Counsel pursuant to ¶¶ 6.1 and 6.2, above; or any Fee and Expense Award that the Court may make in the Action.

**7.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1    The Effective Date of the Stipulation and the Settlement shall be conditioned on the occurrence of all of the following events:

(a)    the Settlement Amount has been paid into the Settlement Fund as required by ¶ 2.2 of this Stipulation;

(b)    the Court has entered the Preliminary Approval Order substantially in the form attached hereto as Exhibit A as referenced in ¶ 3.1 of this Stipulation;

(c)    the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B hereto, which, *inter alia*, dismisses the Action with prejudice as to Squar Milner and includes the releases set forth in this Stipulation; and

(d)    the Judgment has become Final.

7.2     Upon the occurrence of all of the events referenced in ¶ 7.1 of this Stipulation, any and all remaining interest or right of Squar Milner in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If all of the conditions specified in ¶ 7.1 of this Stipulation are not met, then the Stipulation shall be canceled and terminated subject to ¶ 7.4 of this Stipulation unless Lead Counsel and counsel for Squar Milner mutually agree in writing to proceed with the Settlement.

7.3     Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, including, without limitation, in the event that the Settlement is not approved by the Court or the Judgment is reversed or vacated following any appeal taken therefrom, then within ten (10) business days after written notification of such event is sent by counsel for Squar Milner to the Escrow Agent, the Settlement Fund (including accrued interest), including the Settlement Amount and the Net Settlement Fund, and all payments disbursed, including all expenses, costs, and any Fee and Expense Award – excluding only Claims Administration Costs which have either been disbursed or are determined to be properly incurred, in connection with reasonable administrative costs of implementing the Settlement, pursuant to ¶ 2.10 of this Stipulation, and Taxes and Tax Expenses that have been paid or that have accrued and will be payable at some later date – shall be refunded by the Escrow Agent to Squar Milner or its insurer pursuant to written instructions from Squar Milner or its successor-in-interest. Such amount to be refunded shall not be reduced by any investment losses on funds in escrow and any such losses shall be an obligation of the Escrow Agent. If said amount or any portion thereof is not returned within such ten (10) business day period, then interest shall accrue thereon at the rate earned on the Settlement Fund until the date that amount is returned. At the request of counsel to Squar Milner, the Escrow Agent or its

designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, pursuant to written direction from Squar Milner or its successor-in-interest.

7.4    In the event that the Stipulation is not approved by the Court or the Settlement is not approved by the Court or is terminated or fails to become effective in accordance with its terms, the Parties shall be restored to their respective positions in the Action as of the moment immediately before the settlement term sheet was executed on June 23, 2022. In such event, the terms and provisions of the Stipulation and any document executed pursuant to or in furtherance of the Stipulation or the Settlement, with the exception of ¶¶ 2.11, 7.3-7.5, and 9.4, shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other proceeding for any purpose, and any order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any Court order concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.5    If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed to the Claims Administrator for Claims Administration Costs. In addition, any expenses already incurred and properly chargeable as Claims Administration Costs pursuant to ¶ 2.10 of this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶ 2.10 and 7.3 of this Stipulation.

7.6     If a bankruptcy proceeding is commenced against Squar Milner or a trustee, receiver, or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of Squar Milner to be a preference, voidable transfer, fraudulent transfer, or similar transaction, then, at Lead Plaintiff's option, the releases given and Judgment entered in favor of Squar Milner pursuant to this Stipulation shall be null and void.

7.7     Notwithstanding the foregoing ¶ 7.6, Lead Plaintiff's right to nullify the releases and Judgment as to Squar Milner pursuant to ¶ 7.6 shall expire upon the Effective Date.

7.8     Simultaneously herewith, the Parties, by and through their respective counsel, are executing a Supplemental Agreement, attached hereto as Exhibit C, which gives Squar Milner the right, but not the obligation, to terminate the Settlement in the event that a certain portion of the Settlement Class delivers timely and valid requests for exclusion from the Settlement Class (the "Supplemental Agreement"). For the avoidance of doubt, Plaintiff Sabby is not a Settlement Class Member as set forth at ¶ 1.42 of this Stipulation and its purchases and/or shares of Pareteum common stock are not to be considered with respect to the Supplemental Agreement.

