**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PARETEUM SECURITIES LITIGATION | Case No. 1:19-cv-09767-AKH-GWG |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    INTRODUCTION ........................................................................................................... 1

II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND ......................................... 3

III.  ARGUMENT ................................................................................................................. 7

   A.  The Settlement Warrants Final Approval ................................................................. 7

     1.  Lead Plaintiff and Lead Counsel Have Zealously Represented the Class .................... 8

     2.  The Settlement Was Reached After Substantial Litigation and Arm's-Length Negotiations Between Experienced Counsel with the Assistance of an Experienced Mediator ...................................................................................................... 10

     3.  The Relief Provided to the Class Is Adequate ........................................................ 12

       a. The Complexity, Expense, and Likely Duration of Litigation ............................... 12

       b.  The Risks of Establishing Liability and Damages ............................................... 14

       c. The Risks of Maintaining Class Certification ....................................................... 17

       d.  The Range of Reasonableness of the Settlement Fund ........................................ 17

       e. The Proposed Plan of Allocation ....................................................................... 22

       f. The Proposed Fee Award ................................................................................. 22

       g.  The Supplemental Agreement ............................................................................ 22

       h.  The Remaining *Grinnell* Factors Confirm the Settlement Is Fair ......................... 22

         (i)  Defendants' Ability to Withstand a Greater Judgment ..................................... 22

         (ii) The Reaction of the Settlement Class ........................................................... 23

   B.  The Court Should Finally Certify the Settlement Class ............................................ 23

   C.  The Plan of Allocation Should Be Approved ......................................................... 24

   D.  The Notice Complied with Rule 23, the PSLRA, and Due Process ............................ 24

IV.   CONCLUSION ............................................................................................................. 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s):**

**Cases**

*Athale Sinotech Energy Ltd.*,
  No. 11-cv-05831, 2013 U.S. Dist. LEXIS 199696 (S.D.N.Y. Sept. 4, 2013) .................... 12, 17

*Baffa v. Donaldson*, *Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000).................................................................................................. 9

*Bellifemine v. Sanofi- Aventis U.S. LLC*,
  No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010)............................. 19

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)............................................................................................................. 7

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-cv-10211, 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ............................ 16

*Christine Asia Co. v. Jack Yun Ma*,
  No. 15-md-02631, 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ............. 7, 17, 25

*City of Providence v. Aéropostale, Inc.*,
  No. 11-cv-7132, 2014 US. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)..................................... 26

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................................................. 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).......................................................................................................... 29

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ........................... 11

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ............................................................................................. 15

*Guevoura Fund Ltd. v. Sillerman*,
  No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 8, 2019) ..... 13, 14, 15, 21, 25

*In re Adv. Battery Techs. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................... 11, 19

*In re Bear Stearns Cos.*,
  909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)...................................................................... 18, 20

*In re Celera Corp. Sec. Litig.*,
  No. 10-cv-02604, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015) ......................... 23

*In re Citigroup, Inc.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................................. 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918
  (S.D.N.Y. July 27, 2007) ..................................................................... 8, 10, 12, 14, 19, 24

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
No. 12-md-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015),
*aff'd.*, 674 F. App'x 37 (2d Cir. 2016) ...................................................................................... 11

*In re Fine Host Corp. Sec. Litig.*,
No. 97-cv-2619, 2000 U.S. Dist. LEXIS 19367 (D. Conn. Nov. 8, 2000) ............................... 14

*In re Flag Telecom Holdings*,
No. 02-cv-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ........... 15, 16, 26, 27

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436, 459 (S.D.N.Y. 2004) ........................................................................ 15, 16, 18

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 693 (S.D.N.Y. 2019) ..................................................................................... 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ............................ 8

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................ 17

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................................ 18, 22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009). .......................... 10

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................................ 23

*In re NQ Mobile, Inc. Secs. Litig.*,
No. 13-cv-7608, 2016 U.S. Dist. LEXIS 189606 (S.D.N.Y. Mar. 11, 2016) ............................ 7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 Fed. Appx. 760 (2d Cir. Oct. 2, 2020) ............................................................................... 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................................ 9

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................................ 9

*In re PPDAI Grp. Inc. Sec. Litig.*,
No. 18-cv-6716, 2022 U.S. Dist. LEXIS 1142 (E.D.N.Y. Jan. 21, 2022) ............................... 25

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998 (S.D.N.Y. July 21, 2020) 8, 13, 18, 23, 28, 29

*In re Tesla, Inc. Sec. Litig.*,
No. 18-cv-04865, 2022 U.S. Dist. LEXIS 88609 (N.D. Cal. Apr. 1, 2022) ............................. 17

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) .............................. 15

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .................................... 15

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
  No. 08-cv-5310, 2019 U.S. Dist. LEXIS 39807 (S.D.N.Y. Mar. 8, 2019),
  *aff'd*, 28 F.4th 357 (2d Cir. 2022) ........................................................................... 12

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S.Ct 1318 (2015) ................................................................................................ 16

*Teachers' Ret. Sys. v. ACLN Ltd.*,
  No. 01-cv-11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ........... 21, 22, 24, 26

*Vaccaro v. New Source Energy Partners L.P.*,
  No. 15-cv-8954, 2017 U.S. Dist. LEXIS 205785 (S.D.N.Y. Dec. 14, 2017) ........................... 18

*Wal-Mart Stores, Inc. v. Visa USA Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................... 7, 11, 20

**Statutes**

15 U.S.C. § 78u-4(a)(7) .................................................................................................... 28

**Other Authorities**

a2018 Advisory Comm. Notes to FED. R. CIV. P.23 ......................................................... 9

Catherine Galley, Erin McGlogan & Peirrick Morel,
  *Approved Claims Rates in Securities Class Actions*,
  Law360 Expert Analysis (April 10, 2017) ................................................................ 22

Jessica Erickson,
  *Automating Securities Class Action Settlements*,
  72 VAND. L. REV. 1817, 1836 (2019) ...................................................................... 23

Narinder Walia & Adam Werner,
  *Validating Aggregate Securities Class Damage Estimates*,
  Law360 Expert Analysis (Feb. 24, 2021) ................................................................ 23

NERA Economic Consulting,
  *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
  (Jan. 24, 2023) .......................................................................................................... 24

**Rules**

Fed. R Civ. P. 23(b)(3) ...................................................................................................... 27

Fed. R. Civ. P. 23(a) ......................................................................................................... 27

FED. R. CIV. P. 23(c)(2) .................................................................................................... 29

Fed. R. Civ. P. 23(e) .......................................................................................................... 1

