**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PARETEUM SECURITIES LITIGATION | Case No. 1:19-cv-09767-AKH-GWG |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION**
**<u>FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES</u>**

**TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   INTRODUCTION ..................................................................................................... 1

II.  ARGUMENT............................................................................................................ 3

   A.  Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
       from the Common Fund.................................................................................... 3

   B.  The Court Should Award a Reasonable Percentage of the Common Fund ........................ 4

   C.  Analysis of the Relevant Factors Confirms the Requested Fee
       is Reasonable .................................................................................................. 5

       1.  Time and Labor Expended by Lead Counsel.................................................. 5

       2.  The Magnitude, Complexity, and Risk of Litigation ..................................... 8

       3.  The Parties Were Represented by Experienced,
           High-Caliber Counsel .............................................................................. 13

       4.  The Requested Fee in Relation to the Settlement Is Fair, Reasonable,
           and Wholly Consistent with Case Law ....................................................... 15

       5.  Public Policy Considerations Support the Requested Fee Award ............................. 17

       6.  A Lodestar Cross-Check Confirms That the Requested
           Attorneys' Fees Are Reasonable................................................................. 18

   D.  Plaintiffs' Counsel Should Be Reimbursed for $422,214.12 in Expenses ...................... 22

III. CONCLUSION........................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .................................................................................................................... 17

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .................................................................................................. 13

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ....................................................................................................... 13

*Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*,
No. 96-cv-0583, 2002 U.S. Dist. LEXIS 10732 (S.D.N.Y. June 14, 2002) ............................. 18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ............................................................................................................... 3, 17

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679 (S.D.N.Y. Aug. 6, 2010) ................................ 5

*Belton v. GE Capital Consumer Lending*,
No. 21-cv-9492 (S.D.N.Y. Feb. 10, 2022) .............................................................................. 21

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ...................................................................................................... 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................................... 3

*Burns v. Falconstor Software, Inc.*,
No. 10-cv-4632, 2014 U.S. Dist. LEXIS 203061 (E.D.N.Y. Apr. 10, 2014) ........................... 20

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
No. 17-cv-10014, 2020 U.S. Dist. LEXIS 237595 (S.D.N.Y. Dec. 17, 2020) ......................... 17

*City of Providence v. Aéropostale*,
No. 11-cv-7132, 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ..... 3, 9, 16, 17, 19, 20

*Clem v. KeyBank, N.A.*,
No. 13-cv-789, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) ............................... 20

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................................................... 18

*Fishoff v. Coty Inc.*,
No. 09-cv-0628, 2010 U.S. Dist. LEXIS 6242 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647
(2d Cir. 2011) ............................................................................................................................ 10

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ........................... 23

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) ...................................................... 13

*Guevoura Fund Ltd. v. Sillerman*,
  No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116
  (S.D.N.Y. Dec. 18, 2019) ................................................................. 6, 9, 16, 17, 18, 19

*Hicks v. Morgan Stanley & Co.*,
  No. 01-cv-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct 24, 2005) ............................. 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ................................................................... 13

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  No. 03-cv-5755, 2006 U.S. Dist. LEXIS 84621 (S.D.N.Y. Nov. 16, 2006) ............................. 14

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................... 8

*In re AOL Time Warner, Inc.*,
  No. 02-cv-5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ............................... 9

*In re Apple Computer Sec. Litig.*,
  No. 84-cv-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ........................... 13

*In re Bank of New York Mellon ADR FX Litig.*,
  No. 16-cv-00212 (S.D.N.Y. June 17, 2019) ......................................................... 20

*In re Bear Stearns Cos, Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012 ........................................................... 11, 19

*In re BHP Billiton Secs. Litig.*,
  No. 16-cv-1445 (S.D.N.Y. Apr. 10, 2019) ....................................................... 16, 20

*In re Bisys Sec. Litig.*,
  No. 04-cv-3840, 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 11, 2007) .............................. 20

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005) ............................................................... 5

*In re Buspirone Antitrust Litig.*,
  No. 01-md-1413 (S.D.N.Y. Apr. 17, 2003) .......................................................... 16

*In re Chi. Bridge & Iron Co. N.V. Secs. Litig.*,
  No. 17-cv-1580 (S.D.N.Y. Aug. 5, 2022) ........................................................... 21

*In re Comverse Tech., Inc.*,
  No. 06-cv-1825, 2010 U.S. Dist. LEXIS 63342 (E.D.N.Y. June 23, 2010) ............................. 19

*In re Dairy Farmers of Am., Inc. Cheese Litig.*,
  80 F.Supp. 2d 838 (N.D. Ill. 2015) ............................................................... 12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .............................. 4

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  No. 12-md-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ............................... 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) ..... 11, 14, 19, 23, 24

*In re Frontier Commc'ns Corp. Stockholders Litig.*,
No. 17-cv-01617, 2022 U.S. Dist. LEXIS 163432 (D. Conn. May 20, 2022)........................... 23

*In re Genworth Fin., Inc. Sec. Litig.*,
No. 14-cv-2392 (S.D.N.Y. Nov. 16, 2017)......................................................... 16, 19

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................... 16, 20

*In re GSE Bonds Antitrust Litig.*,
No. 19-cv-1704, 2020 U.S. Dist. LEXIS 104842 (S.D.N.Y. June 16, 2020) ........................... 21

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175
(S.D.N.Y. Dec. 19, 2014) ...................................................... 3, 4, 9, 10, 11, 14, 16, 18, 20, 21

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................................... 19

*In re Interpublic Sec. Litig.*,
No. 02-cv-6527, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004)............................... 4

*In re JP Morgan Precious Metals Spoofing Litig.*,
No. 18-cv-10356 (S.D.N.Y. July 7, 2022).............................................................. 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ..................... 13, 15

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................... 13, 15, 20, 22

*In re PPDAI Grp. Inc. Sec. Litig.*,
No. 18-cv-6716, 2022 U.S. Dist. LEXIS 11427 (E.D.N.Y. Jan. 21, 2022) ........................ 16, 19

*In re Priceline.com, Inc. Sec. Litig.*,
No. 00-cv-1884, 2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007) ............................ 17

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997)....................................................................... 8

*In re Qudian Sec. Litig.*,
No. 17-cv-09741, 2021 U.S. Dist. LEXIS 109258 (S.D.N.Y. June 8, 2021) ..................... 16, 19

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)............................................................................. 18

*In re Sumitomo Copper Litig.*,
74 F.Supp.2d 393 (S.D.N.Y. 1999)...................................................................... 13

