# EXHIBIT C



**Policy Number:**    **ELU162674-19**

**Renewal of Number:**   ELU156101-18

**XL Specialty Insurance Company**

*Members of the XL America Companies*

---

<table>
<tr>
<td>

**CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE POLICY DECLARATIONS**

</td>
<td>

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

</td>
</tr>
</table>

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

**Item 1.**    **Name and Mailing Address of Parent Corporation:**

Pareteum Corporation
1185 Avenues of Americas, 37th Floor
New York, NY 10036

---

**Item 2.**    **Policy Period:**    **From:**    July 12, 2019    **To:**    July 12, 2020

**At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**    **Limit of Liability:**

$5,000,000. Aggregate: each **Policy Period** (including **Defense Expenses**)

---

**Item 4.**    **Optional Extension Period and Premium:**

Length of Optional Extension Period:    One Year

Optional Extension Premium:    ███████

---

**Item 5.**    **Notices required to be given to the Insurer must be addressed to:**

XL Professional Insurance
100 Constitution Plaza, 17th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

---

**Item 6.**    **Premium:**

Premium:    ███████

Taxes, Surcharges or Fees:    █████

Total Policy Premium:    ████████

2-14177
CS 70 00 01 06

**CORNERSTONE A-SIDE MANAGEMENT LIABILITY POLICY**

---

**Item 7.**  **Policy Forms and Endorsements Attached at Issuance:**

CS 71 00 09 06   XL 82 01 07 07   XL 80 24 03 03   CS 72 60 10 15   CS 72 61 10 15   CS 72 58 10 15
CS 72 59 10 15   CL 83 14 10 03   CL 80 34 12 02


Countersigned: _____   By: _____
                       Date                                      Authorized Representative

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**


John R. Glancy
President

Kenneth P. Meagher
Secretary

**XL Specialty Insurance Company**

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

Joseph Tocco
President

Toni Ann Perkins
Secretary

LAD 400 0915 XLS

© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed.  As defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your existing coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by federal law.  Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage.  The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is:**
**$ waived.  Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **ELU162674-19**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

## NOTICE TO POLICYHOLDERS

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1]. Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions embargoes or export controls applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions, embargoes or export controls law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC or the applicable regulator. Other limitations on the premiums and payments also apply.

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America, Inc. All rights reserved. May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

### Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the AXA XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

### Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;

PN CW 02 0119                                                                 Page 1 of 3

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

PN CW 02 0119

Page 2 of 3

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

PN CW 02 0119                                                                                          Page 3 of 3

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Alabama | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
|---|---|
| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
|---|---|
| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**Endorsement No.: 1**
**Named Insured: Pareteum Corporation**
**Policy No.: ELU162674-19**

**XL 82 01 07 07**

**Effective: July 12, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CHANGE OF PREAMBLE ENDORSEMENT

The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) including the Application and subject to all of the terms, conditions and limitations of all of the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

**XL 80 24 03 03**

| | |
|---|---|
| **Endorsement No.: 2** | **Effective: July 12, 2019** |
| **Named Insured: Pareteum Corporation** | **12:01 A.M. Standard Time** |
| **Policy No.: ELU162674-19** | **Insurer: XL Specialty Insurance Company** |

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03                                                                                    Page 1 of 1

CS 72 60 10 15

**Endorsement No.: 3**           **Effective: July 12, 2019**
**Named Insured: Pareteum Corporation**      **12:01 A.M. Standard Time**
**Policy No.: ELU162674-19**          **Insurer: XL Specialty Insurance Company**

## NEW YORK POLICYHOLDER NOTICE
## ACKNOWLEDGEMENT
## INSURED PERSON'S DEFENSE PARTICIPATION AND
## DEFENSE EXPENSES INCLUDED WITHIN THE INSURER'S LIMIT OF LIABILITY

It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**. No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

In addition, the Limits of Liability contained in the Policy shall be reduced, and may be completely exhausted by payment of **Defense Expenses**, and to the extent that the Policy Limits of Liability are thereby exceeded, the Insurer shall not be liable for **Defense Expenses** or for the amount of any judgment or settlement of any **Loss** in excess of the Policy Limits of Liability.

This Notice forms a part of the Policy.

I have read and acknowledged the above notice.

_____         _____

**Insured Person's** Signature            Date

All other terms, conditions and limitations of this Policy shall remain unchanged.

© 2015 X.L. America, Inc. All Rights Reserved. May not be copied without permission.

