**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re                    )

                     )

PARETEUM SECURITIES LITIGATION,   )    Case No. 1:19-cv-09767-AKH-GWG

                     )

                     )

## REPLY IN FURTHER SUPPORT OF THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Certain Individual Defendants*

Robert H. Turner, Edward O'Donnell, Denis McCarthy, Victor Bozzo, Robert Mumby, and Yves Van Sante (the "Defendants"), by and through their undersigned counsel, state as follows in response to the Limited Objection to Proposed Class Action Settlement By Liquidation Trustee for the TEUM Liquidation Trust (the "Limited Objection"):

**PRELIMINARY STATEMENT**

1.      In filing the Limited Objection, the Liquidation Trustee,[1] who lacks standing, seeks to alter the terms of the settlement (the "Settlement"), misstates the history of this litigation and the bankruptcy proceeding, and misapplies the law.  None of his arguments has merit, and the Limited Objection should be overruled and the Settlement approved in its entirety.

**A. The Liquidation Trustee Lacks Standing to Object to the Settlement**

1.      The Liquidation Trustee does not have standing to object to the terms of the Settlement—specifically the Side A settlement term (discussed below)— because the Debtors, and therefore the Liquidation Trust, do not have any rights to the proceeds under the XL Insurance Company  Policy No. ELU162674-19 (the "Side A Policy").  In what appears to be an effort to confer standing on himself, the Liquidation Trustee complains that it is "ironic" that the D&Os would seek to utilize the Side A Policy to cover their legal fees in connection with their defense costs because "the Pareteum debtors paid for the Side A Policy in the first place." *Limited Objection*, pg. 3.

2.      This assertion is incorrect.  The Side A Policy affords coverage only for claims against the directors and officers of Pareteum when Pareteum is unable to indemnify them and there is no other available insurance.  Therefore, the proceeds of the Side A Policy exist solely for the benefit of Pareteum's directors and officers, and the Debtors have no right to the proceeds.

---

[1] To the extent a term is not defined herein, said term shall be attributable to the terms as used in the Limited Objection.

*See Deangelis v. Corzine*, 151 F. Supp. 3d 356, 360–61 (S.D.N.Y. 2015) (concluding that the debtor's plan administrator lacked standing to object to the class action settlement because the debtor did not hold any rights to the proceeds under the policies regardless of the fact that the debtor paid for the policy and the policy itself is considered property of the estate)*; see also In re Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995). ("[W]hen a debtor corporation owns a liability policy that exclusively covers its directors . . . the proceeds of that D&O policy are not part of the debtor's bankruptcy estate."); *In re MF Global Holdings Ltd.*, 515 B.R. 193, 203–04 (Bankr. S.D.N.Y. 2014) ("[W]hen a policy covers the directors and officers exclusively, courts have generally held that the proceeds are not property of the estate.") (quotation marks and citations omitted).  This was a position repeatedly expressed in motion practice before the Bankruptcy Court over relief from the automatic stay for payment of the director and officer legal fees and expenses and for funding of the Settlement.[2]

3.      In fact, the Liquidation Trustee, in papers before the Bankruptcy Court in connection with the Defendants' motion to lift the automatic stay for authorization to use the insurance proceeds to fund the Settlement, acknowledged that the proceeds of the Side A Policy were only for the benefit of Pareteum's directors and officers: "At the same time they seek to exhaust the Policies and their proceeds, Movants' Proposed Settlement, by design, preserves an additional $5 million in "Side A" insurance coverage *available only to the Movants*, which Movants unabashedly proclaim will be used to fund their ongoing criminal defense." *Supplemental Objection Of The Liquidating Trustee To Motion For Order Confirming And/Or Determining That Proceeds Of Certain D&O Insurance Policies Are Not Subject  To The Automatic Stay*

---

[2] *See Motion For Entry Of Order Modifying The Automatic Stay, To The Extent Applicable, To Approve And Allow The Advancement Of Defense Costs Under D&O Insurance Policies,* (Bankruptcy Case No. 22-10615 (LGB), ECF Docket No. 117); *Motion For Order Confirming And/Or Determining That  Proceeds Of Certain D&O Insurance Policies Are Not  Subject To The Automatic Stay* (Bankruptcy Case No. 22-10615 (LGB), ECF Docket No. 329);

(Bankruptcy Case No. 22-10615 (LGB), ECF Docket No. 449) (emphasis added).  Despite this acknowledgment, the Liquidation Trustee, with new counsel, now seeks to assert a nonexistent, right to the Side A Policy, utterly ignoring the terms of the Side A Policy itself and failing to provide any basis for his position. *Limited Objectio*n, pg. 5–6.

4.      The purpose of D&O policies is to provide coverage for directors and officers themselves, not to siphon policy proceeds away from directors and officers to provide a potential resource of funds for the debtor's creditors.  *See Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a  D & O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). As the Debtors did not have any rights to the proceeds under the Side A Policy, neither does the Liquidation Trustee, and he lacks standing to object to how it can or cannot be used as set forth in the Settlement.

