**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PARETEUM SECURITIES LITIGATION | Case No. 1:19-cv-09767-AKH-GWG |

**SUPPLEMENTAL DECLARATION OF MARGERY CRAIG CONCERNING:**
**(A) MAILING OF THE POSTCARD NOTICE; AND (B) REPORT ON CLAIMS**
**RECEIVED TO DATE AND REQUESTS FOR EXCLUSION AND OBJECTIONS**

I, Margery Craig, declare as follows:

1. I am a Project Manager of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over fifteen years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over five hundred twenty-five (525) class action cases since its inception. I have personal knowledge of the facts set forth herein, and if called on to do so, I could and would testify competently thereto.

**UPDATE ON MAILING OF THE POSTCARD NOTICE**

2. Pursuant to the Court's Order Preliminarily Approving and Providing for Notice of Pendency, dated December 20, 2022, (the "Preliminary Approval Order") (Dkt. No. 275), SCS was appointed as the Claims Administrator in connection with the Settlement of the above-captioned action.[1] I submit this declaration as a supplement to my previously filed Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated January 19, 2023 (the "Initial Mailing Declaration") (Dkt. No. 278) in order to provide the Court and the

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Amended Stipulations and Agreement of Settlement, dated as of October 25, 2022 (the "Stipulations") (Dkt. Nos. 273 and 274).

Parties with updated information regarding the dissemination of notice to potential Settlement Class Members, as well as updates concerning other aspects of the Settlement administration process.

3.    As reported in the Initial Mailing Declaration, SCS mailed or emailed 1,732 letters to the Nominee Account Holders and Institutional Groups contained on SCS's master mailing list.  SCS then mailed an additional 3,253 Postcard Notices to potential Settlement Class Members and nominees, and SCS received notice that two nominees mailed seven Postcard Notices to potential Settlement Class Members. Since the Initial Mailing Declaration, SCS mailed an additional 5,877 Postcard Notices due to responses from nominees who responded with names and addresses of potential Settlement Class Members. Additionally, SCS received requests from three nominees for 29,200 Postcard Notices so that they could forward them to their customers, SCS was also notified by one nominee that they mailed 652 Postcard Notices to their customers, and SCS was also notified by one nominee that they emailed the link to the Summary Notice and the Claim Form to 35,628 of their customers. In total, as of the date of this Declaration, 74,617[2] potential Settlement Class Members were either mailed a Postcard Notice or emailed the link to the Summary Notice and Claim Form on the settlement website.

4.    Since the Initial Mailing Declaration was filed, 1,881 Postcard Notices were returned undeliverable. Of these, the United States Postal Service provided a forwarding address for 136, and SCS immediately mailed another Postcard Notice to the updated addresses.  The

---

[2]  The Initial Mailing Declaration stated that SCS received one request from a potential Settlement Class Member for the Notice and Claim Form to be mailed to them, and SCS immediately mailed the Notice and Claim to that potential Settlement Class Member. Since the Initial Mailing Declaration was filed, SCS received an additional 44 requests from potential Settlement Class Members for the Notice and Claim Form to be mailed. SCS immediately mailed the Notice and Claims to those potential Settlement Class Members.

remaining 1,745 Postcard Notices returned as undeliverable were "skip-traced" to obtain updated addresses and 1,032 were re-mailed to updated addresses.

### UPDATE ON TOLL-FREE TELEPHONE LINE

5.    The Initial Mailing Declaration noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement.  SCS continues to promptly respond to each telephone inquiry and will continue to respond to Settlement Class Member inquiries via the toll-free telephone number.

### UPDATE ON SETTLEMENT WEBSITE

6.    The Initial Mailing Declaration also noted that on January 3, 2023, SCS established a website, www.PareteumSecuritiesLitigation.com.   The website is accessible 24 hours a day, 7 days a week. The website contains a home page; an important documents page; an online claim filing page; a nominees page; and a contact us page. SCS will continue to maintain and, as appropriate, update the Settlement website with relevant case information.

