**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

IN RE PARETEUM SECURITIES LITIGATION

Case No. 1:19-cv-09767-AKH-GWG

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND LEAD
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.   THE REACTION OF THE SETTLEMENT CLASS SUPPORTS APPROVAL OF THE
      MOTIONS .................................................................................................................... 3

III.  THE TRUSTEE'S OBJECTION SHOULD BE OVERRULED ........................................... 5

      A.  Pertinent Factual Background Regarding the Objection ...................................... 6

      B.  The Trustee Lacks Standing to Object to the Settlement ..................................... 9

          1.  The Trustee Lacks Standing to Object to the Settlement Because He Is Not a
              Settlement Class Member ......................................................................... 10

          2.  The Trustee Lacks Standing to Object to the Settlement Because He Is Not an Insured
              Under the Side A Policy ........................................................................... 13

      C.  The Trustee Has Waived Any Objections to the Settlement .............................. 15

IV.   CONCLUSION .......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305 (11th Cir. 2004)............ 13

*Airborne Am., Inc. v. Kenway Composites*, 554 F. Supp. 3d 1066 (S.D. Cal. 2021).................... 13

*Anwar v. Fairfield Greenwich Ltd.*, 133 F. Supp. 3d 560 (S.D.N.Y. 2015) ................................. 11

*Bhatia v. Piedrahita*, 756 F.3d 211 (2d Cir. 2014) ............................................................. 9, 11, 12

*Candelaria v. Health Care Serv. Corp.*, No. 17-cv-0404, 2020 U.S. Dist. LEXIS 119651 (D.N.M. July 8, 2020)................................................................................................................... 10, 12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care. L.L.C.*, 504 F.3d 229 (2d Cir. 2007)..................................................................................................... 10

*Chevron Corp. v. Donziger*, No. 11-cv-0691, 2018 U.S. Dist. LEXIS 32811 (S.D.N.Y. Feb. 28, 2018) ..................................................................................................................................... 15

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ..................................................................... 4

*Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989) ....................................................................... 10

*In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454 (S.D.N.Y. 2013) ................................. 10

*In re Bisys Sec. Litig.*, No. 04-cv-3840, 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 16, 2007) 5

*In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ......................................... 4

*In re Lloyd's Am. Tr. Fund Litig.*, No. 96-cv-1262, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ............................................................................................................................... 4

*In re Phar–Mor Inc. Secs. Litig.*, 164 B.R. 903 (W.D. Pa. 1994)................................................. 14

*In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ...................................................................................................... 12

*In re Reliance Acceptance Grp., Inc.*, 235 B.R. 548 (D. Del. 1999) ........................................... 14

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 U.S. Dist. LEXIS 85554
(S.D.N.Y. Nov. 7, 2007) .................................................................................................. 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................... 9

*McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006)........................................ 4

*North River Ins. Co. v. Philadelphia Reins. Corp.*, 63 F.3d 160 (2d Cir. 1995) .......................... 15

*United States v. New York*, No. 13-cv-4165, 2014 U.S. Dist. LEXIS 35274 (E.D.N.Y. Mar. 17,
2014) ............................................................................................................................... 10

*Wal-Mart Stores, Inc. v. Visa USA. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) .................................... 4

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................. 9

## Rules

FED. R. BANKR. P. 8002 ..................................................................................................... 16

FED. R. CIV. P. 23(e)(5)...................................................................................................... 10

FED. R. CIV. P. 24 .............................................................................................................. 11

Lead Plaintiff, Pareteum Shareholder Investor Group ("Plaintiffs" or "PSIG"), on behalf of itself and the Settlement Class, and Lead Counsel Kahn Swick & Foti, LLC ("Lead Counsel" or "KSF"), respectfully submit this reply memorandum in further support of: (i) Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Final Approval Motion"; ECF No. 279) and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (the "Fee and Expense Motion"; ECF No. 281).[1]

