# EXHIBIT B

Hearing Date: October 6, 2022 at 11:00 a.m.
Objections Due: September 28, 2022 at 5:00 p.m.

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Jorian L. Rose
Email: jrose@bakerlaw.com
Michael A. Sabella
Email: msabella@bakerlaw.com

*Attorneys for Non-Debtors Robert H. Turner,
Edward O'Donnell, Denis McCarthy, Victor
Bozzo, Robert Mumby, and Yves Van Sante*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| PARETEUM CORPORATION, *et al*.,[1] | Case No. 22-10615 (LGB) |
| Debtors. | |

## MOTION FOR ORDER CONFIRMING AND/OR DETERMINING THAT PROCEEDS OF CERTAIN D&O INSURANCE POLICIES ARE NOT SUBJECT TO THE AUTOMATIC STAY

Non-Debtors Robert H. Turner, Edward O'Donnell, Denis McCarthy, Victor Bozzo,

Robert Mumby, and Yves Van Sante ("Movants") state as follows in support of this motion (the

"Motion"):

## Relief Requested

---

[1] The Debtors in the Chapter 11 Cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Pareteum Corporation (7538); Pareteum North America Corp. (f/k/a Elephant Talk North America Corp.) (9623); Devicescape Holdings, Inc. (2909); iPass, Inc. (4598); iPass IP LLC (2550); Pareteum Europe B.V.; Artilium Group Ltd. (f/k/a Artilium PLC); Pareteum Asia Pte. Ltd.; and Pareteum N.V. (f/k/a Artilium N.V.). The Debtors' corporate headquarters is located at 1185 Avenue of the Americas, 2nd Floor, New York, NY 10036.

1.      Movants request that the Court enter an order substantially in the form attached hereto (the "Order") pursuant to sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code") determining that proceeds under those certain insurance policies (as discussed below) are not property of the Debtors' estates and that section 362 of the Bankruptcy Code is not applicable or should be modified to the extent necessary so that the proceeds may be utilized towards settlement of the actions (as discussed below).

**Jurisdiction & Venue**

2.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Movants confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for relief requested herein is sections 105(a) and 362(d)(1) of the Bankruptcy Code, Rule 4001(d) of the Bankruptcy Rules, and Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of New York (the "Bankruptcy Local Rules").

**Background**

**A.      The Debtors' Bankruptcy Cases**

5.      On May 16, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 18, 2022, the Court entered an order authorizing the joint administration and procedural

2

consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 37], and the Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. On May 24, 2022, the United States Trustee for the Southern District of New York appointed the Creditors Committee (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 52]. No trustee or examiner has been appointed in these Chapter 11 Cases.

## B. The D&O Polices

8. Pareteum Corporation purchased four directors and officers liability insurance policies (the "D&O Policies") for the initial policy period July 12, 2019 to July 12, 2020. The D&O Policies are as follows:

| Insurer and Policy No. | Policy Limit |
|---|---|
| Argonaut Insurance Company Policy No. ML 7602071-2 (the "Argonaut Policy") | $5 million |
| XL Specialty Insurance Company Policy No. ELU162673-19 (the "XL Specialty Policy") | $5 million excess of $5 million |
| Wesco Insurance Company Policy No. EUW1522653 01 (the "Wesco Policy") | $5 million excess of $10 million |
| North River Insurance Company Policy No. 577-100419-2 (the "Crum & Forster Policy") | $5 million excess of $15 million |
| XL Insurance Company Policy No. ELU162674-19 (the "Side A Policy") | $5 million |

9. The XL Specialty Policy, Wesco Policy, and Crum & Forster Policy (collectively, the "ABC Policies") generally follow form to the terms and conditions of the primary Argonaut Policy.

3

10. The Argonaut Policy contains three principal insuring agreements. Insuring Agreement A affords specified coverage for non-indemnifiable loss for the sole benefit of Pareteum's officers and directors. Specifically, Insuring Agreement A states that the "Insurer shall pay Loss of any Insured Person(s) arising from a Claim . . . first made during the Policy Period . . . against such Insured Person(s) for a Wrongful Act, if the Company has not indemnified the Insured Person(s) for such Loss."

