# EXHIBIT D

**COLE SCHOTZ P.C.**
Seth Van Aalten, Esq.
Cameron Welch, Esq.
Michael Trentin, Esq.
1325 Avenue of the Americas – 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile

*Attorneys for Anthony M. Saccullo, in his*
*capacity as Liquidating Trustee, for the*
*TEUM Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PARETEUM CORPORATION, *et al.*,<br><br><br>Debtors. | Chapter 11<br><br>Case No. 22-10615 (LGB)<br><br>(Jointly Administered)<br><br>**Objection Deadline: November 2, 2022 at 5:00 p.m. (ET)**<br>**Hearing Date: November 10, 2022 at 10:00 a.m. (ET)** |

## OBJECTION OF THE LIQUIDATING TRUSTEE TO MOTION FOR ORDER CONFIRMING AND/OR DETERMINING THAT PROCEEDS OF CERTAIN D&O INSURANCE POLICIES ARE NOT SUBJECT TO THE AUTOMATIC STAY

Anthony M. Saccullo, in his capacity as the Liquidating Trustee (the "Trustee") for the

TEUM Liquidating Trust (the "Liquidating Trust"), by and through his undersigned counsel,

submits this objection (this "Objection") to the motion of non-debtors Robert H. Turner, Edward

O'Donnell, Denis McCarthy, Victor Bozzo, Robert Mumby, and Yves Van Sante (collectively,

"Movants") for entry of an order, pursuant to sections 105(a) and 362(d)(1) of title 11 of the United

States Code (the "Bankruptcy Code"), determining that proceeds under certain directors and

62028/0001-44043071

officers insurance policies (the "Policies") are not property of the estate and not subject to the automatic stay [Dkt. No. 329] (the "Motion")[1], and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Movants have filed a procedurally defective motion seeking a declaratory judgment that what remains of $20 million in insurance coverage is not property of the Debtors' estate. Movants improperly bring this application by motion, instead of by way of an adversary proceeding as the Bankruptcy Rules require, as part of an impermissible race to judgment so that they can exhaust the Policies to fund a partial settlement of the underlying shareholder litigations brought against them *and* the Debtors. If successful, Movants, who perpetrated the alleged securities fraud, would drain the insurance policies to extricate themselves from the pending shareholder litigations, while certain claims asserted against the Debtors, which are covered by the same Policies, remain outstanding. Clearly, the Policies, which provide coverage to and benefit the Debtors, are property of the estate. As such, Movants are required to proceed by way of an adversary proceeding if they seek a determination that the proceeds of those policies are not property of the estate. A request for a declaration to determine an "interest in property," which is what Movants seek here, must be made in a complaint initiated by an adversary proceeding pursuant to Bankruptcy Rule 7001(2) and (9). The Motion should be denied on this basis alone.

2. Of course, Movants did not proceed by way of an adversary proceeding because they hoped to obtain an expedited ruling from this Court on motion before the Liquidating Trust, which was only formed on October 21, 2022, could reasonably be expected to act. Movants request for "stay relief" would, if successful, also exhaust insurance coverage that would otherwise be available to address the claims against Movants preserved for, and assigned to, the Liquidating

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

Trust for the benefit of general unsecured creditors pursuant to the confirmed Plan (defined below). Movants' improper efforts to circumvent the Plan and railroad the Trustee were laid bare when, prior to filing this Objection, the Trustee requested a brief adjournment of the Motion, both so that the Trustee and his newly retained counsel could have sufficient time to evaluate and prepare a response to the Motion, and so that the Trustee could participate in settlement discussions with the Movants and the insurance carriers to achieve a more equitable resolution for both shareholders *and* creditors. Movants never responded to the Trustee's request for an adjournment nor his requested extension of the response deadline. Given the critical importance of these insurance policies to the estate and creditors, the Trustee is compelled to file this Objection.

