# EXHIBIT E

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
Jorian L. Rose
Email: jrose@bakerlaw.com
Michael A. Sabella
Email: msabella@bakerlaw.com

*Attorneys for Non-Debtors Robert H. Turner,*
*Edward O'Donnell, Denis McCarthy, Victor*
*Bozzo, Robert Mumby, and Yves Van Sante*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PARETEUM CORPORATION, *et al.*,[1] | Case No. 22-10615 (LGB) |
| Debtors. | |

**REPLY TO OBJECTION OF THE LIQUIDATING TRUSTEE TO MOTION FOR ORDER CONFIRMING AND/OR DETERMINING THAT PROCEEDS OF CERTAIN D&O INSURANCE POLICIES ARE NOT SUBJECT TO THE AUTOMATIC STAY**

Movants Robert H. Turner, Edward O'Donnell, Denis McCarthy, Victor Bozzo, Robert

Mumby, and Yves Van Sante (the "Movants"), by and through their undersigned counsel, state as

follows in response to the Objection Of The Liquidating Trustee To Motion For Order Confirming

And/Or Determining That Proceeds Of Certain D&O Insurance Policies Are Not Subject To The

Automatic Stay (the "Objection"):

---

[1] The Debtors in the Chapter 11 Cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Pareteum Corporation (7538); Pareteum North America Corp. (f/k/a Elephant Talk North America Corp.) (9623); Devicescape Holdings, Inc. (2909); iPass, Inc. (4598); iPass IP LLC (2550); Pareteum Europe B.V.; Artilium Group Ltd. (f/k/a Artilium PLC); Pareteum Asia Pte. Ltd.; and Pareteum N.V. (f/k/a Artilium N.V.). The Debtors' corporate headquarters is located at 1185 Avenue of the Americas, 2nd Floor, New York, NY 10036.

**Preliminary Statement**

1.     In opposing the Motion, the Trustee misrepresents proper procedure, fundamentally misstates the history of the Motion,[2] takes great liberties with the terms of the ABC Policies[3] at issue, and misapplies the law.  None of his arguments have merit.

2.     The Movants properly made a motion to lift the automatic stay to use the proceeds of the ABC Policies to settle the Litigation, which was granted preliminary approval by Judge Hellerstein of the U.S. District Court for the Southern District of New York on October 12, 2022. Courts routinely address on motion the issue of whether director and officer insurance proceeds are property of a debtor's estate.  The Trustee devotes much of his objection to a false narrative— that the Movants devised an "impermissible race to judgment."  Not so.  The Motion was filed nearly two months ago and was adjourned out from the initial objection and return date at the request of counsel for the Debtors and the Official Committee of Unsecured Creditors (the "Committee").

3.     The issues raised in the Motion are not new to this case nor should they be new to the Trustee—he served as the Wind-Down Officer of the Debtors since July 5, 2022[4] before his appointment as Trustee.  In fact, his retention as the Wind-Down Officer precedes the July 7, 2022 hearing on the Movants' prior motion (the "Prior Stay Relief Motion") (ECF Docket No. 117), which sought substantially the same relief as is sought in the Motion.

4.     Importantly, the ABC Policies are governed by a "Priority of Payments" contractual provision, which specifies that claims of the directors and officers under the ABC Policies are

---

[2] To the extent a term is not defined herein, said term shall be attributable to the terms as used in the Motion and/or the Objection.

[3] The D&O Policies are attached as exhibits to the Declaration of Michael A. Sabella (the "Sabella Decl.").

[4] *See Order Authorizing The Retention Of Saccullo Business Consulting, LLC To Provide Anthony M. Saccullo As Wind-Down Officer And Additional Personnel Nunc Pro Tunc To July 5, 2022, And Granting Related Relief* (ECF Docket No. 235).

senior to any claims of the Debtors under those policies. Simply stated, the directors and officers have a first priority to the proceeds over the Debtors that covers the entirety of the Settlement as well as all of the directors' and officers' defense costs. The Trustee's position ignores the terms of the polices and, if credited, would accord the Trust with greater rights to the proceeds than the Debtors had prior to the bankruptcy filing. The Bankruptcy Code does not work that way, and none of the cases cited by the Trustee in the Objection hold otherwise. The Trustee may believe that the Trust has claims he can assert, but this does not mean that he is entitled to superior rights to the insurance proceeds over already asserted and now preliminarily settled claims in violation of the Priority of Payments provision.

