# EXHIBIT F

**COLE SCHOTZ P.C.**
Seth Van Aalten, Esq.
Cameron Welch, Esq.
Michael Trentin, Esq.
1325 Avenue of the Americas – 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile

*Attorneys for Anthony M. Saccullo, in his*
*capacity as Liquidating Trustee, for the*
*TEUM Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>PARETEUM CORPORATION, *et al.*,<br><br>                                    Debtors. | Chapter 11<br><br>Case No. 22-10615 (LGB)<br><br>(Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF THE LIQUIDATING TRUSTEE TO MOTION**
**FOR ORDER CONFIRMING AND/OR DETERMINING THAT PROCEEDS OF**
**CERTAIN D&O INSURANCE POLICIES ARE NOT SUBJECT**
**TO THE AUTOMATIC STAY**

Anthony M. Saccullo, in his capacity as the Liquidating Trustee (the "Liquidating

Trustee") for the TEUM Liquidating Trust (the "Liquidating Trust"), by and through his

undersigned counsel, submits this supplemental objection (this "Supplemental Objection")[1] to the

motion of non-debtors Robert H. Turner, Edward O'Donnell, Denis McCarthy, Victor Bozzo,

Robert Mumby, and Yves Van Sante (collectively, "Movants") for entry of an order, pursuant to

sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"),

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Liquidating
Trustee's initial objection filed at docket number 409 ("Liquidating Trustee's Initial Objection").

65263/0001-44211168

determining that proceeds under certain insurance policies (the "Policies") are not property of the Debtors' estate and, therefore, not subject to the automatic stay [Dkt. No. 329] (the "Motion"). In support of the Supplemental Objection, the Liquidating Trustee submits the *Declaration of Anthony M. Saccullo* (the "Saccullo Declaration") and the *Declaration of Michael S. Weinstein, Esq.* (the "Weinstein Declaration") filed contemporaneously herewith, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Following the initial hearing on November 10, 2022, the Liquidating Trustee conducted a further investigation into the facts and circumstances concerning the insurance policies at issue, the underlying claims, and the ongoing and far-reaching criminal investigation. The Liquidating Trustee's investigation has revealed that there are pending (i) indemnification claims that trigger coverage under Insuring Agreement B of the Policies and (ii) direct claims against the estate that trigger coverage under Insuring Agreement C of the Policies. Additionally, the Liquidating Trustee is incurring costs and expenses with respect to the government investigation – costs for which Pareteum received reimbursement from the Policies' proceeds pre-petition, and for which the Liquidating Trust should likewise receive reimbursement. These very real claims entitle Debtors' estate to much needed insurance coverage, absent which the estate will be depleted of assets intended for the benefit of creditors. This reality makes clear both the Policies, and the proceeds derived therefrom, are property of the Debtors' estate.

2. At the same time Debtors' estate is, and will continue to be, burdened by having to expend its finite resources addressing claims that arise out of the Movants' unlawful conduct, the Movants seek this Court's approval of a Proposed Settlement that would consume all remaining insurance proceeds that would otherwise be available to the estate. At the same time they seek to exhaust the Policies and their proceeds, Movants' Proposed Settlement, by design, preserves an

2

additional $5 million in "Side A" insurance coverage available only to the Movants, which Movants unabashedly proclaim will be used to fund their ongoing criminal defense. That the Movants engineered their settlement to exhaust all available insurance coverage that is property of Debtors' estate, while preserving for themselves additional coverage they will exhaust trying to avoid indictment and conviction, is transparent and plainly admitted in the Motion. It is also patently unfair to general unsecured creditors and an attempted end run around the bankruptcy priority scheme.

3.      In their attempt to deplete the Policy proceeds, Movants would have this Court believe Debtors' estate could not receive any benefit from insurance coverage because no claims against the estate exist, and there is no possibility of the Liquidating Trust having to make indemnification payments. But the opposite is true. There are covered claims pending against the estate and the prospect of the Liquidating Trust having to make indemnification payments in the future is not unduly speculative or remote. It is already a reality.

4.      Because the estate is entitled to coverage under the Policies, and because the Proposed Settlement, if approved, would not only exhaust all available coverage, but further diminish Debtors' estate by leaving it exposed to claims for which coverage no longer remains (thereby reducing the recovery of general unsecured creditors), it is respectfully submitted the Court rule that the proceeds of the Policies are property of the estate and maintain the automatic stay.

