# EXHIBIT H

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 22-10615-lgb

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

PARETEUM CORPORATION,

       Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

             United States Bankruptcy Court

             One Bowling Green

             New York, NY  10004

             December 12, 2022

             10:00 AM

B E F O R E :

HON LISA G. BECKERMAN

U.S. BANKRUPTCY JUDGE

ECRO:  KS



Page 2

HEARING re Extending the Automatic Stay in Accordance with Section 362(e) of the Bankruptcy Code

Transcribed by:  Sonya Ledanski Hyde

A P P E A R A N C E S :


ROPES & GRAY LLP

    Attorneys for Sabby Volatility Warrant Master Fund

    1211 Avenue of the Americas

    New York, NY 10036


BY:  DANIEL G. EGAN


BAKER HOSTETLER LLP

    Attorneys for the Movants

    45 Rockefeller Plaza

    New York, NY 10111


BY:  MICHAEL A. SABELLA

    ERICA BARROW


SPERDUTO THOMPSON GASSLER PLC

    Attorneys for Wesco Insurance Company

    1050 30th Street NW

    Washington, DC 20007


BY:  PETER G. THOMPSON

COLE SCHOTZ

     Attorneys for the Trustee

     Court Plaza North

     25 Main Street

     Hackensack, NJ 07601


BY:  CAMERON A. WELCH

     MICHAEL TRENTIN

     KRISTA L. KULP


LOWENSTEIN SANDLER LLP

     Attorneys for Pareteum Shareholder Investment Group

     1251 Avenue of the Americas

     New York, NY 10020


BY:  MICHAEL S. ETKIN


ALSO PRESENT TELEPHONICALLY:

LAWRENCE FOGELMAN

NICOLE M. FULFREE

JAMES K. GOLDFARB

MELISSA HARRIS

LISA LAUKITIS

KIM MILLER

JORIAN ROSE

ANTHONY M. SACCULLO

PETER G. THOMPSON

MICHAEL TRENTIN

SETH VAN AALTEN

MICHAEL S. WEINSTEIN

UDAY GORREPATI

DANIEL C. KENNEDY

HUGH R. MCCULLOUGH

CHRISTOPHER L. NELSON

MICHAEL RELLA

LAURA THOMAS

Page 6

I N D E X

| WITNESSES: | DIRECT: | CROSS: | REDIRECT: | RECROSS: |
| --- | --- | --- | --- | --- |

CRYSTAL E. IVY

EXHIBITS:                                                          PAGE:

Page 7

P R O C E E D I N G S

CLERK:  All rise.

THE COURT:  You can be seated.  Good morning.

This is Judge Beckerman.  Court is now in session.  For

those of you on Zoom as well as here, I'm going to go ahead

and call the case and when I do, I'm going to ask the

attorneys to please put their appearances on the record and

then I'll also ask the attorneys when they're speaking to

please identify themselves for the record.

Case No. 22-10615, Pareteum Corporation.  May I

have the appearances of counsel, please.

MR. SABELLA:  Good morning, Your Honor.

BakerHostetler for the movants.

THE COURT:  Okay.

MS. BARROW:  Good morning, Your Honor.  Erica

Barrow, also on behalf of the movants from BakerHostetler.

MR. WELCH:  Good morning, Your Honor.  Cameron

Welsh of Cole Schotz on behalf of the liquidating trust.  So

my right, (indiscernible).

MR. TRENTIN:  Morning, Your Honor.  Michael

Trentin on behalf of the Liquidating Trustee from Cole

Schotz.

MS. KULP:  Krista Kulp, Cole Schotz, on behalf of

the Trustee.

MR. WELCH:  Your Honor, also in the courtroom are

my colleagues Mr. Van Alten and Michael Weinstein as well as the Trustee Anthony Saccullo.

THE COURT:  Okay.

MR. THOMPSON:  Morning, Your Honor.  This is Peter Thompson.  I'm counsel for Wesco Insurance Company and Ms. Ivy, we understand will be testifying this morning.  I'm here observing.

THE COURT:  Okay.  Thank you, Mr. Thompson.

MR. ETKIN:  Good morning, Your Honor.  In the courtroom, Michael Etkin, Lowenstein Sandler, on behalf of the Pareteum Investor Group, the lead plaintiff in the pending securities class action.

THE COURT:  Okay.  Thank you, Mr. Etkin.

MR. EGAN:  Morning, Your Honor.  Daniel Egan, Ropes and Gray on behalf of Sabby Volatility Warrant Master Fund.

THE COURT:  Okay.  Thank you, Mr. Egan.  Any other appearances of counsel?  Okay.  All right, so I thought the way that we would proceed today is to first take up the motion to seal that was filed.  And I didn't see that there were any objections to that; is that correct?  Mr. Sabella?

MR. SABELLA:  Good morning, Your Honor.  Michael Sabella.  We have a verbal objection to the motion.

THE COURT:  Okay.

MR. SABELLA:  I can provide to Your Honor or

Page 9

(indiscernible).

THE COURT: Okay.

MR. TRENTIN: Thank you, Your Honor, may it please the Court. Your Honor, I know, has read the papers. Your Honor is always prepared. I don't want to take up a lot of the Court's time with arguing a motion. I haven't heard Mr. Sabella's objection yet. The simple matter of the fact is we're presenting the subpoena for very limited purpose to the Court just to show the nature of the document requests and the scope and breadth of them and the fact that they're going to be an ongoing burden for the liquidating trust.

The government has said we were fine with you folks introducing that to the Court, provided the subpoena is only available for the Court's in camera review. We've cited the authority for Your Honor that would support such a motion. I understand Mr. Sabella's client is probably interested to see what's on that. The government has asked us not to share it with them and that's essentially the posture that we find ourselves in, Judge.

THE COURT: Okay. Mr. Sabella?

MR. SABELLA: Your Honor, the objection that we have is yes, that we have not seen the document, but also because under the terms of the policy, there is no coverage for (indiscernible), no coverage for the trust. The reimbursement is (indiscernible) government subpoena for

Page 10

investigation.  If I may, Your Honor.

THE COURT:  Okay, Mr. Sabella, may I ask you a question before you go into that?

MR. SABELLA:  Yes.

THE COURT:  I mean, it appears from the record that at least the Liquidating Trustee has put in in connection with the motion that there were amounts paid to the corporation.  Whether they should have been or shouldn't have been is a different question.  And I understand the priority of payment rules.  I've also read the agreement -- sorry.  Invest -- I'm just trying to think how to describe this -- Agreement A, Agreement B, and Agreement C in the policy.

So I'm aware of what they say and I understand why you would say that based on that, but it does seem that there has been payments and I'm not sure that's relevant to whether or not this should be like -- whether or not this should be admitted or not because I think the purpose that -- and under seal, and filed under seal is that Mr. Welch's client, the liquidating trustee, is just trying to show that these indemnification claims that were filed are claims that might be asserted and that there's a reasonable possibility that they could.

So even if the insurance coverage wouldn't cover the policies, that doesn't mean that the indemnification

under the -- under the corporate organizational documents or applicable law, state law, wouldn't cover them.  And that's why I don't think I'm making a decision if I decide to admit this document under seal, that has anything to do with whether there's a policy coverage for it and I don't think that the purpose of this, of the admission of it or the request for me to look at it is necessarily because the policy covers it.

It's because I raised the issue at our last hearing on the 10th that I was concerned that in order for me to determine whether the proceeds of the policies are property of the estate, I would have to determine whether or not, there was some reasonable likelihood or not of the indemnification claims, in other words, the Agreement B coverage or the Agreement C coverage being triggered.

I don't think -- I think that there could be indemnification claims asserted against the Debtor anyway, regardless of whether they'd be covered under the policy, but asserted against the Debtor that could certainly come out of anything that has to do with this investigation, whether the Debtors, you know, able to get reimbursement or not.

And so I -- you know, I don't really want to spend time right now going into that issue because I don't think that's relevant for my deciding whether I'm going to allow

this to be admitted for purposes of the motion under seal, because I think that that there are other -- there are other reasons why I specifically asked for information about the possibility of could there be live indemnification claims and that was my issue that I raised. So I assume that's the reason Mr. Welch, you know, and his client decided to admit this -- seek to admit this.

MR. SABELLA: Understood, Your Honor.

THE COURT: All right. So I'm going to grant the motion and allow it to be admitted under seal. I note for the record that I have actually read it and I have it obviously in the sealed envelope here and no one else will see it. I'm the only person in my chambers that's even read it. So that's what I'll say for the record.

Okay. All right. The next thing I thought we would do if it's all right is in respect of the motion, my next question -- the motion to lift the stay was were there any disputes about the exhibits or did the parties all agree to the admission of them? It wasn't clear to me from the binders and so I didn't want to -- I didn't know where things stood, so I guess I'll just ask you, Mr. Sabella.

MR. SABELLA: Michael Sabella, Your Honor. There are no objections to the exhibits.

THE COURT: Okay. All right. So neither party has a problem with my just admitting all of the exhibits

that were provided to the Court, then.

MR. SABELLA:  That's correct.

THE COURT:  Okay.  All right.  I'm going to go ahead and admit all the exhibits that were provided by the Court and those fall into three categories:  obviously joint exhibits between both parties that were labeled as such; exhibits that were requested to be admitted by the movants; and exhibits that were requested to be admitted by the Liquidating Trustee.  So I'm going to go ahead and admit all those into evidence.

All right.  Okay.  Okay, Mr. Sabella, I'll turn over the podium to you since it's your motion.

MR. SABELLA:  Thank you, Your Honor.  Michael Sabella.  Your Honor, we have one witness that Mr. Welch has said he would like to cross examine.  How would Your Honor like to handle --

THE COURT:  Sure.  So usually what I would prefer to do is just go ahead and swear the witness in just out of abundance of caution and when they're not here also take a look at their immediate area on camera.  And then I don't have a problem if you want to just ask the person about their declaration.  They may have a copy of their declaration in front of them as well.  That is not -- that's the one thing I have no problems with.

And then you can pass the witness after you verify

that it's her signature and that it was her declaration and then I'll admit it subject to cross and mister -- as direct testimony and Mr. Welch can then cross examine or his colleagues can cross examine the witness. And then you'll have an opportunity obviously for redirect and if there's some basis for recross, obviously that too. And then we'll move on.

What I like to do is put the evidentiary record in first and then I'll hear argument after the evidentiary record. So if that's acceptable to the parties, that's how I propose to proceed.

MR. SABELLA: That acceptable to me, too, Your Honor.

THE COURT: Okay.

MR. SABELLA: Your Honor, if I could call Crystal Ivy.

THE COURT: Okay. All right.

(Court and clerk confer)

THE COURT: Sorry, excuse me for a second.

(Court and clerk confer)

THE COURT: Sorry. Hybrid hearings. There we go.

MS. IVY: Good morning.

THE COURT: Okay. So Ms. Ivy, can you see me? I can see you.

MS. IVY: I can, thank you.

Page 15

THE COURT:  You can, yes?  Okay, good.

MS. IVY:  Yes.

THE COURT:  And I can year you fine, so I'm going to ask if you would please go ahead and raise your right hand.  Okay, great.  Do you swear that you -- the testimony you're about to give before this Court will be the truth, the whole truth, and nothing but the truth.

THE WITNESS:  Yes, I do.

THE COURT:  Okay.  Ms. Ivy, may I ask you, since you must have a camera, if you could just pan the camera around your room just so I could see that no one is in the room with you, I presume.

THE WITNESS:  I am all alone in my office.

THE COURT:  Great.  Okay.  And how about can you pan it down just so I can see your -- what's on your desk?  Sorry.

THE WITNESS:  Okay, just --

THE COURT:  Okay.

THE WITNESS:  -- a copy of my declaration that I signed.

THE COURT:  Nothing else, right?

THE WITNESS:  Nothing else.  L

THE COURT:  Okay, great.  Okay, that's perfect.  All right, Mr. Sabella, I'll turn her over to you.

MR. SABELLA:  Thank you, Your Honor.

DIRECT EXAMINATION OF CRYSTAL IVY

BY MR. SABELLA:

Q    Ms. Ivy, can please state your name on the record --
your name for the record, please.

A    Hi.  My name is Crystal Yvonne Ivy.

Q    Where are you employed?

A    I --

THE COURT:  I'm sorry, Mr. Sabella.  My courtroom
deputy tells me that this isn't going to record properly if
you don't come to the podium.

MR. SABELLA:  Okay.

THE COURT:  I'm sorry about that.

MR. SABELLA:  Not a problem at all.

THE COURT:  Thank you.

BY MR. SABELLA:

Q    Ms. Ivy, can you hear me now?

A    I can, thank you.

Q    Ms. Ivy, can you again for the record, can you please
state your full name?

A    First name is Crystal.  Middle name Yvonne, Ivy.

Q    Ms. Ivy, where are you currently employed?

A    I am currently employed at Wesco Insurance Company.

Q    Ms. Ivy, did you submit a declaration in this matter?

A    I did.

Q    Ms. Ivy, do you have a copy of your declaration in

Page 17

front of you?

A     I do.

Q     Could you please turn to Page 3 of the declaration?

A     Okay, I'm on Page 3.

Q     At the bottom, do you see a signature?

A     Correct.

Q     Whose signature is that?

A     That is my signature.

Q     What is the date?

A     December 2, 2022.

Q     Thank you.

          THE COURT:  Okay.  Thank you, Mr. Sabella.

          MR. SABELLA:  Thank you, Your Honor.

          THE COURT:  All right.  Mr. Welch, I'm going to --
unless, I'm going to go ahead and admit the declaration into
evidence subject to your right to cross examine the witness.
Is that acceptable?

          MR. WELCH:  Absolutely, Your Honor.

          THE COURT:  Okay.  All right, so Ms. You're your
declaration has been admitted to evidence, and now Mr. Welch
is going to ask you some questions on cross examination.

          THE WITNESS:  Okay, thank you.

          MR. WELCH:  Thank you.

              CROSS EXAMINATION OF CRYSTAL IVY

BY MR. WELCH:

Q    Good morning, Ms. Ivy.  Thank you for your time this morning.

A    Thank you.

Q    This shouldn't take more than a few minutes.  So I'm taking a look at Paragraph 4 of you declaration which states that Wesco has been presented with outstanding invoices for payments under the Wesco excess policy in connection with services provided by defense counsel to various insurers through September 30th, 2022, which totaled approximately $1,394,000.  Do you see that?

A    I do.

Q    Okay.  And are those legal fee payments that the Wesco company will be responsible for paying?

A    Yes, they are.

Q    And has Wesco performed its review to determine whether those invoices were reasonable?

A    We have.

Q    So those invoices have been approved?

A    They have been approved.

Q    And then if we take a look at Paragraph 5, there's reference to another $257,000 in invoices for the period October 1st, 2022 through October 31st, 2022; do you see that?

A    I do.

Q    And have those invoices for defense counsel fees and

costs been reviewed by Wesco for reasonableness?

A    Right now, they are in the final phase of review.  So we have the amount that has been submitted and under final review right now.

Q    As you sit here today, do you know whether the amount of $257,000 will be paid or whether there will be some reduction implemented by Wesco?

A    I believe at this time we're trying to finalize our review of those numbers.  So there is a possibility they may be reduced, but that's the amount that has been submitted for that period of time.

Q    Okay, thank you.  So irrespective of whether the Court approves the settlement, those are legal fee defense cost payments that are going to be paid out to defense counsel whether or not the Court grants the motion; is that correct?

A    Correct.

Q    And so we take a look at Paragraph 7.  There's reference here to estimates that Wesco has been provided last month, November 2022, for the period December 1st, 2022 through May 31st, 2023; do you see that?

A    I do.

Q    Okay, and there's a there's a chart here.  Is this a chart that you prepared?

A    It is a chart that we have provided.

Q    Who provided this to you?

A    We worked with our counsel to provide this information in the declaration.

Q    Okay.  And I note there's a footnote that indicates that the high range of the estimate number was used for December '22 through May '23; is that correct?

A    That's correct.

Q    The firm Jenner Block appears here; do you see that?

A    I do.

Q    And the November '22 estimate is $105,000 for the Jenner Block firm, correct?

A    Correct.

Q    And then the anticipated fees, at least on the high end, December '22 through May '23 is $1.5 million, correct?

A    That's correct.

Q    Now, the Jenner Block firm is not representing any insureds in connection with the litigations that are being settled subject to the motion being heard by the Court today, correct?

A    That is my understanding.

Q    They're criminal defense counsel?

A    Correct.

Q    Okay.  So even if this Court grants a motion approving settlement, those fees are in defense costs, that estimate, it's your understanding, that's what you -- Wesco should expect to see submitted in the coming months and that you

would be under an obligation to pay subject to a

reasonableness review and approval; is that correct?

A    That's correct.

Q    Okay.  The Skadden firm is identified here; do you see

that?

A    Yes.

Q    Now, are they also representing an individual insured

in connection with potential matters that do not involve the

settlement pending here today before the Court?

A    That is my understanding.

Q    Okay.  So even if this Court approves the settlement,

those legal fees at least as estimated here, when those

bills are submitted, it's your understanding Wesco, subject

to its reasonableness review, is going to be under an

obligation to pay those, correct?

A    Correct.

MR. WELCH:  Nothing further, Your Honor.

THE COURT:  Okay.  This is when I usually ask

questions, so that if there's any redirect it can be

covered.  I just actually wanted to clarify something for

the record.  It's not a question.  I'm not being asked to

approve the settlement.  That's Judge Hellerstein's job.

What I'm being asked is whether I'm going to lift the stay

or not, just to make that clear for the record that that's

what the motion is about.

Page 22

MR. SABELLA:  Yes, Your Honor.

THE COURT:  All right.  No further -- no questions on my part.

MR. SABELLA:  Your Honor, I just have one redirect question.

THE COURT:  Sure.  Go right ahead.

REDIRECT EXAMINATION OF CRYSTAL IVY

BY MR. SABELLA:

Q    Ms. Ivy, to the extent the Skadden firm or the Jenner firm submits any further fees, would they necessarily be paid?

A    Just pursuant to our review for reasonableness.

Q    Thank you.

THE COURT:  Okay.  All right.  Mr. Sabella, I don't believe you have any other witnesses; is that correct?

MR. SABELLA:  I do not, Your Honor.

THE COURT:  Okay.  All right.  I guess then we're going to go on to the evidence for the objecting party.

MR. WELCH:  Thank you, Your Honor.  My brief understanding is --

MR. SABELLA:  Ms. Ivy --

THE COURT:  You may be -- oh sorry.  Ms. Ivy, I'm sorry.  You may be excused.  Thank you very much for coming here today to testify and I appreciate that you're, you know, you took the time today to participate here and you

may be excused.

THE WITNESS:  Thank you so much.

THE COURT:  Sorry, Mr. Sabella.

MR. SABELLA:  -- on the screen, too.

THE COURT:  Yeah, I realized.

MR. WELCH:  So my understanding in speaking with counsel this morning is that they do not intend to cross our declarants.  So would Your Honor -- unless you folks have an objection to their being -- their declaration being admitted into evidence, would Your Honor want us -- me to put them on the stand and have proper witness testimony?

THE COURT:  No, we can skip that as far as I'm concerned.

MR. SABELLA:  And Your Honor, for the record, no objection.

THE COURT:  Okay.  All right.  So I'm going to go ahead and admit the declarations.  I believe those are Mr. Weinstein and Mr. Saccullo.  That's correct?

MR. WELCH:  Correct, Your Honor.  Okay.  All right.  I'm going to go ahead and admit those two declarations into evidence and I note for the record that the movant has chosen not to cross examine the witnesses.

So I guess that takes us to -- I think that closes our evidentiary record unless you all tell me otherwise, because I've -- or unless there's rebuttal testimony,

because I've admitted the declarations.  I've admitted the exhibits.  Is there anything else that needs to go into the evidentiary record?

MR. SABELLA:  Michael Sabella, Your Honor.  No from the movants.

MR. WELCH:  Cameron Welch on behalf of the trust, Your Honor.  No.

THE COURT:  Okay.  All right.  I guess we can proceed to oral argument on the motion.  Mr. Sabella, you go first.

MR. SABELLA:  Your Honor, would you prefer me to be at the podium?

THE COURT:  Yes, you do have to be at the podium.

MR. SABELLA:  (indiscernible).

THE COURT:  I think we're going to have problems otherwise with the recording.  Sorry.

MR. SABELLA:  Yeah, it's okay.

Good morning, Your Honor.  Michael Sabella, for the record.  Your Honor, the movants promptly moved before this Court about four months ago seeking relief from the automatic stay to (indiscernible) in order for the proceeds of various insurance policies (indiscernible) excess policy to be used to fund the settlement that was reached over the summer (indiscernible).

That matter in the District Court involved three

Page 25

litigations and was subject to a rigorous discovery schedule as well as potentially rigorous trial schedules set forth by Judge Hellerstein, would require several depositions, possibly 20 if not more, would require expert discovery, would require classification issues, motion practice, and potential a trial.

That litigation would have (indiscernible), we submit Ms. Ivy's declaration, the rest (indiscernible). However, we were able to conduct a mediation over the summer. That mediation resulted in a settlement that while Your Honor noted earlier you were not approving, is now why we're here today.

The trust has filed papers saying that the motion should not be granted, for several reasons which we will discuss in -- during our presentation. However, the trust's position seeks to thwart promotion, thwart the settlement, and put the trustee and his position over the rights of the directors and officers in this matter to settle litigation pursuant to terms of the director and officer liability insurance policies that they agreed to when they agreed to serve in their roles for Pareteum.

Your Honor, one thing that is overriding in this case, we talked about in the previous motion, we talked about in our papers, is priority payment provisions in the policies. That provision is clear that while there are

several insuring agreements under the policies, Insuring Agreements A, B, and C, there is in the event of conflict a order to how those provisions are to be looked at, analyzed, and applied.

The priority payment provision makes clear that under Insuring Agreement A, all payments are to be made in full before any payment (indiscernible), then to any claims under in Insuring Agreement B, and then under Insuring Agreement B, any payment be made in full under that provision, prior to any pending under Insuring Agreement C.

This is done to prioritize Insuring Agreements A, then B, then C to necessitate there is no conflict between who gets money, how to disperse the funds. Instead, the document itself and the agreements made clear how that has to be done to prevent the situation such as the one before the Court today.

It's simply a matter of contractual interpretation and application. It's one that's acknowledged by several Courts, including Judge Glenn in MF Global. It is a fundamental aspect of contract law to look to the terms of the document to determine how (indiscernible). In addition, Your Honor, to the extent the Court does determine that the estate does have an interest, whether it be remote, speculative, however Your Honor determines it, the movants admit the Sonnax factors favor them, in favor of granting

lifting the automatic stay because the balance of the harms fundamentally weigh in favor of the movant than it does to the trust.

Your Honor, as I noted before the Court is one of contract analysis and application to define the terms of the insurance policy. The insurance policies at issue (indiscernible) wasting policy which means that every dollar that is spent under the policies is one less dollar available afterwards. We (indiscernible). However, the purpose of these policies is to provide coverage for directors and officers on (indiscernible) liability. It is not to act as a potential resource of funds for a Debtor to collect to pay its general unsecured creditors. That was noted by the Court in Ochs v. Lipson.

Now (indiscernible) policy and the XL policy, the first two tiers of the policy in these matters have now been exhausted due to the defense costs in this case. And the defense cost is one of the concerns (indiscernible) gave rise to the mediation, that those defense costs will continue to erode on the policy, leaving nothing for any potential settlement, for any potential liability of the movant, for the additional insureds.

As noted in MF Global, Court analyzed the language and scope of the policies to determine the parties' rights. The Adelphia Court also noted that these policies should be

Page 28

honored and is critical for directors and officers to be able to rely on them and the availability of the proceeds under those policies when agreeing to serve.  It's crucial that (indiscernible) actual claim under the insuring agreements (indiscernible).  With that, Your Honor, I'd like to request the Court turn to the joint exhibit book.

If Your Honor would please turn to J-1.  On the first three pages, you can skip over.  When you get to Page 1 of 18, please let me know.

THE COURT:  Okay.  I'm there.

MS. BARROW:  Your Honor, I can share my screen with the exhibit (indiscernible).

THE COURT:  It's really a question if anybody on Zoom needs it, because I have it.  My law clerk has it.  So we're good.  And I had -- not surprisingly, I'd already tabbed this because this is the priority of payment revision.  I think that's what you're going to be talking about.

MR. SABELLA:  (indiscernible) insuring agreements first and then well get to (indiscernible).

If Your Honor looked at Insuring Agreements A, (indiscernible) coverage.  It says (indiscernible) speak for the record.  "The insurer shall pay loss of any insured person arising through claim" -- I'll skip over the parentheses -- "first made during the policy period or

extended reporting exercised against such insured person for a wrongful act if the company has not indemnified the insured person for such loss."

Insuring Agreement B, the next tier. "The insurer shall pay loss to the company for loss arising from claim" -- skip over the parentheses -- "first made during the policy period or extended reporting period if exercised against any insured person for a wrongful act if the company is permitted or required to indemnify the person for such loss."

Lastly, letter C, company security liability coverage. "The insurer shall pay loss to the company arising from a securities claim" -- skip over parentheses -- "(indiscernible) at issue in this case" -- Your Honor -- "first made during the policy period or extended reporting period if exercised against company for a wrongful act."

