# EXHIBIT K

**K S F**

**KAHN SWICK & FOTI, LLC**

250 Park Avenue, 7ᵗʰ Floor
New York, NY 10177

TEL +1 504.455.1400
FAX +1 504.455.1498
KSFcounsel.com

Kim E. Miller
Partner – Admitted in NY & CA
Direct: 212.696.3730
kim.miller@ksfcounsel.com

NEW ORLEANS

**NEW YORK**

NEW JERSEY

SAN FRANCISCO

January 25, 2023

*via e-mail*

Mr. David M. Murphy
Phillips ADR Enterprises, P.C.
120 Rowayton Avenue
Rowayton, CT 6853
dmurphy@phillipsadr.com

Re:   ***In re Pareteum Securities Litigation*, 1:19cv9767 (S.D.N.Y.)**

Dear David:

On behalf of Lead Plaintiff in the above-referenced federal class action, lead counsel Kahn Swick & Foti, LLC ("Lead Counsel") has determined, in the exercise of its discretion, that any fee for Counsel for Loskot should be $66,000 at the most. Counsel for Plaintiff Sabby joins in this determination.[1]

Lead Counsel has calculated this fee award by multiplying Counsel for Loskot's lodestar by *half* of the multiplier Lead Counsel intends to submit to Judge Hellerstein for approval in the federal class action. By way of example, if Lead Counsel's requested fee award of 30% of the Settlement ($1.567 million) is granted by the Court, this would represent a negative multiplier of 0.44 on its lodestar of approximately $3.5 million. In turn, Counsel for Loskot's fee on its claimed lodestar of $300,000[2] would be no greater than $66,000 (0.22 x $300,000). In the event that Judge

_____

[1] Pursuant to an agreement between Lead Counsel and Counsel for Sabby, 70% of any fees awarded to Counsel for Loskot will be paid out of Lead Counsel's fee award and 30% will be paid by Plaintiff Sabby. Lead Counsel was surprised to receive an email from Chris Nelson on November 1 asking for a copy of the Sabby settlement agreement so that he could reference it in his fee submission.  That private settlement agreement is irrelevant to the Loskot fee analysis. Plaintiff Sabby had standing for his claims and sought $16 million in damages for his Section 11 claims.  Had that case not settled -- as discussed at the preliminary approval hearing -- Sabby could and would have opted out of the federal class action, and any proposed settlement would have been blown.

[2] The Stipulation provides that "Lead Counsel will apply to the Court for a collective award of attorneys' fees, which shall incorporate attorneys' fees and expenses for Counsel for Loskot…," and defines "Counsel for Loskot" as The Weiser Law Firm. Because Chris Nelson (of The Weiser Law Firm) indicated its $300,000 lodestar figure includes time for its co-counsel which is not covered by the agreement, Lead Counsel asked Chris by email on November 1 to confirm the



David M. Murphy                              -2-                         January 25, 2023

Hellerstein approves a lower multiplier than requested by Lead Counsel, then Counsel for Loskot's fee should be reduced by the same proportion. Such an award is commensurate with the relatively low damages for Loskot (approximately 3.4% of total damages),[3] the minimal amount of work done by Counsel for Loskot, and the lack of any meaningful value provided by Loskot to the Class. It is also exceedingly generous given that it does not discount for the fact that Loskot is not a part of the settlement between Defendant Squar Milner and Lead Plaintiff and should therefore get no credit for that.[4]

Loskot filed a complaint containing merely copycat claims of the iPass claims in the federal class action, adding a few Individual Defendants (who had already been sued by Lead Plaintiff in an earlier iteration of the complaint) and who are covered by the same D&O insurance policy as the other Individual Defendants.  The Loskot complaint includes no additional facts or claims, the Loskot class is entirely subsumed by the Class in the federal class action, and the overlapping claims in the Loskot Action are very small compared to the total damages in the federal class action. Minimal discovery was conducted in the Loskot Action[5] and Loskot did not move for class certification.  Further, the Loskot Defendants made the same factual and legal arguments in support of their motion to dismiss as were made in the federal class action, and Loskot had the benefit of Lead Plaintiff's opposition briefing.  And before the court in Loskot ruled on the motion to dismiss (or even held a hearing on it), the parties in the Loskot Action filed a joint stipulation to stay the

---

portion of the $300,000 lodestar that was attributable solely to The Weiser Law Firm, but he did not provide it.

