# EXHIBIT L

*Confidential and Subject to Fed. R. Evid. 408 and Cal. Evid. Code §1152*
*For Settlement Purposes Only*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| DOUGLAS LOSKOT, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> vs. <br><br> PARETEUM CORPORATION, ROBERT H. TURNER, EDWARD O'DONNELL, VIC BOZZO, YVES VAN SANTE, ROBERT LIPPERT, and LUIS JIMENEZ-TUÑON, and DOES 1 through 10, inclusive, <br><br> *Defendants*. | Case No. 20-CIV-02279 |

## STATE COUNSEL'S FEE MEDIATION STATEMENT

**THE WEISER LAW FIRM, P.C.**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
(610) 249-0005

**KASKELA LAW LLC**
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
(484) 258 – 1585

**KELLER GROVER LLP**
1965 Market Street
San Francisco, CA, 94103
(415) 543-1305

*State Class Counsel*

*Confidential and Subject to Fed. R. Evid. 408 and Cal. Evid. Code §1152*
*For Settlement Purposes Only*

## I.    PRELIMINARY STATEMENT

The Weiser Law Firm, P.C., Kaskela Law LLC, and Keller Grover LLP ("State Class Counsel") respectfully submit this memorandum in support of their proposed allocation of attorneys' fees in *In re Pareteum Securities Litigation*, No. 19-cv-09767-AKH (S.D.N.Y.) (the "Federal Class Action"), *Loskot v. Pareteum Corp.*, No. 20-CIV-02279 (Cal. Super. Ct., San Mateo Cnty.) (the "State Class Action"), and *Sabby Volatility Warrant Master Fund, Ltd. v. Pareteum Corp.*, No. 1:19-cv-10460-AKH (S.D.N.Y.) ("Sabby" or the "Sabby Action" and, with the Federal Class Action and the State Class Action, the "Actions"). Through the efforts of the mediator and all parties, the Federal Class Action and the State Class Action settled their claims in exchange for payment of $5,255,000 from the individual defendants plus $100,000 towards class notice,[1] with administration and approval of all settlement matters to be conducted by Judge Hellerstein in the Federal Class Case.

While a motion for fees and expenses has not yet been submitted to either court, State Class Counsel and Federal Class Counsel have agreed jointly to submit an application for fees of no more than 30% of the settlement to be awarded by the Court in the Federal Class Action to Federal Class Counsel.[2] Fees for counsel in the Sabby Action are not directly at issue in this matter.

At Federal Class Counsel's request, on October 11, 2022, State Class Counsel in good faith shared its lodestar with the parties to this mediation. To date, Federal Class Counsel has refused to share its lodestar, and disingenuously stated by email that "[i]f you had gone to the hearing you would know it was discussed there." State Class Counsel, however, did not attend the preliminary hearing in the Federal Court Case – as Federal Class Counsel knows full well – to further the stated desire of all parties, and the mediator, to control costs and limit any additional lodestar. Sabby has refused to share the particulars of its own settlement with State Class Counsel.[3] While troublesome

---

[1] The settlement in the Federal Class Action also includes an additional $400,000 payable by Squar Milner LLP, who is not a defendant in the State Class Action.

[2] State Class Counsel has incurred approximately $350,000 in lodestar and $12,000 in expenses. Approximately $215,000 of that was incurred by the Weiser Law Firm, P.C., $75,000 by co-counsel Kaskela Law LLC, and $60,000 by local counsel, Keller Grover LLP. State Class Counsel trusts that, along with the expenses of Federal Class Counsel, its expenses will be submitted and fully reimbursed in connection with the fee and expense motion to be filed in the Federal Class Action. If Federal Class Counsel intends otherwise, State Class Counsel requests to be apprised immediately.

[3] Sabby's position raises serious questions. In an email exchange preceding this submission, State Class Counsel requested such information and explained why it was germane. In response, Sabby's counsel stated that "Your fee has nothing to do with the Sabby settlement agreement or the '70/30 allocation.'" First, State Class Counsel's fee does not have "nothing to do with" the recovery in the Sabby action; every dollar allocated to Sabby is one less dollar allocated to the Class. Second, counsel for Sabby and Federal Class Counsel caucused jointly during the July 2022 mediation and have (curiously) agreed to share the obligation to pay any fee awarded to State Class Counsel on a "70/30" basis. This strongly suggests not only that Federal Class Counsel is privy to more information on this than State Class Counsel, *but also* that they and Sabby believe that not

1

*Confidential and Subject to Fed. R. Evid. 408 and Cal. Evid. Code §1152*
*For Settlement Purposes Only*

and concerning, this is not surprising. Rather, it is entirely consistent with the way the Actions have proceeded since inception. As will be discussed in detail below, since commencement of the Actions, Federal Class Counsel, in an effort to increase its own lodestar, has gone to great lengths to avoid any cooperation or engagement with the State Class Action. Fortunately, State Class Counsel did not do the same. Instead, and for the benefit of the Class, they tactfully stayed the State Class Action and did not engage in wasteful and unnecessary litigation or otherwise "burn" the insurance policies at the express request of Defendants, Federal Class Counsel, and the mediator. In contrast, the balance of Plaintiffs' counsel engaged in the pointless discovery "war" they asked State Class Counsel to avoid. While State Class Counsel cannot know today (because Federal Class Counsel and Sabby are playing "hide the ball" instead of participating in this process in good faith and seeking an equitable resolution), they anticipate that their lodestar is a fraction of Federal Class Counsel's bloated lodestar, and that in arguing the allocation of fees, counsel in the Federal and Sabby Actions will seek to downplay State Class Counsel's efforts, and instead focus on an artificial disparity in lodestar.[4] To endorse such a methodology would be inequitable and punitive to State Class Counsel.

