# EXHIBIT M



250 Park Avenue, 7th Floor
New York, NY 10177

TEL +1 504.455.1400
FAX +1 504.455.1498
KSFcounsel.com

NEW ORLEANS
**NEW YORK**
NEW JERSEY
SAN FRANCISCO

Kim E. Miller
Partner – Admitted in NY & CA
Direct: 212.696.3730
kim.miller@ksfcounsel.com

February 6, 2023

***via e-mail***
Mr. David M. Murphy, Esq.
Phillips ADR Enterprises, P.C.
120 Rowayton Avenue
Rowayton, CT 6853
dmurphy@phillipsadr.com

> **Re:** ***In re Pareteum Sec. Litig.*, 1:19cv9767 (S.D.N.Y.)**

Dear David:

The fee proposal from Counsel for Loskot (the "Weiser Firm"), joined by its co- and local counsel, is unreasonable. They seek 33% of the attorneys' fees awarded on the $5.25 million settlement with the Individual Defendants in the federal class action ("Federal Action"). ***This would represent a multiplier of approximately 1.48 on their claimed lodestar of $350,000, or more than three times Lead Counsel's requested lodestar multiplier of 0.45.***[1] The damages encompassed by the claims asserted in the *Loskot* Action constitute no more than ***3.4%*** of the total damages in the Federal Action. Considering the negligible benefit provided by Counsel for Loskot and its co- and local counsel and the minimal effort put forth by them, Lead Counsel respectfully requests that you reject their proposal and endorse Lead Counsel's reasonable approach.[2] Sabby joins in this reply.

The Weiser Firm and its colleagues argue their efforts were "substantial" and "extensive." Loskot Stmt. at 3-4. Yet their own submission, combined with the public record, make clear that their work consisted of filing a copycat complaint, serving requests for production that resulted in no production, preparing standard case management statements and a proposed protective order and ESI protocol that were never entered, opposing Defendants' demurrers with the benefit of our earlier-filed briefing, and then staying the case just three weeks later. They participated in the mediations but submitted no mediation statement and left before the first mediation concluded.

---

[1] Lead Counsel's requested 30% fee on the $5.25 million settlement with the Individual Defendants is $1.575 million, representing a negative multiplier of 0.45 on its $3.5 million lodestar. Assuming Lead Counsel's fee request is granted, Counsel for Loskot and its co- and local counsel's proposed fee award would be $519,750 (33% of $1.575 million). Lead Counsel also negotiated an additional $100,000 contribution to notice costs from the Individual Defendants. No fee is sought on that amount and that benefit was created solely by Lead Counsel.

[2] Judge Hellerstein ordered that any appeal of Counsel for Loskot's fee award be directed to him. *See* ECF No. 273 (Amended Stipulation of Settlement) at ¶ 17; ECF No. 275 (Preliminary Approval Order) at ¶ 17.



David M. Murphy                         -2-                         February 6, 2023

Given their lack of involvement, it is no surprise that the Weiser Firm and its colleagues incorrectly state that the settlement with the Individual Defendants is $5.255 million. Loskot Stmt. at 1. At the preliminary approval hearing, Counsel for Loskot was a no show and Lead Counsel answered the Court's questions regarding the *Loskot* action. *See* Ex. A attached hereto (Transcript of Preliminary Approval Hearing) at 4:9-5:8.

In an attempt to justify their minimal effort, Counsel for Loskot and its co- and local counsel talk out of both sides of their mouths. On the one hand, they pat themselves on the back for "tactfully" staying the *Loskot* Action for the "best interests of the Class,"[3] but at the same time, they complain they didn't litigate more because they were "shut out" of the case by Lead Counsel. Loskot Stmt. at 2, 4. In sum, they argue that because they did *less* than Lead Counsel, they should be rewarded *more*. While Counsel for Loskot are entitled to some compensation for its anemic efforts, they should not receive a windfall.

Counsel for Loskot and its co- and local counsel also attack Lead Counsel's lodestar, characterizing it as "inflated"[4] and accusing Lead Counsel of having "engage[d] in wasteful and unnecessary litigation and "pointless discovery." Loskot Stmt. at 2, 5. This reveals an utter cluelessness regarding the Federal Action. In truth, the parties in the Federal Action were operating under a tight, Court-imposed case schedule.[5] Immediately upon denying Defendants' motions to dismiss, Judge Hellerstein ordered the parties to appear for a case management conference and on October 15, 2021 set a very compact schedule, requiring the exchange of all documents regarding traceability (to establish standing to assert claims under §11 of the Securities Act) less than a month later, requiring Plaintiffs to move for class certification within six weeks, and setting a discovery deadline of September 30, 2022. ECF No. 222. Consistent with those deadlines, Plaintiffs filed a motion for class certification on December 1, 2021, supported by an expert report on market efficiency and damages, and conducted substantial discovery, including reviewing nearly half a million pages of documents. Yet even while the case proceeded apace pursuant to these deadlines, the parties continued to discuss settlement. Plaintiffs agreed to a stay in February 2022 to preserve the Company's rapidly dwindling resources – including its insurance proceeds.

