# EXHIBIT O

<u>Memorandum Decision</u>
(<u><i>Pareteum Fee Allocation</i></u>)

With respect to the instant fee allocation, which was submitted by Stipulation, I received opening submissions from (i) Lead Plaintiff's counsel in the Federal Action ("Kahn Swick" on behalf of itself and Sabby), and (ii) Counsel for Loskot (the "Weiser Firm" on behalf of itself, its co-counsel and local counsel), dated January 25, 2023.  Thereafter, I received reply submissions from both law firms, dated February 6, 2023.  I have reviewed the submissions with care and given considerable thought to all of the arguments and metrics set forth in these submissions.

I will not summarize every argument set forth in the parties' written submissions.  This decision assumes familiarity with the submissions.  As background, however, I note that the litigation dynamics of the Federal and State Actions were atypical in one crucial respect:  neither Kahn Swick nor the Weiser Firm sought to litigate the Federal Class Action or State Class Action more than necessary lest the individual defendants burn through their limited D&O insurance.  Both firms were acutely aware that Pareteum was teetering on the brink of bankruptcy (and on June 1, 2021, the company did in fact file for bankruptcy).  Both understood that the individual defendants' D&O insurance was insufficient to support a settlement in the range that class actions of this type typically settle.  Both appreciated that the remaining insurance limits would be exhausted by defense costs if the parties failed to reach a resolution.  Thus, to preserve insurance dollars for absent class members, both law firms litigated as leanly and efficiently as possible, devoting their efforts foremost to resolution while complying with court-imposed deadlines and keeping pressure on defendants.  For this, both firms earned my respect and deserve my thanks.

This is not to suggest, however, that both firms performed an equal amount of legal work.  They did not.  In the Federal Class Action, the Court imposed a series of tight case scheduling deadlines requiring Kahn Swick to exchange documents relating to traceability (to establish standing to assert claims under Section 11 of the Securities Act); to move for class certification (and secure expert witness reports in support thereof), and to conduct substantial discovery in order to satisfy the Court's aggressive discovery deadline.  In the State Class Action, by contrast, defendants' counsel asked the Weiser firm to consent to stay the case before the Loskot Court ruled on the motion to dismiss and to proceed to mediations; the Weiser Firm made a strategic decision to do so; and through a series of further stipulations, the case remained stayed continuously from December 16, 2020 onward.

It comes as no surprise, therefore, that under a straight lodestar metric—without reference to other litigation or settlement dynamics—Kahn Swick submits its lodestar is approximately $3.5 million, and the Weiser Firm submits its lodestar (including time spent by co-counsel and local counsel) is $350,000.[1]

---

[1] The parties have not asked me to review their time records, and I have not done so.  That said, I reject the Weiser Firm's claim that Kahn Swick's lodestar is inflated.  I am satisfied that the legal work performed by Kahn Swick was reasonably necessary to meet case management deadlines in the Federal Class Action. If anything, for the reasons summarized above, I believe Kahn Swick sought to minimize litigation activity to preserve insurance dollars for a settlement on behalf of absent class members.

Lodestar metrics aside, as a matter of law and basic fairness, the Weiser Firm's strategic decision to "stand down"—to consent to a stay of further litigation in favor of mediation—should not diminish its fee award if it can establish that the Section 11 claims in Loskot represented a material part of the damages exposure ultimately settled through the Federal Class Action.  To this end, the Weiser Firm argues that "if relative damages were the proper measure for allowing fees . . ., the damages at play in the State Class Action represent 11.6% of the aggregate damages, not 3.4% as stated by Federal Class Counsel."  *See* Weiser Firm Reply Br. at 2 (citing Kahn Swick Op. Br. at 2).  But even if even Loskot's Section 11 claims represent 11.6% rather than 3.4% of aggregate damages, and even if "Section 11 claims are 'worth' far more in that they overwhelmingly factually stronger than the Section 10(b) claims and far easier to prove due to the lower standard of proof" (*id.*), such quantitive and qualitative metrics do not remotely support the Weiser Firm's request for 33% of the attorneys' fees awarded by Judge Hellerstein.

After considerable deliberation, my view is that, although neither lodestar nor damages metrics alone suffice to determine a fair and appropriate fee allocation, when the two metrics converge —as they arguably do in this case—that convergence is significant.  The Weiser Firm invested 10% of the lodestar that Kahn Swick risked.  Using its preferred damages metric, the Weiser Firm's Section 11 damages comprised 12% of total class damages.  Accordingly, I find the Weiser Firm is entitled to 11% of any fee awarded by Judge Hellerstein.  I recognize that this allocation gives the Weiser Firm a slightly higher negative multiplier on its lodestar (.495) than Kahn Swick (.45), but I do not believe it is fair or reasonable to penalize the Weiser Firm for consenting to a stay of litigation in favor of mediation that conserved finite insurance resources for the benefit of absent class members.  Under the totality of circumstances of this proposed settlement, a fee allocation to the Weiser Firm of 10-12% is fair and reasonable, and I allocate 11% because it is the midpoint of that range.

Respectfully submitted,

David M. Murphy
Mediator, Arbitrator & Independent Panelist