**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PARETEUM SECURITIES LITIGATION | Case No. 1:19-cv-09767-AKH-GWG |

**DECLARATION OF MARGERY CRAIG CONCERNING**
**THE RESULTS OF THE CLAIMS ADMINISTRATION PROCESS**

I, Margery Craig, declare as follows:

1.      I am a Project Manager of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.  I have over fifteen years of experience specializing in the administration of class action cases.  SCS was established in April 1999 and has administered over five hundred twenty-five (525) class action cases since its inception.  I have personal knowledge of the facts set forth herein, and if called on to do so, I could and would testify competently thereto.

**UPDATE ON THE NOTIFICATION PROCESS**

2.      Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice of Pendency, dated December 20, 2022 (the "Preliminary Approval Order") (Dkt. No. 275), SCS was appointed as Claims Administrator in connection with the Settlement of the above-captioned action.[1]

3.      As noted in the Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated January 19, 2023 (the "Initial Mailing Declaration") (Dkt. No.

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Amended Stipulations and Agreement of Settlement, dated as of October 25, 2022 (the "Stipulations") (Dkt. Nos. 273 and 274).

278) and the Supplemental Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; and (B) Report on Claims Received to Date and Requests for Exclusion and Objections, dated April 17, 2023 (the "Supplemental Declaration) (Dkt. No. 286) (collectively, the "Craig Declarations"), SCS mailed or emailed 1,732 letters to the Nominee Account Holders and Institutional Groups contained on SCS's master mailing list. SCS mailed 9,130 Postcard Notices to potential Settlement Class Members and nominees, and SCS received notice that two nominees mailed seven Postcard Notices to potential Settlement Class Members. Additionally, SCS received requests from three nominees for 29,200 Postcard Notices so that they could forward them to their customers, SCS was also notified by one nominee that they mailed 652 Postcard Notices to their customers, SCS was notified by one nominee that they emailed the link to the Summary Notice and the Claim Form to 35,628 of their customers. Since the Craig Declarations were filed, no additional Postcard Notices have been mailed by SCS, and no additional emails were sent with the link to the Summary Notice and the Claim form by SCS from nominee responses or nominees. A total of 74,617 potential Settlement Class Members were either mailed a Postcard Notice or emailed the link to the Summary Notice and Claim Form on the settlement website.

## UPDATE ON TOLL-FREE PHONE LINE

4.      The Craig Declarations noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement. SCS continues to promptly respond to each telephone inquiry and will continue to respond to Settlement Class Members inquiries via the toll-free telephone number.

**UPDATE ON SETTLEMENT WEBSITE**

5.      The Craig Declarations also noted that on January 3, 2023, SCS established a website, www.PareteumSecuritiesLitigation.com. The website is accessible 24 hours a day, 7 days a week.  The website contains a home page; an important documents page; an online claim filing page; a nominees page; and a contact us page.  SCS will continue to maintain and, as appropriate, update the Settlement website with relevant case information until the conclusion of the administration.  To date, there have been 20,793 pageviews from 3,955 unique users.

**STATUS OF CLAIMS PROCESSING**

6.      Through July 20, 2023, 3,773 Claim Forms (hereafter referred to as "claims") were submitted in connection with this settlement.[2]  SCS has carefully reviewed, analyzed, and processed all of these claims, and has responded to all claimant inquiries regarding the action, the settlement and the procedures for filling out the Claim Forms.  SCS has also been in close contact with Lead Counsel to review the administration process.  SCS's Report of Claims Administrator is annexed hereto as **Exhibit A** and described below.

7.      The annexed Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

      a.      PROPERLY DOCUMENTED CLAIMS:   SCS  has  identified  1,969[3] properly documented valid claims.  These valid claims represent Recognized Claims of $58,276,247.64[4]. These valid claims were calculated in the manner set forth in the Court-

---

[2] SCS has not processed any claims filed after July 20, 2023, and will not consider any responses to rejections received after August 23, 2023, due to extreme lateness and because their inclusion would have delayed the finalization of the administration.