## 8.     Cooperation in Discovery

8.1     Squar Milner will cooperate in discovery by producing non-privileged or otherwise unprotected documents responsive to Lead Plaintiff's First Set of Requests for Production, propounded on Squar Milner on September 10, 2021 (the "RFPs"), commencing July 13, 2022, and completing that production as quickly thereafter as possible, and will make two (2) former Squar Milner employees/officers/directors if requested by Lead Plaintiff available for informational interviews at an appropriate juncture after preliminary approval of the settlement (or as otherwise agreed by the Parties to the settlement). Provided Squar Milner is not required to produce witnesses to testify in the action commenced by the Sabby Plaintiff, Squar Milner also

27

will make the two former Squar Milner employees/officers/directors available to testify in the Action without requiring personal service upon them by Lead Plaintiff. The informational interviews shall be limited to four (4) hours for each interview.

**Miscellaneous Provisions**

9.1     The Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable best efforts to accomplish the terms and conditions of the Stipulation.

9.2     Subject to the terms of this Stipulation, the Parties intend this Settlement to be a full and complete resolution of all disputes that Lead Plaintiff and the Settlement Class have with the Released Defendant's Parties, and that Squar Milner has with the Released Plaintiffs' Parties, with respect to the Released Claims and the Released Defendant's Claims, respectively. The Settlement compromises claims which are contested and shall not be deemed an admission by any Plaintiff or Squar Milner as to the merits of any claim or defense. The Judgment will contain a statement that during the course of the Action, Lead Plaintiff, Squar Milner, and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. In addition, Lead Plaintiff and the Settlement Class will not make applications against the Released Defendant's Parties, and Squar Milner will not make applications against the Released Plaintiffs' Parties for fees, costs or sanctions, pursuant to Rule 11, Rule 37, Rule 45 or any other court rule or statute, with respect to any claims or defenses in this Action or to any aspect of the institution, prosecution, or defense of the Action. While retaining its right to deny liability, Squar Milner agrees that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Parties agree to refrain from making disparaging

28

statements about the other in any press release, statements to the media, or other public communications (including statements made in court filings or in court) relating to the Settlement, including the claims to be released pursuant to the Settlement, including prior to the Effective Date.

9.3     Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Defendant's Parties, or; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Defendant's Parties in any civil, criminal, administrative, or other proceeding before any court, administrative agency, arbitration tribunal, or other body. Any of the Released Defendant's Parties may file the Stipulation and/or the Judgment in any action or other proceeding that may be brought against them in order to support a defense, argument, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or similar defense, argument, or counterclaim.

9.4     All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

9.5     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by reference. In the event there exists a conflict or inconsistency between the terms of the Stipulation, on the one hand, and any Exhibit on the other, the terms of this Stipulation shall govern.

9.6     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

272842216v.1

9.7     The Stipulation and the executed or so ordered versions of those ancillary documents which are attached hereto as Exhibits constitute the entire agreement among the Parties and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, Plaintiffs shall not be responsible for any costs borne by Squar Milner or its counsel, and Squar Milner shall not be responsible for any costs borne by Plaintiffs or their counsel.

9.8     Lead Counsel, on behalf of the Settlement Class, are expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which Lead Counsel deem appropriate.

9.9     Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

9.10    The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

9.11    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

9.12    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. The Parties agree that any action based on this Stipulation or to enforce any of its terms shall be brought in this Court.

9.13    Lead Plaintiff and Lead Counsel represent and warrant that none of Lead Plaintiff's claims or causes of action in the Action have been assigned, encumbered, or in any manner transferred in whole or in part.

9.14    All terms of this Stipulation and the executed or so ordered versions of those ancillary documents which are attached hereto as Exhibits shall be governed by and interpreted according to the substantive laws of the State of New York, without giving regard or effect to its choice-of-law rules, except to the extent that federal law requires the application of federal law.

9.15    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.16    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation. Unless otherwise stated herein, any breach of any provision of this Stipulation by any Party hereto shall not constitute grounds for rescission of this Stipulation but shall constitute grounds only for a claim for specific performance for breach of this Stipulation.

IN WITNESS THEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated this 25th day of October, 2022.

DATED: October 25, 2022

**KAHN SWICK & FOTI, LLC**

_____

Kim E. Miller (KM-6996)
J. Ryan Lopatka
250 Park Ave., 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
Kim.Miller@ksfcounsel.com
J.Lopatka@ksfcounsel.com

_Lead Counsel for Lead Plaintiff Pareteum_
_Shareholder Investor Group_

**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**

Peter J. Larkin
1133 Westchester Avenue
White Plains, NY 10604
Telephone: (914) 972-7847
Facsimile: (914) 323-7001
peter.larkin@wilsonelser.com

_Attorneys for Defendant Squar Milner LLP_

272842216v.1