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 8, 11

Lead Plaintiff, Pareteum Shareholder Investor Group ("Plaintiffs"), on behalf of itself and the Settlement Class, respectfully submit this memorandum in support of their motion, pursuant to Fed. R. Civ. P. 23(e), for final approval of the Settlement and Plan of Allocation.[1]

## I.    **<u>INTRODUCTION</u>**

After a hard-fought litigation, Plaintiffs have agreed to settle all claims brought against Defendants Victor Bozzo, Denis McCarthy, Edward O'Donnell, and Robert H. Turner ("Individual Defendants") and Defendant Squar Milner LLP ("Squar Milner" and, together with Individual Defendants, "Settling Defendants") for an all-cash payment of $5.65 million, plus $100,000 towards Notice costs from the Individual Defendants.[2] The Settlement represents a solid recovery for the Settlement Class. While Plaintiffs and Lead Counsel believe the claims are meritorious, there are substantial challenges to establishing liability and damages. Further, even if Plaintiffs were to prevail at every future stage of litigation, it is highly unlikely they would recover anything in light of Pareteum's bankruptcy, ongoing government investigations against some or all of the Individual Defendants, and rapidly wasting insurance coverage. The Settlement provides the proverbial "bird in hand" – a substantial, immediate, and guaranteed

---

[1] The Settlement terms are set forth in the (a) Amended Stipulation and Agreement of Settlement between Plaintiffs and Individual Defendants effective Oct. 25, 2022 (ECF No. 273) and (b) Amended Stipulation and Agreement of Settlement between Plaintiffs and Squar Milner effective Oct. 25, 2022 (ECF No. 274 (collectively, the "Amended Stipulations"), preliminarily approved on December 20, 2022. *See* ECF No. 275. All capitalized terms not defined herein have the meanings ascribed to them in the Amended Stipulations.

[2] Contingent upon final approval of the Settlement, the claims in the individual action *Sabby Volatility Warrant Master Fund, Ltd. v. Pareteum Corp.*, No. 1:19-cv-10460-AKH (S.D.N.Y.) (the "*Sabby* Action"), will be dismissed pursuant to separate settlement agreements between Sabby Volatility Warrant Master Fund, Ltd. ("Plaintiff Sabby") and the Individual Defendants, and Plaintiff Sabby and Squar Milner. The Settlement Fund here does not include the separate settlement consideration for these settlements between Plaintiff Sabby and the Individual Defendants, and Plaintiff Sabby and Squar Milner. The Settlement also encompasses claims asserted by Plaintiff Douglas Loskot ("Loskot") on behalf of a putative class in California state court, *Loskot v. Pareteum Corp.*, 20-cv-2279 (Cal. Super. Ct., San Mateo Cty.) (the "*Loskot* Action"). The claims in the Loskot Action are subsumed by the claims in this Action and represent only 3.4% of the estimated damages in this Action. The members of the putative class in the *Loskot* Action are members of the Settlement Class here (excluding opt-outs), and upon final approval of the Settlement, Plaintiff Loskot will dismiss the *Loskot* Action. For purposes of the Settlement, "Individual Defendants" includes Robert Lippert and Luis Jimenez-Tuñon, who were previously defendants in this Action.

recovery for Settlement Class Members that is likely the maximum they could get. As this Court already found:

> Had this litigation proceeded, it would have been expensive, fraught with difficulties, and subject to high risk, and so the settlement is adequate in relationship to the complexity, expense, and likely duration of litigation. The trial would have been lengthy. There would be many witnesses that would be required. And since the insurance policy provided that the payments made to the insureds or the additional insureds reduced the face amount of the insurance coverage, there would be a very substantial risk of continuing the litigation would reduce the available funds for recovery. Accordingly, the certain and immediate relief that settlement affords in light of the risks of establishing liability, loss causation, and damages supports approval of the Settlement.

Declaration of Kim E. Miller ("Miller Decl."),[3] Ex. B (Tr. of Oct. 12, 2022, Prelim. Approval Hrg.) at 29:4-13.

This Action has been litigated for over two-and-a-half years. Among other things, Plaintiffs and Lead Counsel extensively investigated the claims, researched and drafted two amended complaints, opposed multiple motions to dismiss by Defendants and presented oral argument on the second round of Defendants' motions to dismiss, reviewed more than half a million pages of documents produced by Defendants, prepared for multiple depositions, consulted with an economics expert, and participated in multiple mediation sessions and ongoing settlement discussions thereafter for more than a year. Plaintiffs and Lead Counsel, who are well-positioned to evaluate the Settlement, agree it is a very good result for the Settlement Class, particularly when the significant risks of continued litigation are considered. Further, the Settlement resulted from good-faith, arm's-length negotiations between experienced counsel, under the supervision of an experienced mediator, David Murphy, of Phillips ADR.

---

[3] The Miller Declaration and its exhibits are integral to this submission. For the sake of brevity, Plaintiffs respectfully refer the Court to the Miller Declaration for a detailed description of, *inter alia*, the factual background and procedural history of the Action, the negotiations leading to the Settlement, the fairness and reasonableness of the Settlement, the risks and uncertainties of continued litigation, and the terms of the Plan of Allocation.

Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund, which was developed in conjunction with Plaintiffs' economics expert and is designed to fairly and equitably distribute the Settlement proceeds to Settlement Class Members.

Finally, the Notice program, conducted under Lead Counsel's supervision in accordance with the Preliminary Approval Order, constituted "the best notice…practicable under the circumstances," satisfying Rule 23, the PSLRA, and due process. As of January 19, 2023, Strategic Claims Services ("SCS") has mailed 3,260 copies of the Postcard Notice to potential Settlement Class Members or nominees, caused the Summary Notice to be published on *GlobeNewswire* and *PR Newswire*, and made the Notice, Claim Form, and other documents available on the Settlement website. *See* Miller Decl. at ¶¶120-22. While the deadline to request exclusion or object to the Settlement has not yet passed,[4] to date, only one valid exclusion request and no objections have been received – a testament to the high quality of the Settlement.

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The initial complaint in this Action was filed on October 22, 2019, against Defendants Pareteum, Bozzo, McCarthy, and O'Donnell, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). *See* ECF No. 1. Two additional complaints, alleging substantially similar claims, were filed on October 23 and 24, 2019. On January 10, 2020, the Court consolidated the three cases, appointed Pareteum Shareholder Investor Group as Lead Plaintiff, and approved Lead Plaintiff's selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel. *See* ECF No. 79. Following an extensive investigation involving substantial legal and factual research, including the retention of a private investigator and consultation with an economics expert, Plaintiffs filed an amended complaint (ECF No. 98; the

---

[4] The deadline for exclusions and objections is April 3, 2023. Lead Counsel will supplement this submission in its reply memorandum on April 18, 2013, in accordance with the Court's Order. *See* ECF No. 275.