*In re Telik Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. Sept. 10, 2008) ........................................................ 14

*In re Tesla, Inc. Sec. Litig.*,
No. 18-cv-04865, 2022 U.S. Dist. LEXIS 88609 (N.D. Cal. Apr. 1, 2022)............................. 10

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................................... 4

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .......................................................................... 9

*Johnson v. Brennan*,
   No. 10-cv-4712, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) .......................... 18

*Lea v. Tal Educ. Grp.*,
   No. 18-cv-5480, 2021 U.S. Dist. LEXIS 229314 (S.D.N.Y. Nov. 30, 2021) ........................... 20

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................. 3, 9, 12

*Matter of Cont'l Illinois Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..................................................................................... 8

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .......................................................................... 12

*Merryman v. Citigroup Inc.*,
   No. 15-cv-9185 (S.D.N.Y. July 3, 2019) ..................................................................... 20

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   135 S.Ct. 1318 (2015) ............................................................................................ 10

*Pearlstein v. Blackberry*, No. 13 Civ. 7060 (S.D.N.Y. Sept. 29, 2022) ...................................... 21

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................................ 13

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999) .................................................................................... 18

*Silverstein v. Alliance Bernstein, L.P.*,
   No. 09-cv-5904, 2013 U.S. Dist. LEXIS 179734 (S.D.N.Y. Dec. 20, 2013) ........................... 15

*Wal-Mart Stores, Inc. v. Visa USA Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................... 4

*Wilson v. LSB Indus.*,
   No. 15-cv-07614, 2019 U.S. Dist. LEXIS 133895 (S.D.N.Y. June 28, 2019) ............. 14, 16, 19

**Other Authorities**

Bonnie Eslinger,
   *Tesla Jury Clears Musk In $12B 'Take Private' Tweet Trial*,
   Law360 (Feb. 3, 2023) ............................................................................................ 10

NERA Economic Consulting,
   *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
   (Jan. 24, 2023) ............................................................................................. 9, 14, 16

Lead Counsel respectfully submits this memorandum in support of its motion for: (i) an award of attorneys' fees of 30% of the Settlement Fund ($1.695 million)[1] plus accrued interest; and (ii) reimbursement of necessary and reasonable litigation expenses of $422,214.12, plus accrued interest.

## I.    INTRODUCTION

The proposed Settlement, which provides for an all-cash payment of $5.65 million to the Settlement Class,[2] as well as an additional $100,000 from the Individual Defendants toward the costs of Notice, in exchange for resolution of all claims against the Settling Defendants,[3] is a very favorable result achieved by Plaintiffs and Lead Counsel. In light of Pareteum's bankruptcy (which was commenced in the middle of discovery and parallel settlement negotiations), ongoing governmental investigations against some or all of the Individual Defendants, and Defendants' rapidly-depleting insurance proceeds, as well as the challenges to establishing liability, scienter, loss causation, and damages inherent in a complex securities fraud class action such as this one, Plaintiffs faced the very real risk of never recovering anything at all.

Despite all these risks, Lead Counsel tirelessly litigated this case, spending more than

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Amended Stipulation and Agreement of Settlement between Plaintiffs and the Individual Defendants effective Oct. 25, 2022 (ECF No. 273) and (b) the Amended Stipulation and Agreement of Settlement between Plaintiffs and Squar Milner effective Oct. 25, 2022 (ECF No. 274).

[2] The Individual Defendants have paid $5.25 million (plus an additional $100,000 toward Notice costs), and Squar Milner has paid $400,000. *See* Miller Decl. at ¶ 80. The Settlement also resolves the claims in *Loskot v. Pareteum Corp.*, No. 20-02279 (Cal. Super. Ct., San Mateo Cnty.) (the "*Loskot* Action"). As disclosed in the Notice, any attorneys' fee award for Counsel for Loskot will be determined by a mediator, subject to appeal to this Court, with 70% of any such fees to be paid out of Lead Counsel's fee award in this Action, and 30% to be paid by Sabby Volatility Warrant Master Fund, Ltd. (the "Sabby Plaintiff"), the plaintiff in the individual action pending in this Court that will be dismissed contingent upon final approval of the Settlement, *Sabby Volatility Warrant Master Fund, Ltd. v. Pareteum Corp.*, No. 19-cv-10460 (S.D.N.Y.). (the "*Sabby* Action"). *See* ECF No. 273-2 at 5. This issue is fully briefed and pending before the Mediator. Plaintiffs note that the Settlement Fund here does not include the separate settlement consideration for the settlements between Plaintiff Sabby and the Individual Defendants and Plaintiff Sabby and Squar Milner.

[3] "Settling Defendants" are the Individual Defendants in this Action, Victor Bozzo, Denis McCarthy, Edward O'Donnell, Robert H. Turner, and Squar Milner, LLP, as well as Robert Lippert and Luis Jimenez-Tuñon, former defendants in this Action.

4,700 hours on behalf of the Settlement Class, all on a fully contingent basis with no guarantee of ever being paid. *See* Declaration of Kim E. Miller ("Miller Declaration") filed herewith, at ¶ 171.[4] Lead Counsel respectfully seeks an award of attorneys' fees of 30% of the Settlement Fund, or $1.695 million, plus interest. The requested award – which represents a **negative** lodestar multiplier of approximately 0.47 before any payment to Counsel for Loskot (*id.*) – is more than reasonable in light of Lead Counsel's significant efforts and the substantial benefits conferred upon the Settlement Class and is well within the range regularly approved by courts in similar securities and other common fund cases.

In addition, Lead Counsel respectfully requests reimbursement of $422,214.12, plus interest, for its reasonable, out-of-pocket expenses.[5] *See id.* at ¶ 176. A large portion of the expenses are for Plaintiffs' bankruptcy counsel, whose assistance was crucial to navigating the complex issues in Pareteum's bankruptcy proceeding – including, most importantly, obtaining the Comfort Order that was a prerequisite for the Settlement. The remainder of the expenses, which were for investigators, experts, a discovery platform, and other routine litigation expenses, were necessary to prosecute this Action and to resolve the claims in a beneficial manner for the Settlement Class and are the type of expenses that are regularly approved by courts within this

---

[4] The Miller Declaration and its exhibits are integral to this submission. For the sake of brevity, Lead Counsel respectfully refers the Court to the Miller Declaration for a detailed description of, *inter alia*, the factual background and procedural history of the Action, the mediation and negotiations leading to the Settlement, the risks and uncertainties of continued litigation, and the fairness and reasonableness of the Settlement, and Lead Counsel's request for an award of attorneys' fees and expense, and the terms of the Plan of Allocation.