**Endorsement No.: 4**  
**Named Insured: Pareteum Corporation**  
**Policy No.: ELU162674-19**

**Effective: July 12, 2019**  
**12:01 A.M. Standard Time**  
**Insurer: XL Specialty Insurance Company**

**CS 72 61 10 15**

# NEW YORK COINSURANCE ENDORSEMENT

Solely for the purpose of the coverage provided under Section I. INSURING AGREEMENT, CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM, in accordance with New York State Laws BCL section 726(a)(3):

1.  the **Insured Persons** who are directors or officers of the **Company** are liable to coinsure ____% of **Loss** in excess of the applicable Retention for the first $1,000,000 of coverage; and

2.  the Retention under Section I. INSURING AGREEMENT shall be   each **Insured Person**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 72 61 10 15

Page 1 of 1

*© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

CS 72 58 10 15

**Endorsement No.: 5**        **Effective: July 12, 2019**
**Named Insured: Pareteum Corporation**        **12:01 A.M. Standard Time**
**Policy No.: ELU162674-19**        **Insurer: XL Specialty Insurance Company**

# NEW YORK ADDENDUM TO DECLARATIONS

This endorsement modifies insurance provided under the following:

CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

1.    The first sentence of The Cornerstone A-Side Management Liability Insurance Policy Declarations is deleted and replaced with the following:

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE OR INCIDENTS REPORTED DURING THE POLICY PERIOD, THE AUTOMATIC EXTENSION PERIOD OR, IF APPLICABLE THE OPTIONAL EXTENSION PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, THE OPTIONAL EXTENSION PERIOD APPLIES. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC EXTENSION PERIOD WILL APPLY. FOR AN ADDITIONAL PREMIUM CALCULATED AS INDICATED IN ITEM 4. OF THE DECLARATION, AN OPTIONAL EXTENSION PERIOD CAN BE PURCHASED FOR A PERIOD OF AT LEAST ONE YEAR. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE OPTIONAL EXTENSION PERIOD WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER CARRIER. DURING THE FIRST SEVERAL YEARS OF CLAIMS MADE RELATIONSHIPS, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY. PLEASE READ THIS POLICY CAREFULLY.

THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE EXPENSES. THE INSURER IS NOT OBLIGATED TO PAY ANY LOSS, INCLUDING DEFENSE EXPENSES, AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED BY PAYMENT OF LOSS, INCLUDING DEFENSE EXPENSES.

2.    Item 4. of The Cornerstone A-Side Management Liability Insurance Policy Declarations is deleted and replaced by the following:

Item 4. Optional Extension Period and Premium

    Length of Optional Extension Period:      One Year
    Optional Extension Premium      ███████████████

All other terms, conditions and limitations of this Policy shall remain unchanged.

CS 72 58 10 15      Page 1 of 1
© 2015 X.L. America, Inc. All Rights Reserved. May not be copied without permission.

| | |
|---|---|
| Endorsement No.: 6 | **Effective: July 12, 2019** |
| Named Insured: Pareteum Corporation | 12:01 A.M. Standard Time |
| Policy No.: ELU162674-19 | Insurer: XL Specialty Insurance Company |

# NEW YORK AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

1. Section I. INSURING AGREEMENT is amended by the addition of the words, "Automatic Extension Period" after the words **Policy Period**.

2. Section II. DEFINITIONS (G) **Employment Practices Wrongful Act** is amended by the addition of the following:

   To the extent this Policy provides coverage for employment discrimination, coverage shall be afforded solely for vicarious liability for employment discrimination and disparate impact discrimination in employment. To the extent this Policy provides coverage for sexual or other harassment in the workplace, coverage shall be afforded solely for vicarious liability for sexual or other harassment in the workplace.

   Provided, however, this Policy does not cover a person who actually or allegedly:

   1. participates in,

   2. directs, or

   3. knowingly allows

   any act of sexual misconduct or sexual abuse as determined by a plea agreement, an alternative dispute resolution proceeding, a judgment or a final adjudication in the underlying action or in a separate action or proceeding.

3. Section II. DEFINITIONS is amended by the addition of the following:

   "**Termination of Coverage**" means the cancellation or nonrenewal of this Policy by an **Insured Person** or the Insurer if the Insurer offers to renew this Policy on terms which involve a decrease in the Limit of Liability, a reduction in coverage, the addition of an exclusion or any change in coverage less favorable to the **Insured Persons**.

4. Section IV. CONDITIONS (A) **Limit of Liability** is amended by the addition of the following:

   In the event this Policy provides coverage solely for **Defense Expenses** arising from an administrative proceeding, regulatory proceeding, or other non-judicial dispute resolution forum or in litigation, where the only remedies or relief sought are non-pecuniary in nature and which constitutes Legal Services Insurance subject to Parts 262 and 71 of Title 11 of New York Regulations, such **Defense Expenses** shall reduce no more than twenty-five percent (25%) of the total of the Policy's Aggregate Limit of Liability. Provided, however, that such defense-only coverage may not be provided for a claim of legal liability that could be covered by a policy of liability insurance in New York.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

Notwithstanding the foregoing, if a judgment is entered against the **Insured Persons**, the principal amount of which is within the Limit of Liability shown in Item 3. of the Declarations and which is otherwise covered under this Policy, the Insurer shall pay any post-judgment interest awarded on the portion of such judgment which is covered under this Policy, even if the total amount of the covered portion of the principal amount of the judgment and the post-judgment interest exceeds the Limit of Liability.