5.      The Settlement does not violate the Automatic Stay and the Plan Injunction. In fact, Judge Beckerman in the Bankruptcy Court granted certain Defendants' motion they filed on September 9, 2022 seeking entry of an order lifting the automatic stay, or determining it did not apply, so that D&O insurance proceeds could be utilized to fund the Settlement (the "Stay Relief Motion"). The Bankruptcy Court found that "[t]he automatic stay imposed by Bankruptcy Code section 362, to the extent applicable, does not bar XL Specialty Insurance Company, Wesco or Crum & Forster (collectively, the "Insurers") from paying, reimbursing, and/or advancing insurance proceed sunder the ABC Policies to fund the $7.6 million settlements. . . ." (Bankruptcy Case No. 22-10615 (LGB), ECF Docket No. 459)  The Bankruptcy Court further acknowledged the Side A policy's use for Defense Costs as defined under the Side A policy. The Trustee at that point did not contest that reservation of the Side A Policy nor did the Bankruptcy Court find any

issue with its usage. *See* Tr. 59:17- 61:8 ("Court: As long as there's a claim  defense costs, for whatever reason, whether it's the government's investigation or the litigation that's been commenced by them or something new that happens, it's capital D, Defense Costs, right, is what governs? MR. SABELLA: Yes.")

**B.  The Debtors Failed to Appear at the Preliminary Settlement Approval Hearing**

6.      To the extent that the Court determines that the Liquidation Trustee has standing to object to the terms of the Settlement, (which it does not) the Liquidation Trustee has no greater rights than the Debtors would have had, and the Debtors failed to appear or raise any issues to the Settlement at the Preliminary Settlement Approval Hearing held on October 12, 2022 (the "Preliminary Approval Hearing").  On September 21, 2022, this Court issued a Scheduling Order requiring the parties to appear for a hearing on the preliminary approval of the class action settlement on October 12, 2022 (Case No. 19 Civ. 09767 (AKH), ECF Docket No. 269).  The Liquidation Trustee complains that because the Effective Date had not yet passed, he was not appointed and was unable to be heard.

7.      This argument is unpersuasive.  The docket demonstrates that the Debtors' Bankruptcy Court-authorized counsel for this litigation, McGuireWoods LLP,[3] received electronic notification of the Scheduling Order.  Thus, the Debtors were on notice of the Preliminary Approval Hearing and neither the Debtors nor their counsel appeared.  Footnote 2 of the Limited Objection acknowledges that the Liquidation Trustee succeeded to the rights of the Debtors upon his appointment.  *Limited Objection*, pg. 2. As noted, the Debtors were still in control of their affairs at the time of the Preliminary Approval Hearing, yet they did not appear.  The Liquidation

---

[3] *Order Authorizing The Debtors To Employ And Pay Professionals, Including McguireWoods LLP, Utilized In The Ordinary Course Of Business Nunc Pro Tunc To The Petition Date* (Bankruptcy Case No. 22-10615 (LGB), ECF Docket No. 228).

Trustee—who steps into the Debtors' shoes—cannot claim that the Debtors were precluded from being heard.

8.      In fact, the Liquidation Trustee is not new to either the Debtors' cases or the issues raised in the Settlement; starting on July 5, 2022, [4] he served as the Wind-Down Officer of the Debtors, well before his current appointment as the Liquidation Trustee and the Preliminary Approval Hearing.  He has been involved in the Debtors' cases at least since that date and cannot claim ignorance of these issues as he was the one handling the Debtors' affairs.  That his title changed from Wind-Down Officer for the Debtors to Liquidation Trustee does not negate his knowledge or role on behalf of the Debtors prior to the Effective Date or excuse the Debtors' failure to appear at the Preliminary Approval Hearing.  The Liquidation Trustee has suffered no prejudice.

9.      The Debtors' bankruptcy counsel was also aware of the Settlement, as they were informed about the Settlement prior to the Defendants' filing the Stay Relief Motion.  After Defendants filed the Stay Relief Motion, the Debtors and the Official Committee of Unsecured Creditors requested that the Defendants adjourn the Stay Relief Motion in light of the pending confirmation hearing on the Debtors' proposed plan, which would be held on October 6, 2022.  Defendants consented, the plan was confirmed, and this Court held the Preliminary Approval Hearing the following week, at which the Debtors did not appear.  Nothing prevented either the Debtors' counsel from appearing or the Liquidation Trustee in his then-capacity as the Debtors' Wind-Down Officer.

### C.  The Side A Settlement Term Is Integral to the Settlement

---

[4] *See Order Authorizing The Retention Of Saccullo Business Consulting, LLC To Provide Anthony M. Saccullo As Wind-Down Officer And Additional Personnel Nunc Pro Tunc To July 5, 2022, And Granting Related Relief* (Bankruptcy Case No. 22-10615 (LGB), ECF Docket No. 235).