### REPORT ON CLAIMS RECEIVED TO DATE

7.    The deadline for claims submission was April 3, 2023. As of the date of this declaration, SCS has received 3,666 claims. Below is a breakdown of the claims submitted to date.

| Type of Claims | Number of claims |
|---|---|
| Valid | 1,747 |
| Deficient Claims with limited proof | 301 |
| Rejected (no losses/gains) | 1,618 |
| | 3,666 |

3

## UPDATE ON REPORT ON EXCLUSIONS AND OBJECTIONS

8.       The Postcard Notice, Notice, Summary Notice informed potential Settlement Class Members that written requests for exclusion were to be mailed to SCS such that they were received no later than April 3, 2023. As reported in the Initial Mailing Declaration, SCS received one invalid exclusion request. This exclusion request did not provide the information/ documentation required under the Preliminary Approval Order and set forth in the Notice. SCS emailed a notice to this potential Settlement Class Member whose requests required additional information/documentation explaining what further information/documentation was required and provided an opportunity to cure the deficient request. Exhibit E of the Initial Mailing Declaration contains the copy of the invalid exclusion request. Since the Initial Mailing Declaration, SCS received an additional request for exclusion. A copy of the exclusion request with personal information redacted is attached hereto as **Exhibit A**.

9.       According to the Postcard Notice, Notice, and Summary Notice, Settlement Class Members seeking to object to the Settlement or any of its terms, the proposed Plan of Allocation, and/or the application by Lead Counsel for an award of fees and expenses were required to submit their objections in writing such that the objection was received by Counsel for Lead Plaintiff and Counsel for the Individual Defendants and Squar Milner LLP, as well as filed with the Clerk of the Court, no later than April 3, 2023. Since the Initial Mailing Declaration, SCS received notification from Lead Counsel of one objection. A copy of this objection is attached hereto as **Exhibit B**.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 17th day of April 2023, in Media, Pennsylvania.


Margery Craig

_____
Margery Craig

Dear Sir,

This letter is to request exclusion from the Settlement Class In re Pareteum Securities Litigation, Civil Action No. 1:19-cv-09767.

Included are the dates, Prices and Number of Shares Purchased Thru Ameritrade during the Settlement Period.

**Ameritrade**

Printer-friendly page | Page help

# History & Statements

**Transactions**  **Statements**  **Confirmations**  **Shareholder Library**

| | |
|---|---|
| **Type:** | All transaction types ⌄ |
| **Symbol(s):** | teum |
| | (separate symbols with commas) |
| **View range:** | Month-to-date \| 1 day  7 days  14 days  30 days  60 days |
| **View year:** | 2023  2022  2021  2020  2019  2018  2017  2016  Show More... |
| **View dates:** | Dec. ⌄  14 ⌄  2017 ⌄  to:  Dec. ⌄  14 ⌄  2018 ⌄ |
| | You can search a date range of up to one year. |
| **Sweeps:** | Hide sweeps |
| | Sweeps are uninvested cash transactions that move in and out of cash alternatives. |

or

### Account Balances

| | |
|---|---|
| 12/14/2017 Cash balance | $0.00 |
| 12/14/2018 Cash balance | -$1,943.87 |
| **Net change** | **$0.00** |
| 12/14/2017 Cash alternatives balance | $95.57 |
| 12/14/2018 Cash alternatives balance | $2,194.31 |
| **Net change** | $2,098.74 |

### Looking for tax documents?

To find 1099s and other tax documents, go to the Tax Center.