## I.    PRELIMINARY STATEMENT

The proposed Settlement resolves all claims brought against the Settling Defendants for an all-cash payment of $5.65 million, plus $100,000 towards Notice costs from the Individual Defendants. As detailed in Plaintiffs' opening papers (*see* ECF Nos. 279, 280), the Settlement is the product of hard-fought litigation and extensive arm's-length settlement negotiations and represents a solid recovery for the Settlement Class in light of the substantial challenges to establishing liability and damages, as well as the unlikelihood that Plaintiffs would recover anything at all because of Pareteum's bankruptcy, ongoing government investigations against some or all of the Individual Defendants, and rapidly wasting insurance coverage. Further, as detailed in the Fee and Expense Motion, Lead Counsel expended significant resources, litigating tirelessly to confer substantial benefits upon the Settlement Class, more than justifying its request for a 30% award of attorneys' fees and reimbursement of reasonable litigation expenses.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Memorandum of Law in Support of the Final Approval Motion, ECF No. 282.

Pursuant to the Court-approved Notice informing Settlement Class Members that "[t]he Mediator's determination [regarding any award of attorneys' fees to Counsel for Loskot] is subject to appeal to Judge Hellerstein" (ECF No. 273-2 at 4), Lead Counsel and Plaintiff Sabby respectfully appeal the Mediator's April 11, 2023, decision on the Loskot attorneys' fee award. The parties' submissions to the Mediator are attached to the accompanying Declaration of Kim E. Miller ("Miller Declaration") as Exhibits K, L, M, and N, and the Mediator's April 11, 2023, decision is attached to the Miller Declaration as Exhibit O.

The overwhelming support for the Settlement shows that it should be approved: only one valid request for exclusion has been received, no Settlement Class Member has objected to the Settlement, and only the Liquidating Trustee (the "Trustee") in Pareteum's bankruptcy case (the "Bankruptcy Proceeding")[2] has filed a "partial objection" (the "Objection") to the Settlement (but not to the Fee and Expense Motion) – which, as discussed herein, should be ignored and/or overruled.

First, the Trustee does not have standing to object as he is not a Settlement Class Member and has not shown that he will sustain recognizable legal prejudice as a result of the Settlement, nor has he followed the proper procedure and filed a motion to intervene. Further, even if the Trustee had moved to intervene, he would not meet the standard for intervention because he does not have an interest in this Action and his claims do not share a common question of law or fact with the claims in this Action. The Trustee is simply a competing claimant against common defendants and his claims are in no way impaired by the Settlement, which the Bankruptcy Court, by way of a formal order, has allowed to move forward. Although the Trustee complains that his contractual rights in the XL Insurance Company Policy No. ELU162674-19 (the "Side A Policy") are being impaired, he has no such rights. The Trustee stepped into the shoes of the Debtor, Pareteum, who is not an insured under the Side A Policy; the only insureds under the Side A Policy are the officers and directors of Pareteum – *i.e.*, the Individual Defendants in this Action. As such, the Trustee has no say in what the Individual Defendants (the actual insureds) decide to do with their coverage.

Moreover, the Objection omits critical events and attempts to rewrite history in order to obtain a third bite at the apple. The Trustee disingenuously argues that the Liquidating Trust was

---

[2] *In re Pareteum Corp., et al.*, No. 22-10615 (Bankr. S.D.N.Y.).

previously unable to defend its rights, but at the time of the preliminary approval hearing, Pareteum and its affiliated debtors (the "Debtors") were represented by McGuire Woods LLP, who received electronic notice of the preliminary approval hearing, yet failed to appear. Further, the Trustee – who had been the Wind-Down Officer of the Debtors since July 2022 – could also have appeared at the preliminary approval hearing and lodged his objection, but did not. Finally, the Trustee *did* object in the Bankruptcy Court to the precise issues he now raises and participated in a contested hearing where those issues were resolved in favor of the Individual Defendants, but he did not appeal the Bankruptcy Court's approval of that motion. As such, the Trustee's meritless arguments have been waived.

For all of these reasons, the Settlement should be approved and Lead Counsel's request for an award of attorneys' fees of 30% of the Settlement Fund and reimbursement of litigation expenses should be approved.