11. Insuring Agreement B affords specified company reimbursement coverage. Specifically, Insuring Agreement B states that the "Insurer shall pay Loss of the Company for Loss arising from a Claim . . . first made during the Policy Period . . . against any Insured Person(s) for a Wrongful Act, if the Company is permitted or required to indemnify the Insured Person(s) for such Loss."

12. Insuring Agreement C affords specified company securities liability coverage. Specifically, Insuring Agreement C states that the "Insurer shall pay Loss of the Company arising from a Securities Claim . . . first made during the Policy Period . . .against the Company for a Wrongful Act."

13. "Insureds" are defined to include Pareteum as well as "Insured Persons." "Insured Persons" include, among others, Pareteum directors, management committee members, officers, in-house general counsel, controllers, directors of investor relations and human resources, risk managers, and, under specified circumstances, employees.

14. "Loss" includes, among other things, settlements, judgments, and "Defense Costs." "Defense Costs" means, in relevant part, "reasonable costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses . . . incurred by the Insureds and

4

consented to by the Insurer . . . in defending or investigating Claims." Defense Costs erode the limit of liability of the D&O Policies.

15.     Key to the analysis of the D&O Policies and the respective rights of the Insured Persons to protection through the proceeds of those policies is Section V.E of the Argonaut Policy known as a Priority of Payments provision. That provision states as follows: "In the event of Loss arising from one or more covered Claims for which payment is due under this Policy, the Insurer shall: 1. first, pay all Loss covered under Insuring Agreement A. NON-INDEMNIFIABLE LOSS COVERAGE; 2. second, only after paying Loss pursuant to subparagraph (1) above, and to the extent of any remaining amount of the Limit of Liability, pay covered Loss under Insuring Agreement B. COMPANY REIMBURSEMENT COVERAGE; 3. third, only after paying Loss pursuant to subparagraphs (1) and (2) above, and to the extent of any remaining amount of the Limit of Liability, pay covered Loss under Insuring Agreement C. COMPANY SECURITIES LIABILITY COVERAGE . . . ."

16.     Accordingly, payments made under the Argonaut Policy, and any payments made under the remaining ABC Policies which follow the form of the Argonaut Policy, are prioritized to be paid for the benefit of the Insured Persons, i.e., the directors and officers, prior to any disbursement made for the benefit of the Debtors in connection with any claim.

17.     Further, Section V.M of the Argonaut Policy provides as follows: "Bankruptcy or insolvency of any Insured shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights, remedies or defenses under this Policy or at law. In the event a liquidation or reorganization proceeding is commenced by or against a Company pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the Company and the Insured Persons hereby agree to cooperate in any efforts by the Insurer, the Company or any

5

Insured Person(s) to obtain relief from any stay or injunction that may prohibit or delay the Insurer's payment of Loss."

18. Pareteum also purchased from XL the Side A Policy. The Side A Policy affords coverage only for claims against Insured Persons when Pareteum is unable to indemnify the Insured Persons and when there is no other available insurance. As noted above, the Side A Policy has a $5 million limit of liability.

19. The primary Argonaut Policy was exhausted by payment of Defense Costs in connection with the matters discussed below.

20. Once the Argonaut Policy was drawn down to cover the Defense Costs, the next layer of coverage, the XL Specialty Policy, was activated. Once the XL Specialty Policy is depleted, coverage turns to the Wesco Policy, followed by the Crum & Forster Policy.

**C.** **Claims against Insureds**

21. Current and former directors and officers of Pareteum, as well as Pareteum itself, have been named as defendants in various lawsuits. In general, these lawsuits arise out of Pareteum's October 21, 2019 announcement that it would be restating its financials.

22. The case *In re Pareteum Securities Litigation*, No. 1:19-cv-09767-AKH-GWG (S.D.N.Y.), is a putative federal securities class action lawsuit. The defendants are: Pareteum; Robert H. Turner (Pareteum's former Chairman and CEO); Edward O'Donnell (its former CFO); Victor Bozzo (its former CEO and Chief Commercial Officer); and Denis McCarthy (its former President and COO).

23. The case *Douglas Loskot v. Pareteum Corp. et al.*, 20-CIV-02279 (Cal. Super. Ct., San Mateo Cnty.), is a putative securities class action lawsuit. The defendants include

6

Pareteum, Turner, O'Donnell, and Bozzo; as well as Yves Van Sante, Robert L. Lippert, and Luis Jimenez-Tuñon (all former directors of Pareteum).