3. Movants are simply not entitled to the relief they seek. When analyzing insurance policies that provide coverage to both the Movants and the Debtors, the dispositive question is not whether the Movants are entitled to be paid first, but rather whether depletion of the proceeds would have an adverse impact on the estate. If the answer to that simple question is yes, then the Policies, and the proceeds derived therefrom, are property of the Debtors' estate and subject to disposition in accordance with the confirmed Plan and the Bankruptcy Code's priority scheme. Here, depletion of the Policies to fund the Movants' settlement (which has not yet been approved by the District Court and which did not involve the participation of the Debtors or Liquidating Trustee) adversely impacts the estate in at least two ways. First, the Trustee, having only had the opportunity to engage in a preliminary claims review, has already identified at least one direct shareholder litigation claim pending against the Debtors – the claim by Sabby Volatility Warrant Master Fund, Ltd. [Claim No. 77] (the "Sabby Claim") – which, if allowed, would trigger coverage

3

in favor of the Debtors under the Polices.[2]  There are also pending indemnification claims filed against the Debtors by the Movants themselves (and other former officers and directors) that trigger coverage.[3]  Because these are "wasting policies," every dollar paid to fund the proposed settlement means a dollar less of coverage available to the estate.  Second, if the Court grants the procedurally defective Motion, then general unsecured creditors' primary source of recovery – the Liquidating Trust's claims against the Movants for their prepetition misconduct and the Policies' coverage for those claims – will be lost simply because those shareholder plaintiffs enjoyed a head start over the Litigation Trust.  That result is not only inconsistent with a fundamental tenet of bankruptcy law – the orderly and fair distribution of assets to similar creditors that avoids the proverbial "race to the courthouse" – but it also undermines a crucial element of the confirmed Plan that was accepted by voting creditors.

4.      Accordingly, the Court should deny the Motion and the automatic stay should remain in effect to provide the Trustee with a fair opportunity to investigate and pursue his claims so that creditors may share in the Policies.

**FACTUAL BACKGROUND**

A.      **The Chapter 11 Cases**

5.      On May 15, 2022 (the "Petition Date"), Pareteum Corporation and its affiliate debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[2] Sabby Volatility Warrant Master Fund, Ltd. is a participant in the proposed insurance settlement.  The Debtors filed an objection to the Sabby Claim; however, the hearing was adjourned until December 15, 2022 and the response deadline was extended to December 8, 2022. *See* Dkt. No. 390.  Upon information provided by counsel to the Debtors, it is the Trustee's understanding that the hearing was adjourned at the request of Sabby Volatility Warrant Master Fund, Ltd.

[3] *See* Claims Nos. 109, 110, 115, 117, 120, 125, 129, and 132.

4

6.     On May 16, 2022, the Debtors filed a motion for approval of bidding procedures and for a sale of substantially all of their assets.

7.     The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") on May 24, 2022.

8.     On July 8, 2022, the Court approved a Global Settlement among the Debtors, the Committee and proposed purchaser of the Debtors' assets. Pursuant to the Global Settlement, the parties agreed to establish a liquidating trust, which would be funded primarily by contributions from the proposed purchasers. The Global Settlement also provided that, subject to certain carveouts, the liquidating trust would receive the rights to prosecute causes of action belonging to the Debtors' estate.

9.     On July 11, 2022, the Court approved a sale of substantially all of the Debtors' assets.

10.     On October 7, 2022, the Court entered an order confirming (the "Confirmation Order") the Debtors' liquidating chapter 11 plan (the "Plan").[4] Consistent with the Global Settlement, the Plan provides for the creation of a liquidating trust for benefit of general unsecured creditors. The Confirmation Order includes a post-effective date injunction providing for the continuation of the stay in effect for the benefit of the Debtors. *See* Confirmation Order, ¶¶ 20, 60-62; Plan, at 10.4.

11.     On October 21, 2022, the Plan went effective, and the Liquidating Trust was formed.

---

[4] Class 4 General Unsecured Creditors voted in favor of the Plan. *See* Dkt. No. 358.

### B.  The Pending Litigations and the Government's Investigation

12.  Beginning in 2019, several putative class actions were filed against the Debtors, their current and former management, and members of the board of directors, including the Movants.  In general, the plaintiffs in these cases allege violations of federal and state securities laws with respect to the defendants' overstatement of the company's reported revenues, realized growth rates, and contractual revenue backlog for the period from June through October 2019.  In addition, several derivative actions were filed against the Movants asserting similar claims.