5. The Trustee also ignores the practical reality of the posture of the Litigation and the ABC Policies. If the automatic stay is not lifted and the Insurers authorized to use the proceeds of the ABC Policies to fund the Settlement, then the Settlement would be undone and the Litigation would resume. This would quickly and significantly erode the ABC Policies, regardless of any claims that the Trustee may assert.

6. For these reasons and those outlined in the Motion and below, the Movants request that the Objection be overruled and the Motion be granted.

<strong><u>Discussion</u></strong>

**I.     The Motion Is Properly Before This Court**

7. Although the ABC Policies are plainly not property of the estate for the reasons discussed in the Motion and herein, the Movants sought the requested relief in the Motion under Section 362 of the Bankruptcy Code out of an abundance of caution and to provide notice to parties in interest. Such relief is always sought by motion and is routinely granted where, as here, there is an unambiguous priority of payments provision. Courts routinely grant relief similar to that

3

sought in the Motion. *See e.g.*, *In re Downey Fin. Corp.*, 428 B.R. 595, 598 (Bankr. D. Del. 2010) (lifting the automatic stay pursuant to motion to permit the directors and officers to use the insurance policy proceeds for litigation costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 13 (Bankr. D. Mass. 2002) (granting a motion to lift the automatic stay to permit whether the debtor's officers and directors to access director and officer insurance liability proceeds); *In re CHS Elec., Inc.*, 261 B.R. 538, 539 (Bankr. S.D. Fla. 2001) (reiterating the bankruptcy court's earlier determination to treat the class action plaintiffs' 9019 motion to authorize the use of the director and officer insurance proceeds to satisfy that settlement as a motion seeking relief from the automatic stay, or, alternatively, a motion seeking a determination that the automatic stay did not apply, and granting the requested relief). Indeed, the Objection cites decisions in which courts did not require the filing of an adversary proceeding. *See In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 187 (Bankr. S.D.N.Y. 2012) (considering a motion to lift stay to permit payment of insurance policy proceeds for defense costs, stating that the court did not need to determine whether the proceeds were property of the estate at that time, and lifting the automatic stay to permit payment of reasonable defense costs); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 418 (Bankr. E.D. Pa. 1995) (analyzing whether insurance policy proceeds were property of the estate at confirmation of the debtor's plan of reorganization).

8. The Trustee's assertion that the Movants are in a "race to judgment" for the proceeds of the ABC Policies is disingenuous. The Motion was filed on September 9, 2022, nearly two months ago, and the requested relief is not unfamiliar to these cases as it is substantially similar to the relief requested in the Prior Stay Relief Motion. The Movants were clear with the Debtors and the Committee that unless the Litigation was resolved, the discovery schedule set by Judge

4

Hellerstein, along with defense costs in the government investigations, were anticipated to erode the proceeds so that there would not be anything available for anyone but the professionals.

9.      After the July 7, 2022 hearing before this Court on the Prior Stay Relief Motion,[5] a mediation was held between the parties to the Litigation, which resulted in ongoing settlement discussions and ultimately a settlement.  This significantly reduced the need to draw on the ABC Policies for litigation costs and expenses, with the exception of costs for negotiating the respective settlement agreements and the ongoing governmental investigations.  The Settlement required entry of an order from this Court lifting the automatic stay, or determining it did not apply, so the proceeds could be utilized for the Settlement.  Before the Motion was filed, the Movants informed the Debtors and the Committee about the Settlement and the Movants' intent to file the Motion.  Post-filing of the Motion, the Debtors and the Committee requested that the Movants adjourn the Motion in light of the pending confirmation hearing on the Debtors' proposed plan, to which the Movants consented.  The Trustee now seeks to use that good faith concession, which delayed this Court hearing the Motion, to argue that somehow the Movants are trying to rush the Motion through.  That is not so.  Despite his claims of surprise, the Trustee is not new to these cases as he served as the Wind-Down Officer of the Debtors since July 5, 2022.