3

65263/0001-44211168

## ADDITIONAL FACTUAL BACKGROUND[2]

### A.      The Government Investigation

5.      In August 2019 and February 2020, the Securities and Exchange Commission (the "SEC") issued subpoenas requiring Pareteum to produce certain documents related to, among other things, Pareteum's recognition of revenue, practices with certain customers, and internal accounting controls.  Saccullo Decl., ¶ 9.

6.      On September 2, 2021, the SEC issued a settled administrative cease-and-desist order in connection with its ongoing investigation.  *Id.*   The SEC found, among other things, that from 2018 through mid-2019, Pareteum misstated its revenue due to improper accounting practices, which were not in accordance with GAAP, and that senior employees – including the Movants – had taken steps to conceal these practices from Pareteum's auditor.  *Id.*

7.      The SEC's investigation, along with a parallel investigation by the Department of Justice (the "DOJ" and, together with the SEC, the "Government"), continued during the pendency of the bankruptcy cases (the "Government Investigation").  Saccullo Decl., ¶ 4.

8.      Both prior to the Petition Date and during these chapter 11 cases, the defense costs of the Movants and other non-Movant directors and officers, including Laura Thomas, Luis Jimenez-Tunon, Robert Lippert, and Alexander Korff, were paid from the ABC Policy proceeds. *Id.* ¶ 4; *see also* Saccullo Decl., Ex. T-16 (reflecting $4,369,492.67 in defense costs paid under the XL Specialty Policy alone through August 2022).

9.      Additionally, prior to the Petition Date, approximately $2,070,500.61 in defense costs for Pareteum were paid from the Policies.  *See* Saccullo Decl. ¶ 14; Exs. T-14 & T-15.

---

[2] The facts set forth herein and in the accompanying Saccullo Declaration and Weinstein Declaration, supplement that facts in the Liquidating Trustee's Initial Objection [D.I. 409] and the *Declaration of Cameron A. Welch in Further Support of the Objection to the Motion for Order Confirming and/or Determining that Proceeds of Certain D&O Insurance Policies Are Not Subject to the Automatic Stay* [D.I. 414].

65263/0001-44211168

**B.      The Liquidation Trustee's Cooperation in the Government's Ongoing
Investigation**

10.      On or about July 22, 2022, Pareteum received a Grand Jury Subpoena properly
issued out of the U.S. District Court for the Southern District of New York (the "Subpoena") in
connection with the Government Investigation.  Weinstein Decl., ¶ 2; Ex. T-24.[3]

11.      Through the Subpoena, the DOJ has requested that the Liquidating Trustee produce,
among other things: (i) the emails and other electronic records of 27 individuals, including former
directors and officers of Pareteum; and (ii) all email correspondence and billing and payment
records relating to 35 former customers of Pareteum.  The temporal scope of the demand covers a
full three-year period.  *Id.* ¶ 3.

12.      In furtherance of the Liquidating Trust's continuing cooperation with the
Government Investigation, including responding to the Subpoena, the Liquidating Trustee's
counsel has been engaged in ongoing, and detailed dialogue with the investigating agencies and
federal prosecutors as to the materials within the Liquidating Trust's care, custody, and control.
Discussions have also centered on potential attorney-client privilege issues.  *Id.* ¶ 4.

13.      It is the Liquidating Trustee's understanding that individuals identified in the
Subpoena currently remain either "targets" or "subjects" of the ongoing investigation(s).  *Id.* ¶ 5.

14.      The Liquidating Trustee is now tasked with responding to the Subpoena, in addition
to evaluating privilege/work-product issues and fielding ongoing inquiries from counsel for former
directors and officers of the company.  Weinstein Decl., ¶ 6.  Because of the extensive scope and
breadth, including the potential impact of the materials requested, the Liquidating Trustee has been

---

[3] As set forth in the accompanying motion to file under seal, given the serious nature of the
investigation and its significant breadth and scope, the prosecuting agencies have directed that
their preference is that the specific contents of the Grand Jury Subpoena not be publicly disclosed.

5

forced to dedicate substantial time, and legal resources in preparing a response to the Subpoena and evaluating the associated legal issues.  *Id.* ¶ 7.