Now, Your Honor, when I -- before I started this case, I thought reading Bankruptcy Code could be confusing. (indiscernible) insurance policies, and let me tell you, they could teach the Bankruptcy Code a thing or two. So I think it's important that we go over some of the definitions that are in the section. That will, I think, help the Court. It certainly helped me.

So Your Honor, starting with the claim, if Your Honor turn to Page 2. "Claim is defined under 2(b)(2) of

the Civil Proceeding against any insured commenced by the service of a complaint or a similar proceeding."

Next, Your Honor, turn -- I'd ask Your Honor, to insured persons. That is Subpart O. Turn to Page 4 of 8.

THE COURT: I'm there.

MR. SABELLA: "Insured persons applies to any one or more natural person" who are directors or officers of the Debtors. It's clear, Your Honor, it does not include the Debtors, therefore it does not include the (indiscernible).

Next, Your Honor, I turn -- I direct your attention to the definition of a loss. That is Subpart R on Page 4 of 18, stay on the same page. "Loss is the total amount which the insureds become legally obligated to pay on account of claims made against them for wrongful act to which coverage applies" and it says, "including settlements."

I'd also note, Your Honor, on the following page, Page 5, that loss does not include any amount which -- "any amount which the insureds are not financially liable which are without legal recourse to the insureds." So there's no financial liability and there is no loss. (indiscernible) definition -- we're done, Your Honor.

Security claims. If you would now turn to Page 7, security claim is defined in Section 2(y). Security claims defined -- claim, other -- and this is key -- "other than

administrative or regulatory proceedings against or investigation of the company made in whole or in part against an insured alleging a violation of any regulation, rule, or statute."  Then (indiscernible).

Finally, Your Honor, I direct your attention to definition for wrongful acts.  That is Page 8 of 18, Section BD.  Your Honor, wrongful act is defined as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an insured person acting in his or her capacity such as or on behalf of the company."

Your Honor, it is clear that the settlement in question, after considering all these definitions, the settlement in question falls within the ambit of Insuring Agreement A as covered loss, in connection with litigation brought against the D&Os in District Court matter and that loss is to be paid by the proceeds of the insurance policies.

This is confirmed also by the insurance carrier in paying the legal fees and costs for their participation in mediation or the summary -- settlement of the litigation. Your Honor, this brings us to the question of the question of the Trustee's alleged competing claims.

As an initial matter, Your Honor, I'll note that in Trustee's exhibits, I did not see any evidence that any

Page 32

of the Trustee's claims have been submitted to the carriers for review or analysis to determine they are in fact actual claims under the policy that would be entitled to coverage.

So we have what I'll refer to as the alleged claims or the claims, just for Your Honor's understanding.

Now, it is important to note that the -- as I noted earlier, there is a (indiscernible) which I promise I will get to. Insuring Agreement B will come first for any potential payments followed by Insuring Agreement C.

Insuring Agreement B is (indiscernible) claim that could be brought. As we note in our papers, the settlement resolved potential claim for identification by the movant and the additional insured (indiscernible) litigation (indiscernible) settled litigation. There'll be no need for indemnification as a result.

Turning now to the potential claims under Insuring Agreement C for securities claims. As discussed, Section 2(y) defines securities claims to be a claim that does not include administrative or regulatory proceedings or investigation of the company. So let's start at trust potential claims. Trust potential claims are the securities claims asserted against the Debtors.

Now those claims were stayed by the operation of the automatic stay when the Debtors filed for bankruptcy. There has been no motion and there's been (indiscernible) to

lift the automatic stay against the Pareteum in this Court to bring them as an active litigant in these matters. Those claims are appropriately 100 percent stayed, barring someone doing something else that I have not seen to this date.

In addition, Your Honor, and you don't need to open the binder for it, but we put in our exhibits as well, Exhibits M-2 and M-3, the consent orders entered by this Court that subordinated claims of the lead securities plaintiffs and the Sabby plaintiffs to Class 5 under the plan. Your Honor, as Class 5 is not expected to receive distribution, because the unsecured creditors are not expected to receive payment in full, as submitted that any potential claim as a result of that is remote and speculative.

Your Honor, any claims that were not covered by subordination that are based on security claims are, as noted by Judge Glenn, in MF Global, subordinated under Section 510(b) of the Bankruptcy Code as the operation of the statute or the code.

Your Honor, I next direct your attention to Claim No. 78, Dawson James Securities. If Your Honor would like, identified in Trustee's exhibit book, T-11. Let me know when you are --

THE COURT: Okay, I'm there.

MR. SABELLA: Great. Your Honor, the Trustee's

(indiscernible) potential securities claim (indiscernible). We disagree.  If Your Honor turns to the addendum to the proof of claim of Dawson James Securities -- the sixth page. Direct Your Honor to Paragraph 3 of the addendum.  The claimants have claims -- I'm quoting here.  "The claimant has claims against Pareteum for contractual indemnity, contribution, indemnification, breach of contract, negligent misrepresentation."

I won't read, Your Honor, (indiscernible) give rise to the claim in here.  (indiscernible).  Can if you would like.

THE COURT:  No, that's all right.

MR. SABELLA:  Very well.  I'd also like to direct Your Honor's attention to Paragraph 5.  Paragraph 5, the last sentence.  "The claims both pursuant to the express terms of the agreement (indiscernible) provisions of applicable law."  Your Honor, B, this is a claim for indemnification -- contractual indemnification, breach of contract, contribution, negligent misrepresentation.  Non-securities claim as defined in the policy.  Movants submit that it is not a claim that will be covered under the (indiscernible).  Thus, the trust is not entitled to coverage for said claim.

I also just want to note separately, Your Honor, just don't want to say or do anything to (indiscernible) any

of the insurer's rights to any potential claims that are being submitted to them by the trust for any coverage issue or foreclose their rights to confirm or deny.  I am not an insurance carrier nor am I a coverage attorney (indiscernible), and I just want to make that clear for the record.

THE COURT:  Understood.

MR. SABELLA:  The trust notes that they may have to object to the claim and I invite them to do so if they think that is appropriate.

Okay, turning next, Your Honor, to the trust's claim (indiscernible) to the government subpoena.  Your Honor, as I noted, and as the policy defines, security claims does not include coverage for Pareteum or investigations of Pareteum which is exactly what this grand jury subpoena is.  (indiscernible) representations made in the declaration of Mr. Weinstein and Mr. Saccullo's declaration in evidence, (indiscernible) papers.

For that reason alone, I submit that is not a claim that is subject to coverage under the polices and therefore would not fall within the ambit of Insuring Agreement C.

To the extent any coverage (indiscernible) prepetition, (indiscernible) any investigation, Your Honor, I believe those fees were in connection with investigation

involving the directors and officers and their individual coverage for same, implicating perhaps the Insuring Agreement B. I note, Your Honor, that -- not to put you back into the very long list of definitions, would Your Honor please turn back to Page 2 of 18, definition of claims. Let me know when you're there.

THE COURT: I'm there.

MR. SABELLA: Great. Your Honor, please look at Paragraph 4, Subpart 5. I quote, "A civil, criminal, administrative, regulatory investigation of any insured person commenced by or serviced upon (indiscernible) by the insured person (indiscernible) letter of other written notice from the investigating authority, identifying by name the insured person as an individual and against whom a subpoena may be (indiscernible)."

I also turn Your Honor's attention to paragraph -- Subpart 8. "Solely with respect to Insuring Agreement A, any request, demand, or subpoena by a regulatory, administrative, governmental, or similar authority interviewed or deposed insured person, or for the production of documents by an insured person in his or her capacity as such." Your Honor, there is a clear provision of the policy for coverage in connection with the individual, movant's additional insured, the D&Os, and there's an explicit exclusion for Pareteum and thence now the trust for coverage

Page 37

for any claims in connection with the same.

THE COURT:  Okay.  But may I just interrupt you for a second?

MR. SABELLA:  Yes, yes.

THE COURT:  So Mr. Sabella, I mean, I understand what you're saying.  It seems like though that the individual D&O parties, the directors and officers, former directors and officers, certainly are part of the subject of this investigation by the federal government that they're conducting, and to the extent that those parties incur costs, those are -- certainly seem like they would be covered under these provisions you just read to me.  And if there was not coverage available because it had all been exhausted so that there wasn't anything left, I think those directors and officers would have indemnification rights under the agreements that they have both the -- some people have contracts.

There was a few that were attached to the proofs of claim that were submitted into evidence.  Others are just the organizational documents of the Debtor, of the entity, and then of course there's applicable state law.  Do you disagree with that?  It seems to me that the indemnification claims could arise if there was coverage exhaustion by the D&O, just for the D&Os, that they --

MR. SABELLA:  I --

THE COURT:  -- have claims.

MR. SABELLA:  (indiscernible).  I do not disagree with that position , Your Honor, but I also do note there is another excess policy, the Side A policy for the sum of $5 million that is not being implicated by the settlement and available for potential coverage.  That being said, to the extent that policy is worn down and to Your Honor's point there may be indemnification (indiscernible).

THE COURT:  Okay, thank you.  That's just what I was trying to understand.  I don't know it's -- to be candid, I'm not sure it's so important whether Mr. Saccullo's costs can get paid here in terms of determining if this is remote.  It's more that each one of you are telling me that these policies are likely to be exhausted if litigation continued.  We have an ongoing governmental investigation for sure.

There's been something you haven't addressed yet but I'm sure it's coming, is the litigation that was that was commenced by Mr. Saccullo himself against them.

MR. SABELLA:  I'll --

THE COURT:  I know you will -- against some of the Debtors -- some of the directors and officers, former directors and officers and presumably it's not clear to me for sure that all the statutes of limitation have expired for anything that anybody else could be sued for because

only, for example, a handful of the directors and officers were sued in that action, for example. So I don't know what else might happen.

MR. SABELLA: You and I are in the same boat, Your Honor. I (indiscernible).

THE COURT: Okay. All right. Sorry for interrupting, Mr. Sabella.

MR. SABELLA: Not at all.

THE COURT: Okay.

MR. SABELLA: Not at all. I appreciate getting a moment to not have to talk.

Your Honor, based on my previous presentation, we submit the Trustee's alleged claims are hypothetical in the specter of the DIP. Your Honor, there's no coverage for any potential claim that it's not estate property. That's by Allied Digital as well as In re Medex and Ochs v. Lipson, which noted that (indiscernible) coverage hypothetical, potentially no interest in proceeds.

Now Your Honor, I went through that exercise to explain our position on potential claim, but -- this brings me to really the star of the presentation I know Your Honor's been waiting for me to talk about which is, well, what if there are potential conflicting claims under Insuring Agreements A, B, and C.

Well, the insurance carries put in a provision to

Page 40

address just that, and that is what is known as (indiscernible) agreement provision.  So Your Honor, I direct your attention Page 14 of 18.  This is Section 5(e).

THE COURT:  I'm there.

MR. SABELLA:  (indiscernible).  So Your Honor I will again (indiscernible).

THE COURT:  I do not mind.

MR. SABELLA:  Thank you, Your Honor. (indiscernible).  "In the event of loss arising from one or more covered claims for which payment is due under this policy, the  insurer shall, one, first pay all loss covered under Insuring Agreement A, (indiscernible) coverage; two, second, and keep only after paying loss pursuant to Subparagraph 1 above and to the extent of any remaining among of the limited liability, then (indiscernible) pay covered loss under Insuring Agreement B, company's reimbursement coverage."

Paragraph 3, "Third, only after paying loss pursuant to Subparagraphs 1 and 2 above and to the extent of any remaining amount of the limited liability, pay covered loss under Insuring Agreement C, company securities liability coverage."  Your Honor, there is a fourth provision but is not applicable so I'm not going to read it.

Your Honor, the purpose of a priority payment provision is to govern distribution of the proceeds and

priorities for those higher in the waterfall.  A comes
first, then comes B, and then comes C.  They do not all take
the same time.  They do not all flip their order.  It is
clear it goes A, B, and C.  It means that the movants, the
additional insureds have a first priority to the insurance
proceeds under the Insuring Agreement A before any payment
(indiscernible) made under Insuring Agreement B and in B,
payment's only made then under C when B is paid in full.

This is a contractual -- it's an application to
the facts of the case which the parties are bound to the
contractual terms of the policy. Just because the Debtor is
in bankruptcy, does not mean the Debtors' rights are
expanded beyond the provisions of the contract and beyond
the right the Debtors had prior to the bankruptcy.

In MF Global Holdings, Your Honor, Judge Glenn
analyzed a similar priority payment provision, said, "In
this case, the priority payment provision cannot be excised
because doing so would be (indiscernible) specialty policies
and expand the Debtors' rights under them.  The individual
insured's rights clearly delineate in the specialty policy
and the Court cannot modify those rights pursuant to the
Bankruptcy Code and New York insurance law."

Judge Glenn even noted on Page 194 of this
decision, in discussing lifting the automatic stay, that the
insurance would not provide an access to the funds then

"some individual insured may also be deprived of fair

efficient settlement opportunities and suffer increased out

of pocket costs."  This is exactly what the Trustee's

seeking to do now with the objection.

Your Honor, it is incomprehensible that with

saying all of that, that Judge Glenn would -- if Glenn was

faced with such a situation as Your Honor -- as the Court

where settlement would possible erode (indiscernible) the

policy, that he would contract again -- well, not contract,

but again, what he previously said and (indiscernible) the

policies when he was so clear that that should not be done.

I'd also point Your Honor to In re Downey

Financial Corp. which analyzes an order payments provision,

different names but the same concept and held that the

proceeds were not property of the estate because the

priority payment provision meant that the Debtors' interests

were junior to coverage for the directors and officers and

to hold otherwise would enable the Trustee (indiscernible)

greater rights to the proceeds than the Debtor would have

had prepetition.

Your Honor, cases cited by the trust for

assignment of proceeds as property of the estate are

distinguishable, other than MF Global which we discussed

already, they do not address the priority of payment

provisions and MF Global is clear that such provisions

Page 43

should be honored.

THE COURT:  Mr. Sabella, I'm sorry, can I just stop you there for a second?

MR. SABELLA:  Yes.

THE COURT:  I think there is one difference that came up in MF Global, I guess I'll call two, the second decision, that is a little different than here and I think it just has to do with the facts in MF Global.  In MF Global, Judge Glenn in connection with the second decision did require a certain amount of coverage to be set aside potentially for indemnification claims.  Now, I think the reason that that occurred is because there was a lot of coverage in MF Global, which we do not have here.

MR. SABELLA:  We do not.  We do not. (indiscernible) we did.

THE COURT:  I think everybody does because that is a factual distinction, I think.  But there, the judge did say, well you have to reserve this because I've just, you know, there's been an estimation, which we don't have here, of the indemnification claims, but you need to reserve this at least until we figure out what's going to happen or how likely they are.  I don't know myself what happened at the end of that.  I -- to be honest, I think I read that case for the first time this weekend and I haven't had a chance to ask Judge Glenn if he would even remember about that.

So I don't know. I haven't looked at that, so I don't know. And I realize that's different than our situation because we don't have the funds here, but I think Judge Glenn there did recognize that it was possible there could be other claims and that's why at the time, again whether that ultimately got released later, maybe when the indemnification claims appeared to be less likely or something else, I don't know, but there was a reserve for that.

How do you account for that?

MR. SABELLA: Your Honor, I account for that by saying the contract itself is clear that even if there were indemnification claim, they do not receive distribution until payment is paid in full under Insuring Agreement A. While that is a possibility, to Your Honor's point, the contract is clear that it does not elevate, carve out any provision for claim under Insuring Agreement B or even C because the focus is to (indiscernible) the full use of the proceeds under Insuring Agreement A.

THE COURT: Okay. And let me ask you a question about that before you go on -- sorry -- that occurred to me as well. My question for you is -- sorry to put it this way -- but is this what actually happens in practice? Because my own experience before I had this job was -- in my prior life, was that sometimes it was really -- you'd have A, B, C

coverage.  It depends on when people made claims.

Sometimes for example, if at the time someone didn't have an A claim but someone had a B claim because there was an indemnification claim, so it would get paid because they weren't known at that time.  And so policies could be paid where some B coverage would have been paid because at the time there wasn't a known A coverage.  Have you ever seen that?  I was wondering about that.

MR. SABELLA:  Your Honor, all honesty, this is my first case where I've dealt with such a provision.

THE COURT:  Okay.  I understand.  All right.

MR. SABELLA:  I wish I had more experience with to give to you (indiscernible), but --

THE COURT:  Mr. Etkin's standing up here.

MR. SABELLA:  (indiscernible).

MR. ETKIN:  With your permission, Your Honor, may I weigh in?  I have a little more gray hair and I've been doing this for a very long time, involving these policies. I have never seen a situation like that where there were no pending securities claims and we're talking about securities litigation, securities law violations, but there were identification claims in connection with the sale of stock or bonds or whatever.

THE COURT:  Well, but the indemnification claims, Mr. Etkin, can be in account of anything, you know,  It's

Page 46

not just the -- for example, that officers and directors are indemnified only because this is -- this results in a securities class action.  Some of -- they're indemnified under their, either their contract or their -- or applicable state law or the organizational documents of the Debtor.

And if they get sued for something else, you know, let's just say a fraudulent transfer action, not a securities law action or a breach of fiduciary duty action, like happens, for example, it is possible if it's not a public company, for example, if there aren't securities. But you're saying in a public company, this doesn't happen.

MR. ETKIN:  Well, it certainly is possible, Your Honor, but then, you know, it wouldn't really -- you wouldn't be dealing with the same issues that are before the Court today where you have --

THE COURT:  Well --

MR. ETKIN:  -- indemnification claims that are inextricably intertwined with the, you know, with the sale of --n with the securities litigation and the purchase or sale of securities.

THE COURT:  Well, you certainly wouldn't have Side C -- I mean, what I would call Side C or agreement -- Insuring Agreement C coverage, I grant you, because would never get that in a private company policy but --

MR. ETKIN:  Sure.

Page 47

THE COURT:  But you still might have an indemnification issue.  Okay.  Well that --

MR. ETKIN:  To your point, if there are separate indemnification claims, that's certainly possible separate and apart from any of the issues that you have before the Court today.

THE COURT:  Well -- okay, but I mean, have you read the indemnification claims that were submitted by all the officers and directors?  I don't think they limit themselves to just securities litigation claims.

MR. ETKIN:  They're blunderbuss proofs of claims, Your Honor.

THE COURT:  Yes.

MR. ETKIN:  They --

THE COURT:  I agree with that.

MR. ETKIN:  As they usually are, but obviously, those claims have been filed on the heels of potential liability and pending litigation.

THE COURT:  For certain, because this company has obviously been having problems long before bankruptcy and obviously a lot of financial restatement requirements and you're certainly correct that people are well aware of this before they had to write a bankruptcy proof of claim, had been going through three-plus, four years of issues before the bankruptcy proofs of claim were required.

So for sure you're right that people were writing it with the understanding of that, but I think you'd find in any other case, even if there wasn't a pending securities litigation, that an indemnification claim would be written very broadly -- as you said, a blunderbuss -- because no one knows when their officers and directors and a company ends up in a proceeding, whether they're going to end up having a claim brought by somebody someday for something, is the way I would describe it.

MR. ETKIN:  Right.  And that would implicate 502(b)(1)(B) --

THE COURT:  Right.

MR. ETKIN:  -- with respect to being able to --

THE COURT:  Sure.

MR. ETKIN:  -- expunge that claim, but --

THE COURT:  Yes, but that's not where we are not.

MR. ETKIN:  That's not where we are.

THE COURT:  Okay --

MR. ETKIN:  Thank you, Your Honor.

THE COURT:  Understood.  Thank you, Mr. Etkin. Mr. Sabella, sorry, I think you can go back to your argument.

MR. SABELLA:  Good morning again, Your Honor. Okay.  So Your Honor, the trust's focus right now is on the Insuring Agreement B and C.  But I think it's also clear

Page 49

that the trust's concern is the potential for the use of the proceeds to pay the settlement, which may potentially deprive the trust of a source of recovery or claim that it will -- or let me correct that -- claims that it filed last week against specifically my clients and nobody else.

Your Honor, the trust is (indiscernible) to object and throw off the settlement because of the condition of the settlement, Your Honor, did not order entry -- enter order of this Court lifting the stay to the extent applicable. Your Honor, did not do so (indiscernible) and we're off to the races in District Court again.

So the trust is seeking essentially to prioritize its potential claim or claims -- it may have more -- against the movant and potential the additional insured due to the extent it brings any claims against anyone else over the right of the plaintiffs to the litigation.

Your Honor, there is no support in the caselaw or the Bankruptcy Code for that position or the elevation of priorities of the trust's potential claims and in fact has been rejected by several Courts where such effort has been sought.

In re CHS Electric, dealing with the motion -- 9019 motion, in that case which the Court converted to motion for the automatic stay, the Trustee raised several arguments under the insuring agreements and the Court

rightly pointed out the real concern in that matter was not the coverage under the policy but potential coverage for potential claims that the estate could bring.

The Court was clear that the Trustee there was not entitled to "super plaintive powers" and that there was no basis in the code or the caselaw to give it any rights different than it would have than other -- another plaintiff in that matter.  It acknowledged the strong-arm powers of the code, but this is not one of those powers.  I also direct your attention to In re Allied Digital Tech Corp., guided by Judge Glenn in MF Global.  There, the Court rejected an effort of the Trustee to preclude payment of defense costs and noted that the Trustee was no different than any third-party plaintiff suing defendant by (indiscernible) policy -- covered by (indiscernible) policy.

The Trustee's efforts to protect potential recovery for the estate is not what the directors and officers had bargained for.  Ochs v. Lipson, In re First Century Management Corp, "The Trustee has not pointed to a case nor are we aware of one in which the Court is protected D&O policy proceeds to facilitate prioritization in favor of the Trustee or Debtor in Possession to such funds."

The In the Enivid case out of Massachusetts denied the request for injunction by Trustees seeking to prevent security plaintiffs in settling litigation and using

insurance proceeds to fund that settlement saying, "There is simply no basis in the Bankruptcy Code or other applicable law for such an order." The Trustee here is essentially asking for similar relief.

Also (indiscernible) is another case. Your Honor, the Trustees also argue acting in violation of Section 5(m) of the (indiscernible) policy which requires the cooperation of the Debtors, now the trust, to obtain relief from stay that would prohibit regulating payment of loss under the policy.

With that, Your Honor, I'd like to turn to the Sonnax factors. Your Honor, as I noted at the outset of my presentation, we believe that the Sonnax factors favor the movants in seeking to lift the automatic to the extent the Court determines that there are interests of these Debtors, interest of the estate and of the trust, in (indiscernible) proceeds.

Not all of these factors are applicable to every case. Not all of them are given the same weigh. It's up to the discretion of the judge. In this case, Your Honor, it's up to your discretion as to what you view as applicable, what you view is relevant, what you view as probative. Your Honor, I submit that relief (indiscernible) relevant, that relief would result in a partial resolution of the issues. The litigation here is resolved and the matter settled. It

will end the need for any additional oversight, potential

defense costs in connection with same.

It will also prevent any further motion practice

before this Court in connection with that litigation,

potential motion to increase any other cap in the matter, or

any litigation that would come as a result of

(indiscernible).

Further, Your Honor, the relief will not interfere

with the bankruptcy cases. As discussed, we believe that

this case did not have or the trust did not have a practical

interest for any proceed that is (indiscernible) or

speculative. As a result, the trust will have to focus on

other matters and other sources of asset collection besides

the D&O insurance proceeds.

The actual question of litigation primarily

involves third parties, Your Honor. The action is stayed

against the Debtors (indiscernible) begin with the

bankruptcy case. As I noted earlier, there has been no

motion made to lift the automatic stay. Litigation has been

principally between the movant, the additional insureds, and

the pls to that action. The estate wouldn't have to spend

any resources in that matter and if the litigation is

resolved, that should close the matter.

Further Your Honor, in the interest of judicial

economy and judicious and economical resolution of

litigation favor the movant, the plaintiff's claims. The

litigation is subordinated pursuant to the consent orders.

They are incredibly unlikely to receive distribution. As I

noted earlier, the plan did not contemplate distribution in

full to the unsecured creditors, unlike every

(indiscernible) distribution will be made to the plaintiff

on account of their claims. If the Court wants to hear from

them, we've already heard from Mr. Etkin, they're in Court

today.

Finally, Your Honor, I note the impact of the stay

(indiscernible). I think that's going to be, as I

(indiscernible) in this issue where most of the analysis can

be focused.

Your Honor, the automatic stay remains in effect,

the movant is not able to use the proceeds to resolve -- to

fund the settlement and resolve the litigation. It would

frustrate the purpose of the policies in question, would

undermine the contractual terms of the policies as we have

discussed today, and it would cause irreparable harm to the

movant and the additional insureds. They would need to

continue to litigate the litigation, they would

(indiscernible) a clearly viable settlement. They would

draw down on the (indiscernible) additional litigation costs

potentially eating into the Side A policy.

As we noted in our papers, it was agreed to be

held in (indiscernible) potential investigated cost by the government as they are criminal matters pending or investigation pending, to be more accurate. I have no greater insight into the government investigations beyond what -- from my papers, what I said. I don't want to get ahead of my skis on that point, but it is, from what I understand, to be a source of concern.