[3] Lead Plaintiff's damages consultant estimates damages of approximately $263.2 million for the Section 10(b) claims and $15.9 million for the Section 11 claims (a maximum of $9.5 million at the most for iPass), for a total of $279.1 million. Thus, using the maximum Section 11 iPass damages, and disregarding the substantial overlap with the Section 10(b) damages, Loskot's case relates to 3.4% of total damages ($279 million / $9.5 million) – all of which was already covered in the federal class action.

[4] The total settlement is $ 5.65 million (excluding $100,000 being paid in addition by the Individual Defendants towards notice costs), comprised of $5.25 million from the Individual Defendants and $400,000 (7% of the total) from Squar Milner, which is not a defendant in the Loskot case. Lead Counsel could have reasonably discounted the proposed Loskot fee award by an additional 7% based on the portion of Lead Plaintiff's settlement with Squar Milner – which benefit was in no way attributable to Loskot Counsel –resulting in a proposed maximum award to Loskot of $61,380 ($66,000 - $4,120).  However, in the interests of simplicity and efficiency we do not seek that discount at this time.

[5] It is Lead Plaintiff's understanding that Loskot propounded one set of document requests on Defendants, and the case was stayed before documents were produced or any other discovery took place.



David M. Murphy                         -3-                    January 25, 2023

case and, through a series of subsequent stipulations, the case has been stayed continuously since December 16, 2020.

Conversely, Lead Counsel here conducted independent investigation; researched and drafted two amended complaints and defeated defendants' motions to dismiss the First Amended Complaint after extensive oral argument; conducted substantial discovery, including reviewing nearly half a million pages of documents, propounding and responding to multiple requests for production, interrogatories, and requests for admission, issuing several third-party subpoenas for documents, and preparing for multiple depositions; briefed and filed a motion for class certification supported by an expert report on market efficiency and damages; and prepared all settlement-related documents and filings. Moreover, Lead Counsel covered all litigation expenses, which were substantial, including over $60,000 for the damages expert and over $200,000 for bankruptcy counsel.

It is telling that Counsel for Loskot failed to share its lodestar until the night before the preliminary approval hearing – after Lead Counsel, having done its homework, pointed out that any fee split would be addressed at preliminary approval. Despite several questions from the Court about the Loskot case at the preliminary approval hearing, Lead Counsel had to inform Judge Hellerstein when he asked if anyone was appearing on behalf of Loskot that the answer was no. Instead, Counsel for Loskot abdicated to Lead Counsel responsibility for explaining the proposal and addressing the Court's questions.

The Second Circuit has held that there is a standard of deference, or a rebuttable presumption of correctness, to Lead Counsel's determination of whether, and to what extent, to compensate non-lead counsel. *See Flanagan, Lieberman, Hoffman & Swaim v. Ohio Pub. Empls. Ret. Sys.*, 814 F.3d 652, 658 (2d Cir. 2016) (citing *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 199 (3d Cir. 2005)). Lead Counsel, in the exercise of its discretion, has determined that Counsel for Loskot should get no more than its lodestar at one-half of the multiplier awarded to Lead Counsel by the Court. Lead Counsel did all the work and undertook all the risk, including retaining an economist who provided a supporting declaration for Lead Plaintiff's motion for class certification, and Loskot created no meaningful benefit for the class. *See Victor v. Argent Classic Convertible Arbitrage Fund LP*, 623 F.3d 82, 87 (2d Cir. 2010) ("when a *substantial benefit* has been conferred on the class, non-lead counsel are entitled to reasonable compensation") (emphasis added); *In re Initial Pub. Offering Sec. Litig.*, 2011 U.S. Dist. LEXIS 76067, at *37-38 (S.D.N.Y. 2011) (awarding higher lodestar multiplier to firms that assumed higher level of risk); *cf. In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1206 (N.D. Ill. 1989) (finding it would be "unfair" to award the same multiplier "where, as here, the amount of work done and risk undertaken by lead counsel is disproportionately high, and the results in the litigation are largely attributable to lead counsel's efforts").



David M. Murphy                    -4-                    January 25, 2023

Lead Counsel respectfully requests that the mediator approve its determination that Counsel for Loskot be awarded $66,000, maximum, in attorneys' fees, subject to a proportional downward adjustment in the event that Judge Hellerstein awards Lead Counsel less than its requested fee award.


                              Respectfully submitted,

                              */s/ Kim E. Miller*
                              Kim E. Miller


Cc:    Barry Lax
       Chris Nelson