Instead, as is the case where there are parallel or overlapping efforts of counsel in cases pending in multiple jurisdictions against the same defendants, the analysis instead focuses on the weight of each counsel's contribution to the ***benefit*** realized by plaintiffs. *See, e.g., Sanders v. Wang*, 2001 WL 1131353, at *3 (Del. Ch. Sept. 18, 2001) (the "overarching factor" in allocating a fee award is the relative weight of each counsel's contribution to the recovery).

---

sharing this information is to their benefit regarding the allocation of fees. Indeed, if the Sabby Action has "nothing to do with" the fee issue and the "70/30" agreement does not suggest a tacit apportionment of a "cost" which led to the eventual settlement in all the cases that may have been to the detriment of the Class overall, then why is Sabby submitting a brief on the issue jointly with Federal Class Counsel?

[4] The primary benefit, if it can be called such, of Federal Class Counsel's time spent was to increase their lodestar; that this case settled was not due to aggressive litigation by Federal Class Counsel following the first mediation. Rather, it was the product of the strong complaints and near facial liability of the Securities Act claims in both cases, the limited (and dwindling) insurance proceeds available, Pareteum's bankruptcy filing, the SEC and DOJ investigations, and diligent work of the mediator. Indeed, had Federal Class Counsel been more focused on the end recovery for the Class at and following the first mediation session, given the foregoing, the policies may not have been so profoundly depleted and the Class may have received an even larger recovery. Though unfortunate, this is not surprising. Social sciences teach us that people, more often than not, follow basic incentive principles. *See* Kant, I. (1781). *Critique of pure reason*. Presumably, in the past, Federal Class Counsel have been rewarded for choosing scorched earth litigation over resolution without regard to the actual end for the Class because billing hours increases lodestar which in turn increases fees. Here, if Federal Class Counsel is rewarded for needlessly running up the tab, and refusing to negotiate in good faith, this will undoubtedly be repeated in future cases because it will have "worked" here. The only way to change this predictable consequence is not to incentivize it.

*Confidential and Subject to Fed. R. Evid. 408 and Cal. Evid. Code §1152*
*For Settlement Purposes Only*

Here, and as discussed in detail below, the benefits provided by State Class Counsel are substantial, and they warrant a substantial fee.

## II.     <u>ARGUMENT</u>

Fee allocation is determined based on the extent to which each group of lawyers contributed to the ultimate settlement of an action. *Sanders*, 2001 WL 1131353, at *3; *In re Initial Pub. Offering Sec. Litig.*, 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) ("[D]ifferent methodologies are used to determine a [fee] award versus a fair allocation of that aggregate award.… [D]etermination of a reasonable and fair allocation of the aggregate award requires a focus on the relative contributions of each firm.").

First, State Class Counsel performed substantial and extensive work legitimately to advance the interests of the Class.

State Class Counsel investigated, researched, drafted and, on May 29, 2020, filed plaintiff Douglas Loskot's complaint against Pareteum and individual defendants Robert H. Turner, Edward O'Donnell, Vic Bozzo, Yves Van Sante, Robert Lippert, and Luis Jimenez-Tuñon (collectively, "Individual Defendants"), alleging violations of the Securities Act of 1933 (the "Securities Act") on behalf of all former iPass Inc. ("iPass") shareholders who received shares of Pareteum common stock issued pursuant to the Exchange Offer.

Shortly following filing of the State Class Action, State Class Counsel contacted Federal Class Counsel via telephone to attempt to coordinate the actions and discovery; those calls were ignored.

On July 30, 2020, State Class Counsel served requests for the production of documents on Defendants, as permitted under the California Rules of Civil Procedure. Unlike cases filed in federal court, cases initiated in state court in California are *not* subject to the automatic discovery stay of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). This, necessarily, means that cases brought in California provide substantial value and generate more pressure on defendants, who may not rely on the rigorous pleading standards of Fed.R.Civ.P. 9(b) and the PSLRA to shield them from discovery and liability.

On September 1, 2020, Defendants served responses and objections thereto. Over the following months, State Class Counsel and counsel for Defendants conducted numerous calls and extensive negotiations regarding the production of documents and drafted and filed a case schedule, a protective order, and ESI protocols.

On November 4, 2020, Pareteum and the Individual Defendants filed separate – and extensive – demurrers to Plaintiff's Complaint. On November 25, 2020, Plaintiff filed oppositions thereto, and on December 9, 2020, Defendants filed replies in further support of their demurrers.