After Pareteum's bankruptcy filing, on June 1, 2022, the Court hastened the pace of the

---

[3] Lead Counsel neither "joined" nor agreed to the request for a stay of the *Loskot* Action, as Counsel for Loskot and its colleagues state. Loskot Stmt. at 3-4.

[4] Counsel for Loskot and its co- and local counsel have no basis to critique Lead Counsel's lodestar and Judge Hellerstein will decide whether that lodestar is reasonable. Per his usual practice, Judge Hellerstein held a fulsome preliminary approval hearing, at which he requested and received Lead Counsel's approximate lodestar of $3.5 million and multiplier of "just under .5" and did not express any concerns. Ex. A at 21:5-10. Any fee awarded to Counsel for Loskot and/or its co- and local counsel will lower Lead Counsel's multiplier even further.

[5] Nevertheless, Lead Counsel was willing from early on to attempt to resolve the case. Indeed, Lead Counsel agreed to Defendants' request to hold a mediation while their motions to dismiss were pending – even though Plaintiffs felt mediation was premature.



David M. Murphy                    -3-                    February 6, 2023

litigation yet again, setting "a schedule for vigorous completion" of discovery and denying Defendants' request to continue the stay. ECF No. 255 at 12. The Court ordered additional documents to be produced by July 13, 2022, and for Plaintiffs to take five fact depositions by September 5, 2022. ECF No. 249. Over the next few months, Lead Counsel worked intensively to comply with these deadlines. When the MOU was executed on August 14, 2022, Plaintiffs were actively preparing for depositions of Individual Defendants Victor Bozzo, Denis McCarthy, Ted O'Donnell, and Robert Turner, as well as a former Pareteum employee, Dragana Linfield, pursuant to the Court's order. Lead Counsel submits it was this discovery – in particular, the upcoming depositions of Bozzo, Linfield, and McCarthy (set for August 16, August 25, and August 30, respectively) – that was the final push for the parties to settle, rather than, as Counsel for Loskot and its co- and local counsel baselessly suggest, "the prospect of further litigation of the State Class Action." Loskot Stmt. at 4.

The unfounded attacks on Lead Counsel's lodestar are ironic given that the lodestar figure submitted by the Weiser Firm includes other firms: co-counsel Kaskela Law LLC ($75,000) and local counsel Keller Grover LLP ($60,000). The Stipulation signed by the Weiser Firm provides that Lead Counsel's fee application shall include fees for "Counsel for Loskot," which is defined solely as the Weiser Firm. ECF No. 265 at ¶¶ 1(k), 17. The Weiser Firm now seeks to simply ignore that provision. In fact, just $215,000 of the claimed lodestar was incurred by the Weiser Firm. This further illustrates the overreach by Counsel for Loskot and its co- and local counsel.[6]

Lead Counsel respectfully requests that you reject the Loskot fee proposal, adopt Lead Counsel's proposal, and award no more than $78,750 – *i.e.*, half of Lead Counsel's requested multiplier (0.225) applied to the claimed $350,000 lodestar – subject to a proportional downward adjustment if Judge Hellerstein awards Lead Counsel less than its requested 30% fee.

Respectfully submitted,

*/s/ Kim E. Miller*
Kim E. Miller

Cc:    Chris Nelson, Esq.
       Barry Lax, Esq.

---

[6] Initially, Mr. Nelson indicated that Counsel for Loskot's lodestar was approximately $350,000 for the Weiser Firm, co-, and local counsel, but in subsequent emails the parties discussed a $300,000 figure that apparently included only the Weiser Firm and its co-counsel. Lead Counsel asked Mr. Nelson for a breakdown of the $300,000 figure but did not receive one. Due to a lack of clarity, Lead Counsel's opening submission used $300,000. Lead Counsel now applies the more generous $350,000 number. While this is not consistent with the Stipulation – indeed, based on the Weiser Firm's lodestar alone, the requested multiplier would be a whopping 2.4 – Lead Counsel does not wish to quibble over the inclusion of co- and local counsel for Loskot. Lead Counsel reserves the right to revise its position on this issue in the event of an appeal to Judge Hellerstein.