[3] This number includes 1,945 timely filed valid claims and 24 late but otherwise valid claims.

[4] This amount includes Recognized Claims for timely filed, valid claims of $57,472,903.78 and Recognized Claims for late (but otherwise valid) claims of $803,343.86.

approved Proposed Plan of Allocation of the Net Settlement Fund Among Settlement Class Members ("Plan of Allocation"), included in the Notice. **Exhibit B-1** is a spreadsheet of the 1,945 properly documented and timely submitted claims.  **Exhibit B-2** is a spreadsheet of the 24 claims submitted after the Court-approved claims filing deadline, April 3, 2023, and on or before July 20, 2023.

b.      INADEQUATELY DOCUMENTED CLAIMS:  SCS initially identified 440 inadequately documented claims. SCS mailed or emailed inadequacy notices to each of these claimants, advising them of the nature of their inadequacy and providing them an opportunity to cure. A sample inadequacy notice is annexed hereto as **Exhibit C**.  Among these 440 deficient claims, 169 have been successfully cured and are considered valid.  The remaining 271 inadequate claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were sent a rejection notice setting forth the reason for their inadequacy.  To date, none of the 271 inadequate claimants has objected to or contested this determination. See **Exhibit D** for a list of the inadequate, rejected claimants.

c.      INELIGIBLE CLAIMS:  In addition to the 271 claims discussed above in paragraph 7.b., SCS has identified 1,533 claims which we recommend for complete rejection.  Included in this category are: (i) claims with no Recognized Claims; (ii) claims with common stock of Pareteum Corporation ("Pareteum") purchased outside of the Settlement Class Period; (iii)  claims with common stock of Pareteum that were not purchased or otherwise acquired, but were received or granted by gift, inheritance, or operation of law; (iv) claims with shares sold short; (v) duplicate claims filed;  (vi) claims with common stock of Pareteum that were  purchased on the wrong market not on a United

States-based stock exchange; and (vii) claims that were fraudulent.  See **Exhibit E** for a list of these ineligible claims.  We have communicated with these 1,533 claimants and advised them of our determination.  A sample ineligibility notice is annexed hereto as **Exhibit F**. To date, none of these ineligible claimants has contested their determination.

8.       In anticipation of completing this administration, SCS respectfully requests that the Court reject as untimely any claims received after July 20, 2023, and any responses to deficiency and/or rejection notices received after August 23, 2023.

9.       Should the Court concur with SCS's administrative determinations concerning the claims recommended for acceptance and rejection, SCS recommends the following distribution plan:

(a)       Per the Plan of Allocation, each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's Recognized Claims divided by the total Recognized Claims of all 1,945 Authorized Claimants and 24 late claims, if the late claims are deemed valid by the Court, then multiplied by the total amount in the Net Settlement Fund. The balance of the Net Settlement (less amounts to be withheld for potential tax liabilities and related fees and expenses) shall be distributed to Authorized Claimants. If any Authorized Claimant's Distribution Amount calculates to less than $20, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.

(b)       In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks should bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-

DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Similarly, all other checks issued in connection with subsequent distributions shall bear the same notation.

(c)     After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the Net Settlement Fund six (6) months after the initial distribution, if Lead Counsel, in consultation with the Claims Administrator, determine that is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $20 from such re-distribution. Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10 on such additional re-distribution may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of  any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective, the remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s), to be recommended by Lead Counsel and approved by the Court.

(d)     Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. The funds allocated to all such stale-dated checks will be available for re-distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible.

6

(e)    SCS respectfully requests the Court order that: (i) in no less than one (1) year after the distribution of the Net Settlement Fund, SCS may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, SCS may destroy the electronic copies of the Claim Forms and all supporting documentation.  This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 29th day of August 2023, in Media, Pennsylvania.

Margery Craig

_____
Margery Craig