"AC"), which named additional Defendants Turner, Squar Milner, Dawson James Securities Inc. ("DJSI"), and certain other individuals,[5] and alleged additional claims under the Securities Act of 1933 (the "Securities Act"). On April 24, 2020, Defendants separately moved to dismiss the AC. *See* ECF Nos. 143, 144, 152. By order dated June 23, 2020, the Court dismissed the AC without prejudice and instructed Plaintiffs to file an amended complaint. *See* ECF No. 162.

Plaintiffs filed the First Amended Complaint (ECF No. 168; "FAC") on July 20, 2020. Plaintiffs allege Pareteum and certain Settling Defendants materially misrepresented Pareteum's revenues and backlog, in violation of §§ 10(b) and 20 of the Exchange Act. *See* FAC at ¶¶45, 49, 53, 69-87. Plaintiffs allege the inflated revenues were incorporated into registration statements filed in connection with Pareteum's November 12, 2018, acquisition of iPass, Inc. and Pareteum's September 20, 2019, secondary offering ("Secondary Offering"), which was underwritten by former defendant DJSI, in violation of §§ 11, 12, and 15 of the Securities Act. *See id.* at ¶¶179-81, 191, 210. Also incorporated into the Secondary Offering filings was Defendant Squar Milner's March 18, 2019 audit report certifying that Pareteum's FY18 financial statements fairly presented its financial position and were prepared in accordance with GAAP. *See id.* at ¶¶147, 192. As a result, Plaintiffs allege Pareteum's stock price was artificially inflated and they were damaged when the truth was revealed and the stock crashed. *See id.* at ¶¶146-151.

Plaintiffs continued to closely monitor developments about Pareteum's business after filing the FAC – many of which strongly supported the allegations in the FAC. On November 12, 2020, Pareteum was de-listed by the NASDAQ for failing to file certain delinquent 10-Qs and

---

[5] Former defendants Robert Lippert, Jimenez-Tuñon, Rob Mumby, and Yves van Sante were not named in the subsequently filed FAC.

10-Ks in the wake of the Restatement Release.[6] *See* Miller Decl. at ¶30. The Company issued restated financials for FY18 on December 14, 2020, with a 37% reduction of revenues (9% higher than anticipated), and issued restated financials for 1H19 on March 12, 2021, with a 47% reduction in revenues (5% higher than anticipated). *See id.* at ¶31. On September 2, 2021, Pareteum consented to an SEC order finding it had materially overstated revenues and requiring it to pay a $500,000 civil penalty. *See id.* at ¶32.

Defendants again separately moved to dismiss the FAC on August 4, 2020 (ECF Nos. 175, 177, 180, 183), and after the motions were fully briefed, the Court held oral argument on October 29, 2020. On February 25, 2021, while the motions to dismiss were pending, Plaintiffs, Pareteum, the Settling Defendants, and DJSI took part in a full-day, virtual mediation with David Murphy of Phillips ADR, a preeminent alternative dispute resolution firm. In connection therewith, Plaintiffs, Pareteum, and the Individual Defendants submitted and exchanged detailed mediation statements. These settlement discussions were unsuccessful. On August 11, 2021, the Court issued an Opinion and Order denying the motions to dismiss in their entirety. The parties immediately began to conduct extensive discovery, exchanging initial disclosures and propounding and responding to multiple sets of requests for production, interrogatories, and requests for admission. Plaintiffs also issued several third-party subpoenas. In total, Plaintiffs reviewed nearly half a million pages of documents produced by Defendants.

On February 4, 2022, Pareteum filed an unopposed motion (which the Court granted) to stay proceedings for 90 days to preserve its limited financial resources and the remaining D&O insurance available to the Individual Defendants, due to ongoing governmental investigations

---

[6] On October 21, 2019, Pareteum announced it would have to restate its financial reports for FY18 and 1H19 because it had "prematurely or inaccurately recognized revenue," and it anticipated at least a 28% reduction in reported revenues for FY18 and a 42% reduction in reported revenues for 1H19. FAC ¶40.

related to the subject of this litigation, as well as "the precarious financial status of Pareteum, which has been exploring a range of strategic alternatives to address ongoing liquidity constraints." ECF No. 238. On May 15, 2022, Pareteum filed for bankruptcy protection, and on May 18, 2022, Pareteum filed a Suggestion of Bankruptcy and Notice of Operation of Automatic Stay. *See* ECF Nos. 242, 244. The Court held a status conference on June 1, 2022 and thereafter issued an Order setting forth an aggressive discovery schedule – including requiring Plaintiffs to take at least five fact depositions by September 5, 2022. *See* ECF No. 249.

The parties worked diligently to comply with these deadlines while continuing to also discuss settlement. After continued negotiations without the mediator's assistance, Plaintiffs and Squar Milner entered into their Stipulation of Settlement on July 14, 2022. On July 19, 2022, Plaintiffs, the Individual Defendants, and Plaintiff Sabby participated in another full-day virtual mediation overseen by Mr. Murphy, which ended without any agreement. Thereafter, the remaining parties (minus Pareteum, against whom the litigation was stayed) continued negotiating, both with and without Mr. Murphy, while discovery progressed in parallel. After several more weeks of intensive negotiations, the parties were finally able to come to an agreement. Plaintiffs and the Individual Defendants memorialized the settlement in a Memorandum of Understanding ("MOU") on August 15, 2022. At the time the MOU was executed, Plaintiffs had noticed McCarthy and Bozzo's depositions, were in discussions with defense counsel regarding scheduling O'Donnell and Turner's depositions, had served a former Pareteum employee with a deposition subpoena, and were actively preparing for these five depositions, scheduled between August 16 and August 30, 2022.[7]  *See* Miller Decl. at ¶47.

---

[7] Plaintiffs made extensive and diligent efforts to serve Rob Mumby, Pareteum's former Chief Revenue Officer (and a named defendant in the AC), with a deposition subpoena but were unsuccessful. Plaintiffs also attempted to serve Stanley Stefanski, Pareteum's former Controller, with a deposition subpoena, but were likewise unsuccessful.