[5] Counsel for Loskot reviewed and approved the Notice prepared by Lead Counsel that was issued to the Settlement Class, including the expense cap of $425,000. Counsel for Loskot did not inform Lead Counsel at that time that it had any reimbursable expenses. In the course of addressing the Loskot fee issue with the mediator, after the Court-approved Notice was issued, Counsel for Loskot mentioned for the first time that it had expenses of "approximately $12,000." While Lead Counsel has received no breakdown of these expenses from Counsel for Loskot, subject to Court approval, Plaintiffs do not object to a reimbursement of reasonable expenses to Counsel for Loskot in the amount of $2,785.88 (the difference between Lead Counsel's reasonable expenses of $422,214.12 and the noticed cap). *See* Miller Decl. at 6 n.4.

2

Circuit. Moreover, no objections have yet been received to Lead Counsel's expense request.[6]
*See* Miller Decl. at ¶ 125.

## II. **ARGUMENT**

### A. **Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund**

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See City of Providence v. Aéropostale*, No. 11-cv-7132, 2014 U.S. Dist. LEXIS 64517, at *30 (S.D.N.Y. May 9, 2014) (citing *Goldberger*, 209 F.3d at 47). In addition, fair attorneys' fee awards from a common fund encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and discourages future alleged misconduct of a similar nature. *See*, *e.g.*, *id.* at *30-31; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Further, the Supreme Court has noted that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted). Consistent with that view, "[w]here 'an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class, as…in a securities class action litigation, the attorney is entitled to the reasonable value of the services performed in creating that class recovery, as set by the court.'" *In re Hi-Crush*

---

[6] The deadline for exclusions and objections to the Settlement is April 3, 2023. Lead Counsel will supplement this submission in its reply on April 18, 2013, in accordance with the Court's Order. *See* ECF No. 275.

*Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175, at *30 (S.D.N.Y. Dec. 19, 2014) (citation omitted).

The "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, No. 02-cv-6527, 2004 U.S. Dist. LEXIS 21429, at *31 (S.D.N.Y. Oct. 26, 2004). As discussed below, the requested attorneys' fee of 30% of the Settlement Fund ($1.695 million) is eminently reasonable in light of the high caliber of work performed and the successful result achieved for the Settlement Class, as confirmed by a lodestar cross-check.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

The Supreme Court has held that where, as here, counsel has created a common fund, attorneys' fees are properly determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,'…a reasonable fee is based on a percentage of the fund bestowed on the class…."). The Second Circuit has approved this method (*see Goldberger*, 209 F.3d at 48-49), and "[t]he trend among district courts in the Second Circuit is to award fees using the percentage method," which is "consistent with national precedent." *Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *30-31 (citations omitted). Further, "the text of the PSLRA also contemplates using the percentage method, as it provides that '[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount' recovered for the class." *Id.* at *31 (citations omitted).[7] The percentage method does not, however, render the lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the

---

[7] *See also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at *46 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (quoting *Goldberger*, 209 F.3d at 50).

In sum, given the language of the PSLRA, the Supreme Court's strong support for the percentage method, the Second Circuit's explicit approval of this method in *Goldberger*, and the established practice among the courts within this Circuit, Lead Counsel submits that fees should be awarded based on the percentage approach, with a lodestar cross-check. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679, at *18-19 (S.D.N.Y. Aug. 6, 2010) (applying lodestar "cross-check"); *Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071, 2005 U.S. Dist. LEXIS 24890, at *23-24 (S.D.N.Y. Oct 24, 2005) (same).

### C.    Analysis of the Relevant Factors Confirms the Requested Fee is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage of-the-fund method or the lodestar approach, it should consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) time and labor expended by counsel; (ii) risks of the litigation; (iii) magnitude and complexity of the litigation; (iv) requested fee in relation to the settlement; (v) quality of representation; and (vi) public policy considerations. *See* 209 F.3d at 50. An analysis of these factors – as confirmed by Lead Counsel's negative lodestar multiplier – demonstrates that Lead Counsel's requested fee of 30% of the Settlement Fund, or $1,695,000, plus accrued interest, is eminently fair and reasonable.

### 1.    Time and Labor Expended by Lead Counsel

Lead Counsel has expended a substantial amount of time and effort pursuing this complex litigation on behalf of the Settlement Class, in the face of a vigorous and top-notch

defense by multiple large and prestigious defense firms. Since its inception, Lead Counsel has devoted more than 4,700 hours to this litigation for a total lodestar of $3,614,435.00. *See* Miller Decl. at ¶ 150. This figure excludes hundreds of additional attorney hours that were cut by Lead Counsel, in its discretion and judgment, to maximize efficiency. *See id.* at ¶ 152. Specifically, Lead Counsel cut more than 300 hours of attorney time spent on such tasks as researching, drafting and editing the AC, preparing for and engaging in lengthy and extensive informal negotiations, working with bankruptcy counsel, and time spent after preliminary approval was granted. *See id.*

As discussed more fully in the Miller Declaration, Lead Counsel extensively investigated Plaintiffs' claims, researched and drafted two amended complaints, briefed oppositions to two rounds of multiple motions to dismiss, presented oral argument in opposition to Defendants' second round of motions to dismiss, filed a motion for class certification (which included the submission of an expert report on market efficiency and damages), reviewed and analyzed nearly half a million pages of documents produced by Defendants, prepared for five depositions, consulted with an expert on damages, and engaged in extensive and complex settlement negotiations over the course of more than a year.

In the midst of settlement negotiations that were proceeding on a parallel track with discovery (which was scheduled to end on September 30, 2022), Pareteum filed for bankruptcy protection on May 15, 2022. This substantially complicated matters and increased expenses for Lead Counsel. The bankruptcy filing resulted in an automatic stay of litigation against Pareteum and shifted the focus of litigation and settlement discussions from Pareteum to the Individual Defendants. At the same time, Plaintiffs had to retain bankruptcy counsel to help navigate the complex issues of the bankruptcy proceeding and its effect on this Action. "Due to limited

financial resources, including due to [defendant] being in bankruptcy and the wasting D&O insurance policies that had to pay for the global settlement, reaching a settlement that would ensure a benefit to the Class required significant time, effort and ingenuity on behalf of all the parties." *Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-7192, 2019 U.S. Dist. LEXIS 218116, at *50 (S.D.N.Y. Dec. 18, 2019).