5.      Section IV. CONDITIONS (D) **Notice** (1) is amended by the addition of the following:

Provided, however, that failure by the **Insured Persons** or the **Company** to give such notice shall not invalidate any **Claim** under the Policy if the **Insured Persons** and the **Company** show that it was not reasonably possible to do so and that notice was given as soon as was reasonably possible. Notwithstanding anything to the contrary in the Declarations and Section IV.CONDITIONS (D), notice of any **Claim** may also be provided to any authorized agent of the Insurer located within the state of New York.

A **Claim** will be deemed first made when the Insurer receives written notice of a **Claim** or suit from an **Insured Person** or a third party.

6.      Section IV. CONDITIONS (I) **Cancellation and Renewal of Coverage** (2) is deleted and replaced by the following:

(2)     The Insurer may cancel this Policy only for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** at the mailing address shown in the Policy and to the agent or broker of record for the **Insured Persons**, if applicable. The notice of cancellation for nonpayment of premium shall inform the **Parent Company** of the amount due.

7.      Section IV. CONDITIONS (I) **Cancellation and Renewal of Coverage** (3) is deleted and replaced by the following:

(3)     The Insurer is under no obligation to renew this Policy upon its expiration. If the Insurer decides not to renew this Policy, or conditions its renewal upon a change in the Limit of Liability, a change in type of coverage, reduction of coverage, the addition of an exclusion, or an increase in premium in excess of 10% (exclusive of any premium increase generated as a result of increased exposure limits or as a result of experience rating, loss rating, retrospective rating or audit), then the Insurer shall mail or deliver written notice of the non-renewal or the conditional renewal to the **Parent Company** at the mailing address shown in the Policy and to the **Parent Company's** authorized agent or broker, at least sixty (60) days but not more than one hundred and twenty (120) days before the end of the **Policy Period**. Such notice shall contain the specific reasons for the refusal to renew or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.

If the Insurer does not provide notice of non-renewal or conditional renewal as provided above, coverage will remain in effect at the same terms and conditions of this Policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is provided, unless the **Parent Company** or **Insured Persons**, during this 60-day period, has replaced the coverage or elects to cancel.

If the Insurer provides notice of non-renewal or conditional renewal on or after the expiration date of this Policy, coverage will remain in effect at the same terms and conditions of this Policy for another **Policy Period**, at the lower of the current rates or the prior period's rates, unless the **Parent Company** or **Insured Persons**, during the additional **Policy Period**, has replaced the coverage or elects to cancel.

The Insurer will not send the **Parent Company** or **Insured Persons** a notice of nonrenewal or conditional renewal if the **Parent Company**, **Insured Persons**, their authorized agent or broker or another insurer provides notice that the Policy has been replaced or is no longer desired.

© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

If the Insureds elect to accept the terms, conditions and rates of the conditional renewal notice, a new Limit of Liability shall become effective as of the inception date of the renewal, subject to regulations promulgated by the Superintendent of Insurance.

8.    Section IV. CONDITIONS (J) **Optional Extension Period** is deleted and replaced by the following:

(J)    **Automatic and Optional Extension Period**

(1)    In the event of a Termination of Coverage, without any additional premium being required, there shall be an automatic extension of the coverage granted by this Policy with respect to any **Claim** first made during a period of sixty (60) days immediately following the Termination of Coverage, but only with respect to a **Wrongful Act** occurring prior to Termination of Coverage. This sixty (60) day period shall be called the "Automatic Extension Period."

(2)    In the event of Termination of Coverage, the **Insured Persons** shall have the right, upon payment of the additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the period of time set forth in ITEM 4 of the Declarations after the date upon which the Automatic Extension Period ends, but only with respect to a **Wrongful Act** occurring prior to the Termination of Coverage. The Optional Extension Period offered by the Insurer shall be twelve months in length. This additional period of coverage shall be called the "Optional Extension Period". Except in the Declarations to the Policy, this Section IV. (J) and Section I., the Automatic Extension Period may also be called the Optional Extension Period.

(3)    The Insurer shall provide written notice to the **Insured Persons** of the Automatic Extension Period and the availability of the premium for, and the importance of purchasing, the Optional Extension Period within thirty (30) days after the Termination of Coverage.

(4)    The right of the **Insured Persons** to purchase the Optional Extension Period will be terminated if the Insurer does not receive written notice by the **Insured Persons** advising they wish to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within sixty (60) days after the Termination of Coverage, or within thirty (30) days after the date of mailing or delivery of the notice provided by the Insurer in the above paragraph, whichever is greater. If such notice and premium payment is not given to the Insurer, there shall be no right to purchase the Optional Extension Period.