10.     Without disclosing the details of the mediation, it should come as no surprise that it consisted of protracted and thorough discussions, with all sides to the Settlement advocating for their clients to reach this resolution.  As seen in the Settlement, the Securities Class Action Plaintiffs agreed not to seek additional funds from the Side A Policy (the "Side A Settlement Term") because there were, and are, continuing governmental investigations relating to the Debtors.  This was a required condition of the Settlement as it is unclear if the Settlement would have been agreed to by all insureds covered under the insurance policies if it meant utilizing all of the policies' proceeds, including the Side A Policy.  Doing so would have left no insurance for legal fees and expenses in connection with the ongoing governmental investigations.  The Side A Settlement Term cannot simply be stripped out of the Settlement.  *See In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986) (quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir.1982)) ("Indeed, it is not a district judge's job to dictate the terms of a class settlement; he should approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify its terms."); *Deangelis v. Corzine*, 151 F. Supp. 3d 356, 361–62 (S.D.N.Y. 2015) (declining to modify the agreed-upon terms of the settlement agreement at the request of the debtor's plan administrator because the district court was not authorized to do so).

11.     If the court entertains the Trustee's position despite the Trustee's lack of standing, excising the Side A Settlement Term could upend the entire Settlement.  Without that provision, the plaintiffs may seek to terminate the  Settlement and access the proceeds under the Side A Policy.  *See* ECF Doc. No. 265, Stipulation and Agreement of Settlement  ¶32 ("It is further stipulated and agreed that Plaintiffs, provided they unanimously agree, and Individual Defendants shall each have the right to terminate the Settlement and this Stipulation. . .  the Court's final refusal to approve the Settlement or any material part thereof"). Only the parties to the Settlement

agreement can modify its terms. *See* Doc. No. 265, Stipulation and Agreement of Settlement ¶41

("The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended,

nor may any of its provisions be waived except by a writing signed on behalf of both Plaintiffs and

Individual Defendants (or their successors-in-interest"). This could lead to additional settlement

discussions or even the failure of the Settlement entirely.

12.    And there could be further fallout: the individual insureds who are not implicated

in these litigations, but are subject to the governmental investigations, may object to the

Settlement; and other parties whose settlements are contingent upon the final approval of this class

action settlement may also object. Additionally, removing the Side A Settlement Term may

require subsequent notice to the class—a substantial expense that will further erode the Side A

Policy.

13.    Thus, the relief the Liquidation Trustee seeks would cause great prejudice and

harmful collateral consequences. On the other hand, the Settlement does not impair the rights of

the Trustee because the Trustee has no rights under the Side A Policy. The Liquidation Trustee

complains that the terms of the Settlement restrict his abilities to look to the Side A Policy to settle

his own competing claims against the Defendants or recover under a hypothetical judgment in his

favor against them. However, that ignores several practical realities of the Settlement and his own

position. His claims against certain individual insureds are in litigation, and it is highly unlikely

he could obtain a judgment before the policy proceeds are used in connection with government

investigation—and, ironically, the defense of his litigation. To be sure, the individual insureds

who are defendants in the Trustee's suit would benefit from a *de miminis* settlement of the

Trustee's claim utilizing the Side A policy, but the Settlement precludes it, and as discussed above,

the prejudice and collateral consequences of revising the Settlement are too great. And, to state

the obvious, there is no requirement that the Defendants settle the Trustee's asserted claims against them at all.

14.    New York Insurance Law §3420, is inapplicable to the Trustee and cannot confer greater rights to the Trustee than he already has because he is *not* a judgment creditor.  *See* N.Y. Ins. Law § 3420 (McKinney) ("any person who . . . has *obtained a judgment* against the insured or the insured's personal representative to enforce a right of contribution or indemnity, or any person subrogated to the *judgment creditor's* rights under such judgment") (emphasis added). The caselaw cited by Trustee is easily distinguishable from the case at bar since the Trustee has no cognizable claim to the insurance proceeds. *See Smith & Wesson v. Birmingham Fire Ins. Co.*, 123 A.D.2d    135,    137–38,    510    N.Y.S.2d    606,    608    (1st    Dep't    1987)    ( *"A settlement agreement between insurer and insured, made without the participation of the injured third party, should not be given the broad effect of barring the *third-party judgment creditor's rights")* (emphasis added).

15.    The Trustee's bankruptcy court litigation is still in the early stages, and the course it will take is uncertain.  The only certainty is that that litigation and the government investigations will likely exhaust the Side A Policy.  Thus, even if the Liquidation Trustee were to eventually prevail in a judgment in his favor in the Bankruptcy Court, that does nothing to address the potential of appeals or, more importantly for his purposes, whether there will be any proceeds remaining under the Side A Policy to satisfy any final judgment he might obtain.

## **CONCLUSION**

16.    For the reasons set forth herein, the Limited Objection should be overruled and the Settlement approved.

Dated:    April 18, 2023
          New York, New York

BAKER & HOSTETLER LLP

By: _ *Douglas W. Greene* _____
Douglas W. Greene
Michael A. Sabella
Erica Barrow
45 Rockefeller Plaza
New York, New York 10111
212-589-1400
dgreene@bakerlaw.com
msabella@bakerlaw.com
ebarrow@bakerlaw.com

*Attorneys for Certain Individual Defendants*

10