### Search results for 12/14/2017 to 12/14/2018

| Date/Time ⌄ | Description | Amount | Commission | Reg Fee | Details |
|---|---|---|---|---|---|
| 07/25/2018 11:53:03 | Bought 100 TEUM @ 2.94 | | 6.95 | 0.00 | |
| 07/25/2018 11:53:03 | Bought 3900 TEUM @ 2.9387 | | 0.00 | 0.00 | |
| 09/21/2018 09:30:00 | Bought 900 TEUM @ 2.79 | | 6.95 | 0.00 | |
| 11/23/2018 11:28:24 | Bought 5100 TEUM @ 1.925 | | 6.95 | 0.00 | |

Open an account      Find a branch      Contact us      Screen shar

**Ameritrade**

Printer-friendly page | Page help

## History & Statements

**Transactions**  Statements  Confirmations  Shareholder Library

**Type:**  All transaction types  ▾

**Symbol(s):**  teum
(separate symbols with commas)

**View range:**  Month-to-date  |  1 day  7 days  14 days  30 days  60 days

**View year:**  2023  2022  2021  2020  2019  2018  2017  2016  Show More...

**View dates:**  Dec. ▾  15 ▾  2018 ▾  to:  June ▾  6 ▾  2019 ▾
You can search a date range of up to one year.

**Sweeps:**  Hide sweeps
Sweeps are uninvested cash transactions that move in and out of cash alternatives.

or

### Account Balances

| | |
|---|---|
| 12/15/2018 Cash balance | -$1,943.87 |
| 6/6/2019 Cash balance | $0.00 |
| **Net change** | **$0.00** |
| 12/15/2018 Cash alternatives balance | $2,194.31 |
| 6/6/2019 Cash alternatives balance | $47.37 |
| **Net change** | |

### Looking for tax documents?

To find 1099s and other tax documents, go to the Tax Center.

### Search results for 12/15/2018 to 6/6/2019

| Date/Time ▴ | Description | Amount | Commission | Reg Fee | Details |
|---|---|---|---|---|---|
| | [Your account has no transactions on file for the selected criteria] | | | | |



Paretem Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N Jackson Street, Suite 205
Media, PA 19063

19063-255455

FEB 24 2023

21 FEB 2023 PM 2 L



<b>EXHIBIT B</b>

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PARETEUM SECURITIES LITIGATION | Case No. 1:19-cv-09767-AKH-GWG |

**LIMITED OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT BY**
**LIQUIDATION TRUSTEE FOR THE TEUM LIQUIDATION TRUST**

Anthony M. Saccullo, in his capacity as the Liquidation Trustee (the "Liquidation Trustee") for the TEUM Liquidating Trust, by and through his counsel, and pursuant to the Court's *Order Preliminarily Approving Settlement and Providing for Notice of Pendency* (ECF No. 275) (the "Preliminary Approval Order") and the *Notice of Pendency of Class Action and Proposed Settlement* (ECF No. 278-3) (the "Long-Form Notice"), hereby files this Limited Objection (the "Limited Objection") to the proposed *Amended Stipulation and Agreement of Settlement* (ECF No. 273) (the "Proposed Settlement")[1], and states as follows:

**I.      LIMITED OBJECTION**

The Liquidation Trustee objects to the Proposed Settlement solely to the extent that it seeks to modify the terms of an insurance contract and negatively impact the Liquidating Trust's rights by including the following language: "The Parties also agree that the proceeds of XL Insurance Company Policy No. ELU162674-19 (the 'Side A Policy') only will be used to pay Defense Expenses for Claims (as those terms are defined in the Side A Policy) covered under the Side A Policy." Proposed Settlement at ¶ 16 (hereinafter referred to as the "Insurance Proceeds Clause").

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation* (ECF No. 280).

00750926 DOCX 13

The Insurance Proceeds Clause wrongfully seeks to modify the terms of the Side A Policy and prevent the Liquidation Trustee from having any recourse to the Side A Policy, despite the Side A Policy being property of the Debtor's bankruptcy estate and the Liquidation Trustee, who is not a party to the Proposed Settlement, possessing valuable claims against the Individual Defendants. Accordingly, the Insurance Proceeds Clause improperly impairs the rights of the Liquidation Trustee, violates the automatic stay and post-confirmation injunction protecting the Liquidating Trust, and should be stricken from the Proposed Settlement. Striking the Insurance Proceeds Clause will have no impact on the beneficiaries of the Proposed Settlement – the class action shareholders – and protects the rights of the Liquidation Trustee (and the creditors of the Debtor's bankruptcy estate) that the Proposed Settlement is inappropriately trying to restrict.