## II.    THE REACTION OF THE SETTLEMENT CLASS SUPPORTS APPROVAL OF THE MOTIONS

At the time Plaintiffs filed the Final Approval Motion, only two requests for exclusion (only one of which was valid) had been received by the Claims Administrator, and no objections had been received by Lead Counsel. *See* ECF No. 283 at ¶¶ 124-25. Now that the time for objecting or requesting exclusion from the Settlement Class has passed, no additional requests for exclusion have been received, and only the Objection (from the Trustee) has been received. *See* Supplemental Declaration of Margery Craig, filed contemporaneously herewith ("Supp. Craig Decl.") at ¶¶ 8-9; ECF No. 284 (Objection). That Objection – which is addressed above and below – lacks merit because the Trustee lacks standing to assert and, at any rate, has waived it. In other words, after having disseminated over 74,617 notices (*see* Supp. Craig Decl. at ¶ 3), and with a Settlement Class encompassing more than approximately 256.4 million damaged shares, just one (limited)

3

Objection and two requests for exclusion (only one of which is valid) have been made. *See id.* at ¶¶ 8-9. The overwhelmingly positive reaction of the Settlement Class to the Settlement strongly supports final approval.

To date, a total of 74,617 potential Settlement Class Members were either mailed a Postcard Notice or emailed the link to the Summary Notice and Claim Form on the Settlement website and the Claims Administrator has received 3,666 Proofs of Claim. *See* Supp. Craig Decl. at ¶¶ 3, 7. The number of Proofs of Claim received, coupled with just one objection and two requests for exclusion, strongly support a finding that the Settlement is fair, reasonable, and adequate. Indeed, "the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] Grinnell inquiry." *Wal-Mart Stores, Inc. v. Visa USA. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005); *see*, *e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (approving settlement with 18 objections in response to 27,883 notices); *Wal-Mart*, 396 F.3d at 118 (approving settlement with 18 objections in response to 8,148,276 notices); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (approving settlement with 11 objections in response to nearly 2.5 million notices); *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-cv-1262, 2002 U.S. Dist. LEXIS 22663, at *67 (S.D.N.Y. Nov. 26, 2002) (approving settlement with 239 objections where class comprised just 1,350 members); *McBean v. City of New York*, 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (approving settlement with 4 objections in response to 40,352 notices).

The positive reaction of the Settlement Class should also be considered with respect to the Fee and Expense Motion. The lone Objection to the Settlement, discussed herein, is not from a Settlement Class Member with standing to object and does not relate in any way to Plaintiffs' Fee and Expense Motion. *See*, *e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007

U.S. Dist. LEXIS 85554, at *32 (S.D.N.Y. Nov. 7, 2007) (the reaction of class members to a fee and expense request "'is entitled to great weight by the Court'") (citation omitted). In particular, the lack of any objections to the requested fees and expenses by institutional investors supports approval of these requests. *See In re Bisys Sec. Litig.*, No. 04-cv-3840, 2007 U.S. Dist. LEXIS 51087, at *5 (S.D.N.Y. July 16, 2007) (lack of objections to attorneys' fees supported the approval of fee request because "the class included numerous institutional investors who presumably had the means, the motive, and the sophistication to raise objections if they thought the [requested] fee was excessive").

### III.   THE TRUSTEE'S OBJECTION SHOULD BE OVERRULED

In his Objection, the Trustee claims that certain language in the Settlement "seeks to modify" the Side A Policy and "prevent [him] from having any recourse to the Side A Policy," and thereby "purports to impair [his] contractual rights." ECF No. 284 at 1, 3.[3] As set forth below, however, the Trustee lacks standing to object to the Settlement for two distinct reasons: first, the Trustee is not an insured under the Side A Policy, but is simply another claimant with claims against the insureds (the Individual Defendants); and, second, the Trustee is neither a Settlement Class Member nor a Settling Defendant and cannot establish "formal legal prejudice." The Trustee should have, but did not, file a motion to intervene; but even if he had, he could not meet the standard for intervention because has no interest in this Action and his claims do not share a common question of law or fact with the claims in this Action.