24. The case *Sabby Volatility Warrant Master Fund, Ltd. v. Pareteum Corp., et al.*, No. 19-cv-10460-AKH (S.D.N.Y.), is a securities suit by a single investor. The defendants are Pareteum, Turner, O'Donnell, McCarthy, Bozzo, Lippert, Van Sante, and Jimenez-Tuñon,

25. The case *In re Pareteum Corporation Stockholder Derivative Litigation*, No. 1:20-cv-06264 (S.D.N.Y.), is a shareholder derivative action. The defendants are Turner, O'Donnell, McCarthy, Bozzo, Jimenez-Tuñon, Lippert, Van Sante, Mumby, and Laura Thomas (Pareteum's former interim CFO).

26. Three Pareteum shareholders filed shareholder derivative actions in state court which were consolidated into one action. *In Re Pareteum Corporation Shareholder Derivative Litigation*, Index No. 651381/2020 (N.Y. Sup. Ct., N.Y. Cty.). Those shareholder derivative actions were stayed in all respects as of the Petition Date.

27. Additionally, there are ongoing investigations being conducted by both the U.S. Department of Justice and the U.S. Securities and Exchange Commission, each of which implicate coverage for attorneys' fees and expenses under the D&O Policies.

**D. Movants' Motion to Modify Stay And Resolution of Same**

28. On June 14, 2022, Movants filed the *Motion for Entry of Order Modifying the Automatic Stay to the Extent Applicable, To Approve and Allow the Advancement of Defense Costs Under D&O Insurance Policies* (the "Stay Relief Motion") [Docket No. 117]. The Stay Relief Motion sought entry of an order by this Court to modify the automatic stay under Bankruptcy Code section 362, to the extent applicable, to allow the Insurers under the ABC Policies to continue to advance Defense Costs for the Movants, as well as other insureds

7

("Additional Insureds"), that are covered under the ABC Policies, subject to the Insurers'

reservation of rights coverage positions and the Individual Insureds' corresponding reservation

of rights.

29.    After the filing of the Stay Relief Motion, counsel for the Movants, counsel for

the Additional Insureds, counsel for the Debtors, and counsel for the Committee (collectively,

the "Parties") engaged in negotiations to obtain a consensual resolution of the Stay Relief

Motion.

30.    Prior to the finalization of those discussions, the Debtors filed *The Debtors'

Limited Objection to Motion for Entry of Order Modifying the Automatic Stay, to the Extent

Applicable, to Approve and Allow the Advancement of Defense Costs Under D&O Insurance

Policies* [Docket No. 184], and the Committee filed its *Joinder of the Official Committee of

Unsecured Creditors in Debtors' Limited Objection to Motion for Entry of Order Modifying the

Automatic Stay, to the Extent Applicable, to Approve and Allow the Advancement of Defense

Costs Under D&O Insurance Policies and Reservation of Rights* [Docket No. 186] (collectively,

the "Limited Objections").

31.    Further, the Pareteum Shareholder Investment Group ("Lead Plaintiff") filed the

*Securities Lead Plaintiff's Statement and Reservation of Rights in Response to Motion for Entry

of Order Modifying the Automatic Stay, to the Extent Applicable, to Approve and Allow the

Advancement of Defense Costs Under D&O Insurance Policies* [ECF Docket No. 134].

32.    Prior to the hearing on the Stay Relief Motion, the Parties resolved the Stay Relief

Motion pursuant to the terms of that certain stipulation and order (the "Stipulation and Order"),

providing in pertinent part:

8

(a)     The automatic stay imposed by Section 362(a) of the Bankruptcy Code would be modified to the extent necessary to allow the Insurers under the ABC Policies to pay, reimburse, and/or advance insurance proceeds, and/or make payments from the ABC Policies for accrued and unpaid Defense Costs through June 30, 2022;

(b)     Counsel for the Movants and the Additional Insureds would provide a monthly budget for estimated defense costs to the Debtor and the Committee, as well as reporting on the accrued defense costs to same;