13.  Additionally, the U.S. Department of Justice and the U.S. Securities and Exchange Commission are actively conducting investigations that could result in civil and/or criminal actions against the Movants.

14.  As set forth in the Motion, the Movants and the shareholder plaintiffs in certain of the underlying putative civil actions have reached a proposed settlement for a total $7.6 million, which they propose to pay, in full, from the Policies.  On September 7, 2022, the parties filed a motion to approve the settlement in the United States District Court for the Southern District of New York.  *See In re Pareteum Securities Litigation*, Case No. 19-cv-9767 (S.D.N.Y. Sept. 7, 2022), Dkt. No. 266.  In connection therewith, the parties also filed the proposed Stipulation and Agreement of Settlement with the District Court (the "Settlement Agreement").  *See id.*, Dkt. No. 265.

15.  The United States District Court for the Southern District of New York scheduled a preliminary settlement approval hearing for October 12, 2022.  *See id.*, Dkt. No. 269.  Despite noticing that hearing the District Court has not, as of the date of this filing, entered an Order preliminarily, or otherwise, approving the Settlement Agreement.

16.  As set forth in the Settlement Agreement, the Movants and the shareholder plaintiffs agreed to work together to obtain a so-called "comfort order" from the Bankruptcy Court

6

62028/0001-44043071

determining that the proceeds from the Policies can be used to fund the proposed settlement. *See* Settlement Agreement, ¶ 10. Far from a "comfort order", the settlement is *expressly conditioned* upon this Court permitting the Policies to be exhausted to fund the settlement. *See id.,* ¶¶ 10, 29(a), and 32. This Motion, through which Movants seek an advisory opinion and a declaratory judgment that the insurance policies are not property of the Debtors' estate, followed.

### C.     The Policies

17.     The Motion identifies five Policies for the policy period July 12, 2019 to July 12, 2020. The Policies are "claims made" policies. They provide a total of $25 million in aggregate coverage for all clams made during the policy period, including defenses costs. The Policies are "wasting policies" because defense costs and coverage available for one claim reduces the policy proceeds available to pay coverage for other claims also made during the policy period.

18.     The primary policy, the Argonaut Policy, affords coverage to both the D&Os and the Debtors. Specifically with respect to the Debtors, the Argonaut Policy provides coverage for indemnification paid by the Debtors and direct coverage for securities claims asserted against the Debtors. The three excess policies that follow the Argonaut Policy contain substantially the same coverage terms as the Argonaut Policy (together, the "ABC Policies").

19.     According to the Motion, the first $5 million layer of coverage under the primary Argonaut Policy has been completely exhausted. Based upon the stipulations and orders previously entered permitting the insurers to advance defenses costs, it appears that an additional $4.3 million has been advanced or incurred under the ABC Policies through June 30, 2022. Upon information and belief, additional defense costs in excess of $2.7 million have been paid or have accrued from July 1, 2022 through the Effective Date. Although the Trustee is unaware of the exact amount of available coverage remaining under the ABC Policies, he estimates it to be not

7

more than the proposed settlement amount, meaning that the settlement, if approved, would likely exhaust the ABC Policies.

20.    In addition to the $20 million of coverage under the ABC Policies, the Debtors previously procured a "Side A Policy" providing an additional $5 million in coverage (the "Side A Policy"). According to the Motion, the Side A Policy affords coverage only to the Movants and other directors and officers, and not to the Debtors. The Motion further states that the Movants and the plaintiffs do not intend to utilize the Side A Policy to fund the settlement. In other words, they seek to first exhaust the policies that afford coverage to the Debtors (the policies that are property of the Debtors' estate) before utilizing the remaining policy that they contend only covers the Movants.