10.     The Trustee is also incorrect in his understanding of the status of the Settlement. On September 21, 2022, Judge Hellerstein issued a Scheduling Order requiring the parties to the Litigation to appear for a preliminary settlement approval hearing on October 12, 2022 (Case No. 19 Civ. 09767 (AKH), ECF Docket No. 269).  A review of that docket shows that the Debtors'

---

[5] Paragraph 4 of the *Stipulation and Order to Modify the Automatic Stay on a Limited Basis to Permit Payments of Defense Costs Under Certain Insurance Policies* (ECF Docket No. 217) and the *Amended Stipulation and Order to Modify the Automatic Stay on a Limited Basis to Permit Payments of Defense Costs Under Certain Insurance Policies* (ECF Docket No. 377) both contemplated future motions to lift or modify the automatic stay, or motions to determine that the automatic stay did not apply to the policies.

authorized counsel to assist with the securities litigation, McGuireWoods LLP,[6] received

electronic notification of the Scheduling Order.  The hearing was held on October 12, 2022 before

Judge Hellerstein, at which he granted preliminary approval of the Settlement, subject to his final

approval upon the entry of an order by this Court either determining that the automatic stay did

not apply or, alternatively, lifting the automatic stay.  The Debtors' counsel did not appear.

11.     For the reasons discussed in the Motion and herein, the proceeds of the ABC

Policies are not property of the estate and therefore, the automatic stay does not apply.  However,

to the extent this Court determines that the automatic stay is applicable, cause exists to lift it and

permit the Insurers to make distributions to satisfy the Settlement.

**II.     The Priority of Payments Provision Governs Distribution of the Proceeds**

12.     In his effort to prevent the Settlement that Judge Hellerstein has preliminarily

approved, the Trustee attempts to obfuscate the real questions before the Court: what do the ABC

Policies cover, who do the ABC Policies cover, and in what order?  "Cases determining whether

the proceeds of a liability insurance policy are property of the estate are controlled by the language

and scope of the specific policies at issue."  *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr.

D. Del. 2010).

13.     The Argonaut Policy,[7] which the ABC Policies[8] follow in form and substance,

contained three principal insuring agreements, which answer the first two questions:

- Insuring Agreement A:  This affords specified coverage for non-indemnifiable loss: the "Insurer shall pay Loss of any Insured Person(s) arising from a Claim . . . first made during the Policy Period . . . against such Insured Person(s) for a Wrongful Act, if the Company has not indemnified the Insured Person(s) for such Loss."

---

[6] *Order Authorizing The Debtors To Employ And Pay Professionals, Including McGuireWoods LLP, Utilized In The Ordinary Course Of Business Nunc Pro Tunc To The Petition Date* (Bankruptcy Case No. 22-10615 (LGB), ECF Docket No. 228).
[7] *See* Sabella Decl. ¶ 2.
[8] *See* Sabella Decl. ¶¶ 3–5.

> o "Insured Persons" include, among others, Pareteum directors, management committee members, officers, in-house general counsel, controllers, directors of investor relations and human resources, risk managers, and, under specified circumstances, employees.
>
> o None of the Debtors are "Insured Persons" under the policies.

- Insuring Agreement B: This affords specified company reimbursement coverage: the "Insurer shall pay Loss of the Company for Loss arising from a Claim . . . first made during the Policy Period . . . against any Insured Person(s) for a Wrongful Act, if the Company is permitted or required to indemnify the Insured Person(s) for such Loss."

- Insuring Agreement C: This affords specified company securities liability coverage: "Insurer shall pay Loss of the Company arising from a Securities Claim . . . first made during the Policy Period . . . against the Company for a Wrongful Act."