15.     Though progress has been made, the Liquidating Trustee is still in the process of conducting an expansive search for documents in response to the Subpoena.  *Id.* ¶ 7.  To date, the Liquidating Trustee has collected and produced three terabytes (3TB) of data/documents intended for production.  *Id.*; Saccullo Decl., ¶ 13.  For context, three terabytes of data is equivalent to 19.5 million pages of pdf or Microsoft word documents, or the equivalent of 3,900 filing cabinets filled with paper documents.  Weinstein Decl., ¶ 7.  Counsel for former directors and officers have also raised objections as to full, unfettered release of these materials because of claimed privileges they assert apply.  *Id.*  Those issues remain open and have been communicated to the investigating agencies.  *Id.*

16.     Given the broad, active and ongoing scope of the investigation(s), the Liquidating Trust is incurring, and will continue to incur, legal fees and other expenses responding to the Subpoena, engaging with former directors and officers and otherwise addressing the requests made by the DOJ and other investigating agencies.  *Id.* ¶ 8.  Those expenses include fees incurred by this firm in the amount of $14,400 through November 28, 2022.  *Id.*

6

65263/0001-44211168

## ARGUMENT

I. **The ABC Policies Proceeds Are Property of the Estate Protected by the Automatic Stay.**

17. At the November 10 Hearing, the Court indicated that it was inclined to follow *MF Global* and authority from Delaware in determining whether insurance policy proceeds are property of a debtor's estate. *See In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 191 (Bankr. S.D.N.Y. 2012) ("*MF Global I*"); *citing In re Allied Digital Techs., Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004). Under the holdings in these cases, insurance policy proceeds constitute estate property where "'depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'" *MF Glob. Holdings Ltd.*, 469 B.R. at 191(quoting *Allied Digital.*, 306 B.R. at 511); *see also In re SN Liquidation, Inc.*, 388 B.R. 579, 584 (D. Del. 2008) (following *Allied Digital* and holding that D&O policy is property of the estate); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 419–420 (Bankr. E.D.Pa. 1995) (the insurance policy provided direct coverage to the debtor as well as indemnification coverage; the court held that the debtor was an insured and had a sufficient interest in the insurance proceeds as a whole to bring them into the bankruptcy estate). Under circumstances where the estate has identifiable coverage interests, the estate's "interests in the proceeds requires protection from depletion and overrides the interests of directors and officers." *Allied Digital*, 206 B.R. at 511.

18. *In re MF Glob. Holdings Ltd.*, 515 B.R. 193 (Bankr. S.D.N.Y. 2014) ("*MF Global II*") is instructive. There, the directors and officers moved for stay relief with respect to insurance proceeds to fund their mounting defense costs. As in this case, the policies provided coverage to the debtors for securities claims and indemnification reimbursement. *Id.* at 198. Following its analysis in *MF Global I*, the court found that the estate did not have an interest in the proceeds

7

65263/0001-44211168

with respect to direct securities coverage – but only because no such claims, of any kind, had been filed against the estate during the years' long pendency of the case, and because the statute of limitations with respect to such claims had expired. *See id.* at 199, 203-04. The court did rule, however, that the debtors had an interest in the policy proceeds with respect to certain indemnification claims. Even though the court ruled that payment of such claims was "far from assured," the court required that $13.06 million of policy proceeds be reserved for the benefit of debtors' estate in the event that payment would be required in the future. *See id.* at 197.

19. Here, the Policies at issue likewise provide indemnification coverage to the Debtors under Insuring Agreement B. As in *MF Global*, indemnification claims have been filed against the estate and it is likely (even if not "assured") that the estate will ultimately be liable to make payments on account of the indemnification claims once available insurance coverage is exhausted – particularly given the rate at which the parties' seeking indemnification are utilizing policy proceeds in connection with their criminal defense. In addition, unlike in *MF Global*, direct securities claims were filed against the debtors, and one of those direct claims, filed by Dawson (defined below), remains.

20. The Proposed Settlement seeks to fully exhaust all remaining available coverage. If that were to occur, there would be no coverage available to the estate and the estate would either incur liability on account of the pending claims, or be forced to object to such claims using the Liquidating Trust's limited funds – assets which would otherwise be available for distribution to unsecured creditors. Accordingly, the depletion of the policy proceeds by the Proposed Settlement adversely affects the estate.