Your Honor, the type of irreparable harm has been recognized by several Courts including MF Global, Beach First National Bancshares, Downey Financial Corp., In re Laminate Kingdom, CyberMedica, CHS Electric. As I noted earlier MF Global, the Court noted the importance of availability of funds for a settlement, but now we have before this Court, not for approval but for consideration of the motion to lift the automatic stay and the Court noted when lifting the automatic stay that the additional insured there had a present but -- present necessity for the benefit of their contractual rights notwithstanding the Debtors' bankruptcy and liquidation (indiscernible).

The trust argues that the harms that it may suffer are on account of funds not being available for the unsecured creditors of the estate which Your Honor addressed that point previously, that the trust's efforts to prioritize potential claims against the movant and the additional insureds, not one that is founded in Bankruptcy

Page 55

Code or one that is founded in caselaw.

Your Honor, also want to note that Ms. Ivy's testimony and declaration, if the motion is not granted and the settlement is undone, these proceeds will be used to defend the movant and the additional insureds.  I do not have a crystal ball, Your Honor.  I can only report as an officer of the Court to what I have seen from the previous defense costs of Ms. Ivy's declaration as regards the potential defense costs through May 2023, and those are only estimates.  I don't know the twists and turns that could possibly be taken in litigation before Judge Hellerstein.  I don't know the potential for judgment or not -- no judgment against the movant.  If there is an appeal, if there's personal liability that is assigned, it is that unknown that I'm trying to stop by having the motion granted and the litigation put to bed.

Otherwise, that uncertainty and potential cost (indiscernible) the policy, litigation costs (indiscernible) the policy, the plaintiffs themselves will not receive any distribution or minimal distribution and what's expected right now under the terms of the settlement.

So in closing, Your Honor, it does not appear that from our position that the estate has claimed under the Insuring Agreement B or C.  We have discussed potential for indemnification claims which Your Honor, I again refer the

Court to the (indiscernible) provision, the contractual provisions in these policies which specifically sets forth that there's to be payment from the insurance carrier under the terms of the policy, Insuring Agreement B or C, until payment in full is done under Insuring Agreement A.

Only and to the extent that there is (indiscernible) available after payment is done under Insuring Agreement A, that any payments made under Insuring Agreement A, and only after B paid in full, any insuring -- any payments made under Insuring Agreement C.

But to the extent Your Honor believes that there is an interest in the proceeds, movants submit the automatic stay under the analysis of the Sonnax factors should be lifted. The balance of the harms here favors the movant and the additional insureds and that's -- objection should be overruled and the motion should be granted.

THE COURT: Okay. I just have two more questions for you, Mr. Sabella.

MR. SABELLA: Yes.

THE COURT: The first is, with respect to the pending three litigations that that are being settled -- or proposed to be settled in front of Judge Hellerstein, my understanding is that what would happen is that -- and when I looked at the documents themselves, I guess the information I have, it looks like all the defendants are

being -- all the issues with all the defendants and all those litigations are being resolved other than the Debtor; is that correct?

MR. SABELLA:  That's my understanding, Your Honor.

THE COURT:  Yeah.  Okay.  All right.  And then with respect to the Debtor, obviously the stay is still in place.  That's certainly true and the plan is clear on that.  But presumably the reason that that won't proceed is both that the stay is in place, unless someone moves for it, moves to the stay, it won't get lifted, but also because any claims that would be asserted against the Debtor would fall into -- would either be covered by 510(b) themselves or have already been agreed that they're in Class 5 under the plan.  Is that what -- right?

MR. SABELLA:  Yes, that's what the plaintiffs have already agreed to, yes.

THE COURT:  Yeah.  Okay.  All right.  And then with respect to the settlement itself, I understand that obviously the policy for Side A coverage is not being accessed by virtue of the policy -- virtue of the settlement.  Is there anything in the settlement that actually says what that Side A coverage can be used for?

In other words, don't the D's and O's just have the Side A coverage and it's just not used to pay the settlement and it's there and it will be used for anything?

Is there something specific in the settlement document that says it can only be used in connection with the governmental investigation?

MR. SABELLA:  I believe it does, Your Honor.  Give me one second?

THE COURT:  Okay, sure.

MR. SABELLA:  Yes, Your Honor.  From what I understand, it's in the agreement that it will be used for defense costs for the movant's and additional insureds.

THE COURT:  Where is that?

MS. BARROW:  Your Honor, it's on Page 3 of 18 in the (indiscernible) policy.  So in the settlement agreement, we reserve the Side A policy for defense costs -- capital D, capital C, Defense Costs, as defined under the (indiscernible) --

THE COURT:  Okay.

MS. BARROW:  -- insurance policy.

THE COURT:  Okay,  Just give me a -- thank you for that.  Just give me a second.

Okay, the -- if I understand the argument, then, it has to just fit within the definition of the defense costs under the contract itself.  As long as there's a claim for defense costs, for whatever reason, whether it's the government's investigation or the litigation that's been commenced by them or something new that happens, it's

capital D, Defense Costs, right, is what governs?

MR. SABELLA: Yes.

THE COURT: There's nothing in the actual settlement document that does anything other than point to defense costs.

MR. SABELLA: Yeah.

THE COURT: Okay. That's what I wanted to know. Okay, let me just make a note on that.

All right. Thank you.

MR. SABELLA: Thank you, Your Honor.

THE COURT: All right, Mr. Saccullo, obvious -- sorry. I'm sorry, Mr. Sabella. Obviously, there's, Mr. Welch will go and then you'll obviously have an opportunity for response.

MR. SABELLA: Yes. Thank you, Your Honor.

THE COURT: Sorry. I should have said that at the beginning. My apologies.

MR. WELCH: Thank you, Your Honor. May it please the Court, Cameron Welch on behalf of the liquidating Trustee, Mr. Saccullo.

So quite a bit to unpack there, but let me do my best to take a stab at it. I think as a starting proposition, what we should focus on is the notion that this is an either/or, black or white proposition that Your Honor lifts the stay and all is well in the world because there's

a settlement that's approved and it goes through or Your Honor denies the stay and the world essentially stops spinning on its axis.

Putting aside the notion that Your Honor could decide to not lift the stay and the parties could -- cooler heads could prevail. Good thinking. Everyone could get into a room and work at it. The deal is more all-encompassing. But even putting that aside, let's take a look, Your Honor, first, and what happens if you don't lift the stay.

Counsel's right. Defense costs will continue to be incurred. But they're going to be anyway. That was the gust of my cross examination with Ms. Ivy. There is still an ongoing governmental investigation. So what folks are essentially asking is -- they ask Your Honor to lift the stay is, let us exhaust the policies now and only that policy and those layers of coverage that might possibly be property of Debtors' estate because we've reserved Side A which can't be property of the estate to cover ourselves down the road.

So Your Honor, let's just take all the policy proceeds now to fund the settlement, even though yes, no matter what happens, defense costs and significant costs are going to be incurred. And they ask Your Honor to do that by pointing at the ABC policy and the priority and payment

privileges.

If those provisions said what they say they say -- and that's great English, Your Honor -- we wouldn't have the cases that we have to look at because if it were a matter of you have an A layer, a B layer, and a C layer and you never ever get to B and C until every possible dollar under A is paid, even dollars that will be incurred for legal fees in May of 2023 that haven't been incurred yet that are only estimated, then we wouldn't have this authority.

And I think, Your Honor, I'd like to take a look at the SN Liquidation case. That's a case that follows on Allied Digital. It's 389 B.R. 579. And in that case, you have an A and a B. You don't have a C, at least not as referenced in the decision. The A coverage covers insured persons. The B protects against securities claims. You have the SN Liquidation Court citing and block quoting Allied Digital and then noting here, "Unlike the situation in Allied Digital, indemnification is not merely speculative in this case, but the defendants have made a formal request for indemnification."

And the Court even in its decision drops a footnote -- note 5 -- that says, "The Court is aware that under Delaware law fraud may dictate indemnification obligations. For the present, the Court can't assume Icon will establish fraud and can't, therefore, assume -- or

cannot therefore assume -- the Debtors do not have indemnification obligations."

We're in the same situation here. And I'd also note, it's the same situation that was present in MF Global where Judge Glenn said we have these indemnification claimants. Payment on them is far from assured, but I'm going to reserve $13 million anyway just to make sure there's money in there. Why? Because as held in Allied Digital and as cited to in SN Liquidation, Your Honor, when there is coverage for the directors and officers and the Debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from dimunition.

We have that here. We have a host of indemnification (indiscernible), including, Your Honor, the Dawson James plans which, when Your Honor reads the numerated A, B, C, it clearly arises out of securities transaction. That's the whole genesis of the claim. So, yes, they asked for contractual indemnification and (indiscernible) indemnification arising out of a securities claim.

So we have here actual claims -- actual claims -- pending. They have yet to be subordinated, right. That may come to pass but that's an issue we have to litigate. The

Page 63

claims haven't been withdrawn, Your Honor.  They're very

much still pending so where we sit today, this is a

liquidating trust with limited assets with rights.  No one

disputes that we have a right to look to be in C coverage

under the policies, and we have claims that triggered.

So what do you have?  You have a case -- SN

liquidation -- that holds that's property of the estate.

You have other cases, Your Honor, even Ochs v Lipson which

is the Eastern District case cited to repeatedly by movants.

There was no claim pending against the Debtors that would

have triggered any coverage, but nonetheless, the Court

noted, where determination requires that it is needed to

made as though statement's the property of the estate, it

would be appropriate to determine that policy proceeds are

property of the estate when many and a large entity coverage

claims against the Debtor threaten to become a free for all

that might exhaust the insurance proceeds and thereby

jeopardize estate assets over and above the limits of the

policy.  And that's cited in Re Edgeworth is 993 f2b at 56,

note 22.

In such situations, the Debtor's entity coverage

competes for proceeds with the officer and director

liability portion of the insurance policy.  For every dollar

paid out to the officers and directors, there's one less

dollar of coverage protecting the Debtor's estate and that's

at Page 17 of Ochs (indiscernible).

So, Your Honor, if it were as simple as, until any dollar that may ever arise under (indiscernible), the estate gets nothing, you wouldn't have these cases. You wouldn't have (indiscernible). The reality is if Your Honor doesn't lift the stay, costs will be -- continue to be (indiscernible). We will start submitting claims because we believe we're entitled. And maybe we're right and maybe we're wrong, but that hasn't been determined yet either, Your Honor. So reimbursement of our costs under side C -- those costs if we're entitled to them and Exhibits -- I think it's 22 and 23 to our submission which is the coverage letters -- indicate that we would be entitled to reimbursement. (indiscernible) already said, they're viewing all of the transactions as single related (indiscernible). That's why Paretrum received $2 million worth of payments under these policies pre-petition. Then we submit out invoices and once defense costs under A would be paid, they'd be paid that same month under C and that would happen going forward because we still have a right to claim those policy proceeds.

So I'm (indiscernible) -- that, Your Honor, is what we have to say about the ABC policy. I don't want to start switching to the Sonnax factors unless -- in case Your Honor has questions.

THE COURT: Maybe one or two about that. Is your problem really with the settlements -- the fact that it decided to access the ABC policies instead of also accessing partially the A and leaving the ABC? Is that the issue?

MR. WELCH: That's -- I think that speaks volumes to the intent and I think if Your Honor -- when you go back and you read the stipulations in the motion that was filed before Judge (indiscernible), you see a chronology that -- we had a failed mediation in mid-July of 2022 which is what had happened a year earlier. And then very quickly after petition was filed -- bankruptcy petition of the Debtors -- the folks reached an agreement to settle this case in mid-August of 2022, and that settlement specifically contemplated the mechanism whereby -- and I don't profess to know what everyone was thinking, but I do think it raises an eyebrow that the settlement would effectively exhaust any policy that could provide the Debtor's coverage while reserving the side A.

Now do you have a problem with that? That's a reality, Your Honor. That is what it is, but I think it's telling as to what the game plan may have been. Now it's certainly possible that there could have been settlement structured in another way where everyone's recognizing there's $5 millions of available coverage here under side A. Why not structure a settlement that addresses, that uses

those settlement dollars and therefore leaves money aside for the -- that's under the policies that we argue are property of the estate.

THE COURT: Well, that might be an argument but, I mean, I think you've just argued yourself that, even if this -- whatever coverage was left, whether it was side A, side B, side C -- if the settlement's approved -- the settlements are approved -- just leaving it aside, forgetting what type of policy part of it invokes, the remaining $5 million of coverage you just noted is definitely going to be used for defense costs. If it was available for other things, it would be used regardless and run out.

There certainly is a run rate for that litigation that is not small based on what's been paid so far. I forget what the estimates are, but what's been so far -- I mean, we've had -- I mean, even if I take away your $2 million that was paid to the Debtor (indiscernible) $10 million policies already -- I mean, at least $8 million has been paid really into defense costs for people other than the Debtor, approximately.

So, I mean, that's quite a run rate and, you know, we're not done with the government litigation and I think without saying anything about what's in that subpoena, I think that would clear that it's not done and there's a lot of work to be done, and you say that in your papers anyway.

So I guess, you know, to me, it seems like the problem in this case -- sorry to say it this way -- is there's just not enough coverage for what's going on here, and, you know, that's part of the problem here, and, unfortunately, I can't conjure that up.

So what I'm really saying to you to whether I approve these -- whether I lifted the stay and allowed the settlements to go forward, assuming Judge Hellerstein decided to approve them again -- I'm making an assumption here because that is his decision not mine -- then, I mean, there's -- you know, if I didn't lift the stay, there'd still be a lot of litigation. It would still get exhausted. I think you acknowledged that that's probably likely based on where we are and what's going to happen with the governmental investigation, the continued litigation on that.

So I guess I'm just trying to understand, you know -- but for the -- it seems to me, but for the fact that the settlement reserves A coverage and not ABC coverage, there's a -- it's hard to argue that it all wouldn't get exhausted regardless.

MR. WELCH: (indiscernible) assuming a world where, again, it's an either/or proposition where we either lift the stay and the settlement goes through and Judge Hellerstein approves it or Your Honor doesn't lift the stay

and there's no prospects of resolution ever again --

assuming those two absolutes --

THE COURT:  Well, not for -- after a while.  I mean, you know, there's always resolution as you know in this world.  It happens a lot but sometimes there's a lot more litigation that happens before there's more resolution.  So it's that more litigation that's going to happen.  I mean, there's going to be litigation.  Defense costs are going to be raised because you just filed a claim so for sure, those are going to be accessed.  We'll just say, yes, that's going to happen.  There'll be litigation there.  So there's going to be defense costs incurred by the Defendants in that case.

There's going to defense costs incurred by all the Defendants in the other case if it doesn't get settled -- all three of them -- and there's the investigation.  So I'm just trying to understand, you know, if it's the -- sorry to say this -- if there's any likelihood there'd ever be a resolution where the policies don't just get completely exhausted due to litigation no matter what I do with this.

MR. WELCH:  And, Your Honor, that's one of the points (indiscernible) raising about -- the side A coverage and the indemnity clause (indiscernible) because a lot of that burn rate that Your Honor referenced relates not to the claim that's being settled and for which we're seeking stay

relief -- rule (indiscernible) stay relief. It's that governmental investigation. And when these policy proceeds are exhausted immediately rather than over time as they are used to fund that but immediately and then the side A is exhausted assuming that comes to pass. Those indemnity claims are pending against the estate.

THE COURT: Yeah, and unfortunately, I think that's the reality no matter what happens here, I'm sorry to say to you. That's likely. I'm having a hard time imagining how that's not going to happen no matter way I go here because it seems to me that the governmental investigation is clearly going on, again, without saying anything about the subpoena. It certainly doesn't seems like it's near the end. I'll just say that for sure and I don't know how long -- much longer -- but it's likely to go on for a while.

If I don't, the settlement doesn't happen. That's litigation is going to go on. I think there's no question that there will be significant discovery that has to occur in connection with that litigation. The parties are all -- the parties other than the Debtor are not stayed and I don't mean this in any way disrespectful to the securities Plaintiff's counsel, but they're very experienced, smart counsel and they're going to not just let this sit if the settlement doesn't happen. It's just going to keep -- it's

going to go forward.

So I think -- and Judge Hellerstein is not a person to let things sit.  I say that just, you know, having, you know, appeared in front of him before my -- in my prior life.  So, you know, he's not going to just let that sit for years so there's going to be -- if this doesn't happen -- the settlement doesn't happen -- people will be having a lot of discovery there.  There's going to be a lot of discovery in your matter.  I'm sure you're not just going to let that sit either.

So what I'm really saying to you is, I look at this and I say to myself, you know, no matter what, whether the settlement happens or it doesn't, I don't see how at the end of the day, there aren't, unfortunately, indemnifications claims made because whether they're just made because of the investigation perhaps and your litigation which is kind of ironic that they'd be making indemnification relating to your litigation but we'll leave that alone.  But those claims are made or if it's including this ongoing litigation, but either way, at some point, there's going to be an exhaustion.

So that's what I'm having -- I'm struggling with because I don't see how that just doesn't occur no matter what happens here.

MR. WELCH:  And it very well may.  I mean, our

litigation should certainly not be a surprise.  The claims were assigned to the trust (indiscernible) significant piece of consideration of getting the plan approved.  But, Your Honor, if the choice, well, we lift the stay and let the policy proceeds be exhausted immediately, or we don't lift the stay and the matters proceed and the policy proceeds will be eroded by defense counsel over time and the parties maybe get to a point where they reach a global resolution if they can -- maybe they don't -- but at least, at that under alternative two where policy proceeds are being exhausted over time, they are then being exhausted pursuant to terms of the policy, pursuant to the scheme where everyone is going to get at least some of their costs paid, and it's not going to require a ruling that policy proceeds that are property of the estate should not be treated as such.

THE COURT:  I understand.  But I think what you're really asking me to do is to take a look at their settlement and decide if I think that if this goes forward, the costs are going to be more than the amount of the settlement because they're going to incur.  I think you're acknowledging they're going to be incurred, and whether near term, it's likely to -- whether we're likely to get to the endpoint before, you know -- and seven and a half -- sorry - - 7.7 or whatever it is million dollars of costs are incurred is, I guess, the question because that's really it.

Either way, your litigation's going forward. Costs are going to be incurred by that. The governmental investigation's going forward. Costs are going to be incurred by that. No matter what happens today, that is happening. So the only thing that -- and who knows what else you'll bring and I don't mean that disrespectfully. I just mean you may have claims against other parties that you haven't brought yet and that's what Mr. Saccullo's job is. You all are very experienced at representing liquidating trustees and I know that. That might not be the end of it. I don't know.

So the only thing I do know is that if I -- if the stay is not lifted and that litigation continues, there will be erosion relating to that, and it's just a question of whether the policy -- how the policy gets eroded or if you're able to reach a settlement faster than the $7.7 million gets eroded in connection with the litigation or otherwise. I mean, that's kind of what you're saying.

MR. WELCH: I won't dispute that, Your Honor.

THE COURT: Okay. All right. Sorry for interrupting.

MR. WELCH: But -- and I, again, reinforce (indiscernible). Scenario A, policies are eroded very quickly by the settlement when it's funded. So you don't have the passage of time, the ability for an alternative

Page 73

result.  You have an absolute and, again, Your Honor, we think to get to that result, it requires getting policy proceeds that are properly property of the estate based on the claims identified and using that to, you know, sort of ironically enough (indiscernible) holders who (indiscernible) bandied about.  That has been cited in -- because the claims that are pending against the -- indemnification claims pending against us are not (indiscernible).  But that's essentially the (indiscernible).

THE COURT:  And, unfortunately, though, that's true in any circumstance where there's a race to the proceeds and the policy allows for that in any public company, as you know.  So I don't think that's unique to the facts of this case.

I mean, you're right that maybe the bankruptcy code should be rewritten and says, when you file bankruptcy, you can't settle any claims with securities holders unless and until all the proceeds come to the bankruptcy estate first and stay there and then not withstanding what the policy -- cover non-bankrupt parties -- that somehow that's how this should all be divided in accordance with the code and the priorities of the code, but it does and the code does not say that and I am not Congress.

MR. WELCH:  Understood, Your Honor.  But I do

think it's worth noting in SN Liquidation -- and I'm not saying it's apples to apples exactly -- but the Court denied to lift the automatic stay and say that it protects creditors from more diligent creditors and facilitates equitable treatment (indiscernible) and that's certainly a consideration that we have here today, Your Honor.

Would Your Honor like me to turn to the Sonnax factors?

THE COURT: Yes. Sorry. I'm sorry, yes.

MR. WELCH: So we think, Your Honor, we've got covered that policy proceeds are property of the estate and under Sonnax, Your Honor, we think that there is not sufficient justification to lift the stay and let's tackle these elements.

Number one, whether relief would result in a partial or complete resolution of the issues. As we've just talked about it, there's no complete resolution here. The stated relief would allow (indiscernible) of a certain tranche of claims to potentially go forward assuming it's approved by the Court. But it's going to leave a host of claims (indiscernible).

Number two, lack of any connection with or interference with the bankruptcy case. Again, we posited if Your Honor was to say, policy proceeds are eroded (indiscernible) what's left behind. The claim, again, Your

Honor, aren't disappearing, especially indemnity claims. They aren't being withdrawn.  The settlement does not resolve those because they're (indiscernible) because they relate to, among other things, the governmental investigation as well.  So you have, again, a case pending in the district court resolved but plenty of claims remaining here for the parties to litigate and deal only they'll be dealing with them without policy proceeds at issue.

Number three, Your Honor, whether the other proceeding involves a debtor's fiduciary.  It doesn't.  So that lends in favor of a (indiscernible).

Number five, whether the debtor's insurance has assumed full responsibility for defending it.  It hasn't. The Debtor's not getting (indiscernible) coverage any more, not since pre-petition.

Number six, whether the action primarily involves third parties.  And it does.

Number seven, whether the litigation in another forum would prejudice the interests of other creditors. Your Honor, we argue that it does.  Not only are we working as -- in trust with them through the general unsecured creditors, but there are other claimants now who would be entitled to -- and we'd be certainly (indiscernible) to access the insurance policies if this settlement were not to

go through.

Number eight, whether the judgment claim arising for the other action is equitable subordination. I don't believe that necessarily applies here, Your Honor.

Let's skip to number ten. In the interest of judicial economy and the expeditious and economical resolution of litigation. Now this is an interesting one and I certainly hear movants argue that, well, Your Honor, if you lift the stay, we can wrap up the district court litigation. But, again, at what cost because it's going to leave here a host of claims behind that aren't covered and as Your Honor talked about and posed the question and it's a very difficult question, but Your Honor posed the question, are the policy proceeds going to be eroded before you can reach a settlement of your action.

The only way I can answer that question affirmatively -- Your Honor, no, this (indiscernible) the stay is lifted. And so what's going to be left behind if the stay is lifted is a host of litigation being fought over with no insurance policy proceeds remaining.

Number eleven, the parties are ready for trial in the other proceeding. As Your Honor has noted is reflected in the settlement motion, they are not. There's deposition discovery that needs to take place. It's unclear when a document discovery's complete and I know from reading the

motion some document discovery has been taking place. But that is not a trial-ready case.

And then number twelve, Your Honor, the impact of the stay on the parties with the balance of the harms. We've discussed that. Liquidating trust is going to be left without policy proceeds to look to to cover the claims that are asserted against it. The effect of those claims, if they're allowed, if they're paid (indiscernible) will be exhausting trust assets litigating those issues, whether they're allowed or should be paid. But if that comes to pass, that more trust assets will be eroded in actually satisfying those claims, when the policy proceeds that are property of the estate should be available for us.

So, Your Honor, we think when you apply all of those factors that it's heavily in favor of not lifting the automatic stay.

THE COURT: Wouldn't indemnification claims that are made by the officers and directors be any other -- like any other unsecured claim in front of me?

MR. WELCH: Potentially. We haven't had that litigated and as Your Honor's -- in this --

THE COURT: In this case --

MR. WELCH: In this case, right.

THE COURT: Yeah. But there's plenty of case law about pre-petition (indiscernible) issues which this is that

are made as indemnification claims which were filed and that those claims are based on either pre-petition contracts that were in existence or the officers -- the indemnification provisions in the organizational documents or state law -- any of those or all of those combined where those claims are unsecured claims.  They may be unliquidated unsecured claims and they have to be liquidated and money might be spent doing that, but they're going to be just part of your unsecured claims pool.  So when you talk about payment, that only happens when you're making a distribution to unsecured creditors.  It's not going to happen otherwise.  I mean, these are not administrative claims.

MR. WELCH:  Correct.

THE COURT:  Okay.  Just making sure I'm not missing something.

MR. WELCH:  Your Honor, without laboring the point, I think we've established that these policy proceeds are part of the stay and we think that (indiscernible) Sonnax factors does not favor lifting the automatic stay so for those reasons, Your Honor, we respectfully request the motion be denied.

THE COURT:  Okay.  Thank you.  Mr. Sabella?

MR. SABELLA:  Good morning, Your Honor.  Just a few points -- Mike Sabella.

One thing I think I would -- that should be made

clear, for side A (indiscernible) that will remain and is not being paid by settlement -- just so Your Honor and the trust are aware, that's an excess policy. That cannot be accessed until after the exhaustion of all prior policies.

THE COURT: So it's fifth in the stack --

MR. SABELLA: It's fifth in the scheme. The last one standing.

THE COURT: Okay.

MR. SABELLA: We could not carve out from that policy prior to using the other (indiscernible).

THE COURT: Okay.

MR. SABELLA: So this is not an attempt, scheme, an effort to keep that aside because that's not one that is entitled to the Debtor. It's only to the directors and officers but it is the fifth in the (indiscernible).