With a hearing on the demurrers scheduled for December 17, 2020, Defendants contacted State Class Counsel to request that the parties stay ongoing discovery in the case – including Defendants' production of documents pursuant to State Class Counsel's July requests, stay the hearing and decision on the demurrers, and attempt to mediate the matter. Defendants' counsel

3

*Confidential and Subject to Fed. R. Evid. 408 and Cal. Evid. Code §1152*
*For Settlement Purposes Only*

indicated that they had discussed this with Federal Class Counsel and that they joined in this request.  State Class Counsel agreed, and with Defendants, filed a stipulation to that end with the court on December 14, 2020.

The parties submitted mediation statements and conducted an initial mediation on February 25, 2021.  Federal Class Counsel declined to caucus with State Class Counsel even though Defendants expressly stated that they considered the State Class Action "to be on equal footing" with the Federal Class Action.

In the following weeks and months, State Class Counsel had numerous calls with the mediator and counsel for Defendants, responded to requests for information regarding the facts of the case, their damages analysis, and the status and posture of the various cases.  During this time, State Class Counsel was repeatedly assured by both counsel for Defendants and the mediator that the best move for the Actions, overall, was for the stay to continue so that the insurance proceeds available to resolve the case were not diminished.  State Class Counsel agreed to do so, made multiple filings to continue the stay, and made multiple filings to apprise the State Court of the status of the action and negotiations.  In agreeing to continue the stay, State Class Counsel were expressly assured that if the Federal Class Action moved into active litigation, they would have a role and voice in its extent.  But, again, Federal Class Counsel refused to allow this, choosing instead to run full speed ahead in a case with rapidly wasting policies.

On July 19, 2022, the parties to the Actions conducted another mediation session.  Federal Class Counsel and counsel for Sabby caucused jointly, and again expressly declined to caucus with State Class Counsel.  The mediator and counsel for Defendants were willing to meet and negotiate with State Class Counsel because, in the words of Defense counsel and the mediator, the State Court Action was a primary driver of Defendants' desire to resolve the case.  Finally, on August 15, 2022, the parties reached the instant settlement and executed a memorandum of understanding.

Again, and to be clear, State Class Counsel contends that *both* cases were instrumental to the process which led to a recovery for the Class – to suggest otherwise would be to ignore both the obvious facts and the acknowledgements and representations of Defendants and the mediator to the contrary.

That said, it should carry substantial weight in any analysis that State Class Counsel not only aggressively litigated the State Class Action when it was appropriate to do so, but also agreed to "press pause" on the litigation when expressly requested to do so by all parties and when it was in the best interests of the Class to do so.  That is, according to both the mediator and counsel for Defendants, during the negotiations over the almost 18 months between the first mediation session and the Settlement, not only did the prospect of further litigation of the State Class Action strongly contribute to Defendants' desire to reach a resolution, but their decision to stand down when they did preserved valuable funds necessary for (and which went towards) the Settlement.  And this was not an easy decision to make, given that Federal Class Counsel – despite urging the mediator that the State Class Action should agree to a voluntary stay and that they would work alongside Federal Class Counsel in its case – actively worked to shut State Class Counsel out of joint participation in the first mediation session, and then refused to engage State Class Counsel or limit the scope of its discovery in the Federal Class Action.

4

*Confidential and Subject to Fed. R. Evid. 408 and Cal. Evid. Code §1152*
*For Settlement Purposes Only*

Indeed, even when the first mediation failed, and State Class Counsel alerted the mediator that they intended to lift of the stay and pursue discovery, they were convinced not to do so for the collective good of all Actions. Now, at least based on the discussions amongst State Class Counsel and Federal Class Counsel, Federal Class Counsel intends to argue that the disparity in lodestar warrants a minimal fee award in the State Class Action. In effect, this improperly subjects State Class Counsel to the most negative of outcomes in the classic prisoner's dilemma, when they acted solely with the benefit of *all* plaintiffs in mind. In sum, without both the existence and prosecution of the State Class Action and their acquiescence towards minimizing costs: (i) the Actions would not have settled; (ii) the insurance proceeds would have been wasted in litigation; and (iii) the Settlement Class (and Sabby) would have received little or nothing. Federal Class Counsel should not be permitted to use State Class Counsel's tactful decision to stay the State Action, and Federal Class Counsel's inflated lodestar, as both shield and sword in this mediation.

## III.    CONCLUSION

Based on the foregoing, the following allocation of attorneys' fees is equitable and appropriate: 67% of any fee award to Federal Class Counsel, and 33% to State Class Counsel.

Dated: January 25, 2023

/s/ Christopher L. Nelson
**THE WEISER LAW FIRM, P.C.**
Christopher L. Nelson
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
(610) 249-0005

**KASKELA LAW LLC**
D. Seamus Kaskela
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
(484) 258-1585

**KELLER GROVER, LLP**
Kathleen R. Scanlan
1965 Market Street
San Francisco, CA, 94103
(415) 543-1305

*State Class Counsel*