Under the terms of the Settlement, following preliminary approval, the Settling Defendants paid $5.65 million in cash ($5.25 million from the Individual Defendants and $400,000 from Squar Milner) into an interest-bearing escrow account. *See id.* at ¶80. In addition, as a further benefit to the Settlement Class, Plaintiffs negotiated for Individual Defendants to pay $100,000 toward notice and claims administration costs. *See* ECF No. 273 at ¶15. Upon final approval, the Net Settlement Fund (*i.e.*, the Settlement Amount, plus interest, minus fees, costs, and expenses approved by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation. *See id.* at ¶81. In return, Settlement Class Members will dismiss, with prejudice, all claims that were, or could have been brought, against the Settling Defendants. *See id.* at ¶80.

## III.    ARGUMENT

### A.    The Settlement Warrants Final Approval

"The law favors compromise and settlement of class action suits." *Christine Asia Co. v. Jack Yun Ma*, No. 15-md-02631, 2019 U.S. Dist. LEXIS 179836, at *34 (S.D.N.Y. Oct. 16, 2019) (citing *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "strong judicial policy in favor of settlements, particularly in the class action context")). In determining whether to approve a settlement, "the Court should consider both the process by which the settlement was negotiated and the substantive fairness of the agreed-upon terms in light of the circumstances of the litigation." *In re NQ Mobile, Inc. Secs. Litig.*, No. 13-cv-7608, 2016 U.S. Dist. LEXIS 189606, at *6 (S.D.N.Y. Mar. 11, 2016). Courts should "not decide the final merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Further, "courts should give proper deference to the private consensual decision of the parties" [and] "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation…." *Christine Asia*, 2019 U.S. Dist.

7

LEXIS 179386, at *35 (citation omitted). Thus, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Under Rule 23(e)(2), courts assessing approval are to consider whether:

> (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorneys' fees, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Before the 2018 amendments to Rule 23, courts in the Second Circuit considered whether a settlement was fair, reasonable, and adequate under the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[8] The new Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also* 2018 Advisory Comm. Notes to FED. R. CIV. P. 23, subdiv. (e)(2). As discussed below, an analysis of the relevant factors demonstrates that the Settlement merits final approval.

### 1. Lead Plaintiff and Lead Counsel Have Zealously Represented the Class

In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the

---

[8] These factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the defendants' ability to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998, at *5 (S.D.N.Y. July 21, 2020) (citing *Grinnell*, 495 F.2d at 463). "All nine factors need not be satisfied; the court must look at the totality of these factors in light of the specific circumstances involved." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175, at *14 (S.D.N.Y. Dec. 19, 2014).

representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases); *see also Baffa v. Donaldson*, *Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

Lead Plaintiff's interests were, at all times, aligned with absent Settlement Class Members' interests: they bring the same claims asserting the same legal theories over the same Class Period. Because they all "share the common goal of maximizing recovery, there is no conflict of interest[.]" *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006). Further, Lead Plaintiff diligently oversaw the litigation, communicated with Lead Counsel on a regular basis, and was fully engaged in the settlement process. *See* Miller Decl. at ¶169. This active participation reinforces the reasonableness of the Settlement. *See EVCI*, 2007 U.S. Dist. LEXIS 57918, at *11-12 ("A settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness.").

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, have a long and successful track record representing investors in such cases, and have negotiated dozens of settlements of these types of cases, which settlements have been approved by courts across the country. *See*, *e.g.*, Miller Decl. at Ex. A (KSF Firm Resumé). Therefore, Lead Plaintiff and Lead Counsel have put themselves and the Class in the best "position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed Settlement." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953, at *20 (S.D.N.Y. Dec. 23, 2009). Armed with their knowledge of the strengths

9

and weaknesses of this case, they were able to negotiate a favorable settlement that provides a significant recovery to Class Members. *See* Miller Decl., Ex. B at 28:22-23 ("The settlement was reached after strong and zealous representation of the class by lead counsel.").

### 2. The Settlement Was Reached After Substantial Litigation and Arm's-Length Negotiations Between Experienced Counsel with the Assistance of an Experienced Mediator

"[A] class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations concluded by experienced, capable counsel after meaningful discovery."[9] *In re Adv. Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014) (citing *Wal-Mart*, 396 F.3d at 116)). Courts should give "proper deference to the private consensual decision of the parties" and bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574, at *17 (S.D.N.Y. Sept. 9, 2015).

Here, the litigation was sufficiently advanced to provide the parties with a thorough understanding of the strengths and weaknesses of their claims. Prior to entering into the Settlement, Plaintiffs and Lead Counsel: researched and filed the AC after extensive investigation, including the retention of a private investigator and consultation with an economics expert; responded to Defendants' motions to dismiss; drafted and filed the FAC; responded to Defendants' second round of motions to dismiss; prepared for and presented oral argument on the second round of motions to dismiss; propounded written discovery on Defendants and reviewed the responses thereto; filed a motion for class certification supported

---

[9] This prong of 23(e)(2)(B) also encompasses the third *Grinnell* factor, which assesses "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-md-2389, 2015 U.S. Dist. LEXIS 152668, at *11 (S.D.N.Y. Nov. 9, 2015), *aff'd.*, 674 F. App'x 37 (2d Cir. 2016) (citation omitted).

by an expert report on market efficiency and damages;[10] reviewed approximately half a million pages of documents produced in discovery; responded to discovery requests; prepared for five depositions; and participated in two mediation sessions, as well as additional, intensive settlement discussions. *See* Miller Decl. at §III. Based on the foregoing, Plaintiffs and Lead Counsel were eminently knowledgeable about the strengths and weaknesses of the Action prior to the Settlement. Further, Defendants were represented by highly capable and experienced lawyers from several large, preeminent defense firms, who zealously represented their clients. *See id.* at ¶165. As a result, counsel "had a strong grasp of the strengths and weaknesses of the case when negotiating and evaluating the proposed Settlement…." *NJ Carpenters Health Fund v. Royal Bank of Scotland Grp.*, *PLC*, No. 08-cv-5310, 2019 U.S. Dist. LEXIS 39807, at *15 (S.D.N.Y. Mar. 8, 2019), *aff'd*, 28 F.4th 357 (2d Cir. 2022).[11]

In addition, the Settlement was reached through arm's-length negotiation, which included extensive mediation efforts led by a well-regarded mediator over the course of more than a year. *See supra* at §II; *see also* Miller Decl., Ex. B at 28:23-25 (noting Settlement "is the result of good faith, arms-length negotiations held considerably by an experienced mediator"). The hard fought, arm's-length negotiations and involvement of an experienced mediator "helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Plaintiffs also had the benefit of attorneys who are highly

---

[10] In accordance with the deadline set forth in the Case Management Plan, Plaintiffs filed a motion for class certification on December 1, 2021. *See* ECF No. 227. The Court granted the motion on January 21, 2022, but vacated its order after Pareteum requested an opportunity to respond. *See* ECF Nos. 234, 236.