Despite these difficulties, Lead Counsel was persistent, engaging in extensive negotiations – both with and without the assistance of the mediator – and was ultimately able to negotiate a $5.25 million cash payment from the Individual Defendants, as well as an additional benefit to the Settlement Class of $100,000 from the Individual Defendants towards Notice costs. Lead Counsel was also able to settle informally with Squar Milner, without the assistance of the mediator, securing an additional $400,000 for the Settlement Class. And Lead Counsel managed to negotiate an agreement that included Plaintiff Sabby and Plaintiff Loskot, without which Defendants were not willing to settle.[8] Throughout the litigation, Lead Counsel's efforts focused on advancing the Action to bring about the most successful outcome for the Settlement Class by the most efficient means possible. The time and effort devoted to this case by Lead Counsel to obtain the $5.65 million recovery, plus the additional $100,000 from the Individual Defendants towards Notice costs, confirms that the request for 30% of the Settlement Fund is reasonable.

Moreover, Lead Counsel's work will not end with the Court's approval of the Settlement. Lead Counsel will necessarily expend many additional hours and resources assisting Settlement Class Members with Proofs of Claim, shepherding the claims process, and responding to Settlement Class Member inquiries – work for which no additional compensation will be sought. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-md-2389, 2015 U.S. Dist. LEXIS

---

[8] The settlement agreements between Plaintiff Sabby and the Individual Defendants and Plaintiff Sabby and Squar Milner are contingent upon approval of the Settlement here. *See* Miller Decl. at 3 n.2.

152668, at \*27 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

### 2. The Magnitude, Complexity, and Risk of Litigation

In the Second Circuit, "the risk of success" is "perhaps the foremost factor to be considered in determining" a reasonable award. *Goldberger*, 209 F.3d at 54. Indeed, courts within the Second Circuit have long recognized that the risk of non-payment associated with a contingency arrangement is an important factor in determining an appropriate fee award. Thus, it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001); *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This encompasses not just the risk of non-payment, but also the risk of underpayment. *See Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing fee award where court failed to account for, among other things, risk of underpayment to counsel).

Lead Counsel undertook this Action on a wholly contingent-fee basis, with no guarantee of ever being compensated for the investment of time and money that the Action would require. *See* Miller Decl. at ¶ 159. Lead Counsel steadfastly pursued the claims on behalf of the Settlement Class, dedicating substantial attorney and professional resources to this effort. Lead Counsel also advanced over $422,000 dollars in out-of-pocket expenses with no guarantee that those expenses would ever be reimbursed. *See id.* at ¶ 176. Unlike Defendants' counsel, who are

paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began and would have received no compensation or expenses had this case not been successful. *See id.* at ¶¶ 159, 161, 178.[9]

"[S]ecurities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at *14; *see also In re AOL Time Warner, Inc.*, No. 02-cv-5575, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."); *Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *40-41 (discussing "inherently complex Exchange Act issues" regarding, *inter alia*, materiality, scienter, and loss causation). The complexity (and expense) of this litigation was heightened by Pareteum's bankruptcy proceeding, which was commenced in May 2022, while the Parties were in the middle of discovery, as well as parallel settlement discussions. *See Guevoura Fund Ltd. v. Sillerman*, No. 15-cv-07192, 2019 U.S. Dist. LEXIS 218116, at *58 (S.D.N.Y. Dec. 18, 2019) (citations omitted) (considering bankruptcy issues as part of complexity supporting 30% fee request); *Maley*, 186 F. Supp. 2d at 372 (discussing "factual difficulties of a possible bankruptcy" for the award of attorneys' fees; one-third awarded).

The initial hurdle Plaintiffs faced was at the pleading stage, where the majority of

---

[9] Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

motions to dismiss are granted.[10] While Plaintiffs were able to defeat Defendants' motions to dismiss in their entirety, there was no assurance of success at any later stages. Indeed, had this case not settled, Plaintiffs would face – at every future stage of the litigation – complex legal and factual issues vehemently disputed by Defendants. Squar Milner would also likely continue to argue that its statements were protected opinion under *Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S.Ct. 1318 (2015).

Further, with respect to the Exchange Act claims, Defendants are adamant they had no intent to deceive and would have continued to argue that, even if Plaintiffs could establish a material misstatement or omission, there was no evidence upon which the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness—could be proven.[11] The scienter requirement "is often the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09-cv-0628, 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *see also Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *43-44 (discussing difficulty in proving scienter and noting "considerable risk…that [Plaintiffs] would not be able to convince a jury to accept [their] theory over Defendants' competing narrative"). This risk was borne out recently in *In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865, 2022 U.S. Dist. LEXIS 88609, at *65 (N.D. Cal. Apr. 1, 2022), where – despite the court granting partial summary judgment in favor of plaintiffs on falsity and scienter grounds) – after a three-week trial and only a few hours of deliberations, the jury found in favor

---

[10] Motions to dismiss were filed in 96% of securities class actions that were filed and resolved between 2013 and 2022. 73% of filed motions to dismiss were decided by the court. Of those, just 20% were denied in full, with an additional 19% denied in part and granted in part. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 11 (Jan. 24, 2023), https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--action-litigation--2022-full-.html.
[11] *See*, *e.g.*, ECF No. 176 at 7-9 (Indiv. Defs.' motion to dismiss).

of Tesla and CEO Elon Musk.[12] Thus, after nearly four-and-a-half years of hard-fought litigation, Tesla investors will likely receive nothing.

Plaintiffs also faced significant standing issues with respect to their Securities Act claims. At the dismissal stage, Defendant Squar Milner and former Defendant Dawson James Securities Inc. ("DJSI") vigorously argued that Plaintiffs lacked statutory standing to assert Securities Act claims based on the Secondary Offering, as they could not trace their shares to the pertinent registration statement. While the Court found that Plaintiffs had met the relatively low pleading standard for tracing, there was a serious risk that further discovery would fail to corroborate Plaintiffs' allegations. This risk, in fact, materialized with respect to DJSI. After conducting expedited, targeted discovery on tracing pursuant to the Case Management Plan (ECF No. 222), Plaintiffs concluded that they had no viable path to establish tracing with respect to DJSI so they agreed to voluntarily dismiss it from the Action.