(5)    If the claims-made relationship has continued for less than one year and the Policy was canceled for nonpayment of premium, the two paragraphs immediately preceding this paragraph, (3) and (4), shall not apply and the **Insured Persons** shall not have the right to purchase the Optional Extension Period.

(6)    If the **Insured Persons** elect to purchase the Optional Extension Period as set forth in CONDITIONS (J)(2) and (4) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(7)    The Limit of Liability applicable to the Automatic Extension Period and the Optional Extension Period, if any, will be equal to the amount of coverage remaining in the Policy's Limit of Liability set forth in ITEM 3 of the Declarations.

(8)    In the event the **Parent Company** is in liquidation or bankruptcy, or permanently ceases operation, and if the **Parent Company** or their designated trustee, although entitled to, does not purchase the Optional Extension Period, any **Insured Person** requesting the Optional Extension Period within one hundred twenty (120) days of the Termination of Coverage, may purchase the Optional Extension Period, as provided above.

CS 72 59 10 15                                                                                    Page 3 of 4
© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

(9) A person employed or otherwise affiliated with the **Insured Persons** and covered by this Policy during such affiliation shall continue to be covered under this Policy and any Optional Extension Period after such affiliation has ceased for such person's covered acts or omissions during such affiliation.

(10) Upon Termination of Coverage, any return premium due to the **Insured Persons** shall be applied to the premium for the Optional Extension Period if the Insured elects to purchase such coverage. When the premium is due to the Insurer, any payment received by the Insurer from the Insured as payment for the Optional Extension Period shall be first applied to any premium due for the Policy.

(11) In the event similar insurance to that provided by this Policy is in force during the Optional Extension Period, the coverage afforded during the Optional Extension Period shall be excess over any such valid and collectible insurance.

9. Section IV. CONDITIONS (K) **Representation Clause** is amended by the addition of the following:

Provided, however, no misrepresentation shall prevent recovery for **Loss** under this Policy unless it was material. No misrepresentation shall be deemed material unless knowledge by the Insurer of the facts misrepresented would have led to the Insurer's refusal to issue this Policy.

10. Section IV. CONDITIONS (L) **Action Against the Insurer, Assignment, and Changes to Policy** (1) is amended by deleting the words "finally" and "after actual trial".

11. Section VI. CONDITIONS (L) **Action Against the Insurer, Assignment, and Changes to Policy** is amended by the addition of the following:

Provided, however, if the Insurer does not pay any judgment covered by the terms of this Policy within thirty (30) days from the service of notice of the judgment upon the **Insured Person** or their attorney and the Insurer, then an action may be brought against the Insurer under the terms of the Policy for the amount of judgment not exceeding the amount of the aggregate Limit of Liability under the Policy, except during a stay or limited stay of execution against the Insured on such judgment.

12. Section IV. CONDITIONS (P) **Bankruptcy** is amended by the addition of the following:

The Bankruptcy or insolvency of the **Insured Persons**, or of their estates, shall not relieve the Insurer from the payment of **Loss** not otherwise excluded under this Policy.

13. Section IV. CONDITIONS is amended by the addition of the following:

**Loss Information**

Upon written request by the **Insured Persons** or the **Insured Person's** authorized agent or broker, the Insurer shall mail or deliver the following Loss information to the **Insured Persons** for the time the Policy was in effect within ten (10) days of such request:

1. information on closed **Claims**, including the date and description of the **Claim**, and any payments;

2. information on open **Claims**, including the date and description of the **Claim**, and amounts of any payments; and

3. information on notice of any **Wrongful Acts**, including the date and description of such notice.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*© 2015 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.*

**Endorsement No.: 7**
**Named Insured: Pareteum Corporation**
**Policy No.: ELU162674-19**

**Effective: July 12, 2019**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

**CL 83 14 10 03**

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to May 16, 2007.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 83 14 10 03

Page 1 of 1

CL 80 34 12 02

**Endorsement No.: 8**　　　　　　　　　　　　　**Effective: July 12, 2019**
**Named Insured: Pareteum Corporation**　　　　**12:01 A.M. Standard Time**
**Policy No.: ELU162674-19**　　　　　　　　　**Insurer: XL Specialty Insurance Company**

# AMEND MERGERS AND ACQUISITIONS ENDORSEMENT

In consideration of the premium charged, Section IV Conditions (C)(1) of the Policy is amended to read in its entirety as follows:

(1)　　If during the Policy Period, the Company acquires any assets, acquires a Subsidiary, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage shall be provided for any Loss involving a Claim for a Wrongful Act occurring after the consummation of the transaction; provided however, if by reason of the transaction (or series of transactions) the entity, assets, Subsidiary or liabilities so acquired or so assumed, exceed thirty-five (35%) percent of the total assets or liabilities of the Company, as represented in the Company's most recent audited consolidated financial statements, coverage under this Policy shall be provided for a period of ninety (90) days for any Loss involving a Claim for a Wrongful Act that occurred after the transaction has been consummated.　Coverage beyond the ninety (90) day period will be provided only if:

(a)　　the Insurer receives written notice containing full details of the transaction(s); and

(b)　　the Insurer at its sole discretion, agrees to provide such additional coverage upon such terms, conditions, limitations, and additional premium that it deems appropriate."