### A. The Liquidating Trust Was Previously Unable to Defend its Rights

The Liquidation Trustee is seeking to be heard now because he had no opportunity to defend the Liquidating Trust's rights previously. At the time of the October 12, 2022 hearing to preliminarily approve the Proposed Settlement, the Liquidating Trust had not yet come into existence and the Liquidation Trustee had not yet been appointed.[2] As such, the Liquidation Trustee was unable to oppose the preliminary approval of the Proposed Settlement, but the Court plainly recognized the impact that the Proposed Settlement would have on the Liquidating Trust. Indeed, at the October 12th hearing, after being informed of the Individual Defendants' attempt to *not* "set aside" any proceeds of the Side A Policy for potential claims of the then yet to be appointed Liquidation Trustee, the Court questioned: "Well, should the trustee be involved in the

---

[2] The Pareteum debtors' liquidating Chapter 11 plan was confirmed on October 7, 2022, but its effective date did not occur until October 21, 2022. On the October 21, 2022 effective date, the TEUM Liquidating Trust came into being to succeed to the rights of the Pareteum debtors. *See* Notice of Effective Date, ECF No. 397 and Confirmation Order, ECF No. 374 ("Confirmation Order") at ¶¶ 52, 54, both in *In re Pareteum Corp., et al.*, Case No. 22-10615-LGB (Bankr. S.D.N.Y.).

settlement?" *See* Transcript of October 12, 2022 Hearing ("10/12/22 Tr.") at 8:8-19.[3] The response given was that the Liquidation Trustee had not yet been appointed. *Id.* at 8:20-21. However, since that hearing, the Liquidation Trustee was not only appointed but also brought suit against the Individual Defendants for breaching their fiduciary duties to Pareteum Corp. based upon various improper conduct, including the material misstatements of Pareteum Corp.'s financials. *See* Complaint, ECF No. 1 in *Saccullo v. Turner, et al.*, Adv. Proc. No. 22-01177-LGB (Bankr. S.D.N.Y.) (hereinafter, the "D&O Adversary").[4] Nonetheless, the Defendants now seek approval of the Proposed Settlement which, they assert, will permit them to run the meter on their defense costs while precluding the Liquidation Trustee from accessing the policy, whether via a settlement or judgment.

**B. The Insurance Proceeds Clause Violates New York Law**

The attempt to shoehorn the Insurance Proceeds Clause into the Proposed Settlement is inappropriate because it purports to impair the rights of the Liquidation Trustee in violation of his contractual rights. In fact, the Individual Defendants concede that the purpose of this language is to, among other things, prevent the Liquidation Trustee from accessing the Side A Policy proceeds, stating: "the [Individual Defendants] need to preserve some insurance proceeds for defense of the government investigations." *See* Individual Defendants' Reply in Support of Stay Relief Motion, ECF No. 411 at ¶ 23 in Case No. 22-10615-LGB (Bankr. S.D.N.Y.). The intended result is ironic given that the Pareteum debtors paid for the Side A Policy in the first place, but the Insurance Proceeds Clause also runs contrary to the terms of the Side A Policy itself as well as established case law. To wit, the Side A Policy provides that its proceeds are available to fund both Defense

---

[3] A copy of the relevant excerpts of this transcript is annexed hereto as <u>Exhibit A</u>.

[4] A copy of the Complaint in the D&O Adversary is annexed hereto as <u>Exhibit B</u>.