Moreover, the Trustee already raised his arguments regarding the Side A Policy and the Insurance Proceeds Clause (defined below) in the Bankruptcy Proceeding – filing several

---

[3] The language objected to by the Trustee is the following: "The Parties also agree that the proceeds of XL Insurance Company Policy No. ELU162674-19 (the 'Side A Policy') only will be used to pay Defense Expenses for Claims (as those terms are defined in the Side A Policy) covered under the Side A Policy." ECF No. 284 at 1 (citing ECF No. 273 at ¶ 16) (referred to herein as the "Insurance Proceeds Clause").

objections to the Motion for Comfort Order and appearing twice (through sophisticated counsel) at hearings before the Bankruptcy Court – and he failed to appeal the Bankruptcy Court's granting of that Comfort Order. In addition, the Debtors, with the current Trustee then acting as the Debtors' chief wind-down officer, failed to appear at the preliminary approval hearing or take any position at that time with respect to the Settlement. Clearly, the Trustee's arguments, such as they are, have been waived and cannot be resurrected.

A.    **Pertinent Factual Background Regarding the Objection**

The Debtors filed for bankruptcy protection on May 16, 2022. Anthony Saccullo, who is now the Liquidation Trustee, was appointed as the wind-down officer of the Debtors as of July 5, 2022. *See* Miller Decl. Ex. A. On September 7, 2022, Plaintiffs and the Individual Defendants reached the Settlement, which was expressly conditioned upon the entry of a Comfort Order by the Bankruptcy Court. *See* ECF No. 265 at 16, 29, 52. Plaintiffs moved for preliminary approval of the Settlement on September 7, 2022. *See* ECF No. 266. On September 9, 2022, Individual Defendants filed a motion in the Bankruptcy Proceeding for an order confirming and/or determining that the proceeds under Pareteum's directors and officers insurance policies (the "Insurance Policies") were not property of the Debtors' estates and that automatic stay provision of the Bankruptcy Code was not applicable or should be modified as necessary so that the insurance proceeds could be utilized towards the Settlement here (hereinafter referred to as the "Motion for Comfort Order"). *See* Miller Decl. Ex. B. The Motion for Comfort Order included a description of the Settlement, which included a specific reference to the Insurance Proceeds Clause. *See id.* at ¶ 40(f) ("The remainder of the D&O Policies shall only be available for defense costs for Claims covered under the D&O Policies.").

This Court held a preliminary settlement approval hearing on October 12, 2022. Neither the Debtors nor the Trustee (despite being the wind-down officer of the Debtors at the time) attended the hearing. Plaintiffs were instructed to contact the Court upon the Bankruptcy Court's entry of the Comfort Order to schedule the final approval hearing. *See* Miller Decl. Ex. C (Tr. of Prelim. Approval Hearing) at 32:14-18.

The Trustee timely filed an objection (the "Comfort Order Objection") to the Motion for Comfort Order on November 2, 2022. *See* Miller Decl. Ex. D. In his Comfort Order Objection, the Trustee noted:

> In addition to the $20 million of coverage under the ABC Policies, the Debtors previously procured a "Side A Policy" providing an additional $5 million in coverage (the "Side A Policy"). According to the Motion, the Side A Policy affords coverage only to the Movants and other directors and officers, and not to the Debtors. The Motion further states that the Movants and the plaintiffs do not intend to utilize the Side A Policy to fund the settlement. In other words, they seek to first exhaust the policies that afford coverage to the Debtors (the policies that are property of the Debtors' estate) before utilizing the remaining policy that they contend only covers the Movants.

*Id.* at ¶ 20. The Individual Defendants filed a Reply to the Comfort Order Objection on November 7, 2022. *See* Miller Decl. Ex. E. In their Reply, the Individual Defendants addressed what the Trustee had represented regarding the Side A Policy in the Comfort Order Objection:

> [T]he Trustee's assertions about the Side A Policy—which exists solely for the benefit of directors and officers and to which the Debtors have no right whatsoever—are misplaced. The individual insureds need to preserve some insurance proceeds for defense of the government investigations. Thus, in the Settlement, as part of the plaintiffs' agreement to forego recovery under the Side A Policy, and as part of the defendants' agreement to the Settlement, the parties agreed that the defendants may only use the Side A Policy proceeds for Defense Costs (as defined in the Side A Policy) and not for settlements or judgments of any other action.