(c)     The Parties reserved all rights any or all may have to make any contention whatsoever concerning the applicable insurance policy, its coverage or scope, each Insurer's duty, if any, to make interim advancements of Defense Costs, and all other matters connected with the applicable insurance policy and the claims submitted thereunder;

(d)     The Parties reserved all rights, with respect to (i) future motions to lift or modify the automatic stay in these proceedings, or motions to determine the automatic stay does not apply, or (ii) the application of any portion of the ABC Policies, including, but not limited to, any settlements in connection with the Litigations, *provided that,* any argument, objection or position of the Parties with respect to any provision of the ABC Policies addressing the priority of payments under the applicable ABC Policies up to the Cap and that otherwise would prohibit or impair the advancement and/or payment of Defense Costs has been waived pursuant to the Stipulation and Order; and

(e)     The Stipulation and Order did not constitute a finding by the Court or an admission by any Insurer or the Parties that the proceeds of the ABC Policies are or are not property of the Debtors' estates, and the Court made no finding as to the applicability of the automatic stay imposed by section 362(a) of the Bankruptcy Code as to the applicable ABC Policies' proceeds; *provided, however,* that the Parties acknowledge and agree that the payments made pursuant to the Stipulation and Order could not be challenged or recovered by any of the Parties or any Insurer on the basis that that the proceeds of the ABC Policies used to make those payments are property of the Debtors' estates.

33.     A hearing on the Stay Relief Motion was held on July 7, 2022 before this Court, with appearances made by counsel for the Movants, counsel for the Debtors, counsel for the Committee, and counsel for the Lead Plaintiff. An overview of the terms of the Stipulation and Order was presented to this Court.

34.     The Court, in consideration of the arguments and positions raised at the hearing, granted the Stay Relief Motion pursuant to the terms of the Stipulation and Order. The Court directed that the Stipulation and Order provide that Movants report on the paid Defense Costs for the period from July 1, 2022 through and including September 30, 2022. That modification was made and the Stipulation and Order was submitted for signature.

35.     On July 13, 2022, the Court signed the Stipulation and Order and entered it on the docket [Docket No. 217].

### E. The Settlement of the Actions

36.     As discussed at the hearing on July 7, 2022, Judge Hellerstein in the Federal Class Action directed the parties, with the exception of the Debtors due to the imposition of the

10

automatic stay, to engage in discovery, which would require significant expenses and costs for the Movants and the Additional Insured to the detriment of the balance of the D&O Policies.

37.     With the understanding of the looming discovery deadlines in the Federal Class Action, and subsequent to the hearing on the Stay Relief Motion, a mediation was held between the Movants, the Additional Insureds, and the plaintiffs in the following actions: (i) *In re Pareteum Securities Litigation*, No. 1:19-cv-09767-AKH-GWG (S.D.N.Y.) (the "Federal Class Action"); (ii) *Douglas Loskot v. Pareteum Corp. et al.*, 20-CIV-02279 (Cal. Super. Ct., San Mateo Cnty.) (the "Loskot Action"); and (iii) *Sabby Volatility Warrant Master Fund, Ltd. v. Pareteum Corp., et al.*, No. 19-cv-10460-AKH (S.D.N.Y.) (the "Sabby Action").[2] At the conclusion of the mediation, the parties resolved the matters, subject to the terms and conditions of:

> (a)     that certain Stipulation and Agreement of Settlement, dated September 7, 2022, by and between (1) Lead Plaintiff Pareteum Shareholder Investor Group, on behalf of all members of the putative Class, and Defendants Victor Bozzo, Denis McCarthy, Edward O'Donnell, and Robert H. Turner named in the Federal Class Action; and (2) Plaintiff Douglas Loskot and Defendants Victor Bozzo, Luis Jimenez-Tuñion, Robert Lippert, Edward O'Donnell, Yves Van Sante, and Robert H. Turner named in the Loskot Action; and
>
> (b)     that certain Settlement Agreement and Release, dated August 15, 2022, by and between (a) Sabby Volatility Warrant Master Fund, Ltd. and (b) Robert H. Turner, Edward O'Donnell, Denis McCarthy, Victor Bozzo, Robert Lippert, Yves Van Sante, and Luis Jimenez-Tuñon.

---

[2] The plaintiffs in the other actions no longer have standing to pursue their actions due to the Debtors' bankruptcy filing.