## **OBJECTION**

### I.    **The Motion Seeks Relief that is Only Available Through an Adversary Proceeding.**

21.    The Motion is described as being brought pursuant to sections 362(d)(1) and 105(a) of the Bankruptcy Code, seeking a determination that the automatic stay does not apply to the proceeds of the Policies. However, the relief sought in the Motion is not limited to section 362(d) of the Bankruptcy Code. Rather, the Motion seeks a declaration that the proceeds of the Policies are not estate property and, therefore, can be used to fund the proposed shareholder settlement. Such relief can only by sought by way of an adversary proceeding pursuant to Rule 7001(2) of the Bankruptcy Rules. *See* Fed. R. Bankr. P. 7001(2) ("a proceeding to determine the validity, priority, or extent of a lien or *other interest in property*….") (emphasis added). Furthermore, the declaratory nature of the relief sought also implicates Rule 7001(9). *See* Fed. R. Bankr. P. 7001(9) ("a proceeding to obtain a declaratory judgment relating to any of the foregoing").

8

62028/0001-44043071

22.     An adversary proceeding is the required mechanism where, as here (a) the moving parties are seeking to determine the extent of interests in property, and (b) the objecting party has not waived his rights with respect to the procedural deficiency.  *See In re Eastman Kodak Co.*, No. 12-10202 ALG, 2012 WL 2255719, at *2-3 (Bankr. S.D.N.Y. June 15, 2012) (denying motion to sell assets because the relief requested sought a declaration as to ownership of property, which had to be brought by adversary proceeding under Rule 7001) (citing *In re Orion Pictures Corporation*, 4 F.3d 1095 (2d Cir. 1993)); *In re S.H. Leggitt Co.*, No. 10-10279-HCM, 2011 WL 1376772, at *2 (Bankr. W.D. Tex. Apr. 12, 2011) (finding that a determination as to whether proceeds held in escrow are property of the estate must be brought through an adversary proceeding with a fully developed evidentiary record); *see also In re Forever 21, Inc.*, 623 B.R. 53, 62 (Bankr. D. Del. 2020) ("in seeking a determination that the insurance policies are not property of the estate, Count V clearly relates to an action under Rule 7001(2) which requires an adversary proceeding for an action to determine an interest in property.").

23.     Here, the Trustee has not waived his right to this procedural protection, nor has he consented to proceeding by way of motion – and with good reason.  Since the Trustee was appointed and retained counsel just last week, he has worked diligently to better understand the facts and circumstances at issue in the Motion, including multiple requests of the Debtors' professionals for documents and information concerning the Policies, the extent and nature of the numerous direct and derivative securities claims asserted against the Debtors, and amounts paid to date by the insurers in connection with Debtors' defense of these claims.[5]  And while portions of

---

[5] The question as to whether the policies were used to pay Debtors' defense costs prepetition is significant because if the policies were used to fund the Debtors' prepetition defense costs, then that would demonstrate not only that the Debtors are covered under the policies, but also that they actually received proceeds, and thus further demonstrate the fallacy of Movants' argument that the policies exist solely for the benefit of the D&Os.

9

62028/0001-44043071

the requested documents and information have trickled in, many of the Trustee's questions remain

unanswered.

24.     The Trustee is prejudiced in having to litigate this Motion on its current expedited

timeframe.    An adversary proceeding would provide the Trustee with additional time to

investigate, present evidence and appropriately respond to the requested relief, which threatens to

exhaust what is likely general unsecured creditors' primary source of recovery under the Plan.

Accordingly, the Motion should be denied as procedurally improper.

**II.     <u>The Automatic Stay Should Not Be Lifted With Respect to the ABC Policies.</u>**

25.     Assuming *arguendo* that the Motion is procedurally appropriate, the Motion should

be denied on the merits because the ABC Policies and their proceeds are property of the estate and

because the requisite "cause" does not exist to lift the automatic stay.

**A.     <u>The ABC Policies and Proceeds Are Property of the Estate Protected by the
Automatic Stay.</u>**

26.     "The definition of property of the estate is interpreted broadly, and 'every

conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,

is within the reach of [Section] 541.'" *In re Brizinova*, 588 B.R. 311, 326 (Bankr. E.D.N.Y. 2018)

(quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)).