14. The Insuring Agreements answer "what is covered" and "who is covered," so the next question is "in what order are the insuring agreements applied?" That is answered by Section V.E of the Argonaut Policy, the Priority of Payments provision, which states:

> "In the event of Loss arising from one or more covered Claims for which payment is due under this Policy, the Insurer shall: 1. *first, pay all Loss covered under Insuring Agreement A. NON-INDEMNIFIABLE LOSS COVERAGE; 2. second, only after paying Loss pursuant to subparagraph (1) above*, and to the extent of any remaining amount of the Limit of Liability, pay covered Loss under Insuring Agreement B. COMPANY REIMBURSEMENT COVERAGE; 3. third, only after paying Loss pursuant to subparagraphs (1) and (2) above, and to the extent of any remaining amount of the Limit of Liability, pay covered Loss under Insuring Agreement C. COMPANY SECURITIES LIABILITY COVERAGE . . . ."

*See* Sabella Decl. ¶ 2 (emphasis added).

15. Payments made under the Argonaut Policy and the excess ABC Policies (which follow the form of the Argonaut Policy), are prioritized to be paid for the benefit of the Insured Persons, i.e., the directors and officers, until "all Loss" of such Insured Persons is paid in full prior to any disbursement made for the benefit of the Debtors under Insuring Agreements B and C. "Loss" is defined in the Argonaut Policy and the ABC Policies as including settlements of, and defense costs incurred with respect to, all covered claims such as those asserted in the Litigation.

16.     The Priority of Payments provision defeats the Trustee's argument that Insuring Agreements B and C bring the insurance proceeds into the estate, which perhaps explains why the Trustee does not even mention the provision in the Objection. The ABC Policies are contracts, which are clear: coverage is first provided to the Movants and the Additional Insureds before any coverage is available to the Debtors. *See In re MF Global Holdings Ltd.*, 515 B.R. 193, 203–04 (Bankr. S.D.N.Y. 2014) (stating that the contractual provisions of a D&O policy, including the priority of payment provisions must be "given effect" and "[t]hat provision requires that the Individual Insureds be advanced defense costs before other payments under the D & O Policies are satisfied."). The Priority of Payments provision does not permit any payments under Insuring Agreements B and C until "after paying Loss pursuant to" Insuring Agreement A. Neither the Debtors nor the Trust share equally with the Insured Persons, and no bankruptcy principle permits either to ignore this contractual provision.

17.     The Objection's citation to another *In re MF Glob. Holdings Ltd*. decision supports the Movants. There the bankruptcy court analyzed a priority of payments provision, and stated it meant that coverage for the individual insureds "must be paid prior to any payments made for matters implicating coverage potentially provided to the Debtors for amounts they might pay as indemnification to the Individual Insureds for covered claims made against them." 469 B.R. at 193. The bankruptcy court rejected an objection that the provision ran "afoul of the Bankruptcy Code" because (i) the debtors were bound to the policies' contractual terms, and (ii) the debtors' rights under the policies could not be expanded because of the bankruptcy. *Id*.

18.     Further, in *In re Downey Financial Corp.*, the Delaware bankruptcy court, on a motion to modify the automatic stay, addressed whether the director and officer insurance policy proceeds were property of the estate. 428 B.R. 595, 598 (Bankr. D. Del. 2010). The insurance

policy provided for Coverage A for the insured persons and Coverage B for the entity. *Id*. at 599. The policy had a priority of payments provision, named "Order of Payments," under which Coverage A claims were paid first, and then, only after payment was made under Coverage A, could payment be made under Coverage B. *Id*. Shareholder class actions were commenced against the individual insureds, who sought automatic stay relief to use the proceeds for litigation costs. *Id*. 601–02. The action was stayed against the debtor because of the bankruptcy. *Id*. at 602.