8

### A.    The Indemnification Claims Against the Estate Trigger Insuring Agreement B Coverage.

21.    The Liquidating Trustee has identified the following claims for indemnification filed by both Movants and Non-Movant former directors and officers of Pareteum:

| Claim Number(s)[4] | Claimant | Description of Claimant |
|---|---|---|
| 107 | Laura Thomas | Interim Chief Financial Officer of Pareteum from November 1, 2019 (effective as of November 15, 2019) through July 11, 2022, and director of Pareteum from July 27, 2017 to November 2018, then president of corporate development until March 31, 2019. |
| 109 | Luiz Jimenez-Tunon | Former director of Pareteum from March 1, 2017 through July 11, 2022. |
| 110 | Robert Lippert | Former director of Pareteum from November 16, 2018 through July 11, 2022. |
| 115 | Victor Bozzo | Chief Commercial Officer of Pareteum from May 24, 2019 through June 9, 2020, and Chief Executive Officer from November 1, 2016 through May 24, 2019. |
| 117 | Denis McCarthy | Chief Operating Officer of Pareteum from May 24, 2019 to October 9, 2019 and President from October 1, 2018 to May 24, 2019. |
| 120 | Robert Mumby | Chief Revenue Officer of Pareteum from April 2017 through June 2020. |
| 125 | Edward O'Donnell | Chief Financial Officer of Pareteum from January 9, 2017 to November 1, 2019. |
| 129 | Robert Turner | Chief Executive Officer of Pareteum from May 24, 2019, and Executive Chairman of the Board from November 16, 2015 through November 22, 2019. |
| 132 | Yves Van Sante | Director of Pareteum from June 1, 2014 through October 27, 2020. |
| 138 | Alexander Korff | Pareteum's General Counsel from August 1, 2016 through at least December 9, 2021. |

---

[4] Copies of the referenced Proofs of Claim are attached to the Saccullo Declaration as Exhibits T-1 through T-10.

65263/0001-44211168

(collectively, the "Indemnification Claims")

22.    The Indemnification Claims, generally, are based upon Pareteum's obligation to pay defense costs and indemnify its officers and directors pursuant to its By-Laws and Section 145 of the General Corporation Law of the State of Delaware. *See* Saccullo Decl., ¶ 4.

23.    With the exception of Alexander Korff, each of the individuals who filed the Indemnification Claims (together, the "Indemnification Claimants") were named as defendants in one or more of the underlying litigations. The Government has indicated that its investigation with respect to Pareteum's directors and officers remains active and ongoing. Given the ongoing nature of the Government Investigation, the Indemnification Claimants will, in fact, continue to incur defense costs after the Policies are exhausted by the Proposed Settlement.

24.    Movants may attempt to argue that the risk that the estate will have to pay indemnification claims is remote because an additional $5 million of coverage is available for the Indemnification Claimants under the Side A Policy. Indeed, Movants assert that they are seeking to preserve the Side A Policy exclusively to fund their criminal defense for the Government Investigation. *See* Movants' Reply, Dkt. No. 411, ¶ 23. However, a review of the defense costs incurred in connection with the Government Investigation suggest that once the settlement is approved and the proceeds otherwise available for the benefit of Debtors' estate exhausted, the $5 million in coverage available under the Side A Policy will likewise soon be drained. For example, Jenner & Block, who represents individual insureds in connection with the Government Investigation, was paid over $2 million in proceeds from the Policies during the nine (9) month period between December 2021 and August 2022. *See* Saccullo Decl., ¶ 16; Ex. T-16. And the Government Investigations remain, to the Liquidating Trustee's understanding, pre-indictment. Despite the substantial defense costs, the Government's investigation continues unabated, as

10

65263/0001-44211168

demonstrated by the Liquidating Trustee's recent need to produce 3 terabytes of data in response to a Grand Jury subpoena issued earlier this year. It is reasonable to expect that the defense costs will continue to be paid at a rapid rate in the coming months.

25.     Considering the extensive costs associated with the Government Investigation, the proceeds under the Side A Policy will be exhausted very quickly. After the Side A Policy is exhausted, the defense and liability costs of the individual insurers will either (i) be paid by the estate based upon the Indemnification Claims (*pari passu* with general unsecured creditors) or (ii) the Liquidating Trustee will be forced to object to the Indemnification Claims (discussed in next section). In either case, the estate will have to pay out-of-pocket with no remaining insurance proceeds available. This constitutes a diminution of assets, which is sufficient to bring the policy proceeds within the estate. *See SN Liquidation*, 388 B.R. at 584; *see also Sacred Heart*, 182 B.R. at 419-20.

### B.      There Are Direct Claims Against the Estate Triggering Insuring Agreement C Coverage.

26.     Insuring Agreement C affords direct coverage to the Debtors' estate for losses arising from securities claims. Unlike in *In re First Cent. Financial Corp.*, 238 B.R. 9 (Bankr. E.D.N.Y. 199) and other cases cited by Movants, here direct claims were asserted against the Debtors' estate. Although certain of the plaintiffs in the underlying actions agreed to entry of orders subordinating their claims, not all covered securities claims have been subordinated.