Your Honor, as I have noted, the (indiscernible) claim did not insure underwriter indemnification claim. You have the contract claims, the business expense does not (indiscernible) the securities claim under the provision of the insuring agreement C and the admission under the policy.

Regarding the settlement, Judge Hellerstein had granted primarily of it at a hearing a few months ago. This motion was filed in September. It's been four months since it has been filed. That's ample amount of time for counterclaims (indiscernible) been brought or issues or

claims to make it to the insurance carriers for the trust potential claims which I understand, there have been none.

We have --

THE COURT: Mr. Sabella, I'm sorry. I just want to interrupt you there. I mean, the case only confirmed and went effective relatively recently. Mr. Saccullo's only been a liquidating trustee in this case for like two months. I mean, maybe not even that. I think two months and a few weeks so it would be kind of hard for him to have submitted claims at this point of any significance.

MR. SABELLA: Well, that's true, Your Honor. (indiscernible) the winddown, officer of the Debtor since July --

THE COURT: True. No, you're right about that. The Debtor could have submitted claims. I understand that. That's possible but --

MR. SABELLA: I'm not (indiscernible) to go (indiscernible) but these are all -- the Debtors had these subpoenas since July as well. So this is not something that came up a few weeks ago. It's something that the Debtors have been dealing with and addressing since over the summer.

Your Honor, regarding the settlement, this was a plan to (indiscernible) that was taking (indiscernible) the situation before the Movant and the Plaintiffs under the (indiscernible) mediator in the case. This was not backroom

deal in any smoky room situation. This was a hardcore mediation (indiscernible) litigation. To Your Honor's point, this was not (indiscernible) trust in the papers and Mr. Welch right now.

They're claiming -- sorry -- the coverage is being eroded due to defense costs. To Your Honor's point, more than the litigation (indiscernible) back to (indiscernible) and the costs continue to be eroded.

Now Mr. Welch agrees and Your Honor asked about (indiscernible) the Plaintiffs and their potential claims against the Debtors. Mr. Etkin has represented to me that they'd be willing to drop their claims against the Debtors, but I will let him speak to it on the record if Your Honor would like to hear from him.

THE COURT: Okay. Let me -- finish your argument first, then I'll let him speak.

MR. SABELLA: That is the extent of my argument. I just had a few points to raise --

THE COURT: Okay.

MR. SABELLA: -- to respond to Mr. Welch. (indiscernible).

THE COURT: All right. Yeah, I'm happy to hear from Mr. Etkin.

MR. SABELLA: Thank you very much, Your Honor.

MR. ETKIN: Thank you, Your Honor. Mr. Sabella's

correct.  For what it's worth, the Plaintiffs, if the settlement is approved ultimately by Judge Hellerstein would withdraw their claims against the estate, claimants that frankly are not worth anything in any event.  But if that's a state of concern to the trustee, that really isn't the problem.

Just a couple of points, Your Honor, and I appreciate you giving me the opportunity to speak.  Mr. Welch talked about the SN Liquidation case a lot.  Judge Gross in that case was not confronted with a priority of payments issue.  So that case is very different than the case that's before you right now.  And frankly, Your Honor, again, because I have some history with these kinds of cases, Mr. Welch also talked about a free for all competing for the proceeds.  That was standard for these type of cases many, many years ago before priority of payment provisions came into vogue and were included in basically every D&O policy because otherwise, you would have this competition for proceeds because there was no way to allocate.

There was no contractual provision that provided for the allocation of proceeds, especially in the event of a Chapter 11 case, or in the event where the company was not indemnifying the directors and officers.

So, you don't have a free-for-all here, Your Honor, you have a priority of payments provision that is

Page 83

clear and unambiguous.  And that really, at the end of the

day, is what's most relevant and really dictates a result

here.  You just simply -- these policies now contain a

provision that provides for contractual allocation in

circumstances such as that -- such as the circumstances you

have now.

Your Honor, one thing I'd like to note on behalf

of the investors who are my constituency in this case.

They're receiving nothing under the plan.  They are wiped

out.  We've already established, Your Honor, that the

remaining proceeds of the ABC policies are going to be

eroded one way or the other.

The settlement really is the only source of

recovery for defrauded investors.  The choice was to use the

remaining proceeds to fund defense costs for the additional

litigation going forward, or providing for a settlement that

has a modest recovery for defrauded investors who otherwise

would receive absolutely nothing.

So I think that whether through the Sonnax factors

or otherwise, I would urge that that be a consideration in

the context of the relief that Mr. Sabella's clients are

requesting.

Finally, Your Honor, what this is really all

about, it appears to me, is that the Trustee is trying to

dictate when and under what circumstances the non-Debtor

Page 84

individual Defendants can settle litigation against him.
They don't have that ability, Your Honor.

The policy precludes that kind of interference
with the individual directors' and officers' desire to
settle litigation against them, which is what they're doing
here.  And the priority of payments gives them that ability,
unfettered by competing claims from the Debtor, whether as a
Plaintiff, or claims pursuant to Side B or Side C of the
policy.

So, from our perspective, Your Honor, whether it
be for reasons that the stay does not apply altogether, or
that it should be modified for the purposes requested, we
urge that the Court will grant the relief.

THE COURT:  Mr. Welch, would you like to respond?

MR. WELCH:  Just --

THE COURT:  That ended up being much longer than I
expected that was going to be.  No disrespect to Mr. Etkin.

MR. WELCH:  Me as well, Your Honor.  And there's,
I guess what -- some level, I suppose, of proposed proffered
expert testimony in there about what used to happen and what
traditionally --

THE COURT:  Yeah, I understand.  Don't worry about
it.

MR. WELCH:  Let me say this, Your Honor.  We're
not trying to dictate when and how anybody can settle.  What

we're looking to do is enforce our rights under the law and under the policy, to retain for the benefit of the estate policy proceeds that would otherwise be available, but for the settlement.

And Your Honor, there's a host of authority that we've cited. And I think it's telling that even the cases that the Movants cite to predominantly deal with defense costs. And that's an important distinction that Judge Wynn even noted when he referred to New York insurance law relating to the payment of defense costs.

Your Honor, the cases are not as black and white as if you had an ABC policy, then -- and the estate only ever gets to B and C, you're out of water. Because if that were the case, as I led with Your Honor and I'll also close with, you wouldn't have all the authority to decide it. That or there has to be an assessment of the claims that are pending. And we actually have claims, just as in SN Liquidation under the (indiscernible) and it was an AB priority scheme policy, when the Court held policy proceeds are property of the estate and we're not lifting the stay.

Thank you, Your Honor.

THE COURT: Movants are seeking relief from the automatic stay to the extent that the Court finds that the proceeds of the D&O policies are property of the estates. It's the Movants' position that the proceeds of the D&O

Page 86

policies are not property of the estates.

To the extent that the Court concludes that the proceeds of the D&O policies are properties of the Debtors' estates, Movants seek relief from the automatic stay to permit the funding from the proceeds of the D&O policies of settlements reached in three pending litigations in the aggregate amount of $7.6 million.

The three pending litigations are a putative securities class action lawsuit pending in the Southern District of New York in front of Judge Hellerstein. The Defendants are the Debtor and a number of parties represented by Mr. Sabella, Mr. Turner, Mr. O'Donnell, Mr. Bozzo and Mr. McCarthy. A putative securities class action lawsuit pending in California Superior Court, which involves the same Defendants plus additional ones, Mr. Van Sante, Mr. Lippert, Mr. Jimenez-Tunon. And in addition, the Sabby Volatility Warrant Master Fund, Ltd. action pending against the Debtors and the various parties, including Mr. Mumby.

An initial hearing on this motion was held on November 10th. In addition to the motion, the Movants filed a reply and supplemental brief and have submitted declarations of Mr. Sabella and Ms. Ivy. This idea appeared at the hearing today and was subject to cross-examination and questions by the Court.

In opposition to the motion, the Trustee of the

Liquidating Trust, Mr. Saccullo, filed an objection to the motion. In addition to the motion, Mr. Saccullo filed a supplemental brief in support of the objection and also submitted declarations of Mr. Welch, Mr. Weinstein and Mr. Saccullo in support of the objection. Mr. Saccullo and Mr. Weinstein are here in court today but were not subject to cross-examination.

The parties also submitted numerous documents and exhibits, which have all been admitted into evidence.

The Court must first decide if the proceeds of the D&O policy are property of the Debtors' estates. The Movants argue that the estates have no interest in the proceeds of the D&O policy because the potential payments that could be made under Insuring Agreements B and C are remote, speculative and contingent, and are precluded under Section 510(b) and the terms of the confirmed plan of liquidation.

The Movants also argue that the priority of payments means that the Liquidating Trust does not have an interest in the proceeds of the D&O policies. The Liquidating Trustee argues that the proceeds of the D&O policy constitute estate property, where depletion of the proceeds would have an adverse effect on the estate, to the extent that the policy actually protects the estates' other assets from diminution. MF Global Holdings Ltd., 469 B.R.

177, at 191 (Bankr. S.D.N.Y. 2012)

The Liquidating Trustee takes the position that the estates' claims are not remote or speculative. Ten proofs of claims asserting indemnification claims have been filed against the Debtors by former officers and directors.

The Liquidating Trustee argues that at the rate of depletion of the D&O policies for the payment of defense costs in connection with existing litigation and the ongoing governmental investigation, there will likely be amounts owed to the indemnification claimants by the Debtors, once the available coverage under the D&O policies are exhausted.

The Liquidating Trustee disagrees with the Movants argument that the indemnification claims will be subordinated under Section 510(b) of the Bankruptcy Code. The Liquidating Trustee also argues that there are securities claims asserted against the Debtors so that those claims are also not remote and speculative.

The Liquidating Trustee also argues that the priority of payments provision does not remove the proceeds of the D&O policies from the estates, in part because the insurers did not follow the priority of payments provision when covering defense costs, as the Debtor received over $2 million in prepetition payments from the insurers in connection with the Debtors' costs expended in connection with governmental investigation.

Page 89

The Court has reviewed the D&O policies and the priority of payments provision that exists for each of the D&O policies, which have ABC coverage and A coverage. And under the priority of payments provisions, the amounts payable under the insurance agreement A must be paid before the amounts payable under insuring agreements B and C.

The Court has reviewed the cases cited by both parties and considered the arguments by both sides as to whether the proceeds of the D&O policies are property of the estate.

The Court in MF Global Holdings Ltd., 510 B.R. 193, at 203 (Bankr. S.D.N.Y. 2014), held that it was premature to label a payout of indemnification claims as purely hypothetical and required that some of the available coverage under the D&O policies be reserved for the payment of indemnification claims. The Court notes that in MF Global, there was a significant amount of available coverage under the D&O policies, which the estates completely lack here.

The Liquidating Trustee has espoused the view that if the settlements were consummated, the only remaining coverage under the D&O policies would be the $4 million insuring agreement Side A policy, and such policy would be soon exhausted between the remaining litigation and the ongoing governmental investigation.

The Court finds this argument to be credible, after having reviewed the subpoena filed under seal. If that were to come to pass, there would likely be amounts asserted for indemnification claims by former officers and directors who filed proofs of claim, if the D&O policies were exhausted.

While this is not a certain outcome, the Court finds that it is not remote or speculative that there would be claims of the Debtor, or that the Debtor could make, under the insuring agreement B.

With respect to the securities claims, because of Section 510(b) and the language of the plan of liquidation, it is remote and speculative that the company will ever have to pay any actual damages on account of such claims.

The facts are known today that there is one claim for legal costs relating to the securities litigation, which was dismissed. Given that it is unlikely that the unsecured claims will be paid in full under the plan, any such securities claims will not receive any compensation from the liquidating trust or the estates under the plan.

Moreover, having reviewed the proof of claim filed by the party, it certainly seems that there is an argument that this claim is really more a contractual indemnification claim, or in fact a claim under Insuring Agreement A, rather than Insuring Agreement C.

Thus, the Court finds there is little likelihood that the Debtor will actually pay any claims and thus be entitled to reimbursement under Insuring Agreement C.

The Court does not find that the argument that the priority of payments provision means that the proceeds of the D&O policies cannot be property of the estates to be persuasive. Although some courts have ruled that way, this Court believes that the priority of payments provision determines the order of payment with respect to different types of covered claims, but not whether the estates have an interest in the proceeds from the D&O policy.

Accordingly, this Court finds that the indemnification claims are not remote or speculative and that the proceeds of the D&O policy constitute property of the estates.

The Court will next consider the Movants' request to lift the automatic stay to enable the three proposed settlements to be consummated. The Movants argue that only certain of the Sonnax factors are applicable -- specifically Factors Number 1, 2, 7, 10 and 12 -- and that cause to lift the automatic stay to enable the proceeds of the ABC D&O policies to be utilized to fund the three settlements.

Specifically, the Movants argue that cause exists because the relief requested will result in a complete resolution of the three litigations, except with respect to

the Debtor, and each of the litigations are stayed with respect to the Debtor under the plan. So the proposed settlements are a complete resolution of the issues involving all parties, other than with respect to the Debtor.

The Movant also argues that the relief will not interfere with the bankruptcy cases. The Movants argue that if the three settlements were not consummated, the three litigations would proceed and the proceeds of the ABC D&O policies would be used up paying defense costs.

The action primarily involves third parties. Other than the Debtor, the action only involves third parties, so that's certainly true. And the three litigations are stayed, of course, vis-à-vis the Debtor.

The litigation and settlements do not prejudice the interests of other creditors. The Movants argue that the Liquidating Trustee's claims in the adversary proceeding do not give the Liquidating Trustee the right under the Bankruptcy Code to have priority as to any proceeds from the D&O policies. And also that cause exists because the interest of judicial economy and the expeditious and economical resolution of litigation would apply here.

The three settlements would resolve the litigation and relieve the Debtors from any further involvement, including discovery, and the Movants further request to

access the D&O policies to cover defense costs. The remaining claims under the Debtors in the litigations are subordinated under Section 510(b) and also the plan.

The Movants also argue that the Sonnax factor demonstrates cause respect to the impact of the stay on the parties and the balance of the harms. If the Court were to deny the motion, the Movants argue that it would frustrate the purposes of the D&O policies and would cause harm.

The Movants and the additional insureds would be forced to continue the three litigations, and the cost of such litigations would be significant and further deplete the policies. This could expose the Movants to be personally liable for costs of defense and any damages. The Movants argue that any indemnification claims would be statutorily subordinated under 510(b) and thus would not have to be paid.

The Movants also argue that the Liquidating Trustee's real goal is to obtain D&O proceeds as a source of recovery for the unsecured creditors. The Movants cite to several cases, specifically MF Global, Enivid, CHS and Ochs v. Lipson in Paragraph 42 of their supplemental brief, where the courts have considered whether a trustee's claim against the D&O policy proceeds is entitled to a preference or priority as compared to other parties seeking to access coverage under such D&O policies and have determined that no

such preference or priority exists or is appropriate.

In contrast, the Liquidating Trustee believes that no cause for lifting the state exists.  The Liquidating Trustee focuses on Sonnax Factors 1, 2, 3, 5, 7 and 10 and 12 in its supplemental brief.

The Liquidating Trustee does not dispute that the three proposed settlements resolve issues regarding all policies other than the Debtor in the three litigations.  Instead, the Liquidating Trustee points out that the three posed settlements do not resolve indemnification claims, or the one securities claim that's been asserted against the estate, and also does not resolve the ongoing governmental investigation.

If the proposed settlements are approved, then a primary source of recovery for the estates, available proceeds from the D&O policies, will be unavailable to the estates.

The Liquidating Trustee also argues that the Debtors are not fiduciaries in three litigations, and thus that weighs against the relief requested.  The Debtors' insurer has not assumed responsibility of the claims pending the estates.  The Liquidating Trustee argues that the unsecured creditors will be prejudiced by the depletion of the D&O policies if the three proposed settlements are approved and consummated, and that the shareholder

Page 95

Plaintiffs will receive a windfall, which is inappropriate under the fundamental tenants of the Bankruptcy Code.

The Court's analysis of the Sonnax factors focuses on certain of those specific factors. With respect to Factor 1, the Court finds that actually both parties are correct. The three settlements do resolve the three litigations with respect to all other parties, other than the Debtor. It is also true that the three settlements don't resolve other pending litigations, such as the complaint filed by the Liquidating Trustee, or that it ends or resolves the ongoing governmental investigation.

However, the Court does not believe that the three proposed settlements have to resolve all possible existing and future claims in order for the Sonnax factor to be satisfied.

The Liquidating Trustee is right that the approval of the three proposed settlements may not leave any remaining proceeds under the D&O policies, other than the $5 million Insuring Agreement A coverage, and if that will adversely impact possible recoveries for the unsecured creditors of the Debtors. However, the case law is clear that the Liquidating Trustee is not entitled to any preference or priority with respect to the D&O policies.

When accessing the proceeds of a D&O policy, who gets the proceeds is based upon either when requests for

payment are submitted to the insurers, or in this case, the application of the priority payments provision. Neither the Liquidating Trustee nor the unsecured creditors have a preferential right under applicable law to the D&O policies. While this may seem to be an unfair result, but it is a proper application of the Bankruptcy Code and the terms of the D&O policies.

Moreover, in these cases both sides seem to agree that whether or not the proposed settlements are approved, the D&O policies will likely be exhausted from the payment of the costs relating to the pending litigations and the ongoing governmental investigation.

Thus, the Court finds that lifting the automatic stay will not change the fact that there are likely insufficient D&O proceeds and that under the priority of payments provision, the Debtors are not entitled to receive any proceeds unless and until all of the claims made under Insuring Agreement A have been paid.

Moreover, there is no basis under the Bankruptcy Code for the Court to allocate the D&O proceeds among the litigants or to not let the automatic stay, because the three payments, proposed settlements, will exhaust the insurance proceeds available under the D&O policy.

The Court notes that the case law that was cited in both sides, and in particular the cases that were cited

Page 97

at Paragraph 42 of the Movants' brief, indicate that obviously history -- the purpose of D&O coverage is to make sure that the directors and officers who have served in connection with their role at the company are in fact protected, and that there is policy that says that those are the purpose of the proceeds from the insurance, and that accordingly, it would not be appropriate for this Court to dictate how those proceeds could be used or when, in fact, for that matter, the directors and officers could actually settle litigation.

The Movants have demonstrated that if the settlements were not approved, the D&O policies would become exhausted through the payment of litigation costs in a relatively short amount of time, based upon the past run rate for legal fees, which both parties seem to agree upon.

With respect to Factor 10, the proposed settlements do expeditiously resolve three litigations which would otherwise result in a significant amount of legal fees being incurred, while the third-party Defendants, which would be paid by the third-party Defendants, which would be paid by the insurers.

As discussed before, the Court does not believe that denying the motion would preclude the three -- does not believe that denying the motion would preclude the three settlements from -- that would result in the three

settlements being approved, would actually result in a better outcome for the estates, the Liquidating Trustee, or the unsecured creditors.

And this is because it appears to the Court that the D&O policies will either be exhausted by paying the settlements, or exhausted as a result of the cost of ongoing litigation if this is not settled and will not be available to the Debtors to pay indemnification claims in any case. And that in fact, indemnification claims are likely here, given the fact that if other litigation is not settled because of the ongoing investigation, which is not in the control, frankly, of either party that's in front of me, but rather in the control of the Federal Government and perhaps the Justice Department.

Based on the foregoing reasons, the Court finds that the proceeds of the ABC D&O policies are property of the estate, but applying the Sonnax factors to the facts of this case, the Court finds that there is cause to lift the automatic stay to allow the proceeds of the ABC D&O policies to be used to fund the proposed settlements.

MR. SABELLA: Thank you, Your Honor.

THE COURT: So, obviously, you'll have to submit a Word copy of the order for me to enter that finds that for the reasons that I said -- your order will have to be adjusted to note that I found that the -- in fact, this is

Page 99

property of the estate, and -- but that the stay is being lifted for the reasons set forth on the record.

MR. ETKIN:  Yes, Your Honor.

THE COURT:  Okay.  Great.  All right.  Is there anything else that we need to discuss today with respect to this matter?

MR. SABELLA:  Michael Sabella (indiscernible).

MR. WELCH:  Cameron Welch, Your Honor.  Nothing on behalf of the Liquidating Trustee.

(Whereupon these proceedings were concluded at 12:09 PM)

INDEX


RULINGS

|  | Page | Line |
|---|---|---|
| Sealing Motion GRANTED | 14 | 9 |
| Motion to Lift Automatic Stay GRANTED | 100 | 19 |

C E R T I F I C A T I O N

        I, Sonya Ledanski Hyde, certified that the foregoing

transcript is a true and accurate record of the proceedings.

*Sonya M. Ledanski Hyde*

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  December 16, 2022

[& - acceptable]

**&**

**&** 3:3

**0**

**07601** 4:5

**1**

**1** 28:7,9 40:14
40:19 48:11
91:20 94:4
95:5
**1,394,000**
18:10
**1.5** 20:13
**10** 66:17 91:20
94:4 97:16
**100** 33:3 100:6
**10004** 1:14
**10020** 4:14
**10036** 3:6
**10111** 3:13
**105,000** 20:9
**1050** 3:20
**10:00** 1:17
**10th** 11:10
86:20
**11** 33:22 82:22
**11501** 101:23
**12** 1:16 91:20
94:5
**1211** 3:5
**12151** 101:7
**1251** 4:13
**12:09** 99:11
**13** 62:7
**14** 40:3 100:5
**16** 101:25

**17** 64:1
**177** 88:1
**18** 28:9 30:12
31:6 36:5 40:3
58:11
**19** 100:6
**191** 88:1
**193** 89:12
**194** 41:23
**1st** 18:22 19:19

**2**

**2** 17:10 29:25
29:25,25 30:24
32:18 33:7
36:5 40:19
64:16 66:16
88:22 91:20
94:4
**20** 25:4
**20007** 3:21
**2012** 88:1
**2014** 89:12
**2022** 1:16
17:10 18:9,22
18:22 19:19,19
65:9,13 101:25
**2023** 19:20
55:9 61:8
**203** 89:12
**22** 20:5,9,13
63:20 64:12
**22-10615** 1:3
7:10
**23** 20:5,13
64:12
**25** 4:4

**257,000** 18:21
19:6

**3**

**3** 17:3,4 33:7
34:4 40:18
58:11 94:4
**300** 101:22
**30th** 3:20 18:9
**31st** 18:22
19:20
**330** 101:21
**362** 2:2
**389** 61:12

**4**

**4** 18:5 30:4,12
36:9 89:22
**42** 93:21 97:1
**45** 3:12
**469** 87:25

**5**

**5** 18:20 30:18
33:9,10 34:14
34:14 36:9
38:4 40:3 51:6
57:13 61:22
65:24 66:9
94:4 95:18
**502** 48:11
**510** 33:18
57:12 87:16
88:14 89:11
90:12 93:3,15
**56** 63:19
**579** 61:12

**7**

**7** 19:17 30:23
91:20 94:4
**7.6** 86:7
**7.7** 71:24 72:16
**78** 33:21

**8**

**8** 30:4 31:6
36:17 66:18

**9**

**9** 100:5
**9019** 49:23
**993** 63:19

**a**

**aalten** 5:4
**ab** 85:18
**abc** 60:25
64:23 65:3,4
67:19 83:11
85:12 89:3
91:21 92:9
98:16,19
**ability** 72:25
84:2,6
**able** 11:21 25:9
28:2 48:13
53:15 72:16
**absolute** 73:1
**absolutely**
17:18 83:18
**absolutes** 68:2
**abundance**
13:19
**acceptable**
14:10,12 17:17

[access - americas]

**access** 41:25 65:3 75:25 93:1,24

**accessed** 57:20 68:10 79:4

**accessing** 65:3 95:24

**account** 30:14 44:10,11 45:25 53:7 54:21 90:14

**accurate** 54:3 101:4

**acknowledged** 26:18 50:8 67:13

**acknowledgi...** 71:21

**act** 27:12 29:2 29:8,16 30:14 31:7,8

**acting** 31:10 51:6

**action** 8:12 39:2 46:3,7,8,8 52:16,21 75:17 76:3,15 86:9 86:13,17 92:11 92:12

**active** 33:2

**acts** 31:6

**actual** 28:4 31:7 32:2 52:15 59:3 62:23,23 90:14

**addendum** 34:2,4

**addition** 26:21 33:5 86:16,20 87:2

**additional** 27:22 32:13 36:24 41:5 49:14 52:1,20 53:20,23 54:16 54:25 55:5 56:15 58:9 83:15 86:15 93:9

**address** 40:1 42:24

**addressed** 38:17 54:22

**addresses** 65:25

**addressing** 80:21

**adelphia** 27:25

**adjusted** 98:25

**administrative** 31:1 32:19 36:10,19 78:12

**admission** 11:6 12:19 79:20

**admit** 11:3 12:6,7 13:4,9 14:2 17:15 23:17,20 26:25

**admitted** 10:18 12:1,10 13:7,8 17:20 23:9 24:1,1 87:9

**admitting** 12:25

**adversary** 92:17

**adverse** 62:12 87:23

**adversely** 95:20

**affirmatively** 76:17

**aggregate** 86:7

**ago** 24:20 79:22 80:20 82:16

**agree** 12:18 47:15 96:8 97:15

**agreed** 25:20 25:20 53:25 57:13,16

**agreeing** 28:3

**agreement** 10:10,12,12,12 11:14,15 26:6 26:8,9,10 29:4 31:15 32:8,9 32:10,17 34:16 35:22 36:3,17 40:2,12,16,21 41:6,7 44:14 44:17,19 46:22 46:23 48:25 55:24 56:4,5,8 56:9,10 58:8 58:12 65:12 79:20 89:5,23 90:10,24,25 91:3 95:19 96:18