[11] Indeed, courts have approved settlements where far less, or even no, discovery had taken place. *See*, *e.g.*, *Athale Sinotech Energy Ltd.*, No. 11-cv-05831, 2013 U.S. Dist. LEXIS 199696, at *14-15 (S.D.N.Y. Sept. 4, 2013) (S.D.N.Y. Sep. 4, 2013) (settlement approved without "significant discovery" because investigation during two years of litigation was "sufficient to permit realistic appraisal of the reasonableness of the settlement"); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *18-20 ("formal discovery had just commenced," but "counsel had…reviewed and analyzed Defendants' public statements and SEC filings, interviewed numerous fact witnesses, reviewed thousands of pages of documents obtained [ ] through FOIL requests, and…consulted with a damages expert").

experienced in complex securities litigation and deeply familiar with the legal and factual issues of the case. *See* Miller Decl. at Ex. A (KSF Firm Resumé). Lead Counsel's belief that the Settlement is in the best interest of the Settlement Class (*see id.* at ¶¶85, 116) "is entitled to "great weight." *Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *10 (citation omitted).

### 3.    The Relief Provided to the Class Is Adequate

"This inquiry overlaps significantly with a number of *Grinnell* factors," including (i) complexity, expense, and likely duration of the litigation, (ii) risks of establishing liability and damages, and (iii) risks of maintaining the class. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). In evaluating these factors, the Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116, at *28 (S.D.N.Y. Dec. 8, 2019) (citation omitted).

#### a.    The Complexity, Expense, and Likely Duration of Litigation

"[I]n evaluating the settlement of a securities class action, federal courts…'have long recognized that such litigation is notably difficult and notoriously uncertain.'" *Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *11 (citation omitted); *see also Maley v. Del Glob. Techs. Corp.*, 186 F.Supp. 2d 358, 372 (S.D.N.Y. 2002) ("A securities case such as this one, 'by its very nature, is a complex animal….'") (citation omitted). Plaintiffs had a heavy burden to convince a jury Defendants made material misrepresentations, Defendants acted with scienter (for the Exchange Act claims), and that the artificial inflation in Pareteum securities and subsequent declines in the prices of Pareteum securities were attributable to disclosures of information revealing the fraud. *See Maley*, 186 F. Supp. 2d at 372  (discussing "factual and legal hurdles" in establishing securities fraud case). The complexity of this action was heightened by Pareteum's bankruptcy filing in the middle of litigation. "[T]he courts have repeatedly recognized that a

12

defendant's bankruptcy in securities cases adds substantially to the difficulties and risks facing plaintiff's counsel in achieving a recovery for a class." *Sillerman*, 2019 U.S. Dist. LEXIS 218116, at \*25 (citation omitted); *see also In re Fine Host Corp. Sec. Litig.*, No. 97-cv-2619, 2000 U.S. Dist. LEXIS 19367, at \*15 (D. Conn. Nov. 8, 2000) ("As the court found in approving the settlement, this case involved many complex issues, particularly after [defendant] declared bankruptcy, which threatened the plaintiffs' chances for a successful recovery.").

Continued litigation "likely would have wasted the limited available insurance." *EVCI*, 2007 U.S. Dist. LEXIS 59718, at \*29. Completion of discovery would be lengthy, contentious, and expensive, as it would involve reviewing thousands of additional documents, taking numerous depositions, and resolving disputes about certain Individual Defendants' anticipated assertion of Fifth Amendment privilege. Further, class certification would have been vigorously disputed, and regardless of the outcome, would likely have resulted in a Rule 23(f) petition. In addition, all Parties would have relied on multiple experts to produce reports and testify on complex issues, including loss causation and damages. Assuming Plaintiffs were successful at class certification, Defendants would likely move for summary judgment and, if Plaintiffs succeeded there, they nevertheless would have faced substantial risks at trial, both respect to liability and damages. Moreover, even if Plaintiffs won at trial, "[d]elay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value." *Maley*, 186 F. Supp. 2d at 362; *see also In re Flag Telecom Holdings*, No. 02-cv-3400, 2010 U.S. Dist. LEXIS 119702, at \*44 (S.D.N.Y. Nov. 5, 2010) (noting "substantial" costs and duration of trial, post-trial motions, and appeals).[12]

---

[12] Even very large judgments recovered after lengthy litigation and trial can be lost on appeal or because of post-trial motion practice. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (collecting cases). This is especially true of securities class actions, where intervening shifts in legal

The Settlement provides the Settlement Class with substantial relief *now*, without the delay, risk, and expense of continued litigation, and therefore should be approved. *See*, *e.g.*, *Sillerman*, 2019 U.S. Dist. LEXIS 218116, at \*30 ("In considering the reasonableness of the Settlement, the Court should also consider that the Settlement provides for payment to the Class now, rather than a speculative payment potentially many years down the road.") (citations omitted); *see also Strougo v. Bassini*, 258 F.Supp. 2d 254, 260 (S.D.N.Y. 2003) ("Much of the value of a settlement lies in the ability to make funds available promptly.").

### b.  The Risks of Establishing Liability and Damages

This factor "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). In other words, "[i]n assessing the Settlement the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 U.S. Dist. LEXIS 64218, at \*17 (S.D.N.Y. June 7, 2011) (citation omitted). Courts should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Glob. Crossing*, 225 F.R.D. at 459.

"Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at \*48. While Plaintiffs were successful at the pleadings stage, Defendants vehemently dispute that their alleged statements or omissions were materially false or misleading, and Plaintiffs

---

standards have undermined trial victories. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding $2.46 billion jury verdict after 13 years of litigation on loss causation grounds and error in jury instruction in light of intervening Supreme Court case); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), a*ff'd*, 838 F.3d 223 (2d Cir. 2016) (Supreme Court decision after entry of billion-dollar verdict reduced award to approximately $78 million).