Another considerable risk is whether Plaintiffs could ultimately prove, in the face of vigorous opposition, that the Settlement Class was damaged by the alleged misrepresentations and the amount of those damages. At trial, this would come down to a "battle of experts," the outcome of which is never predictable. *See In re Bear Stearns Cos, Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267-68 (S.D.N.Y. 2012) (noting that in a battle of the experts, "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses"); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 U.S. Dist. LEXIS 119702, at *54 (S.D.N.Y. Nov. 8, 2010) ("The jury's verdict…would…depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable."). There existed the very real possibility

---

[12] *See, e.g.*, Bonnie Eslinger, *Tesla Jury Clears Musk In \$12B 'Take Private' Tweet Trial*, Law360, Feb. 3, 2023, https://www.law360.com/articles/1572558/tesla-jury-clears-musk-in-12b-take-private-tweet-trial.

11

that a jury could be swayed by experts for Defendants to minimize the Settlement Class's losses or to conclude that those losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained very possibly could have been only a fraction of the damages claimed. *See Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *44 ("Defendants raised arguments in opposition to Lead Plaintiffs' loss causation and damages theories, which created additional risk that in the absence of a settlement, the Class's recovery would have been commensurately smaller, or nonexistent.").

Defendants also would vigorously oppose class certification and argue that any Class Period should be substantially shortened. Defendants would also likely submit an expert report challenging price impact, as well as potentially challenging market efficiency. *See* Miller Decl. at ¶ 100. If Defendants were to prevail on any of these arguments, Plaintiffs' recovery would be reduced, if not eliminated entirely. Indeed, after the Court granted Plaintiff's motion for class certification, Pareteum asked the Court to withdraw its order so that Defendants could complete class certification discovery and submit an opposition brief. *See* ECF No. 50. This indicates that Defendants intended to oppose class certification.

Lead Counsel confronted all of these risks on its own, without the benefit of any governmental roadmap. "One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *In re Dairy Farmers of Am., Inc. Cheese Litig.*, 80 F.Supp. 2d 838, 848 (N.D. Ill. 2015). "This inquiry provides insight into whether class counsel benefited from the work of others, which acts as a red flag for judges in assessing fee petitions." *Id.* In the instant case, no civil or criminal charges had been filed by any governmental agency prior to the filing of the FAC; indeed, the SEC charges against Pareteum were not filed until September 2, 2021 (*see* Miller Decl. at ¶ 32)

-- after the Court had already denied Defendants' motions to dismiss the FAC. Thus, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015). *See Maley*, 186 F. Supp. 2d at 371 (awarding one-third of settlement fund and noting that "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action related to [defendant]"); *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 395 (S.D.N.Y. 1999) (awarding 2.5 multiplier and noting "[t]here was no governmental assist to ease the task with which Petitioners was confronted").

Finally, even if Plaintiffs overcame all these significant risks, achieved class certification, and then prevailed first at summary judgment and then at trial, this would be a pyrrhic victory because Defendants' insurance would be long gone, having been wasted by the litigation, and Plaintiffs would be unable to collect on the judgment.[13] *See* Miller Decl., Ex. B (Tr. of Prelim. Approval Hrg.) at 29:9-13 ("And since the insurance policy provided that the payments made to the insureds…reduced the face amount of the insurance coverage, there would be a very substantial risk of continuing the litigation would reduce the available funds for recovery.").

### 3. The Parties Were Represented by Experienced, High-Caliber Counsel

The fourth *Goldberger* factor, "quality of representation," involves a review of the

---

[13] Moreover, even successful verdicts for plaintiffs may be overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 413 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (verdict vacated and remanded for new trial on loss causation issues); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 730 (11th Cir. 2012) (affirming judgment as a matter of law on loss causation following verdict for plaintiffs); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) ($81 million jury verdict reversed on loss causation grounds); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' jury verdict in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. No. 84-cv-20148, 1991 U.S. Dist. LEXIS 15608, at *2-3 (N.D. Cal. Sept. 6, 1991) (vacating judgment for plaintiffs on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (reversing substantial jury verdict and dismissing case after 11 years); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

recovery obtained and the backgrounds of the lawyers involved in the lawsuit.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144, 2009 U.S. Dist. LEXIS 120953, at *55-56 (S.D.N.Y. Dec. 23, 2009).

Lead Counsel has extensive experience successfully prosecuting class actions in the specialized field of securities litigation, which it leveraged to achieve the excellent result here. *See* Miller Decl. at Ex. A (KSF Firm Resumé); *see also In re Telik Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 588-89 (S.D.N.Y. Sept. 10, 2008) (because "Lead Counsel are highly experienced in prosecuting complex securities class action cases," they "were presumably able to perform the various tasks necessary to advance Plaintiffs' and the Class' interests in a more efficient manner than would have counsel with a lesser degree of specialization in the field") (citation omitted). Despite the significant risks to recovery in this Action, and the complicating factors of Pareteum's bankruptcy and the dwindling insurance proceeds available to cover a settlement, Lead Counsel successfully negotiated a $5.65 million cash settlement for the Settlement Class, plus an additional $100,000 (from Individual Defendants) towards Notice costs. Lead Counsel was also able to successfully defeat Defendants' motions to dismiss in their entirety, no small feat considering that between 2013 and 2022, only 20% of motions to dismiss filed in securities class actions were denied in full. *See* NERA, *Recent Trends*, at 11.

"[T]he quality of the opposing counsel" also matters. *Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *46. This litigation was vigorously contested by Defendants who were ably represented by very experienced and highly-qualified attorneys from Baker & Hostetler LLP (for Defendants Bozzo, McCarthy, O'Donnell, and Turner), and Wilson Elser Moskowitz Edelman & Dicker LLP (for Defendant Squar Milner) – preeminent law firms that have defended numerous securities cases resulting in favorable decisions for defendants. *See* Miller Decl. at ¶ 165. That

14

Lead Counsel achieved the Settlement for the Settlement Class in the face of high-quality legal opposition further evidences the quality of their efforts. *See Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *83 (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03-cv-5755, 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir. 2008) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work.") (citation omitted).

The positive reaction by Settlement Class Members thus far further confirms the quality of Lead Counsel's representation. To date, only one valid exclusion request has been received,[14] and no Settlement Class Member has objected to the Settlement or to the attorneys' fees and expenses set forth in the Notice. *See* Miller Decl. at ¶¶ 124-25. That such a positive reaction followed the mailing of 3,260 Postcard Notices (*see id.* at ¶ 120) constitutes powerful support for the requested award. *See*, *e.g.*, *Silverstein v. Alliance Bernstein, L.P.*, No. 09-cv-5904, 2013 U.S. Dist. LEXIS 179734, at *25 (S.D.N.Y. Dec. 20, 2013) (finding lack of objections supported fee request).