All other terms, conditions and limitations of this Policy shall remain unchanged.

CL 80 34 12 02　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 1

# CORNERSTONE A-SIDE MANAGEMENT LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified on the Declarations Page (hereinafter, the "Insurer") including the Application and subject to all of the terms, conditions and limitations of all the provisions of this Policy, the Insurer, the Insured Persons and the Company agree as follows:**

**I.      INSURING AGREEMENT**

The Insurer will pay on behalf of the **Insured Persons Loss** resulting from a **Claim** first made against the **Insured Persons** during the **Policy Period** or, if applicable, the Optional Extension Period, for a **Wrongful Act**, except to the extent that such **Loss** is paid by any other **Insurance Program** or as indemnification or advancement from any source. In the event that **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions (including, but not limited to, CONDITION (B)) and limitations and without prejudice to the Insurer's excess position.

**II.   DEFINITIONS**

(A)      "**Application**" means:

   (1)      the **Application** attached to and forming part of this Policy; and

   (2)      any materials submitted therewith, which shall be retained on file by the Insurer and shall be deemed to be physically attached to this Policy.

(B)      "**Change In Control**" means:

   (1)      the merger or acquisition of the **Parent Company**, or of all or substantially all of its assets, by another entity such that the **Parent Company** is not the surviving entity;

   (2)      the acquisition by any person, entity, or affiliated group or persons or entities of the right to vote for, select, or appoint more than fifty percent (50%) of the directors of the **Parent Company**; or

   (3)      the court appointment of any person or entity with authority comparable to that of the **Insured Persons**, as defined in DEFINITION (I)(1), to liquidate or reorganize the **Parent Company**.

(C)      "**Claim**" means:

   (1)      a written demand for monetary or non-monetary relief;

   (2)      any civil or criminal judicial proceeding in a court of law or equity, arbitration or other alternative dispute resolution; or

   (3)      a formal civil, criminal, administrative, or regulatory proceeding or formal investigation.

(D)      "**Company**" means the **Parent Company** and any **Subsidiary** created or acquired on or before the Inception Date set forth in ITEM 2 of the Declarations or during the **Policy Period**, subject to CONDITION (C).

(E)      "**Defense Expenses**" means reasonable legal fees and expenses incurred in the defense or investigation of any **Claim**. **Defense Expenses** will not include the **Company's** overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees.

(F)      "**Employment Practices Claim**" means a **Claim** alleging an **Employment Practices Wrongful Act**.

CS 71 00 09 06                                                               Page 1 of 8

(G)    "**Employment Practices Wrongful Act**" means any actual or alleged:

(1)    wrongful termination of employment whether actual or constructive;

(2)    employment discrimination of any kind;

(3)    sexual or other harassment in the workplace; or

(4)    wrongful deprivation of career opportunity, employment-related misrepresentation, retaliatory treatment against an employee of the **Company**, failure to promote, demotion, wrongful discipline or evaluation, or refusal to hire.

(H)    "**Insurance Program**" means

(1)    any existing Management Liability insurance, Directors' and Officers' Liability insurance, or similar insurance; and

(2)    any other existing insurance under which coverage may be owed.

(I)    "**Insured Person**" means:

(1)    any past, present, or future director or officer, general counsel, or member of the Board of Managers of the **Company** and any person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States; and

(2)    the lawful spouse of any person set forth in DEFINITION (I)(1), but only to the extent the spouse is a party to any **Claim** solely in his or her capacity as a spouse of such person and only for the purposes of any **Claim** seeking damages recoverable from marital community property, property jointly held by any such person and his or her spouse, or property transferred from any such person to his or her spouse.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

(J)    "**Interrelated Wrongful Acts**" means **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events.

(K)    "**Loss**" means damages, judgments, settlements or other amounts (including pre- & post-judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay.  **Loss** will not include:

(1)    matters which are uninsurable under the law pursuant to which this Policy is construed; or

(2)    fines, penalties or taxes imposed by law; provided, that this DEFINITION (K)(2) will not apply to fines, penalties or taxes that an **Insured Person** is obligated to pay if such fines, penalties or taxes are insurable by law and are imposed in connection with such **Insured Person's** service with respect to an entity included within the definition of **Company** that is financially insolvent.

Note:  With respect to coverage for punitive, exemplary or multiplied damages or fines, penalties or taxes, the law of the applicable jurisdiction most favorable to the insurability of such amounts shall control.