Costs and Losses (*i.e.*, including judgments or settlements),[5] and New York law prohibits the insurer and the insureds from entering into a settlement which impairs the rights of third parties with respect to the Side A Policy.[6] *See Smith & Wesson v. Birmingham Fire Ins. Co.*, 123 A.D.2d 135, 137-38 (N.Y. App. Div. 1st Dept. 1987) (holding that settlement agreement between insurer and insured for loss of goods could not impair rights against insurance policy of party whose goods were lost by insured); *Rushing v. Commercial Cas. Ins. Co.*, 251 N.Y. 302 (1929) (Cardozo, J.) (settlement between insurer and insured could not impair rights of third party as "she is not, indeed, affected by the compromise, which was unavailing to divest her of rights previously accrued."); *see also Scott v. Freeport Motor Cas. Co. of Freeport*, 392 Ill. 332, 346, 64 N.E.2d 542, 549 (1946) ("It would be an injustice to such injured party if the law would permit the acts of the insured occurring after the accident to defeat the policy."). This same principle is true here, as the insureds and various claimants have jointly sought to enjoin another claimant (the Liquidation Trustee) from accessing the insurance policy proceeds, but the Liquidation Trustee's rights to those proceeds and under the Side A Policy have already accrued.

Furthermore, the Insurance Proceeds Clause plainly violates New York Insurance Law § 3420, which both (i) requires insurance policies to permit creditors who have obtained a judgment against an insured to bring an action against the insurer for payment of that judgment up to the

---

[5] The Side A Policy defines Loss (with some exclusions not relevant here) as "damages, *judgments, settlements* or other amounts (including pre- & post-judgment interest, punitive or exemplary damages, or the multiplied portion of any damage award, where insurable by law) and **Defense Expenses** that the **Insured Persons** are obligated to pay." *See* Side A Policy at II.K (emphasis added). A copy of the Side A Policy with endorsements is annexed hereto as Exhibit C. Defense Expenses, in turn, are defined as "reasonable legal fees and expenses incurred in the defense or investigation of any **Claim**" but not including "overhead expenses or any salaries, wages, fees, or benefits of its directors, officers, or employees. *Id.* at II.E.

[6] New York Law governs the Side A Policy. The Side A Policy was purchased by an entity with its principal place of business in New York and contains multiple endorsements to provide notice and provisions to accord with New York requirements. *See* Side A Policy at Item 1 and Endorsement Nos. 3, 4, 5, 6.

limit of coverage and (ii) provides that such judgment creditors can bring such actions. *See* N.Y. Ins. Law §§ 3420(a)(2), 3420(b); *Sales v. U.S. Underwriters Ins. Co.*, No. 93 Civ. 7580, 1995 WL 144783, at *9 (S.D.N.Y. Apr. 3, 1995) (because "plaintiffs' right of action under Section 3420(a)(2) accrued at the time of the injury . . . any subsequent settlement or release effectuated by [the tortfeasor] and [insurance company] is not determinative of plaintiffs' rights."); *Mineweaser v. Once Beacon Ins. Co.*, No. 14-CV-0585A (Sr), 2021 WL 5149736, at *2 (W.D.N.Y. Nov. 5, 2021) (same); *see also Goldstein v. Bernstein*, 315 Mass. 329, 332, 52 N.E.2d 559, 561 (1943) (holding, in construing a similar direct action statute: "After a cause of action has accrued to the injured persons against the insured, then the parties to the contract of insurance cannot by any release, agreement or collusion destroy the rights of the injured persons in the indemnity."); *Spann v. Commercial Standard Ins. Co. of Dallas, Tex.*, 82 F.2d 593, 599 (8th Cir. 1936) (construing a similar right of action; holding that attempt to cancel insurance policy by insured subsequent to accrual of injured's claim to be of no effect: "A contrary rule allowing the insured and insurer to destroy the claim of the injured would render the right of little value."). In short, the parties are seeking Court approval of a Proposed Settlement that contains language contrary to well-established law.