*Id.* at ¶ 23.

The Bankruptcy Court held a hearing on the Motion for Comfort Order on November 10, 2022. The Trustee was represented at the hearing by his counsel, Cole Schotz P.C. Also present at the hearing were counsel for the Debtors, counsel for PSIG, counsel for the Individual Defendants, and counsel for Plaintiff Sabby. The Bankruptcy Court extended the proceedings by 30 days to allow the Trustee an opportunity to conduct discovery and re-set the Motion for Comfort Order for an evidentiary hearing on December 12, 2022.

On December 7, 2022, the Trustee filed a supplemental objection to the Motion for Comfort Order (the "Comfort Order Supplemental Objection"), detailing the further investigation he had conducted since the November 10 hearing. *See* Miller Decl. Ex. F. In the Supplemental Objection, the Trustee continued to complain about the Individual Defendants' intended use of the Side A Policy after the ABC Policies were exhausted:

> At the same time Debtors' estate is, and will continue to be, burdened by having to expend its finite resources addressing claims that arise out of the Movants' unlawful conduct, the Movants seek this Court's approval of a Proposed Settlement that would consume all remaining insurance proceeds that would otherwise be available to the estate. At the same time they seek to exhaust the Policies and their proceeds, ***Movants' Proposed Settlement, by design, preserves an additional $5 million in "Side A" insurance coverage available only to the Movants, which Movants unabashedly proclaim will be used to fund their ongoing criminal defense.*** That the Movants engineered their settlement to exhaust all available insurance coverage that is property of Debtors' estate, while preserving for themselves additional coverage they will exhaust trying to avoid indictment and conviction, is transparent and plainly admitted in the Motion. It is patently unfair to general unsecured creditors and an attempted end run around the bankruptcy priority scheme.

*Id.* at ¶ 2 (emphasis added).

The Individual Defendants filed a supplemental brief in further support of the Motion for Comfort Order on December 7, 2022. *See* Miller Decl. Ex. G. The Bankruptcy Court held an evidentiary hearing on the Motion for Comfort Order on December 12, 2022. Again, counsel for the Trustee, the Debtors, PSIG, the Individual Defendants, and Plaintiff Sabby participated in the

hearing. Notwithstanding the Trustee's arguments that the Insurance Proceeds Clause negatively impacts the rights of the Liquidating Trust and the Debtors' bankruptcy estate, the Court "lift[ed] the automatic stay to allow the proceeds of the [Insurance Policies] to be used to fund the proposed settlements." *See* Miller Decl. Ex. H (Tr. of Comfort Order Hearing) at 98:18-20. The Court added that it did not believe that denying the Motion for Comfort Order or precluding the Settlement would result in a better outcome for the estates, the Liquidating Trustee, or the unsecured creditors because the Insurance Policies would "either be exhausted by paying the settlements, or exhausted as a result of the cost of ongoing litigation if this is not settled and will not be available to the Debtors to pay indemnification claims in any case." *Id.* at 97:22-98:8.

On December 13, 2022, the Honorable Lisa G. Beckerman granted the Motion for Comfort Order. *See* Miller Decl. Ex. I. By letter dated December 16, 2022, Plaintiffs informed the Court that the Comfort Order had been entered, and the Court granted preliminary approval of the Settlement on December 20, 2022. *See* ECF Nos. 272, 275.

### B.    The Trustee Lacks Standing to Object to the Settlement

"The question of standing is a 'threshold determinant[ ] of the propriety of judicial intervention.'" *Bhatia v. Piedrahita*, 756 F.3d 211, 217 (2d Cir. 2014) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In order to have standing, "[a] party must have suffered an injury-in-fact, that is, the invasion of a "legally protected interest" in a manner that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 218 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Moreover, the injury must be 'fairly traceable' to the alleged conduct and it must be likely that the injury will be redressed by a favorable decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).