11

38.     The settlement of the Federal Class Action, the Loskot Action, and the Sabby

Action (collectively, the "Settlement") contemplates disbursements from the ABC Policies as

follows:

(a)     Five Million Two Hundred and Fifty Thousand U.S. Dollars ($5,250,000)

shall be paid to settle the Federal Class Action/the Loskot Action;

(b)     One Hundred Thousand U.S. Dollars ($100,000) shall be allocated for

providing notice for the Federal Class Action settlement to the class;

(c)     Two Million Two Hundred and Fifty Thousand U.S. Dollars ($2,250,000)

shall be be paid to settle the Sabby Action.

39.     The total sums allocated for the Settlement is Seven Million Six Hundred

Thousand U.S. Dollars ($7,600,000) (the "Settlement Amount").

40.     Further, the Settlement provides:

(a)     The Settlement shall not constitute an admission of liability on the part of

the Defendants to the Federal Class Action, the Loskot Action, and the Sabby

Action;

(b)     The Loskot Action shall be dismissed, with those plaintiffs being

determined to be members of the Federal Class Action and eligible to receive part

of the allocation of those proceeds disbursed in accordance with the Settlement;

(c)     The Sabby Action's claims against the individual defendants shall be

dismissed;

(d)     Parties shall provide each other with mutual releases;

(e)     Parties are solely responsible for their own legal costs; and

(f)    The remainder of the D&O Policies shall only be available for defense

costs for Claims covered under the D&O Policies.

41.    As agreed to in Paragraph 4 of the Stipulation and Order:

Nothing herein shall prejudice the current or future position of each Insurer and/or
any of the Parties, and the Parties reserve all rights, with respect to (i) future
motions to lift or modify the automatic stay in these proceedings, or motions to
determine the automatic stay does not apply, or (ii) the application of any portion
of the D&O Policies, including, but not limited to, any settlements in connection
with the Litigations ….

[Docket No. 217] (emphasis added).

42.    Accordingly, and pursuant to the Stipulation and Order, Movants now seek entry

of an order establishing that the automatic stay does not apply to the proceeds of the D&O

Policies and that said proceeds can be applied to the Settlement as discussed above.

**Basis for Relief**

A.    **The Proceeds of the D&O Policies Are Not Property of the Estate**

43.    Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of

property of the estate or of property from the estate or to exercise control over property of the

estate." 11 U.S.C. § 362(a)(3).

44.    Under the circumstances presented here, the proceeds of the D&O Policies

contemplated to be used for payment of the Settlement are not property of the estate.

45.    Courts have recognized that "[i]n essence and at its core, a D&O policy remains a

safeguard of officer and director interests and not a vehicle for corporate protection." *Ochs v.*

*Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999). Bankruptcy courts

typically conclude that proceeds of a D&O insurance policy are not property of the bankruptcy

estate where the individual directors and officers have a first priority interest in the proceeds and

where the entity coverage is hypothetical. *See, e.g., Louisiana World Exposition, Inc. v. Fed. Ins.*

13

*Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1401 (5th Cir. 1987) ("[T]he liability proceeds payable to the directors and officers are not property of the bankrupt's estate."); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) ("[T]he proceeds of the [d]ebtor's [D&O] insurance policy are not property of the estate."); *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. at 17–18 (stating that bankruptcy estate had no interest in the D&O policy proceeds).

46. Here, the D&O Policies afford coverage under Insuring Agreement A for Claims against Insured Persons that are not indemnified by Pareteum or that Pareteum cannot or will not indemnify. Under the Priority of Payments Provision, Claims under Insuring Agreement A must be paid before any other Claims. Further, any indemnification claims asserted by the Individual Defendants are expressly subordinated under section 510(b) of the Bankruptcy Code. Under the construct of the Plan of Liquidation that is subject to a confirmation hearing scheduled for October 6, 2022, such indemnification claims are not entitled to any recovery and the Debtors have no economic exposure in that regard.

47. Thus, while the D&O Policies also provide coverage to Pareteum under Insuring Agreement B to reimburse amounts that Pareteum pays to indemnify its directors and officers and under Insuring Agreement C for Securities Claims against Pareteum, such claims are expressly subordinated to the claims of the Insured Persons under the D&O Policies in any event.