27.     As a general rule, insurance policies (including D&O policies) that provide

protection for the debtor are property of the estate. *See MacArthur Co. v. Johns-Manville Corp.*,

837 F.2d 89, 92 (2nd Cir. 1988), *cert denied*, 109 S.Ct. 176 (1988) (a debtor's insurance policies

are property of the estate); *Minoco Group of Companies, Ltd. v. First State Underwriters Agency

of New England Reinsurance Corp. (In re Minoco Group of Companies, Ltd.)*, 799 F.2d 517, 520

(9th Cir. 1986) (holding that the debtor's D&O policy protecting the debtor against indemnity

claims by its directors and officers is property of the estate subject to the automatic stay).

10

28.     When an insurance policy provides coverage to both a debtor, on the one hand, and its directors and officers on the other, and there is a risk that payments made on behalf of the directors and officers will result in insufficient coverage available to the debtor, the proceeds are property of the estate. *See In re Fiddler Gonzalez & Rodriguez, P.S.C.*, 415 F. Supp. 3d 297, 301 (D.P.R. 2019) (holding that insurance proceeds are property of the estate where the policy is payable to the debtor "in some circumstances" and there is a risk of diminution of value to the estate); *In In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (D. Del. 2008) (holding that a D&O policy is property of the estate subject to the automatic stay and granting a preliminary injunction enjoining an action against the debtor's officers and directors as threatening estate property); *In re Metro. Mortg. & Sec. Co., Inc.*, 325 B.R. 851 (Bankr. E.D. Wash. 2005) (holding that policy proceeds in which the debtors were named insureds, had a right to seek payment for certain claims, and had a right to seek payment of indemnification claims that may be made by officers and directors were part of the estate); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 419-420 (Bankr. E.D. Penn. 1995) (holding that proceeds of D&O policy were property of the estate and that the debtor could, through its plan, regulate access to such proceeds).

29.     Here, the ABC Policies at issue provide coverage to the Debtors. Indeed, the Debtors are covered "Insureds" under the ABC Policies for any indemnification payments by the Debtors to the D&Os (Insuring Agreement B) and the Debtors have direct coverage for securities claims against the Debtors (Insuring Agreement C). The Trustee's *preliminary* review of claims asserted against the Debtors identified several covered claims pending against the Debtors, including the Sabby Claim and the Movants' indemnification claims. Moreover, the proposed

11

62028/0001-44043071

settlement does not resolve the derivative claims that are still pending against the Movants.[6] Additional covered claims may be identified during the Trustee's continued review and analysis of the claims register. Accordingly, here the Policies "actually protect[] the estate's other assets from diminution." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 191 (Bankr. S.D.N.Y. 2012) (quoting *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004)).

30. Because these are wasting Policies, every dollar paid under the proposed settlement reduces the policy proceeds available to cover the claims against the Movants that were assigned to the Trust under the Plan. It is indisputable that the Settlement Agreement's material depletion (and almost certain exhaustion) of the ABC Policies will have an adverse impact on the estate by diminishing the assets available for unsecured creditors. *See In re Cybermedica, Inc.*, 280 B.R. 12, 17 (Bankr. D.Mass. 2002) ("There is a fundamental test that has been used in determining whether or not property belongs to the estate and that test is whether the debtor's estate is worth more with [the proceeds] then without them."). Thus, the ABC Policies are property of the estate.

31. Although Movants cite cases for the proposition that D&O insurance proceeds are not property of the estate, those cases are not binding on this Court and are distinguishable. For example, in *In re First Cent. Financial Corp.*, 238 B.R. 9 (Bankr. E.D.N.Y. (1999), there were no direct claims against the debtors, and in *In re Downey Fin. Corp.,* 428 B.R. 595 (Bankr. D. Del. 2010), the debtor was deemed a nominal defendant only. Here, the Debtors are named as defendants in the underlying putative lawsuits and there is at least one direct claim still pending against the estate triggering coverage. In addition, in *In re World Health Alternatives, Inc.*, 369

---

[6] The Movants indicate in their Motion that the plaintiffs in the derivative claims do not have standing to pursue those actions. The Trustee agrees. However, the Trustee will need to take action to address those cases in their current forums, the costs of which also are likely covered under the Policies as well – but only if the coverage is not exhausted as a result of the proposed settlement.