19. Again, the bankruptcy court found dispositive the "Order of Payments" provision. First, the bankruptcy court directly addressed Section 541(a), stating it could not be used to expand the debtor's rights beyond what it held at the commencement of the case. *Id*. at 607. "Courts generally closely examine the debtor's rights under the terms of the liability insurance policy at issue in order to determine whether holding that the policy proceeds are property of the estate would improperly 'expand the debtor's rights against others beyond what rights existed at the commencement of the case.'" *Id*. at 607 (internal citations omitted). The bankruptcy court then turned to the "Order of Payments" provision, and that held that "[t]o the extent the Trustee has *any* interest in the Policy, his interest is limited to Coverages B(i) and B(ii)," *id*. (emphasis in original), and the Order of Payments provision in the policy "clearly provide[d]" that Coverages B(i) and B(ii) were "under all circumstances, junior to Coverage A." *Id*. To hold that the proceeds were property of the estate would enable "the trustee [to] have 'greater rights in the [Policy proceeds] than the debtor had before filing for bankruptcy.'" *Id*. at 608 (quoting *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.,* 124 F.3d 487, 492 (B.A.P. 3d Cir. 1997)).

20. Likewise, in *In re CHS Electric, Inc.*, 261 B.R. 538 (Bankr. S.D. Fla. 2001), the court permitted use of insurance proceeds to settle class action litigations. The class action plaintiffs filed a 9019 motion seeking bankruptcy court approval of a settlement of their claims

against the directors and officers and to use the director and officer liability insurance policy proceeds for the settlement.  There were three types of coverage: Coverage A, which was for claims against the debtor's directors and officers; Coverage B, which entitled the debtor to reimbursement for fees and expenses incurred in the defense of the directors and officers; and Coverage C, which was for direct claims against the debtor.  *Id*. at 540.  The plaintiffs sought to use the proceeds under the policies pursuant to Coverage A.  *Id*.  There, as here, a liquidating trustee opposed the motion by arguing that it was procedurally defective and that, if approved, it would diminish the liquidating trustee's own ability to recover for claims.  *Id*. at 539.  Notably, the bankruptcy court deemed the motion to be one seeking relief from the automatic stay.  *Id*. at 539.  The bankruptcy court analyzed the coverages, focusing on Coverage A.  *Id*. at 541.  It held because Coverage A was for the benefit of the directors and officers, those proceeds were not property of the estate and granted relief from the automatic stay to use the proceeds for settlement.  *Id*.

21.     Here, the rights to the proceeds of the ABC Policies follows the Priority of Payments provision, which is a contractual analysis.  As Insuring Agreement A provides priority coverage to the directors and officers, and the Priority of Payments provision requires that claims under Insuring Agreement A be prioritized, the proceeds under the ABC Policies are not property of the estate.  The cases cited by the Trustee in support of his position that the insurance policy proceeds are property of the estate are distinguishable because other than *In re MF Glob. Holdings, Ltd.*, they do not address a priority of payments provision.  As discussed above, *In re MF Glob. Holdings Ltd.* discusses a priority of payments provision and is clear that such a provision is to be honored.  469 B.R. at 193.  The Settlement represents a decision by the Movants to resolve significant litigation against them utilizing the proceeds of the ABC Policies, to which they have priority as a contractual matter pursuant to the Priority of Payments provision.

10

22.     The Trustee's arguments that the securities plaintiffs' claims and the Movants' indemnification claims adversely impact the estate ignores the Priority of Payments provision and also ignores Section 510(b) of the Bankruptcy Code and the terms of the Plan. First, there is no question that the securities plaintiffs' claims (claims for damages arising from the purchase or sale of the Debtors' securities) will be subordinated under Section 510(b) of the Bankruptcy Code. Tellingly, the Pareteum Shareholder Investment Group (the "PSIG") already consented to such treatment pursuant to the *Consent Order Granting Debtors' First Omnibus Objection to Claims of Certain Equity Securities Holders* (ECF Docket No. 399), which reclassified the PSIG's claims as Class 5 – Interests under the Plan. Since the Plan does not provide for payment in full of unsecured creditors, there will not be distribution made from the estate on account of the securities' plaintiffs' claims. Further, the Settlement will moot the indemnification claims of the Movants as the Settlement resolves the Litigation against them. In fact, the Debtors filed an objection to one of those claims (ECF Docket No. 337).