27.     Dawson James Securities, Inc. ("Dawson"), a former defendant in the Putative Class Action, has filed a proof of claim against the estate in the amount of $139,000 for legal fees incurred in connection with the Putative Class Action and for potential indemnification. Saccullo Decl., ¶¶ 7-8; Claims Register, Claim No. 78. Dawson served as the placement agent in 2019 for Pareteum's $40 million direct public offering for certain stocks and warrants. *Id.* Dawson was

11

named as a defendant in the class action and filed a cross-claim against Pareteum. *Id.* Although the plaintiffs dismissed Dawson from their complaint without prejudice, Dawson's cross-claim against Pareteum has not been dismissed or withdrawn. As with the Indemnification Claims, the Liquidating Trustee will either have to pay this claim or prosecute an objection to it.

28. Movants state in conclusory fashion that the Indemnification Claims are subordinated under section 510(b) of the Bankruptcy Code. However, neither the Plan nor the Confirmation Order provides for automatic subordination of these claims. As a result, even assuming that the claims are subject to subordination, the estate will have to object to them and prosecute those objections, the costs of which is covered under Insuring Agreement C.

29. Additionally, the Liquidating Trustee and its professionals are incurring substantial fees in connection with the Government Investigation. Prior to the Petition Date, the insurers paid defense costs to Pareteum in connection with*, inter alia*, the Government Investigation, which it concluded was a "single Claim" arising from the same "Interrelated Wrongful Acts" as the shareholder derivative litigation and securities litigation Movants now seek this Court's approval to settle using the balance of the Policies' proceeds. *See* Saccullo Decl., Ex. T-23; *see also* Saccullo Decl., Ex. T-22 ("XL Specialty understands that Argonaut is advancing Defense Costs for the SEC Investigation and adopts Argonaut's position as to Defense Costs."). The Liquidating Trustee is similarly entitled to seek to have its fees and costs incurred in responding to the Government Investigation reimbursed on a going forward basis.

30. Because claims subject to coverage under Insuring Agreement C remain, the Policy proceeds constitute property of the estate.

65263/0001-44211168

### C.     The Priority Scheme Contained in the Policies Does Not Remove the Policy Proceeds from the Estate.

31.     Movants rely heavily on the standard priority provision in the Policies, which provides that directors and officers not receiving indemnification have first priority over the insurance proceeds.  While this may be relevant when determining whether the stay should be lifted to pay defense costs (as in *MF Global II*), it does not carry the day where, as here, the directors and officers are seeking to exhaust the Policies to fund a liability settlement which they intentionally structured to exhaust the Policies *in toto*.  Stated differently, but for the Proposed Settlement that Movants manufactured to exhaust the Policies, there would be coverage available for the estate with respect to Insuring Agreements B and C.  Just as Pareteum received over $2 million in prepetition payments of proceeds from the Policies, regardless of the priority scheme, the estate now has an interest in the Policies' proceeds due to the claims currently pending against it and the ongoing Government Investigation.  *See Allied Digital*, 306 B.R. at 511("the general rule is that since the insurance proceeds *may* be payable to the debtor they are property of the debtor's estate") (emphasis supplied).

32.     That the Policies' priority provisions were not adhered to prior to the Petition Date, when the insurers paid over $2 million for Pareteum's defense, speaks volumes.  It is only now that the insurers and Movants want to rush through a settlement (which excludes creditors) that the Policies' priority scheme is paramount.  The Court should not now place great weight on provisions that Movants and the insurers themselves previously ignored.

## II.     Movants Have Not Demonstrated "Cause" for Stay Relief.

33.     Given that the Policies are property of the estate, the Movants must establish "cause" pursuant to section 362(d)(1) of the Bankruptcy Code to be entitled to stay relief.  11

13

U.S.C. § 362(d)(1); *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). The relevant *Sonnax* factors are addressed below:

34. <u>Prejudice to creditors, impact of the stay on the parties, and balance of harms.</u> The most pertinent factors here are the prejudice to creditors and the balance of harms. Substantial harm to the estate would result if the stay were lifted to allow the proceeds of the Policies to be depleted under the Proposed Settlement in the District Court Action. In contrast, the Movants will not suffer undue prejudice. Importantly, the Liquidating Trustee is not seeking to deny Movants a defense to the underlying actions or the Government Investigation. Rather, the Liquidating Trustee seeks only an opportunity to participate in the recovery of proceeds available to the estate to avoid further depletion of the estate's assets for the benefit of unsecured creditors. As stated by the court in *In re Metro. Mortg. & Sec. Co.*, "the stay prevents any action which affects the debtors' interests in the proceeds. This is consistent with and necessary to promote the fundamental bankruptcy principles of preserving estate property and ensuring ratable distribution to creditors." 325 B.R. 851, 857 (Bankr. E.D. Wash. 2005). If the stay is lifted and the Proposed Settlement is approved, then shareholder plaintiffs would receive a windfall to the detriment of creditors. Such a result is inconsistent with fundamental tenets of bankruptcy law.

35. <u>Whether the relief would result in partial or complete resolution of the issues.</u> The Proposed Settlement, which excludes the estate's creditors, does not resolve all remaining issues in this case. As noted above, the pending claims against the estate and the ongoing Government Investigation ensure that Movants, the insurers, and the estate will continue to have to address claims arising from the Movants' unlawful prepetition conduct even if the stay is lifted so that the Policies may be exhausted. The Liquidating Trustee respectfully submits that denying the Motion

14

would help foster meaningful settlement discussions that may lead to a global resolution. Even if not, stay relief would not, under any circumstance, resolve all pending issues.

36. <u>Lack of any connection with or interference with the bankruptcy cases</u>. The estate has a clear interest in the insurance proceeds that are being proposed to fund the settlement. If the Motion is granted and the District Court approves the Proposed Settlement, a primary source of recovery to the estate, as contemplated by the confirmed plan voted on by creditors, will be lost.

37. <u>Whether the debtor's insurer has assumed full responsibility for defending it.</u> The Debtors' insurers have not assumed responsibility for the claims currently pending against the estate and, in fact, they seek to deprive the estate of available insurance proceeds through their Proposed Settlement with the Movants.

38. <u>Whether the other proceeding involves the debtor as a fiduciary</u>. The Debtors are not fiduciaries in the District Court Action. This factor weighs against the relief requested. *See Sonnax*, 907 F.2d at 1286-87 (noting that when a debtor is a fiduciary there may be no need for a stay) (citation omitted).

39. <u>Whether a specialized tribunal has been established, whether the action primarily involves third parties, the procedural status of the action, and the interests of judicial economy</u>. Movants will likely argue that these factors favor the relief requested because Movants, the shareholders plaintiffs, and the insurers are on the verge of a class-action settlement and because the plaintiffs have agreed to subordinate their direct claims against the estate. However, the settlement does not resolve every covered claim against the estate. More importantly, the expeditious resolution of the shareholder claims should not take precedent over the interests of creditors who, as a result of the Proposed Settlement, stand to lose a primary source of their recovery under the Plan while, at the same time, seeing the Liquidating Trust exposed to ongoing

15

liabilities addressing the pending claims and the Government Investigation.  In short, lifting the

automatic stay to allow the Proposed Settlement to be approved by the District Court only benefits

third parties to the detriment of the estate and general unsecured creditors and it does not resolve

the litigation associated with these bankruptcy cases.

40.     Accordingly, the relevant *Sonnax* factors weigh in favor of the Court denying the

Motion and allowing the automatic stay to remain in effect with respect to the ABC Policy

proceeds.


*[Remainder of Page Intentionally Left Blank]*

16

## CONCLUSION

41.     For the foregoing reasons, the Liquidating Trustee respectfully requests that the

Court enter an order denying the Motion in its entirety and granted the Liquidating Trustee any

other further relief that the Court deems just and equitable.

DATED:   New York, New York
         December 7, 2022

                                   **COLE SCHOTZ P.C.**


                                   By:    */s/ Seth Van Aalten*
                                   Seth Van Aalten, Esq.
                                   Cameron Welch, Esq.
                                   Michael Trentin, Esq.
                                   1325 Avenue of the Americas – 19th Floor
                                   New York, New York 10019
                                   (212) 752-8000
                                   (212) 752-8393 Facsimile
                                   Email: svanaalten@coleschotz.com
                                          cwelch@coleschotz.com
                                          mtrentin@coleschotz.com

                                   *Attorneys for Anthony M. Saccullo, in his*
                                   *capacity as Liquidating Trustee, for the*
                                   *TEUM Liquidating Trust*

17

65263/0001-44211168