**agreements** 26:1,2,11,14 28:5,19,21 37:16 39:24 49:25 87:14 89:6

**agrees** 81:9

**ahead** 7:5 13:4 13:9,18 15:4 17:15 22:6 23:17,20 54:6

**alleged** 31:8,23 32:4 39:13

**alleging** 31:3

**allied** 39:16 50:10 61:12,17 61:18 62:8

**allocate** 82:19 96:20

**allocation** 82:21 83:4

**allow** 11:25 12:10 74:18 98:19

**allowed** 67:7 77:8,10

**allows** 73:13

**alten** 8:1

**alternative** 71:10 72:25

**altogether** 84:11

**ambit** 31:14 35:21

**americas** 3:5 4:13

**[amount - attorney]** Page 3

**amount** 19:3,5 19:10 30:13,18 30:19 40:20 43:10 71:19 79:24 86:7 89:17 97:14,18

**amounts** 10:7 88:9 89:4,6 90:3

**ample** 79:24

**analysis** 27:5 32:2 53:12 56:13 95:3

**analyzed** 26:3 27:23 41:16

**analyzes** 42:13

**answer** 76:16

**anthony** 5:1 8:2

**anticipated** 20:12

**anybody** 28:13 38:25 84:25

**anyway** 11:17 60:12 62:7 66:25

**apart** 47:5

**apologies** 59:17

**appeal** 55:13

**appear** 55:22

**appearances** 7:7,11 8:18

**appeared** 44:7 70:4 86:22

**appears** 10:5 20:7 83:24

98:4

**apples** 74:2,2

**applicable** 11:2 34:17 37:21 40:23 46:4 49:9 51:2 51:18,21 91:19 96:4

**application** 26:18 27:5 41:9 96:2,6

**applied** 26:4

**applies** 30:6,15 76:4

**apply** 77:14 84:11 92:22

**applying** 98:17

**appreciate** 22:24 39:10 82:8

**appropriate** 35:10 63:14 94:1 97:7

**appropriately** 33:3

**approval** 21:2 54:14 95:16

**approve** 21:22 67:7,9

**approved** 18:18,19 60:1 66:7,8 71:3 74:20 82:2 94:14,25 96:9 97:12 98:1

**approves** 19:13 21:11

67:25

**approving** 20:22 25:11

**approximately** 18:9 66:20

**area** 13:20

**argue** 51:6 66:2 67:20 75:21 76:8 87:12,18 91:18 91:23 92:7,16 93:4,7,14,17

**argued** 66:5

**argues** 54:20 87:21 88:6,15 88:18 92:6 94:18,22

**arguing** 9:6

**argument** 14:9 24:9 48:22 58:20 66:4 81:15,17 88:13 90:1,22 91:4

**arguments** 49:25 89:8

**arises** 62:18

**arising** 28:24 29:5,13 40:9 62:21 76:2

**arm** 50:8

**aside** 43:10 60:4,8 66:1,8 79:13

**asked** 9:17 12:3 21:21,23 62:20 81:9

**asking** 51:4 60:15 71:17

**aspect** 26:20

**asserted** 10:22 11:17,19 32:22 57:11 77:7 88:16 90:4 94:11

**asserting** 88:4

**assessment** 85:16

**asset** 52:13

**assets** 62:14 63:3,18 77:9 77:11 87:25

**assigned** 55:14 71:2

**assignment** 42:22

**assume** 12:5 61:24,25 62:1

**assumed** 75:14 94:21

**assuming** 67:8 67:22 68:2 69:5 74:19

**assumption** 67:9

**assured** 62:6

**attached** 37:18

**attempt** 79:12

**attention** 30:11 31:5 33:20 34:14 36:16 40:3 50:10

**attorney** 35:4

**[attorneys - bowling]**                                                          Page 4

| | | | |
|---|---|---|---|
| **attorneys** 3:4 3:11,19 4:2,12 7:7,8 | **b** | **bankrupt** 73:21 | **behalf** 7:16,18 7:21,23 8:10 |
| **august** 65:13 | **b** 1:21 10:12 11:14 26:2,8,9 | **bankruptcy** 1:1,12,23 2:2 | 8:15 24:6 31:10 59:19 |
| **authority** 9:15 36:13,19 61:9 85:5,15 | 26:12 29:4,25 32:8,10 33:18 34:17 36:3 | 29:18,20 32:24 33:18 41:12,14 41:22 47:20,23 | 83:7 99:9 **believe** 19:8 22:15 23:17 |
| **automatic** 2:1 24:21 27:1 32:24 33:1 | 39:24 40:16 41:2,4,7,7,8 44:17,25 45:3 | 47:25 49:18 51:2 52:9,18 54:19,25 65:11 | 35:25 51:13 52:9 58:4 64:8 76:4 95:12 |
| 41:24 49:24 51:14 52:19 53:14 54:15,16 | 45:6 48:11,11 48:25 55:24 56:4,9 57:12 | 73:16,17,19 74:23 88:14 92:7,19 95:2 | 97:22,24 **believes** 56:11 91:8 94:2 |
| 56:12 74:3 77:16 78:19 85:23 86:4 | 61:5,6,13,15 62:18 66:7 84:8 85:13 | 96:6,19 **bargained** 50:18 | **benefit** 54:17 85:2 |
| 91:17,21 96:13 96:21 98:19 100:6 | 87:14,16 88:14 89:6 90:10,12 93:3,15 | **barring** 33:3 **barrow** 3:16 | **best** 59:22 **better** 98:2 |
| **availability** 28:2 54:13 | **b.r.** 61:12 87:25 89:11 | 7:15,16 28:11 58:11,17 | **beyond** 41:13 41:13 54:4 |
| **available** 9:14 27:9 37:13 | **back** 36:4,5 48:21 65:6 | **based** 10:15 33:16 39:12 | **bills** 21:13 **binder** 33:6 |
| 38:6 54:21 56:7 65:24 | 81:7 **backroom** | 66:14 67:13 73:3 78:2 | **binders** 12:20 **bit** 59:21 |
| 66:11 77:13 85:3 88:11 | 80:25 **baker** 3:10 | 95:25 97:14 98:15 | **black** 59:24 85:11 |
| 89:14,17 94:15 96:23 98:7 | **bakerhostetler** 7:13,16 | **basically** 82:17 **basis** 14:6 50:6 | **block** 20:7,10 20:15 61:16 |
| **avenue** 3:5 4:13 | **balance** 27:1 56:14 77:4 | 51:2 96:19 **bd** 31:7 | **blunderbuss** 47:11 48:5 |
| **aware** 10:14 47:22 50:20 | 93:6 **ball** 55:6 | **beach** 54:9 **beckerman** | **boat** 39:4 **bonds** 45:23 |
| 61:22 79:3 **axis** 60:3 | **bancshares** 54:10 | 1:22 7:4 **bed** 55:16 | **book** 28:6 33:22 |
| | **bandied** 73:6 **bankr** 88:1 89:12 | **beginning** 59:17 | **bottom** 17:5 **bound** 41:10 **bowling** 1:13 |

[bozzo - claim]

Page 5

bozzo 86:13
breach 31:9
  34:7,18 46:8
breadth 9:10
brief 22:19
  86:21 87:3
  93:21 94:5
  97:1
bring 33:2 50:3
  72:6
brings 31:22
  39:20 49:15
broadly 48:5
brought 31:16
  32:11 48:8
  72:8 79:25
burden 9:11
burn 68:24
business 79:18

c

c 3:1 5:7 7:1
  10:12 11:15
  26:2,10,12
  29:11 32:9,17
  35:22 39:24
  40:21 41:2,4,8
  44:17,25 46:22
  46:22,23 48:25
  55:24 56:4,10
  58:14 61:5,6
  61:13 62:18
  63:4 64:10,19
  66:7 79:20
  84:8 85:13
  87:14 89:6
  90:25 91:3
  101:1,1

california
  86:14
call 7:6 14:15
  43:6 46:22
camera 9:14
  13:20 15:10,10
cameron 4:7
  7:17 24:6
  59:19 99:8
candid 38:11
cap 52:5
capacity 31:10
  36:21
capital 58:13
  58:14 59:1
carrier 31:19
  35:4 56:3
carriers 32:1
  80:1
carries 39:25
carve 44:16
  79:9
case 1:3 7:6,10
  25:23 27:17
  29:14,18 41:10
  41:17 43:23
  45:10 48:3
  49:23 50:20,23
  51:5,19,20
  52:10,18 61:11
  61:11,12,19
  63:6,9 64:24
  65:12 67:2
  68:13,15 73:15
  74:23 75:5
  77:2,22,23,24
  80:5,7,25 82:9

82:10,11,12,22
  83:8 85:14
  95:21 96:1,24
  98:8,18
caselaw 49:17
  50:6 55:1
cases 42:21
  52:9 61:4 63:8
  64:4 82:14,15
  85:6,11 89:7
  92:7 93:20
  96:8,25
categories 13:5
cause 53:19
  91:20,23 92:20
  93:5,8 94:3
  98:18
caution 13:19
century 50:19
certain 43:10
  47:19 74:18
  90:7 91:19
  95:4
certainly 11:19
  29:23 37:8,11
  46:12,21 47:4
  47:22 57:7
  65:22 66:13
  69:13 71:1
  74:5 75:24
  76:8 90:22
  92:13
certified 101:3
chambers
  12:13
chance 43:24

change 96:14
chapter 82:22
chart 19:22,23
  19:24
choice 71:4
  83:14
chosen 23:22
christopher
  5:9
chronology
  65:8
chs 49:22
  54:11 93:20
circumstance
  73:12
circumstances
  83:5,5,25
cite 85:7 93:19
cited 9:15
  42:21 62:9
  63:9,19 73:6
  85:6 89:7
  96:24,25
citing 61:16
civil 30:1 36:9
claim 28:4,24
  29:5,13,24,25
  30:24,25 32:10
  32:12,18 33:13
  33:20 34:1,3
  34:10,17,20,21
  34:23 35:9,12
  35:20 37:19
  39:15,20 44:13
  44:17 45:3,3,4
  47:23,25 48:4
  48:8,15 49:3

49:13 58:22 62:19,22 63:10 64:21 68:9,25 74:25 76:2 77:19 79:17,17 79:19 90:5,15 90:21,23,24,24 93:22 94:11

**claimant** 34:5

**claimants** 34:5 62:6 75:23 82:3 88:10

**claimed** 55:23

**claiming** 81:5

**claims** 10:21 10:21 11:14,17 12:4 26:7 30:14,23,24 31:23 32:1,3,5 32:5,16,17,18 32:21,21,22,23 33:3,8,15,16 34:5,6,15 35:1 35:14 36:6 37:1,23 38:1 39:13,23 40:10 43:11,20 44:5 44:7 45:1,20 45:22,24 46:17 47:4,8,10,11 47:17 49:4,13 49:15,19 50:3 53:1,7 54:24 55:25 57:11 61:15 62:23,23 63:1,5,16 64:7 69:6 70:15,19

71:1 72:7 73:4 73:7,8,18 74:19,21 75:1 75:6 76:11 77:6,7,12,17 78:1,2,5,6,6,9 78:12 79:18 80:1,2,10,15 81:10,12 82:3 84:7,8 85:16 85:17 88:3,4,4 88:13,16,17 89:13,16 90:4 90:9,11,14,18 90:19 91:2,10 91:13 92:17 93:2,14 94:10 94:21 95:14 96:17 98:8,9

**clarify** 21:20

**class** 8:12 33:9 33:10 46:3 57:13 86:9,13

**classification** 25:5

**clause** 68:23

**clear** 12:19 21:24 25:25 26:5,14 30:8 31:12 35:5 36:22 38:23 41:4 42:11,25 44:12,16 48:25 50:4 57:7 66:24 79:1 83:1 95:21

**clearly** 41:20 53:22 62:18 69:12

**clerk** 7:2 14:18 14:20 28:14

**client** 9:16 10:20 12:6

**clients** 49:5 83:21

**close** 52:23 85:14

**closes** 23:23

**closing** 55:22

**code** 2:2 29:18 29:20 33:18,19 41:22 49:18 50:6,9 51:2 55:1 73:17,22 73:23,23 88:14 92:19 95:2 96:6,20

**cole** 4:1 7:18 7:21,23

**colleagues** 8:1 14:4

**collect** 27:13

**collection** 52:13

**combined** 78:5

**come** 11:19 16:10 32:8 52:6 62:25 73:19 90:3

**comes** 41:1,2,2 69:5 77:10

**coming** 20:25 22:23 38:18

**commenced** 30:1 36:11 38:19 58:25

**company** 3:19 8:5 16:22 18:13 29:2,5,8 29:11,12,16 31:2,11 32:20 40:21 46:10,11 46:24 47:19 48:6 73:14 82:22 90:13 97:4

**company's** 40:16

**compared** 93:24

**compensation** 90:19

**competes** 63:22

**competing** 31:23 82:14 84:7

**competition** 82:18

**complaint** 30:2 95:10

**complete** 74:16 74:17 76:25 91:24 92:3

**completely** 68:19 89:18

**concept** 42:14

**concern** 49:1 50:1 54:7 82:5

[concerned - course]                                                    Page 7

**concerned**
  11:10 23:13
**concerns** 27:18
**concluded**
  99:10
**concludes** 86:2
**condition** 49:7
**conduct** 25:9
**conducting**
  37:10
**confer** 14:18
  14:20
**confirm** 35:3
**confirmed**
  31:19 80:5
  87:16
**conflict** 26:2
  26:12
**conflicting**
  39:23
**confronted**
  82:10
**confusing**
  29:18
**congress** 73:24
**conjure** 67:5
**connection**
  10:7 18:7
  20:16 21:8
  31:15 35:25
  36:23 37:1
  43:9 45:22
  52:2,4 58:2
  69:20 72:17
  74:22 88:8,24
  88:24 97:4

**consent** 33:7
  53:2
**consider** 91:16
**consideration**
  54:14 71:3
  74:6 83:20
**considered**
  89:8 93:22
**considering**
  31:13
**constituency**
  83:8
**constitute**
  87:22 91:14
**consummated**
  89:21 91:18
  92:8 94:25
**contain** 83:3
**contemplate**
  53:4
**contemplated**
  65:14
**context** 83:21
**contingent**
  87:15
**continue** 27:20
  53:21 60:11
  64:6 81:8
  93:10
**continued**
  38:15 67:15
**continues**
  72:13
**contract** 26:20
  27:5 34:7,19
  41:13 42:9,9
  44:12,16 46:4

  58:22 79:18
**contracts**
  37:17 78:2
**contractual**
  26:17 34:6,18
  41:9,11 53:18
  54:18 56:1
  62:20 82:20
  83:4 90:23
**contrast** 94:2
**contribution**
  34:7,19
**control** 98:12
  98:13
**converted**
  49:23
**cooler** 60:5
**cooperation**
  51:7
**copy** 13:22
  15:19 16:25
  98:23
**corp** 42:13
  50:10,19 54:10
**corporate** 11:1
**corporation**
  1:7 7:10 10:8
**correct** 8:21
  13:2 17:6
  19:15,16 20:5
  20:6,10,11,13
  20:14,18,21
  21:2,3,15,16
  22:15 23:18,19
  47:22 49:4
  57:3 78:13
  82:1 95:6

**cost** 19:13
  27:18 54:1
  55:17 76:10
  93:10 98:6
**costs** 19:1
  20:23 27:17,19
  31:20 37:11
  38:12 42:3
  50:13 52:2
  53:23 55:8,9
  55:18 58:9,13
  58:14,22,23
  59:1,5 60:11
  60:23,23 64:6
  64:10,11,18
  66:11,19 68:8
  68:12,14 71:13
  71:18,24 72:2
  72:3 81:6,8
  83:15 85:8,10
  88:8,22,24
  90:16 92:10
  93:1,13 96:11
  97:13
**counsel** 7:11
  8:5,18 18:8,25
  19:14 20:1,20
  23:7 69:23,24
  71:7
**counsel's** 60:11
**counterclaims**
  79:25
**country** 101:21
**couple** 82:7
**course** 37:21
  92:14

**[court - d&o]** Page 8

**court** 1:1,12
4:3 7:3,4,14
8:3,8,13,17,24
9:2,4,9,13,20
10:2,5 12:9,24
13:1,3,5,17
14:14,17,18,19
14:20,21,23
15:1,3,6,9,14
15:18,21,23
16:8,12,14
17:12,14,19
19:12,15 20:17
20:22 21:9,11
21:18 22:2,6
22:14,17,22
23:3,5,12,16
24:8,13,15,20
24:25 26:16,22
27:4,14,23,25
28:6,10,13
29:23 30:5
31:16 33:1,8
33:24 34:12
35:7 36:7 37:2
37:5 38:1,9,21
39:6,9 40:4,7
41:21 42:7
43:2,5,16
44:20 45:11,14
45:24 46:15,16
46:21 47:1,6,7
47:13,15,19
48:12,14,16,18
48:20 49:9,11
49:23,25 50:4
50:11,20 51:15

52:4 53:7,8
54:12,14,15
55:7 56:1,17
56:20 57:5,17
58:6,10,16,18
59:3,7,11,16
59:19 61:16,21
61:22,24 63:11
65:1 66:4 68:3
69:7 71:16
72:20 73:11
74:2,9,20 75:6
76:9 77:17,22
77:24 78:14,22
79:5,8,11 80:4
80:14 81:15,19
81:22 84:13,14
84:16,22 85:19
85:22,23 86:2
86:14,24 87:6
87:10 89:1,7
89:11,16 90:1
90:7 91:1,4,8
91:12,16 93:6
95:5,12 96:13
96:20,24 97:7
97:22 98:4,15
98:18,22 99:4
**court's** 9:6,14
95:3
**courtroom**
7:25 8:10 16:8
**courts** 26:19
49:20 54:9
91:7 93:22
**cover** 10:24
11:2 60:19

73:21 77:6
93:1
**coverage** 9:23
9:24 10:24
11:5,15,15
27:10 28:22
29:12 30:15
32:3 34:23
35:2,4,14,20
35:23 36:2,23
36:25 37:13,23
38:6 39:14,17
40:12,17,22
42:17 43:10,13
45:1,6,7 46:23
50:2,2 57:19
57:22,24 60:17
61:14 62:10
63:4,11,15,21
63:25 64:12
65:17,24 66:6
66:10 67:3,19
67:19 68:22
75:15 81:5
88:11 89:3,3
89:15,17,22
93:25 95:19
97:2
**covered** 11:18
21:20 31:15
33:15 34:21
37:12 40:10,11
40:16,20 50:15
57:12 74:11
76:11 91:10
**covering** 88:22

**covers** 11:8
61:14
**credible** 90:1
**creditors** 27:13
33:11 53:5
54:22 74:4,4
75:20,23 78:11
92:16 93:19
94:23 95:21
96:3 98:3
**criminal** 20:20
36:9 54:2
**critical** 28:1
**cross** 6:3 13:15
14:2,3,4 17:16
17:21,24 23:7
23:22 60:13
86:23 87:7
**crucial** 28:3
**crystal** 6:5
14:15 16:1,5
16:20 17:24
22:7 55:6
**currently**
16:21,22
**cybermedica**
54:11

**d**

**d** 6:1 7:1 58:13
59:1 100:1
**d&o** 37:7,24
50:21 52:14
82:17 85:24,25
86:3,5 87:11
87:13,20,21
88:7,11,20
89:1,3,9,15,18

**[d&o - deposition]**

89:22 90:5
91:6,11,14,21
92:9,20 93:1,8
93:18,23,25
94:16,24 95:18
95:23,24 96:4
96:7,10,15,20
96:23 97:2,12
98:5,16,19
**d&os** 31:16
36:24 37:24
**d's** 57:23
**damages** 90:14
93:13
**daniel** 3:8 5:7
8:14
**date** 17:9 33:4
101:25
**dawson** 33:21
34:3 62:17
**day** 70:14 83:2
**dc** 3:21
**deal** 60:7 75:7
81:1 85:7
**dealing** 46:14
49:22 75:8
80:21
**dealt** 45:10
**debtor** 1:9
11:17,19 27:12
37:20 41:11
42:19 46:5
50:22 57:2,6
57:11 62:11
63:16 66:17,20
69:21 79:14
80:12,15 83:25

84:7 86:11
88:22 90:9,9
91:2 92:1,2,5
92:12,14 94:8
95:8
**debtor's** 63:21
63:25 65:17
75:11,13,15
**debtors** 11:21
30:8,9 32:22
32:24 38:22
41:12,14,19
42:16 51:8,15
52:17 54:18
60:18 62:1
63:10 65:11
80:18,20 81:11
81:12 86:3,18
87:11 88:5,10
88:16,24 92:24
93:2 94:19,20
95:21 96:16
98:8
**december** 1:16
17:10 19:19
20:5,13 101:25
**decide** 11:3
60:5 71:18
85:15 87:10
**decided** 12:6
65:3 67:9
**deciding** 11:25
**decision** 11:3
41:24 43:7,9
61:14,21 67:10
**declarants**
23:8

**declaration**
13:22,23 14:1
15:19 16:23,25
17:3,15,20
18:5 20:2 23:9
25:8 35:17,18
55:3,8
**declarations**
23:17,21 24:1
86:22 87:4
**defend** 55:5
**defendant**
50:14
**defendants**
56:25 57:1
61:19 68:12,15
84:1 86:11,15
97:19,20
**defending**
75:14
**defense** 18:8
18:25 19:13,14
20:20,23 27:17
27:18,19 50:13
52:2 55:8,9
58:9,13,14,21
58:23 59:1,5
60:11,23 64:18
66:11,19 68:8
68:12,14 71:7
81:6 83:15
85:7,10 88:7
88:22 92:10
93:1,13
**define** 27:5
**defined** 29:25
30:24,25 31:7

34:20 58:14
**defines** 32:18
35:13
**definitely**
66:10
**definition**
30:11,22 31:6
36:5 58:21
**definitions**
29:21 31:13
36:4
**defrauded**
83:14,17
**delaware**
61:23
**delineate** 41:20
**demand** 36:18
**demonstrated**
97:11
**demonstrates**
93:5
**denied** 50:23
74:2 78:21
**denies** 60:2
**deny** 35:3 93:7
**denying** 97:23
97:24
**department**
98:14
**depends** 45:1
**deplete** 93:11
**depletion**
62:12 87:22
88:7 94:23
**deposed** 36:20
**deposition**
76:23

**[depositions - earlier]**

| | | | |
|---|---|---|---|
| **depositions** 25:3 | **diminution** 87:25 | **discretion** 51:20,21 | **divided** 73:22 |
| **deprive** 49:3 | **dimunition** 62:14 | **discuss** 25:15 99:5 | **document** 9:9 9:22 11:4 26:14,21 58:1 59:4 76:25 77:1 |
| **deprived** 42:1 | **dip** 39:14 | **discussed** 32:17 42:23 52:9 53:19 55:24 77:5 97:22 | |
| **deputy** 16:9 | **direct** 6:3 14:2 16:1 30:10 31:5 33:20 34:4,13 40:3 50:10 | | **documents** 11:1 36:21 37:20 46:5 56:24 78:4 87:8 |
| **describe** 10:11 48:9 | | | |
| **desire** 84:4 | | **discussing** 41:24 | |
| **desk** 15:15 | **director** 25:19 63:22 | **dismissed** 90:17 | **doing** 33:4 41:18 45:18 78:8 84:5 |
| **determination** 63:12 | | | |
| **determine** 11:11,12 18:15 26:21,22 27:24 32:2 63:14 | **directors** 25:18 27:11 28:1 30:7 36:1 37:7 37:8,15 38:22 38:23 39:1 42:17 46:1 47:9 48:6 50:17 62:10 63:24 77:18 79:14 82:23 84:4 88:5 90:5 97:3,9 | **disperse** 26:13 | **dollar** 27:7,8 61:6 63:23,25 64:3 |
| | | **dispute** 72:19 94:6 | |
| | | **disputes** 12:18 63:4 | **dollars** 61:7 66:1 71:24 |
| **determined** 64:9 93:25 | | | |
| **determines** 26:24 51:15 91:9 | | **disrespect** 84:17 | **downey** 42:12 54:10 |
| | | **disrespectful** 69:22 | **draw** 53:23 |
| **determining** 38:12 | | | **drop** 81:12 |
| **dictate** 61:23 83:25 84:25 97:8 | | **disrespectfully** 72:6 | **drops** 61:21 |
| | **disagree** 34:2 37:22 38:2 | **distinction** 43:17 85:8 | **due** 27:17 40:10 49:14 68:20 81:6 |
| **dictates** 83:2 | | | |
| **difference** 43:5 | **disagrees** 88:12 | **distinguisha...** 42:23 | **duty** 31:9 46:8 |
| **different** 10:9 42:14 43:7 44:2 50:7,13 82:11 91:9 | | | **e** |
| | **disappearing** 75:1 | **distribution** 33:11 40:25 44:13 53:3,4,6 55:20,20 78:10 | **e** 1:21,21 2:2 3:1,1 6:1,5 7:1 7:1 40:3 100:1 101:1 |
| **difficult** 76:13 | **discovery** 25:1 25:4 69:19 70:8,9 76:24 77:1 92:25 | | |
| **digital** 39:16 50:10 61:12,17 61:18 62:9 | | **district** 1:2 24:25 31:16 49:11 63:9 75:6 76:9 86:10 | **earlier** 25:11 32:7 52:18 53:4 54:12 65:10 |
| **diligent** 74:4 | **discovery's** 76:25 | | |