14

expect they would continue to do so at summary judgment and at trial. Squar Milner would also continue to argue its statements were inactionable opinion under *Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S.Ct 1318 (2015). While the Court rejected those arguments at the dismissal stage, further discovery may have strengthened them at summary judgment or trial. There was also a risk the Court could find Plaintiffs lacked standing to assert Section 11 claims against Squar Milner, because of an inability to trace their shares to the registration statements for the Secondary Offering. In fact, Plaintiffs voluntarily dismissed DJSI after being unable marshal sufficient evidence during discovery to establish tracing.[13]

Further, Plaintiffs face a "substantial risk involved in proving scienter, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult." *Athale Sinotech Energy Ltd.*, No. 11-cv-05831, 2013 U.S. Dist. LEXIS 199696, at *16 (S.D.N.Y. Sept. 4, 2013) (citation omitted); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (same). Plaintiffs believed discovery had revealed significant evidence of Defendants' scienter (with respect to the Exchange Act claims), but Defendants no doubt saw things differently. *See* Miller Decl. at ¶109; *see also Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at 46 ("As with falsity, although Plaintiffs uncovered significant evidence that they believe supported a finding of Defendants' scienter, Defendants would have marshalled substantial evidence in opposition."). For example, in *In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865, 2022 U.S. Dist. LEXIS 88609, at *65 (N.D. Cal. Apr. 1, 2022), despite the court granting partial summary judgment in favor of plaintiffs on falsity and scienter, after a three-week trial and only a few hours of deliberations,

---

[13] Plaintiffs could have added Exchange Act Section 10(b) claims against Squar Milner (but not against DJSI).

15

the jury found in favor of Tesla and CEO Elon Musk.[14] Thus, after nearly four-and-a-half years of hard-fought litigation, Tesla investors will likely receive nothing.

Even if Plaintiffs established liability, they faced significant risks in proving loss causation and damages. Establishing loss causation is a "complicated and uncertain process, typically involving conflicting expert opinion[s]." *Glob. Crossing*, 225 F.R.D. at 459; *see also In re Citigroup, Inc.*, 965 F. Supp. 2d 369, 383 (S.D.N.Y. 2013) (highlighting difficulty in proving loss causation). While Plaintiffs are confident they would establish loss causation, Defendants would no doubt argue the alleged misstatements had no price impact and the alleged corrective disclosures were not, in fact, "corrective." *See*, *e.g.*, ECF Nos. 476, 680-2; *see also Vaccaro v. New Source Energy Partners L.P.*, No. 15-cv-8954, 2017 U.S. Dist. LEXIS 205785, at \*16 (S.D.N.Y. Dec. 14, 2017) ("Plaintiffs may have been unable to prove that Defendants' misleading statements were the cause of Plaintiffs' losses"). Further, "[t]he determination of damages, like the determination of liability, is a complicated and uncertain process…." *Maley*, 186 F. Supp. 2d at 365; *see also Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at \*31 (noting various risks to proving damages). If this case proceeded to trial, Plaintiffs would attempt to prove Defendants' alleged misrepresentations artificially inflated the price of Pareteum shares by a certain amount throughout the Class Period, causing losses to Class Members who held their stock through a corrective disclosure. Defendants would argue the amount of inflation, if any at all, was lower. *See*, *e.g.*, ECF No. 476. To resolve these disputed issues, the Parties would have to rely on expert testimony, which would present a "battle of the experts," raising the risk that a jury would be swayed by experts for the Defendants, who "[c]ould minimize the amount of Plaintiffs' losses." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 266, 268 (S.D.N.Y. 2012); *see*

---

[14] *See, e.g.*, Bonnie Eslinger, *Tesla Jury Clears Musk In $12B 'Take Private' Tweet Trial*, Law360, February 3, 2023, https://www.law360.com/articles/1572558/tesla-jury-clears-musk-in-12b-take-private-tweet-trial.

*also In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 118 (S.D.N.Y. 2009) (experts' dispute over loss causation might "limit[] the amount of recovery plaintiffs would receive").

Then, only if Plaintiffs obtained a favorable verdict, a claims process would use the inflation number determined by the jury to calculate damages for each Class Member who submits a valid, timely claim. Plaintiffs' maximum estimated damages number assumes not only that a jury would adopt the maximum inflation for each day of the Class Period, but that every Class Member would submit a timely, valid claim representing each damaged share of Pareteum stock. Thus, achieving Plaintiffs' maximum damages number is far from certain. "When the benefits of the guaranteed recoveries from Defendants are weighed against the risks of continued litigation, approval of the Settlement is warranted." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *29.

### c.    The Risks of Maintaining Class Certification

While Defendants have stipulated to a Settlement Class, in the absence of Settlement, Defendants would have strenuously opposed class certification, and there is a risk the Court could agree with them. Further, "[FRCP] 23(c) authorizes a court to decertify a class at any time." *Adv. Battery*, 298 F.R.D. at 178. Accordingly, the risks and uncertainties of maintaining a class (and for the entire Class Period) supports approval of the Settlement. *See id.*; *see also Bellifemine v. Sanofi- Aventis U.S. LLC*, No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679, at *12 (S.D.N.Y. Aug. 6, 2010) (holding this risk weighed in favor of approval). Indeed, after the Court granted Plaintiff's motion for class certification, Pareteum asked the Court to withdraw its order so that Defendants could complete class certification discovery and submit an opposition brief. *See* ECF No. 50. This indicates that Defendants intended to oppose class certification.

### d.    The Range of Reasonableness of the Settlement Fund

Courts typically analyze the last two *Grinnell* factors together, "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the

17

exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462-63. This "does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119. Further, "that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

The Settlement here is a highly favorable result for the Settlement Class, who will receive $5.65 million in cash plus interest, less Court-awarded fees and expenses. Further, Plaintiffs diligently negotiated with the Individual Defendants for payment of an additional $100,000 toward the anticipated Notice costs. While Plaintiffs do not anticipate that administration of the Settlement will be uniquely difficult, Plaintiffs do, unfortunately, anticipate that the costs of providing notice will be more than in other securities class actions with a shorter class period or lower trading volume.[15] Further, despite the fact that Plaintiffs reached an agreement in principle to settle their claims against Squar Milner on June 23, 2022 (and executed the Squar Milner Stipulation on July 14, 2022), Plaintiffs were unable to reach an agreement to settle with the Individual Defendants until August 15, 2022. *See* ECF No. 267 at 1, 5, 6. Recognizing that providing notice of the Squar Milner settlement alone would be cost-prohibitive, Plaintiffs chose

---

[15] SCS has taken considerable measures to limit its costs. First, it is engaging in an extensive campaign with brokers and nominees to provide Notice to beneficial owners via e-mail. To that end, brokers and nominees will be reimbursed the same amount for providing e-mail addresses as for sending beneficial owners Postcard Notices--$0.03. In addition, instead of printing and mailing a traditional "notice packet" (containing the long-form Notice and Proof of Claim) to those Settlement Class Members for whom it is unable to obtain valid e-mail addresses, SCS has just mailed the Postcard Notice. *See* Miller Decl. at ¶83. SCS will submit a report outlining the implementation of Notice and the claims administration process with Lead Counsel's reply papers on April 18, 2023.

to delay the preliminary approval process until the broader Settlement could be presented to the Court and Notice could be efficiently coordinated.