### 4.   The Requested Fee in Relation to the Settlement Is Fair, Reasonable, and Wholly Consistent with Case Law

"In determining whether the Fee Application is reasonable in relation to the settlement amount, the Court compares the Fee Application to fees awarded in similar securities class-action settlements of comparable value." *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *56.

---

[14] One exclusion request was submitted that failed to comply with any of the requirements of the Notice – including, for example, by failing to provide the individual's Class Period transactions. *See* Miller Decl. at ¶ 124.

15

Lead Counsel's fee request of 30% of the Settlement Fund is fair and reasonable for a litigation of this kind, wholly consistent with (and, in many cases, lower than) the percentages that Courts have awarded in similar securities class action and complex litigation settlements. *See*, *e.g.*, *In re JP Morgan Precious Metals Spoofing Litig.*, No. 18-cv-10356, ECF No. 114 (S.D.N.Y. July 7, 2022) (33.33% of $60 million settlement; case stayed pre-discovery due to related criminal prosecution; pending 4.5 years); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-cv-6716, 2022 U.S. Dist. LEXIS 11427, at *36 (E.D.N.Y. Jan. 21, 2022) (33 1/3% of $9 million settlement; before full briefing on defendants' motion to dismiss; pending 3.5 years); *Wilson v. LSB Indus.*, No. 15-cv-07614, 2019 U.S. Dist. LEXIS 133895, at *3-4 (S.D.N.Y. June 28, 2019) (33.3% of $18,450,000 settlement; mid-discovery; pending 3.5 years); *In re Qudian Sec. Litig.*, No. 17-cv-09741, 2021 U.S. Dist. LEXIS 109258, at *6 (S.D.N.Y. June 8, 2021) (33 1/3% of $8.5 million settlement; no formal discovery; pending three years); *Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *56 (33 1/3% of $7.5 million settlement; mid-discovery, pending four years); *In re BHP Billiton Secs. Litig.*, No. 16-cv-1445, ECF No. 139 (S.D.N.Y. Apr. 10, 2019) (30% of $50 million settlement; motion for class certification filed, mid-discovery; pending three years); *In re Genworth Fin., Inc. Sec. Litig.*, No. 14-cv-2392, ECF Nos. 167, 178 (S.D.N.Y. Nov. 16, 2017) (Hellerstein, J.) (30% of $20 million settlement; post-class certification but mid-discovery; pending three years); *Hi-Crush*, No. 12-cv-8557, ECF No. 115 (S.D.N.Y. Dec. 19, 2014) (33.33% of $3.8 million settlement; motion for class certification briefed but mid-discovery; pending two years;); *Aéropostale,* 2014 U.S. Dist. LEXIS 64517, at *34-35 (33% of $15 million settlement; mid-discovery; pending 2.5 years); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (33 1/3% of $13 million settlement; mid-discovery; pending four years); *In re Buspirone Antitrust Litig.*, No. 01-md-1413, ECF No. 144 (S.D.N.Y. Apr. 17,

16

2003) (33.33% of $220 million settlement; mid-discovery; pending two years).

An award of 30% is also consistent with the median attorneys' fee awarded in securities class actions with settlements of a similar magnitude. *See* NERA, *Recent Trends*, at 21 (between 2013 and 2022, median attorneys' fee award for settlements between $5 and $10 million was 30%).[15]

### 5.    Public Policy Considerations Support the Requested Fee Award

"Congress, the Executive Branch, and [the Supreme] Court…have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (citation omitted); *see also Bateman*, 472 U.S. at 310 (private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"); *Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at *50 (recognizing importance of "private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis").

Such policy considerations weigh in favor of Lead Counsel's requested fee award. *See Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *66 ("Here, the Settlement was achieved despite the absence of any assistance from the government agencies. Thus, Lead Counsel's willingness to assume the risks of this litigation resulted in the only recovery for the Class.") (citing *In re Priceline.com, Inc. Sec. Litig.*, No. 00-cv-1884, 2007 U.S. Dist. LEXIS 52538, at *17 (D. Conn. July 20, 2007) ("[T]he award of the percentage requested here [30%] will encourage

---

[15] Courts regularly consider such data in evaluating requests for fee awards. *See*, *e.g.*, *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17-cv-10014, 2020 U.S. Dist. LEXIS 237595, at *8 (S.D.N.Y. Dec. 17, 2020).

enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis.")).

### 6.    A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees Are Reasonable[16]

"[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts…may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, No. 10-cv-4712, 2011 U.S. Dist. LEXIS 105775, at *45-47 (S.D.N.Y. Sept. 16, 2011). Here, a lodestar cross-check confirms the reasonableness of the requested fee award.

As set forth in the Miller Declaration, Lead Counsel has expended over 4,700 hours in the investigation, prosecution, and resolution of the claims against Defendants, for a lodestar of $3,614,435.00, resulting in a **negative** multiplier of approximately 0.47. *See* Miller Decl. at ¶ 156. That "Lead Counsel's request for attorneys' fees reflects a discount on the time Lead Counsel actually spent litigating the matter and requires application of a ***negative multiplier*** to the lodestar…"militates very in favor of the reasonableness of the fee request, particularly in light of the fact that courts generally grant fees with positive multipliers to reflect the complexity and risks undertaken by class counsel." *Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *56-57

---

[16] The figures set forth herein are based on time records maintained by Lead Counsel in the ordinary course of business. To calculate the lodestar, hours expended were multiplied by each attorney's respective hourly rate. *See Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *39-40 (citations omitted).