(L)    "**Outside Capacity Wrongful Act**" means any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, trustee, regent, or governor of any **Outside Entity**, if serving in such capacity at the specific request of the **Company**.

(M)     "**Outside Entity**" means any corporation or organization other than the **Company** of which any **Insured Person**, as defined in DEFINITION (I)(1), serves as a director, officer, trustee, regent, or governor, but only if such service is at the specific request of the **Company**.

(N)     "**Parent Company**" means the entity named in ITEM 1 of the Declarations.

(O)     "**Policy Period**" means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations or to any earlier cancellation date.

(P)     "**Subsidiary**" means any entity during any time in which the **Parent Company** owns, directly or through one or more **Subsidiary(ies)**, more than fifty percent (50%) of the outstanding securities representing the right to vote for the election of such entity's directors.

(Q)     "**Wrongful Act**" means:

   (1)     any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person**, as defined in DEFINITION (I)(1), while acting in his or her capacity as a director, officer, general counsel, or member of the Board of Managers of the **Company** or a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

   (2)     any matter asserted against an **Insured Person** solely by reason of his or her status as a director, officer, general counsel, or member of the Board of Managers of the **Company**;

   (3)     any **Employment Practices Wrongful Act**; and

   (4)     any **Outside Capacity Wrongful Act**.

## III.   EXCLUSIONS

(A)     Except for **Defense Expenses**, the Insurer shall not pay **Loss** in connection with any **Claim**:

   (1)     brought by or on behalf of, or at the direction of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity**, except and to the extent such **Claim**:

      (a)     is brought and maintained by a security holder of the **Company** or such **Outside Entity**, but only if such security holder is acting independently of, and without the solicitation, assistance, participation or intervention of, the **Company**, any **Insured Person**, or any **Outside Entity**;

      (b)     is brought by the Bankruptcy Trustee or Examiner of the **Company** or such **Outside Entity**, or any assignee of such Trustee or Examiner, or any Receiver, Conservator, Rehabilitator, or Liquidator or comparable authority of the **Company** or such **Outside Entity**;

      (c)     is brought and maintained in a non-common law jurisdiction outside the United States of America or its territories or possessions; or

      (d)     is made after the **Parent Company** has undergone a **Change of Control**; or

   (2)     brought about or contributed to in fact by any:

      (a)     intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

      (b)     profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

      as determined by a final adjudication in the underlying action.

(B)     The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim**:

CS 71 00 09 06                                                                                     Page 3 of 8

(1) for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, defamation, slander, libel, disease or death of any person, or damage or destruction of any tangible property including **Loss** of use thereof; provided, that this EXCLUSION (B)(1) shall not apply to any **Claim**:

    (a) brought by a security holder of the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** for any actual or alleged violation of the Securities Act of 1933, the Securities Act of 1934, or any state securities statute; or

    (b) in the form of a derivative action, but only if such **Claim** is brought by or on behalf of, or in the name or right of, the **Company** or, with respect to any **Claim** for an **Outside Capacity Wrongful Act**, an **Outside Entity** and is brought and maintained independently of, and without the solicitation, assistance, participation or intervention of the **Company**, any **Insured Person**, or any **Outside Entity**; or

(2) based upon, arising out of, directly or indirectly resulting from, in  consequence of, or in any way involving any fact, circumstance, situation, transaction, event or **Wrongful Act** which, before the Inception Date of this Policy, was the subject of any notice given under any other Management Liability insurance, Directors' and Officers' insurance, or other similar insurance.

Note:  EXCLUSION (B)(1) will not apply to any allegation of libel, slander, defamation, mental anguish or emotional distress if and only to the extent that such allegations are made as part of an **Employment Practices Claim** for an **Employment Practices Wrongful Act**.

No **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the above EXCLUSIONS.

## IV.	CONDITIONS

### (A)	Limit of Liability

The amount set forth in ITEM 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under this Policy.  Payment of **Loss**, including **Defense Expenses**, by the Insurer shall reduce the Limit of Liability.

### (B)	Indemnification and Other Insurance

(1) The **Insured Persons** and the **Company** understand and agree that all coverage under this Policy shall be specifically excess over, and shall not contribute with:

    (a) all indemnification and advancement to which an **Insured Person** may be entitled from any source, including but not limited to the **Company** or any **Outside Entity**; and

    (b) any **Insurance Program** maintained by the **Company** or any **Outside Entity**, whether such other insurance is stated to be primary, contributing, excess or otherwise.

However, if **Loss** is not paid by such other insurance or as indemnification or advancement, this Policy will respond on behalf of the **Insured Persons** as if it were primary, subject to all of its terms, conditions and limitations and without prejudice to the Insurer's excess position.

(2) This Policy shall not be subject to the terms or conditions of any other insurance.  The Insurer does not waive, compromise or release any of its rights to recover **Loss** paid under this Policy from the issuers of any other insurance under which coverage may be owed, or from any person or entity from which an **Insured Person** is entitled to indemnification or advancement, including the **Company** and any **Outside Entity**.