## C. The Insurance Proceeds Clause Violates the Automatic Stay and the Plan Injunction

The Insurance Proceeds Clause is further inappropriate because it violates the automatic stay of Bankruptcy Code § 362[7] and the plan injunction of the confirmation order[8] protecting the

---

[7] The plan and confirmation order provide for the automatic stay to continue in effect post-confirmation. *See* Confirmation Order at ¶ 60 (adopting injunctions provided for in plan); *id.* at Ex. A, § 10.4 ("Unless otherwise provided, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.").

[8] *See* Confirmation Order, ECF No. 374 at ¶ 61 ("Upon entry of this Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere

Liquidating Trust.  Regardless of whether the proceeds of the Side A Policy are estate property, the policy itself and the Liquidating Trust's rights as a claimant under that Policy are.  As such, the parties in this action via the Proposed Settlement cannot seek to impair those rights.  *See Eastern Equipment and Servs. Corp. v. Factory Point Nat'l Bank, Bennington*, 236 F.3d 117, 121 (2d Cir. 2010) (finding Bankruptcy Code precludes jurisdiction in the district courts to determine stay violations).[9]

### D. The Insurance Proceeds Clause Can and Should Be Stricken

Striking the Insurance Proceeds Clause would have no impact on the Proposed Settlement. The language does not impact the distributions to be made to the class by the Proposed Settlement. If anything, to the extent the Liquidation Trustee can make a claim to the Side A Policy, the more likely it is that he can make distributions to Pareteum's creditors.  Further, the Insurance Proceeds Clause was not included in the notice provided to the class regarding the Proposed Settlement. Members of the class were sent postcards with a brief description of the claims and the proposed settlement, none of which referenced the Side A Policy or the Insurance Proceeds Clause.  *See* January 19, 2023 Declaration of Margery Craig, ECF No. 278 ("Craig Decl.") at ¶ 3, Ex. A.  That postcard referred recipients to a website for further information, *see id.*, which provides the Long-Form Notice and summary notice, the proof of claim form, the operative complaints, the Court's August 11, 2021 opinion denying the motions to dismiss, the proposed stipulation of settlement with Squar Milner, LLP, and the Proposed Settlement.  *See* Craig Decl. at ¶ 11; *see also*

---

with the implementation or consummation of the Plan, including the making of Distributions and payments contemplated under the Plan.").

[9] The parties herein obtained stay relief from the Bankruptcy Court for the settlement payout from the insurance policies, but did not obtain stay relief to enter into the Proposed Settlement or for any of its proposed terms, including the Insurance Proceeds Clause.  *See* Stay Relief Order, ECF No. 459 in *In re Pareteum Corp., et al.*, Case No. 22-10615-LGB (Bankr. S.D.N.Y.).

https://pareteumsecuritieslitigation.com/ (accessed March 25, 2023). The Insurance Proceeds Clause is buried in the middle of the 45-page Proposed Settlement. The Long-Form Notice was also sent via the Legal Notice System of the Depository Trust Company, and the summary notice was published via GlobeNewswire and PR Newswire, but none of those notices refer to the Insurance Proceeds Clause. *See* Craig Decl. at ¶¶ 8-9, Exs. C, D. As such, striking the Insurance Proceeds Clause should not require additional notice, and even if it did, such notice could be provided at limited additional expense.

## II. CONCLUSION

For the forgoing reasons, the Liquidation Trustee respectfully requests that the Court strike the Insurance Proceeds Clause but otherwise approve the Proposed Settlement, and grant such other and further relief as the Court deems just and proper.

Dated: April 3, 2023

**BAST AMRON LLP**

By: */s/ Jaime Leggett*
Jaime B. Leggett, Esq.
One Southeast Third Avenue
Suite 2410
Miami, Florida 33131
(305) 379-7904
bamron@bastamron.com
pklock@bastamron.com
jleggett@bastamron.com

*Attorneys for Plaintiff Anthony M. Saccullo,*
*in his capacity as the Liquidation Trustee for*
*the TEUM Liquidating Trust*

00750926 DOCX 13

7