1.  The Trustee Lacks Standing to Object to the Settlement Because
    He Is Not a Settlement Class Member

"As a general rule, '[n]onparties to a settlement generally do not have standing to object to a settlement of a class action.'" *United States v. New York*, No. 13-cv-4165, 2014 U.S. Dist. LEXIS 35274, at \*32 (E.D.N.Y. Mar. 17, 2014) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care. L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007)). This rule is based on the text of Federal Rule of Civil Procedure 23(e)(5), which provides that "[a]ny *class member* may object to the [settlement] proposal." FED. R. CIV. P. 23(e)(5) (emphasis added). Because the only issue before the court on a motion for final approval is whether the proposed settlement is fair, reasonable, and adequate, courts reject non-class members' attempts to "inject their concerns via objection at the settlement stage," as otherwise there would be an "eleventh hour expansion of class actions." *New York*, 2014 U.S. Dist. LEXIS 35247, at \*32 (quoting *Gould v. Alleco, Inc*., 883 F.2d 281, 284 (4th Cir. 1989)).

Courts have held that the proper procedure instead is for a non-class member to proceed via intervention under Federal Rule of Civil Procedure 24. *See id.* (citing *Gould*, 883 F.2d at 284); *see also In re Am. Int'l Grp., Inc. Sec. Litig*., 916 F. Supp. 2d 454, 464 (S.D.N.Y. 2013); *Candelaria v. Health Care Serv. Corp.*, No. 17-cv-0404, 2020 U.S. Dist. LEXIS 119651, at \*6 (D.N.M. July 8, 2020) ("Interjection of the opposing views of non-class members…should proceed via intervention under Rule 24.") (quoting *Gould*, 883 F.2d at 284). Because the Trustee has not filed a motion to intervene, the Court should disregard his objection. Moreover, even if the Trustee had filed a motion to intervene, it would have been untimely and the Trustee would not have been able to meet the requisite standard for either permissive intervention or intervention as of right, as he has no interest in this Action, and his claims do not share a common question of law or fact with the claims in this case. *See* FED. R. CIV. P. 24 .

10

In order to establish standing, the Trustee would have to "demonstrate that [he] will sustain some formal legal prejudice as a result of the settlement," which he cannot do. *Anwar v. Fairfield Greenwich Ltd.*, 133 F. Supp. 3d 560, 562 (S.D.N.Y. 2015) (citing *Bhatia*, 756 F.3d at 218). "Formal legal prejudice exists in rare circumstances such as when a 'settlement agreement formally strips a non-settling party of a legal claim or cause of action, such as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial.'" *Id.* at 562-63 (citing *Bhatia*, 756 F.3d at 218). However, "a settlement which does not prevent the later assertion of a non-settling party's claims (although it may spawn additional litigation to vindicate such claims), does not cause the nonsettling party 'formal' legal prejudice." *Bhatia*, 756 F.3d at 219.

In its Objection, the Trustee claims that the Settlement "seeks to modify" the Side A Policy and "purports to impair the rights of the Liquidation Trustee in violation of his contractual rights." ECF No. 284 at 1, 3. The very language used by the Trustee – "seeks," and "purports" – demonstrates that the harm claimed by the Trustee is entirely speculative in nature, and in fact, nonexistent. Nothing in the Settlement prevents the Trustee from pressing his claims against the Individual Defendants, but access to the Side A Policy is a contractual right belonging only to the Individual Defendants. The Trustee has no such right.

The *Anwar* case is directly on point. In *Anwar*, after the district court preliminarily approved a partial settlement and the trustee moved to intervene for the purpose of objecting to the settlement, arguing that the proposed order "is objectionable as it implies that the Court has determined that Citco has 'colorable rights to offset the Trustee's claims.'"[4] 133 F.Supp. 3d at 562.

---

[4] The objectionable language was: "Nothing in this paragraph precludes the Citco Defendants from arguing that the settlement proceeds in this case are an offset against claims that may be made against them in other proceedings." *Anwar*, 133 F.Supp. 3d at 563.