48. "Section 541(a) 'is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case.' Courts generally closely examine the debtor's rights under the terms of the liability insurance policy at issue in order to determine whether holding that the policy proceeds are property of the estate would improperly 'expand the debtor's rights against others beyond what rights existed at the commencement of the case.'" *In*

14

*re Downey Fin. Corp.,* 428 B.R. 595, 607 (Bankr. D. Del. 2010) (internal citations omitted); *see also In re MF GlobalHoldings Ltd.*, 515 B.R. 193, 203–04 (Bankr. S.D.N.Y. 2014) (noting that bankruptcy courts are bound by the contractual provisions of a D&O policy, including the priority of payment provisions).

49.     Even where bankruptcy courts have held that the proceeds of D&O insurance policies are property of the estate, the automatic stay will be lifted to the extent necessary to protect the interests of the directors and officers in obtaining coverage. *See, e.g.*, *In re MF Global Holdings Ltd.*, 469 B.R. 177, 196 (Bankr. S.D.N.Y. 2012); *In re Allied Digital Techs. Corp.,* 306 B.R. 505, 514 (Bankr. D. Del. 2004); *In re Beach First Nat'l Bancshares, Inc.,* 451 B.R. 406, 411 (Bankr. D.S.C. 2011); *In re Laminate Kingdom, LLC*, Case No. 07-10279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13,2008) ("[N]umerous courts have granted relief from the automatic stay to permit the advancementof defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor.").

50.     Here, the language of the D&O Policies and the Priority of Payments provision expressly require payment first for losses arising from the Claims against the Insured Persons, even if the Debtors may also be entitled to payment under the Policy. As these clauses reflect, the very purpose of the insurance policies is to first protect the directors and officers. *In re First Century Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999). Accordingly, the Debtors are not prejudiced by being held to the contractual priority of payment provisions in the D&O Policies, which require payments to first be made to the Movants and other Insured Persons, including on account of settlements.

51.     As noted above, it is not anticipated that the Side A Policy will be drawn upon to fund the Settlement . Regardless, the Movants contend that proceeds of the Side A Policy are not

property of the estate. "[W]hen a policy covers the directors and officers exclusively, courts have generally held that the proceeds are not property of the estate." *In re MF Global Holdings*, 515 B.R. at 203–04 (quotation marks and citations omitted); *see In re Vitek, Inc.*, 51 F.3d 530, 535 ("[W]hen a debtor corporation owns a liability policy that *exclusively* covers its directors . . . the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate.") (5th Cir. 1995).

52.    The Side A Policy exclusively covers Insured Persons; it does not cover the Debtors. Therefore, the proceeds of that policy are not property of the estate.

## Conclusion

53.    Movants respectfully request the Court enter an Order substantially similar to the proposed order attached hereto: (a) granting this Motion; (b) determining that the proceeds of the D&O Policies are not property of the estate; and (c) granting such further relief as the Court deems appropriate.

## Waiver and Reservation of Rights

54.    Movants request that this Court waive the 14-day stay under Bankruptcy Rule 4001(a)(3) so that the Insureds may immediately access coverage under the D&O Policies for purposes of effectuating the Settlement as discussed herein.

55.    The Insurers and Movants reserve any and all claims against the Debtors, and further reserve any and all rights under the D&O Policies.

## Notice

56.    Notice of the Motion shall be provided to: (a) the Debtors' counsel; (b) the Official Committee of Unsecured Creditors' counsel; (c) the Office of the United States Trustee; (d) the United States Attorney's Office for the Southern District of New York; (e) the twenty largest unsecured creditors; and (f) all parties having filed a notice of appearance in these cases pursuant to Bankruptcy Rule 2002.

## **Prior Request**

57.     Movants previously moved for similar relief in the Stay Relief Motion. However, the Stipulation & Order preserved the issues raised herein. No prior request for the relief sought in this Motion has been made to any other court.

**WHEREFORE**, Movants respectfully request entry of an order substantially in the form attached hereto.

Dated:    September 9, 2022

BAKER & HOSTETLER LLP

By: */s/ Jorian L. Rose*
Jorian L. Rose
Michael A. Sabella
45 Rockefeller Plaza
New York, New York 10111
212-589-1400
jrose@bakerlaw.com
msabella@bakerlaw.com

*Attorneys for Movants*