62028/0001-44043071

B.R. 805, 811 (Bankr. D. Del. 2007), there were no indemnification claims asserted by the D&Os against the debtors. Here, by contrast, each of the Movants filed an indemnification claim against the Debtors.

32. Under these circumstances, a finding that the ABC Policies are property of the estate, and thus subject to the automatic stay, would be entirely consistent with "two key tenets of chapter 11: equal treatment among similarly situated creditors and an orderly process." *In re Celsius Network LLC*, 642 B.R. 497, 503 (Bankr. S.D.N.Y. 2022); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295, 311 (Bankr. S.D.N.Y. 2011) ("The automatic stay is one of the most fundamental bankruptcy protections and applies broadly to … 'prevent creditors from 'obtain[ing] payment of the[ir] claims in preference to and to the detriment of other creditors.'") (quoting H.R.Rep. No. 595, 95th Cong. 1st Sess. (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 49 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 1978, pp. 5835, 5963, 6010, 6296–97)).

33. When finite insurance proceeds are available to multiple litigation claimants, "one of the salutary benefits the automatic stay affords is preventing a litigant from gaining any advantage by having its case heard first or compelling an early settlement." *SN Liquidation*, 388 B.R. at 585. Where, as here, a debtor's and principals' liability proceeds are covered by a D&O policy, the debtor has a sufficient interest in the proceeds as a whole to bring them into the estate. *Sacred Heart Hosp.*, 182 B.R. at 419-20. Because the estate is covered by the ABC Policies, meaning that payment of the proposed settlement will diminish the assets available to creditors, the ABC Policies are property of the estate subject to the automatic stay.

### B. Movants Have Not Demonstrated "Cause" for Stay Relief.

34. Movants have not established the requisite "cause" for stay relief. 11 U.S.C. § 362(d)(1); *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d

13

1280, 1286 (2d Cir. 1990) (listing several non-exhaustive factors when assessing the issue of "cause," including the "impact of the stay on the parties and the balance of harms."). Movants' primary point for why they are entitled to stay relief is that the Policies are meant to protect directors and officers. Yet, as explained above, the Debtors are also insureds under the ABC Policies and, pursuant to the Plan, the estate also has a right to seek payment from the Policies on account of its claims against the Movants. If stay relief is granted, the shareholder litigants would be permitted to drain what is left of the Policies, which severely prejudices general unsecured creditors in favor of the shareholder plaintiffs. Importantly, unlike in *MF Global Holdings*, 469 B.R. at 196, in which the court granted stay relief so that the D&O's defense costs could be paid, here the Trustee is not seeking to deny the Movants a defense. Instead, the Trustee asks that the Court deny Movants' efforts to exhaust the Policies to fund their liability settlement with shareholders, to the detriment and exclusion of the estate and the general unsecured creditors. At a minimum, the Trustee asks that the Court deny Movants improper "race to the courthouse" and preserve the Policies until such time as this issue can be properly and fulsomely adjudicated in an adversary proceeding. Against this backdrop, it is clear the harm to the Movants does not nearly outweigh the prejudice to the estate and the Motion should be denied.


*[Remainder of Page Intentionally Left Blank]*

14

## CONCLUSION

35.     For the foregoing reasons, the Trustee respectfully requests that the Court enter an

order denying the Motion in its entirety and granted the Trustee any other further relief that the

Court deems just and equitable.

DATED:   New York, New York
              November 2, 2022

                                        **COLE SCHOTZ P.C.**


                                        By:___*/s/ Seth Van Aalten*_____
                                        Seth Van Aalten, Esq.
                                        Cameron Welch, Esq.
                                        Michael Trentin, Esq.
                                        1325 Avenue of the Americas – 19th Floor
                                        New York, New York 10019
                                        (212) 752-8000
                                        (212) 752-8393 Facsimile
                                        Email: svanaalten@coleschotz.com
                                                 cwelch@coleschotz.com
                                                 mtrentin@coleschotz.com

                                        *Attorneys for Anthony M. Saccullo, in his
                                        capacity as Liquidating Trustee, for the
                                        TEUM Liquidating Trust*

62028/0001-44043071