23.     Additionally, the Trustee's assertions about the Side A Policy[9]—which exists solely for the benefit of directors and officers and to which the Debtors have no right whatsoever— are misplaced. The individual insureds need to preserve some insurance proceeds for defense of the government investigations. Thus, in the Settlement, as part of the plaintiffs' agreement to forego recovery under the Side A Policy, and as part of the defendants' agreement to the Settlement, the parties agreed that the defendants may only use the Side A Policy proceeds for Defense Costs (as defined in the Side A Policy) and not for settlements or judgments of any other action.

---

[9] *See* Sabella Decl. ¶ 6.

11

### III. The Trustee Is Impermissibly Seeking To Block The Settlement

24.     The Trustee's motivations are clear: "every dollar paid under the proposed settlement reduces the policy proceeds available to cover the claims against the Movants that were assigned to the Trust under the Plan," and the Settlement would "have an adverse impact on the estate by diminishing the assets available for unsecured creditors." Objection ¶ 30. The bankruptcy court in *In re CHS Electric, Inc.*, in lifting the stay, rejected the very same argument, noting that the trustee there was not concerned with entity coverage but with "preserving sufficient insurance proceeds to satisfy *his* potential claims against the officers and directors." 261 B.R. at 543 (emphasis added). To that, the bankruptcy court stated:

> [The trustee's] efforts to protect sufficient insurance proceeds to satisfy what he believes will be a large judgment against the Debtor's former officers and directors is certainly consistent with a general policy in favor of maximizing the size of a bankruptcy estate. *Unfortunately, [the trustee] could not cite to, and this Court is unaware of, any Bankruptcy Code provision or case law that would give a bankruptcy trustee any different status than a non-bankruptcy plaintiff with an unliquidated claim against third-parties which may be covered by insurance proceeds about to be used to settle or satisfy a judgment entered in favor of other plaintiffs. See In re Reliance Acceptance Group, Inc.,* 235 B.R. 548, 561–62 (D. Del. 1999) (noting the lack of such a legal principle); *In re Phar–Mor Inc. Securities Litigation,* 164 B.R. 903, 905–06 (W.D. Pa. 1994).

*Id*. at 544 (emphasis added); *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 21 (Bankr. E.D.N.Y. 1999) ("[T]he Trustee has not pointed to a case, nor are we aware of one, in which a court has protected D & O policy proceeds so as to facilitate a prioritization in favor of a trustee or debtor-in-possession to such funds.").

25.     Similarly in *In re Enivid, Inc.*, 364 B.R. 139 (Bankr. D. Mass. 2007), the bankruptcy court denied the liquidating trustee's and liquidating trust representatives' motions to enjoin the settlement of securities fraud actions by class plaintiffs against the debtor's officers and directors in order to preserve insurance coverage for separate litigation of estate claims by the trustees. *Id*.

12

at 157–58.  There the district court preliminarily approved the settlement, subject to the bankruptcy court's approval.  *Id*. at 143.  The trustees argued that the priority distribution scheme of the Bankruptcy Code should govern, but this was rejected by the bankruptcy court, which said that the trustees wanted an injunction to restrain distribution of the insurance proceeds until their claims could be determined.  *Id*. at 157.  However, the trustees did not provide "a legitimate reason why their claims against the directors and officers of enivid and Sabine should be elevated to a higher priority than the claims of the Shareholder Plaintiffs, which would be the effect of injunctive relief … There is simply no basis in the Bankruptcy Code or other applicable law for such an order."  *Id*.