[eastern - examination]

eastern 63:9
eating 53:24
economical 52:25 76:6 92:22
economy 52:25 76:6 92:21
ecro 1:25
edgeworth 63:19
effect 53:14 62:12 77:7 87:23
effective 80:6
effectively 65:16
efficient 42:2
effort 49:20 50:12 79:13
efforts 50:16 54:23
egan 3:8 8:14 8:14,17
eight 76:2
either 46:4 57:12 59:24 64:9 67:23,23 70:10,20 72:1 78:2 95:25 98:5,12
electric 49:22 54:11
elements 74:14
elevate 44:16
elevation 49:18
eleven 76:21

employed 16:6 16:21,22
enable 42:18 91:17,21
encompassing 60:8
ended 84:16
endpoint 71:23
ends 48:6 95:10
enforce 85:1
english 61:3
enivid 50:23 93:20
enter 49:8 98:23
entered 33:7
entitled 32:3 34:22 50:5 64:8,11,13 75:24 79:14 91:3 93:23 95:22 96:16
entity 37:20 63:15,21
entry 49:8
envelope 12:12
equitable 74:5 76:3
erica 3:16 7:15
erode 27:20 42:8
eroded 71:7 72:15,17,23 74:24 76:14 77:11 81:6,8 83:12

erosion 72:14
error 31:8
especially 75:1 82:21
espoused 89:20
essentially 9:18 49:12 51:3 60:2,15 73:9
establish 61:25
established 78:17 83:10
estate 11:12 26:23 39:15 42:15,22 50:3 50:17 51:16 52:21 54:22 55:23 60:18,19 62:11,13 63:7 63:13,15,18,25 64:3 66:3 69:6 71:15 73:3,19 74:11 77:13 82:3 85:2,12 85:20 87:22,23 89:10 94:12 98:17 99:1
estate's 62:14
estates 85:24 86:1,4 87:11 87:12,24 88:3 88:20 89:18 90:20 91:6,10 91:15 94:15,17 94:22 98:2
estimate 20:4,9 20:23

estimated 21:12 61:9
estimates 19:18 55:10 66:15
estimation 43:19
etkin 4:16 8:9 8:10,13 45:16 45:25 46:12,17 46:25 47:3,11 47:14,16 48:10 48:13,15,17,19 48:20 53:8 81:11,23,25 84:17 99:3
etkin's 45:14
event 26:2 40:9 82:4,21,22
everybody 43:16
everyone's 65:23
evidence 13:10 17:16,20 22:18 23:10,21 31:25 35:18 37:19 87:9
evidentiary 14:8,9 23:24 24:3
exactly 35:15 42:3 74:2
examination 16:1 17:21,24 22:7 60:13 86:23 87:7

[examine - filed]

**examine** 13:15 14:3,4 17:16 23:22

**example** 39:1,2 45:2 46:1,9,10

**excess** 18:7 24:22 38:4 79:3

**excised** 41:17

**exclusion** 36:25

**excuse** 14:19

**excused** 22:23 23:1

**exercise** 39:19

**exercised** 29:1 29:7,16

**exhaust** 60:16 63:17 65:16 96:22

**exhausted** 27:17 37:14 38:14 67:12,20 68:20 69:3,5 71:5,10,11 88:11 89:24 90:6 96:10 97:13 98:5,6

**exhausting** 77:9

**exhaustion** 37:23 70:21 79:4

**exhibit** 28:6,12 33:22

**exhibits** 6:7 12:18,23,25

13:4,6,7,8 24:2 31:25 33:6,7 64:11 87:9

**existence** 78:3

**existing** 88:8 95:13

**exists** 89:2 91:23 92:20 94:1,3

**expand** 41:19

**expanded** 41:13

**expect** 20:25

**expected** 33:10 33:12 55:20 84:17

**expeditious** 76:6 92:21

**expeditiously** 97:17

**expended** 88:24

**expense** 79:18

**experience** 44:24 45:12

**experienced** 69:23 72:9

**expert** 25:4 84:20

**expired** 38:24

**explain** 39:20

**explicit** 36:24

**expose** 93:12

**express** 34:15

**expunge** 48:15

**extended** 29:1 29:7,15

**extending** 2:1

**extent** 22:9 26:22 35:23 37:10 38:7 40:14,19 49:9 49:15 51:14 56:6,11 62:13 81:17 85:23 86:2 87:24

**eyebrow** 65:16

**f**

**f** 1:21 101:1

**f2b** 63:19

**faced** 42:7

**facilitate** 50:21

**facilitates** 74:4

**fact** 9:7,10 32:2 49:19 65:2 67:18 90:24 96:14 97:4,8 98:9,10 98:25

**factor** 93:4 95:5,14 97:16

**factors** 26:25 51:12,13,18 56:13 64:24 74:8 77:15 78:19 83:19 91:19,20 94:4 95:3,4 98:17

**facts** 41:10 43:8 73:15 90:15 98:17

**factual** 43:17

**failed** 65:9

**fair** 42:1

**fall** 13:5 35:21 57:11

**falls** 31:14

**far** 23:12 62:6 66:14,15

**faster** 72:16

**favor** 26:25,25 27:2 50:21 51:13 53:1 75:12 77:15 78:19

**favors** 56:14

**federal** 37:9 98:13

**fee** 18:12 19:13

**fees** 18:25 20:12,23 21:12 22:10 31:20 35:25 61:7 97:15,18

**fiduciaries** 94:19

**fiduciary** 46:8 75:11

**fifth** 79:5,6,15

**figure** 43:21

**file** 73:17

**filed** 8:20 10:19,21 25:13 32:24 47:17 49:4 65:7,11 68:9 78:1 79:23,24 86:20 87:1,2 88:5 90:2,5,21 95:10

**[final - go]**

| | | | |
|---|---|---|---|
| **final** 19:2,3 | **focuses** 94:4 | **frankly** 82:4 | 52:24 92:24,25 |
| **finalize** 19:8 | 95:3 | 82:12 98:12 | 93:11 |
| **finally** 31:5 | **fogelman** 4:19 | **fraud** 61:23,25 | **future** 95:14 |
| 53:10 83:23 | **folks** 9:13 23:8 | **fraudulent** | |
| **financial** 30:21 | 60:14 65:12 | 46:7 | **g** |
| 42:13 47:21 | **follow** 88:21 | **free** 63:16 | **g** 1:22 3:8,23 |
| 54:10 | **followed** 32:9 | 82:14,24 | 5:2 7:1 |
| **financially** | **following** | **front** 13:23 | **game** 65:21 |
| 30:19 | 30:17 | 17:1 56:22 | **gassler** 3:18 |
| **find** 9:19 48:2 | **follows** 61:11 | 70:4 77:19 | **general** 27:13 |
| 91:4 | **footnote** 20:3 | 86:10 98:12 | 75:22 |
| **finds** 85:23 | 61:22 | **frustrate** 53:17 | **genesis** 62:19 |
| 90:1,8 91:1,12 | **forced** 93:10 | 93:7 | **getting** 39:10 |
| 95:5 96:13 | **foreclose** 35:3 | **fulfree** 4:20 | 71:3 73:2 |
| 98:15,18,23 | **foregoing** | **full** 16:19 26:7 | 75:15 |
| **fine** 9:12 15:3 | 98:15 101:3 | 26:9 33:12 | **give** 15:6 34:9 |
| **finish** 81:15 | **forget** 66:15 | 41:8 44:14,18 | 45:13 50:6 |
| **firm** 20:7,10,15 | **forgetting** 66:8 | 53:5 56:5,9 | 58:4,18,19 |
| 21:4 22:9,10 | **formal** 61:19 | 75:14 90:18 | 92:18 |
| **first** 8:19 14:9 | **former** 37:7 | **fund** 3:4 8:16 | **given** 51:19 |
| 16:20 24:10 | 38:22 88:5 | 24:23 51:1 | 90:17 98:10 |
| 27:16 28:8,20 | 90:4 | 53:16 60:22 | **gives** 84:6 |
| 28:25 29:6,15 | **forth** 25:2 56:2 | 69:4 83:15 | **giving** 82:8 |
| 32:8 40:11 | 99:2 | 86:17 91:22 | **glenn** 26:19 |
| 41:2,5 43:24 | **forum** 75:20 | 98:20 | 33:17 41:15,23 |
| 45:10 50:18 | **forward** 64:20 | **fundamental** | 42:6,6 43:9,25 |
| 54:10 56:20 | 67:8 70:1 | 26:20 95:2 | 44:4 50:11 |
| 60:9 73:20 | 71:18 72:1,3 | **fundamentally** | 62:5 |
| 81:16 87:10 | 74:19 83:16 | 27:2 | **global** 26:19 |
| **fit** 58:21 | **fought** 76:19 | **funded** 72:24 | 27:23 33:17 |
| **five** 75:13 | **found** 98:25 | **funding** 86:5 | 41:15 42:23,25 |
| **flip** 41:3 | **founded** 54:25 | **funds** 26:13 | 43:6,8,9,13 |
| **focus** 44:18 | 55:1 | 27:12 41:25 | 50:11 54:9,12 |
| 48:24 52:12 | **four** 24:20 | 44:3 50:22 | 62:4 71:8 |
| 59:23 | 47:24 79:23 | 54:13,21 | 87:25 89:11,17 |
| **focused** 53:13 | **fourth** 40:22 | **further** 21:17 | 93:20 |
| | | 22:2,10 52:3,8 | **go** 7:5 10:3 |
| | | | 13:3,9,18 |

**[go - help]**

14:21 15:4 17:15 22:6,18 23:16,20 24:2 24:9 29:21 44:21 48:21 59:13 65:6 67:8 69:10,15 69:18 70:1 74:19 76:1 80:17

**goal** 93:18

**goes** 41:4 60:1 67:24 71:18

**going** 7:5,6 9:11 11:24,25 12:9 13:3,9 15:3 16:9 17:14,15,21 19:14 21:14,23 22:18 23:16,20 24:15 28:17 40:23 43:21 47:24 48:7 53:11 60:12,24 62:7 64:20 66:10 67:3,14 68:7,8,9,10,11 68:12,14 69:10 69:12,18,24,25 70:1,5,6,8,9,21 71:13,14,19,20 71:21 72:1,2,3 72:3 74:20 76:10,14,18 77:5 78:8,11 83:11,16 84:17

**goldfarb** 4:21

**good** 7:3,12,15 7:17 8:9,22 14:22 15:1 18:1 24:18 28:15 48:23 60:6 78:23

**gorrepati** 5:6

**govern** 40:25

**government** 9:12,17,25 35:12 37:9 54:2,4 66:22 98:13

**government's** 58:24

**governmental** 36:19 38:15 58:2 60:14 67:15 69:2,11 72:2 75:4 88:9 88:25 89:25 94:12 95:11 96:12

**governs** 59:1

**grand** 35:15

**grant** 12:9 46:23 84:13

**granted** 25:14 55:3,15 56:16 79:22 100:5,6

**granting** 26:25

**grants** 19:15 20:22

**gray** 3:3 8:15 45:17

**great** 15:5,14 15:23 33:25 36:8 61:3 99:4

**greater** 42:19 54:4

**green** 1:13

**gross** 82:10

**group** 4:12 8:11

**guess** 12:21 22:17 23:23 24:8 43:6 56:24 67:1,17 71:25 84:19

**guided** 50:11

**gust** 60:13

**h**

**hackensack** 4:5

**hair** 45:17

**half** 71:23

**hand** 15:5

**handful** 39:1

**handle** 13:16

**happen** 39:3 43:21 46:11 56:23 64:20 67:14 68:7,11 69:10,17,25 70:7,7 78:11 84:20

**happened** 43:22 65:10

**happening** 72:5

**happens** 44:23 46:9 58:25

60:9,23 68:5,6 69:8 70:13,24 72:4 78:10

**happy** 81:22

**hard** 67:20 69:9 80:9

**hardcore** 81:1

**harm** 53:19 54:8 93:8

**harms** 27:1 54:20 56:14 77:4 93:6

**harris** 4:22

**heads** 60:6

**hear** 14:9 16:16 53:7 76:8 81:14,22

**heard** 9:6 20:17 53:8

**hearing** 2:1 11:10 79:22 86:19,23

**hearings** 14:21

**heavily** 77:15

**heels** 47:17

**held** 42:14 54:1 62:8 85:19 86:19 89:12

**hellerstein** 25:3 55:11 56:22 67:8,25 70:2 79:21 82:2 86:10

**hellerstein's** 21:22

**help** 29:22

[helped - incurred]

**helped** 29:23
**hi** 16:5
**high** 20:4,12
**higher** 41:1
**history** 82:13
  97:2
**hold** 42:18
**holders** 73:5
  73:18
**holdings** 41:15
  87:25 89:11
**holds** 63:7
**hon** 1:22
**honest** 43:23
**honesty** 45:9
**honor** 7:12,15
  7:17,20,25 8:4
  8:9,14,22,25
  9:3,4,5,15,21
  10:1 12:8,22
  13:13,14,15
  14:13,15 15:25
  17:13,18 21:17
  22:1,4,16,19
  23:8,10,14,19
  24:4,7,11,18
  24:19 25:11,22
  26:22,24 27:4
  28:5,7,11,21
  29:14,17,24,25
  30:3,3,8,10,17
  30:22 31:5,7
  31:12,22,24
  33:5,10,15,20
  33:21,25 34:2
  34:4,9,17,24
  35:11,13,24

36:3,5,8,22
38:3 39:5,12
39:14,19 40:2
40:5,8,22,24
41:15 42:5,7
42:12,21 44:11
45:9,16 46:13
47:12 48:19,23
48:24 49:6,8
49:10,17 51:5
51:11,12,20,23
52:8,16,24
53:10,14 54:8
54:22 55:2,6
55:22,25 56:11
57:4 58:4,7,11
59:10,15,18,24
60:2,4,9,15,21
60:24 61:3,10
62:9,16,17
63:1,8 64:2,5
64:10,22,25
65:6,20 67:25
68:21,24 71:4
72:19 73:1,25
74:6,7,10,12
74:24 75:1,10
75:21 76:4,8
76:12,13,17,22
77:3,14 78:16
78:20,23 79:2
79:16 80:11,22
81:9,13,24,25
82:7,12,25
83:7,10,23
84:2,10,18,24
85:5,11,14,21

98:21 99:3,8
**honor's** 32:5
  34:14 36:16
  38:7 39:22
  44:15 77:21
  81:2,6
**honored** 28:1
  43:1
**host** 62:15
  74:20 76:11,19
  85:5
**hostetler** 3:10
**hugh** 5:8
**hybrid** 14:21
**hyde** 2:25
  101:3,8
**hypothetical**
  39:13,17 89:14

**i**

**icon** 61:24
**idea** 86:22
**identification**
  32:12 45:22
**identified** 21:4
  33:22 73:4
**identify** 7:9
**identifying**
  36:13
**imagining**
  69:10
**immediate**
  13:20
**immediately**
  69:3,4 71:5
**impact** 53:10
  77:3 93:5
  95:20

**implemented**
  19:7
**implicate**
  48:10
**implicated**
  38:5
**implicating**
  36:2
**importance**
  54:12
**important**
  29:21 32:6
  38:11 85:8
**inappropriate**
  95:1
**include** 30:8,9
  30:18 32:19
  35:14
**included** 82:17
**including**
  26:19 30:15
  54:9 62:16
  70:19 86:18
  92:25
**incomprehen...**
  42:5
**increase** 52:5
**increased** 42:2
**incredibly** 53:3
**incur** 37:10
  71:20
**incurred** 60:12
  60:24 61:7,8
  68:12,14 71:21
  71:25 72:2,4
  97:19

[indemnification - intent]                                         Page 16

| | | | |
|---|---|---|---|
| **indemnificat...** | 27:18 28:4,5 | 81:3,7,7,10,21 | 42:1 49:14 |
| 10:21,25 11:14 | 28:12,19,20,22 | 85:18 99:7 | 54:16 61:14 |
| 11:17 12:4 | 28:22 29:14,19 | **individual** 21:7 | **insured's** |
| 32:15 34:7,18 | 30:9,21 31:4 | 36:1,14,23 | 41:20 |
| 34:18 37:15,22 | 32:7,10,13,14 | 37:7 41:19 | **insureds** 20:16 |
| 38:8 43:11,20 | 32:25 34:1,1,9 | 42:1 84:1,4 | 27:22 30:13,19 |
| 44:7,13 45:4 | 34:10,16,22,25 | **inextricably** | 30:20 41:5 |
| 45:24 46:17 | 35:5,12,16,18 | 46:18 | 52:20 53:20 |
| 47:2,4,8 48:4 | 35:23,24 36:11 | **information** | 54:25 55:5 |
| 55:25 61:18,20 | 36:12,15 38:2 | 12:3 20:1 | 56:15 58:9 |
| 61:23 62:2,5 | 38:8 39:5,17 | 56:25 | 93:9 |
| 62:16,20,21 | 40:2,5,6,9,12 | **initial** 31:24 | **insurer** 28:23 |
| 70:18 73:8 | 40:15 41:7,18 | 86:19 | 29:4,12 40:11 |
| 77:17 78:1,3 | 42:8,10,18 | **injunction** | 94:21 |
| 79:17 88:4,10 | 43:15 44:18 | 50:24 | **insurer's** 35:1 |
| 88:13 89:13,16 | 45:13,15 49:6 | **insight** 54:4 | **insurers** 18:8 |
| 90:4,23 91:13 | 49:10 50:15,15 | **insufficient** | 88:21,23 96:1 |
| 93:14 94:10 | 51:5,7,16,23 | 96:15 | 97:21 |
| 98:8,9 | 52:7,11,17 | **insurance** 3:19 | **insuring** 26:1,1 |
| **indemnificat...** | 53:6,11,12,22 | 8:5 10:24 | 26:6,8,8,10,11 |
| 70:15 | 53:23 54:1,19 | 16:22 24:22 | 28:4,19,21 |
| **indemnified** | 55:18,18 56:1 | 25:20 27:6,6 | 29:4 31:14 |
| 29:2 46:2,3 | 56:7 58:12,15 | 29:19 31:17,19 | 32:8,9,10,16 |
| **indemnify** 29:9 | 62:16,21 64:1 | 35:4 39:25 | 35:21 36:2,17 |
| **indemnifying** | 64:3,5,7,14,16 | 41:5,22,25 | 39:24 40:12,16 |
| 82:23 | 64:22 65:8 | 51:1 52:14 | 40:21 41:6,7 |
| **indemnity** 34:6 | 66:17 67:22 | 56:3 58:17 | 44:14,17,19 |
| 68:23 69:5 | 68:22,23 69:1 | 63:17,23 75:13 | 46:23 48:25 |
| 75:1 | 71:2 72:23 | 75:25 76:20 | 49:25 55:24 |
| **indicate** 64:13 | 73:5,6,9,10 | 80:1 85:9 89:5 | 56:4,5,8,8,9,10 |
| 97:1 | 74:5,18,21,25 | 96:23 97:6 | 79:20 87:14 |
| **indicates** 20:3 | 75:3,12,15,24 | **insure** 79:17 | 89:6,23 90:10 |
| **indiscernible** | 76:17 77:8,25 | **insured** 21:7 | 90:24,25 91:3 |
| 7:19 9:1,24,25 | 78:18 79:1,10 | 28:23 29:1,3,8 | 95:19 96:18 |
| 24:14,21,22,24 | 79:15,16,19,25 | 30:1,4,6 31:3,9 | **intend** 23:7 |
| 25:7,8 26:7,21 | 80:12,17,18,23 | 32:13 36:10,12 | **intent** 65:6 |
| 27:7,9,11,15 | 80:23,25 81:2 | 36:14,20,21,24 | |

**interest** 26:23
39:18 51:16
52:11,24 56:12
76:5 87:12,20
91:11 92:21
**interested** 9:17
**interesting**
76:7
**interests** 42:16
51:15 75:20
92:16
**interfere** 52:8
92:7
**interference**
74:23 84:3
**interpretation**
26:17
**interrupt** 37:2
80:5
**interrupting**
39:7 72:21
**intertwined**
46:18
**interviewed**
36:20
**introducing**
9:13
**invest** 10:11
**investigated**
54:1
**investigating**
36:13
**investigation**
10:1 11:20
31:2 32:20
35:24,25 36:10
37:9 38:16

54:3 58:3,24
60:14 67:15
68:16 69:2,12
70:16 75:5
88:9,25 89:25
94:13 95:11
96:12 98:11
**investigation's**
72:3
**investigations**
35:15 54:4
**investment**
4:12
**investor** 8:11
**investors** 83:8
83:14,17
**invite** 35:9
**invoices** 18:6
18:16,18,21,25
64:18
**invokes** 66:9
**involve** 21:8
**involved** 24:25
**involvement**
92:24
**involves** 52:16
75:11,17 86:14
92:11,12
**involving** 36:1
45:18 92:4
**ironic** 70:17
**ironically** 73:5
**irreparable**
53:19 54:8
**irrespective**
19:12

**issue** 11:9,24
12:5 27:6
29:14 35:2
47:2 53:12
62:25 65:4
75:9 82:11
**issues** 25:5
46:14 47:5,24
51:24 57:1
74:16 77:9,25
79:25 92:3
94:7
**ivy** 6:5 8:6
14:16,22,23,25
15:2,9 16:1,3,5
16:16,18,20,21
16:23,25 17:24
18:1 22:7,9,21
22:22 60:13
86:22
**ivy's** 25:8 55:2
55:8

**j**

**j** 28:7
**james** 4:21
33:21 34:3
62:17
**jenner** 20:7,10
20:15 22:9
**jeopardize**
63:18
**jimenez** 86:16
**job** 21:22
44:24 72:8
**joint** 13:5 28:6
**jorian** 4:25

**judge** 1:23 7:4
9:19 21:22
25:3 26:19
33:17 41:15,23
42:6 43:9,17
43:25 44:4
50:11 51:20
55:11 56:22
62:5 65:8 67:8
67:24 70:2
79:21 82:2,9
85:8 86:10
**judgment**
55:12,12 76:2
**judicial** 52:24
76:6 92:21
**judicious**
52:25
**july** 65:9 80:13
80:19
**junior** 42:17
**jury** 35:16
**justice** 98:14
**justification**
74:13

**k**

**k** 4:21
**keep** 40:13
69:25 79:13
**kennedy** 5:7
**key** 30:25
**kim** 4:24
**kind** 70:17
72:18 80:9
84:3
**kinds** 82:13

| kingdom 54:11 | large 63:15 | lends 75:12 | limitation |
| know 9:4 11:21 | lastly 29:11 | letter 29:11 | 38:24 |
| 11:23 12:6,20 | laukitis 4:23 | 36:12 | limited 9:8 |
| 19:5 22:25 | laura 5:11 | letters 64:13 | 40:15,20 63:3 |
| 28:9 33:22 | law 11:2,2 | level 84:19 | limits 63:18 |
| 36:6 38:10,21 | 26:20 28:14 | lgb 1:3 | line 100:4 |
| 39:2,21 43:19 | 34:17 37:21 | liability 25:19 | lippert 86:16 |
| 43:22 44:1,2,8 | 41:22 45:21 | 27:11,21 29:11 | lipson 27:14 |
| 45:25 46:6,13 | 46:5,8 51:3 | 30:21 40:15,20 | 39:16 50:18 |
| 46:18 55:10,12 | 61:23 77:24 | 40:22 47:18 | 63:8 93:21 |
| 59:7 65:15 | 78:4 85:1,9 | 55:14 63:23 | liquidated 78:7 |
| 66:21 67:1,3 | 95:21 96:4,24 | liable 30:19 | liquidating |
| 67:11,17 68:4 | lawrence 4:19 | 93:13 | 7:18,21 9:11 |
| 68:4,17 69:15 | lawsuit 86:9,14 | life 44:25 70:5 | 10:6,20 13:9 |
| 70:3,4,5,12 | layer 61:5,5,5 | lift 12:17 21:23 | 59:19 63:3 |
| 71:23 72:10,11 | layers 60:17 | 33:1 51:14 | 72:9 77:5 80:7 |
| 72:12 73:4,14 | lead 8:11 33:8 | 52:19 54:15 | 87:1,19,21 |
| 76:25 | leave 70:18 | 60:5,9,15 64:6 | 88:2,6,12,15 |
| known 40:1 | 74:20 76:11 | 67:11,24,25 | 88:18 89:20 |
| 45:5,7 90:15 | 95:17 | 71:4,5 74:3,13 | 90:20 92:17,18 |
| knows 48:6 | leaves 66:1 | 76:9 91:17,20 | 93:17 94:2,3,6 |
| 72:5 | leaving 27:20 | 98:18 100:6 | 94:9,18,22 |
| krista 4:9 7:23 | 65:4 66:8 | lifted 56:14 | 95:10,16,22 |
| ks 1:25 | led 85:14 | 57:10 67:7 | 96:3 98:2 99:9 |
| kulp 4:9 7:23 | ledanski 2:25 | 72:13 76:18,19 | liquidation |
| 7:23 | 101:3,8 | 99:2 | 54:19 61:11,16 |
| **l** | left 37:14 66:6 | lifting 27:1 | 62:9 63:7 74:1 |
| l 4:9 5:9 15:22 | 74:25 76:18 | 41:24 49:9 | 82:9 85:18 |
| label 89:13 | 77:5 | 54:16 77:15 | 87:17 90:12 |
| labeled 13:6 | legal 18:12 | 78:19 85:20 | lisa 1:22 4:23 |
| laboring 78:16 | 19:13 21:12 | 94:3 96:13 | list 36:4 |
| lack 74:22 | 30:20 31:20 | lifts 59:25 | litigant 33:2 |
| 89:18 | 61:7 90:16 | likelihood | litigants 96:21 |
| laminate 54:11 | 97:15,18 | 11:13 68:18 | litigate 53:21 |
| language 27:23 | 101:20 | 91:1 | 62:25 75:7 |
| 90:12 | legally 30:13 | limit 47:9 | litigated 77:21 |