The Settlement is particularly reasonable when juxtaposed against the significant obstacles that Plaintiffs would need to overcome, as it provides an immediate, tangible, and significant benefit to the Settlement Class now. *See Teachers' Ret. Sys. v. ACLN Ltd.*, No. 01-cv-11814, 2004 U.S. Dist. LEXIS 8608, at *1 (S.D.N.Y. May 14, 2004) ("Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility -- little or no recovery."); *see also Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *30 ("In considering the reasonableness of the Settlement, the Court should also consider that the Settlement provides for payment to the Class now, rather than a speculative payment potentially many years down the road."). Indeed, the Court has already found that, "[g]iven the circumstances of the bankruptcy of Pareteum, and the difficult financial condition, and the ongoing investigations of the individual defendants, the amount of settlement is adequate." Miller Decl., Ex. B at 28:25-29:3.

While the Settlement represents only 2% of the absolute highest recoverable damages as estimated by Plaintiffs' damages expert ($279.1 million), this number is illusory because it "assumes complete victory on both liability and damages as to all class members on every claim asserted against each defendant in the Action." *ACLN*, 2004 U.S. Dist. LEXIS 8608, at *12-13.[16] *See Initial Pub. Offering*, 671 F. Supp. 2d at 483-84 (approving settlement representing approximately 2% of aggregate damages and concluding that "while the proposed settlement is

---

[16] *See also* Catherine Galley, Erin McGlogan & Peirrick Morel, *Approved Claims Rates in Securities Class Actions*, Law360 Expert Analysis (April 10, 2017), https://www.law360.com/articles/911463/approved-claims-rates-in-securities-class-actions ("Aggregate damages estimates are likely to differ from the total amount of approved claims resulting from any judgment in favor of plaintiffs for a number of reasons. As a foundational matter, plaintiff-style aggregate damages estimates assume the plaintiffs prevail on their initial allegations regarding class period and the amount of inflation in the defendant company's shares during the class period.").

being compared – justifiably or not – to the expected recovery amount as calculated by plaintiffs' damages expert, plaintiffs note that the expected recovery is based largely on assumptions, any of which, if wrong, could doom any recovery at all or certainly drastically reduce any recovery even if successful at trial") (internal quotations omitted).

The consultant's estimate that a maximum of 256.4 million shares of Pareteum common stock were damaged throughout the Class Period is similarly academic. Based on the most conservative estimate, however, if claimants were to submit claims for *each* of those 256.4 million potentially damaged shares, they would recover approximately $0.02 per share (before deduction of attorneys' fees and expenses), on average ($5,650,000 / 256,400,000 = $0.022). This assumes both a perfect notice plan and a 100% claims rate, which are, unfortunately, virtually unachievable in securities class action settlements. *See* Jessica Erickson, *Automating Securities Class Action Settlements*, 72 VAND. L. REV. 1817, 1836 (2019) (detailing how the "complicated structure of securities ownership goes a long way toward explaining…the low claims rate[s] in securities class actions"); *In re Celera Corp. Sec. Litig.*, No. 10-cv-02604, 2015 U.S. Dist. LEXIS 42228, at *11 (N.D. Cal. Mar. 31, 2015) (court-appointed claims administrator estimating typical claims rates between 20-30% of all eligible shares).[17] Thus, assuming a claims rate of 30% of *maximum* estimated damaged shares, the average recovery before deduction of fees and expenses is approximately $0.07 per share ($5,650,000 / 76,920,000 = $0.073). Finally, the estimated "average" per share recovery is just that—an estimate of an average--as calculation of each Claimant's Recognized Loss is necessarily individualized and considers when he or she

---

[17] In fact, recent empirical analysis suggests that for "small" securities class action settlements ($20 million and below), "estimated damages are significantly larger than approved claims." Narinder Walia & Adam Werner, *Validating Aggregate Securities Class Damage Estimates*, Law360 Expert Analysis (Feb. 24, 2021), https://www.law360.com/articles/1356593/validating-aggregate-securities-class-damage-estimates. Experts have theorized that because "there is greater institutional ownership in these large companies and institutions are more likely to have systems in place for filing properly documented claims," "damaged investors are more likely to file claims in larger cases than in smaller cases." *Id.*

bought Pareteum common stock, for how much, when he or she sold them, and for how much.

Moreover, given Pareteum's bankruptcy, ongoing government investigations, and rapidly diminishing insurance resources, even if Plaintiffs were able to prevail at all future stages of the litigation on all claims, any victory would be pyrrhic because the Settlement Class likely would recover nothing. These additional risks weigh in favor of approval. *See Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *35 (approving settlement with "serious risk that the Company would be unable to fund the judgment and, perhaps, be forced into bankruptcy"); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("When balanced against the very high risk of complete non-recovery, the settlement [3% of damages] is reasonable."); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *28-29  (approving settlement where company could not satisfy judgment due to poor financial condition and continued litigation would have wasted remaining insurance); *ACLN Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *15-16 (approving settlement "for an amount significantly less than" expected damages where further litigation and defense costs "might have consumed in its entirety the proceeds of the insurance policy, the only meaningful source of recovery"); *Maley*, 186 F.Supp. 2d at 365 (approving settlement providing class with maximum available cash, in light of limited insurance and company's poor cash position and possible imminent bankruptcy: "[G]iven that the Company was and remains in difficult financial straits…the relatively quick settlement provides a certain benefit to the Class and a benefit to the Company and its current shareholders.").[18]

---

[18] At any rate, taking the maximum damages number at face value, the settlement is above the median ratio of settlement to investor losses (1.8%) for securities cases settled in 2022. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (Jan. 24, 2023) at 18, https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--action-litigation--2022-full-.html. Further, as in any securities class action, it is almost certain that less than 100% of eligible Settlement Class Members will file claims (despite efforts to notify as many as possible). Accordingly, the percentage of damages that Settlement Class Members will recover will likely be higher—and could be significantly higher.

### e.     The Proposed Plan of Allocation

The Plan of Allocation, prepared in consultation with an expert economist, is effective, treats all Settlement Class Members equitably, and should be approved. *See infra* at §III.C.

### f.     The Proposed Fee Award

The accompanying Motion for Attorneys' Fees demonstrates that Lead Counsel's request for 30% of the Settlement Fund is fair and reasonable.