18

(emphasis in original); *see also Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96-cv-0583, 2002 U.S. Dist. LEXIS 10732, at *8 (S.D.N.Y. June 14, 2002) ("[T]he fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum."); *Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at *38-39 (S.D.N.Y. May 9, 2014) (negative multiplier "affords additional evidence that the requested fee is reasonable) (citing *Bear Stearns*, 909 F. Supp. 2d at 271 (approving requested fee with negative multiplier and noting that negative multiplier was a "strong indication of the reasonableness of the [requested] fee")); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) ("Here, counsel is requesting a high percentage fee [33.3%], but that fee ($195 million) still represents a negative multiplier to the total adjusted lodestar as calculated by this Court ($202 million). There is therefore no real danger of over-compensation.").[17]

Thus, courts regularly award fees of 30% or higher in cases at a similar or even less advanced stage than this case where – like here – the lodestar multiplier is negative. *See*, *e.g.*, *PPDAI*, 2022 U.S. Dist. LEXIS 11427, at *36 (33 1/3% of $9 million settlement; lodestar multiplier of 0.75; before full briefing on defendants' motion to dismiss; pending 3.5 years); *Qudian*, 2021 U.S. Dist. LEXIS 109258, at *6 (33 1/3% of $8.5 million settlement; lodestar multiplier of 0.8; no formal discovery; pending three years); *Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *56 (33 1/3% of $7.5 million settlement; negative lodestar multiplier; mid-discovery,

---

[17] "In complex contingent litigation…fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors." *In re Signet Jewelers Sec. Litig.*, No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998, at *48 (S.D.N.Y. July 21, 2020) (citing *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *76 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *In re Comverse Tech., Inc.*, No. 06-cv-1825, 2010 U.S. Dist. LEXIS 63342, at *14 (E.D.N.Y. June 23, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.")). Indeed, "[i]n complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *48-49.

pending four years); *Wilson v. LSB Indus.*, No. 15-cv-07614, 2019 U.S. Dist. LEXIS 133895, at *3-4 (S.D.N.Y. June 28, 2019) (33.3% of $18.45 million settlement; multiplier of 0.62; mid-discovery; pending 3.5 years); *Genworth*, No. 14-cv-2392, ECF Nos. 167, 178 (Nov. 16, 2017) (Hellerstein, J.) (30% of $20 million settlement; 0.56 multiplier; post class certification but mid-discovery; case three years); *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132, 2014 U.S. Dist. LEXIS 64517, at *34-35 (S.D.N.Y. May 9, 2014) (33% of $15 million settlement; 0.7 multiplier; mid-discovery; pending 2.5 years); *Giant Interactive Grp.,* 279 F.R.D. at 166 (33 1/3% of $13 million settlement; negative lodestar multiplier; mid-discovery; pending four years); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (33.33% of $35 million settlement; lodestar multiplier of 0.87; class certified, mid-discovery; pending six years).[18]

As noted above, Lead Counsel, in its discretion and judgment, cut substantial amounts of time from its lodestar, for work that it considered to be less than maximally efficient. *See* Miller Decl. at ¶ 152. Lead Counsel will also exclude from the lodestar any time spent preparing for the final approval hearing, as well as time spent after final approval relating to administration of the Settlement. *See id.* at ¶ 157. The additional tasks after final approval, which are significant, will lower the lodestar multiplier even further. *See Clem v. KeyBank, N.A.*, No. 13-cv-789, 2014 U.S. Dist. LEXIS 87174, at *27 (S.D.N.Y. June 20, 2014) (Where "class counsel will be required to spend significant additional time on this litigation in connection with implementing and

---

[18] In fact, courts regularly award fees representing positive lodestar multipliers in complex common fund cases – even, in some instances, fees of 30% or higher. *See*, *e.g.*, *Lea v. Tal Educ. Grp.,* No. 18-cv-5480, 2021 U.S. Dist. LEXIS 229314, at *36-38 (S.D.N.Y. Nov. 30, 2021) (33.33% of $7.5 million settlement; 1.3 multiplier); *In re Bank of New York Mellon ADR FX Litig.*, No. 16-cv-00212, ECF No. 161 (S.D.N.Y. June 17, 2019) (30% of $72.5 million settlement; 1.5 multiplier); *Merryman v. Citigroup Inc.*, No. 15-cv-9185, ECF No. 163 (S.D.N.Y. July 3, 2019) (33.33% of $14.75 million settlement; 1.3 multiplier); *BHP Billiton*, No. 16-cv-1445, ECF No. 139 (S.D.N.Y. Apr. 10, 2019) (30% of $50 million settlement; 2.7 multiplier); *Burns v. Falconstor Software, Inc.*, No. 10-cv-4632, 2014 U.S. Dist. LEXIS 203061, at *27-28 (E.D.N.Y. Apr. 10, 2014) (33.3% of $5 million settlement; 4.75 multiplier); *In re Hi-Crush*, No. 12-cv-8557, ECF No. 115 (S.D.N.Y. Dec. 19, 2014) (33.33% of $3.8 million settlement; 1.41 multiplier); *In re Bisys Sec. Litig.*, No. 04-cv-3840, 2007 U.S. Dist. LEXIS 51087, at *9-10 (S.D.N.Y. July 11, 2007) (30% of $65.87 million settlement; 2.99 multiplier).

monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement."). Further, Lead Counsel's multiplier is calculated before a portion of its fee goes to Counsel for Loskot. As 70% of any fee award for counsel for Loskot comes out of Lead Counsel's fee award, this will lower Lead Counsel's lodestar multiplier even further.

The billing rates used to develop Lead Counsel's lodestar are also reasonable. In a lodestar analysis, the appropriate hourly rates are those rates that are "normally charged in the community where the counsel practices, *i.e.*, the 'market rate.'" *Hi-Crush*, 2014 U.S. Dist. LEXIS 177175, at *38-40 (citation omitted). The hourly billing rates for KSF attorneys working on this case ranged from $475 (associates) to $1,200 (senior partner). *See* Miller Decl. at ¶ 156. These rates are comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and complexity and similar rates have been approved in this district. *See*, *e.g.*, *Pearlstein v. Blackberry*, No. 13 Civ. 7060, ECF No. 824 at ¶ 160, ECF No. 836 (S.D.N.Y. Sept. 29, 2022) (awarding fees to Lead Counsel KSF with attorney rates of $400-$1,200 an hour); *In re Chi. Bridge & Iron Co. N.V. Secs. Litig.*, No. 17-cv-1580, ECF No. 438 at ¶75, ECF No. 446 (Aug. 5, 2022) (awarding fees to Lead Counsel KSF with attorney rates of $325-$1,200 an hour); *Belton v. GE Capital Consumer Lending*, No. 21-cv-9492, ECF Nos. 11, 17 (S.D.N.Y. Feb. 10, 2022) (awarding fees with attorney rates ranging from $350 to $1,100 an hour); *In re Signet Jewelers Sec. Litig.*, No. 16-cv-6728, ECF Nos. 258, 267 (S.D.N.Y. July 21, 2020) (awarding fees with attorney rates of $425 to $1,300 per hour); *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704, 2020 U.S. Dist. LEXIS 104842, at *23-24 (S.D.N.Y. June 16, 2020) (granting fee award using attorney rates of $350 to $1,150 per hour).