### (C)	Mergers and Acquisitions

(1) If, during the **Policy Period**, the **Company** acquires any assets, acquires a **Subsidiary**, or acquires any entity by merger, consolidation or otherwise, or assumes any liability of another entity, coverage

shall be provided for any **Loss** involving a **Claim** for a **Wrongful Act** occurring after the consummation of the transaction.

(2) With respect to the acquisition, assumption, merger, consolidation or other of any entity, asset, **Subsidiary** or liability as described in CONDITION (C)(1) above, there will be no coverage available under this Policy for any **Claim** made against any **Insured Person** for any **Wrongful Act** in connection with the acquired, assumed, merged, or consolidated entity, asset, **Subsidiary** or liability committed at any time during which such entity, asset, **Subsidiary** or liability is not included within the definition of "**Company**."

(3) If, during the **Policy Period**, any entity ceases to be a **Subsidiary**, the coverage provided under this Policy shall continue to apply to the **Insured Persons** who because of their service with such **Subsidiary** were covered under this Policy but only with respect to a **Claim** for a **Wrongful Act** that occurred or allegedly occurred prior to the time such **Subsidiary** ceased to be a **Subsidiary** of the **Company**.

(4) If, during the **Policy Period**, there is a **Change In Control**, the coverage provided under this Policy shall continue to apply but only with respect to a **Claim** for a **Wrongful Act** committed or allegedly committed prior to the time of the **Change In Control**, and

   (a) coverage will cease with respect to any **Claim** for a **Wrongful Act** committed subsequent to the **Change In Control**; and

   (b) the entire premium for the Policy will be deemed to be fully earned immediately upon the consummation of a **Change In Control**.

(D) **Notice**

(1) As a condition precedent to any right to payment under this policy with respect to any **Claim**, the **Insured Persons** or the **Company** shall give written notice to the Insurer of any **Claim** as soon as practicable after it is first made.

(2) If, during the **Policy Period**, the **Insured Persons** first becomes aware of a specific **Wrongful Act** and if, during the **Policy Period**, the **Insured Persons** or the **Company**:

   (a) provide the Insurer with written notice of the specific **Wrongful Act**, the consequences which have resulted or may result therefrom (including but not limited to actual or potential damages), the identities of the potential claimants, and the circumstances by which the **Insured Persons** first became aware of such **Wrongful Act**; and

   (b) request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

   then any **Claim** subsequently made arising out of such **Wrongful Act** will be treated as if it had been first made during the **Policy Period**.

All notices under CONDITIONS (D) (1) and (2) must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

(E) **Defense and Settlement of Claims**

(1) It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**. No **Insured Person** may incur any **Defense Expenses** or admit liability for, make any settlement offer with respect to, or settle any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld.

(2) Upon written request, the Insurer will pay on a current basis any covered **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage. In the event of such advancement, the **Insured Persons** agree that they shall repay the Insurer, severally according to

their interests, any **Loss**, including **Defense Expenses**, paid to or on behalf of the **Insured Persons** if it is finally determined that the **Loss** incurred is not covered under this Policy.

    (3)    Except for such **Defense Expenses**, the Insurer shall pay **Loss** only upon the final disposition of any **Claim**.

(F)    **Assistance, Cooperation and Subrogation**

    (1)    The **Insured Persons** and the **Company** agree to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agree that they will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

    (2)    In the event of any payment under this Policy, the Insurer shall be subrogated to all of the potential or actual rights of recovery of the **Insured Persons**, including any such rights of recovery against the **Company** or any **Outside Entity**. The **Insured Persons** shall execute all papers required and will do everything necessary to secure such rights including but not limited to the execution of such documents as are necessary to enable the Insurer to effectively bring suit in their name, and will provide all other assistance and cooperation which the Insurer may reasonably require.

(G)    **Interrelated Claims**

All **Claims** arising from **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to CONDITION (D)(1) or (2) above, if applicable.

(H)    **Exhaustion**

If the Insurer's Limit of Liability as set forth in ITEM 3 of the Declarations is exhausted by the payment of **Loss**, the premium as set forth in ITEM 6 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligations of any kind whatsoever under this Policy.

(I)    **Cancellation and Renewal of Coverage**

    (1)    The Chairman of the Board of Directors and the Chief Executive Officer of the **Parent Company** shall have the exclusive right to cancel this Policy on behalf of the **Insured Persons**. Such cancellation may be effected by mailing to the Insurer written notice stating when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations. In such event, the Insurer shall retain the customary short rate portion of the earned premium. Return or tender of the unearned premium is not a condition of cancellation.

    (2)    The Insurer may cancel this Policy only for nonpayment of premium. The Insurer will provide not less than twenty (20) days written notice stating the reason for cancellation and when the Policy will be canceled. Notice of cancellation will be sent to the **Parent Company** and the agent of record for the **Insured Persons**, if applicable.