11

The court found that there was no formal legal prejudice to the trustee, as "[t]he language of this provision in no way prevents the Trustee from asserting the claims or defenses available to it." *Id.* at 563. The court also rejected "the Trustee's argument that it suffers prejudice because the Proposed Citco Settlement 'could be read to somehow "offset" the Trustee's damages'" as "speculative and thus not sufficient to demonstrate formal legal prejudice." *Id.*; *see also Bhatia*, 756 F.3d at 218 (finding allegation by non-settling defendants that provision in final order "*effectively* strips them of defenses against the settling plaintiffs in other for a…[did] not rise to the required level of formal legal prejudice necessary for standing," as "[n]othing in the Final Order precludes the Non-Settling Defendants from asserting in the district court or in other litigation any claims or defenses that may be available to them") (emphasis in original); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 U.S. Dist. LEXIS 96457, at *19 (S.D.N.Y. July 15, 2014) ("The trustee has not shown formal legal prejudice here and does not have standing to object. Courts do not typically prognosticate about the res judicata effect of current orders in some future circumstance.").[5]

Similarly, in *Candelaria*, a separate group of potential plaintiffs filed an objection to a class action settlement. The court found that they did not have standing to object, and that they should have intervened instead. *See* 2020 U.S. Dist. LEXIS 119651, at *7. The court then found they did not have the requisite interest to intervene as of right: "Objectors do not seek to protect their own property, their allotment from an award or settlement, or any other cognizable legal right or interest. They are simply potential plaintiffs who have yet to litigate any claims." *Id.* at *8 (quoting *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1310-11 and n.6 (11th Cir.

---

[5] The cases cited by the Trustee (ECF No. 284 at 4-5) are not on point. They stand for the uncontroversial proposition that a settlement cannot impair a third party's rights. Here, the Trustee's rights are not being impaired, as he has no rights under the Side A Policy (and, even if he did, any alleged impairment is purely conjectural). Moreover, the Trustee waived any objections by not appealing the granting of the Comfort Order.

2004)). "Put another way, the proposed settlement will not impede the [ ] Objectors' interest…because the [ ] Objectors' interest 'fall[s] outside of the issued raised by the Settlement Class Members." *Id.* The court also found the objectors had no right to permissively intervene "because their claims do not share common questions of law or fact with the class action." *Id.* at *9 (citation omitted).

Similarly, here, the Trustee is simply a competing claimant against common defendants and his claims are in no way impaired by the Settlement, which the Bankruptcy Court, by way of a formal order, has allowed to move forward. The Trustee complains that his contractual rights in the Side A Policy are being impaired, but he has no such rights. The Trustee stepped into the shoes of the Debtor, Pareteum, which is not an insured under the Side A policy, and he has no more rights than had Pareteum (none). The only insureds under the Side A Policy are the officers and directors of Pareteum, namely the Individual Defendants in this Action. As a potential claimant, and not as an insured, the Trustee has no say in what the Individual Defendants (the actual insureds) decide to do with their coverage.

### 2.    The Trustee Lacks Standing to Object to the Settlement Because He Is Not an Insured Under the Side A Policy

"Unless there exists a recognized exception, a party not in privity of contract with an insurer lacks standing to resolve rights and obligations under an insurance policy." *Airborne Am., Inc. v. Kenway Composites*, 554 F. Supp. 3d 1066, 1071 (S.D. Cal. 2021).

The Side A Policy provides, in pertinent part, that "[t]he Insurer will pay ***on behalf of the Insured Persons*** Loss resulting from a Claim first made against the Insured Persons…for a Wrongful Act." Miller Decl., Ex. J at 25 of 32 (emphasis added). "Insured Persons" is defined, in pertinent part, as "any past, present, or future director or officer, general counsel, or member of the Board of Managers of the Company…." *Id.* at 26 of 32. "Loss" means damages, judgments,

13

settlements or other amounts…and Defense Expenses that the ***Insured Persons*** are obligated to pay." *Id.* (emphasis added).