26.      The Trustee may believe that the Trust has claims against the Movants and, to the extent that the ABC Policies are used for the Settlement, the Settlement may deprive the Trustee with a source of recovery.  But his belief does not provide the Trustee with superior rights to the insurance proceeds nor deference to his potential, contingent, and unliquidated claims in violation of the Priority of Payments provision.  No case cited in the Objection says differently.  The Movants appropriately utilized the D&O Policies to settle the claims against them—claims that have been litigated for years.  This is precisely the purpose of the D&O Polices.  The Trustee— who has not even investigated claims much less filed them—cannot exert control over the Movants' settlement decisions with respect to the insurance proceeds.

27.      Importantly, by opposing the Motion, the Trustee, who has stepped into Pareteum's shoes, is violating the Company's agreement to cooperate to allow the Insurers' payment of Loss according to the ABC Policies.  Section V.M of the Argonaut Policy provides as follows:

> Bankruptcy or insolvency of any Insured shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights, remedies or defenses under this Policy or at law.  In the event a liquidation or reorganization proceeding is commenced by or against a Company pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, *the Company and the Insured Persons hereby agree to cooperate in any efforts by the Insurer, the*

13

> *Company or any Insured Person(s) to obtain relief from any stay or injunction that may prohibit or delay the Insurer's payment of Loss.*

*See* Sabella Decl. ¶ 2 (emphasis added). The Trustee must work with the Movants, not in opposition to them, in seeking the requested relief to permit the Insurers to pay Loss as expressly contemplated under the insurance policies.

## IV.    Cause Exists to Lift the Automatic Stay

28.     As discussed above, the proceeds of the ABC Policies are not property of the estate, and the purpose of the ABC Policies under Insuring Agreement A is to provide coverage to the directors and officers. *See In re First Century Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999).

29.     It is of paramount importance to understand the consequences if the Settlement fails because the Motion is denied. Prior to the preliminarily approved Settlement, Judge Hellerstein directed the parties to operate on a tight and aggressive discovery schedule, which would have necessitated document discovery, numerous depositions, and substantive motion practice. In addition to the Litigation, there were, and continue to be, continuing fees and expenses associated with various governmental investigations into the pre-petition actions of the Debtors. The threat of erosion of the ABC Policies due to those costs is a very real concern for the Movants and the Additional Insureds.

30.     By way of example of the costs, the Movants' legal fees for July and August 2022 were approximately $381,900 and $385,000, respectively, but decreased to $90,000 in September 2022, after the mediation.[10] This shows the impact of resolving the Litigation and the tangible

---

[10] Pursuant to the terms of the Amended Stipulation and Order to Modify the Automatic Stay on a Limited Basis to Permit Payments of Defense Costs Under Certain Insurance Policies (ECF Docket No. 377), the Movants shall file a statement on the court docket for the Debtors' jointly administered cases setting forth the amounts paid for the defense costs and expenses from July 1, 2022 through September 30, 2022. Those payments are still ongoing, so the statement has not yet been filed. However, the Movants can report that the invoiced amounts for the period from July 1, 2022 through September 30, 2022 were approximately $2,621,431.75.

14

savings under the ABC Policies. If the Motion is denied, then the Litigation resumes, it would require significant legal fees and expenses as the parties reenter the discovery process and move forward with the Litigation. In combination with government investigative fees, this would significantly erode the ABC Policies and likely exhaust them in a matter of months, not years, leaving insufficient funds to settle the Litigation or fund an adverse judgment. This weighs in favor of granting relief from the automatic stay, to the extent it applies.

### Conclusion

31.     For the reasons set forth herein and in the Motion, the Movants request that the Objection be overruled, and the entry of an order pursuant to section 362 of the Bankruptcy Code that the automatic stay is not applicable, or should be modified to the extent necessary so that the proceeds of the ABC Policies can be used towards settlement of the Litigation.

Dated:   November 7, 2022
   New York, New York

        BAKER & HOSTETLER LLP

        By: */s/ Jorian L. Rose*
        Jorian L. Rose
        Michael A. Sabella
        45 Rockefeller Plaza
        New York, New York 10111
        212-589-1400
        jrose@bakerlaw.com
        msabella@bakerlaw.com

        *Attorneys for Movants*