[litigating - mind]

| | | | |
|---|---|---|---|
| **litigating** 77:9 | **live** 12:4 | 78:10,14 | **meant** 42:16 |
| **litigation** 25:7 | **llp** 3:3,10 4:11 | **management** | **mechanism** |
| 25:18 31:15,21 | **long** 36:4 45:18 | 50:19 | 65:14 |
| 32:13,14 38:15 | 47:20 58:22 | **massachusetts** | **medex** 39:16 |
| 38:18 45:21 | 69:15 | 50:23 | **mediation** 25:9 |
| 46:19 47:10,18 | **longer** 69:15 | **master** 3:4 | 25:10 27:19 |
| 48:4 49:16 | 84:16 | 8:15 86:17 | 31:21 65:9 |
| 50:25 51:25 | **look** 11:7 13:20 | **matter** 1:5 9:7 | 81:2 |
| 52:4,6,15,19 | 18:5,20 19:17 | 16:23 24:25 | **mediator** 80:25 |
| 52:22 53:1,2 | 26:20 36:8 | 25:18 26:17 | **melissa** 4:22 |
| 53:16,21,23 | 60:9 61:4,10 | 31:16,24 50:1 | **merely** 61:18 |
| 55:11,16,18 | 63:4 70:11 | 50:8 51:25 | **mf** 26:19 27:23 |
| 58:24 66:13,22 | 71:17 77:6 | 52:5,22,23 | 33:17 41:15 |
| 67:12,15 68:6 | **looked** 26:3 | 60:23 61:4 | 42:23,25 43:6 |
| 68:7,8,11,20 | 28:21 44:1 | 68:20 69:8,10 | 43:8,8,13 |
| 69:18,20 70:17 | 56:24 | 70:9,12,23 | 50:11 54:9,12 |
| 70:18,20 71:1 | **looking** 85:1 | 72:4 97:9 99:6 | 62:4 87:25 |
| 72:13,17 75:19 | **looks** 56:25 | **matters** 21:8 | 89:11,16 93:20 |
| 76:7,10,19 | **loss** 28:23 29:3 | 27:16 33:2 | **michael** 3:15 |
| 81:2,7 83:16 | 29:5,5,10,12 | 52:13 54:2 | 4:8,16 5:3,5,10 |
| 84:1,5 88:8 | 30:11,12,18,21 | 71:6 | 7:20 8:1,10,22 |
| 89:24 90:16 | 31:15,17 40:9 | **mccarthy** | 12:22 13:13 |
| 92:15,22,23 | 40:11,13,16,18 | 86:13 | 24:4,18 99:7 |
| 97:10,13 98:7 | 40:21 51:9 | **mccullough** | **mid** 65:9,12 |
| 98:10 | **lot** 9:5 43:12 | 5:8 | **middle** 16:20 |
| **litigation's** | 47:21 66:24 | **mean** 10:5,25 | **mike** 78:24 |
| 72:1 | 67:12 68:5,5 | 37:5 41:12 | **miller** 4:24 |
| **litigations** | 68:23 70:8,8 | 46:22 47:7 | **million** 20:13 |
| 20:16 25:1 | 82:9 | 66:5,16,16,18 | 38:5 62:7 |
| 56:21 57:2 | **lowenstein** | 66:21 67:10 | 64:16 66:9,17 |
| 86:6,8 91:25 | 4:11 8:10 | 68:4,8 69:22 | 66:18,18 71:24 |
| 92:1,9,14 93:2 | | 70:25 72:6,7 | 72:17 86:7 |
| 93:10,11 94:8 | **m** | 72:18 73:16 | 88:23 89:22 |
| 94:19 95:7,9 | | 78:11 80:5,8 | 95:19 |
| 96:11 97:17 | **m** 4:20 5:1 33:7 | **means** 27:7 | **millions** 65:24 |
| **little** 43:7 | 33:7 51:6 | 41:4 87:19 | **mind** 40:7 |
| 45:17 91:1 | **main** 4:4 | 91:5 | |
| | **making** 11:3 | | |
| | 67:9 70:17 | | |

| mine 67:10 | 52:3,5,19 | **n** | 85:9 86:10 |
|---|---|---|---|
| **mineola** 101:23 | 54:15 55:3,15 | **n** 3:1 6:1 7:1 | **nicole** 4:20 |
| **minimal** 55:20 | 56:16 65:7 | 46:19 100:1 | **nj** 4:5 |
| **minutes** 18:4 | 76:23 77:1 | 101:1 | **non** 34:19 |
| **misleading** | 78:21 79:23 | **name** 16:3,4,5 | 73:21 83:25 |
| 31:8 | 86:19,20,25 | 16:19,20,20 | **north** 4:3 |
| **misrepresent...** | 87:2,2 93:7 | 36:13 | **note** 12:10 20:3 |
| 34:8,19 | 97:23,24 100:5 | **names** 42:14 | 23:21 30:17 |
| **missing** 78:15 | 100:6 | **national** 54:10 | 31:24 32:6,11 |
| **misstatement** | **movant** 23:22 | **natural** 30:7 | 34:24 36:3 |
| 31:8 | 27:2,22 32:12 | **nature** 9:9 | 38:3 53:10 |
| **mister** 14:2 | 49:14 52:20 | **near** 69:14 | 55:2 59:8 |
| **modest** 83:17 | 53:1,15,20 | 71:21 | 61:22 62:4 |
| **modified** 84:12 | 54:24 55:5,13 | **necessarily** | 63:20 83:7 |
| **modify** 41:21 | 56:14 80:24 | 11:7 22:10 | 98:25 |
| **moment** 39:11 | 92:6 | 76:4 | **noted** 25:11 |
| **money** 26:13 | **movant's** | **necessitate** | 27:4,14,23,25 |
| 62:8 66:1 78:7 | 36:23 58:9 | 26:12 | 32:7 33:17 |
| **month** 19:19 | **movants** 3:11 | **necessity** 54:17 | 35:13 39:17 |
| 64:19 | 7:13,16 13:7 | **need** 32:14 | 41:23 50:13 |
| **months** 20:25 | 24:5,19 26:24 | 33:5 43:20 | 51:12 52:18 |
| 24:20 79:22,23 | 34:20 41:4 | 52:1 53:20 | 53:4,25 54:11 |
| 80:7,8 | 51:14 56:12 | 99:5 | 54:12,15 63:12 |
| **morning** 7:3 | 63:9 76:8 85:7 | **needed** 63:12 | 66:10 76:22 |
| 7:12,15,17,20 | 85:22,25 86:4 | **needs** 24:2 | 79:16 85:9 |
| 8:4,6,9,14,22 | 86:20 87:12,18 | 28:14 76:24 | **notes** 35:8 |
| 14:22 18:1,2 | 88:12 91:16,18 | **neglect** 31:9 | 89:16 96:24 |
| 23:7 24:18 | 91:23 92:7,16 | **negligent** 34:7 | **notice** 36:13 |
| 48:23 78:23 | 92:25 93:4,7,9 | 34:19 | **noting** 61:17 |
| **motion** 8:20,23 | 93:12,14,17,19 | **neither** 12:24 | 74:1 |
| 9:6,16 10:7 | 97:1,11 | 96:2 | **notion** 59:23 |
| 12:1,10,16,17 | **move** 14:7 | **nelson** 5:9 | 60:4 |
| 13:12 19:15 | **moved** 24:19 | **never** 45:19 | **notwithstand...** |
| 20:17,22 21:25 | **moves** 57:9,10 | 46:24 61:5 | 54:18 |
| 24:9 25:5,13 | **mumby** 86:18 | **new** 1:2,14 3:6 | **november** |
| 25:23 32:25 | | 3:13 4:14 | 19:19 20:9 |
| 49:22,23,24 | | 41:22 58:25 | 86:20 |

[number - page]                                                                      Page 21

| number 20:4 | obvious 59:11 | 9:2,20 10:2 | operation |
| 74:15,22 75:10 | obviously | 12:15,24 13:3 | 32:23 33:18 |
| 75:13,17,19 | 12:12 13:5 | 13:11,11 14:14 | opportunities |
| 76:2,5,21 77:3 | 14:5,6 47:16 | 14:17,23 15:1 | 42:2 |
| 86:11 91:20 | 47:20,21 57:6 | 15:5,9,14,17 | opportunity |
| numbers 19:9 | 57:19 59:12,13 | 15:18,23,23 | 14:5 59:13 |
| numerated | 97:2 98:22 | 16:11 17:4,12 | 82:8 |
| 62:18 | occur 69:19 | 17:19,22 18:12 | opposition |
| numerous 87:8 | 70:23 | 19:12,22 20:3 | 86:25 |
| nw 3:20 | occurred 43:12 | 20:22 21:4,11 | oral 24:9 |
| ny 1:14 3:6,13 | 44:21 | 21:18 22:14,17 | order 11:10 |
| 4:14 101:23 | ochs 27:14 | 23:16,19 24:8 | 24:21 26:3 |

| o | 39:16 50:18 | 24:17 28:10 | 41:3 42:13 |
| | 63:8 64:1 | 33:24 35:11 | 49:8,8 51:3 |
| o 1:21 7:1 30:4 | 93:20 | 37:2 38:9 39:6 | 91:9 95:14 |
| 101:1 | october 18:22 | 39:9 44:20 | 98:23,24 |
| o'donnell | 18:22 | 45:11 47:2,7 | orders 33:7 |
| 86:12 | office 15:13 | 48:18,24 56:17 | 53:2 |
| o's 57:23 | officer 25:19 | 57:5,17 58:6 | organizational |
| object 35:9 | 55:7 63:22 | 58:16,18,20 | 11:1 37:20 |
| 49:6 | 80:12 | 59:7,8 72:20 | 46:5 78:4 |
| objecting | officers 25:18 | 78:14,22 79:8 | outcome 90:7 |
| 22:18 | 27:11 28:1 | 79:11 81:15,19 | 98:2 |
| objection 8:23 | 30:7 36:1 37:7 | 99:4 | outset 51:12 |
| 9:7,21 23:9,15 | 37:8,15 38:22 | old 101:21 | outstanding |
| 42:4 56:15 | 38:23 39:1 | omission 31:8 | 18:6 |
| 87:1,3,5 | 42:17 46:1 | once 64:18 | overriding |
| objections 8:21 | 47:9 48:6 | 88:10 | 25:22 |
| 12:23 | 50:18 62:10 | ones 86:15 | overruled |
| obligated | 63:24 77:18 | ongoing 9:11 | 56:16 |
| 30:13 | 78:3 79:15 | 38:15 60:14 | oversight 52:1 |
| obligation 21:1 | 82:23 84:4 | 70:20 88:8 | owed 88:10 |
| 21:15 | 88:5 90:4 97:3 | 89:25 94:12 | |
| obligations | 97:9 | 95:11 96:12 | p |
| 61:24 62:2 | oh 22:22 | 98:6,11 | p 3:1,1 7:1 |
| observing 8:7 | okay 7:14 8:3,8 | open 33:6 | page 6:7 17:3,4 |
| obtain 51:8 | 8:13,17,18,24 | | 28:8 29:25 |
| 93:18 | | | 30:4,12,12,17 |

[page - peter]

30:18,23 31:6
34:3 36:5 40:3
41:23 58:11
64:1 100:4
**pages** 28:8
**paid** 10:7 19:6
19:14 22:11
31:17 38:12
41:8 44:14
45:4,6,6 56:9
61:7 63:24
64:19,19 66:14
66:17,19 71:13
77:8,10 79:2
89:5 90:18
93:16 96:18
97:20,21
**pan** 15:10,15
**papers** 9:4
25:13,24 32:11
35:18 53:25
54:5 66:25
81:3
**paragraph**
18:5,20 19:17
34:4,14,14
36:9,16 40:18
93:21 97:1
**parentheses**
28:25 29:6,13
**pareteum** 1:7
4:12 7:10 8:11
25:21 33:1
34:6 35:14,15
36:25
**paretrum**
64:16

**part** 22:3 31:2
37:8 66:9 67:4
78:8,18 88:20
**partial** 51:24
74:16
**partially** 65:4
**participate**
22:25
**participation**
31:20
**particular**
96:25
**parties** 12:18
13:6 14:10
27:24 37:7,10
41:10 52:16
60:5 69:20,21
71:7 72:7
73:21 75:7,18
76:21 77:4
86:11,18 87:8
89:8 92:4,11
92:13 93:6,24
95:5,7 97:15
**party** 12:24
22:18 50:14
90:22 97:19,20
98:12
**pass** 13:25
62:25 69:5
77:11 90:3
**passage** 72:25
**pay** 21:1,15
27:13 28:23
29:5,12 30:13
40:11,15,20
49:2 57:24

90:14 91:2
98:8
**payable** 89:5,6
**paying** 18:13
31:20 40:13,18
92:10 98:5
**payment** 10:10
25:24 26:5,7,9
28:16 33:12
40:10,24 41:6
41:16,17 42:16
42:24 44:14
50:12 51:9
56:3,5,7 60:25
62:6 78:9
82:16 85:10
88:7 89:15
91:9 96:1,10
97:13
**payment's** 41:8
**payments**
10:16 18:7,12
19:14 26:6
32:9 42:13
56:8,10 64:17
82:11,25 84:6
87:13,19 88:19
88:21,23 89:2
89:4 91:5,8
96:2,16,22
**payout** 89:13
**pending** 8:12
21:9 26:10
45:20 47:18
48:3 54:2,3
56:21 62:24
63:2,10 69:6

73:7,8 75:5
85:17 86:6,8,9
86:14,17 94:21
95:9 96:11
**people** 37:16
45:1 47:22
48:1 66:19
70:7
**percent** 33:3
**perfect** 15:23
**performed**
18:15
**period** 18:21
19:11,19 28:25
29:7,7,15,16
**permission**
45:16
**permit** 86:5
**permitted** 29:9
**person** 12:13
13:21 28:24
29:1,3,8,9 30:7
31:9 36:11,12
36:14,20,21
70:3
**personal** 55:14
**personally**
93:13
**persons** 30:4,6
61:15
**perspective**
84:10
**persuasive**
91:7
**peter** 3:23 5:2
8:4

[petition - potential]

Page 23

| petition 64:17 | pls 52:21 | 89:15,18,22 | 85:19 87:11,13 |
|---|---|---|---|

**petition** 64:17
65:11,11 75:16
77:25 78:2
**phase** 19:2
**piece** 71:2
**place** 57:7,9
76:24 77:1
**plaintiff** 8:11
50:7,14 53:6
84:8
**plaintiff's** 53:1
69:23
**plaintiffs** 33:9
33:9 49:16
50:25 55:19
57:15 80:24
81:10 82:1
95:1
**plaintive** 50:5
**plan** 33:10
53:4 57:7,13
65:21 71:3
80:23 83:9
87:16 90:12,18
90:20 92:2
93:3
**plans** 62:17
**plaza** 3:12 4:3
**plc** 3:18
**please** 7:7,9,11
9:3 15:4 16:3,4
16:18 17:3
28:7,9 36:5,8
59:18
**plenty** 75:6
77:24

**pls** 52:21
**plus** 47:24
86:15
**pm** 99:11
**pocket** 42:3
**podium** 13:12
16:10 24:12,13
**point** 38:7
42:12 44:15
47:3 54:6,23
59:4 70:20
71:8 78:17
80:10 81:3,6
**pointed** 50:1
50:19
**pointing** 60:25
**points** 68:22
78:24 81:18
82:7 94:9
**polices** 35:20
**policies** 10:25
11:11 24:22
25:20,25 26:1
27:6,8,10,24
27:25 28:3
29:19 31:18
38:14 41:18
42:11 45:5,18
53:17,18 56:2
60:16 63:5
64:17 65:3
66:2,18 68:19
72:23 75:25
79:4 83:3,11
85:24 86:1,3,5
87:20 88:7,11
88:20 89:1,3,9

89:15,18,22
90:5 91:6,22
92:10,20 93:1
93:8,12,25
94:8,16,24
95:18,23 96:4
96:7,10 97:12
98:5,16,19
**policy** 9:23
10:13 11:5,8
11:18 18:7
24:22 27:6,7
27:15,15,16,20
28:25 29:6,15
32:3 34:20
35:13 36:22
38:4,4,7 40:11
41:11,20 42:9
46:24 50:2,15
50:15,21 51:7
51:10 53:24
55:18,19 56:4
57:19,20 58:12
58:13,17 60:17
60:21,25 62:13
63:14,19,23
64:21,23 65:17
66:9 69:2 71:5
71:6,10,12,14
72:15,15 73:2
73:13,21 74:11
74:24 75:8
76:14,20 77:6
77:12 78:17
79:3,10,20
82:18 84:3,9
85:2,3,12,19

85:19 87:11,13
87:22,24 89:23
89:23 91:11,14
93:23 95:24
96:23 97:5
**pool** 78:9
**portion** 63:23
**posed** 76:12,13
94:10
**posited** 74:23
**position** 25:16
25:17 38:3
39:20 49:18
55:23 85:25
88:2
**possession**
50:22
**possibility**
10:22 12:4
19:9 44:15
**possible** 42:8
44:4 46:9,12
47:4 61:6
65:22 80:16
95:13,20
**possibly** 25:4
55:11 60:17
**posture** 9:19
**potential** 21:8
25:6 27:12,21
27:21 32:9,12
32:16,21,21
33:13 34:1
35:1 38:6
39:15,20,23
47:17 49:1,13
49:14,19 50:2

[potential - production]

50:3,16 52:1,5
54:1,24 55:9
55:12,17,24
80:2 81:10
87:13
**potentially**
25:2 39:18
43:11 49:2
53:24 74:19
77:20
**powers** 50:5,8
50:9
**practical** 52:10
**practice** 25:5
44:23 52:3
**pre** 64:17
75:16 77:25
78:2
**preclude** 50:12
97:23,24
**precluded**
87:15
**precludes** 84:3
**predominantly**
85:7
**prefer** 13:17
24:11
**preference**
93:23 94:1
95:23
**preferential**
96:4
**prejudice**
75:20 92:15
**prejudiced**
94:23

**premature**
89:13
**prepared** 9:5
19:23
**prepetition**
35:24 42:20
88:23
**present** 4:18
54:17,17 61:24
62:4
**presentation**
25:15 39:12,21
51:13
**presented** 18:6
**presenting** 9:8
**presumably**
38:23 57:8
**presume** 15:12
**prevail** 60:6
**prevent** 26:15
50:24 52:3
**previous** 25:23
39:12 55:7
**previously**
42:10 54:23
**primarily**
52:15 75:17
79:22 92:11
**primary** 94:15
**principally**
52:20
**prior** 26:10
41:14 44:24
70:5 79:4,10
**priorities** 41:1
49:19 73:23

**prioritization**
50:21
**prioritize**
26:11 49:12
54:24
**priority** 10:10
25:24 26:5
28:16 40:24
41:5,16,17
42:16,24 60:25
82:10,16,25
84:6 85:19
87:18 88:19,21
89:2,4 91:5,8
92:19 93:24
94:1 95:23
96:2,15
**private** 46:24
**privileges** 61:1
**probably** 9:16
67:13
**probative**
51:22
**problem** 12:25
13:21 16:13
65:2,19 67:1,4
82:6
**problems**
13:24 24:15
47:20
**proceed** 8:19
14:11 24:9
52:11 57:8
71:6 92:9
**proceeding**
30:1,2 48:7
75:11 76:22

92:17
**proceedings**
31:1 32:19
99:10 101:4
**proceeds** 11:11
24:21 28:2
31:17 39:18
40:25 41:6
42:15,19,22
44:19 49:2
50:21 51:1,17
52:14 53:15
55:4 56:12
60:22 62:11,12
63:14,17,22
64:21 69:2
71:5,6,10,14
73:3,13,19
74:11,24 75:8
76:14,20 77:6
77:12 78:17
82:15,19,21
83:11,15 85:3
85:19,24,25
86:3,5 87:10
87:13,20,21,23
88:19 89:9
91:5,11,14,21
92:9,19 93:18
93:23 94:16
95:18,24,25
96:15,17,20,23
97:6,8 98:16
98:19
**production**
36:20

**profess** 65:14
**proffered** 84:19
**prohibit** 51:9
**promise** 32:7
**promotion** 25:16
**promptly** 24:19
**proof** 34:3 47:23 90:21
**proofs** 37:18 47:11,25 88:4 90:5
**proper** 23:11 96:6
**properly** 16:9 73:3
**properties** 86:3
**property** 11:12 39:15 42:15,22 60:18,19 62:11 63:7,13,15 66:3 71:15 73:3 74:11 77:13 85:20,24 86:1 87:11,22 89:9 91:6,14 98:16 99:1
**propose** 14:11
**proposed** 56:22 84:19 91:17 92:2 94:7,14,24 95:13,17 96:9 96:22 97:16 98:20

**proposition** 59:23,24 67:23
**prospects** 68:1
**protect** 50:16
**protected** 50:20 97:5
**protecting** 63:25
**protects** 61:15 62:13 74:3 87:24
**provide** 8:25 20:1 27:10 41:25 65:17
**provided** 9:13 13:1,4 18:8 19:18,24,25 82:20
**provides** 83:4
**providing** 83:16
**provision** 25:25 26:5,10 36:22 39:25 40:2,23,25 41:16,17 42:13 42:16 44:17 45:10 56:1 79:19 82:20,25 83:4 88:19,21 89:2 91:5,8 96:2,16
**provisions** 25:24 26:3 34:16 37:12 41:13 42:25,25 56:2 61:2 78:4

82:16 89:4
**public** 46:10 46:11 73:13
**purchase** 46:19
**purely** 89:14
**purpose** 9:8 10:18 11:6 27:10 40:24 53:17 97:2,6
**purposes** 12:1 84:12 93:8
**pursuant** 22:12 25:19 34:15 40:13,19 41:21 53:2 71:11,12 84:8
**put** 7:7 10:6 14:8 23:10 25:17 33:6 36:3 39:25 44:22 55:16
**putative** 86:8 86:13
**putting** 60:4,8

**q**

**question** 10:3,9 12:17 21:21 22:5 28:13 31:13,14,22,22 44:20,22 52:15 53:17 69:18 71:25 72:14 76:12,13,13,16
**questions** 17:21 21:19 22:2 56:17

64:25 86:24
**quickly** 65:10 72:24
**quite** 59:21 66:21
**quote** 36:9
**quoting** 34:5 61:16

**r**

**r** 1:21 3:1 5:8 7:1 30:11 101:1
**race** 73:12
**races** 49:11
**raise** 15:4 81:18
**raised** 11:9 12:5 49:24 68:9
**raises** 65:15
**raising** 68:22
**range** 20:4
**rate** 66:13,21 68:24 88:6 97:15
**reach** 71:8 72:16 76:15
**reached** 24:23 65:12 86:6
**read** 9:4 10:10 12:11,13 34:9 37:12 40:23 43:23 47:8 65:7
**reading** 29:18 76:25