### g.     The Supplemental Agreement

The Supplemental Agreement allows Defendants to terminate the Settlement if Settlement Class Members with a certain aggregate number of shares who meet certain criteria exclude themselves. *See* ECF No. 273 at ¶33. The specific terms of the Agreement are confidential to protect the Settlement Class and "avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement." *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-cv-6716, 2022 U.S. Dist. LEXIS 11427, at *34-35 (E.D.N.Y. Jan. 21, 2022); *see also Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *54 (endorsing this "standard" agreement).[19]

### h.     The Remaining *Grinnell* Factors Confirm the Settlement Is Fair
#### i.     Defendants' Ability to Withstand a Greater Judgment

The Individual Defendants could not have withstood a greater judgment, as Pareteum could not indemnify them by virtue of the bankruptcy proceeding, multiple governmental investigations are underway, there are very limited remaining insurance proceeds to cover Plaintiffs' claims (which are just one of multiple lawsuits and investigations drawing on the same policies), and it is Plaintiffs' understanding after investigation that the Individual Defendants could not contribute meaningfully to any judgment. *See Sillerman*, 2019 U.S. Dist. LEXIS

---

[19] At the preliminary approval hearing, the Court reviewed the Supplemental Agreement and stated that the opt-out threshold was a "reasonable number." Miller Decl., Ex. B at 19:9-20:5.

218116, at *27 (that D&O insurance policies were a wasting asset, several defendants were in bankruptcy, and opt-out plaintiffs had to be paid from same insurance, weighed in favor of approval); *Maley*, 186 F. Supp. 2d at 365 (in view of defendant's "dire financial condition" and wasting of insurance, "obtaining a greater recovery than provided by the Settlement would have been difficult"); *ACLN* 2004 U.S. Dist. LEXIS 8608, at *12-13 (approving settlement where "overriding consideration driving the settlement negotiations was the inability of the Settling Defendants to contribute in any meaningful way to a recovery by the Class. The Company was defunct and the individual settling defendants did not have any meaningful resources to satisfy a judgment," and "the only meaningful source of recovery, the insurance policy, would in all likelihood have been substantially reduced or exhausted" by further litigation).[20]

ii.       The Reaction of the Settlement Class

The reaction of the Settlement Class is a factor to weigh when considering the adequacy of the Settlement *See*, *e.g.*, *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132, 2014 US. Dist. LEXIS 64517, at *15 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). To date, only one valid exclusion request and no objections have been received. *See* Miller Decl. at ¶¶124-25. "The overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *86.

**B.    The Court Should Finally Certify the Settlement Class**

The Court's Preliminary Approval Order certified the Settlement Class for settlement purposes only. *See* ECF No. 275 at ¶3. There have been no changes to alter the propriety of this. Thus, Plaintiffs respectfully request that the Court affirm its determinations and finally certify

---

[20] Even if Squar Milner could withstand a greater judgment, "this would not be an impediment to settlement when [as here] the other factors favor the settlement." *Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *24 (citation omitted).

23

the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3).

### C.      The Plan of Allocation Should Be Approved

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at \*32 (citation omitted). This does not mean that the plan must be "perfect"; rather, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (citation omitted).

The proposed Plan of Allocation was developed by Lead Counsel after consultation with an expert economist. *See* Miller Decl. at ¶129. A Recognized Loss will be calculated for each purchase or acquisition of Pareteum common stock during the Class Period listed on the Claim Form for which adequate documentation is provided. Recognized Loss is based on the difference between estimated alleged artificial inflation on the purchase date and the estimated alleged artificial inflation on the sale date. *See id.* at ¶¶131-36. A Claimant's Recognized Claim is the sum of his or her Recognized Loss amounts, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of Recognized Claims. *See id.* at ¶138. Because the Proposed Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Pareteum common stock attributable to the conduct alleged, it should be approved as fair and reasonable. Moreover, the Plan of Allocation is set forth in detail in the Notice and no objections have yet been received (*see id.* at ¶141), which also weighs in favor of approval. *See Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at \*64.

### D.      The Notice Complied with Rule 23, the PSLRA, and Due Process

The Court-approved notice included all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action

24

and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought; (vii) how to opt-out of the Settlement Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; and (ix) the binding effect of a judgment. *See* ECF No. 273 at Ex. A-1; *see also Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *43. It also apprised Settlement Class Members about the final approval hearing, as did the Court's PACER entry and the Settlement website.

SCS, a nationally recognized claims administrator, is carrying out the Notice program under Lead Counsel's supervision. As the Court ordered, as of January 19, 2023, the Postcard Notice has been mailed to 3,260 potential Settlement Class Members. *See* ECF No. 278 at ¶7. The Summary Notice was also published twice on January 10, 2023 (in *GlobeNewswire* and *PR Newswire*), directing potential Settlement Class Members to the Settlement website, which contains the Notice, Claim Form, Preliminary Approval Order, and other documents. *See id.* at ¶¶9, 11. The website is accessible 24 hours a day, seven days a week, and allows potential Settlement Class Members to submit their claim online. *See id.* at ¶11. SCS also maintains a toll-free telephone number to answer questions from Settlement Class Members. *See id.* at ¶10. This combination of individual first-class mail and/or email notice, supplemented by publication and posted online, was "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) (citing FED. R. CIV. P. 23(c)(2)); *see also Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *4.

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court finally approve the Settlement and Plan of Allocation.

DATED: March 24, 2023                              Respectfully submitted,

                                                   **KAHN SWICK & FOTI, LLC**

                                                   */s/ Kim E. Miller*
                                                   Kim E. Miller (KM-6996)
                                                   J. Ryan Lopatka (admitted *pro hac vice*)
                                                   250 Park Ave., 7th Floor
                                                   New York, NY 10177
                                                   Telephone: (212) 696-3730
                                                   Facsimile: (504) 455-1498
                                                   Kim.Miller@ksfcounsel.com
                                                   J.Lopatka@ksfcounsel.com

                                                   -and-

                                                   Melissa H. Harris (MH-3553)
                                                   1100 Poydras Street, Suite 3200
                                                   New Orleans, LA 70163
                                                   Phone: (504) 455-1400
                                                   Facsimile: (504) 455-1498
                                                   melissa.harris@ksfcounsel.com

                                                   *Lead Counsel for Lead Plaintiff Pareteum
                                                   Shareholder Investor Group and the
                                                   Settlement Class*

## CERTIFICATE OF SERVICE

On March 24, 2023, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                   */s/ Kim E. Miller*
                                                   Kim E. Miller

26