In light of the time and effort devoted to this case by Lead Counsel to achieve the $5.65

million recovery for the Settlement Class (plus $100,000 in Notice costs from the Individual Defendants), the lodestar cross-check readily confirms that the requested fee award is reasonable and should be granted.

### D.      Plaintiffs' Counsel Should Be Reimbursed for $422,214.12 in Expenses

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class and should therefore be reimbursed "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation.'" *Christine Asia Co. v. Jack Yun Ma*, No. 15-md-02631, 2019 U.S. Dist. LEXIS 179836, at *68 (S.D.N.Y. Oct. 16, 2019) (citation omitted). Lead Counsel tried, whenever possible, to avoid unnecessary expenditures to keep costs down. *See* Miller Decl. at ¶ 178; *see also Marsh ERISA Litig.*, 265 F.R.D. at 150 ("Because Plaintiffs' Counsel was proceeding on a contingent-fee basis, they had a strong incentive to keep expenses at a reasonable level."). For example, after Plaintiffs reached a settlement with Squar Milner, Plaintiffs held off on moving for preliminary approval until after a broader settlement was reached, in order to keep Notice and Administration costs down.

One of the largest requested expenses is for Plaintiffs' bankruptcy counsel. In the midst of discovery as well as ongoing settlement negotiations, Pareteum filed for bankruptcy protection, which substantially complicated matters, as it resulted in an automatic stay of all litigation against Pareteum. As a result, the focus of the litigation and settlement discussions shifted to the Individual Defendants. At the same time, Plaintiffs had to navigate the fallout of the bankruptcy on the litigation, including, but not limited to, critical issues such as discovery and competing claims to insurance proceeds. Asset sales by Pareteum in the bankruptcy proceeding had to be monitored, document preservation had to be insured, and the disposition of

relevant insurance proceeds had to be addressed. To assist with these complex issues, Plaintiffs retained bankruptcy counsel, Lowenstein Sandler LLP ("Lowenstein"), who have particular expertise in the interplay between securities class actions and bankruptcy. Michael Etkin and his team at Lowenstein ably represented the Settlement Class' interests in Pareteum's bankruptcy proceeding, filing objections and appearing at hearings under the direction of Lead Counsel, filing Proofs of Claim in the bankruptcy proceeding on behalf of the Settlement Class in order to preserve their rights against Pareteum, and reviewing and responding to Pareteum's disclosure statement and plan of liquidation filed in the bankruptcy proceeding. Further, Lead Counsel consulted with bankruptcy counsel with respect to bankruptcy-related issues during the course of settlement negotiations. This all culminated in the parties' efforts to obtain a "Comfort Order" from the bankruptcy court so that the automatic stay could be lifted and the proceeds of the D&O insurance policies could be used to fund the Settlement.[19] This required a contested hearing before the bankruptcy court, after which the bankruptcy court issued the Comfort Order on December 13, 2022, thereby allowing the Settlement to proceed.  Miller Decl. at ¶ 181. Accordingly, these expenses were crucial to achieve the Settlement. *See In re Frontier Commc'ns Corp. Stockholders Litig.*, No. 17-cv-01617, 2022 U.S. Dist. LEXIS 163432, at *48 (D. Conn. May 20, 2022) (awarding substantial expenses for bankruptcy counsel).

Another relatively large expense was for the fees of Plaintiffs' economics expert, who assisted with calculating damages, submitted a detailed report in support of class certification, and assisted with formulating the Plan of Allocation. *See* Miller Decl. at ¶ 182; *see also Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *64 (experts in loss causation and damages were

---

[19] *See* ECF No. 273 at ¶ 29(a) (stipulation providing that Effective Date of Settlement occurs after "the Bankruptcy Court enters a comfort order that the insurance proceeds contemplated to fund the Settlement Amount, Notice Fund, and the settlement in the Sabby Action may be utilized for those purposes").

"instrumental in Lead Counsel's prosecution of the Action"). Plaintiffs also hired a private investigation firm to conduct an independent investigation into the allegations set forth in the Viceroy and Aurelius Reports, and a consulting firm to obtain the source materials and underlying data for the Viceroy Report. *See* Miller Decl. at ¶ 183. These consultants "assisted Lead Counsel in the factual investigation and analysis in connection with the amended complaints" and were therefore "essential to the successful prosecution and resolution of [the] Action." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *87-88 (citations omitted). The remainder of the expenses consist of mediator fees, discovery hosting, legal research, court fees, travel, photocopies, and other routine litigation expenses, that are the type of expenses normally charged to clients in non-contingency cases. *See* Miller Decl. at ¶¶ 180, 184.

"The fact that Class Counsel was willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574, at *77 (S.D.N.Y. Sept. 9, 2015). Considering the complexity of the action, including Pareteum's bankruptcy, Lead Counsel's expenses of $422,214.12 are eminently reasonable. Finally, no potential Settlement Class Member has yet objected to the request (*see* Miller Decl. at ¶ 125), factors which support granting the request. *See Signet Jewelers*, 2020 U.S. Dist. LEXIS 128998, at *61-62; *Flag Telecom*, 2010 U.S. Dist. Lexis 119702, at *88.

## III.    CONCLUSION

Lead Counsel respectfully requests that the Court: (a) award attorneys' fees in the amount of 30% of the gross Settlement fund, *i.e.*, $1,695,000, plus interest; and (b) reimburse expenses in the amount of $422,214.12, plus interest.

24

DATED: March 24, 2023                    Respectfully submitted,

                                         **KAHN SWICK & FOTI, LLC**

                                         */s/ Kim E. Miller*
                                         Kim E. Miller (KM-6996)
                                         J. Ryan Lopatka (admitted *pro hac vice*)
                                         250 Park Ave., 7th Floor
                                         New York, NY 10177
                                         Telephone: (212) 696-3730
                                         Facsimile: (504) 455-1498
                                         Kim.Miller@ksfcounsel.com
                                         J.Lopatka@ksfcounsel.com

                                         -and-

                                         Melissa H. Harris (MH-3553)
                                         1100 Poydras Street, Suite 960
                                         New Orleans, LA 70163
                                         Phone: (504) 455-1400
                                         Facsimile: (504) 455-1498
                                         melissa.harris@ksfcounsel.com

                                         *Lead Counsel for Lead Plaintiff Pareteum*
                                         *Shareholder Investor Group and the*
                                         *Settlement Class*

## CERTIFICATE OF SERVICE

On March 24, 2023 the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                         */s/ Kim E. Miller*
                                         Kim E. Miller