    (3)    The Insurer is under no obligation to renew this Policy upon its expiration. Once the Insurer chooses to non-renew this Policy, the Insurer will deliver or mail to the **Parent Company** written notice stating such at least sixty (60) days before the Expiration Date set forth in ITEM 2 of the Declarations.

    (4)    The Insurer shall not be entitled under any circumstances to rescind this Policy, other than for non-payment of premium.

(J)    **Optional Extension Period**

    (1)    If either the **Insured Persons** or the Insurer does not renew this Policy, the **Insured Persons** shall have the right, upon payment of the additional premium set forth in ITEM 4 of the Declarations, to an extension of the coverage provided by this Policy with respect only to any **Claim** first made during the

period of time set forth in ITEM 4 of the Declarations after the Policy Expiration Date, but only with respect to a **Wrongful Act** occurring prior to the Policy Expiration Date.

(2)     As a condition precedent to the right to purchase the Optional Extension Period the total premium for this Policy must have been paid in full.  The right of the **Insured Persons** to purchase the Optional Extension Period will be immediately terminated if the Insurer does not receive written notice by the **Insured Persons** advising they wish to purchase the Optional Extension Period together with full payment of the premium for the Optional Extension Period within thirty (30) days after the Policy Expiration Date.

(3)     If the **Insured Persons** elect to purchase the Optional Extension Period as set forth in CONDITIONS (J)(1) and (2) above, the entire premium for the Optional Extension Period will be deemed to be fully earned at the Inception Date for the Optional Extension Period.

(4)     The purchase of the Optional Extension Period will not in any way increase the Limit of Liability set forth in ITEM 3 of the Declarations, and the Limit of Liability with respect to **Claims** made during the Optional Extension Period shall be part of and not in addition to the Limit of Liability for all **Claims** made during the **Policy Period**.

(K)     **Representation Clause**

The **Application** for coverage shall be construed as a separate **Application** for coverage for each **Insured Person**.  Each **Insured Person** represents that, to the best of his or her knowledge, the statements and particulars contained in the **Application** are true, accurate and complete, and each **Insured Person** agrees that this Policy is issued in reliance on the truth of that representation and that such particulars and statements, which are deemed to be incorporated into and constitute a part of this Policy, are the basis of this Policy.  In the event that any statements and particulars contained in the **Application** are untrue, inaccurate or incomplete, this Policy will be void with respect to any **Insured Person** who had actual knowledge as of the Inception Date of facts or information that were not accurately or completely disclosed as required in the **Application**.  No knowledge or information possessed by any **Insured Person** will be imputed to any other **Insured Person** for the purposes of determining the availability of coverage with respect to **Claims** made against such other **Insured Person**.

(L)     **Action Against the Insurer, Assignment, and Changes to Policy**

(1)     No action may be taken against the Insurer unless, as a condition precedent thereto:

(a)     there has been full compliance with all of the terms and conditions of this Policy; and

(b)     the amount of the obligation of the **Insured Person** has been finally determined either by judgment against the **Insured Person** after actual trial, or by written agreement of the **Insured Person**, the claimant and the Insurer.

(2)     Nothing contained herein shall give any person or entity any right to join the Insurer as a party to any **Claim** against the **Insured Persons** to determine their liability, nor may the **Insured Persons** implead the Insurer in any **Claim**.

(3)     Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

(4)     Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not cause a waiver or change in any part of this Policy or prevent the Insurer from asserting any right under the terms, conditions and limitations of this Policy.  The terms, conditions and limitations of this Policy may only be waived or changed by written endorsement signed by the Insurer.

(M)     **Authorization and Notices**

It is understood and agreed that, except as provided elsewhere in this Policy, the **Parent Company** will act on behalf of the **Company** and the **Insured Persons** with respect to:

(1)     the payment of the premiums,

(2)     the receiving of any return premiums that may become due under this Policy,

(3)     the giving of all notices to the Insurer as provided herein, and

(4)     the receiving of all notices from the Insurer.

(N)     **Entire Agreement**

The **Insured Persons** agree that the Declarations, the Policy, including any endorsements and attachments, and the **Application** shall constitute the entire agreement between the Insurer or any of its agents and the **Insured Persons** in relation to the insurance.

(O)     **Worldwide Coverage**

In consideration of the premium charged, coverage under this Policy shall extend anywhere in the world.

(P)     **Bankruptcy**

In the event that a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar state or local law, the **Insured Persons** and the **Company** hereby (1) waive and release any automatic stay or injunction which may apply in such proceeding in connection with this Policy or its proceeds under such Bankruptcy Code or law; and (2) agree not to oppose or object to any efforts by the Insurer or any **Insured Person** or the **Company** to obtain relief from any such stay or injunction.