As the language of the Side A Policy makes clear, Pareteum (and now the Trustee) is not an insured; the only insureds are the Individual Defendants. "[A] bankruptcy trustee [does not have] any different status than a non-bankruptcy plaintiff with an unliquidated claim against third-parties which may be covered by insurance proceeds about to be used to settle or satisfy a judgment entered in favor of other plaintiffs." *In re CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2001) (citing *In re Reliance Acceptance Grp., Inc.*, 235 B.R. 548, 561–62 (D. Del. 1999) (noting the lack of such a legal principle); *see also In re Phar–Mor Inc. Secs. Litig.*, 164 B.R. 903, 905–06 (W.D. Pa. 1994)).

Moreover, in his Objection, the Trustee concedes that the Side A Policy is the only policy at issue. *See* ECF No. 284 at 1. Although the Trustee represents to the Court that the Side A Policy is property of the Debtors' bankruptcy estate (*id.* at 2), the Bankruptcy Court, in fact, did not make that specific finding. *See* Miller Decl. Ex. I at ¶ 2 ("The proceeds of the ABC Policies are property of the Debtors' estates for the reasons set forth on the record by the Court at the Evidentiary Hearing"). To the contrary, the Bankruptcy Court acknowledged that property of the Debtors' estate would not be implicated unless Side B or Side C coverage is triggered. *See* Miller Decl., Ex. H at 11:10-15 ("[I]n order for me to determine whether the proceeds of the policies are property of the estate, I would have to determine whether or not, there was some reasonable likelihood or not of the indemnification claims, in other words, the Agreement B coverage or the Agreement C coverage being triggered."). Because the Trustee has no contractual rights under the Side A Policy, he has no standing to object to the Settlement on the grounds that its "contractual rights" are being impaired.

14

### C.    The Trustee Has Waived Any Objections to the Settlement

It is rather disingenuous for the Trustee to argue that "he had no opportunity to defend the Liquidating Trust's rights previously." ECF No. 284 at 2. First, the Trustee was the wind-down officer for the Debtors, who also could have filed an objection to the preliminary approval of the Settlement prior to the Trustee's appointment, but did not. Additionally, the Trustee had a full and fair opportunity to contest the Motion for Comfort Order in the Bankruptcy Court. The Trustee then filed multiple objections and participated in a contested evidentiary hearing, and repeatedly raised the arguments and critiques of the Settlement that he makes here – that the Trustee has claims for which he needs to access the Side A Policy. *See* Miller Decl. Exs. D, F, and H. Thus, these arguments and issues were squarely before the Bankruptcy Court when it granted the Motion for Comfort Order.

For whatever reason, the Trustee chose not to appeal the granting of the Motion for Comfort Order and the time to do so has long since elapsed. *See* FED. R. BANKR. P. 8002 (notice of appeal must be filed within 14 days of entry of order). Accordingly, the Trustee's objections are waived. *See Chevron Corp. v. Donziger*, No. 11-cv-0691, 2018 U.S. Dist. LEXIS 32811, at *16 (S.D.N.Y. Feb. 28, 2018) ("As our Court of Appeals has held, 'a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'") (citing *North River Ins. Co. v. Philadelphia Reins. Corp.*, 63 F.3d 160, 164 (2d Cir. 1995)).

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' opening papers, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation, award attorneys' fees in the amount of 30% of the Settlement Fund ($1.695 million), plus accrued

15

interest, and award reimbursement of Lead Counsel's reasonable and necessary litigation expenses of $422,214.12, plus $2,785.88 towards the expenses of Counsel for Loskot, for a total expense reimbursement of the noticed cap of $425,000, plus accrued interest.

DATED: April 18, 2023

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ Kim E. Miller*
Kim E. Miller (KM-6996)
J. Ryan Lopatka (admitted *pro hac vice*)
250 Park Ave., 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Kim.Miller@ksfcounsel.com
J.Lopatka@ksfcounsel.com

-and-

Melissa H. Harris (MH-3553)
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Phone: (504) 455-1400
Facsimile: (504) 455-1498
melissa.harris@ksfcounsel.com

*Lead Counsel for Lead Plaintiff Pareteum Shareholder Investor Group and the Settlement Class*

## CERTIFICATE OF SERVICE

On April 18, 2023, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kim E. Miller*
Kim E. Miller

16