**[reads - representing]**

| | | | |
|---|---|---|---|
| **reads** 62:17 | **receiving** 83:9 | **referred** 85:9 | 52:8 69:1,1 |
| **ready** 76:21 | **recognize** 44:4 | **reflected** 76:22 | 74:15,18 83:21 |
| 77:2 | **recognized** | **regarding** | 84:13 85:22 |
| **real** 50:1 93:18 | 54:9 | 79:21 80:22 | 86:4 91:24 |
| **reality** 64:5 | **recognizing** | 94:7 | 92:6 94:20 |
| 65:20 69:8 | 65:23 | **regardless** | **relieve** 92:24 |
| **realize** 44:2 | **record** 7:7,9 | 11:18 66:12 | **rella** 5:10 |
| **realized** 23:5 | 10:5 12:11,14 | 67:21 | **rely** 28:2 |
| **really** 11:23 | 14:8,10 16:3,4 | **regards** 55:8 | **remain** 79:1 |
| 28:13 39:21 | 16:9,18 21:21 | **regulating** | **remaining** |
| 44:25 46:13 | 21:24 23:14,21 | 51:9 | 40:14,20 66:9 |
| 65:2 66:19 | 23:24 24:3,19 | **regulation** | 75:7 76:20 |
| 67:6 70:11 | 28:23 35:6 | 31:3 | 83:11,15 89:21 |
| 71:17,25 82:5 | 81:13 99:2 | **regulatory** | 89:24 93:2 |
| 83:1,2,13,23 | 101:4 | 31:1 32:19 | 95:18 |
| 90:23 | **recording** | 36:10,18 | **remains** 53:14 |
| **reason** 12:6 | 24:16 | **reimbursement** | **remember** |
| 35:19 43:12 | **recourse** 30:20 | 9:25 11:21 | 43:25 |
| 57:8 58:23 | **recoveries** | 40:17 64:10,14 | **remote** 26:23 |
| **reasonable** | 95:20 | 91:3 | 33:13 38:13 |
| 10:22 11:13 | **recovery** 49:3 | **reinforce** 72:22 | 87:15 88:3,17 |
| 18:16 | 50:17 83:14,17 | **rejected** 49:20 | 90:8,13 91:13 |
| **reasonableness** | 93:19 94:15 | 50:12 | **remove** 88:19 |
| 19:1 21:2,14 | **recross** 6:3 | **relate** 75:4 | **repeatedly** |
| 22:12 | 14:6 | **related** 64:15 | 63:9 |
| **reasons** 12:3 | **redirect** 6:3 | **relates** 68:24 | **reply** 86:21 |
| 25:14 78:20 | 14:5 21:19 | **relating** 70:18 | **report** 55:6 |
| 84:11 98:15,24 | 22:4,7 | 72:14 85:10 | **reporting** 29:1 |
| 99:2 | **reduced** 19:10 | 90:16 96:11 | 29:7,15 |
| **rebuttal** 23:25 | **reduction** 19:7 | **relatively** 80:6 | **representations** |
| **receive** 33:10 | **refer** 32:4 | 97:14 | 35:16 |
| 33:12 44:13 | 55:25 | **released** 44:6 | **represented** |
| 53:3 55:19 | **reference** | **relevant** 10:16 | 81:11 86:12 |
| 83:18 90:19 | 18:21 19:18 | 11:25 51:22,23 | **representing** |
| 95:1 96:16 | **referenced** | 83:2 | 20:15 21:7 |
| **received** 64:16 | 61:14 68:24 | **relief** 24:20 | 72:9 |
| 88:22 | | 51:4,8,23,24 | |

[request - sabella]

**request** 11:7 28:6 36:18 50:24 61:19 78:20 91:16 92:25
**requested** 13:7 13:8 84:12 91:24 94:20
**requesting** 83:22
**requests** 9:9 95:25
**require** 25:3,4 25:5 43:10 71:14
**required** 29:9 47:25 89:14
**requirements** 47:21
**requires** 51:7 63:12 73:2
**reserve** 43:18 43:20 44:8 58:13 62:7
**reserved** 60:18 89:15
**reserves** 67:19
**reserving** 65:18
**resolution** 51:24 52:25 68:1,4,6,19 71:8 74:16,17 76:7 91:25 92:3,22
**resolve** 53:15 53:16 75:3

92:23 94:7,10 94:12 95:6,9 95:13 97:17
**resolved** 32:12 51:25 52:23 57:2 75:6
**resolves** 95:11
**resource** 27:12
**resources** 52:22
**respect** 12:16 36:17 48:13 56:20 57:6,18 90:11 91:9,25 92:2,4 93:5 95:4,7,23 97:16 99:5
**respectfully** 78:20
**respond** 81:20 84:14
**response** 59:14
**responsibility** 75:14 94:21
**responsible** 18:13
**rest** 25:8
**restatement** 47:21
**result** 32:15 33:13 51:24 52:6,12 73:1,2 74:15 83:2 91:24 96:5 97:18,25 98:1 98:6

**resulted** 25:10
**results** 46:2
**retain** 85:2
**review** 9:14 18:15 19:2,4,9 21:2,14 22:12 32:2
**reviewed** 19:1 89:1,7 90:2,21
**revision** 28:17
**rewritten** 73:17
**right** 7:19 8:18 11:24 12:9,15 12:16,24 13:3 13:11 14:17 15:4,21,24 17:14,16,19 19:2,4 22:2,6 22:14,17 23:16 23:20 24:8 34:12 39:6 41:14 45:11 48:1,10,12,24 49:16 55:21 57:5,14,17 59:1,9,11 60:11 62:24 63:4 64:8,20 72:20 73:16 77:23 80:14 81:4,22 82:12 92:18 95:16 96:4 99:4
**rightly** 50:1
**rights** 25:17 27:24 35:1,3

37:15 41:12,19 41:20,21 42:19 50:6 54:18 63:3 85:1
**rigorous** 25:1,2
**rise** 7:2 27:19 34:10
**road** 60:20 101:21
**rockefeller** 3:12
**role** 97:4
**roles** 25:21
**room** 15:11,12 60:7 81:1
**ropes** 3:3 8:15
**rose** 4:25
**rule** 31:4 69:1
**ruled** 91:7
**rules** 10:10
**ruling** 71:14
**rulings** 100:3
**run** 66:12,13 66:21 97:14

**s**

**s** 3:1 4:16 5:5 7:1
**s.d.n.y.** 88:1 89:12
**sabby** 3:4 8:15 33:9 86:16
**sabella** 3:15 7:12 8:21,22 8:23,25 9:20 9:21 10:2,4 12:8,21,22,22 13:2,11,13,14

[sabella - settlement]

Page 28

| | | | |
|---|---|---|---|
| 14:12,15 15:24 | **sandler** 4:11 | 58:19 | 93:24 |
| 15:25 16:2,8 | 8:10 | **section** 2:2 | **seeks** 25:16 |
| 16:11,13,15 | **sante** 86:15 | 29:22 30:24 | **seen** 9:22 33:4 |
| 17:12,13 22:1 | **satisfied** 95:15 | 31:6 32:17 | 45:8,19 55:7 |
| 22:4,8,14,16 | **satisfying** | 33:18 40:3 | **sentence** 34:15 |
| 22:21 23:3,4 | 77:12 | 51:6 87:16 | **separate** 47:3,4 |
| 23:14 24:4,4,9 | **saying** 25:13 | 88:14 90:12 | **separately** |
| 24:11,14,17,18 | 37:6 42:6 | 93:3 | 34:24 |
| 28:19 30:6 | 44:12 46:11 | **securities** 8:12 | **september** |
| 33:25 34:13 | 51:1 66:23 | 29:13 32:17,18 | 18:9 79:23 |
| 35:8 36:8 37:4 | 67:6 69:12 | 32:21 33:8,21 | **serve** 25:21 |
| 37:5,25 38:2 | 70:11 72:18 | 34:1,3,20 | 28:3 |
| 38:20 39:4,7,8 | 74:2 | 40:21 45:20,20 | **served** 97:3 |
| 39:10 40:5,8 | **says** 28:22 | 45:21 46:3,8 | **service** 30:2 |
| 43:2,4,14 | 30:15 57:22 | 46:10,19,20 | **serviced** 36:11 |
| 44:11 45:9,12 | 58:2 61:22 | 47:10 48:3 | **services** 18:8 |
| 45:15 48:21,23 | 73:17 97:5 | 61:15 62:18,21 | **session** 7:4 |
| 56:18,19 57:4 | **scenario** 72:23 | 69:22 73:18 | **set** 25:2 43:10 |
| 57:15 58:4,7 | **schedule** 25:1 | 79:19 86:9,13 | 99:2 |
| 59:2,6,10,12 | **schedules** 25:2 | 88:16 90:11,16 | **seth** 5:4 |
| 59:15 78:22,23 | **scheme** 71:12 | 90:19 94:11 | **sets** 56:2 |
| 78:24 79:6,9 | 79:6,12 85:19 | **security** 29:11 | **settle** 25:18 |
| 79:12 80:4,11 | **schotz** 4:1 7:18 | 30:23,24,24 | 65:12 73:18 |
| 80:17 81:17,20 | 7:22,23 | 33:16 35:13 | 84:1,5,25 |
| 81:24 86:12,22 | **scope** 9:10 | 50:25 | 97:10 |
| 98:21 99:7,7 | 27:24 | **see** 8:20 9:17 | **settled** 20:17 |
| **sabella's** 9:7,16 | **screen** 23:4 | 12:13 14:23,24 | 32:14 51:25 |
| 81:25 83:21 | 28:11 | 15:11,15 17:5 | 56:21,22 68:15 |
| **saccullo** 5:1 | **seal** 8:20 10:19 | 18:10,22 19:20 | 68:25 98:7,10 |
| 8:2 23:18 | 10:19 11:4 | 20:7,25 21:4 | **settlement** |
| 38:19 59:11,20 | 12:1,10 90:2 | 31:25 65:8 | 19:13 20:23 |
| 87:1,2,5,5 | **sealed** 12:12 | 70:13,23 | 21:9,11,22 |
| **saccullo's** | **sealing** 100:5 | **seek** 12:7 86:4 | 24:23 25:10,16 |
| 35:17 38:12 | **seated** 7:3 | **seeking** 24:20 | 27:21 31:12,14 |
| 72:8 80:6 | **second** 14:19 | 42:4 49:12 | 31:21 32:11 |
| **sale** 45:22 | 37:3 40:13 | 50:24 51:14 | 38:5 42:2,8 |
| 46:18,20 | 43:3,6,9 58:5 | 68:25 85:22 | 49:2,7,8 51:1 |

[settlement - stack]                                                           Page 29

| | | | |
|---|---|---|---|
| 53:16,22 54:13 55:4,21 57:18 57:21,21,25 58:1,12 59:4 60:1,22 65:13 65:16,22,25 66:1 67:19,24 69:17,25 70:7 70:13 71:17,19 72:16,24 75:2 75:25 76:15,23 79:2,21 80:22 82:2 83:13,16 85:4 **settlement's** 66:7 **settlements** 30:16 65:2 66:7 67:8 86:6 89:21 91:18,22 92:3,8,15,23 94:7,10,14,24 95:6,8,13,17 96:9,22 97:12 97:17,25 98:1 98:6,20 **settling** 50:25 **seven** 71:23 75:19 **share** 9:18 28:11 **shareholder** 4:12 94:25 **short** 97:14 **show** 9:9 10:20 **side** 38:4 46:21 46:22 53:24 | 57:19,22,24 58:13 60:18 64:10 65:18,24 66:6,6,7 68:22 69:4 79:1 84:8 84:8 89:23 **sides** 89:8 96:8 96:25 **signature** 14:1 17:5,7,8 101:7 **signed** 15:20 **significance** 80:10 **significant** 60:23 69:19 71:2 89:17 93:11 97:18 **similar** 30:2 36:19 41:16 51:4 **simple** 9:7 64:2 **simply** 26:17 51:2 83:3 **single** 64:15 **sit** 19:5 63:2 69:24 70:3,6 70:10 **situation** 26:15 42:7 44:3 45:19 61:17 62:3,4 80:24 81:1 **situations** 63:21 **six** 75:17 **sixth** 34:3 | **skadden** 21:4 22:9 **skip** 23:12 28:8 28:24 29:6,13 76:5 **skis** 54:6 **small** 66:14 **smart** 69:23 **smoky** 81:1 **sn** 61:11,16 62:9 63:6 74:1 82:9 85:17 **solely** 36:17 **solutions** 101:20 **somebody** 48:8 **someday** 48:8 **sonnax** 26:25 51:12,13 56:13 64:24 74:7,12 78:19 83:19 91:19 93:4 94:4 95:3,14 98:17 **sonya** 2:25 101:3,8 **soon** 89:24 **sorry** 10:11 14:19,21 15:16 16:8,12 22:22 22:23 23:3 24:16 39:6 43:2 44:21,22 48:21 59:12,12 59:16 67:2 68:17 69:8 71:23 72:20 | 74:9,9 80:4 81:5 **sort** 73:4 **sought** 49:21 **source** 49:3 54:7 83:13 93:18 94:15 **sources** 52:13 **southern** 1:2 86:9 **speak** 28:22 81:13,16 82:8 **speaking** 7:8 23:6 **speaks** 65:5 **specialty** 41:18 41:20 **specific** 58:1 95:4 **specifically** 12:3 49:5 56:2 65:13 91:19,23 93:20 **specter** 39:14 **speculative** 26:24 33:14 52:12 61:18 87:15 88:3,17 90:8,13 91:13 **spend** 11:23 52:21 **spent** 27:8 78:7 **sperduto** 3:18 **spinning** 60:3 **stab** 59:22 **stack** 79:5 |

[stand - take]

| | | | |
|---|---|---|---|
| **stand** 23:11 | 68:25 69:1 | 51:23 56:12 | **suing** 50:14 |
| **standard** 82:15 | 71:4,6 72:13 | 64:18 98:22 | **suite** 101:22 |
| **standing** 45:14 | 73:20 74:3,13 | **submits** 22:10 | **sum** 38:4 |
| 79:7 | 76:9,18,19 | **submitted** 19:3 | **summary** |
| **star** 39:21 | 77:4,16 78:18 | 19:10 20:25 | 31:21 |
| **start** 32:20 | 78:19 84:11 | 21:13 32:1 | **summer** 24:24 |
| 64:7,24 | 85:20,23 86:4 | 33:12 35:2 | 25:10 80:21 |
| **started** 29:17 | 91:17,21 93:5 | 37:19 47:8 | **super** 50:5 |
| **starting** 29:24 | 96:14,21 98:19 | 80:9,15 86:21 | **superior** 86:14 |
| 59:22 | 99:1 100:6 | 87:4,8 96:1 | **supplemental** |
| **state** 11:2 16:3 | **stayed** 32:23 | **submitting** | 86:21 87:3 |
| 16:19 37:21 | 33:3 52:16 | 64:7 | 93:21 94:5 |
| 46:5 78:4 82:5 | 69:21 92:1,14 | **subordinated** | **support** 9:15 |
| 94:3 | **stipulations** | 33:8,17 53:2 | 49:17 87:3,5 |
| **stated** 74:18 | 65:7 | 62:24 88:14 | **suppose** 84:19 |
| **statement** 31:9 | **stock** 45:22 | 93:3,15 | **sure** 10:16 |
| **statement's** | **stood** 12:21 | **subordination** | 13:17 22:6 |
| 63:13 | **stop** 43:3 55:15 | 33:16 76:3 | 38:11,16,18,24 |
| **states** 1:1,12 | **stops** 60:2 | **subparagraph** | 46:25 48:1,14 |
| 18:5 | **street** 3:20 4:4 | 40:14 | 58:6 62:7 |
| **statute** 31:4 | **strong** 50:8 | **subparagraphs** | 68:10 69:14 |
| 33:19 | **structure** | 40:19 | 70:9 78:14 |
| **statutes** 38:24 | 65:25 | **subpart** 30:4 | 97:3 |
| **statutorily** | **structured** | 30:11 36:9,17 | **surprise** 71:1 |
| 93:15 | 65:23 | **subpoena** 9:8 | **surprisingly** |
| **stay** 2:1 12:17 | **struggling** | 9:13,25 35:12 | 28:15 |
| 21:23 24:21 | 70:22 | 35:16 36:15,18 | **swear** 13:18 |
| 27:1 30:12 | **subject** 14:2 | 66:23 69:13 | 15:5 |
| 32:24 33:1 | 17:16 20:17 | 90:2 | **switching** |
| 41:24 49:9,24 | 21:1,13 25:1 | **subpoenas** | 64:24 |
| 51:8 52:19 | 35:20 37:8 | 80:19 | |
| 53:10,14 54:15 | 86:23 87:6 | **sued** 38:25 | **t** |
| 54:16 56:13 | **submission** | 39:2 46:6 | |
| 57:6,9,10 | 64:12 | **suffer** 42:2 | **t** 33:22 101:1,1 |
| 59:25 60:2,5 | **submit** 16:23 | 54:20 | **tabbed** 28:16 |
| 60:10,16 64:6 | 25:8 34:20 | **sufficient** | **tackle** 74:13 |
| 67:7,11,24,25 | 35:19 39:13 | 74:13 | **take** 8:19 9:5 |
| | | | 13:19 18:4,20 |
| | | | 19:17 41:2 |

**[take - true]**

| | | | |
|---|---|---|---|
| 59:22 60:8,21 61:10 66:16 71:17 76:24 | **thank** 8:8,13 8:17 9:3 13:13 14:25 15:25 | 78:17,18,25 80:8 83:19 85:6 | 45:2,5,7,18 69:3,9 71:7,11 72:25 79:24 |
| **taken** 55:11 | 16:14,17 17:11 | **thinking** 60:6 | 97:14 |
| **takes** 23:23 88:2 | 17:12,13,22,23 18:1,3 19:12 | 65:15 **third** 40:18 | **today** 8:19 19:5 20:18 |
| **talk** 39:11,22 78:9 | 22:13,19,23 23:2 38:9 40:8 | 50:14 52:16 75:18 92:11,12 | 21:9 22:24,25 25:12 26:16 |
| **talked** 25:23 25:23 74:17 | 48:19,20 58:18 59:9,10,15,18 | 97:19,20 **thomas** 5:11 | 46:15 47:6 53:9,19 63:2 |
| 76:12 82:9,14 | 78:22 81:24,25 85:21 98:21 | **thompson** 3:18 3:23 5:2 8:4,5 | 72:4 74:6 86:23 87:6 |
| **talking** 28:17 45:20 | **thing** 12:15 13:24 25:22 | 8:8 **thought** 8:18 | 90:15 99:5 **total** 30:12 |
| **teach** 29:20 **tech** 50:10 | 29:20 72:5,12 78:25 83:7 | 12:15 29:18 **threaten** 63:16 | **totaled** 18:9 **traditionally** |
| **telephonically** 4:18 | **things** 12:21 66:11 70:3 | **three** 13:5 24:25 28:8 | 84:21 **tranche** 74:19 |
| **tell** 23:24 29:19 **telling** 38:14 | 75:4 **think** 10:11,18 | 47:24 56:21 68:16 75:10 | **transaction** 62:19 |
| 65:21 85:6 **tells** 16:9 | 11:3,5,16,16 11:24 12:2 | 86:6,8 91:17 91:22,25 92:8 | **transactions** 64:15 |
| **ten** 76:5 88:3 **tenants** 95:2 | 23:23 24:15 28:17 29:21,22 | 92:8,13,23 93:10 94:7,8,9 | **transcribed** 2:25 |
| **term** 71:22 **terms** 9:23 | 35:10 37:14 43:5,7,11,16 | 94:19,24 95:6 95:6,8,12,17 | **transcript** 101:4 |
| 25:19 26:20 27:5 34:16 | 43:17,23 44:3 47:9 48:2,21 | 96:22 97:17,23 97:24,25 | **transfer** 46:7 **treated** 71:15 |
| 38:12 41:11 53:18 55:21 | 48:25 53:11 59:22 61:10 | **throw** 49:7 **thwart** 25:16 | **treatment** 74:5 **trentin** 4:8 5:3 |
| 56:4 71:11 87:16 96:6 | 64:12 65:5,6 65:15,20 66:5 | 25:16 **tier** 29:4 | 7:20,21 9:3 **trial** 25:2,6 |
| **testify** 22:24 **testifying** 8:6 | 66:22,24 67:13 69:7,18 70:2 | **tiers** 27:16 **time** 9:6 11:24 | 76:21 77:2 **triggered** |
| **testimony** 14:3 15:5 23:11,25 | 71:16,18,20 73:2,14 74:1 | 18:1 19:8,11 22:25 41:3 | 11:15 63:5,11 **true** 57:7 73:12 |
| 55:3 84:20 | 74:10,12 77:14 | 43:24 44:5 | 80:11,14 92:13 |

**[true - viewing]**

| | | | |
|---|---|---|---|
| 95:8 101:4 | 92:17 93:18,22 | **unambiguous** 83:1 | **unknown** 55:14 |
| **trust** 7:18 9:11 9:24 24:6 25:13 27:3 32:20,21 34:22 35:2,8 36:25 42:21 49:3,6 49:12 51:8,16 52:10,12 54:20 63:3 71:2 75:22 77:5,9 77:11 79:3 80:1 81:3 87:1 87:19 90:20 | **trustees** 50:24 51:6 72:10 **truth** 15:6,7,7 **trying** 10:11,20 19:8 38:10 55:15 67:17 68:17 83:24 84:25 **tunon** 86:16 **turn** 13:11 15:24 17:3 28:6,7 29:25 30:3,4,10,23 36:5,16 51:11 74:7 | **unavailable** 94:16 **uncertainty** 55:17 **unclear** 76:24 **undermine** 53:18 **understand** 8:6 9:16 10:9 10:14 37:5 38:10 45:11 54:7 57:18 58:8,20 67:17 68:17 71:16 80:2,15 84:22 | **unliquidated** 78:6 **unpack** 59:21 **unsecured** 27:13 33:11 53:5 54:22 75:22 77:19 78:6,6,9,10 90:17 93:19 94:23 95:20 96:3 98:3 **urge** 83:20 84:13 |
| **trust's** 25:15 35:11 48:24 49:1,19 54:23 | **turner** 86:12 **turning** 32:16 35:11 | **understanding** 20:19,24 21:10 21:13 22:20 | **use** 44:18 49:1 53:15 83:14 **uses** 65:25 |
| **trustee** 4:2 7:21,24 8:2 10:6,20 13:9 25:17 42:18 49:24 50:4,12 50:13,19,22 51:3 59:20 80:7 82:5 83:24 86:25 87:21 88:2,6 88:12,15,18 89:20 92:18 94:2,4,6,9,18 94:22 95:10,16 95:22 96:3 98:2 99:9 | **turns** 34:2 55:10 **twelve** 77:3 **twists** 55:10 **two** 23:20 27:16 29:20 40:12 43:6 56:17 65:1 68:2 71:10 74:22 80:7,8 **type** 54:8 66:8 82:15 **types** 91:10 | 23:6 32:5 48:2 56:23 57:4 **understood** 12:8 35:7 48:20 73:25 **underwriter** 79:17 **undone** 55:4 **unfair** 96:5 **unfettered** 84:7 **unfortunately** 67:4 69:7 | **usually** 13:17 21:18 47:16 **utilized** 91:22 |
| | | | **v** |
| | | | **v** 27:14 39:16 50:18 63:8 93:21 **van** 5:4 8:1 86:15 **various** 18:8 24:22 86:18 **verbal** 8:23 **verify** 13:25 **veritext** 101:20 **viable** 53:22 **view** 51:21,22 51:22 89:20 **viewing** 64:15 |
| **trustee's** 31:23 31:25 32:1 33:22,25 39:13 42:3 50:16 | **u** | 70:14 73:11 **unique** 73:14 **united** 1:1,12 | |
| | **u.s.** 1:23 **uday** 5:6 **ultimately** 44:6 82:2 | | |

**violation** 31:3 51:6
**violations** 45:21
**virtue** 57:20,20
**vis** 92:14,14
**vogue** 82:17
**volatility** 3:4 8:15 86:17
**volumes** 65:5

**w**

**waiting** 39:22
**want** 9:5 11:23 12:20 13:21 23:10 34:24,25 35:5 54:5 55:2 64:23 80:4
**wanted** 21:20 59:7
**wants** 53:7
**warrant** 3:4 8:15 86:17
**washington** 3:21
**wasting** 27:7
**water** 85:13
**waterfall** 41:1
**way** 8:19 44:22 48:8 65:23 67:2 69:10,22 70:20 72:1 76:16 82:19 83:12 91:7
**we've** 9:14 53:8 60:18 66:16 74:10,16 77:5 78:17

83:10 85:6
**week** 49:5
**weekend** 43:24
**weeks** 80:9,20
**weigh** 27:2 45:17 51:19
**weighs** 94:20
**weinstein** 5:5 8:1 23:18 35:17 87:4,6
**welch** 4:7 7:17 7:25 12:6 13:14 14:3 17:14,18,20,23 17:25 21:17 22:19 23:6,19 24:6,6 59:13 59:18,19 65:5 67:22 68:21 70:25 72:19,22 73:25 74:10 77:20,23 78:13 78:16 81:4,9 81:20 82:9,14 84:14,15,18,24 87:4 99:8,8
**welch's** 10:19
**welsh** 7:18
**went** 39:19 80:6
**wesco** 3:19 8:5 16:22 18:6,7 18:12,15 19:1 19:7,18 20:24 21:13
**white** 59:24 85:11

**willing** 81:12
**winddown** 80:12
**windfall** 95:1
**wiped** 83:9
**wish** 45:12
**withdraw** 82:3
**withdrawn** 63:1 75:2
**withstanding** 73:20
**witness** 13:14 13:18,25 14:4 15:8,13,17,19 15:22 17:16,22 23:2,11
**witnesses** 6:3 22:15 23:22
**wondering** 45:8
**word** 98:23
**words** 11:14 57:23
**work** 60:7 66:25
**worked** 20:1
**working** 75:21
**world** 59:25 60:2 67:22 68:5
**worn** 38:7
**worry** 84:22
**worth** 64:17 74:1 82:1,4
**wrap** 76:9
**write** 47:23

**writing** 48:1
**written** 36:12 48:4
**wrong** 64:9
**wrongful** 29:2 29:8,16 30:14 31:6,7
**wynn** 85:8

**x**

**x** 1:4,10 6:1 100:1
**xl** 27:15

**y**

**y** 30:24 32:18
**yeah** 23:5 24:17 57:5,17 59:6 69:7 77:24 81:22 84:22
**year** 15:3 65:10
**years** 47:24 70:6 82:16
**york** 1:2,14 3:6 3:13 4:14 41:22 85:9 86:10
**yvonne** 16:5,20

**z**

**zoom** 7:5 28:14

**à**

**à** 92:14